UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re:                                                      Chapter 7

HILAL KHALIL HOMAIDAN,                     Case No. 08-48275-ess
*aka* HELAL K HOMAIDAN,

                          Debtor.
------------------------------------------------------------------------x

HILAL KHALIL HOMAIDAN,                     Adv. Pro. No. 17-01085-ess

                          Plaintiff,

        -against-

SLM CORPORATION, SALLIE MAE, INC.,
NAVIENT SOLUTIONS, LLC, and NAVIENT
CREDIT FINANCE CORPORATION,

                          Defendants.
------------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

*Appearances*:

George F. Carpinello, Esq.                Thomas M. Farrell, Esq.
Adam Shaw, Esq.                           McGuire Woods LLP
Boies Schiller Flexner LLP                JPMorgan Chase Tower
30 South Pearl Street (11th Floor)        600 Travis Street (Suite 7500)
Albany, NY 12207                          Houston, TX 77002
  *Attorneys for Plaintiff*                 *Attorneys for Defendants*
  *Hilal Khalil Homaidan*

                                          Shawn R. Fox, Esq.
Austin C. Smith, Esq.                     McGuireWoods LLP
Smith Law Group                           1345 Avenue of the Americas (7th Floor)
3 Mitchell Place (Suite 5)                New York, NY 10105
New York, NY 10017                          *Attorneys for Defendants*
  *Attorneys for Plaintiff*
  *Hilal Khalil Homaidan*

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion to dismiss of defendants Navient Solutions, LLC, Navient

Credit Finance Corporation, and Sallie Mae, Inc. (the "Defendants").  The Defendants seek an

order dismissing the claims set forth in Hilal Khalil Homaidan's Complaint, and argue in this

motion that Mr. Homaidan's loans are student loans that come within a category of debt that is

excluded from discharge under the applicable subsections of Bankruptcy Code Section 523(a)(8)

– specifically, Section 523(a)(8)(A)(ii), which excludes from discharge "an obligation to repay

funds received as an educational benefit, scholarship or stipend."

To set the stage for the Court's decision, it is worth noting that Mr. Homaidan does not

identify or seek relief specifically with respect to this subsection of the Bankruptcy Code in his

Complaint.  Rather, he alleges, in substance, that his "Tuition Answer Loans" are not "qualified

education loan[s]" under Bankruptcy Code Section 523(a)(8)(B), and for that reason, they were

discharged in his Chapter 7 bankruptcy case.

In this motion, the Defendants urge that the Court does not need to reach Mr. Homaidan's

dischargeability claim, and by implication, his claim that they have violated the discharge order

entered in his case, because – they argue – Mr. Homaidan's Tuition Answer Loans are excluded

from the scope of his bankruptcy discharge on these separate grounds.  And they request the

opportunity to address the adequacy of Mr. Homaidan's claims under Section 523(a)(8) at a later

time, if necessary.

Mr. Homaidan responds that he has alleged adequately that his Tuition Answer Loans do

not come within a category of debt that is excluded from discharge under *any* subsection of

Bankruptcy Code Section 523(a)(8), including Section 523(a)(8)(a)(ii), and as specifically

alleged in the Complaint, Section 523(a)(8)(B).  He argues that he has alleged adequately his

request for a declaratory judgment that his loans were discharged pursuant to the Court's

discharge order in his Chapter 7 bankruptcy case, and also his request for damages, attorneys'

fees, and costs, arising from the Defendants' violations of the discharge order entered in his case.

For these reasons, he argues, the Court should not dismiss the Complaint, and the Defendants'

motion should be denied.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code

Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as

amended by the Order dated December 5, 2012, of the United States District Court for the

Eastern District of New York.  In addition, this Court may adjudicate these claims to final

judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b),

and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c)

because the parties have stated their consent to this Court entering a final judgment.  Tr. 6:25-

7:15 (May 14, 2018), ECF No. 83.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932,

1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders

"with the consent of all the parties to the proceeding" (quoting 28 U.S.C. § 157(c)(2)).

## Background

### *Mr. Homaidan's Bankruptcy Case*

On December 4, 2008, Hilal Khalil Homaidan, *aka* Helal K. Homaidan, filed a petition

for relief under Chapter 7 of the Bankruptcy Code, Case No. 08-48275.  On December 19, 2008,

Mr. Homaidan filed his schedules and statements, and on March 9, 2009, he filed certain

amended schedules.  ECF Nos. 11, 19.  In his Schedule F, "Creditors Holding Unsecured

Nonpriority Claims," he listed "Tuition Answer" loans owed to Sallie Mae in the amounts of $7,983.19 and $8,190.11. On January 15, 2009, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute." Case No. 08-48275, Doc. entry dated January 15, 2009. On April 9, 2009, the Court entered an order discharging Mr. Homaidan (the "Discharge Order"), and on that same day, his bankruptcy case was closed.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a determination of the dischargeability of certain of his student loans, and on May 26, 2017, the Court entered an order reopening the case.

*This Adversary Proceeding*

On June 23, 2017, Mr. Homaidan commenced this adversary proceeding as a putative class action, on behalf of himself and others similarly situated, by filing a complaint against SLM Corporation, Sallie Mae, Inc., Navient Solutions, LLC ("Navient Solutions"), and Navient Credit Finance Corporation ("Navient Credit"). As to himself, Mr. Homaidan seeks a determination that certain debts that he incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and costs, for the Defendants' willful violations of the bankruptcy discharge order entered in his case. And as to the class, he seeks the same the relief. Compl., Adv. Pro. No. 17-01085, ECF No. 1.

On October 30, 2017, the Defendants filed this motion to compel arbitration, or in the alternative, to dismiss the Complaint. And on December 1, 2017, the Court approved a stipulation of dismissal as to defendant SLM Corporation.

By Memorandum Decision and Order dated July 25, 2018, the Court denied the motion to the extent that it sought to compel arbitration of these claims. *Homaidan v. SLM Corp. (In re Homaidan)*, 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

<u>*The Allegations of the Complaint*</u>

Mr. Homaidan alleges that "[f]or the last ten years, [the Defendants] have . . . engaged in a massive effort to defraud student debtors and to subvert the orderly working of the bankruptcy courts." Compl. ¶ 2. He claims that the "Defendants . . . originat[ed] and service[ed] dischargeable consumer loans [while] disguising them as nondischargeable student loans." *Id.* Mr. Homaidan advances these allegations on behalf of an alleged class of "similarly situated individuals who have declared bankruptcy since 2005 [across the United States,] with loans originated and/or serviced by Defendants." Compl. ¶ 4. And he alleges that these loans "do not meet the definition of a nondischargeable qualified education loan" as set forth in Internal Revenue Code Section 221(d) and Bankruptcy Code Section 523(a)(8)(B). *Id.*

Mr. Homaidan alleges that the defendant Sallie Mae, Inc. is a business entity that services student loan debts, and it is a wholly-owned subsidiary of SLM Corporation. Compl. ¶ 6. He alleges that defendant Navient Solutions is a business entity that services consumer debts, with a principal place of business in Pennsylvania. Compl. ¶ 7. And he alleges that defendant Navient Credit is a business entity that originates, services, and collects consumer debt, with a principal place of business in Virginia. Compl. ¶ 8.

Mr. Homaidan alleges that Congress enacted Bankruptcy Code Section 523(a)(8) in order to "prohibit discharge of federal student loans . . . [and] to address a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation." Compl. ¶ 13. He claims that as initially

4

adopted in the 1978 Bankruptcy Act, Section 523(a)(8) excluded from discharge government-issued student loans that became due within the five years prior to the bankruptcy petition. Compl. ¶ 14.  Mr. Homaidan claims that the purpose of this legislation was to insulate "government issued student loans from bankruptcy discharge," and states that "[s]ubsequent amendments, which lengthened and eventually eliminated the five-year non-dischargeability time frame for loans by the federal government, have made it . . . increasingly difficult for debtors to ever attain discharges of those student loans."  Compl. ¶ 15.

Mr. Homaidan also alleges that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 expanded the definition of nondischargeable student debt to include "'any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986.'"  Compl. ¶ 17 (quoting 11 U.S.C. § 523(a)(8)(B)).  The Complaint states that Internal Revenue Code Section 221(d)(1) "defines a qualified education loan as one that is used to pay for 'qualified higher education expenses.'  In turn, a 'qualified higher education expense' is one that issued to pay for the cost of attendance at a qualified educational institution."  Compl. ¶ 18 (quoting 26 U.S.C. § 221(d)(2)).  Mr. Homaidan alleges that "[o]riginally, the private lending mirrored the federal loans in that the loans were paid directly to the qualified educational institution, which would then ensure that the funds were used only for qualified expenses."  Compl. ¶ 20.  And he claims that "lenders initiated new programs that bypassed the qualified schools completely and instead lent money directly to student borrowers."  Compl. ¶ 21.  In doing so, he alleges that lenders "circumvent[ed] the schools['] private lenders . . . significantly increas[ing] the total amount of loans that they originated by lending money that exceeded the scope of [Bankruptcy Code Section] 523(a)(8)(B)."  *Id*.  These loans, Mr. Homaidan alleges, "were simply unsecured consumer

debts." Compl. ¶ 22. Mr. Homaidan alleges that only private loans that are made for qualified education expenses at a qualified educational institution are nondischargeable, and "any other private loan is unsecured and is discharged in bankruptcy in the same manner as any other unsecured debt." Compl. ¶ 24.

