UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HOMAIDAN fka Helal K. Homaidan<br><br>                Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>                Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HOMAIDAN on behalf of himself and all others similarly situated<br><br>                Plaintiff,<br><br>  v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>                Defendants. | Adv. Pro. No. 17-1085<br><br>**NATIONWIDE CLASS ACTION COMPLAINT** |

## **PLAINTIFFS' AMENDED COMPLAINT**

1. Plaintiffs Hilal K. Homaidan, also known as Helal K Homaidan ("Homaidan" or "Plaintiff") and Reeham Youssef also known as Reeham Navarro Youssef and Reeham N. Youssef ("Youseff" or "Plaintiff"), on behalf of themselves and those similarly situated, by and through their undersigned counsel, hereby file this amended complaint upon personal knowledge as to those matters within their knowledge, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

2.	For the last ten years, Sallie Mae. Inc., Navient Solutions LLC and Navient Credit Finance Corporation ("Defendants") have been engaged in a massive effort to defraud student debtors and subvert the orderly working of the bankruptcy courts. Specifically, Defendants have been originating and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans. Defendants have done this in order to discourage debtors from seeking their constitutional right to relief under Title 11 of the Bankruptcy Code and to allow creditors to continue to collect on discharged loans after a debtor's bankruptcy. In order to effectuate this illegality, Defendants have appropriated a legal presumption for a class of debt that they know is not entitled to that presumption, thereby using the authority of the bankruptcy courts to cloak their fraud in the color of law and escape detection. Defendants are willfully and maliciously engaged in a pattern and practice that they know subverts the proper workings of the bankruptcy process. Plaintiffs bring this action to enforce their rights and the rights of those similarly situated under the law.

## PARTIES

3.	HILAL K. HOMAIDAN is an individual and a resident of this district who filed for relief under Title 11 of the Bankruptcy Code in this Court in 2008.

4.	REEHAM YOUSSEF is an individual and a resident of the district who filed for relief under Title 11 of the Bankruptcy Code in this Court in 2014.

5.	The CLASS MEMBERS are similarly situated individuals who have declared bankruptcy since 2005 in the various districts of the United States with loans originated and/or serviced by Defendants that do not meet the definition of a non-dischargeable qualified education loan in IRC 221(d) and 11 U.S.C. § 523(a)(8)(B).

6. SALLIE MAE, INC. is a business entity that in the ordinary course of business regularly, on behalf of itself and others, engaged in the servicing and collection of student debt. Upon information and belief, SALLIE MAE, INC. is or was a wholly owned subsidiary of SLM CORPORATION with its principle place of business in Delaware.

7. NAVIENT SOLUTIONS, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. NAVIENT SOLUTIONS, LLC is a national company with its principal place of business in Wilkes-Barre, Pennsylvania.

8. NAVIENT CREDIT FINANCE CORPORATION is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the origination, servicing and collection of consumer debt. NAVIENT CREDIT FINANCE CORPORATION has a principal place of business at 2001 Edmund Halley Drive, Reston, VA, 20191.

## JURISDICTION AND VENUE

9. This Adversary Proceeding is brought under Case Number 08-48275.

10. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding.

11. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 105 and Federal Rules of Bankruptcy Procedure Rule 7001(9).

12. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

## STATEMENT OF FACTS

**Section 523(a)(8) of the Bankruptcy Code.**

13. In 1978, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship) to address a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation.

14. 11 U.S.C. § 523(a)(8) excluded from bankruptcy discharge government loans that became due more than five years prior to the bankruptcy petition, repayment of which would not cause "undue hardship" on the debtor.

15. Subsequent amendments, which lengthened and eventually eliminated the five-year non-dischargeability time frame for loans by the federal government, have made it has become increasingly difficult for debtors to ever attain discharges of those student loan debts.

16. While there is considerable debate about how significant the problem of students abandoning their loans through bankruptcy was, it is clear that the purpose of the 1978 legislation and subsequent amendments was to protect government issued student loans from bankruptcy discharge.

17. That changed in 2005 following extensive lobbying by private education lenders and debt collectors. The Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA") expanded the definition of non-dischargeable student debt to include "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 11 U.S.C. §523(a) (8) (B).

