UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HOMAIDAN fka Helal K. Homaidan<br><br>               Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>               Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HOMAIDAN and REEHAM YOUSSEF on behalf of themselves and all others similarly situated<br><br>               Plaintiffs,<br><br>   v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>              Defendants. | Adv. Pro. No. 17-1085 |

## **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND RESTITUTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ii-iv

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................2

ARGUMENT ...........................................................................................................13

I.    SUMMARY JUDGMENT IS APPROPRIATE TO DETERMINE AN ISSUE OF
      LIABILITY .......................................................................................................13

II.   DEFENDANTS BEAR THE BURDEN OF ESTABLISHING WHETHER THEIR
      LOANS ARE NON-DISCHARGEABLE UNDER § 523(A)(8) ......................................14

III.  EACH CLASS MEMBER IS ENTITLED TO AN AWARD OF RESTITUTION OF
      ALL FUNDS PAID ON DISCHARGED DEBTS ..........................................................19

CONCLUSION ........................................................................................................21

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Airlines Reporting Corp., v. Mascoll (In re Mascoll)*,
    246 B.R. 697 (Bankr. D. D.C. 2000) ....................................................................... 18

*Bank of China v. Huang (In re Huang)*,
    275 F.3d 1173 (9th Cir. 2002) ............................................................................... 17

*BPI Lux S.A.R.L. v. Bd. of Managers*,
    2019 WL 3202923 (S.D.N.Y. July 16, 2019) .......................................................... 13

*Bronsdon v. Educ. Credit Mgmt.*, Asso.,
    435 B.R. 791 (1st Cir. BAP. 2010) ......................................................................... 15

*Campbell v. Citibank, N.A., (In re Campbell)*,
    547 B.R. 49 (Bankr. E.D.N.Y. 2016) .......................................................... 5, 16, 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1991) ............................................................................................... 14

*City of New York v. Matamoros (In re Matamoros)*,
    2019 WL 3543865 (S.D.N.Y. Aug. 2, 2019) .......................................................... 19

*Crocker v Navient Solutions, L.L.C.*,
    941 F.3d 206 (5th Cir. 2019) ................................................................................. 16

*Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge (In re Ethridge)*,
    80 B.R. 581 (Bankr. M.D. Ga. 1987) ...................................................................... 17

*First Georgia Bank v. Halpern (In re Halphern)*,
    50 B.R. 260 (Bankr. N.D. Ga. 1985) ...................................................................... 17

*Giaimo v. Detrano (In re Detrano)*,
    222 B.R. 685 (Bankr. E.D.N.Y. 1998) .................................................................... 17

*Golden v. JPMorgan Chase Bank (In re Golden)*,
    596 B.R. 239 (Bankr. E.D.N.Y. 2019) ...................................................... 16, 18, 19

*Greensward, Inc. v. Cietek (In re Cietek)*,
    390 B.R. 773 (Bankr. N.D.N.Y. 2008) ................................................................... 17

*Grogen v. Garner*,
    498 U.S. 279 (1991) ............................................................................................... 15

*Hamblin v. British Airways PLC*,
  717 F. Supp. 2d 303 (E.D.N.Y. 2010) ...................................................................... 14

*Harrison Baking Co. v. Bakery and Confectionary Workers Local No. 3*,
  777 F. Supp. 306 (S.D.N.Y. 1991) ........................................................................... 21

*Harte v. Ocwen Fin. Corp.*,
  2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018)........................................................... 13

*Hayhoe v. Cole (In re Cole)*,
  226 B.R. 647 (9th Cir. BAP. 1998)........................................................................... 17

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010)...................................................................................... 14

*In re Abrams*,
  127 B.R. 239 (9th Cir. BAP 1991)............................................................................ 20

*In re Adamo*,
  560 B.R. 642 (E.D.N.Y. 2016) ................................................................................. 15

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  361 F. Supp. 3d 324 (E.D.N.Y. 2019) ..................................................................... 13

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..................................................................... 14

*In re Dufrane*,
  566 B.R. 28 (N.D. Cal. 2017) ................................................................................... 18

*In re Guo*,
  548 B.R. 396 (E.D.N.Y. 2016) ................................................................................. 15

*In re Haroon*,
  313 B.R. 686 (E.D. Va. 2004).................................................................................... 15

*In Re Oliver*,
  499 B.R. 626 (S.D. Ind. 2013) .................................................................................. 21

*In re Sucre*,
  226 B.R. 340 (Bankr. S.D.N.Y. 1998) ..................................................................... 19

*In re Wiley*,
  579 B.R. 1 (Bankr. D. Me., 2017).............................................................................. 18

*Juber v Conklin (In re Conklin)*,
  606 B.R. 664 (Bankr. W.D.N.C. 2019)..................................................................... 16

*Knaus v. Concordio Lumber Co., Inc., (In re Knaus),*
  889 F.2d 773 (8th Cir. 1989) ............................................................................ 20

*Malone v. Norwest Financial California, Inc.*,
  245 B.R. 389 (E.D. Cal. 2000) .......................................................................... 20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .......................................................................................... 14

*Miller v. Savings Bank of Baltimore (In re Miller)*,
  10 B.R. 778 (Bankr. D. Md. 1981) .................................................................... 19

*Padilla v. Wells Fargo Home Mortgage, Inc., (In re Padilla)*,
  379 B.R. 643 (Bankr. S.D. Tex. 2007) .............................................................. 20

*Ramos v. Simplex Grinnell, LP*,
  796 F. Supp. 2d 346 (E.D.N.Y. 2011) .............................................................. 13

*Renshaw v. Renshaw*,
  222 F.3d 82 (2d Cir. 2000) ............................................................................... 15

*Taggart v. Lorenzen*,
  139 S. Ct. 1795 (2019) ..................................................................................... 20

