## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **In re:** | **Chapter 7** |
| **HILAL K. HOMAIDAN,**<br>**f/k/a Helal K. Homaidan,** | **Case No. 08–48275 (ESS)** |
| **Debtor.** | |
| **In re:** | **Chapter 7** |
| **REEHAM YOUSSEF aka Reeham**<br>**Navarro Youssef aka Reeham N.**<br>**Youssef,** | **Case No. 13–46495 (ESS)** |
| **Debtor.** | |
| **HILAL K. HOMAIDAN on behalf of**<br>**himself and all**<br>**others similarly situated** | |
| **Plaintiff,** | **Adv. Pro. No. 17-1085** |
| **v.**<br>**SALLIE MAE, INC,**<br>**NAVIENT SOLUTIONS, LLC,**<br>**NAVIENT CREDIT FINANCE**<br>**CORPORATION** | |
| **Defendants.** | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................. 1

RESPONSE TO PLAINTIFFS' FACTUAL AND LEGAL ASSERTIONS ........................... 5

I.      RESPONSE TO HOMAIDAN FACTS ..................................................... 5

II.     RESPONSE TO YOUSSEF FACTS ........................................................... 7

III.    RESPONSE TO FACTS ON DIRECT-TO-CONSUMER LOANS ........................... 8

IV.     RESPONSE TO THE ARGUMENT ON SUMMARY JUDGMENT
        STANDARDS .................................................................................. 11

V.      RESPONSE TO THE ARGUMENT ON THE BURDEN TO ESTABLISH
        NON-DISCHARGEABILITY ............................................................... 12

        A.      The Burden on Dischargeability ................................. 13

        B.      Ability to Rely on Waivers of Discharge ..................... 14

        C.      The Purpose Test .................................................... 18

VI.     RESPONSE TO THE ARGUMENT ON RESTITUTION ..................................... 23

PLAINTIFFS' MOTION SHOULD BE DENIED ........................................................ 29

I.      THESE DEBTS ARE NON-DISCHARGEABLE ON GROUNDS OTHER
        THAN § 523(A)(8)(B) ...................................................................... 29

II.     THESE LOANS ARE NON-DISCHARGEABLE UNDER SECTION
        523(A)(8)(B) ................................................................................. 32

III     RESTITUTION TO HOMAIDAN OR TO YOUSSEF ....................................... 33

CONCLUSION ................................................................................................. 35

CERTIFICATE OF SERVICE ............................................................................... 37

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*In re Abrams*,
    127 B.R. 239 (9th Cir. B.A.P. 1991) .............................................................. 24

*Airline Reporting Corp. v. Mascoll*,
    246 B.R. 697 (Bankr. D.D.C. 2000) ............................................................17

*Alderwoods Group., Inc. v. Garcia*,
    682 F.3d 958 (11th Cir. 2012) ..................................................................... 25

*Amerada Hess Corp. v. Yuma Shipping Corp.*,
    No. 82 Civ. 2136, 1985 W.L. 458 (S.D.N.Y. Mar. 27, 1985) ........................ 23

*Anderson v. Credit One Bank, N.A.*,
    884 F.3d 382 (2d Cir. 2018) ........................................................................ 25

*Bank of China v. Huang*,
    275 F.3d 1173 (9th Cir. 2002) ............................................................... 15, 16

*Barrientos v. Wells Fargo Bank, N.A.*,
    633 F.3d 1186 (9th Cir. 2011) ..................................................................... 25

*In re Benedict*,
    90 F.3d 50 (2d Cir. 1996) ............................................................................ 32

*Bessette v. Avco Fin. Srvs., Inc.*,
    230 F.3d 439 (1st Cir. 2000) ....................................................................... 25

*Bradley v. Fina*,
    550 F. App'x 150 (4th Cir. 2014) ................................................................ 25

*City of New York v. Matamoros* (*In re Matamoros*),
    2019 WL 3543865 (S.D.N.Y. Aug. 2, 2019)................................................. 24

*Conti v. Arrowood Indem. Co.*,
    No. 2:18-CV-13467, 2020 WL 289309 (E.D. Mich. Jan. 21, 2020)........................... 22

*Cox v. Zale Del., Inc.*,
    239 F.3d 910 (7th Cir. 2001) ....................................................................... 25

*In re Crocker*,
    941 F.3d 206 (5th Cir. 2019) ....................................................................30

*In re Desormes,*
    569 F. App'x 42 (2d Cir. 2014) .................................................................... 30

*DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.,*
    887 F.2d 275 (D.C. Cir. 1989) ..................................................................... 12

*In re Dufrane,*
    566 B.R. 28 (Bankr. N.D. Cal. 2017) .......................................................... 17

*In re Eisenberg,*
    7 B.R. 683 (E.D.N.Y. 1980) ........................................................................ 24

*In re Francis,*
    385 B.R. 800 (B.A.P. 10th Cir. 2008) ......................................................... 20

*Garfield v. Ocwen Loan Servicing,*
    811 F.3d 86 (2d Cir. 2016) .......................................................................... 25

*Giaimo v. Detrano,*
    222 B.R. 685 (Bankr. E.D.N.Y. 1998) ........................................................ 16

*In Re Golden,*
    596 B.R. 239 (Bankr. E.D. N.Y. 2019) ................................................. 17, 26

*Gorosh v. Posner (In re Posner),*
    434 B.R. 800 (Bankr. E.D. Mich. 2010) ..................................................... 21

*Hamman v. Sw. Gas Pipeline, Inc.,*
    721 F.2d 140 (5th Cir. 1983) ...................................................................... 12

*Matter of Hellums,*
    772 F.2d 379 (7th Cir. 1985) ...................................................................... 28

*In re Jean-Baptiste,*
    584 B.R. 574 (Bankr. E.D.N.Y. 2018) ........................................................ 20

*In re Joubert v. ABN AMRO Mort. Grp., Inc.,*
    411 F.3d 452 (3d Cir. 2005) ........................................................................ 25

*Klingman v. Levison,*
    831 F.2d 1292 (7th Cir. 1987) .................................................................... 16

*Knaus v. Concordio Lumber Co., Inc. (In re Knaus),*
    889 F.2d 773 (8th Cir. 1989) ...................................................................... 24

*Lovely H. v. Eggleston,*
    No. 05 Civ. 6920 KBF, 2012 W.L. 4459463 (S.D.N.Y. Sept. 19, 2012) ...................... 23

*In re Maas*,
    497 B.R. 863 (Bankr. W.D. Mich. 2013) ............................................................ 21, 22

*Malone v. Norwest Financial California, Inc.*,
    245 B.R. 389 (E.D. Cal. 2000) .................................................................................... 24

*Matrix Essentials v. Quality King Distributors, Inc.*,
    346 F. Supp. 2d 384 (E.D.N.Y. 2004) ........................................................................ 27

*Merchant v. Lymon*,
    828 F.Supp. 1048 (S.D.N.Y. 1993) .............................................................................. 28

*Miller v. Savings Bank of Baltimore* (*In re Miller*),
    10 B.R. 778 (Bankr. D. Md. 1981) *affirmed* 22 B.R. 479 (D. Md. 1982) ..................... 24

*Morris Commc'ns Corp. v. POA Tour, Inc.*,
    364 F.3d 1288 (11th Cir. 2004) .....................................................................................12

*In re Motichko*,
    395 B.R. 25 (Bankr. N.D. Ohio 2008) ........................................................................ 26

*Murphy v. Penn. Higher Educ. Assistance Agency*,
    282 F.3d 868 (5th Cir. 2002) ......................................................................... 20, 21, 22

*New York Health and Hosp. Corp. v. Blum*,
    678 F.2d 392 (2d Cir. 1982) ..........................................................................................12

*Nickert v. Puget Sound Tug & Barge Co.*,
    480 F.2d 1039 (9th Cir. 1973) .......................................................................................12

*In re Oliver*,
    499 B.R. 617 (Bankr. S.D. Ind. 2013) ....................................................................... 24

*Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*,
    379 B.R. 643 (Bankr. S.D. Tex. 2007) ....................................................................... 24

*Page v. JP Morgan Chase Bank*,
    592 B.R. 334 (B.A.P. 8th Cir. 2018) .......................................................................... 20

*Perez v. Danbury Hosp.*,
    347 F.3d 419 (2d Cir. 2003) ........................................................................................ 27

*Pertuso v. Ford Motor Credit Co.*,
    233 F.3d 417 (6th Cir. 2000) ....................................................................................... 25

*Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*,
    939 F. Supp. 1032 (S.D.N.Y. 1996) ............................................................................ 27

*In re Rust*,
    510 B.R. 562 (Bankr. E.D. Ky. 2014) ............................................................21