The Complaint states that Mr. Homaidan attended Emerson College in Boston, Massachusetts during the four academic years from 2003 to 2007. He withdrew from Emerson College in the Fall of 2006, and returned in the Spring of 2007 to complete his degree. During the 2006-07 academic year, Mr. Homaidan received $4,800 in scholarship funds from Emerson College, and $22,100 in school-certified loans from the Defendants. He alleges that the Defendants lent him "an additional $12,567 in 'direct to consumer' Tuition Answer loans . . . that were made outside the financial aid office and were not made for qualified education expenses." Compl. ¶ 40. Mr. Homaidan claims that he "properly scheduled the Tuition Answer Loans on Schedule F of his petition." Compl. ¶ 44. He claims that the Defendants knew that these "were not qualified education loans" exempt from discharge as defined in Bankruptcy Code Section 523(a)(8)(B), and notes that Internal Revenue Code Section 6050S requires lenders to issue 1098-E tax forms to all customers with qualified education loans, and the Defendants never issued a 1098-E tax form to him. Compl. ¶ 42.

Mr. Homaidan alleges that the "Defendants represented to student debtors that the Bankruptcy Code prohibited discharge of *any* loan made to any person for any educational purpose." Compl. ¶ 28. He claims that the Defendants utilized bankruptcy laws "to defraud vulnerable and unsophisticated student borrowers." Compl. ¶ 29. Mr. Homaidan states that the "Defendants either misrepresented or failed to disclose facts and information related to the

dischargeability of private loans," and that the Defendants did not make the same misrepresentations "to more sophisticated borrowers."  Compl. ¶ 33.

He alleges that while the Defendants and other lenders informed consumers that their loans were nondischargeable, these lenders securitized the same obligations for sale on the secondary market.  And he asserts that the prospectuses for these asset-backed securities cautioned investors that, pursuant to Bankruptcy Code Section 523(a)(8), "only private loans made for qualified expenses were excepted from discharge."  Compl. ¶ 34.  He alleges that instead of then treating these debts as discharged, Navient Solutions "engaged the services of various collection firms to attempt to collect on this discharged debt in violation of this Court's Order and the Bankruptcy Code," and on December 6, 2008, Navient Solutions "sent correspondence to Homaidan stating that they received notice of the bankruptcy filing and requested a copy of 'the first meeting of creditors.'"  Compl. ¶ 48.  Prior to the Discharge Order, Mr. Homaidan states that the "Defendants did not commence an adversary proceeding to contest the dischargeability of the Tuition Answer Loans."  Compl. ¶ 47.

Mr. Homaidan alleges that on December 11, 2008, the Defendants sent correspondence to him requesting payment in the amount of $1,524.74, and states that both of his Tuition Answer Loans were listed in that correspondence.  Compl. ¶ 49.  He alleges that the Defendants sent further letters demanding payment of the Tuition Answer Loans "at least on, August 3, 2010, September 6, 2010, September 8, 2010 and July 5, 2011."  Compl. ¶ 50.  And as a result of these letters, Mr. Homaidan claims, he "was misled as to the status of the Tuition Answer Loans and believed they were not, in fact, discharged in bankruptcy and therefore he paid back those discharged debts in July 2011 under the mistaken belief that he had a legal obligation to do so."  Compl. ¶ 51.

Mr. Homaidan requests a declaratory judgment pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9) that these debts were discharged by operation of law on April 9, 2009, the date of entry of the Discharge Order in his bankruptcy case, because they were not student loans excluded from discharge under Bankruptcy Code Section 523(a)(8).  Mr. Homaidan also asserts that since the Defendants were notified of the Discharge Order pursuant to Bankruptcy Rule 4004(g), and still sought to collect on his debts by use of "dunning letters, phone calls, negative reports made to credit bureaus, failure to update credit reports, and commencing or continuing legal action to recover [these] debts in violation of [Bankruptcy Code Section 524]," the Court should cite the Defendants for civil contempt for their willful violations of the Discharge Order, and order them to pay damages in an amount to be determined at trial pursuant to Bankruptcy Code Sections 524 and 105, and also to pay his attorneys' fees and costs. Compl. ¶¶ 82-83.

### The Motion To Compel Arbitration, or in the Alternative, To Dismiss this Case

On October 30, 2017, the Defendants moved to compel arbitration of Mr. Homaidan's claims, or in the alternative, to dismiss this case (the "Motion to Dismiss"), and filed a supporting memorandum of law (the "Defs' Mem.").  Mr. Homaidan opposes all of the relief sought by the Defendants, and on January 8, 2018, he filed a memorandum of law in opposition (the "Plf's Opp.") to the Motion to Dismiss.  On January 26, 2018, the Defendants filed a reply (the "Reply") in further support of their Motion to Dismiss.

On July 25, 2018, the Court issued a memorandum decision on that portion of the Motion to Dismiss which seeks to compel arbitration, and declined to compel arbitration of Mr. Homaidan's claims.  *Homaidan v. SLM Corp. (In re Homaidan)*, 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

The Defendants now seek dismissal of the Complaint, on grounds that it is plain from Mr. Homaidan's allegations that his Tuition Answer Loans "constitute obligations to repay funds received as educational benefits, and are therefore excepted from discharge under [Section] 523(a)(8)(A)(ii) of the Bankruptcy Code." Defs' Mem. at 23-24. While the Defendants acknowledge that courts have reached different conclusions on this and similar claims, they urge that there is no controlling authority that supports Mr. Homaidan's position and that the better reasoned cases are consistent with their argument that the Complaint should be dismissed.

And if the case is not dismissed, the Defendants invoke Federal Rule of Civil Procedure 12(f), and ask the Court to strike several paragraphs of the Complaint on grounds that they are "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). These include allegations that the Defendants engaged in a "'massive effort to defraud student debtors.'" Defs' Mem. at 50 (quoting Compl. ¶ 2). Alternatively, they ask the Court to strike these allegations on grounds that they amount to allegations of "nonspecific fraud" and do not meet the particularity requirement of Federal Rule of Civil Procedure 9(b). Defs' Mem. at 51.

Finally, the Defendants also argue that Mr. Homaidan waived his right to participate in class action proceedings. Defs' Mem. at 44. They cite Mr. Homaidan's promissory note, which states that "if any party elects to arbitrate a claim, both parties 'waive the right to . . . participate in a class action in a court or in arbitration.'" Defs' Mem. at 44 (quoting Ex. A at 9; Ex. B at 9). Here, the Defendants argue that since they elected to proceed in arbitration, Mr. Homaidan may not adjudicate his claims on a class-wide basis, and the Court should "strike his class allegations." Defs' Mem. at 44 (citing cases).[1]

---

[1] As noted above, the Court has denied the Defendants' motion to the extent that it sought to compel arbitration of these claims. *Homaidan v. SLM Corp. (In re Homaidan)*, 587 B.R. 428

In addition, the Defendants argue that this Court does not have jurisdiction over the claims of the alleged nationwide class because "only the issuing court can enforce the discharge order allegedly violated." Defs' Mem. at 45. The Defendants argue that "[a]lthough authorized by statute, a discharge in bankruptcy is ultimately effected when a court enters an order affording that relief to a debtor via injunction." *Id*. And the Defendants argue "only the court that issued an order or injunction has subject matter jurisdiction to hold in contempt a violator of that order or injunction.'" Defs' Mem. at 45 (quoting *Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 8 (D. Mass. 2003)).

## The Applicable Legal Standards

### *The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). *See Mills v. Polar Molecular Corp.*, 12 F.3d

---

(Bankr. E.D.N.Y. 2018). And the question of class certification is not presently before the Court for decision.

1170, 1174 (2d Cir. 1993).  But a court is not required to accept as true those allegations that amount to no more than legal conclusions.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (stating that when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may look to the complaint, its exhibits, and documents incorporated by reference).

*The Pleading Requirements of Federal Rule of Civil Procedure 9(b)*

Federal Rule of Civil Procedure 9(b), as incorporated by Bankruptcy Rule 7009(b), adopts a special pleading standard for allegations of fraud.