18. Section 221 (d)(1) of the Internal Revenue Code of 1986 (26 U.S. C. §221(d)(1)) defines a qualified educational loan as one that is used to pay for "qualified higher education expenses." In turn, a "qualified higher education expense" is one that is used to pay for the cost of attendance at a qualified educational institution. 26 U.S.C. §221(d)(2).

19. Thus, BAPCPA made some private student loans dischargeable, but only loans that were made for qualified higher education expenses at a qualified educational institution ("Qualified Education Loans").

20. Originally, the private lending mirrored the federal loans in that the loans were paid directly to the qualified educational institution, which would then ensure that the funds were used only for qualified expenses. However, the private lenders chafed under what they believed were excessive bureaucratic hurdles; the paperwork was burdensome, schools would not certify sums in excess of tuition, and it prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation and thus were not qualified educational institutions.

21. To remove those burdens and expand their lending pool, lenders initiated new programs that bypassed the qualified schools completely and instead lent money directly to student borrowers. By circumventing the schools private lenders, including Defendants, significantly increased the total amount of loans that they originated by lending money that exceeded the scope of 11 U.S.C. §523(a)(8)(B) in that the loans were not used for (or exceeded) the cost of attendance at a qualified educational institution.

22. However, the increased ease of lending and total scope of originated loans came at a price. While the loans were much easier to originate (because they were not required to meet the certification requirements imposed by 11 U.S.C. §523(a)(8)(B)) and were potentially larger, they were no longer within the scope of non-dischargeability under that statue. Instead, these loans

("Non-Qualified Education Loans") were simply unsecured consumer debts (like student credit card debt) and thus were discharged automatically upon entry of a discharge injunction.

**Application of § 523(a)(8) Relies on Creditor Good Faith**

23. Prior to the 2005 amendment, § 523(a)(8) was easy to apply because essentially all student loans were made by the federal government under the guidelines for non-dischargeability. Thus, if a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable.

24. However, private lenders were only given qualified protection in 2005, and section 523(a)(8)(B) only excepts private education loans from discharge that are made for qualified higher education expenses at a qualified educational institution; any other private loan is unsecured and is discharged in bankruptcy in the same manner as any other unsecured debt.

25. This situation created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and to deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge when some were not.

26. Section 523(a)(8) is "self-executing" and thus relies on the good faith and honesty of creditors to apply correctly. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a). Importantly, the discharge order does not specifically state which loans, if any, are presumptively accepted from discharge. Rather, it states only that the order does not discharge some debts, including "debts for most student loans."

**Defendants Used the Presumption of Non-Dischargeability to Mislead Student Borrowers**

27. Not content with the protections won from Congress in 2005, Defendants devised a scheme to manipulate this presumption of non-dischargeability and deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, both accredited and unaccredited, were excepted from discharge.

28. To effectuate this fraud, Defendants represented to student debtors that the Bankruptcy Code prohibited discharge of <u>any</u> loan made to any person for any educational purpose. As described above, that is not true and only private loans that met the requirements of section 523(a)(8)(B) were non-dischargeable. Defendants also failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and in particular, that Class Members' non-qualified loans were, in fact, discharged in bankruptcy.

29. Thus, a law that was originally designed to prevent students from taking advantage of the bankruptcy system by borrowing and then discharging debt that was incurred in attending an accredited school, instead enabled unscrupulous creditors to defraud vulnerable and unsophisticated student borrowers.

30. Defendants provided Consumer Education Loans, *inter alia*, through the Tuition Answer loan program. This lending program was a "Direct-to-Consumer" loan program that originated money to consumers outside the confines of the financial office and were made in excess of the school's published "Cost of Attendance."

31. The loans at issue here are disproportionately issued to low-income students who lack the resources and knowledge to understand the differences between loans that are or are not dischargeable or to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking.

32. In fact, only one tenth of one percent (0.1%) of debtors in bankruptcy seek to discharge their student debts. In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

33. As alleged above, Defendants either misrepresented or failed to disclose facts and information related to the dischargeability of private loans. Those acts and/or omissions were in stark contrast to information supplied to more sophisticated parties.