*Tamasco v. Nicholls (In re Nicholls)*,
  2010 WL 5128627 (Bankr. E.D.N.Y. Dec. 10, 2010) ...................................... 17

*United Healthcare Workers v. Borsos (In re Borsos)*,
  544 B.R. 201 (E.D. Cal. 2016) .......................................................................... 19

*U.S. Dept. of Health and Human Servs. v. Smith*,
  807 F.2d 122 (8th Cir. 1986) ........................................................................ 5, 16

*Vega v. Credit Bureau Enter.*,
  2005 WL 711657 (E.D.N.Y. Mar. 29, 2005) .................................................... 13

*Will v. Ford Motor Credit Co., (In re Will)*,
  303 B.R. 357 (Bankr. N.D. Ill. 2001) ............................................................... 20

Statutes

11 U.S.C. § 523(a)(8) ................................................................................... passim

IRS code § 221(d) ....................................................................................... passim

Rules

Fed. R. Civ. P. 56 ........................................................................................ 13, 14

Plaintiff Hilal K. Homaidan and Reeham Youssef ("Plaintiffs"), on behalf of themselves and all others similarly situated, submit this Memorandum of Law in Support of their Motion for Summary Judgment on Dischargeability and Disgorgement against Defendants.

## PRELIMINARY STATEMENT

This is a simple case and the facts are not in dispute.  For almost fifteen years, Defendants have been collecting on debts knowing that they were discharged or, at the very least, were reckless with regard to the dischargeability.  The debts at issue arise from loans made by Defendants to individuals while they were attending institutions of higher education that, on their face, did not qualify as non-dischargeable under § 523(a)(8).  Specifically, these loans were not qualified education loans because Defendants made no effort to determine whether the loans were within the cost of attendance.  *See* § 523(a)(8)(B).  Because the burden of establishing non-dischargeability is always on the creditor, absent specific evidence from Defendants that any of their direct-to-consumer loans come within the cost of attendance, each of these loans are, as a matter of law, deemed discharged and Defendants' continued collection on such loans is clearly wrongful.

Plaintiffs and the Class are, therefore, entitled to summary judgment declaring that, for each loan for which Defendants cannot establish that it does not exceed the cost of attendance, taking into account all other loans and financial aid, Defendants have violated § 524 by continuing to collect or attempt to collect on such loans and for each such loan, Defendants are subject to judgment of restitution of all payments on such loans, together with interest.  Defendants' liability for contempt and for general and punitive damages and attorney's fees should await further discovery and adjudication by the Court.

## STATEMENT OF FACTS

### Plaintiff Hilal Homaidan

Plaintiff Hilal Homaidan enrolled in Emerson College in the Fall of 2006, but dropped out in the first few weeks.  Nonetheless, on September 12, 2006, Navient gave him a "Tuition Answer loan: in the amount of $6,177 and a second loan for $6,390 on October 6, 2006.  Declaration of Hilal Homaidan, dated December 9, 2019, (thereafter "Homaidan Decl." at ¶¶ 3 to 7).  Both loans were made outside the financial aid office of Emerson and were not made for qualified educational expenses.  Defendants made no effort to obtain certification from Emerson that either loan was within the cost of attendance or even that Mr. Homaidan was a full-time or part-time student attending a qualified university.  Thus, Defendants did not determine that either loan was a "qualified education loan" as that term is defined in 11 U.S.C. § 523(a)(8)(B).

On December 4, 2008, Mr. Homaidan sought relief under Title 11 in this Court in Case No. 08-48275, *In re Hilal K. Homaidan*.  Dkt. No. 1.  Mr. Homaidan scheduled the Tuition Answer Loans on Schedule F of his petition.  Dkt. No. 11 at Schedule F.  On April 9, 2009, this Court ordered discharge of all Mr. Homaidan's properly pre-petition debt.  Dkt. No. 21.  Defendants were duly notified of the discharge of all of Mr. Homaidan's pre-petition debts.  Dkt. No. 22.

Despite the discharge of Mr. Homaidan's Tuition Answer Loans, Defendants advised Mr. Homaidan that his Tuition Answer Loans were not discharged and thereafter engaged the services of various collection firms to attempt to collect on this discharged debt in violation of this Court's discharge order and the Bankruptcy Code.  Mr. Homaidan Decl. at ¶ 12.  In particular, Defendants sent correspondence and notices to Homaidan demanding repayment of the Tuition Answer Loans on at least August 3, 2010, September 6, 2010, September 8, 2010 and July 5, 2011.  *Id*. at ¶ 13.

Believing that his debts were not discharged in bankruptcy, Mr. Homaidan paid on his Tuition Answer Loans until they were paid in full in July 2011. *Id*. at ¶ 14.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a determination of the dischargeability of his Tuition Answer Loans (Dkt. Nos. 28 and 30) and on May 26, 2017, the Court entered an order reopening the case. Dkt. No. 31. On June 23, 2017, Mr. Homaidan commenced this adversary proceeding as a putative class action on behalf of himself and others similarly situated seeking a determination that Defendants' loans that are not certified as being within the cost of attendance under § 523(a)(8)(B) are, therefore, dischargeable student loans. Mr. Homaidan also seeks an award of damages including attorney's fees and costs and restitution of all funds obtained by Defendants from collecting on his discharged debts.

**Plaintiff Reeham Youssef**

From 2005 to 2008 Plaintiff Reeham Youssef was a student at Queens College of the City University of New York. The cost of attendance for an in-state student living off campus at Queens College was $16,816 for the academic year of 2005 to 2006; $17,293 for the academic year of 2006 to 2007; and $17,725 for the academic year of 2007 to 2008. Declaration of Reeham Youssef, dated December 9, 2019, (thereafter "Youssef Decl.") at ¶ 3.