*In re Rychalsky*,
    318 B.R. 61 (Bankr. D. Del. 2004) .............................................................. 32

*Schmidt v. Lessard*,
    414 U.S. 473, 94 S. Ct. 713, 38 L.Ed.2d 661 (1974) (*per curiam*) .............................. 26

*Schmitz v. St. Regis Paper Co.*,
    758 F. Supp. 922 (S.D.N.Y. 1991) ................................................................ 28

*In re Shuey*,
    606 B.R. 760 (Bankr. N.D. Ill. 2019) ............................................................ 34

*Sokolik v. Milwaukee School of Eng'g*,
    635 F.3d 261 (7th Cir. 2011) ..................................................................... 20

*In re Sucre*,
    226 B.R. 340 (Bankr. S.D.N.Y. 1998) ............................................................ 24

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019) .................................................................. 25, 26, 27

*Tennessee Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004)................................................................... 14, 28, 34

*United Healthcare Workers v. Borsos (In re Borsos)*,
    544 B.R. 201 (E.D. Cal. 2016) ................................................................... 24

*United States Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010)................................................................... 14, 28, 34

*Walls v. Wells Fargo Bank, N.A.*,
    276 F.3d 502 (9th Cir. 2002)..................................................................... 25

*In re Wiley*,
    579 B.R. 1 (Bankr. D. Me. 2017) .................................................................17

*Will v. Ford Motor Credit Co.* (*In re Will*),
    303 B.R. 357 (Bankr. N.D. Ill. 2001)............................................................ 24

**Statutes**

11 U.S.C. § 523(a)(2).................................................................. 30, 31, 32

11 U.S.C. § 523(a)(3).......................................................................... 32

11 U.S.C. § 523(a)(8)..................................................................... *passim*

11 U.S.C. § 523(a)(8), and (2) ...................................................................... 12, 30

11 U.S.C. § 523(c) ...........................................................................................31

11 U.S.C. § 524(a)(2), and (2) ......................................................................... 25

11 U.S.C. § 524(f) ........................................................................................... 28

15 U.S.C § 1638 ............................................................................................... 20

26 U.S.C. § 221(d)(2) ...................................................................................... 18

Bankruptcy Code § 524 .................................................................................. 26

Code § 523(c)(1) ..............................................................................................13

## Other Authorities

26 C.F.R. 1.221-1...........................................................................................18, 19

Bankruptcy Rule 2016(a) ............................................................................... 24

Federal Rule of Bankruptcy Procedure 4007(c) ..........................................31, 32

Federal Rules of Civil Procedure Rule 56 ....................................... 2, 11, 12, 23

Navient Solutions, LLC and Navient Credit Finance Corporation (collectively, "Navient") oppose Plaintiffs' Motion for Partial Summary Judgment as follows:[1]

## INTRODUCTION

In this case, plaintiffs seek damages and other relief based solely on the claim that Navient violated the discharge injunctions entered in their respective bankruptcy cases by attempting to collect on loans they claim were discharged. *See* Plaintiffs' Amended Complaint, ECF No. 160 at 16-17. Both plaintiffs scheduled their loans in their bankruptcy cases as student loans, thus implicating the provisions of 11 U.S.C. § 523(a)(8) that make student debt non-dischargeable in most circumstances. Nevertheless, they now say that these loans in reality constituted ordinary consumer debt exempt from the special non-dischargeability rules applicable to student loans. This is so, they now say, because they did not actually use the loan proceeds for the "costs of attendance" at qualified schools. This position, though, is utterly inconsistent with – and directly contradicts – the purpose for which the loans were made and the written representations and promises plaintiffs provided when they applied for and accepted the loans.

Before the Court now is a very odd motion for partial summary judgment filed by plaintiffs on December 19, 2019. *See* ECF No. 170. The motion asserts some alleged facts about the two named plaintiffs and discusses plaintiffs' view in the abstract of certain legal principles, but it never purports to tie the two together, nor does it seek any actual judgment in favor of either plaintiff. There is no request for a judgment that Navient is liable to either plaintiff for violation of the discharge injunction, and there is no request

---

[1] In support of this Opposition, Defendants hereby reference and incorporate the Declaration of Thomas M. Farrell filed contemporaneously herewith.

that any actual remedy be awarded in favor of either plaintiff.[2]  Rather, the motion in effect asks the Court to enter an advisory opinion that would effectively set up a claims process that would apply to these plaintiffs and other borrowers who may someday be before the Court if and when the Court were ever to certify this case as a class action. *See* ECF 170 at 14, 19.[3]

This is an entirely inappropriate use of Rule 56 of the Federal Rules of Civil Procedure.  If and when the Court ever certifies a class, there will be ample opportunity to devise a trial plan and, if appropriate, to set up a process for resolving the claims of class members.  But, at this stage, the summary judgment procedures of Rule 56 should be limited to their intended purpose of assessing whether there are genuine issues of material fact on the claims of the only two plaintiffs currently before the Court and whether either of those plaintiffs is entitled to judgment as a matter of law.  Since neither plaintiff has even tried to meet that summary-judgment burden and has not even sought judgment as a matter of law on his own individual claim (either as to liability or remedies), the pending motion is procedurally defective and should be denied out of hand.

In any event, the claims process that plaintiffs are effectively asking the Court to establish ignores key considerations that would have to be addressed in any assessment of whether Navient violated the discharge injunction in any way that could give rise to remedies in plaintiffs' favor.  Plaintiffs ask the Court to rule, in the abstract and without regard to whether their particular loans were or were not discharged, (1) that Navient has

---

[2]  The motion's prayer for relief vaguely seeks "summary judgment on the issues of liability and disgorgement." ECF No. 170 at 21.  Plaintiffs' proposed order, ECF No. 168-1, is equally vague, with no provision for any specific relief to either Homaidan or Youssef.

[3]  Plaintiffs seek in their Amended Complaint certification of a nationwide class of borrowers who they allege are similarly situated, but the Court has not yet taken up the issue of class certification.

the burden to prove that each direct-to-consumer loan made to a debtor who received a discharge in bankruptcy was "within the cost of attendance" and (2) if Navient fails to meet that burden, the loan is deemed discharged, thus automatically triggering an obligation on Navient's part to disgorge all post-discharge funds received on that loan. Plaintiffs say that an order to this effect will "streamline the litigation and clarify issues remaining to be tried." *See* ECF No. 170 at 19.

In reality, since the abstract rulings that plaintiffs seek ignore so many critical questions, entering them now would do nothing to advance this case or streamline anything. Perhaps most critically, while plaintiffs' motion seeks to put the burden on Navient to show that a loan was "within the cost of attendance," it ignores entirely the elephant in the room: what quality or quantum of proof would satisfy that burden? This is perhaps the most important question in this case, but the rulings plaintiffs seek do not even address it and instead leave it for later determination.[4]

Plaintiffs' proposed rulings fail to address another critical question: if it is determined (by some as-yet-to-be-identified standard) that a loan exceeds the cost of attendance, does the full amount of the loan become dischargeable or only the amount that exceeds the cost of attendance? Plaintiffs' proposed process is silent on this important issue.

There are other important issues plaintiffs ignore: Should the amount of any loan made or serviced by Navient be compared to the "cost of attendance" on a stand-alone basis or only after considering other resources that were available to the student to pay for school (such as loans from other lenders, scholarships, etc.)? What happens if Navient

---

[4]    Plaintiffs do argue that boilerplate discharge waivers are not sufficient to prove non-dischargeability, but nowhere do they discuss what would be sufficient. *See* ECF No. 170 at 17.

makes a loan for a given school year that is within the "cost of attendance," another lender also makes a loan for that same school year that is within the "cost of attendance," but in the aggregate the combined amount of the two loans exceeds the "cost of attendance"? Are both dischargeable, is neither dischargeable?  Is the benefit of non-dischargeability afforded to both, on a pro rata basis?  Or does non-dischargeability go only to the loan disbursed first in time?  Plaintiffs' motion is silent on these critical issues.

Equally important, plaintiffs' motion makes the erroneous assumption that the loans in question are non-dischargeable, if at all, only under the provisions of Section 523(a)(8)(B) that address qualified education loans.   They ignore altogether other grounds for non-dischargeability, including the impact of the misrepresentations made by plaintiffs when they applied for these loans and plaintiffs' decisions to schedule these loans in a manner utterly inconsistent with their current position, which gives rise to the conclusion that these loans may be non-dischargeable for reasons unrelated to their status as student debt.  Plaintiffs' proposed relief provides no mechanism to resolve these critical issues.

And, finally, plaintiffs propose a process under which the Court would jump directly from a determination that a loan was discharged to a judgment that Navient must disgorge all sums collected on that loan after discharge, without accounting for the many intermediary determinations that would have to be made before restitution or disgorgement could ever be ordered.