To allege a claim for fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  As the Second Circuit has found, "in order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  "A fraud claim must additionally express and spell out with reasonable clarity the specific factual misconduct relied on – not encased in a thicket of words or legalistic concepts – and should express the basis for the assertion of such charges."  *Spiegler v. Wills*, 60 F.R.D. 681, 682 (S.D.N.Y. 1973).

*The Categories of Nondischargeable Debt Under Bankruptcy Code Section 523(a)(8)*

Bankruptcy Code Section 523(a)(8) outlines several categories of student debt that may

be excluded from discharge.  It states that a debtor is not discharged from any debt that

constitutes:

(A)(i)   an educational benefit overpayment or loan made, insured or guaranteed
         by a governmental unit, or made under any program funded in whole or in
         part by a governmental unit or nonprofit institution; or

(ii)   an obligation to repay funds received as an educational benefit,
         scholarship or stipend; or

(B)      any other educational loan that is a qualified education loan, as defined in
         section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a
         debtor who is an individual.

11 U.S.C. §§ 523(a)(8)(A)(i), 523(a)(8)(A)(ii), 523(a)(8)(B).  Stated otherwise, Bankruptcy Code

Section 523(a)(8) "protects four categories of educational loans from discharge."  *Rumer v.*

*American Educational Servs. (In re Rumer)*, 469 B.R. 553, 561 (Bankr. M.D. Pa. 2012).

The first and second categories of debt excluded from discharge are described in

Bankruptcy Code Section 523(a)(8)(A)(i).  These are "two types of educational claims: (1)

educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit;

and (2) educational benefit overpayments or loans made under any program partially or fully

funded by a governmental unit or nonprofit institution."  *In re Decena*, 549 B.R. 11, 18 (Bankr.

E.D.N.Y. 2016), *rev'd in part on other grounds*, 562 B.R. 202 (E.D.N.Y. 2016).  The Defendants

do not argue that either of these categories applies here to exempt Mr. Homaidan's Tuition

Answer Loans from discharge, and do not seek dismissal on these grounds; and for that reason,

the Court notes them only in brief here.

A third category of student debt that is excluded from discharge is described in

Bankruptcy Code Section 523(a)(8)(A)(ii), and this is the focus of the Defendants' motion.  This

category encompasses "funds received as an educational benefit, scholarship or stipend."  The question of whether Mr. Homaidan's debt arises from "funds received as an educational benefit" is at the core of the Defendants' Motion to Dismiss, though as noted above, it is not the principal grounds for relief advanced in Mr. Homaidan's Complaint.

And finally, Bankruptcy Code Section 523(a)(8)(B) excludes from discharge any "qualified education loan as defined in section 221(d)(1) of the Internal Revenue Code of 1986." This Section is at the core of Mr. Homaidan's Complaint, though again, as noted above, it is not addressed in the Defendants' Motion to Dismiss, and for that reason, and again, the Court notes it only in brief here.

*The Elements of a Discharge Injunction Violation Claim*

Bankruptcy Code Section 524 describes the effect of a discharge.  It states that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524.  In order adequately to allege a claim for violations of a discharge injunction, a plaintiff-debtor must allege that the debtor received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge.  *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008).  Of course, for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt.  *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018) (stating that "[t]he discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt *that is discharged*" (emphasis added)); *In re Azevedo*, 506 B.R. 277, 283 (Bankr. E.D. Cal. 2014) (observing that "[s]howing a violation of a discharge order by definition requires showing specifically that the

order applies to the debt on which the violation is premised") (citing 11 U.S.C. § 524(a)(1)-(2));

*Otten v. Majesty Used Cars, Inc. (In re Otten)*, 2013 WL 1881736, at *6-8 (Bankr. E.D.N.Y.

May 3, 2013) (analyzing the scope of a discharge injunction issued in the plaintiff's bankruptcy

case in the context of determining whether the defendants' actions violated the discharge

injunction).

### The Standard To Strike Language from a Pleading Under Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits a party to seek to "strike from a pleading

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

Civ. P. 12(f).  "Motions to strike under [Rule] 12(f) are generally disfavored, and should not be

granted unless it is clear that the allegations have no possible bearing on the subject matter of the

litigation." *Aboeid v. Saudi Arabian Airlines, Inc.*, 2011 WL 2222140 at *1 (E.D.N.Y. June 1,

2011).

In considering a motion to strike, "the issues must be framed" in the context of the

plaintiff's claims. *Burger v. Health Ins. Plan of Greater New York*, 684 F. Supp. 46, 52

(S.D.N.Y. 1988).  As one court found, "[i]n order to prevail on a motion to strike, a [moving

party] must show that: (1) there is no question of fact which might allow the [claim] to succeed;

(2) there is no question of law which might allow the [claim] to succeed; and (3) the [moving

party] would be prejudiced by inclusion of the [claim]." *Houston v. Manheim-New York*, 2010

WL 744119, at *3 (S.D.N.Y. 2010).  As another court observed, a "movant must demonstrate all

of the following to succeed on a motion to strike: (1) that no evidence in support of the allegation

would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3)

that to permit the allegations to stand would result in prejudice to the movant." *Koch v. Dwyer*,

2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000).

A matter may also be stricken if it can be shown that no evidence in support of the allegation would be admissible. *Burger*, 684 F. Supp. at 52. Examples of inadmissible matters include matters that "reflect cruelly on the defendants' moral characters," and matters that may be prejudicial to a jury. *Id.* (quoting *Skadegaard v. Farrell*, 578 F. Supp. 1209, 1221 (D.N.J. 1984)).

## <u>Discussion</u>

In this Motion to Dismiss, the Defendants do not argue that Mr. Homaidan has failed to state a plausible claim for relief based on his allegations concerning the scope of Bankruptcy Code Section 523(a)(8)(B). Rather, they argue that the Court does not need to reach the question of the adequacy of those allegations, because his claims are blocked by a different obstacle – the nondischargeability terms of Bankruptcy Code Section 523(a)(8)(A)(ii).

That is, the Defendants argue that Mr. Homaidan's claims do not cross the threshold of plausibility because on the face of the Complaint, his Tuition Answer Loans are excluded from discharge as "obligations to repay funds received as an educational benefit." 11 U.S.C. § 523(a)(8)(A)(ii). Accepting all of the well-pleaded factual allegations of the Complaint as true, and drawing all reasonable inferences in favor of Mr. Homaidan as the nonmoving party, the Court considers whether the Defendants have shown that for these reasons, Mr. Homaidan's Complaint does not state plausible claims for relief.

### *Whether the Defendants Have Shown that Mr. Homaidan's First Claim for Relief Should Be Dismissed*

Mr. Homaidan's first claim for relief seeks a declaratory judgment, pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9), that certain of his debts were discharged by operation of law on April 9, 2009, because they were not student loans excluded from discharge by any subsection of Bankruptcy Code Section 523(a)(8). And in this Motion to Dismiss, the

Defendants argue that he does not state a plausible claim for relief because, based on the allegations of the Complaint, the debts at issue here – Mr. Homaidan's Tuition Answer Loans – are "an obligation to repay funds used for an educational benefit, scholarship, or stipend" within the scope of Bankruptcy Code Section 523(a)(8)(A)(ii).

The Parties' Arguments

The Defendants ask this Court to "dismiss Homaidan's Complaint with prejudice for failure to state a claim." Defs' Mem. at 52. They argue that the Court should dismiss the Complaint because it is plain from the allegations that the Tuition Answer Loans "constitute obligations to repay funds received as educational benefits, and are therefore excepted from discharge under [Section] 523(a)(8)(A)(ii) of the Bankruptcy Code." Defs' Mem. at 23-24. The Defendants state that Mr. Homaidan received funds to allow him to attend Emerson College, and that his loans were conditioned upon his attendance at Emerson College. Defs' Mem. at 24. In the promissory note, Mr. Homaidan certified that the loans were "qualified education loans," and he guaranteed that he would repay any funds not attributable to educational expenses. Defs' Mem. at 24. And they argue that Mr. Homaidan agreed in the same promissory note that he would pay $8,800 of the $11,800 that he requested directly to Emerson College for tuition, fees, room, and board, and "the remaining $3,000 would be used for 'educational expenses not paid directly' to the school." Defs' Mem. at 24.

The Defendants state that "Homaidan doesn't allege anywhere in his Complaint that he used the proceeds of his Tuition Answer Loans for anything *other* than educational expenses." Defs' Mem. at 24. They urge that the Tuition Answer Loans "enable[d] him to attend and graduate from Emerson College," and "support[ed] his personal decision to improve his life through higher education," and therefore, these loans "conferred 'educational benefits' on him."

Defs' Mem. at 24-25. For these reasons, the Defendants argue, Mr. Homaidan's Tuition Answer Loans are excepted from discharge under Bankruptcy Code Section 523(a)(8)(A)(ii).