34. During the same time that they were misrepresenting the nature of student loans to debtors, Defendants also were securitizing these debts for sale on the secondary market. Defendants were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would discover the misrepresentation (through an examination of the statue), and the issuers would be liable for securities violations. Defendants and other major lenders and underwriters therefore included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge. For example, a Navient Supplementary Prospectus to Student Loan Trust 2015-3 Prospectus Dated June 3, 2015 specifically represented:

> Currently, private education loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy. Private education loans can become dischargeable if the borrower proves that keeping the loans non-dischargeable would impose an undue hardship on the debtor and the debtor's dependents. <u>In addition, direct-to-consumer loans are disbursed directly to borrowers based upon certifications and warranties contained in their promissory notes, including certification of the borrower's cost of attendance. This process does not involve school</u>

8

<u>enrollment verification as an additional criteria and, therefore, may be subject to some additional risk that the loans were not used for qualified education expenses and thus could become dischargeable in a bankruptcy proceeding.</u> If you own any notes in a related issuing entity, you will bear any risk of loss resulting from the discharge of any borrower of a private education loan to the extent the amount of the default is no. (emphasis added).

35. Thus, Defendants were aware of the confusion that could exist even for sophisticated parties with regard to the dischargeability of private student loans and made affirmative disclosures in that area, but made no such disclosures to debtors who were being pursued in an attempt to collect discharged debt.

**<u>Plaintiff Homaidan's Loans Were Unsecured Loans That Were Discharged In Bankruptcy</u>**

36. From 2003-2007, Homaidan was a student at Emerson College in Boston, Massachusetts.

37. In the fall of 2006, Homaidan withdrew from Emerson. Homaidan returned to Emerson in the spring of 2007, and completed his undergraduate degree.

38. The "Cost of Attendance" at Emerson during the spring of 2007 was $19,372.

39. During the 2006-2007 academic term, Homaidan received $4,800 in scholarship money from Emerson College.  Homaidan also borrowed $22,100 in school-certified loans from Defendants.

40. In addition, Defendants lent Homaidan an additional $12,567 in "direct to consumer" Tuition Answer loans that were made outside the financial aid office and were not made for qualified education expenses (the "Tuition Answer Loans").

41. These Tuition Answer Loans were not made solely for the "cost of attendance" accordingly were not "qualified education loans" as that term is defined in 11 U.S.C. § 523(a)(8)(B).

42. Defendants' actions demonstrate that it was aware that the Tuition Answer Loans were not qualified educational loans that were exempt from discharge. 26 U.S.C. § 6050S obligates Defendants to issue 1098-E tax forms to all customers with "qualified education loans" in order to allow customers to deduct interest payments from their federal taxes. Upon information and belief, Defendants never issued Homaidan a 1098-E for any of his Tuition Answer Loans and did not schedule any of the Tuition Answer Loans as "qualified education loans" that would require a 1098-E form to be issued in connection with interest payments.

43. Thus, Defendants are estopped from claiming these loans were "qualified education loans" owing to their failure to comply with federal law, and denying Plaintiff the benefit of receiving tax credits against payments.

44. In December 4, 2008, Homaidan sought relief under Title 11 in this Court in Case No. 08-48275: *In re Hilal K. Homaidan*. Homaidan properly scheduled the Tuition Answer Loans on Schedule F of his petition.

45. On April 9, 2009, this Court ordered discharge of all Plaintiff's properly scheduled pre-petition debt.

46. Defendants were duly notified of the discharge of all of Homaidan's pre-petition debts.

47. Despite their legal burden to do so, Defendants did not file an adversary proceeding to contest the dischargeability of the Tuition Answer Loans.

48. However, instead of treating the Tuition Answer Loans as discharged (because they were unsecured debt that was discharged in bankruptcy and not properly contested), Defendant Navient Solutions, Inc., thereafter engaged the services of various collection firms to attempt to collect on this discharged debt in violation of this Court's Order and the Bankruptcy Code. On

December 6, 2008 Defendant sent correspondence to Homaidan stating that they received notice of the bankruptcy filing and requested a copy of "the first meeting of creditors."

49. On December 11, 2008 Defendants sent correspondence to Homaidan requesting payment in the amount of $1,525.74. Both of Homaidan's Tuition Answer Loans were listed in the correspondence demanding payment.

50. Defendants continued to send correspondence and notices to Homaidan demanding repayment of the Tuition Answer Loans. Such correspondence was sent at least on, August 3, 2010, September 6, 2010, September 8, 2010 and July 5, 2011.