During the 2005 to 2006 academic year, Ms. Youssef received a school certified loan of $4,800. During the 2006 to 2007 academic year, Ms. Youssef received a school certified loan of $6,000 and four Tuition Answer Loans from Sallie Mae totaling $31,850. During the 2007 to 2008 academic year, Ms. Youssef received two Tuition Answer Loans totaling $24,150. *Id*. at ¶ 4-6.

Most or all the Tuition Answer Loans Ms. Youssef received exceeded the cost of attendance and, therefore, were not qualified education loans as that term is used as defined in 11 U.S.C. § 523(a)(8)(B). *Id*. at ¶ 7.

On October 29, 2013, Ms. Youssef sought relief under Title 11 in this Court in Case No. 1-13-46495 (ESS) (*In re Reeham Youssef*). Ms. Youssef properly scheduled the Tuition Answer Loans on Schedule F of her petition. Dkt. No. 1.

On February 6, 2014, this Court entered an order discharging all of Ms. Youssef's properly scheduled pre-petitioned debts. Dkt. No. 9.

Also on February 6, 2014, Defendants were duly notified of the discharge of Ms. Youssef's pre-petition debts. Dkt. No. 10. Nonetheless, instead of treating Ms. Youssef's Tuition Answer Loans as discharged, Defendants advised Ms. Youssef that her Tuition Answer Loans were not discharged, demanded repayment from Ms. Youssef on those loans and resumed collection on the loans even though they had been discharged. Youssef Decl. at ¶¶ 11-13.

On October 1, 2019, Ms. Youssef moved to re-open her bankruptcy proceeding (Dkt. No. 11) and to amend the complaint in the above-entitled adversary proceeding. Adv. Pro. Dkt. No. 156. The Court granted the motion to re-open and to amend the complaint herein from the bench on October 16, 2019, *see* Exhibit A to Declaration of George F. Carpinello dated December 11, 2019 (hereinafter "Carpinello Decl."). On December 4, 2019, the Court entered an order re-opening Ms. Youssef's bankruptcy proceeding. *See* Exhibit B to Carpinello Decl. On December 17, 2019, the Court entered an order amending the complaint to add Ms. Youssef as a Plaintiff. *See* Exhibit C to Carpinello Decl.

Like Mr. Homaidan, Ms. Youssef seeks a declaration that the loans were discharged, on injunction prohibiting the collection of the loans and an award of damages including attorney's fees and costs and a restitution of all funds obtained by Defendants from their collections on her discharged debts.

## Defendants' Direct-to-Consumer Loans

For a number of years, Defendants made loans both through institutions of higher education ("School Certified Loans") and directly to consumers who were students at institutions of higher education ("direct-to-consumer loans"). Defendants' primary direct-to-consumer product was called the Tuition Answer Loan. The Tuition Answer Loan required a credit check, most often a cosigner, had interest rates as high as 16%, and most tellingly, bypassed the financial aid process and lent money directly to students.[1] In these ways, the Tuition Answer Loan was more similar to an ordinary consumer loan than an educational loan as that term was used by Congress. "[E]ducational loans are different from most loans. They are made without business considerations, without security, without cosigners, and relying for repayment solely on the debtor's future increased income resulting from the education." *U.S. Dep't of Health and Human Serv. v. Smith*, 807 F.2d 122, 125 (8th Cir. 1986) (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 133.); *see also Campbell v. Citibank, N.A.*, (*In re Campbell*) 547 B.R. 49, 60 (Bankr. E.D.N.Y. 2016) (Craig, J) ("These considerations [as identified in H.R. No. 595] are simply not relevant when the loan at issue is a consumer loan extended by a for-profit actor. Defendants' Bar Loan application describes itself as a 'consumer credit application' and states that 'applications are evaluated through a credit-scoring model' . . . [i]n this way, the Bar Loan differs significantly from government guaranteed loans and conditional grants, which are often made available to students without regard to their credit scores or other underwriting considerations.").

Notably, Navient voluntarily discontinued the Tuition Answer Loan program in the wake of both a New York State and Congressional investigation into illegal kickbacks and deceptive

---

[1]  Carpinello Decl., Exhibit D.

marketing tactics associated with the lending program.[2]  More recently, Navient has been sued by several state attorneys general related to its scheme to use subprime loans—such as the Tuition Answer Loan—as a bait-and-switch to lure students into using Sallie Mae and thereby gobble up a larger share of the federal student loan market.[3]  Furthermore, Sallie Mae and Navient both seem to recognize that the Tuition Answer Loan was not really an "educational loan" at all.  First, Navient's own advertisement stated that it could be used for "fraternity/sorority or club dues"[4] and the commercial demonstrated how a student could use a Tuition Answer Loan to purchase a bean bag, lava lamp, a refrigerator, bike, wall artwork, and other non-essential college supplies.[5]  These are perfectly fine things for a college student to purchase, but they are not qualified higher education expenses.   Second, Navient's predecessor-in-interest, Sallie Mae, testified before Congress that they did not include direct-to-consumer loan originations within their estimate of total outstanding private student loan amounts.  Instead, Sallie Mae grouped direct-to-consumer loans with "home equity loans and other forms of unsecured consumer credit."[6]  Third, Salle Mae's

---

[2] Sallie Mae Gets Subpoena from New York State, available at:
https://www.nytimes.com/2008/03/01/business/01sallie.html.  *See also* Sallie Mae 10-K, 2008 ("During 2008, as a result of funding pressures, we curtailed the issuance of new Tuition Answer» loans.")

[3] States Say Navient Preyed On Students, *available at:*
https://www.nytimes.com/2017/04/09/business/dealbook/states-say-navient-preyed-on-students.html

[4] *See* Exhibit D to Carpinello Decl.