Without addressing these, and the other issues discussed below, granting the relief requested by plaintiffs at this stage of the case would do nothing to advance this litigation to an efficient resolution.  Thus, even if the motion were procedurally proper (and it is not), it should be denied.

With the foregoing background, Navient responds below in detail to each section of plaintiffs' motion for partial summary judgment and then demonstrates that the motion should be denied.

**RESPONSE TO PLAINTIFFS' FACTUAL AND LEGAL ASSERTIONS**

## I.    Response to Homaidan Facts

At pages 2 to 3 of their motion, plaintiffs allege various facts related to the loans and the bankruptcy of plaintiff Homaidan.  But, because plaintiffs never seek any specific relief related to Homaidan or his loans, this discussion of his facts is largely irrelevant.  That said, plaintiffs' discussion of the Homaidan facts is incomplete and in some instances simply wrong.  Any consideration by the Court of the Homaidan facts should include the following additions and corrections:

- Homaidan complains in this case of Navient's efforts to collect on two Tuition Answer loans – one that he applied for on August 30, 2006 ($5,800) and one that he applied for on September 19, 2006 ($6,000).  Homaidan Decl. Ex. A, B.

- In the applications for both loans, Homaidan represented that he was a full-time student at Emerson College or was otherwise eligible for the loans.  *Id.*

- In the applications for both loans, Homaidan represented that he would use the loan proceeds only for tuition, fees, room, board, and other educational expenses at Emerson College.  *Id.*

- In another section of the applications for both loans, Homaidan represented that he would use the loan proceeds to pay the "cost of attendance" at Emerson College.  *Id.*

- In the promissory notes for both loans, Homaidan acknowledged that the loans were conditioned on his enrollment at Emerson College on at least a half-time basis.  *Id.*

- In the promissory notes for both loans, Homaidan certified that he was obligated to "immediately repay any funds that [he] receive[d] which cannot reasonably be attributed to meeting [his] qualified higher education expenses related to attendance" at Emerson College.  *Id.*

- In the promissory notes for both loans, Homaidan certified that he had read and agreed to all provisions of the materials explaining the loan program; and those materials make clear that, to obtain and to retain a Tuition Answer loan, a borrower must be enrolled in school and must use the loan proceeds solely to pay educational expenses. *Id.*

- Despite all of these promises and representations, Homaidan withdrew from Emerson College on September 19, 2006, the very day on which he applied for the second loan at issue. Farrell Decl., Ex. H at 40.

- Despite all of the above promises and representations, Homaidan did not use any of the loan proceeds for educational expenses. Farrell Decl., Ex. F.

- Homaidan never advised Navient that he had withdrawn from school or that he was using the loan proceeds for non-educational purposes in direct violation of his promises and representations.

- When Homaidan filed for bankruptcy relief, he scheduled the loans at issue as student debt, thus continuing the charade that he had used the loan proceeds for educational expenses at Emerson College. Farrell Decl., Ex. L.

- During the course of his bankruptcy prior to his discharge, Homaidan never asserted the position that these loans constituted dischargeable consumer debt and never sought a determination that they were dischargeable.

- Although Homaidan seeks disgorgement or restitution for payments made on these loans post-discharge, he did not make the majority of these payments. Rather, his loans were paid off in full (by a payment of $63,177.25 in 2011) by some person unknown to him under circumstances that he does not know or will not reveal. Farrell Decl. E, F.

- Notwithstanding all of the rhetoric in plaintiffs' motion about Navient supposedly turning a blind eye to the "cost of attendance," Homaidan's student loans and scholarships, in the aggregate, were <u>less</u> than the "cost of attendance" that Emerson College published in its catalogue for 2006. Farrell Decl. H.

As discussed in more detail below, these facts put expose the lie to plaintiffs' assertion that Navient "made no effort" to determine that Homaidan's loans were qualified educational expenses within the "cost of attendance." In addition, they demonstrate that, had Homaidan moved for summary judgment on his own claim, there

would have been no conceivable basis on which to grant him relief on either liability, restitution, or any other remedy.

## II.    <u>Response to Youssef Facts</u>

At pages 3 to 4 of their motion, plaintiffs recount certain facts related to loans taken out by plaintiff Reeham Youssef.  Since Youssef does not in her motion seek any specific relief related to these loans, her factual discussion, like Homaidan's, is largely irrelevant. That said, to the extent the Court considers the facts surrounding Youssef's loans, certain additional matters must be noted.

First, Youssef complains in this case about four Tuition Answer loans she obtained for the 2006-07 school year, and two Tuition Answer loans for the 2007-08 school year, in connection with her attendance at Queens College, CUNY.  Youssef Decl. ¶¶ 5-6.  Like Homaidan, Youssef made numerous promises and representations in her loan applications and her promissory notes that she would use the loan proceeds solely for educational expenses within the "cost of attendance."

For example, for each of the Tuition Answer loans about which she complains, Youssef received written disclosures stating clearly that such loans could "not [ ] exceed the cost of attendance at the student's school."  *E.g*, Youssef Decl., Ex. A at 907.[5]  Those disclosures further stated that "Tuition Answer loan proceeds are solely to pay for a student's qualified higher education expenses at an eligible educational institution."  *Id*. They also warned Youssef that she could not request any loan amount that would "exceed the cost of attendance at the student's school."  *Id*. at 908.

---

[5]    This and similar reference numbers refer to the last 3 digits of the Bates number in the referenced Exhibit.

Youssef, for her part, represented in the application for each loan that she would use the loan proceeds solely to pay for educational expenses within "the cost of attendance" at her school. Youssef Decl., Ex. D. at 972. She further "certified" in each promissory note that she had "read, underst[ood] and agree[d]" to the disclosures about the Tuition Answer program (referenced above) and, with knowledge of the program's limitations, was "eligible for this loan." *Id.* at 980. She also agreed in each promissory note either: (1) that she "must immediately repay any funds that...cannot reasonably be attributed to meeting the student's qualified higher education expenses related to attendance at the School" (2006-07 promissory notes); or (2) that the loans were conditioned on her being at least a part-time student and on her needing the loan proceeds to "meet the education costs of the student" (2007-08 promissory notes). Youssef Decl., Ex. A at 914; Ex. E at 002

Second, like Homaidan, Youssef scheduled all of these loans in her bankruptcy case as student debt. Farrell Decl., Ex. M. Prior to discharge, she never asserted in her bankruptcy case her current position that these loans constituted dischargeable consumer debt, and she never sought prior to the initial closure of her bankruptcy case any determination regarding the dischargeability of these loans. Farrell Decl., Ex. K.

Accordingly, as with Homaidan, there would be no conceivable basis on which to grant summary judgment for Youssef, had she bothered to move for such relief.

## III.    <u>Response to Facts on Direct-to-Consumer Loans</u>

At pages 5 to 13 of their motion, plaintiffs purport to summarize various facts related to the "direct-to-consumer" loan program – the Tuition Answer program – that

they attack in this case.[6]  They make three main points:  (1) Tuition Answer loans are not federally guaranteed and thus involve underwriting criteria (such as credit checks) and interest rates not typical of student loans that are federally guaranteed; (2) proceeds from Tuition Answer loans were disbursed directly to students without first obtaining a certification from the school that the loan proceeds were within the "cost of attendance"; and (3) Navient's practice is to resume collection efforts on Tuition Answer loans after bankruptcy discharges without obtaining any school certifications that the loans were within the cost of attendance.

The first proposition – student loans that are not federally guaranteed involve underwriting and business considerations not applicable to loans that are federally guaranteed – is neither surprising nor relevant.  It is not surprising because the presence or absence of a federal guaranty (or any other kind of guaranty) clearly impacts the risk inherent in a loan made by a private lender, and any rational lender would obviously consider that risk when setting underwriting criteria and loan terms.  It is not relevant because the provisions of the Bankruptcy Code that make student loans non-dischargeable cover loans by private lenders without regard to the interest rates they may charge or the underwriting criteria they may use.

The second proposition – Tuition Answer loans were disbursed directly to students and without first obtaining a certification from the school regarding "cost of attendance" – is equally irrelevant.  As discussed in more detail below, there is nothing in the applicable statutes or regulations that says a student loan is non-dischargeable <u>only if</u> disbursed through a school's financial aid office or <u>only if</u> accompanied by a school-

---

[6]       There is some suggestion in their motion that plaintiffs may be seeking relief on loans made under other programs, but their Amended Complaint is limited to Tuition Answer loans.  *See* ECF No. 160 at ¶ 73.  Thus, the only loans actually at issue here are Tuition Answer loans.

certification that it is within the "cost of attendance." In fact, plaintiffs acknowledge in their motion that, even though no school certifications were obtained prior to or at the time Tuition Answer loans were disbursed, Navient can still today demonstrate through other means that the loans were within the "cost of attendance" and are thus non-dischargeable.