The Defendants argue that "[f]aced with dischargeability claims similar to Homaidan's, most courts nationwide have found that private educational loans are not dischargeable in bankruptcy." Defs' Mem. at 26. For example, they argue that in *In re Desormes*, 569 F. App'x 42 (2d Cir. 2014), the Second Circuit found that a debt for a private bar study loan was excepted from discharge under Bankruptcy Code Section 523(a)(8)(A)(ii). Defs' Mem. at 26. They also argue that other courts have found that Tuition Answer Loans similar to Mr. Homaidan's were excluded from discharge. Defs' Mem. at 27 (citing *In re Edwards*, 561 B.R. 848, 855 n.11 (Bankr. D. Kan. 2016)). The Defendants claim that the "majority of courts across the country have concluded that a private student loan qualifies as an 'obligation to repay funds received as an educational benefit' under [Bankruptcy Code Section] 523(a)(8)(A)(ii)." Defs' Mem. at 27. And the Defendants argue that because Mr. Homaidan stated that the "proceeds of his Tuition Answer Loans would be used for educational expenses," he is precluded from alleging here that they are not funds used for an educational benefit, and therefore, not excluded from discharge. Defs' Mem. at 28-29.

The Defendants state that while the "weight of authority holds that private student loans are excepted from discharge under [Section] 523(a)(8)(A)(ii), . . . a minority position does exist." They argue that this "minority rationale," as set forth in *Campbell v. Citibank (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016), among other decision, reasons that if Section 523(a)(8)(A)(ii) applied to all "student loans," it would subsume all other subsections of Section 523(a)(8). Defs' Mem. at 29-30. The Defendants argue that *In re Campbell* and similar cases

are both not controlling authority here, and wrongly decided, and urge that this Court should not "follow [this] errant path" here.  Defs' Mem. at 29.

Rather, the Defendants urge that Bankruptcy Code Section 523(a)(8)(A)(ii), taken together with Bankruptcy Code Section 523(a)(8)(B):

> reinforce the broad scope of the discharge exception for student loans by making clear that: (1) loans incurred for the purpose of attendance at qualified educational institutions are exempt from discharge without regard to how or whether the funds were "received" as an "educational benefit"; (2) "funds received as educational benefits" may be provided in numerous forms; and (3) "educational benefits" may be received other than at qualified educational institutions.

Defs' Mem. at 31.  They argue that *In re Campbell* and other similar cases misapply the canon of *noscitur a sociis*, to reach the mistaken conclusion that an "obligation to repay funds received as an educational benefit" should "have a meaning similar to 'scholarship or stipend.'"  Defs' Mem. at 33.  And they state that the legislative history cited in *In re Campbell* and other cases is unreliable and selective.  Defs' Mem. at 36-37.

The Defendants also argue that the Supreme Court's decision in *Husky Electronics v. Ritz*, 136 S. Ct. 1581 (2016), supports their position.  In *Husky*, the Supreme Court found that interpreting "actual fraud" in Bankruptcy Code Section 523(a)(2)(A) to encompass other forms of fraud did not render duplicative the use of "actual fraud" in Sections 523(a)(4) and 523(a)(6).  In so holding, the Defendants argue, "the Supreme Court has rejected the argument that any interpretation creating potential overlap between discharge exceptions is improper."  Defs' Mem. at 32.

Mr. Homaidan responds that the Defendants' sweeping interpretation of the subsections of Bankruptcy Code Section 523(a)(8) is incorrect.  Reviewing these subsections, he states that "subsection (8)(A)(i) protects government loans; (8)(A)(ii) protects scholarships; and, (8)(B)

protects private loans made to accredited schools for certain qualified educational expenses." Plf's Opp. at 24.

Mr. Homaidan states that Section 523(a)(8)(A)(i) is not relevant here because the Tuition Answer Loans "are not made, insured or guaranteed by a governmental unit or nonprofit institution and Defendants do not argue otherwise." Plf's Opp. at 24. And he argues that Section 523(a)(8)(B) need not be considered here because, among other reasons, the Defendants do not assert that the debt at issue here is excluded from discharge as a qualified education loan. *Id.* Rather, Mr. Homaidan states, the Complaint alleges that the loans at issue here are "direct-to-consumer loans," and not qualified education loans under Bankruptcy Code Section 523(a)(8)(B). *Id.*

Mr. Homaidan also responds that the Defendants' only argument with respect to the nondischargeability of the Tuition Answer Loans is that they are "obligation[s] to repay funds received as an educational benefit." Plf's Opp. at 25. Mr. Homaidan states that this argument "recently was considered and rejected – twice – by bankruptcy judges in this very District in *In re Campbell*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016) (Craig, C.B.J.) and in *In re Decena*, 549 B.R. 11 (Bankr. E.D.N.Y. 2016) (Grossman, B.J.), *rev'd in part on other grounds*, 562 B.R. 202 (E.D.N.Y. 2016)." *Id.*

In addition, Mr. Homaidan responds that the Defendants are not successful in their "attempt to recast [his] private commercial loans as 'obligations to repay funds received as educational benefits' through boilerplate language in a promissory note." Plf's Opp. at 26 (quoting 11 U.S.C. § 523(a)(8)(A)(ii)). He argues that "boilerplate language" in his loan agreement cannot bring loans that are outside the definition of "funds received as educational benefits," within that definition. *Id.* Mr. Homaidan argues that "no amount of identifying

references and tangential connections to [his] education in the contractual language can transform this loan into something other than a loan." *Id.* He notes that in *Dufrane v. Navient Solutions, Inc. (In re Dufrane)*, 566 B.R. 28 (Bankr. C.D. Cal. 2017), the court held that the language in the defendant's promissory note stating "that the proceeds would be used to pay educational and living expenses . . . does not make the [loans at issue] the type of 'obligation to repay funds received as an educational benefit' that Congress sought to make nondischargeable under § 523(a)(8)(A)(ii)." *In re Dufrane*, 566 B.R. at 40.

And Mr. Homaidan responds that, as alleged in the Complaint, the Tuition Answer Loans are not "qualified education loans" under Bankruptcy Code Section 523(a)(8)(B), because they are "simple consumer loan[s], subject to the same discharge rules as any other consumer debt." Plf's Opp. at 27. He argues that the Tuition Answer Loans lack the "traditional characteristics" of educational loans. Plf's Opp. at 28. He notes that his Tuition Answer Loans were made through the Defendants' direct-to-consumer lending program, and not through the financial aid office of an eligible school. And for this reason, the loans were not limited in amount, and could be for sums that were "above and beyond the published cost of attendance." *Id.* Mr. Homaidan also notes that "the Tuition Answer Loans were assigned an adjustable interest rate at the time of origination, the same as any commercial loan." *Id.* He states that the Defendants originated his loans using methods similar to a consumer loan, by taking into consideration credit scores and other underwriting considerations. He argues that "[D]efendants should not be able to behave like commercial lenders while simultaneously receiving the same protection in bankruptcy as governmental student lending programs." *Id.*

In reply, the Defendants argue that because Mr. Homaidan's loans assisted him in obtaining a college education, "[t]hey therefore constitute obligations to repay funds received as an educational benefit, and are excepted from discharge for that reason." Reply at 11.

The Defendants also reply that, contrary to Mr. Homaidan's response that certain "boilerplate language" in his promissory note is not dispositive as to whether his Tuition Answer Loans come within the scope of Bankruptcy Code Section 523(a)(8), reference to loan documents "is the *precise* inquiry courts overwhelmingly make when considering the dischargeability of student loans." Reply at 13. And they argue that they have "affirmative, hand-written representations that Homaidan made on his applications" that support their position. *Id*. The Defendants argue that in the context of a dischargeability action, the purpose of a loan is controlling. *Id*. And here, they state, Mr. Homaidan's loan documents "unequivocally" support the determination that the Tuition Answer Loans are obligations to repay funds received as an education benefit. Reply at 14.

The Defendants also observe that "[w]hether Homaidan's Tuition Answer Loans are excepted from discharge under section 523(a)(8)(B) is not at issue in this motion . . . The Court need not consider it to resolve this Motion, and should therefore ignore Homaidan's inappropriate injection of irrelevant and incorrect information into the briefing." Reply at 15. Still, the Defendants state that the Tuition Answer Loans are qualified education loans, and the Defendants "will brief that argument at the appropriate time if necessary." *Id*.

And the Defendants urge that the standard form discharge order is "too unspecific to support contempt with respect to student loans absent a determination of dischargeability." Reply at 16. The Defendants note that Mr. Homaidan "has the threshold duty to file an adversary proceeding to obtain a dischargeability determination if he contends that his loans are

not covered by section 523(a)(8) . . . no liability for discharge violations can possibly arise until that determination is made," and that Bankruptcy Code Section 524, concerning the effect of a bankruptcy discharge, lacks a means of enforcement.  Reply at 17.