51. As a direct result of Defendant's abusive and illegal actions, Homaidan was misled as to the status of the Tuition Answer Loans and believed that they were not, in fact, discharged in bankruptcy and therefore he paid back those discharged debts in July 2011 under the mistaken belief that he had a legal obligation to do so. These payments were not made "voluntarily" but were made solely based on Defendant Navient's material misrepresentations or omissions regarding the legal status and character of the Tuition Answer Loans.

52. Defendants' abusive, deceptive and illegal collection efforts after the Homaidan's Tuition Answer Loans were discharged were made knowingly and willfully in violation of this Court's discharge orders.

**Plaintiff Youssef's Loans Were Unsecured Loans That Were Discharged in Bankruptcy**

53. From 2005 to 2008 Plaintiff Youssef was a student at Queens College of the City University of New York in New York, NY. The cost of attendance for an in-state student living off campus at Queens College was $16,816 for the academic year of 2005 to 2006; $17,293 for the academic year of 2006 to 2007; and $17,725 for the academic year of 2007 to 1008.

54. During the 2005 to 2006 academic year, Youssef received a school certified loan of $4,800. During the 2006 to 2007 academic year, Youssef received a school certified loan of $6,000

and four Tuition Answer Loans from Navient totaling $31,850. During the 2007 to 2008 academic year, Youssef received two Tuition Answer Loans totaling $24,150.

55. All the Tuition Answer Loans Youssef received from Navient exceeded the cost of attendance and, therefore, not qualified education loans as that term is used as defined in 11 U.S.C. § 523(a)(8)(B).

56. Defendants were aware that the Tuition Answer Loans were not qualified education loans that were exempt from discharge.

57. On October 29, 2013, Youssef sought relief under Title 11 in this Court in Case No. 1-13-46495 (ESS) (*In re Reeham Youssef*). Youssef properly scheduled the Tuition Answer Loans on Schedule F of her petition.

58. On February 6, 2014, this Court entered an order discharging all of Youssef's properly scheduled pre-petitioned debts.

59. Defendants were duly notified of the discharge of Youssef's pre-petition debts.

60. Despite their legal burden to do so, Defendants did not file an adversary proceeding to contest the dischargeability of Youssef's Tuition Answer Loans.

61. Instead of treating Youssef's Tuition Answer Loans as discharged, Defendants demanded repayment from Youssef on said loans and resumed collection on said loans after the loans were discharged.

62. Defendants' abusive, deceptive and illegal collection efforts after Youssef's Tuition Answer Loans were discharged were made knowingly and willfully in violation of this Court's discharge orders.

**All Class Members Share A Similar Narrative.**

63. All Class Members share a similar factual narrative.

64. All Class Members borrowed Tuition Answer loans from Sallie Mae and Navient in amounts that exceeded the "Cost of Attendance" and thus were not qualified educational expenses that were exempted from discharge by 11 U.S.C. §523(a)(8).

65. No class members were issued or scheduled to be issued 1098-E tax forms, which would have been required had the loans been qualified educational expenses.

66. All Class Members filed for bankruptcy protection in various district courts of the United States.

67. At the conclusion of these bankruptcy cases, all Class Members were issued discharge orders.

68. These Discharge Orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

69. Notwithstanding the discharge of these debts, Defendants employed processes, practices and acts designed to mislead Class Members into believing that their debts were not discharged and inducing them to make payments on the extinguished debts.

70. Defendants have misled Class Members and sought to collect on discharged debts through various means, including but not restricted to, the use of dunning letters, emails and phone calls demanding repayment. In addition, Defendants have continued to report these debts as delinquent to the major credit bureaus to compel payment.

71. Defendants have also commenced or continued legal actions against Class Members to induce payment on discharged debts.

## CLASS ACTION ALLEGATIONS

72. Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Homaidan and Youssef brings this action on behalf of themselves and all other persons similarly situated, as a representative of the following class:

73. Citizens of the various states who filed for bankruptcy in any of district courts of the United States and were issued Discharge Orders since April 20, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who:

  a) Obtained Tuition Answer loans in amounts that exceeded the "Cost of Attendance";
  b) Were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;
  c) have never reaffirmed any pre-petition Tuition Answer loan;
  d) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

74. Plaintiffs reserve the right to amend the definition of the class and/or add subclasses to include or exclude members.