[5] *See* Youtube, Sallie Mae Tuition Answer Loan, *available at:*
https://www.youtube.com/watch?v=DHp45y332IA

[6] *See* Testimony of Barry W. Goulding, Senior Vice President, Sallie Mae, before the Committee on Banking, Housing, and Urban Affairs, at 12-13, (Jun. 6 2007) ("According to the College Board, five years ago students across the country took out $4.3 billion in private education loans in a single academic year. Last year, that number had grown to nearly $17 billion. **Direct-to-consumer loans, home equity loans and other forms of unsecured consumer credit used for**

current website notes that a major difference between student loans and personal loans is that personal loans *are made directly to students*.[7]

**Defendant's Direct-to-Consumer Loans Were Not Certified as Being Within the Cost of Attendance.**

Because Defendants' personal loans were made directly to the student, and not through the school, they did not involve any certification from the school that the loans were within the cost of attendance.  Nor did they involve any inquiry to the school about other loans, scholarships or financial assistance the student received.  Patricia Peterson, the designated Rule 30(b)(6) witness for Defendants, repeatedly testified that Defendants made no effort to determine whether these loans were within the cost of attendance:

> Q:    Does Navient look at the cost of qualified higher education expense at each school?  When it originates a loan?
>
> A:    No.
>
> Q:    Does Navient look at other loans that the borrower has requested during the school year to determine whether or not expenses are qualified higher education expenses?
>
> A:    No.

Transcript of Deposition of Patricia Peterson, July 9, 2019 ("Peterson III") attached hereto as Exhibit G to Carpinello Decl., at 79:14-79:24.

> Q:    Does Navient track anywhere in its system anywhere, the cost of attendance?
>
> MR. FARRELL:    Objection.  Asked an answer.
>
> THE WITNESS:    There are – I have seen on some accounts or on applications themselves that cost of attendance is listed but as a normal course of business that's not something that we capture, it's up to the school

---

higher education likely make the total amount of non-guaranteed borrowing significantly higher than the College Board estimate.")(emphasis added) (Exhibit E to Carpinello Decl.).

[7] *See* Sallie Mae, "Compare federal vs. private loans." (Exhibit F to Carpinello Decl.).

or the customer themselves to make sure that the expenses is part of the qualified expense.

*Id*. at 81:15-82:5.

> Q:    Would you agree that there's no analysis in this procedure as to the cost of attendance?

> MR. FARRELL:    Object to the form.

> THE WITNESS:    There's no -- that is correct, there is no analysis on cost of attendance.

> BY MRS. SWANSON:

> Q:    And there's also no analysis of whether or not the borrower is a full or part-time student?

> A:    Correct.

*Id*. at 111:19-112:7.

> Q:    Okay. So let me ask you another question about if the school type is A or B, meaning that it is a Title IV school, whether or not it's profit or nonprofit, would Navient perform any analysis of qualified higher education expenses?

> A:    Not independently, no.

*Id*. at 121:14-121:21.

> Q:    Okay.  There's no analysis of cost of attendance of a full- or part-time student in that analysis, is there?

> A:    No.

*Id*. at 144:20-144:24.

> Q:    Is it your testimony that Navient does not -- well, let me just ask you, does Navient track cost of attendance for any of its loans?

> A:    We may have instances where we have cost of attendance in our records, but other than that, a normal course of business it's not something that we would always keep or even have access to.

*Id*. at 153:12-153:21.

> Q:    So the Tuition Answer Loan doesn't require a school certification at all?

> A:    It does not, no.

*Id*. at 161:22-162:1.

Defendants had the ability to determine the cost of attendance for each individual who received a direct-to-consumer loan and to enter such data into their records for each loan made. *See* Deposition of Patrick Theurer, Exhibit H to Carpinello Decl., at 76:19-78:10; 79:22-79:25. Defendants also had the ability to determine what other loans, such as school-certified loans or federal loans they may have made to anyone who applied for a direct-to-consumer loan. *Id*. at 83:7-83:22. Indeed, Defendants routinely advised loan applicants where they could learn the cost of attendance for their school. *See* Exhibit I to Carpinello Decl.: "To find the COA of a college, visit the school's website, look at its brochures, or use College Answer's School Search Tool."

Instead of seeking certification from the schools that their direct-to-consumer loans were within the cost of attendance, after taking account of other loans, scholarships or other financial aid, Defendants relied entirely upon the boilerplate statement in their promissory note to the effect that the loan is a qualified education loan:

> Q:    But Navient doesn't ask for the estimated cost of attendance; is that correct?
>
> A:    No, we asked the borrower to certify that it's not above the cost of attendance.
>
> Q:    Where is that certification found?
>
> A:    There's information -- well, obviously this is part of what they're filling out, so when they sign it they're certifying that everything is true to the best of their knowledge, and then there's some reference in, I believe it's in Q? I saw it just a minute ago. . . . I was looking at Q.2. That's where they're saying they're using it for a qualified education loan.

Peterson III, Exhibit G at 168:15-169:15.

That boilerplate language reads as follows:

Q.2.    I certify that this loan is a qualified education loan as described in § 221(d)(1) of the Internal Revenue Code of 1986, 26 U.S.C. § 221(d)(1), and that therefore this loan is not dischargeable in bankruptcy except pursuant to 11 U.S.C. § 523(a)(8). I understand that I must immediately repay any funds that I receive which cannot reasonably be attributed to meeting the student's qualified higher education expenses related to attendance at the School.

Instructions for completing the Tuition Answer Loan application. Exhibit J to Carpinello Decl. at Bates No. NAVHOM01085323 and Exhibit K to Carpinello Decl. at NAVHOM02000038.[8] Significantly, the boilerplate certification *does not* state that the borrower is certifying that the loan does not exceed the cost of attendance, but only that the loan is a "qualified education loan as described in § 221(d)(1) Internal Revenue Code," something a lay person would have no knowledge of.