The third proposition – that Navient did not obtain school certifications before resuming post-discharge collection activities – is similarly of no moment. There is again no requirement to obtain a school certification in any of the applicable statutes or regulations. And, plaintiffs concede in their motion that the failure to obtain a school certification before the resumption of collection efforts is not dispositive of whether Navient violated any discharge injunction. As plaintiffs acknowledge, whether a loan is within the cost of attendance – and thus eligible for resumed collection activities post-discharge – need not be shown through a school certification and can be established through other means of proof.

The rest of plaintiffs' discussion in this section of their motion consists of *ad hominem* attacks on Navient that are either inaccurate, irrelevant, or both. Plaintiffs cite to newspaper articles about investigations of Navient by regulators, suggesting that these investigations relate somehow to bankruptcy-discharge issues or establish some overall impropriety in the Tuition Answer program itself. But, the newspaper articles, of course, don't even mention the bankruptcy-discharge issues raised in this case. And, as inadmissible hearsay describing only allegations (not findings), they obviously prove nothing about the Tuition Answer loan program more generally that could have any bearing on this case. And, notwithstanding plaintiffs' efforts to smear the Tuition Answer loan program, they have themselves offered evidence (in the form of Congressional

testimony from a Sallie Mae officer) detailing the utility of private loan programs like Tuition Answer and the important and legitimate role they play in bridging the gap between the funding available to students through government financial aid and the ever increasing costs of higher education.  *See* Exhibit H to Carpinello Declaration, ECF No. 179.

Finally, plaintiffs suggest that Navient has somehow admitted in advertisements and promotional materials that Tuition Answer loans can be used for non-educational purposes, but the materials they cite for this proposition (Exhibit D to the Carpinello Declaration and a YouTube video) say nothing of the sort.  In reality, all of the materials describing and implementing the Tuition Answer program disclose that loan proceeds may <u>not</u> be used for non-educational expenses or for expenses that exceed the cost of attendance.  And, as will be explained in more detail below, Navient's efforts to limit the use of loan proceeds to qualified purposes were fully compliant with and sufficient under the applicable statutes and regulations.

## IV.   <u>Response to the Argument on Summary Judgment Standards</u>

At pages 13 to 14 of their motion, plaintiffs set forth some of the standards applicable to motions for summary judgment under Rule 56.  They also note the well-established notion that a court, in the appropriate circumstances, can grant a partial summary judgment that does not dispose of the whole case.

What plaintiffs fail to do is cite any authority for using Rule 56 in the manner they propose – *i.e.*, to make abstract rulings on propositions of law untethered to any facts (undisputed or otherwise) that do nothing more than establish a sort of claims process that may or may not be of utility later in the case once the actual facts are developed.  Here, plaintiffs do not ask the Court to determine that certain facts are undisputed, nor

do they ask the Court to determine the legal impact of any undisputed facts for either Homaidan or Youssef.  Rather, they ask the Court to:  (1) hold generally that one party (Navient) has the burden of proof on an issue (the dischargeability of Tuition Answer loans); and then (2) give an advisory opinion on the remedy that could flow from failing to meet that burden of proof (disgorgement or restitution), even before hearing all of the evidence and considering all of the legal issues on which the availability of that remedy would depend.

That this is a perversion of Rule 56 and the summary-judgment process is beyond question.  *See, e.g., New York Health and Hosp. Corp. v. Blum*, 678 F.2d 392, 396-97 (2d Cir. 1982) (summary judgment process may not be used to obtain "hypothetical, advisory" opinions); *see also Morris Commc'ns Corp. v. POA Tour, Inc.*, 364 F.3d 1288, 1292-93 (11th Cir. 2004) (same); *DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 296-97 (D.C. Cir. 1989) (same); *Hamman v. Sw. Gas Pipeline, Inc.*, 721 F.2d 140, 143-44 (5th Cir. 1983) (same); *Nickert v. Puget Sound Tug & Barge Co.*, 480 F.2d 1039, 1041 (9th Cir. 1973) (same).

## V.    **Response to the Argument on the Burden to Establish Non-Dischargeability**

At pages 14 to 19 of their motion, plaintiffs make two legal arguments:  (1) once issue is joined on dischargeability, the creditor (not the debtor) bears the burden to establish that a loan is non-dischargeable under 11 U.S.C. § 523(a)(8), and (2) the creditor cannot discharge that burden by relying on a debtor's legally unenforceable waiver of dischargeability.  Navient does not dispute either proposition, but neither entitles plaintiffs, at this stage of the case, to any relief by way of summary judgment.

### A. The Burden on Dischargeability

With respect to the first proposition, many courts have indeed held that a student lender bears the burden to show that a student loan falls within one of the three categories of non-dischargeable debts set forth in Section 523(a)(8).  But, there is a corollary question, ignored by plaintiffs, which will play an important role in this case.  Who has the burden of initially raising the issue of whether a student loan is dischargeable under Section 523(a)(8)?

The importance of this question is highlighted by the circumstances of the two named plaintiffs.  Homaidan received a discharge order in April 2009.  In July 2011, the full balance of his Tuition Answer loans was paid in full (albeit not by him or by any person he can identify).  Then, in April 2017, Homaidan sought and received permission to re-open his bankruptcy case to seek a determination that his loans (by then fully paid off, six years earlier, by an unknown benefactor) were discharged.  Youssef has a somewhat similar story.  She received a discharge order in February 2014, but did not seek to re-open her bankruptcy case until October 2019, over five years later, after which she joined this case as a plaintiff to seek a determination that her Tuition Answer loans were discharged.

Now that the issue has been raised on dischargeability, Navient may well be the party with the burden to establish that the loans at issue fall within one of the three categories in 11 U.S.C. § 523(a)(8) or are non-dischargeable under some other provision of Section 523(a).  That, however, begs a critical question:  Who had the burden to raise the issue in the first place, and does the failure of either party to seek a dischargeability determination in the years between the entry of discharge orders and the commencement of this adversary proceeding have any impact on liability or on the available remedies?

Fortunately, the Bankruptcy Code itself and two United States Supreme Court decisions answer this question. Section 523(c)(1) of the Code sets forth that certain kinds of debts (those described in Section 523(a)(2), (4), and (6) for money obtained by false pretenses, for fraud, and for willful and malicious injury) only become non-dischargeable if the creditor raises the issue, requests a hearing, and secures a judicial determination of non-dischargeability. Significantly, no such burden is placed on the creditor with respect to student debt that is non-dischargeable under Section 523(a)(8). Based on this distinction, the Supreme Court held in *United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269, 274 n. 11 (2010), that student loans are presumptively not discharged until the debtor initiates an adversary proceeding and obtains through that process a determination that the debt was discharged. *See also Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) (same).

In short, to the extent Homaidan and Youssef wanted to challenge the no-discharge presumption applicable to their student loans, they had the burden to raise the issue in an adversary proceeding. Homaidan's decision to wait eight years before doing so, and Youssef's analogous five-year delay, may not completely bar them from litigating the issue now, but it certainly may, as discussed below, limit the remedies available to them for any collection activities occurring before they belatedly decided to take action.

### B. Ability to Rely on Waivers of Discharge

With the second legal point they make, plaintiffs are shooting at a straw man erected from a mischaracterization of Navient's position. Plaintiffs first suggest that, to invoke non-dischargeability under Section 523(a)(8)(B), which covers "qualified education loans" within the "cost of attendance," Navient relies solely on "boilerplate" recitations in the promissory notes that "this loan is not dischargeable." Plaintiffs then

cite a number of cases for the proposition that any such boilerplate "waiver of dischargeability" would be unenforceable on public policy grounds.

This straw man argument does not accurately reflect Navient's position.  To show that these loans are non-dischargeable, Navient does <u>not</u> rely solely on boilerplate waivers by borrowers of their right to claim a discharge.  To prevail in this case, Navient need not show that such a legal right is capable of being waived in advance of a bankruptcy filing or that any borrower in fact executed an enforceable pre-bankruptcy waiver of that legal right.   Rather, Navient relies on the <u>facts</u> surrounding the application for and the acceptance of these loans, including the mutual understanding and agreement of the lender and the borrower that the loan proceeds <u>could only be used</u> for educational expenses within the cost of attendance and <u>would only be used</u> for educational expenses within the cost of attendance.  In other words, Navient contends that the purpose of the loan – the use for which the loan proceeds were sought and the use to which the borrower agreed to put those loan proceeds – is determinative.  To establish that purpose, Navient does not rely on any boilerplate waiver of legal rights, but relies on the totality of the loan process (the disclosures concerning the Tuition Answer loan program, the applications for the loans, and the provisions of the loan documents that confirm and constrain the purposes for which the loan proceeds can be used).