For these reasons, among others, the Defendants argue that Mr. Homaidan's student loans are excluded from discharge as "obligations to repay funds received as an educational benefit" under Bankruptcy Code Section 523(a)(8)(A)(ii), and therefore, that "[t]hose loans could not have been, and were not, discharged."  Defs' Mem. at 39.

<u>Whether the Threshold Requirements for a Declaratory Judgment Are Met</u>

First, the Court considers whether, in light of the allegations of the Complaint and the arguments advanced by the Defendants, the threshold requirements for a declaratory judgment claim are met.  Judiciary Code Section 2201 states that "in any case of actual controversy," a court may, "upon the filing of an appropriate pleading . . . declare the rights and other legal relations of any interested party seeking such declaration," and such declaration "shall have the force and effect of a final judgment or decree."  28 U.S.C. § 2201.

According to the Second Circuit, "[a] declaratory judgment action presents an actual controversy if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re Prudential Lines Inc.)*, 158 F.3d 65, 70 (2d Cir. 1998) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, it is plain from the Complaint that Mr. Homaidan has alleged a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance" of relief.  At the outset, the dispute is substantial.  The Complaint states

that the Defendants knowingly undertook collection efforts on debts that – he alleges – come within the Discharge Order entered in his bankruptcy case.  Mr. Homaidan alleges that he has been damaged, in a tangible way, by those efforts.  And he alleges that the Defendants' collection efforts violated this Court's Discharge Order, warranting a finding of civil contempt.

For these same reasons, the allegations of the Complaint show that the parties have "adverse legal interests," in light of these claims.  It is in Mr. Homaidan's interests that his Tuition Answer Loans be discharged under the applicable bankruptcy law, and it is in the Defendants' interests that this Court reach the opposite conclusion.  It is also in Mr. Homaidan's interests that his allegations of contempt be sustained, and just as much, in the Defendants' interests that they be rejected.

Finally, there is nothing speculative about the relief that Mr. Homaidan seeks or, for that matter, the dismissal that the Defendants urge.  The debts have been incurred, the Discharge Order has been entered, and the collection efforts have been undertaken.  The controversy presented has the necessary "immediacy and reality to warrant" consideration of declaratory relief.  The circumstances as alleged are immediate and real.  For these reasons, the Court concludes that the threshold requirements for a declaratory judgment claim are met.

Whether the Defendants Have Shown that Bankruptcy Code Section 523(a)(8)(A)(ii) Applies To
Exclude the Loans At Issue from Discharge as a Matter of Law

The starting point for the analysis of exceptions to discharge is the rule, as stated by the Supreme Court, that "exceptions to discharge 'should be confined to those plainly expressed,' and construed narrowly against the creditor."  *In re Campbell*, 547 B.R. at 54 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).  And equally important is, of course, the plain text of the statute.  But that does not mean that a court must read the words with blinders on.  Rather, as the Supreme Court has observed, it is a "fundamental canon of statutory construction

that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809 (1989).

Bankruptcy Code Section 523(a)(8)(A)(ii) excepts from discharge any "obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). But Section 523(a)(8) does not define "student loans." Nor does it define "educational benefit." Rather, it describes certain categories of debt that are not dischargeable in bankruptcy unless the debtor establishes that excepting the debt from discharge would impose an undue hardship on the debtor and his or her family, and those descriptions are particular and detailed.

In this light, the text of Section 523(a)(8)(A)(ii) merits attention. It describes "funds received as an educational benefit." This would be an unconventional way to discuss a loan. And the neighboring terms to "benefit" are "scholarship or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). These, plainly, do not describe a loan. The prior and following subsections refer to "loan made," "educational loan," and "qualified education loan." 11 U.S.C. §§ 523(a)(8)(A)(i), 523(a)(8)(B). That is, the term "loan" was part of the drafting process of Section 523(a)(8), and it seems reasonable to assume that if Congress intended this subsection to include loans, it would have said so.

Bankruptcy Code Section 523(a)(8)(A)(ii), both by its terms and read in context, does not sweep in all education-related debt, or all loans that support a student's efforts to gain the benefits of an education. If this Section had the breadth for which the Defendants advocate, it is hard to see where it would end – conceivably, it could encompass credit card debt that was incurred to purchase textbooks, personal loans that were used to pay for tuition and school fees, and any other debt that, in one way or another, facilitated a student's efforts to gain the

"benefits" of an "education." And plainly, this is not what Section 523(a)(8)(A)(ii) encompasses, or what the Bankruptcy Code permits, or what Congress intended.

In addition, this Court also agrees with those other courts, including courts within and outside this District, that have concluded that "an obligation to repay funds received as an educational benefit" must mean something other than a loan. As one bankruptcy court observed, this conclusion is necessary because another subsection, Section 523(a)(8)(B), excludes from discharge "qualified education loans." *In re Decena*, 549 B.R. at 19. Interpreting Section 523(a)(8)(A)(ii) to encompass a loan would result "in subsection 523(a)(8)(B) being subsumed by subsection 523(a)(8)(A)(ii), and [would] render[] subsection 523(a)(8)(B) superfluous." *Id.*

To similar effect, as the bankruptcy court concluded in *In re Campbell*, "funds received as an educational benefit" refers to certain kinds of education-related conditional grants, and not to *all* student loans. *In re Campbell*, 547 B.R. at 55. There, the court undertook a careful and thorough review of the case law and the legislative history of this exception to discharge, and held that "in the absence of plain meaning to the contrary, or compelling legislative history, 'educational benefit' must be understood to refer to something other than a loan, especially given that Congress uses the word 'loan' elsewhere in [Bankruptcy Code Section] 523(a)(8)." *Id.*

As the court reasoned:

> If the term "educational benefit" includes any student loan, there would be no need to specifically identify, as Congress did in § 523(a)(8)(i) and § 523(a)(8)(B), particular loans, extended by particular lenders, which are excepted from discharge, since § 523(a)(8)(A)(ii), if interpreted to extend to all education-related loans, would swallow both provisions.

*Id.* And the court observed that "[t]he concept which unites the three separate terms in the list in [Bankruptcy Code Section] 523(a)(8)(A)(ii) is that they all refer to types of conditional grants." *Id.*

More recently, in *McDaniel v. Navient Solutions, LLC (In re McDaniel)*, 590 B.R. 537

(Bankr. D. Colo. 2018), the court considered whether the debtors' Tuition Answer Loans were

excluded from discharge under Bankruptcy Code 523(a)(8)(A)(ii) as "an obligation to repay

funds received as an educational benefit, scholarship or stipend." *In re McDaniel*, 590 B.R. at

546. In denying Navient Solutions' motion to dismiss, the court concluded that "[t]he language

of the statute sets an educational benefit apart from a loan, and excepts from discharge a category

of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, 'educational

benefit[s]', 'scholarship[s]', and 'stipend[s].'" *In re McDaniel*, 590 B.R. at 548.

And the court observed:

> If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct – i.e., obligations
> that confer educational benefits are excepted from discharge – there would be no
> need for a separate provision excepting from discharge benefit overpayments or
> loans made, insured, or guaranteed by governmental units or non-profit
> institutions (Section 523(a)(8)(A)(i)). Nor would there be any need for a separate
> provision excepting from discharge "qualified education loans" (Section
> 523(a)(8)(B)). Navient's interpretation offends a "cardinal principle" of statutory
> construction, that courts have a "duty to give effect, if possible, to every clause
> and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir.
> 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation
> marks and brackets omitted)).

*Id*. As the court concluded, "based upon the plain language of the statute, this Court embraces

the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell*." *In re McDaniel*,

590 B.R. at 549 (citing cases).

Recent decisions of other courts are in accord. For example, in *Nypaver v. Nypaver (In*

*re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018), the court considered whether a loan from the

debtor's father to the debtor to pay for her undergraduate education was excluded from discharge

as an "educational benefit." There, the respondent – the debtor's father -- obtained federal

"Parent PLUS" loans to fund the debtor's undergraduate education. And the debtor agreed in a

promissory note – which the parties agreed was to be interpreted as a loan – to repay her father for the Parent PLUS loans.  The respondent father obtained a state court judgment against the debtor after she defaulted under the terms of the note.  During the pendency of the state court action, the debtor filed for bankruptcy, a discharge was entered, and the case was closed.  The debtor successfully moved to reopen her bankruptcy case to determine the dischargeability of the note.  Both parties moved for summary judgment, and the respondent argued that the note constituted an "educational benefit" that was excepted from discharge pursuant to Bankruptcy Code Section 523(a)(8)(a)(ii).