75. As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

**A.  Numerosity**

76. The persons in the class of plaintiffs are so numerous that joinder of all members is impracticable.  In the interest of judicial economy, this dispute should be resolved through class action.

77. Upon information and belief, plaintiff Class Members have been through the bankruptcy process during the last decade and the number of plaintiffs will likely exceed 10,000. The quantity, identity, and location of class members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendants.

78. Upon information and belief, the individual members of the class of plaintiffs, or at least a large portion thereof, lack the means to pursue these claims individually and severally.

### B. Commonality

79. There are common questions of law/fact affecting the entirety of the class. Specifically, predominant common questions include without limitation: (i) whether the Class Members' Tuition Answer loans were discharged at the conclusion of their bankruptcy cases; and (ii) whether Defendants violated the applicable Discharge Orders by seeking to collect on discharged private education debt.

80. Answers to these common questions will drive the resolution of the injuries shared by each member of the class.

### C. Typicality

81. Plaintiffs' claims against Defendants are representative of those of all Class Members. Specifically, Homaidan's Tuition Answer Loans are identical in nature to the Class Members' Tuition Answer loans originated and serviced by Defendants.

### D. Predominance and Superiority

82. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. The questions include, but are not limited to:

> (i) whether the Class Members' Tuition Answer loans were discharged at the conclusion of their bankruptcy cases; and
>
> (ii) whether Defendants violated the applicable discharge orders by seeking to collect on discharged Tuition Answer Loans.

83. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications for individual members which would establish conflicting standards of conduct for the parties opposing the Class. Such identical actions would also, as well as a practical matter, be

dispositive of interests of other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests.

84. Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the Class as a whole.

85. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

### E.  Adequacy of Representation

86. Homaidan and Youssef will fairly and adequately represent and protect the interests of the members of the class of plaintiffs. Homaidan's and Youssef's interests are squarely aligned with those of individual members of the class. Plaintiffs' counsel, Boies Schiller Flexner LLP; Smith Law Group; Jones, Swanson, Huddell & Garrison, LLC and Fishman Haygood LLP are experienced in class actions lawsuits, complex commercial litigation, bankruptcy law and procedure, and student loan litigation.

## CLAIMS FOR RELIEF

### (Count One)
### Declaratory Judgment

87. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

88. Plaintiffs request declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiffs and Class Members' Tuition Answer Loans

are not non-dischargeable student loans or qualified education loans, and were therefore discharged upon entry of the applicable discharge injunctions.

### (Count Two)
### Violations Of The Discharge Orders

89. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

90. The Tuition Answer Loans were discharged pursuant to Class Members' Discharge Orders because they were unsecured consumer loans and not non-dischargeable student loans.

91. Defendants were notified of the Class Members' Discharge Order pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

92. Defendants nonetheless sought to collect on these debts, either directly or indirectly through various means, including but not restricted to the use of dunning letters, phone calls, negative reports made to the major credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.

93. Plaintiffs and Class Members request that Defendants be ordered to pay damages in an amount to be determined at trial for the willful violations of the discharge injunctions pursuant to 11 U.S.C § 105 and also request an award of attorneys' fees and costs.

### PRAYER

94. In light of the foregoing, Plaintiffs and Class Members request that Defendants be cited to appear and judgment be entered against Defendants for:

(1) declaratory relief that Plaintiff's and Class Members' Tuition Answer Loans were discharged upon entry of the applicable discharge orders;

(2) injunctive relief prohibiting Defendants from continuing to seek collection on Plaintiff's and Class Members' discharged debts;

(3) actual damages and monetary sanctions for violations of the discharge orders;

(4) disgorgement;

(5) attorneys' fees and costs to the fullest extent permitted under the law;

(6) pre-judgment and post-judgment interest; and

(7) other such relief as the Court deems just and proper.

Dated: October 21, 2019

By: /s/ George F. Carpinello
George F. Carpinello
Adam R. Shaw
Boies Schiller Flexner LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel: (518) 434-0677

-and-

Austin Smith
Smith Law Group
3 Mitchell Place
New York, NY 10017
Tel: (917) 992-2121

-and-

Lynn E. Swanson
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Tel: (504) 523-2500

-and-

Jason W. Burge
Fishman Haygood LLP
201 St. Charles, Suite 4600
New Orleans, LA 70170
Tel: (504) 596-5252

*Attorneys for Debtors*