Peterson also conceded that when Defendants receive notice of discharge, to determine dischargeability, they look at only two factors: whether the borrower had certified in the promissory note that the debt was a qualified education loan and whether the institution was a Title IV qualified institution under the Internal Revenue Code:

Q:      And I think we've gone over this, but is there any analysis done after a borrower declares bankruptcy to determine whether the loan is a qualified education loan other than the 1098-E categorization?

A:      No.

---

[8] Navient's loan application also asked the borrower the amount they wished to borrow and asked them to allocate the loan proceeds between tuition fees, room and board, that Navient stated in its loan application would be "paid directly to the school" and "Other Expenses" which the document states were "educational expenses not paid directly to the institution." The promissory note also stated that the amount sought "may not exceed the estimated cost of attendance." This does not constitute a representation or certificate from the borrower that the amount requested does not exceed the cost of attendance. Moreover, Navient could not rely on this boilerplate language because it did not advise the borrower that the subject loan could not exceed the cost of attendance *less* other loans or scholarships or financial aid. *See* Exhibit K to Carpinello Decl. at NAVHOM02000033.

Peterson III, Exhibit G at 175:8-14.

> Q:    And is there any analysis done after a borrower declares bankruptcy to determine whether the loan was within the cost of attendance?  Other than the 1098-E eligibility field.
>
> A:    No.

*Id*. at 176:11-15; *see also id*. at 42:8-42:23. [9]

**Defendants Routinely Collect on Discharged Debts.**

If, according to Defendants' records, the loan is to a student at a Title IV authorized institution and the borrower has signed a promissory note certifying that the loan was a "qualified education loan," Defendants resume collection on that note even after discharge and advise credit reporting agencies of any delinquency on the payment of the loan.  Defendants also advise borrowers of the delinquent notation on the borrower's credit report to induce the borrower to make payment.  Peterson I, Exhibit L to Carpinello Decl., at 210:7-11; 216:2-17; 217:10-220:5; 233:11-234:17; 236:14-238:3; Exhibit M and Exhibit N to Carpinello Decl.  Defendants also send a letter expressly advising borrowers that their loan is not discharged in bankruptcy.  *See* Exhibit O to Carpinello Decl.; Exhibit L at 234.

Obviously, Defendants have thousands of loans that exceed the cost of attendance because they made no effort to obtain certification of the cost of attendance from the school, and they continue to collect on those loans even though they have been discharged in bankruptcy.  For example, in Plaintiff Youssef's case, her cost of attendance for 2006-2007 academic year was

---

[9] In her third deposition, Peterson explained that they look at two "flags": a "1098-E eligible flag" and whether the institution was a Title IV authorized institution.  Peterson III, Exhibit G to Carpinello Decl., at 42:18-42:23; 68:13-70:11.  In an earlier deposition, Ms. Peterson explained that Defendants place a "1098-E eligible flag" on any loan that was made to students at a Title IV-authorized institution and in which the borrower, through the boilerplate in the promissory note, or otherwise, certified that the loan was a qualified education loan. Deposition of Patricia Peterson in *Haas v. Navient*, 16-03175 (DRJ) (S.D. Tex. Sept. 19, 2017) ("Peterson I"), Exhibit L to Carpinello Decl., at 191:20-192:9; 323:7-16; 326:1-16; 344:2-23.

$17,293. Yet, Defendants gave her $31,810 in Tuition Answer Loans on top of a $6,000 school certified loan. Youssef Decl. at ¶¶ 3-6. Yet, Defendants notified Youssef, after her discharge, that she was required to continue paying on those loans. *Id.* at ¶¶ 11-13.

Another example is student R.P. who attended the Empire State College of the State University of New York during the academic year 2006-2007. Based on data collected by the federal government in its Integrated Postsecondary Education Data System ("IPEDS"), the maximum possible cost of attendance for an in-state student such as R.P. during that academic year was $20,975. *See* Exhibit P to Carpinello Decl.[10] Yet, RP received a Tuition Answer Loan of $32,787 on February 23, 2006. *Id. See* Exhibit Q to Carpinello Decl. Despite the fact that R.P.'s Tuition Answer loan exceeded the cost of attendance and that R.P. received a discharge in bankruptcy, Defendants are still listing her loan as active and in default. *Id.*

Thus, without any independent determination of whether the loans meet the conditions of §523(a)(8)(B), either at the time of origination or at the time of the filing of a bankruptcy petition, to determine the dischargeability of the loans, Defendants continue to collect on their loans after bankruptcy discharge *solely* based upon the boilerplate representation contained in their loan documents that the loan was a qualified education loan.

Defendants know that they are collecting on a number of loans that had been discharged because they advised investors of this very fact. Thus, an offering memorandum circulated in 2009 stated to investors:

> Private credit student loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy . . . . In addition, direct-to-consumer loans are dispersed directly to the borrowers based upon certification and warranties contained in their promissory notes, including their certification of the cost of

---

[10] To determine the cost of attendance, one would add the in-state tuition of $4,575, the books and supplies of $1,400, the maximum amount of off-campus room and board at $10,600, and other expenses of $4,400 for a total of $20,975.

attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that the loans are not used for qualified educational expenses. If you own any notes in a related issuing entity, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the issuing entities credit enhancement.

Exhibit R to Carpinello Decl., at NAVHOM01105668.

Of course, even this advice to investors was inaccurate because the loan documents did not provide certifications by the borrower of the cost of attendance nor would dischargeability turn on whether or not the loans were "used for qualified educational expenses." Rather, dischargeability depends upon whether the loans exceeded the cost of attendance at a Title IV institution. Nonetheless, Defendants make no effort to determine whether the thousands of direct-to-consumer loans are, in fact, nondischargeable before it collects on those loans.