None of the cases cited by plaintiffs on page 17 of their motion precludes this approach.  In fact, none of them even addresses the impact under Section 523(a)(8) of representations made in loan applications or in promissory notes regarding the intended use of loan proceeds for educational purposes.  Rather, each of these cases arises in the context of a settlement agreement or consent judgment where a debtor agreed to make future payments to resolve a claim and the creditor sought to restrict the ability of the

debtor to discharge that settlement obligation in a future bankruptcy case.  In most of these cases, the creditor sought to achieve this protection with nothing more than a general statement in the settlement papers that the settlement obligation would not be dischargeable in any future bankruptcy.  *See, e.g., Bank of China v. Huang*, 275 F.3d 1173 (9th Cir. 2002).  Not surprisingly, plaintiffs' cases simply hold that this kind of general statement is not enough – by itself – to preclude a subsequent discharge of the settlement obligation. *Id.*

The cases reach this conclusion for two reasons.  First, they note that pre-bankruptcy waivers of the right to seek the various protections afforded by the Bankruptcy Code are generally unenforceable on public policy grounds.  *See, e.g., Giaimo v. Detrano*, 222 B.R. 685 (Bankr. E.D.N.Y. 1998).  Second, they note that general waivers of this type, even when put in agreed judgments or consent judgments, do not (without more) contain the factual specificity necessary to meet the elements of collateral estoppel or res judicata and to thereby preclude the debtors from litigating discharge issues in subsequent bankruptcy proceedings.  *See, e.g., Bank of China*, 275 F.3d at 1176.

These cases, however, also recognize that a bankruptcy court is free to determine dischargeability issues based on facts to which the parties have stipulated (as opposed to generalized  waivers of legal rights), even if the stipulation occurred pre-bankruptcy, so long as the stipulated facts sufficiently overlap with the elements of Section 523 that are at issue.  *See, e.g., Klingman v. Levison*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987); *see also Giaimo*, 222 B.R. at 685.  There is nothing in these cases that would preclude Navient showing non-dischargeability by relying on the factual stipulations, representations, and promises in promissory notes and loan applications concerning the intended and authorized use of loan proceeds.

16

Plaintiffs fare no better with the cases they cite on pages 18 and 19 of their motion. These cases do at least discuss the non-dischargeability of student loans under Section 523(a)(8).  But, none of them rejects the purpose test on which Navient relies and none of them purports to preclude a student lender from demonstrating through representations and promises in a loan application or a promissory note that a given loan is a qualified education loan under Section 523(a)(8)(B).  *See In Re Golden*, 596 B.R. 239 (Bankr. E.D. N.Y. 2019) (dealing primarily with whether a program was funded by a governmental unit or non-profit institution under 523(a)(8)(i) and not fully addressing the impact of representations in loan applications and promissory notes on the assessment of qualified education loans under 523(a)(8)(B)); *In re Wiley*, 579 B.R. 1, 7 (Bankr. D. Me. 2017) (dealing only with whether promissory note established a loan program was funded by a governmental unit or non-profit institution under 523(a)(8)(i) and saying nothing at all about qualified education loans under 523(a)(8)(B)); *In re Dufrane*, 566 B.R. 28, 40 (Bankr. N.D. Cal. 2017) (dealing only with  the "educational benefit" provision of 523(a)(8)(ii) and saying nothing at all about qualified education loans under 523(a)(8)(B)); *Airline Reporting Corp. v. Mascoll*, 246 B.R. 697, 701 (Bankr. D.D.C. 2000) (dealing only with post-filing reaffirmation agreements and saying nothing at all about qualified education loans under 523(a)(8)(B)).

In short, while plaintiffs may have established that Navient cannot rely solely on naked and generalized pre-filing waivers of the right to claim discharge, they have offered nothing that would preclude reliance on the facts on which Navient actually relies: representations and promises by borrowers, contained in loan applications and promissory notes, that the loans have been sought and will be used solely to pay for educational expenses within the cost of attendance.

### C.  The Purpose Test

Because plaintiffs have done nothing more than shoot down an irrelevant straw man, Navient is under no burden at this stage to identify, or apply to the facts, the proper test for determining whether a loan is non-dischargeable under Section 523(a)(8)(B). Since plaintiffs have not moved for summary judgment that Homaidan's loans or Youssef's loans were discharged, identifying and applying the actual test is for another day.

That said, Navient notes that the issue under Section 523(a)(8)(B) is whether a loan is a "qualified education loan, as defined in Section 221(d)(1) of the Internal Revenue Code of 1986." The Internal Revenue Code, in turn, defines a "qualified education loan" as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." *See* 26 U.S.C. § 221(d)(1).  "Qualified higher education expenses" are defined, in part, as "the cost of attendance . . . at an eligible educational institution." *See* 26 U.S.C. § 221(d)(2).

While the nuances of these definitions may come into play as this case proceeds, the primary issues that plaintiffs raise in their Amended Complaint, but fail to address head on in their motion for partial summary judgment, are these:  Does eligibility for the non-dischargeability protection of Section 523(a)(8)(B) turn on the intended use of the loan proceeds or on how the loan proceeds are actually used?  And, can a student lender invoke the protection of Section 523(a)(8)(B) through reliance on promises and representations in the loan documents and applications that define the loan's purpose or must the lender do more to verify or control the use of loan proceeds?

While plaintiffs' motion for partial summary judgment does not tee up these questions directly, it is important to note that there is no requirement in Section

523(a)(8)(B) or in the Internal Revenue Code or in any of the implementing regulations (26 C.F.R. 1.221-1) that a student lender obtain a certification from the school that a loan is within the cost of attendance or to disburse the proceeds directly to the school. Congress could have limited Section 523(a)(8)(B)'s coverage to loans certified or disbursed in this manner, but it did not do so. Because a court would not be empowered to rewrite the statute by engrafting any such requirements, plaintiffs' over-heated rhetoric about the lack of school certifications and the direct-to-consumer nature of the Tuition Answer program is, in reality, totally beside the point. Since there is no statutory requirement to obtain school certification or to disburse proceeds through a school, Navient's failure to have done so is of zero legal significance.

It is equally important to note that the purpose test advocated by Navient is mandated by the language that does appear in the statute. As noted, a "qualified education loan" is defined as debt "incurred . . . solely to pay qualified higher education expenses." *See* 26 U.S.C. § 221(d)(1). By focusing on the reason the debt was incurred, as opposed to how the money was subsequently spent, Congress in effect adopted the purpose test and established that the terms of the loan applications and the loan documents – since they define the purpose for which the money was loaned – can be determinative of whether a given loan is a "qualified education loan." Congress could have limited the definition to loans that were "actually used" to pay for qualified educational expenses, but it did not do so.

The purpose test on which Navient relies is also endorsed in the interpretative guidance promulgated by the IRS in the Code of Federal Regulations. These regulations, found at 26 C.F.R. § 1.221-1, provide examples designed to help distinguish qualified educational loans from non-qualified loans. Example 6 reads as follows:

Student J signs a promissory note for a loan secured by Student J's personal residence. Student J will use part of the loan proceeds to pay for certain improvements to Student J's residence and part of the loan proceeds to pay qualified educational expenses of Student J's spouse. Because Student J obtains the loan not solely to pay qualified higher education expenses, the loan is not a qualified education loan.