The *Nypaver* court undertook a close analysis of the text of Section 523(a)(8)(a)(ii), adopted the more narrowly crafted view, and found that the promissory note did not come within the scope of this section, for several reasons.  First, the court noted the discrepancy between the subjects of Section 523(a)(8)(a)(i) – "an educational benefit overpayment or loan" – and Section 523(a)(8)(a)(ii) – "an obligation to repay funds."  It found that "[a]lthough common usage of the word 'funds' could include the proceeds of a loan, the structure of *Section 523(a)(8)* suggests a more limited and tailored definition."  *In re Nypaver*, 581 B.R. at 437.  Second, the court observed that the word "as" in the phrase "an obligation to repay funds received as an educational benefit, scholarship, or stipend" in Section 523(a)(8)(a)(ii), suggests that the predicate of that subsection – "educational benefit, scholarship, or stipend" – informs the "character" of the funds owed, rather than the "purpose" of those funds.  *Id.*  The court also stated that the use of the word "as" casts doubt upon the "purpose of the loan" analysis employed by courts that give a broad meaning to the term "educational benefit."  *Nypaver*, 581 B.R. at 438.  Finally, the court found that Section 523(a)(8)(a)(ii), interpreted broadly, would render other subsections of Section 523(a)(8) "largely meaningless," "unnecessary," and "surplusage."  *Id.*

And in *Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018), the court similarly found the reasoning of *Nypaver*, among other cases, to be persuasive, and adopted the narrower interpretation of Section 523(a)(8)(A)(ii).  It found Section 523(a)(8)(A)(ii) to be "unambiguous," and stated that it excepts from discharge a "specifically tailored" category of debts.  *In re Crocker*, 585 B.R at 836.

The court found it instructive that Section 523(a)(8)(A)(ii) begins with the phrase "obligation to repay" and excludes the word "loan," noting that Congress employed the word "loan" elsewhere in Section 523(a)(8), and presumably made an intentional decision with respect to "when to use [the word 'loan'] and when to choose something different."  *Id.*  It found that Section 523(a)(8)(A)(ii) "must be read against the context of the entire language" of Section 523(a)(8), and therefore, that the phrase "obligation to repay" must be read to refer to something other than loans.  *Id.*  In addition, the court echoed the reasoning of the *Nypaver* court with respect to the use of the word "as" in the phrase "obligation to repay funds received as an educational benefit."  *Id.*  And the court looked to Black's Law Dictionary, defining "as" to mean "in the character or under the name of."  *In re Crocker*, 585 B.R at 836 (quoting BLACK'S LAW DICTIONARY 113 (6th ed. 1990)).  The court found that Congress's choice of language described a particular category of debts, and "did not include all loans that were in some way used by a debtor for education."  *In re Crocker*, 585 B.R at 836.  If it were otherwise, the court noted, "would not a loan for a car used by a commuter student to travel to and from school every day be nondischargeable under § 523(a)(8)(A)(ii)?  The answer is obvious."  *Id.*

Finally, in *Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1 (Bankr. D. Me. 2017), the court also adopted the narrow view of "educational benefit."  As in *Nypayer* and *Crocker*, the court carefully analyzed the statutory text, and was persuaded by the difference in

language between "obligation to repay" in Section 523(a)(8)(A)(ii), and "any other educational loan" and "educational benefit overpayment or loan" in Sections 523(a)(8)(B) and 523(a)(8)(A)(i) respectively. *In re Wiley*, 579 B.R. at 8. The court also cited "the principle that an interpretation yielding statutory surplusage should be avoided if a competing interpretation would give effect 'to every clause and word of a statute.'" *Id.* (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013)). And the court asked:

> Why would Congress exclude qualified education loans from discharge under section 523(a)(8)(B) if all educational loans were excepted from discharge under section 523(a)(8)(A)(ii)? And, why would Congress exclude government-backed loans from discharge under section 523(a)(8)(A)(i) if all educational loans were excepted under section 523(a)(8)(A)(ii)? [The creditor] has no compelling answers for these questions.

*Id.*

To be sure, some courts have assumed or decided, without significant explanation or analysis, that "educational benefit" in this context means any loan which relates in some way to education. The Defendants point to the Second Circuit's decision in *In re Desormes*, 569 F. App'x 42 (2d Cir. 2014), and state that "in the only circuit court opinion to have considered the issue, the Second Circuit held that a debt for a private bar study loan was excepted from discharge under § 523(a)(8)(A)(ii)." Defs' Mem. at 26. In this unpublished summary order, the Second Circuit observed, without significant discussion, that "[s]tudent loans are presumptively nondischargeable in bankruptcy", and concluded that "[c]ontrary to [the debtor's] argument, if a transfer of funds directly to the debtor is not necessary for the creation of a loan, there is little reason to think such a transfer is necessary for the loan to be received within the meaning of the statute." *In re Desormes*, 569 F. App'x at 42. That is, the court neither considered nor addressed the issues that are presented here.

And several decisions of bankruptcy courts outside this Circuit reach conclusions consistent with the Defendants' broad interpretation of Section 523(a)(8)(A)(ii), though few considered and addressed the arguments that are made here.  Some courts state that it is undisputed that the debt at issue is within the scope of Section 523(a)(8)(A)(ii).  Here, by contrast, the issues are contested and have been presented for this Court's consideration.  *See, e.g.*, *In re Edwards*, 561 B.R. at 855 n.11 (observing in a footnote that "[t]here is no dispute that the Navient loans fall within th[e] definition" of educational loans under Section 523(a)(8)(A)); *Micko v. Student Loan Fin. Corp. (In re Micko)*, 356 B.R. 210, 216 (Bankr. D. Ariz. 2006) (noting that "[i]t is undisputed that the Plaintiff committed himself to repay the money extended to him by the Defendant, as evidenced by the GOAL notes [and] it is undisputed that the loans at issue conferred an educational benefit on the Plaintiff.  Thus, on the plain language reading of the statute . . . the Plaintiff's loans are nondischargeable").

Other courts conclude, in substance, that if the loans supported or aided the debtor in his or her pursuit of the benefits of an education, including in meeting the costs of tuition, room and board, textbooks, tutoring, and a bar review course, then they are within the scope of the nondischargeability terms of Section 523(a)(8)(A)(ii).  Again, for the reasons stated above, this Court does not concur in this broad interpretation of this Section.  *See, e.g.*, *Brown v. Citibank, N.A. (In re Brown)*, 539 B.R. 853, 859 (Bankr. S.D. Cal. 2015) (finding that "[Section] 523(a)(8)(A)(ii) should be interpreted broadly to include a bar examination loan under the definition of 'educational benefit'"); *Beesley v. Royal Bank of Canada (In re Beesley)*, 2013 WL 5134404, at *5 (Bankr. W.D. Pa. Sept. 13, 2013) (stating that "[i]t is undisputed that the Debtor entered into the Royal Credit Line Agreement for Students (by its title, a loan for students), and consistent therewith, the proceeds were used for tuition, room and board, and books by the

Debtor.  Accordingly, this Court finds that the funds provided the Debtor with an educational benefit"); *Roy v. Sallie Mae (In re Roy)*, 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010) (finding that loans to pay for tutoring provided an "educational benefit" within the meaning of Section 523(a)(8) because, among other reasons, the statute "'must be read as encompassing a broader range of educational benefit obligations'" (quoting *In re Baiocchi*, 389 B.R. 828 (Bankr. E.D. Wis. 2008)); *Skipworth v. Citibank Student Loan Corp.* (*In re Skipworth)*, 2010 WL 1417964, at *2 (Bankr. N.D. Ala. Apr. 1, 2010) (concluding that "the debtor's obligation . . . is clearly 'an obligation to repay funds received as an educational benefit' for purposes of § 523(a)(8)(A)(ii) in that Citibank loaned funds to the debtor to assist the debtor with his educational expenses i.e. the debtor's bar review course").

And still other courts simply conclude that Section 523(a)(8)(A)(ii) merits a broad interpretation.  *See, e.g.*, *Shaw v. EduCap, Inc. (In re Shaw)*, 2015 WL 1000213, at *3 (Bankr. S.D. Tex. Mar. 3, 2015) (stating generally that "unless the debtor affirmatively secured a hardship determination, the discharge order will not include a student loan debt"); *Brown v. Rust (In re Rust)*, 510 B.R. 562, 568, 571-72 (Bankr. E.D. Ky. 2014) (observing that "[u]nder the plain language of § 523(a)(8)(A)(ii), the debt herein is an 'obligation to repay funds received as an educational benefit'"); *Carow v. Chase Student Loan Serv. (In re Carow)*, 2011 WL 802847, at *4 (Bankr. D.N.D. Mar. 2, 2011) (concluding that "[g]iven the breadth afforded to the phrase 'educational benefit,' these facts clearly establish that the Chase loans were used to provide Debtor an educational benefit").