## **ARGUMENT**

### I.  **SUMMARY JUDGMENT IS APPROPRIATE TO DETERMINE AN ISSUE OF LIABILITY.**

A party may move under Rule 56(a) for summary judgment at any time. Fed. R. Civ. P. 56(a); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 333 (E.D.N.Y. 2019). A court may decide a motion for summary judgment and a motion for class certification at the same time and such a procedure is desirable when one motion may assist the court in resolving issues raised in the other motion. *Ramos v. Simplex Grinnell, LP*, 796 F. Supp. 2d 346, 3 52-53 (E.D.N.Y. 2011); *Vega v. Credit Bureau Enter.*, 2005 WL 711657 (E.D.N.Y. Mar. 29, 2005) (deciding class certification and summary judgment at the same time); *Harte v. Ocwen Fin. Corp.*, 2018 WL 1830811, at *6 (E.D.N.Y. Feb. 8, 2018) (same), *adopted in part and reserved in part on other grounds*, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018).

A summary judgment motion may be made with regard to any claim or defense in an action or even part of a claim or defense. *BPI Lux S.A.R.L. v. Bd. of Managers*, 2019 WL 3202923, at *3

(S.D.N.Y. July 16, 2019).  "The partial summary judgment is merely a pre-trial adjudication that certain issues shall be deemed established for the trial of the case.  This adjudication . . . serves the purposes speeding up litigation by eliminating before trial matters where there is no genuine issue of fact."  *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 231 (E.D.N.Y. 2003), *quoting* Fed. R. Civ. P. 56, Advisory Committee's Note.  Thus, Plaintiff's motion for summary judgment on the issue of liability and disgorgement is proper, even though it will not determine all the issues in the case.

The party making a motion for summary judgment has the initial burden of making a prima facie case showing that it is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1991).  Once the moving party has made that showing, the burden shifts to the party opposing the motion to produce evidentiary materials that demonstrate the existence of a genuine issue of material of fact.  *Id*.  The non-moving party cannot rely upon allegations in the pleadings or speculation but must come forward with evidence and specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 306 (E.D.N.Y. 2010).  Here, Plaintiffs seek summary judgment on an issue of law, i.e., that a private, direct-to-consumer loan that the creditor cannot establish was within the cost of attendance at a qualified educational institution is dischargeable in bankruptcy and all funds collected after discharge must be disgorged and returned to the debtor.

## II.    DEFENDANTS BEAR THE BURDEN OF ESTABLISHING WHETHER THEIR LOANS ARE NON-DISCHARGEABLE UNDER § 523(A)(8).

Pursuant to 11 U.S.C. § 523(a)(8) educational loans are non-dischargeable only if they come within one of three categories:

- (A)(i) an education benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

- (A)(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

- (B) any other educational loan that is a qualified education loan, as defined in § 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . . .

11 U.S.C. § 523(a)(8).

Defendants bear the burden of establishing whether any of their direct-to-consumer loans are non-dischargeable under the terms of the § 523(a)(8). *Grogen v. Garner*, 498 U.S. 279, 283 (1991) (referring to the burden a creditor must meet to avoid dischargeability); *Renshaw v. Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000) ("creditor [must] prove by a preponderance of the evidence that its claims is one that is notdischargeable."); *Bronsdon v. Educ. Credit Mgmt. Asso.*, 435 B.R. 791, 796 (1st Cir. BAP. 2010) ("creditor bears the initial burden of establishing that the debt is of the type accepted from discharge under § 523(a)(8)."); *In re Haroon*, 313 B.R. 686, 688 (E.D. Va. 2004) ("in the case of a student loan, [creditor] bears initial burden of proving that the debt was incurred for educational purposes."); *In re Adamo*, 560 B.R. 642, 647 (E.D.N.Y. 2016) ("the burden of proof in an action to determine dischargeability is on the creditor to prove the elements of its dischargeability complaint by preponderance of the evidence."); *In re Guo*, 548 B.R. 396, 401 (E.D.N.Y. 2016) ("the creditor objecting to dischargeability bears the burden of proof by preponderance of the evidence.").

There is no contention that the loans at issue here come within the terms of § 523(a)(8)(A)(i). The loans were not issued by a governmental unit nor were they funded in whole or by part a non-profit institution. In addition, this Court held in its decision of January 31, 2019 (Dkt. 103) that these loans do not come within the terms of § 523(a)(8)(A)(ii) because they are not

obligations to "repay funds received as an educational benefit, scholarship or stipend." The same conclusion was recently reached by the Fifth Circuit in a similar proceeding against these same Defendants, *Crocker v Navient Solutions, L.L.C.* 941 F.3d 206, 217-24 (5th Cir. 2019).

Thus, the sole basis on which Defendants can claim that their direct-to-consumer loans are non-dischargeable is § 523(a)(8)(B). That section makes "education loans" dischargeable if they are a "qualified education loan," within the terms of IRS code § 221(d). Section 221(d)(1), in turn, defines qualified education loan as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses. . ." IRS code § 221(d)(2) defines "qualified higher education expenses" as "the cost of attendance at an. . . eligible educational institution." *See generally*, *Golden v. JPMorgan Chase Bank* (*In re Golden*), 596 B.R. 239, 267-69 (Bankr. E.D.N.Y. 2019) (Stong, J.) (analyzing § 523(a)(8)(B)).

As noted above, Defendants, both at the same time of extending credit and at the time they were notified of discharge, made no effort to determine whether any of these loans were a "qualified education loans" as defined by § 221(d)(1) of the IRS Code. They did not seek certification from the institution which the debtor attended and they made no inquiry as to whether any particular loan exceeded the cost of attendance.[11]

---

[11] In making this argument, Plaintiffs do not concede that *any* of Defendants' direct-to-consumer loans are non-dischargable under §523(a)(8)(B) since they are not "education loans" at all. "[E]ducation loans are different from most loans. They are made without business considerations, without security, without co-signors, and relying for payment solely on the debtor's future increased income resulting on the education.*" Smith*, 807 F.2d at 125, *quoting* H. R. Rep. No. 95-595 at 133 (1987), reprinted in 1987 U.S.C.C.A.N. 59636094; *Juber v Conklin* (*In re Conklin*) 606 B.R. 664, 675 (Bankr. W.D.N.C. 2019).