By focusing on the intended use of the proceeds at the time loan was initiated (*i.e.*, the purpose for which the loan was obtained), this example confirms that the purposes test (as opposed to an "actual use") test is the right approach and that the loan's purpose can be proven through representations and promises in the loan application and the other loan documents.[7]

Indeed, a majority of courts, including this Court, considers a debtor's purpose in incurring an obligation, and the character of the loans at the time they were made, to be determinative under § 523. *See In re Jean-Baptiste*, 584 B.R. 574, 585 (Bankr. E.D.N.Y. 2018) ("Courts have held that the stated purpose and not the actual use of the loan determines whether a loan is an 'educational loan' excepted from discharge under § 523(a)(8)."); *see also Sokolik v. Milwaukee School of Eng'g*, 635 F.3d 261, 266 (7th Cir. 2011); *Murphy v. Penn. Higher Educ. Assistance Agency*, 282 F.3d 868, 870 (5th Cir. 2002) (citing cases and concluding that "it is the purpose, not the use, of the loan

---

[7]    Plaintiffs roundly criticize Navient for, in essence, relying on the borrowers to self-certify that their loans are for qualified educational expenses within the cost of attendance. But, ironically enough, with amendments to the Higher Education Act effective August 2008, Congress transformed the practice that Navient had been following of obtaining self-certifications from students into a requirement. Under 15 U.S.C § 1638, "[b]efore a private educational lender may consummate a private education loan with respect to a student attending an institution of higher education, the lender shall obtain from the applicant for the private education loan the form developed by the Secretary of Education under Section 155 of the Higher Education Act of 1965 signed by the applicant in written or electronic form." That form, a copy of which is attached as Exhibit I to the Farrell Declaration, captures essentially the same self-certifications from the student that Navient had already been capturing in its loan applications. While this mandated self-certification process was enacted after the Homaidan and Youssef loans were made, it serves to demonstrate that Navient's process of relying on student certification was sufficient and appropriate. Congress would hardly have codified this process as mandatory if Congress believed that it was ineffective to implement or effectuate the Congressional intent behind Section 523(a)(8)(B).

that controls" the dischargeability determination under § 523(a)(8)); *Page v. JP Morgan Chase Bank*, 592 B.R. 334, 336-37 (B.A.P. 8th Cir. 2018) ("Rather than focus on a loan's features, courts routinely look to the purpose of a loan to determine whether it is 'educational'" under § 523(a)(8)); *In re Francis*, 385 B.R. 800 (B.A.P. 10th Cir. 2008) ("[T]he applicability of § 523(a)(8) hinges upon the character of the [l]oans at the time they were made"); *In re Rust*, 510 B.R. 562, 567 (Bankr. E.D. Ky. 2014) ("[A] majority of courts determine whether a loan qualifies as an 'educational benefit' by focusing on the stated purpose for the loan when it was obtained, rather than on how the loan proceeds were actually used.") (emphasis in original); *In re Maas*, 497 B.R. 863, 869 (Bankr. W.D. Mich. 2013) (same); *Gorosh v. Posner (In re Posner)*, 434 B.R. 800, 803 (Bankr. E.D. Mich. 2010) ("a majority of courts [determine] the educational nature of the loan by focusing on the substance of the transaction which resulted in the obligation. The 'substance of the transaction test' reflects recognition of the Congressional purpose of § 523(a)(8), namely to insure the availability of educational financing.").

The facts of this case demonstrate why such a test is appropriate and necessary. Homaidan obtained a loan that was offered for the sole purpose of paying qualified education expenses.    Homaidan could never have obtained the loan without his representation that he was a student at Emerson College and his promise that he would use 100% of the proceeds to pay for educational expenses within the cost of attendance at that school.[8]    Then, immediately after making those representations and promises, he withdrew from school and actually used 100% of the loan proceeds for non-educational purposes.  Now, years later, he wants to be rewarded for his fraud and granted a discharge

---

[8]    Homaidan's Tuition Answer loan undoubtedly had better repayment and other terms than any non-student loan available to him, assuming he could even have qualified for a non-student loan.

that would have been unavailable to him if he had fulfilled his promises and commitments. An "actual use" test as opposed to a "purpose" test would allow the inequitable result Homaidan seeks, but the Fifth Circuit, in *Murphy*, aptly exposed the absurdity that would flow from that approach:

> [P]ermitting students to discharge student loans in bankruptcy because the student spent the money on social uses, alcohol, or even drugs would create an absurd result. Students who used the loan proceeds to finance an education would retain the burden of paying them even after a chapter 7 discharge; irresponsible students who abused the loans would gain the benefits of a discharge.

*Murphy*, 282 F.3d at 873. It follows that a loan made with the intention of financing a student's qualified higher education expenses is a qualified educational loan. An analysis of how the proceeds were actually used is unnecessary and inappropriate. *Maas,* 497 B.R. at 870.

In fact, just two weeks ago, a district court sitting in its appellate capacity applied the substance of the transaction test to the question of whether a loan is a "qualified educational loan" under § 523(a)(8)(B). *Conti v. Arrowood Indem. Co*., No. 2:18-CV-13467, 2020 WL 289309, at *4 (E.D. Mich. Jan. 21, 2020) ("The Court agrees with the bankruptcy court's rationale that there is no reason the substance of the transaction test should not apply to education loans that are 'qualified educational loans' under § 523(a)(8)(B just as it has been found to apply to educational loans that fall under § 523(a)(8)(A)."). Significantly, the *Conti* court analyzed whether the loan was a qualified educational loan under § 523(a)(8)(B) through examination of the plain language of the promissory notes. ("[Plaintiff] has not presented any arguments that would permit her to overcome the plain language of her signed loan application documents"). *Id*. at *4. The *Conti* court also dismissed arguments regarding the ultimate use of funds and arguments

that such promissory notes were contracts of adhesion or contained ambiguous language. *Id.*

As did *Conti*, this Court, when the time comes, should apply the purpose test, sometimes called the "substance of the transaction" test, to assess whether Tuition Answer loans are non-dischargeable under Section 523(a)(8)(B). Under that test, neither Homaidan nor Youssef is entitled to any determination that his or her loans were discharged.

## VI.   <u>Response to the Argument on Restitution</u>

At pages 19 to 21 of their motion, plaintiffs argue that, if Navient fails to meet its burden to show that any Tuition Answer loan is non-dischargeable, Navient will be subject automatically to an order requiring Navient to pay back <u>all</u> funds paid on the loan since the date of discharge.

Plaintiffs fail, however, to explain in this section of their motion how the Court could make this kind of advisory ruling on the potential availability of a remedy before liability has been established. Rule 56 plainly does not allow any hypothetical ruling of this type. *See, e.g., Lovely H. v. Eggleston*, No. 05 Civ. 6920 KBF, 2012 W.L. 4459463, at *2 (S.D.N.Y. Sept. 19, 2012) ("It is axiomatic that summary judgment as to damages can only follow a determination that damages are in fact owed (*i.e.*, that the defendant is actually liable for damages)."); *Amerada Hess Corp. v. Yuma Shipping Corp.*, No. 82 Civ. 2136, 1985 W.L. 458, at *4 (S.D.N.Y. Mar. 27, 1985) ("It is difficult to imagine how the Court could rule on damages . . . without first determining the liability issue . . . ."). In the absence of a liability determination, any ruling on remedies "could only amount to an inappropriate advisory opinion." *Eggleston*, 2012 W.L. 4459463, at *2.

Moreover, in support of the proposition that an unqualified remedy of 100% restitution would have to follow any finding of a discharge violation, plaintiffs cite only: (a) several cases addressing discharge violations in vastly different factual contexts; (b) a number of cases granting restitution for violations of the automatic stay under Section 362; and (c) a case involving reimbursable expenses under Bankruptcy Rule 2016(a).

None of plaintiffs' cases deals with the discharge of student loan debt or is otherwise analogous to the circumstances here. *See United Healthcare Workers v. Borsos (In re Borsos),* 544 B.R. 201, 212 (E.D. Cal. 2016) (restitution of funds collected in violation of discharge injunction while judgment permitting enforcement was pending appeal); *Malone v. Norwest Financial California*, *Inc.*, 245 B.R. 389, 395 (E.D. Cal. 2000) (determining that order of disgorgement for a discharge violation was permissible as a matter of law in action alleging unlawful solicitation of reaffirmation agreement); *In re Oliver*, 499 B.R. 617, 626 (Bankr. S.D. Ind. 2013) (where school violated the discharge injunction by withholding former student's transcript to coerce payment of tuition that was not protected by § 523(a)(8), court ordered the school to issue the transcript); *see also Knaus v. Concordio Lumber Co., Inc., (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989) (return of property seized in violation of automatic stay); *In re Abrams*, 127 B.R. 239 (9th Cir. BAP 1991) (same); *In re Eisenberg*, 7 B.R. 683, 688 (E.D.N.Y. 1980) (actions to enforce tax lien violated automatic stay); *Padilla v. Wells Fargo Home Mortgage, Inc., (In re Padilla)*, 379 B.R. 643, 667–668 (Bankr. S.D. Tex. 2007) (disgorgement of fees and expenses obtained in violation of Rule 2016(a)); *Will v. Ford Motor Credit Co.*, (*In re Will*), 303 B.R. 357, 365-66 (Bankr. N.D. Ill. 2001) (return of repossessed property pursuant to automatic stay violation); *In re Sucre*, 226 B.R. 340,

348 (Bankr. S.D.N.Y. 1998) (restitution of funds pursuant to automatic stay violation); *Miller v. Savings Bank of Baltimore* (*In re Miller*), 10 B.R. 778, 780 (Bankr. D. Md. 1981) *affirmed* 22 B.R. 479 (D. Md. 1982) (return of repossessed property pursuant to automatic stay violation); *City of New York v. Matamoros* (*In re Matamoros*), 2019 WL 3543865, at *10 (S.D.N.Y. Aug. 2, 2019) (restitution of funds pursuant to automatic stay violation).