But, as the court concluded in *In re Campbell*:

This broad interpretation of the exception to discharge in § 523(a)(8)(A)(ii) would render superfluous most of the other provisions of § 523(a)(8).  If the term "educational benefit" includes any student loan, there would be no need to specifically identify, as Congress did in § 523(a)(8)(A)(i) and § 523(a)(8)(B),

> particular loans, extended by particular lenders, which are excepted from discharge, since § 523(a)(8)(A)(ii), if interpreted to extend to all education-related loans, would swallow both provisions. The cases which have failed to address this issue . . . are for this reason unpersuasive.

*In re Campbell*, 547 B.R. at 54-55. This Court, too, finds those cases to be unpersuasive.

And this Court, as well, joins that "trending narrower view" of the scope of Section 523(a)(8)(A)(ii). That is, both the text and the context of Section 523(a)(8)(A)(ii) indicate that it encompasses "alternatives to the typical debtor-creditor relationship in the education context. These alternatives encompass cash benefit programs, such as veteran educational benefits, stipends for teaching assignments, conditional grants, cash scholarships and other obligations that are distinct from traditional student loans." *In re Decena*, 549 B.R. at 20. This Court concludes that, in substance, an "obligation to repay funds received as an educational benefit" refers to the wide range of benefits that aid a student in meeting the costs of his or her education, often with conditions and prospective obligations attached. But it does not include *all* debt that confers the benefits of an education on the borrower. *See Golden v. National Collegiate Trust (In re Golden)*, Adv. Pro. No. 17-01005, slip op. (Bankr. E.D.N.Y. January 31, 2019) (denying defendants' motion to dismiss).

Here, the record shows that Mr. Homaidan alleges that the Tuition Answer Loans were "direct-to-consumer" loans, and not conditional grants. That is, his allegations show that the debt at issue is not "an obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). The record also shows that Mr. Homaidan seeks a declaratory judgment that the Tuition Answer Loans were discharged in his bankruptcy case, upon the entry of the discharge order, and by implication, that they were not excluded from discharge by Section 523, including Bankruptcy Code Section 523(a)(8)(A)(ii).

While it is far from clear whether Mr. Homaidan can prove his allegations, that question is not before the Court on this Motion to Dismiss. Rather, the question posed by this motion is whether Mr. Homaidan's claim for a declaratory judgment that his Tuition Answer Loans were discharged in his bankruptcy case is rendered implausible by the nondischargeability terms of Bankruptcy Code Section 523(a)(8)(A)(ii). And here, at this stage in these proceedings, the Court concludes that the Defendants have not established that this claim is implausible. For these reasons, the Motion to Dismiss the First Claim for Relief is denied.

*Whether the Defendants Have Shown that Mr. Homaidan's Second Claim for Relief Should Be Dismissed*

Mr. Homaidan's second claim for relief seeks an award of damages and attorneys' fees and costs for the Defendants' willful violations of the discharge injunction pursuant to Bankruptcy Code Sections 524 and 105. Compl. ¶ 83.

Bankruptcy Code Section 524(a)(2) states that "[a] discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." As one court recently observed, "[b]ankruptcy without the discharge is like a car without an engine; a useful tool rendered ineffective." *Roth v. Butler University (In re Roth)*, 594 B.R. 672, 677 (Bankr. S.D. Ind. 2018). In order to state a claim that a creditor violated Bankruptcy Code Section 524(a)(2), a plaintiff must allege that the debtor received a discharge, the defendant received a notice of the discharge, and the defendant intended the acts that violated the discharge.

The Defendants argue that Mr. Homaidan's claim that they violated the Discharge Order should be dismissed for the same reason that his first claim for relief should be dismissed – namely, that his Tuition Answer Loans were not discharged in his bankruptcy case. The

Defendants also argue that Mr. Homaidan can recover damages for discharge injunction violations only through a claim for contempt of court, not the claim that he has brought here. And the Defendants argue that for a contempt claim to lie, the order at issue must be clear and unambiguous, and here, the Discharge Order is not.  For these reasons, the Defendants argue that Mr. Homaidan's allegations cannot support a claim for what amount to contempt sanctions against the Defendants.

Mr. Homaidan responds that the argument that there is no private right of action to address a discharge violation through an adversary proceeding is "a red herring."  Plf's Opp. at 29.  Additionally, he states that the Defendants argue that the Court's Discharge Order is "too vague to support a contempt finding," but if the Defendants are correct in this assertion, then "there could never be a contempt of a discharge order because every discharge order is vague." Plf's Opp. at 31.

Mr. Homaidan also responds that bankruptcy courts have the power to enforce discharge injunctions through adversary proceedings such as this.  He argues that "[t]here is no question that bankruptcy courts have the power to enforce discharge injunctions regardless of any specified private right of action," and "there is no question that this is a proper action to address the alleged discharge injunction violations."  Plf's Opp. at 29-30.  And he states that the argument that the Court's Discharge Order is too vague to support a contempt finding is simply incorrect and would, in substance, strip the Court's power to enforce its own discharge orders. He also responds that the Defendants knew that his Tuition Answer Loans would be discharged, as indicated by, among other things, their statements to investors.

At the outset, the Court considers whether an adversary proceeding is a permissible means to seek redress for a claimed violation of the discharge order entered in a debtor's

bankruptcy case.  Here, the Court is persuaded that an adversary proceeding is a permissible path to seek this relief, for several reasons.

First, a bankruptcy court may "issue any order, process, or judgment necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105.  Accordingly, a bankruptcy court may issue a judgment, which is "a form of relief that is the result of an adversary proceeding, not the result of a motion," to enforce its statutory contempt powers and effectuate compliance with 11 U.S.C. § 524(a).  *In re Anderson*, 550 B.R. 228, 240 (S.D.N.Y. 2016) (concluding that "an adversary proceeding is an appropriate vehicle to enforce a discharge injunction").

Second, and as another bankruptcy court has reasoned, to dismiss this case because the debtor seeks relief through an adversary proceeding rather than by motion would "elevate form over substance [as] an adversary proceeding provides [the Defendants] with more, not less, procedural protection" than would a motion for contempt.  *West v. Home Sav. & Loan (In re West)*, 2015 WL 3962569, at *3 (Bankr. N.D. Ohio June 29, 2015).

Notably, this Court's decision in *In re McKenzie-Gilyard*, 388 B.R. 474 (Bankr. E.D.N.Y. 2007), cited by the Defendants, is consistent with this conclusion.  There, the plaintiff made claims for violation and contempt of the discharge injunction, and the Court noted that "[a] plaintiff may bring a claim for a violation of the discharge injunction in the form of an action for a sanction for civil contempt."  *In re McKenzie-Gilyard*, 388 B.R. at 481.

But that is not the same as a finding that a claim for a discharge injunction violation may *only* be brought as a motion for contempt.  Many courts have considered requests for damages for discharge injunction violations in the form of adversary proceedings, including courts in this District and Circuit.  *See, e.g.*, *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL

3608891, at *9 (Bankr. S.D.N.Y. July 22, 2014) (denying to dismiss an adversary proceeding alleging discharge violation on behalf of the plaintiff and purported nationwide class); *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 491 (Bankr. S.D.N.Y. 2007) (denying the defendant's motions to dismiss adversary proceedings alleging discharge violations).  And whether the claim is styled as one for violation of the Discharge Order – as it is in the Complaint – or as one for contempt for violation of the Discharge Order, Mr. Homaidan will be required first to plead, and then to prove, the grounds for his entitlement to relief.

Next, the Court considers whether the Court's Discharge Order is too vague to support a claim for relief.  Here again, the Court is persuaded that the Discharge Order is not too vague to provide a basis for Mr. Homaidan's claim for relief, for several reasons.  Such orders, and the Discharge Order here, are plain and unambiguous.  To be sure, a proceeding arising from an alleged discharge violation may well raise a host of issues.  As one noted commentator observes, "[a] proceeding to enforce the discharge injunction is a core proceeding . . . and courts should readily reopen a closed bankruptcy case to ensure that the essential purposes of the discharge are not undermined."  4 *Collier on Bankruptcy* ¶ 524.02[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018).  And in such proceedings, "[o]ften, a major issue . . . is whether the debt is one that was discharged."  *Id.*  But that does not mean that the discharge injunction generally, or the Discharge Order here, is somehow vague.

And finally, the Court considers whether the elements of a discharge violation have been adequately set forth in the Complaint.  In order adequately to allege a claim for violations of the discharge injunction, the plaintiff must allege that he or she received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge. *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008).  And the debt at issue must be within

the scope of the debtor's discharge.  As one court noted, "[s]howing a violation of a discharge order by definition requires showing specifically that the order applies to the debt on which the violation is premised."  *In re Azevedo*, 506 B.R. at 283.  *See In re Eppolito*, 583 B.R. at 826; *In re Otten*, 2013 WL 1881736, at *6-8.