This Court in *In re Campbell* noted that the direct-to-consumer loans before it did not have the typical characteristics of an education loan: "These considerations are simply not relevant when the loan at issue is a consumer loan extended by a for-profit actor. Defendants' Bar Loan application describes itself as a 'consumer credit application' and states that 'applications are evaluated through a credit scoring model. A satisfactory credit history will be viewed favorably,

Instead, Defendants relied upon the boilerplate language in their promissory note to the effect that the loan is a "qualified education loan" and is not dischargeable in bankruptcy. But Defendants' reliance on this language is misplaced because it constitutes a waiver of dischargeability which is unenforceable as against public policy. *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002); *Tamasco v. Nicholls (In re Nicholls)*, 2010 WL 5128627, at *2 (Bankr. E.D.N.Y. Dec. 10, 2010); *Giaimo v. Detrano (In re Detrano)*, 222 B.R. 685, 688-89 (Bankr. E.D.N.Y. 1998); *Greensward, Inc. v. Cietek (In re Cietek)*, 390 B.R. 773, 779 (Bankr. N.D.N.Y. 2008); *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 651-52 (9th Cir. BAP. 1998); *First Georgia Bank v. Halpern (In re Halphern)*, 50 B.R. 260, 262 (Bankr. N.D. Ga. 1985), *affirmed* 810 F.2d 1061 (11th Cir. 1987); and *Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge (In re Ethridge)*, 80 B.R. 581, 586 (Bankr. M.D. Ga. 1987).

The reason for this public policy is obvious: If a creditor could obtain a waiver of non-dischargeability either by including boilerplate language in every promissory note to that effect or by reciting boilerplate facts that would establish non-dischargeability, then every creditor would do so (as Defendants did here) and thereby nullify the bankruptcy court's powers under §§ 727 or 1328. *Ethridge*, 80 B.R. at 586.

Moreover, a creditor cannot bootstrap itself into one of the provisions of § 523(a)(8) by getting a debtor to concede that one of the provisions applies or to concede facts that would place the loan within one of those provisions. Either the loan, as a matter of fact, meets those

---

but does not guarantee the loan application will be approved.' In this way, the Bar Loan differs significantly from government guaranteed loans and conditional grants, which are often made available to students without regard to their credit scores or other underwriting considerations.'" 547 B.R. at 60. The Tuition Answer Loans are much like the Bar Loan in *Campbell* since they are based upon an evaluation of credit score, often require security in the form of co-signers and have charged interest rates often in excess of 15%.

qualifications or it does not.  *See In re Dufrane*, 566 B.R. 28, 40 (N.D. Cal. 2017) ("the fact that SunTrust provided in each of the promissory notes evidencing the SunTrust Private Loans that the loan proceeds would be used to pay educational living expenses as alleged by SunTrust, does not make the SunTrust private loans the type of 'obligation to repay funds received as an educational benefit' that Congress sought to make non-dischargeable under § 523(a)(8)(A)(ii).").  *In re Wiley,* 579 B.R. 1, 7 (Bankr. D. Me., 2017) (stating that preprinted language in a promissory note which states that an education loan is non-dischargeable is not demonstrative of non-dischargeability absent evidence that the loan fits within section 523(a)(8)).  Indeed, this Court held on a motion to dismiss in a similar action that pre-printed determinations of dischargeability were not enforceable as a matter of law because "[i]f that language alone were sufficient, then it is hard to see what role would be left for Congress or the courts in drafting, interpreting, and applying these sections of the Bankruptcy Code."  *In re Golden*, 596 B.R. at 267.  Similarly, in *Airlines Reporting Corp., v. Mascoll* (*In re Mascoll*), 246 B.R. 697, 699-701 (Bankr. D. D.C. 2000) the court held that an agreement made during the course of the bankruptcy that the plaintiff's debt was not dischargeable was invalid because it failed to comply with all the protections of the bankruptcy code with regard to reaffirmation agreements.  "If the court were to enforce the Repayment Agreement it would allow ARC to circumvent the substantive and procedural requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure regarding dischargeability of debts."

Thus, Defendants only recourse is to affirmatively demonstrate that, for each loan, after considering all certified loans, financial assistance and scholarships and any loans made prior to Defendants' loans, Defendants' loan does not exceed the cost of attendance.  *Golden*, 596 B.R. at 267-69.  If a loan does exceed the cost of attendance, it is not a "qualified education loan" because,

by definition, it would not be used "*solely* to pay qualified higher education expenses."  IRS Code § 221(d)(1) (emphasis added).[12]

For each loan that Defendants cannot establish was not within the cost of attendance, the debt should be declared discharged.  *Golden*, 596 B.R. at 269.  An order entered by the Court to this effect will streamline the litigation and clarify issues remaining to be tried.