Plaintiffs also ignore in their quest for an advisory ruling on restitution/disgorgement that any remedy potentially available for a discharge violation could only flow from the Court's power to enforce injunctions through contempt proceedings.  This conclusion stems from two subsidiary propositions that are beyond dispute:  (1) a bankruptcy discharge operates as an injunction, *see* 11 U.S.C. § 524(a)(2), and (2) Congress did not create a private right of action for violation of the discharge provisions of the Bankruptcy Code, which leaves a contempt action as the only means for obtaining redress.  *See, e.g., Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 390-91 (2d Cir. 2018); *Garfield v. Ocwen Loan Servicing*, 811 F.3d 86, 91–92 (2d Cir. 2016); *Alderwoods Group., Inc. v. Garcia*, 682 F.3d 958, 966, 970 (11th Cir. 2012); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188–89 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506-07 (9th Cir. 2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (Posner, J.); *Bessette v. Avco Fin. Srvs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000); *Bradley v. Fina*, 550 F. App'x 150, 154 (4th Cir. 2014), *see also In re Joubert v. ABN AMRO Mort. Grp., Inc.*, 411 F.3d 452, 456 (3d Cir. 2005)

Because any remedy available to plaintiffs must arise from the Court's contempt power, the recent Supreme Court decision of *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019),

is critical to the analysis. *Taggart* imposes significant new restrictions on actions for contempt sanctions for violations of bankruptcy discharge orders. Prior to *Taggart*, a plaintiff seeking remedies for violation of a discharge order needed to demonstrate only four elements: (a) that he or she received a discharge; (b) that the defendant received notice of the discharge; (c) the defendant intended the acts that violated the discharge; and (d) the debt at issue is within the scope of the debtor's discharge. *See*, *e.g*, *In re Golden*, 596 B.R. 239, 273–74 (Bankr. E.D.N.Y. 2019); *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008). Notably absent from this framework was any requirement to show the defendant's state of mind regarding the applicability of the discharge order to the debt at issue. The pre-*Taggart* standard was described by some courts "as akin to strict liability." *Taggart*, 139 S. Ct. at 1803.

Such a strict-liability framework is no longer the law after *Taggart*. In *Taggart*, the Supreme Court concluded that "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." 139 S. Ct. 1804. In its analysis, the Supreme Court noted that Bankruptcy Code section 524 "operates as an injunction" against actions to collect on debts discharged in bankruptcy. *Id*. at 1800. The Court observed that "[w]hen a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it'" and that "[t]he bankruptcy statutes, however, do not grant courts unlimited authority to hold creditors in civil contempt." *Id*. at 1801. "Instead, as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Id*. The Court went on:

> In cases outside the bankruptcy context, we have said that civil contempt "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." . . . This standard reflects the fact that civil contempt is a "severe remedy," *ibid.*, and that principles of "basic fairness requir[e] that those enjoined receive explicit notice" of "what conduct is outlawed" before being held in civil contempt, *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L.Ed.2d 661 (1974) (*per curiam*) . . . . This standard is generally an objective one.

*Id.* at 1801–02.

Under *Taggart*, a finding of contempt for violating the discharge injunction simply could not automatically result, as plaintiffs' contend, in a knee-jerk award of 100% restitution.  Rather, before awarding any contempt remedies for a discharge violation, the Court would have to assess whether there was "fair ground of doubt" with respect to the wrongfulness, if any, of Navient's conduct, an issue that plaintiffs have not addressed in their motion.

In addition, since contempt remedies for bankruptcy discharge violations are subject to all of "the traditional standards in equity practice" applicable to other contempt actions, the Court would also have to assess, among other things, whether Homaidan and Youssef delayed unreasonably in filing their adversary complaint.  This is the case because contempt actions for violating injunctions are clearly subject to the defense of laches, with courts being fully empowered to deny remedies or limit remedies based on an aggrieved party's unreasonable delay in seeking redress.  *See, e.g., Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir. 2003) (analyzing laches defense in contempt action); *Matrix Essentials v. Quality King Distributors, Inc.*, 346 F. Supp. 2d 384, 392 (E.D.N.Y. 2004) ("Before considering the merits of the contempt motions the court addresses the argument that Plaintiff's claim is barred by the equitable doctrine of laches.  This defense turns upon whether there was unreasonable and inexcusable delay resulting in prejudice

27

to the party against whom the decree is sought to be enforced."); *Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 939 F. Supp. 1032, 1040–41 (S.D.N.Y. 1996) (laches applied to claim that payment violated injunction after multi-year delay, noting that "[f]actors used to assess prejudice include whether delay has resulted in a loss of records, unavailability of witnesses, or an activity taken in detrimental reliance on the failure to prosecute."); *Merchant v. Lymon*, 828 F.Supp. 1048, 1063 (S.D.N.Y.1993); *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 924 (S.D.N.Y. 1991) (barring contempt claim under laches theory after nearly three year delay, noting "[e]quity aids only the vigilant, not those who sleep on their rights.").

Delay, moreover, is a particularly important consideration in the present context, given that, under *Espinosa*, 559 U.S. at 269, 274 n. 11 and *Hood*, 54 U.S. at 450, the borrower (not the student lender) is the party who must file an adversary complaint if he or she wants to overcome the presumption of non-dischargeability that applies to student loans. *See* Section V.(A) of this Opposition, above. Waiting for years before doing so should impact the scope and extent of available remedies.

An automatic award of 100% restitution of the post-discharge sums received by the lender would also be inappropriate under Section 11 U.S.C. § 524(f), which makes clear that a discharge injunction does not prevent a debtor from voluntarily making payments on a discharged debt, nor does it preclude a creditor from accepting such voluntary payments. *See, e.g., Matter of Hellums*, 772 F.2d 379, 381 (7th Cir. 1985) (debtors can dispose of their post-petition earnings as they choose, including voluntary repayment of debts otherwise dischargeable in bankruptcy.")

There are indeed other issues (some factual, some legal) that would also have to be addressed before an award of 100% restitution could flow from any finding of contempt, including:

- Were the post-discharge payments received by the lender even paid by the discharged debtor or did they come from some other source? (Obviously, a debtor could not be awarded restitution of funds paid by other parties.)

- Is restitution legally available only for post-discharge payments attributable to the portion of the loan that exceeded the cost of attendance or must any payment on the loan be disgorged? (In other words, does making a loan in excess of the cost of attendance render the entire loan dischargeable or only the portion that exceeds the cost of attendance?)

- How would restitution work when the lender's loan did not exceed the cost of attendance on a stand-alone basis, but only when added to the amount of a loan made by some other lender? (In that situation, are both loans dischargeable, is neither dischargeable, or is non-dischargeability afforded to both, on a pro rata basis? The answers to these questions would obviously affect the availability and amount of any award of restitution.)

By failing to acknowledge and address these many questions, plaintiffs obviously have not established that an automatic award of 100% restitution would necessarily follow from any finding of a discharge violation.

## PLAINTIFFS' MOTION SHOULD BE DENIED

Having responded above to each section of plaintiffs' motion, Navient now demonstrates further that there is no basis on which to grant any relief at this stage of the case and that plaintiffs' motion should be denied in its entirety.

## I. These Debts are Non-Dischargeable on Grounds Other Than § 523(a)(8)(B)

First, plaintiffs' motion is built on the false premise that Section 523(a)(8)(B) related to qualified education loans within the cost of attendance is the only possible basis for determining that the Tuition Answer loans of Homaidan and Youssef are non-dischargeable. To the contrary, Navient also contends that these loans are non-

dischargeable under Section 523(a)(8)(A)(ii) because they constitute "an obligation to repay funds received as an educational benefit, scholarship, or stipend." Navient further contends that the purpose test outlined above governs the determination of whether this exception to dischargeability applies. Thus, through all of the representations and promises in the loan applications and in the promissory notes referenced above, Navient has either conclusively established that the loans in question constitute "an obligation to repay funds received as an educational benefit" or has at a minimum created a fact question on this point that would preclude summary judgment in either plaintiffs' favor. (On these points, Navient incorporates herein all of its prior briefing on its motion to dismiss, ECF Nos. 16 and 29).[9]

Second, even if plaintiffs were correct in their assertion that the loans in question were not really student loans at all – *i.e.*, that they were instead ordinary consumer loans completely outside the ambit of Section 523(a)(8) – there would still be viable grounds on which to determine that they are non-dischargeable. For example, under Section 523(a)(2), a debt is non-dischargeable if procured by "false pretenses, a false representation, or actual fraud." Here, the evidence establishes that Homaidan and Youssef procured the loans through false pretenses and false representations, if not