Here, the record shows that Mr. Homaidan alleges that he received a discharge.  In particular, the Complaint states that on December 4, 2008, Mr. Homaidan filed a Chapter 7 bankruptcy case and "properly scheduled the Tuition Answer Loans on Schedule F of his petition."  Compl. ¶ 44.  The Complaint also states that "[o]n April 9, 2009, this Court ordered discharge of all Plaintiff's properly scheduled pre-petition debt."  Compl. ¶ 45.  And as the Court has already concluded, Mr. Homaidan has described facts that establish a plausible basis to conclude that his Tuition Answer Loans are not "an obligation to repay funds received as an educational benefit, scholarship, or stipend" that would be excluded from discharge by Bankruptcy Code Section 523(a)(8)(A)(ii).

The record also shows that Mr. Homaidan alleges that the Defendants received notice of the discharge in his case.  Specifically, he alleges that the "Defendants were duly notified of the discharge of all of Homaidan's pre-petition debts."  Compl. ¶ 46.  And the Complaint states that "[o]n December 6, 2008 Defendant sent correspondence to Homaidan stating that they received notice of the bankruptcy filing and requested a copy of the 'the first meeting of creditors.'"  Compl. ¶ 48.

And finally, the record shows that Mr. Homaidan alleges that the Defendants intended the acts that violated the discharge.  In particular, the Complaint states, among other allegations, that the Defendants took steps to collect the Tuition Answer Loans including by correspondence on December 11, 2008, and by correspondence and notices sent "at least on, August 3, 2010,

September 6, 2010, September 8, 2010 and July 5, 2011." Compl. ¶ 50. He alleges that these

loans were made "disproportionately to low-income students who lack the resources and

knowledge to understand the differences between loans that are or are not dischargeable or to

seek relief in an adversary proceeding, which is an expensive and time consuming undertaking."

Compl. ¶ 31. And Mr. Homaidan alleges:

> Defendants represented to student debtors that the Bankruptcy Code prohibited
> discharge of *any* loan made to any person for any educational purpose. . . .
> Defendants also failed to disclose facts and information that would inform debtors
> of the fact that private loans were only non-dischargeable if they met the
> requirements of [Bankruptcy Code] section 523(a)(8)(B), and in particular, that
> Class Members' non-qualified loans were, in fact, discharged in bankruptcy.

Compl. ¶ 28.

Mr. Homaidan alleges that at the same time that these collection efforts were under way,

the Defendants "also were securitizing these debts for sale on the secondary market," and

making very different statements to investors. Compl. ¶ 34. The Complaint states:

> Defendants were rightly concerned that if they represented to investors that all
> private student loans were non-dischargeable in bankruptcy, sophisticated
> investors would discover the misrepresentation (through an examination of the
> statute), and the issuers would be liable for securities violations. Defendants and
> other major lenders and underwriters therefore included in student loan asset-
> backed securities' prospectuses language warning investors that, pursuant to
> section 523(a)(8), only private loans made for qualified expenses were excepted
> from discharge.

Compl. ¶ 34.

In sum, and as with Mr. Homaidan's first claim for relief, the question posed by this

motion is whether Mr. Homaidan's claims that the Defendants violated the discharge injunction

are rendered implausible by the nondischargeability terms of Bankruptcy Code Section

523(a)(8)(A)(ii). And here again, at this stage in these proceedings, the Court concludes that the

Defendants have not established that this claim is implausible.  For these reasons, the Motion to Dismiss the Second Claim for Relief is denied.

*Whether the Defendants Have Shown that the Court Should Strike Portions of the Complaint Pursuant to Federal Rule of Civil Procedure 12(f)*

The Defendants request that the Court strike paragraphs 2 and 13 to 55 of the Complaint pursuant to Federal Rule of Civil Procedure 12(f).  Rule 12(f) permits a party to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Courts have found that in order to determine whether to strike material from a pleading, the issues must be framed in the context of the plaintiff's claims, and material may be stricken if it is shown that no evidence in support of the allegations would be admissible.  *Burger*, 684 F. Supp. at 52.

The Defendants argue that Mr. Homaidan makes allegations that the they engaged in a "massive effort to defraud student debtors," and that these allegations, among others, should be stricken because they are "inappropriate for a short and plain statement of the claims."  Defs' Mem. at 50.  These paragraphs, the Defendants argue, also amount to allegations of "nonspecific fraud."

Mr. Homaidan responds that the Court should not strike any portion of the Complaint. Plf's Opp. at 40.  He argues that the background to Bankruptcy Code Section 523(a)(8) and the actions of the Defendants are relevant to this action.  Mr. Homaidan also states that he "believes that through discovery he will prove his allegations."  Plf's Opp. at 40.  And he claims that the Court should "not strike any allegations in a motion to dismiss before discovery has taken place . . . [He] will demonstrate a knowing violation of the discharge injunctions and the allegations reflect that intent."  Reply at 40.

The Complaint contains statements, among others, that the Defendants "used the presumption of dischargeability to mislead student borrowers," and that the loans at issue "are disproportionately issued to low-income students who lack the resources and knowledge to understand the differences between the loans that are or are not dischargeable." Compl. ¶¶ 27, 31. He also alleges that the Defendants represented to sophisticated investors that the loans may be discharged in bankruptcy, while representing to student borrowers that they were not dischargeable in bankruptcy. Compl. ¶ 34.

First, the Court must frame these statements in the context of Mr. Homaidan's claims for relief. Here, the Court notes that Mr. Homaidan has alleged that certain of his debts are not nondischargeable loans under any subsection of Bankruptcy Code Section 523(a)(8). And he also alleges that the Defendants committed willful violations of the discharge injunction.

The Court also must consider whether any material in support of the statements would be admissible. Here, the Court observes that evidence of the Defendants' knowledge of the dischargeability of Mr. Homaidan's loans could potentially be admissible in the determination of his claims for willful violations of the Discharge Order. And here again, at this stage in these proceedings, the Court concludes that the Defendants have not established grounds to strike paragraphs 2 and 13 to 55 of the Complaint for containing redundant, immaterial, impertinent, or scandalous matter. For these reasons, the motion to strike portions of Mr. Homaidan's Complaint pursuant to Federal Rule of Civil Procedure 12(f) is denied.

*Whether the Defendants Have Shown that the Court Should Strike Portions of the Complaint Pursuant to Federal Rule of Civil Procedure 9(b)*

In the alternative, the Defendants also ask this Court to strike several paragraphs of Mr. Homaidan's complaint on grounds that these paragraphs contain allegations of "nonspecific fraud" and fail to meet the particularity requirement for averments of fraud as set forth in Federal

Rule of Civil Procedure 9(b), made applicable here by Bankruptcy Rule 7009. Defs' Mem. at 50, 51.

At the outset, it is worth noting that in general, Rule 9(b) establishes a heightened pleading standard for claims that sound in fraud. It is not customarily invoked as a basis to strike language from a pleading. Rule 9(b) provides that in order to allege a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To allege with particularity a claim for fraud, the Second Circuit has held that "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

The Defendants argue that paragraphs 2 and 13 to 55 of the Complaint contain allegations of "nonspecific fraud." Defs' Mem at 50. And they argue these paragraphs do not meet the heightened pleading standard of Rule 9(b). Defs' Mem at 51. Mr. Homaidan responds that he "has not alleged a claim of fraud, and need not meet any heightened pleading standard." Plf's Opp. at 3. The Defendants reply that "while he doesn't explicitly plead the cause of action, the basis of [Mr.] Homaidan's claims is fraud." Reply at 30.

Here, a review of the Complaint shows that Mr. Homaidan asserts claims for a declaratory judgment for violations of the Discharge Order, and for related relief. And here too, at this stage in these proceedings, the Court concludes that the Defendants have not shown that Mr. Homaidan states claims that invoke Rule 9(b)'s heightened pleading standard for fraud, or that Rule 9(b) requires the dismissal of these claims, or that Rule 9(b) provides a basis to strike

41

any of the allegations in the Complaint.  For these reasons, the motion to strike portions of Mr.

Homaidan's Complaint pursuant to Federal Rule of Civil Procedure 9(b) is denied.

**<u>Conclusion</u>**

Based on the entire record and for the reasons stated herein, the Court finds that the

Defendants have not shown that the Plaintiff, Hilal Khalil Homaidan, has not stated plausible

claims for relief.  The Court also finds that the Defendants have not shown that paragraphs 2 and

13 to 55 of the Complaint should be stricken pursuant to Federal Rules of Civil Procedure 12(f)

or 9(b).  For these reasons, the Defendants' Motion to Dismiss is denied.

An order in accordance with this Memorandum Decision will be entered simultaneously

herewith.



**Dated: Brooklyn, New York**
**January 31, 2019**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**