## III.   EACH CLASS MEMBER IS ENTITLED TO AN AWARD OF RESTITUTION OF ALL FUNDS PAID ON DISCHARGED DEBTS.

For each loan which Defendants cannot establish did not exceed the cost of attendance, the debtors are entitled to the return of all funds paid on the discharge debt, including interest.  A creditor may not retain funds wrongfully obtained in violation of a discharge order.  *See United Healthcare Workers v. Borsos (In re Borsos),* 544 B.R. 201 (E.D. Cal. 2016) (creditor must restore funds garnished in violation of discharge injunction, even though garnishment was made pursuant to a court decision later reversed on appeal); *In re Sucre*, 226 B.R. 340, 348 (Bankr. S.D.N.Y. 1998) ("upon learning of a bankruptcy filing, a creditor has an affirmative duty to return the debtor to the status quo position as of the time of the filing of the petition"); *City of New York v. Matamoros* (*In re Matamoros*), 2019 WL 3543865, at *10 (S.D.N.Y. Aug. 2, 2019) (although city stopped garnishment of wages upon learning of the filing of the bankruptcy petition, it, nonetheless, violated the automatic stay by failing to immediately return the funds that it had collected through the garnishment.); *Miller v. Savings Bank of Baltimore* (*In re Miller*), 10 B.R. 778, 780 (Bankr. D. Md. 1981) *affirmed* 22 B.R. 479 (D. Md. 1982) (creditor's repossession of an automobile without knowledge of the automatic stay was not contempt but creditor's repossession

---

[12] The IRS, in its interpretative regulations, gives the example of a loan which is given to a student, part of which is for the purpose of home improvement and part of which is for the purpose of education.  The IRS points out that the loan is not a qualified education expense because the loan is not used "solely" for purposes of education. 26 CFR § 1.221-1(e)(4), Example 6.  Attached as Exhibit S to Carpinello Decl.

was *void ab inintio* and creditor was obligated to restore the debtor to the status quo; failure to do so was contempt.); *Will v. Ford Motor Credit Co.*, (*In re Will*), 303 B.R. 357, 365-66 (Bankr. N.D. Ill. 2001) (same); *see also In re Eisenberg*, 7 B.R.683, 688 (E.D.N.Y. 1980) (respondents took acts to enforce a tax lien after the filing of the bankruptcy petition but before having knowledge of the bankruptcy. Once respondents were advised of the filing, they had a duty to withdraw the tax lien on the debtor's property); *Knaus v. Concordio Lumber Co., Inc.*, (*In re Knaus*), 889 F.2d 773, 775 (8th Cir. 1989) (property legally seized prior to the filing of the bankruptcy petition must nonetheless be turned over to the bankruptcy estate.); *In re Abrams*, 127 B.R. 239 (9th Cir. BAP 1991) (same).

This Court has broad power under § 105, including ordering restitution of funds paid or collected in violation of the Bankruptcy Code, the Bankruptcy Rules or an order of the Court. *Malone v. Norwest Financial California, Inc.*, 245 B.R. 389, 395 (E.D. Cal. 2000) ("It seems plain that no one should be permitted to retain funds obtained in violation of law.  Accordingly, a creditor ought not be permitted to retain funds obtained in violation of § 524.  It thus follows that a judgment of disgorgement is an appropriate order, and accordingly, a cause of action seeking such a judgment lies."); *Padilla v. Wells Fargo Home Mortgage, Inc.*, (*In re Padilla*) 379 B.R. 643, 667-668 (Bankr. S.D. Tex. 2007) (under § 105 a court could order disgorgement of fees and expenses obtained in violation of Rule 2016(a) and in violation of a confirmed plan).

Defendants cannot avoid restitution by relying on *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).  *Taggart* deals with the question of when a party may be subject to contempt for violation of a discharge order.  It does not address at all the question of whether funds received on a discharged debt must be returned.  Indeed, the respondent creditor in *Taggart* expressly acknowledged in its brief before the Supreme Court that the question of whether the creditor was

required to return improperly obtained funds was separate from the issue of whether a creditor should be held in contempt. *Taggart v. Lorenzen*, No. 18-489, Brief for Respondents at 29-30. ("This does not mean that a debtor has no remedy for violation of a discharge order. A court may order the creditor to comply with the discharge order (by, for example, returning property the creditor has collected)."). The caselaw is clear that where a court order is violated the court can order relief to make a party whole without making a finding of contempt.[13] *In Re Oliver*, 499 B.R. 626 (S.D. Ind. 2013) (where school violated the discharge injunction by withholding former student's transcript to coerce payment of tuition that was not protected by § 523(a)(8), court ordered the school to issue the transcript, even though "the Court does not believe Ball State should be punished for proceeding in good faith."); s*ee also Harrison Baking Co. v. Bakery and Confectionary Workers Local No. 3*, 777 F. Supp. 306, 311 (S.D.N.Y. 1991) (ordering reinstatement and back pay where party violated court order but found that the party should not be held in contempt).

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court certify the class and grant summary judgment on the issues of liability and disgorgement.

---

[13] Nor will *Taggart* provide a shield to Defendants on the issue of punitive damages. In *Taggart*, the Supreme Court held that a party's good faith belief that it is not violating a discharge order is not a defense. Rather, a court can still hold a creditor in contempt for violating a discharge order "where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." 130 S. Ct. at 1804. But the Court was careful to distinguish the case before it from those cases in which the creditor acts in subjective *bad faith*, i.e., where the creditor intends to collect on a debt it knows is discharged or chooses to close its eyes to its discharge status. 139 S. Ct. at 1802. Here, of course, Defendants knew there was no "fair ground of doubt" about their actions because they advised their investors that the loans may, in fact, be dischargeable. *Supra* at 9. Furthermore this Court has already held that there is no substantial ground for difference of opinion that the loans were not "educational benefits" under § 523(a)(8)(A)(ii). *See* Order Denying Leave To Appeal Interlocutory Order (Dkt. 129).

Dated:  December 19, 2019

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:    */s/ George F. Carpinello*
George F. Carpinello
Adam R. Shaw
30 South Pearl Street
Albany, NY  12207
(518) 434-0600

**SMITH LAW GROUP**
Austin C. Smith, Esq.
3 Mitchell Place, Suite 5
New York, NY  10017

**JONES, SWANSON, HUDDELL &
GARRISON, L.L.C.**
Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

*Counsel for Plaintiffs*