---

[9]    Navient acknowledges that the Court did not accept its interpretation of Section 523(a)(8)(ii)'s scope when deciding Navient's motion to dismiss. *See* ECF No. 104. Navient further acknowledges that the Fifth Circuit recently rejected the argument that Section 523(a)(8)(ii) could cover loans of this type. *See In re Crocker*, 941 F.3d 206 (5th Cir. 2019). But, Navient continues to assert its position on Section 523(a)(8)(ii) and to preserve it for later appellate review, in part because the Fifth Circuit's decision in *Crocker* is inconsistent with the Second Circuit's opinion in *In re Desormes*, 569 F. App'x 42 (2d Cir. 2014); this same issue is currently awaiting decision in the Tenth Circuit in a case that was argued in September 2019, and that could result in an opinion tipping the existing circuit split in Navient's favor; and this Court's decision adverse to Navient on Navient's motion to dismiss is still itself subject to potential interlocutory review through Navient's motion for leave to appeal, which remains pending in the United States District Court for the Eastern District of New York, Case No. 19-cv-00935.

through actual fraud.  Homaidan, for example, represented when he applied for both loans that he was enrolled at Emerson College or was otherwise eligible for the loan.  This representation, at least as to his second loan, was simply false.  The undisputed facts show that Homaidan applied for his second loan on September 19, 2006, and that he withdrew from Emerson College on that very same day.  The undisputed facts, moreover, show (through the Tuition Answer program documents) that this false representation was highly material and that the originating lender clearly relied on it.  The program documents, after all, establish that Tuition Answer loans are only made to students enrolled in qualified educational institutions.

And, the undisputed evidence shows even more false representations.  In addition to enrollment status, and as detailed above, both Homaidan and Youssef represented in their loan applications that they would use the loan proceeds solely for educational expenses.  Homaidan now concedes, since he had withdrawn from school altogether, that he did not use a single dollar of his loan proceeds for educational expenses.  Youssef, for her part, has claimed under oath that her loan proceeds far exceeded her educational expenses for the 2006-07 and 2007-08 school years.  This necessarily means that she used a significant part of her loan proceeds for non-educational purposes, which renders false the representations in her loan applications and promissory notes.  And, because the Tuition Answer program documents establish that Tuition Answer loans are only available to pay qualified educational expenses, materiality and reliance is also established as to these false representations.

In short, the record either conclusively shows false pretenses, false representations, and fraud sufficient to render these debts non-dischargeable under

Section 523(a)(2), or it at least creates a fact question on this point sufficient to defeat any summary judgment in favor of Homaidan and Youssef on the question of dischargeability.

Homaidan and Youssef, moreover, can take no solace in 11 U.S.C. § 523(c) and Federal Rule of Bankruptcy Procedure 4007(c), which (had these debts been properly scheduled) may have required Navient to file a complaint seeking non-dischargeability on fraud grounds within 60 days of the first meeting of creditors. Having scheduled these debts as student debts, these debtors (consistent with the false representations in their loan applications) effectively represented to the Court and to Navient that they used the loan proceeds for educational purposes. Then, after letting years go by (8 years for Homaidan and 5 years for Youssef), they finally came clean and revealed, for the first time, that the proceeds were used for non-educational purposes. In these circumstances, there is at a minimum a fact question on whether the 60-day period of Rule 4007(c) has been equitably tolled and on whether Youssef and Homaidan are judicially and equitably estopped from asserting any timeliness bar to the application of 11 U.S.C. § 523(a)(2). *See, e.g., In re Benedict*, 90 F.3d 50, 54 (2d Cir. 1996) (Rule 4007(c) is not jurisdictional and its time period is subject to "waiver, estoppel, and equitable tolling"); *In re Rychalsky*, 318 B.R. 61, 64 (Bankr. D. Del. 2004) (debtor's fraudulent concealment of facts equitably tolls Rule 4007(c)'s time period). And, their improper scheduling of these loans triggers the provisions of 11 U.S.C. § 523(a)(3) as an independent ground, which Navient hereby invokes, for a determination that these loans are not dischargeable.

## II.    Under the Purpose Test, There is at Least A Fact Question on Whether These Loans are Non-Dischargeable Under Section 523(a)(8)(B)

As detailed above, Navient was under no obligation to disburse the loans in question through the financial aid offices at Emerson College or Queens College or to

obtain a certification of cost of attendance from either school.  Rather, Navient was entitled, under the purpose test described above, to rely on certifications from the students, contained in the loan applications and the promissory notes, that the loans would be used only for educational expenses within the cost of attendance.  Plaintiffs have not cited any authority that precludes use of these provisions from the loan applications and the promissory notes to satisfy the elements of non-dischargeability under Section 523(a)(8)(B).  Thus, the promises and representations made by Homaidan and Youssef are either dispositive (as Navient contends) or they at least create a fact question sufficient to defeat summary judgment in favor of either Homaidan or Youssef.

When the loan applications and the promissory notes are coupled with the undisputed fact that the aggregate of all of the loans and financial aid obtained by Homaidan for the 2006 school year fell below the cost of attendance that Emerson College published in its catalogue, there is simply no basis on which to grant summary judgment for either plaintiff that Section 523(a)(8)(B) does not apply to make their loans non-dischargeable.

## III.     There are Fact Questions that Would Preclude any Award of Restitution to Homaidan or to Youssef

Based on the forgoing, and even if the Court were to conclude that Navient violated the discharge injunction in favor of Homaidan and Youssef, there are many fact questions that would preclude granting them summary judgment for restitution of all post-discharge payments Navient received on their Tuition Answer loans, including the following:

- Is there a fair ground of doubt as to the reasonableness of Navient's post-discharge conduct?

- Did Youssef and Homaidan in fact themselves pay all of the post-discharge funds that Navient received on these Tuition Answer loans and for which they seek restitution?

- Were any of the post-discharge payments that Homaidan and Youssef made to Navient made voluntarily?

- Did Youssef and Homaidan delay unreasonably in filing their adversary complaint and in seeking contempt remedies against Navient?

To find a fact question on the issue of "fair ground of doubt," the Court need look no further than Navient's briefing on the educational-benefit question raised in connection with Navient's motion to dismiss. As that briefing shows, there are dozens of cases, including one from the Second Circuit, that would hold the Tuition Answer loans at issue non-dischargeable as "obligations to repay funds received as an educational benefit." To be sure, there is an emerging trend of cases cutting the other way, but they are of recent vintage, and the number of cases on each side of the divide remains roughly equal. And, where there are conflicting lines of authority like this, there is by definition "fair ground of doubt" sufficient to preclude, or at least impact the scope of, remedies for contempt. *See, e.g., In re Shuey*, 606 B.R. 760, 771 (Bankr. N.D. Ill. 2019).

For a fact question on the extent of any restitution that could be awarded here, the Court should consider Homaidan's own testimony. The balance of his Tuition Answer loans ($20,238.67) was paid off in 2011. Homaidan apparently seeks restitution of that entire payment, but – by his own sworn testimony – he did not pay a penny of it. Rather, he has testified that his loans were mysteriously paid off by an unidentified benefactor under circumstances that he cannot or will not reveal. This, by itself shows that – at a minimum – there are fact questions precluding any award of restitution, let alone an award of 100% of the payments received post-discharge by Navient.

Finally, for fact questions on unreasonable delay and the impact that it could have on any contempt remedy, the undisputed evidence shows that Homaidan waited over 8 years after his discharge to seek restitution. Youssef, for her part, delayed for over 5 years. When this delay is considered in light of the law (*see Espinosa* and *Hood*) that puts the burden on the debtor to file an adversary proceeding to overcome the presumption of non-dischargeability, there are clearly serious issues over what relief, if any, to which Youssef and Homaidan could be entitled for conduct occurring during the multi-year periods when they sat on their alleged rights.

The existence of all of these fact questions preclude summary judgment for plaintiffs on restitution.

## **CONCLUSION**

For these reasons, plaintiffs' motion for partial summary judgment should be denied.

[*Signature follows on next page.*]

Dated: February 3, 2020
      New York, New York

Respectfully submitted,

*/s/ Shawn R. Fox*
Shawn R. Fox
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone:   212.548.2100
Email: sfox@mcguirewoods.com

—and—

Thomas M. Farrell (pro hac vice)
McGuireWoods LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
Telephone:   713.571.9191
E-mail: tfarrell@mcguirewoods.com

—and—

Dion W. Hayes (pro hac vice)
K. Elizabeth Sieg (pro hac vice)
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219
Telephone:   804.775.1000
Email: dhayes@mcguirewoods.com
      bsieg@mcguirewoods.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 3rd day of February, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

_/s/ Shawn R. Fox_

Shawn R. Fox
