## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **HILAL K. HOMAIDAN,** <br> **f/k/a Helal K. Homaidan,** | **Case No. 08–48275 (ESS)** |
| **Debtor.** | |
| **In re:** | **Chapter 7** |
| **REEHAM YOUSSEF aka Reeham** <br> **Navarro Youssef aka Reeham N.** <br> **Youssef,** | **Case No. 13–46495 (ESS)** |
| **Debtor.** | |
| **HILAL K. HOMAIDAN on behalf of** <br> **himself and all** <br> **others similarly situated** | |
| **Plaintiff,** <br> **v.** <br> **SALLIE MAE, INC,** <br> **NAVIENT SOLUTIONS, LLC,** <br> **NAVIENT CREDIT FINANCE** <br> **CORPORATION** | **Adv. Pro. No. 17-1085** |
| **Defendants.** | |

## OPPOSITION
## <u>TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

PAGE

Introduction ........................................................................................................ 1

Procedural Review............................................................................................. 2

Pertinent Background Facts............................................................................. 3

Legal Standards ................................................................................................. 4

Argument............................................................................................................ 6

I.    This Court Lacks Authority to Enforce Discharge Orders Issued
       Outside of the Eastern District of New York ................................. 6

       a.    The Bankruptcy Discharge Injunction Pursuant to Section
              524 of the Bankruptcy Code Is An Individual, Court Ordered
              Injunction........................................................................................ 6

       b.    Only the Issuing Court May Enforce Its Discharge Injunction........ 8

       c.    The Fifth Circuit's *Crocker* Decision in 2019 Confirmed that
              Only the Issuing Court May Enforce the Discharge
              Injunction...................................................................................... 10

       d.    The Eleventh Circuit Decision in *Alderwoods* Likewise
              Confirms this View....................................................................... 11

II.   Plaintiffs Cannot Obtain Successive Injunctions ...................... 12

III.  Plaintiffs' Requested Injunction Is Overbroad and Presumes the
       Existence of a Certifiable Class ................................................... 13

IV.   Plaintiffs' Motion Fails on the Merits ........................................ 14

       a.    Plaintiffs Cannot Meet Their Burden to Obtain a Preliminary
              Injunction...................................................................................... 14

              1.    Plaintiffs are not likely to succeed on the merits ................15

              2.    Plaintiffs will not be irreparably harmed absent an
                    injunction ............................................................................15

              3.    The balance of the equities tips against Plaintiffs'
                    request for a preliminary injunction ...................................17

              4.    An injunction would be against the public interest ............20

       b.    Plaintiffs' Proposed Preliminary Injunction violates the
              Federal Rules................................................................................ 21

              1.    The Proposed Order lacks the required specificity ............. 21

              2.    Plaintiffs must post a bond.................................................23

Conclusion ....................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmad v. Long Island Univ.*,
   18 F. Supp. 2d 245 (E.D.N.Y. 1998)...............................................................................4

*Alderwoods Group., Inc. v. Garcia*,
   682 F.3d 958 (11th Cir. 2012) .......................................................... *passim*

*Anderson v. Credit One Bank, N.A.*,
   884 F.3d 382 (2d Cir. 2018) ...............................................................8, 10, 12

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ..............................................................................................9

*Arch v. Am. Tobacco Co., Inc.*,
   175 F.R.D. 469 (E.D. Pa. 1997) .......................................................................20

*Barrientos v. Wells Fargo Bank, N.A.*,
   633 F.3d 1186 (9th Cir. 2011) ...................................................................7, 8, 13

*Bessette v. Avco Fin. Srvs., Inc.*,
   230 F.3d 439 (1st Cir. 2000) .............................................................................7

*Bradley v. Fina*,
   550 F. App'x 150 (4th Cir. 2014) .....................................................................7

*Britestarr Homes, Inc. v. City of New York (In re Britestarr Homes, Inc.)*,
   368 B.R. 106 (Bankr. D. Conn. 2007) ..........................................................5

*Bronx Household of Faith v. Bd. of Educ. of City of New York*,
   331 F.3d 342 (2d Cir. 2003) .............................................................................4

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996)...............................................................................20

*Citibank, N.A. v. Citytrust*,
   756 F.2d 273 (2d Cir. 1985) .......................................................................16, 17

*In re Corbin*,
   506 B.R. 287 (Bankr. W.D. Wash. 2014).......................................................20

*Cox v. Zale Del., Inc.*,
   239 F.3d 910 (7th Cir. 2001) .............................................................. 7, 8, 9, 10

*In re Crocker*,
  941 F.3d 206 (5th Cir. 2019) ............................................................... 10, 11

*In re Daniel*,
  98 B.R. 73 (Bankr. M.D. Fla. 1989) ............................................... 16

*In re Diaz*,
  526 B.R. 685 (Bankr. S.D. Tex. 2015)............................................ 16

*Doctor's Assocs., Inc. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996)............................................................ 23

*Eastern Airlines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.)*,
  111 B.R. 423 (Bankr. S.D.N.Y. 1990), *affirmed in part and reversed in part on other grounds*, 124 B.R. 635 (S.D.N.Y. 1999) ................................................... 5

*eBay v. MercExchange, LLC*,
  547 U.S. 388 (2006) ...................................................................15

*Fisher v. Apostolou*,
  155 F.3d 876 (7th Cir. 1998) ........................................................ 5

*In re Fonner*,
  262 B.R. 350 (Bankr. W.D. Pa. 2001) .........................................13

*Galaz v. Katona*,
  841 F.3d 316 (5th Cir. 2016) .................................................... 8, 9

*Garfield v. Ocwen Loan Servicing*,
  811 F.3d 86 (2d Cir. 2016) .......................................................... 7

*Garrity v. Leffler (In re Neuman)*,
  71 B.R. 567 (S.D.N.Y. 1987) ........................................................ 5

*Golden Krust Patties, Inc. v. Bullock*,
  957 F. Supp. 2d 186 (E.D.N.Y. 2013).......................................... 23

*Green Pt. Credit, LLC v. McLean*,
  794 F.3d 1313 (11th Cir. 2015) .............................................. 8, 10

*Hanson Trust PLC v. ML SCM Acquisition, Inc.*,
  781 F.2d 264 (2d Cir. 1986) ........................................................ 4

*In re Hye Rhee Kong*,
  No., 2013 WL 6923063 (Bankr. C.D. Cal. Nov. 15, 2013)...........13

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
  596 F.2d 70 (2d Cir. 1979) .........................................................15

ii

*Jayaraj v. Scappini,*
    66 F.3d 36 (2d Cir. 1995) ..................................................................... 15, 17

*Jones v. CitiMortgage, Inc.,*
    666 F. App'x 766 (11th Cir. 2016) ............................................................. 8, 10

*In re Joubert v. ABN AMRO Mort. Grp., Inc.,*
    411 F.3d 452 (3d Cir. 2005) ........................................................................ 7

*JSG Trading Corp. v. Tray–Wrap, Inc.,*
    917 F.2d 75 (2d Cir.1990) ............................................................................ 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ...................................................................................15

*Local Loan Co. v. Hunt,*
    292 U.S. 234 (1934) ................................................................................. 10

*LTV Steel Co., Inc. v. Board of Education (In re Chateaugay Corp.),*
    93 B.R. 26 (S.D.N.Y. 1988) ......................................................................... 5

*Lusk v. Vill. of Coldspring,*
    475 F.3d 480 (2d Cir. 2005) ......................................................................... 4

*Medical Soc'y of the State of New York v. Toia,*
    560 F.2d 535 (2d Cir. 1977) ......................................................................... 4

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest.*
    *Employees Int'l Union,*
    239 F.3d 172 (2d Cir. 2001) ...................................................................... 23

*Munaf v. Geren,*
    553 U.S. 674 (2008) .................................................................................... 4

*Matter of Nat'l Gypsum Co.,*
    118 F.3d 1056 (5th Cir. 1997) ..................................................................... 7

*Nokia Corp. v. InterDigital, Inc.,*
    645 F.3d 553 (2d Cir. 2011) ...................................................................... 23

*In re Norplant Contraceptive Prods. Liability Litig.,*
    168 F.R.D. 577 (E.D. Tex. 1996) ............................................................... 20

*Pertuso v. Ford Motor Credit Co.,*
    233 F.3d 417 (6th Cir. 2000) ....................................................................... 7

*Rodriguez ex rel. Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1999) ......................................................................... 4

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
    241 F.3d 232 (2d Cir. 2001) ........................................................................ 22

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ............................................................................ 4

*Schmidt v. Lessard*,
    414 U.S. 473 (1974) .................................................................................... 22

*Silber v. Barbara's Bakery, Inc.*,
    950 F. Supp. 2d 432 (E.D.N.Y. June 14, 2013) ........................................ 16

*Taggart v. Lorenzen*,
    139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019) .............................................. 8, 11

*Tennessee Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) .................................................................................... 18

*The 1031 Tax Group, LLC v. Alvarez (In re The 1031 Tax Group, LLC)*,
    397 B.R. 670 (Bankr. S.D.N.Y. 2008) .......................................................... 5

*Tijerina v. Phillip Morris, Inc.*,
    No. 2:95–cv–120–J, 1996 WL 885617 (N.D. Tex. Oct. 8, 1996) ................21

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995).................................................................... 16, 17

*United States v. Fowler*,
    749 F.3d 1010 (11th Cir. 2014) ..................................................................... 9

*United States v. Reed*,
    773 F.2d 477 (2d Cir. 1985) .......................................................................... 8

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010).............................................................................. 18, 20

*Walls v. Wells Fargo Bank, N.A.*,
    276 F.3d 502 (9th Cir. 2002)..................................................................... 7, 9

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................15

**Statutes**

11 U.S.C. § 362(h) ........................................................................................... 7

11 U.S.C. § 524(a)(2)................................................................................... 6, 8

11 U.S.C. § 524(a)(2)–(3).............................................................................12

28 U.S.C. § 157 ............................................................................................................ 11

Bankruptcy Act ........................................................................................................... 10

Bankruptcy Code ................................................................................................. *passim*

Bankruptcy Code § 523(a)(8) ................................................................................ 20, 22

Bankruptcy Code § 524 ..................................................................................... 6, 7, 12

Internal Revenue Code ................................................................................................. 1

**Other Authorities**

Fed. R. Bankr. P. 7065 ................................................................................................. 21

Fed. R. Civ. P. 65 .................................................................................................. 21, 23

Fed. R. Civ. P. 65(c) ............................................................................................. 23, 24

Fed. R. Civ. P. 65(d) ............................................................................................. 21, 22

## OPPOSITION
## TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Defendants Navient Solutions, LLC ("NSL") and Navient Credit Finance Corporation ("NCFC") (collectively, "Defendants" or "Navient"), through the undersigned counsel, hereby submit this Opposition to Plaintiffs' Motion for a Preliminary Injunction (this "Opposition") in the above-captioned adversary proceeding. In support, Defendants state as follows:

### INTRODUCTION

Five years after the most recent bankruptcy discharge of any of the named Plaintiffs, and two years after commencing this adversary proceeding, Plaintiffs now move for the Court to enter a preliminary injunction.

The substantial delay before seeking this relief itself casts serious doubt that the extraordinary circumstances needed to justify a preliminary injunction are present. Nevertheless, Plaintiffs seek to enter a grossly overbroad and vague injunction against any "collection or acts of collection" on any of the direct-to-consumer loans serviced by Defendants until the Defendants show affirmatively that such loans do not exceed the cost of attendance as defined in the Internal Revenue Code.

Plaintiffs themselves have already made such a showing—each Plaintiff certified in their Tuition Answer Loan applications that such loans were limited to qualified education expenses within the individual borrower's cost of attendance at an eligible educational institution. Now, however, Plaintiffs wish the Court to order an immediate cessation to all "collection or acts of collection" on *all* direct-to-consumer loans serviced by Defendants, despite these borrower certifications and prior to the establishment of any liability on the part of Defendants. Indeed, Plaintiffs request this drastic preliminary

relief on the theory that certain borrowers, through errors or misrepresentations on their promissory notes, erroneously or fraudulently induced Defendants to lend to them. Plaintiffs further assert that only such loans obtained under such false or erroneous pretenses were subject to discharge in bankruptcy, while loans issued to conscientious and/or honest borrowers do not enjoy the benefit of a discharge. This is fundamentally unfair.

This essential unfairness aside, no basis exists for the preliminary injunction sought by Plaintiffs. As a threshold matter, this Court lacks the authority to interpret and enforce discharge orders entered by bankruptcy courts outside the Eastern District of New York. Relatedly, each of the purported class members is already subject to a discharge injunction. Plaintiffs request an "injunction to enforce an injunction." This is not a permissible form of relief.

Plaintiffs further fail to show (a) any irreparable harm, (b) a substantial likelihood of success on the merits of their claims, (c) a balance of equities tilting towards Plaintiffs or (d) that the public interest favors an injunction. Moreover, the requested injunction violates the Federal Rules and does not contemplate the posting of a bond to compensate Defendants for any wrongful injunction. For all these reasons, the Court should deny the Plaintiffs' Motion for a Preliminary Injunction.

## PROCEDURAL REVIEW

This purported class action adversary proceeding was filed on June 23, 2017. In October 2017, Defendants moved to dismiss this action, or, in the alternative, compel arbitration [Dkt. No. 16] (the "Motion to Dismiss"). In July 2018, the Bankruptcy Court denied the portion of the Motion to Dismiss relating to Defendants' request to compel arbitration. Dkt. No. 48. In January 2019, the Bankruptcy Court issued an order denying

the remaining relief requested in the Motion to Dismiss [Dkt. No. 104] (the "Denial Order"). The Defendants sought certification from the Bankruptcy Court for a direct appeal of the Denial Order to the Second Circuit, which the Bankruptcy Court denied in March 2019. Dkt Nos. 107, 129. Defendants subsequently moved in the U.S. District Court for the Eastern District of New York (the "District Court") for certification of a direct appeal of the Denial Order to the Second Circuit or, alternatively, for leave to appeal the Denial Order to the District Court (the "District Court Appeal Motion") [Dkt. No. 3, No. 19-cv-00935 (E.D.N.Y.)]. The District Court Appeal Motion is still pending. In October 2019, Plaintiffs amended their complaint to add Reeham Youssef to the action. [Dkt. No. 160] (the "Complaint"). Discovery has been ongoing in the matter, and several document exchanges and depositions have taken place. The current discovery cutoff is March 30, 2020.

On December 19, 2019, Plaintiffs filed a motion [Dkt No. 180] with a trio of supporting memoranda seeking a preliminary injunction [Dkt No. 171] (the "PI Motion"), partial summary judgment [Docket No. 170] ("Plaintiffs SJ Motion"), and class certification [Dkt No. 169] (the "Class Certification Motion").

In the agreed briefing schedule between the parties, Defendants agreed to respond to the PI Motion and Plaintiffs SJ Motion by February 3, 2020. Defendants further agreed to petition the Court to hear the PI Motion and Plaintiffs SJ Motion at the scheduled February 18, 2020 hearing.

### PERTINENT BACKGROUND FACTS

For a fulsome statement of the background facts of the case, Defendants respectfully refer the Court to Defendants' Response in Opposition to Plaintiffs' Motion

for Partial Summary Judgment (the "Summary Judgment Opposition") filed contemporaneously herewith and attached hereto as <u>Exhibit A</u>.

**LEGAL STANDARDS**

A preliminary injunction is an "extraordinary and drastic remedy [and] never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); *see also JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"); *Medical Soc'y of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977) (preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted"); *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 247 (E.D.N.Y. 1998).

Within the Second Circuit, "[t]o obtain a preliminary injunction, a party must: (1) demonstrate that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits for making them a fair ground for litigation, and a balance of hardship tipping decidedly in its favor." *Lusk v. Vill. of Coldspring*, 475 F.3d 480, 485 (2d Cir. 2005) (internal quotations omitted). "Moreover, an even higher standard of proof comes into play when the injunction sought will alter rather than maintain the status quo. . . . In such case, the movant must show a "clear" or "substantial" likelihood of success." *See Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999). The Court also must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction. *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010).

Plaintiffs attempt to evade the irreparable harm requirement by asserting that the bankruptcy court may "pursuant to its powers under § 105 . . . grant a preliminary injunction to protect the debtor or the estate without a showing of irreparable injury." PI Motion at 2. Section 105 may indeed authorize the bankruptcy court to take actions "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]", but reading that provision as allowing the Plaintiffs to sidestep their burden regarding the extraordinary relief of a preliminary injunction strains credulity.

Indeed, each of the cases cited by Plaintiffs to establish the lack of an "irreparable harm" standard proffer examples where either (a) the preliminary injunction was to protect a debtor's reorganization effort or (b) where the decision of another forum threatened to deprive the bankruptcy court of jurisdiction over a dispute. *See The 1031 Tax Group, LLC v. Alvarez (In re The 1031 Tax Group, LLC)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (preliminary injunction to stay Colorado state lawsuits that threatened to impair the debtor's reorganization); *Britestarr Homes, Inc. v. City of New York (In re Britestarr Homes, Inc.)*, 368 B.R. 106, 108 (Bankr. D. Conn. 2007) (preliminary injunction to prevent condemnation of property subject to a confirmed reorganization plan pending an evidentiary hearing); *Eastern Airlines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 431 (Bankr. S.D.N.Y. 1990) (preliminary injunction against labor-related lawsuits that could impair airline's ongoing reorganization, where court expressly found irreparable harm); *affirmed in part and reversed in part on other grounds*, 124 B.R. 635 (S.D.N.Y. 1999); *LTV Steel Co., Inc. v. Board of Education (In re Chateaugay Corp.)*, 93 B.R. 26, 29 (S.D.N.Y. 1988) (preliminary injunction against prosecution of a tax dispute in Ohio federal court prior to bankruptcy court determination regarding whether the automatic stay applied to such action); *Garrity v. Leffler (In re*

*Neuman)*, 71 B.R. 567, 571 (S.D.N.Y. 1987) (upholding preliminary injunction of state court action involving healthcare operating certificate that could affect the status of such certificate as property of bankruptcy estate); *Fisher v. Apostolou,* 155 F.3d 876, 882 (7th Cir. 1998) (enjoining investor lawsuits that threatened administration of bankruptcy estate, noting that "a bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it.").

None of these cases address any purported violation of a discharge injunction whatsoever.  Nor do Plaintiffs offer any justification for such a drastic departure from the usual rule that a preliminary injunction is an extraordinary remedy to avoid irreparable harm.  At base, this case is an ordinary commercial dispute.  Therefore, Plaintiffs must make a showing of irreparable harm to justify a preliminary injunction.

<u>ARGUMENT</u>

I.    **THIS COURT LACKS AUTHORITY TO ENFORCE DISCHARGE ORDERS ISSUED OUTSIDE OF THE EASTERN DISTRICT OF NEW YORK**

a.    **The Bankruptcy Discharge Injunction Pursuant to Section 524 of the Bankruptcy Code Is An Individual, Court Ordered Injunction**

The Bankruptcy Code provides in relevant part that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect" any debt for which a debtor received a discharge in bankruptcy.  11 U.S.C. § 524(a)(2).  Thus, when a bankruptcy court enters an order discharging a debtor from his or her liability on eligible, properly scheduled prepetition debts, it effects an injunction against collection on discharged debts.

In two important ways, Congress set boundaries on a debtor's enforcement of his or her discharge. First, it made the deliberate choice to codify the discharge as acting as an "injunction." 11 U.S.C. § 524(a)(2). And second, it made the deliberate choice to omit from the Bankruptcy Code a private right of action for discharge-violation claims.

Congress amended the Bankruptcy Code in 1984 to "provide an express right of action under the automatic stay provision of 11 U.S.C. § 362(h)." *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 422 (6th Cir. 2000). "It did so because reliance on the contempt power to remedy violations of § 362 had been widely criticized." *Id.* In contrast, Congress did *not* create an "express right of action" for the companion statute to § 362: the § 524 discharge injunction. *Id.*

Congress's instruction is thus clear: no private right of action exists by which a debtor can assert claims that a creditor has violated his or her discharge. *See, e.g.*, *Garfield v. Ocwen Loan Servicing*, 811 F.3d 86, 91–92 (2d Cir. 2016); *Bradley v. Fina*, 550 F. App'x 150, 154 (4th Cir. 2014); *Alderwoods Group, Inc. v. Garci*a, 682 F.3d 958, 966, 970 (11th Cir. 2012); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188–89 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (Posner, J.); *Pertuso*, 233 F.3d at 421–23; *Bessette v. Avco Fin. Serv., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000); *see also In re Joubert v. ABN AMRO Mort. Group., Inc.*, 411 F.3d 452, 456 (3d Cir. 2005).

Rather, such violation claims take the form of contempt. *See, e.g.*, *Alderwoods*, 682 F.3d at 967 and *Cox*, 239 F.3d at 915–16. That is because "the creditor who attempts to collect a discharged debt is violating . . . an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge." *Cox*, 239 F.3d at 915; *see also Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997). As the Second Circuit

noted, the analysis doesn't change because a statute defines the scope of the discharge injunction: "Neither the statutory basis of the [discharge] order nor its similarity—even uniformity—across bankruptcy cases alters the simple fact that the discharge injunction is an order issued by the bankruptcy court[.]" *Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 390–91 (2d Cir. 2018).

### b.    Only the Issuing Court May Enforce Its Discharge Injunction

By omitting a private right of action for discharge-violation claims and codifying the discharge as having injunctive effect, Congress necessarily imposed on the discharge the usual rules under which all injunctions exist—including the well-established limitation that an injunction may only be enforced through a contempt proceeding before the issuing court. The Supreme Court has recognized as much: "The statutes specifying that a discharge order 'operates as an injunction,' § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801, 204 L. Ed. 2d 129 (2019).

"The essential act of contempt is the disrespect shown to the order of the court and the disobedience thereof." *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985) Consistent with that rationale, the Second Circuit observed that "the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it." *In re Anderson*, 884 F.3d 382, 391 (2d Cir. 2018). Numerous other circuits have expressly acknowledged this mandate. *Anderson*, 884 F.3d at 390–91; *Galaz v. Katona*, 841 F.3d 316, 322 (5th Cir. 2016) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)); *Jones v. CitiMortgage, Inc.*,

666 F. App'x 766, 774–75 (11th Cir. 2016); *Green Pt. Credit, LLC v. McLean*, 794 F.3d 1313, 1319–20 (11th Cir. 2015); *Alderwoods*, 682 F.3d at 970–71; *Barrientos*, 633 F.3d at 1188–91; *Cox*, 239 F.3d at 916.

Courts have described the limitation for finding contempt as jurisdictional.[1] *Alderwoods*, 682 F.3d at 970; *Cox*, 239 F.3d at 916–17. And they do so whether the plaintiff seeks contempt sanctions, declaratory relief, or both. *See, e.g.*, *Alderwoods*, 682 F.3d at 969–73 (considering a declaratory judgment claim).

Requiring the Court that issued the discharge injunction to determine contempt makes sense. First, the bankruptcy court that issued the discharge order retains jurisdiction to enforce it. *Galaz*, 841 F.3d at 322; *Cox*, 239 F.3d at 917. Second, authorizing the bankruptcy court to interpret and enforce discharge orders from foreign jurisdictions would "put enforcement of the discharge injunction in the hands of a court" that lacked jurisdiction to enter the order in the first place. *See Walls*, 276 F.3d at 509–10. Third, chaos would result if a plaintiff could take an order from one jurisdiction and forum shop to a different district that had an alternative interpretation than the issuing court that was more sympathetic. *Alderwoods*, 682 F.3d at 970.

The discharge injunction may be a creature of statute, but it comes into existence only through issuance of an order by a court in a particular bankruptcy case. None of the

---

[1]    The Supreme Court has observed that "'[j]urisdiction . . . is a word of many, too many meanings.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) (quote omitted). Mindful of this admonition, Defendants note that neither they nor the cases cited above suggest that the bankruptcy court lacks *subject-matter* jurisdiction to interpret and enforce discharge orders entered by other courts. But that doesn't make the point any less of a limitation on the bankruptcy court's ability to entertain Plaintiffs' claims. Whether the question is "characterize[d] . . . as one of jurisdiction or one of authority . . . the result is the same either way." *United States v. Fowler*, 749 F.3d 1010, 1015 n.4 (11th Cir. 2014).

Supreme Court, the Second Circuit, or other circuits has distinguished between bespoke injunctions crafted by a court and statutorily defined injunctions crafted by Congress and effected solely by entry of a court order.

To the contrary, other courts have not found such a distinction meaningful. *See Anderson*, 884 F.3d at 390–91 (chapter 7 discharge order in context of determining arbitrability); *Jones*, 666 F. App'x at 774–75 (same); *McLean*, 794 F.3d at 1318–19 (chapter 13 discharge order); *Cox*, 239 F.3d at 916–17 (chapter 7 discharge order). Indeed, the Second Circuit reasoned in *Anderson* that, "[t]hough the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated." 884 F.3d at 390–91.

None of the Bankruptcy Code, precedent, or any decision by an Article III court supports a distinction between the permitted enforcement of a statutory discharge injunction and that of any court-crafted injunction. To paraphrase the Supreme Court, when analyzing the question under the prior Bankruptcy Act, nothing "in the nature of the bankruptcy court or in the terms of the Bankruptcy [Code]" authorizes a "special rule" that would enable it to interpret and enforce discharge orders entered by courts in foreign judicial districts. *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934).

### c. The Fifth Circuit's *Crocker* Decision in 2019 Confirmed that Only the Issuing Court May Enforce the Discharge Injunction

In 2019, the Fifth Circuit was presented with this identical question in near identical circumstances. *See In re Crocker*, 941 F.3d 206 (5th Cir. 2019). In *Crocker*, the bankruptcy court determined it had jurisdiction to interpret and enforce discharge orders entered in other districts. *See id*. at 215. In essence, the *Crocker* bankruptcy court

reasoned that (a) because a discharge injunction was not subject to discretionary interpretation, there should not be any obligation to return to the issuing court for its enforcement; and (b) that when enforcing a discharge, a court is simply enforcing the statute. *Id.* The bankruptcy court also cited as authority 28 U.S.C. § 157, which sets out many of the procedures for bankruptcy courts and the authority of the district courts over them, and 28 U.S.C. § 1334, which grants to district courts "original and exclusive jurisdiction of all cases under" the Bankruptcy Code, with some exceptions. *Id.*

The Fifth Circuit reversed the bankruptcy court, focusing its analysis on a narrow question: "[O]ur question is limited: may a different bankruptcy court than the one that issued the discharge that caused the injunction to arise, enforce that injunction regardless of whether the impediment is jurisdiction, venue, prudential considerations, or something else?" *Id.*

In ruling that the issuing court was the sole place where the contempt proceeding could occur, the Fifth Circuit found that "the Supreme Court decision [in *Taggart*] placed the civil contempt that results from violating a bankruptcy discharge injunction under the general principles for contempt" and that it was agreeing with "[t]he Second Circuit [that] has limited enforcement of discharge injunctions through contempt proceedings to the originating court." *Id.* at 216 (citing *Taggart*, 139 S. Ct. at 1801; *Anderson*, 884 F.3d at 390–91.)

### d.    The Eleventh Circuit Decision in *Alderwoods* Likewise Confirms this View

Likewise, the Eleventh Circuit faced this very issue in *Alderwoods*. There, it considered whether "a bankruptcy court in one federal district has jurisdiction to determine whether a debt was discharged in a bankruptcy case litigated in another federal

district." 682 F.3d at 961. After finding that "the ultimate question . . . is which court has the power to enforce the discharge injunction," the Eleventh Circuit concluded that "the court that issued the injunctive order alone possesses the power to enforce compliance with, and punish contempt of, that order." *Id.* at 968, 969, 971.

As a result, the Eleventh Circuit held that the court in which the discharge-violation claims were filed, but which had not issued the underlying discharge order, "lacked jurisdiction to entertain the complaint because the discharge injunction was never its to enforce." *Id.* at 971. This result followed from the nature of a bankruptcy court's jurisdiction over a debtor's estate, *id.* at 969, and from the general proposition that a court that enters an injunction retains the jurisdiction to enforce it. *Id.* at 970. The Eleventh Circuit also cited pragmatic concerns: "it would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." *Id.*

The Second Circuit has reached a similar conclusion. *See, e.g.*, *Anderson*, 884 F.3d at 390–91. For this reason, and for all those described above, this Court should find that the bankruptcy court cannot interpret and enforce discharge orders entered by courts in foreign judicial districts.

## II.    PLAINTIFFS CANNOT OBTAIN SUCCESSIVE INJUNCTIONS

As set forth above, a discharge order is an injunction. It prohibits—subject to important exceptions applicable here—certain creditors from collecting or attempting to collect certain prepetition debts. Indeed, in multiple locations in the statute's text, section 524 of the Bankruptcy Code explicitly describes its operation as an injunction. *See* 11 U.S.C. § 524(a)(2)–(3). As set forth above, litigants enforce discharge injunctions through contempt proceedings. *See Anderson*, 884 F.3d at 391 ("[V]iolations of this court-ordered

[discharge] injunction are enforceable only by the bankruptcy court and only by a contempt citation."). Nearly every circuit to have considered the question has required a debtor to enforce discharge orders through contempt.

Yet, in their PI Motion, Plaintiffs request injunctive relief duplicative of the discharge injunction Plaintiffs have already received. That is, the discharges that Plaintiffs obtained already enjoin—to the extent applicable—creditors from attempting to collect prepetition debts that are discharged. If Plaintiffs' educational loans were discharged in their bankruptcies—which no court has determined and which Defendants dispute—then the Plaintiffs' requested injunction demands no more relief than what the Bankruptcy Code already provides them. Granting further injunctive relief on the same point would be superfluous. *See Alderwoods*, 682 F.3d at 968 and *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011). This limitation applies to Plaintiffs' requests for preliminary and final injunctive relief. *See, e.g., In re Hye Rhee Kong*, No., 2013 WL 6923063, at *2 (Bankr. C.D. Cal. Nov. 15, 2013) (denying request for preliminary injunction in connection with alleged discharge violation claims) and *In re Fonner*, 262 B.R. 350, 357–58 (Bankr. W.D. Pa. 2001) (same). The Court should therefore deny Plaintiffs' requests for successive injunctive relief—preliminary or otherwise.

## III.    PLAINTIFFS' REQUESTED INJUNCTION IS OVERBROAD AND PRESUMES THE EXISTENCE OF A CERTIFIABLE CLASS

At a more fundamental level, in their proposed order [Dkt. No. 168] (the "Proposed Order"), Plaintiffs request an injunction to cease all "collection or acts of collection" on "all direct to consumer loans" serviced by Defendants. Proposed Order at 2. This

sweeping and indeterminate injunction is grossly in excess of even the Plaintiffs' proposed class, which consists of members who:

> a) Obtained Tuition Answer loans in amounts that exceeded the "Cost of Attendance;"
>
> b) Were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;
>
> c) Have never reaffirmed any pre-petition Tuition Answer loan; and
>
> d) have nonetheless been subjected to Defendants' attempts to induce payment of discharged debts and have or have not repaid these loans since bankruptcy."

Complaint at 14.

As an initial matter, Plaintiff Homaidan lacks standing to request a stay of collection actions, as all of his Tuition Answer Loans have already been paid in full. Plaintiff Homaidan is not even a member of the purported class:  As further set forth in Defendant's Summary Judgment Opposition, Plaintiff Homaidan never received Tuition Answer loan amounts that exceeded the "Cost of Attendance" under any theory.

Further, even enjoining actions in regard to these proposed members would presume that a class capable of certification exists, something upon which the Court will have not ruled (or even heard) by the time of argument on the PI Motion.  As will be further briefed, Defendants vigorously contest that any certifiable class can exist, not only because this Court lacks authority to interpret or enforce the discharge orders of other bankruptcy courts, but also because, among other fatal defects, no common issues predominate Plaintiffs' claims and the named Plaintiffs are not adequate to be class representatives.

## IV.    PLAINTIFFS' MOTION FAILS ON THE MERITS

### a.    Plaintiffs Cannot Meet Their Burden to Obtain a Preliminary Injunction

#### 1.    Plaintiffs are not likely to succeed on the merits

Even if the Motion was not fatally flawed by each of the factors above, Plaintiffs are not likely to succeed on the merits such that a preliminary injunction would be permissible.  For full briefing on this issue, Defendants respectfully refer the Court to Defendants' Summary Judgment Opposition attached hereto as Exhibit A.

#### 2.    Plaintiffs will not be irreparably harmed absent an injunction

The Supreme Court has rejected presumptions of irreparable injury and lower courts' attempts to reduce movants' burden on that element.  *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) and *eBay v. MercExchange, LLC*, 547 U.S. 388, 393 (2006).  The Court should likewise hold Plaintiffs to their proof on this element as well.

The Second Circuit generally holds that a movant will not be irreparably harmed absent injunctive relief if money damages would be available to compensate for the alleged injury suffered.  *See, e.g, Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("Irreparable harm means injury for which a monetary award cannot be adequate compensation . . . the harm must be imminent or certain, not merely speculative."); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) ("Irreparable harm means injury for which a monetary award cannot be adequate compensation").

Plaintiffs make no persuasive showing that, should they prevail in this action, money damages will not be sufficient to offset any damages sustained.

The cases cited by Plaintiffs to support their proposition that the mere act of attempting to collect on a discharged debt constitutes irreparable harm are readily distinguishable. *In re Diaz*, 526 B.R. 685 (Bankr. S.D. Tex. 2015), involved a finding by a court that a creditor "acted in flagrant disregard of the discharge injunction by repeatedly attempting to collect a debt that it *knew* had been discharged." *Id.* 693–94 (emphasis added). Further, the creditor in *Diaz* "threatened Plaintiffs with jail time, threatened to ruin the credit rating of Plaintiffs' son (who had never been personally liable for the debt), and threatened to serve Plaintiffs with a meritless lawsuit." *Id.* Here, no court has ever made a determination that Plaintiffs' Tuition Answer Loans were discharged in bankruptcy, neither of the named Plaintiffs contested the dischargeability of their Tuition Answer Loans prior to this adversary proceeding, and Plaintiffs have offered no evidence of any abusive conduct. Similarly, no question regarding the discharge of a debt existed in *In re Daniel*, 98 B.R. 73, 76 (Bankr. M.D. Fla. 1989), where the creditor failed to timely file a required adversary proceeding to contest the discharge of a debt and the Court did not share its analysis as to a finding of irreparable harm.

Moreover, Plaintiffs' substantial delay in seeking a preliminary injunction weighs against their claims of imminent irreparable injury absent injunctive relief. *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995) ("Nonetheless, any such presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief"); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (ruling that a delay in seeking a preliminary injunction "tends to indicate at least a reduced need for such drastic, speedy action"); *Silber v.*

*Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 441–42 (E.D.N.Y. June 14, 2013) ("Although delay may not preclude the grant of ultimate relief, it may preclude preliminary relief because it undermines the sense of urgency that typically accompanies a motion for preliminary injunction.")

Plaintiffs' Adversary Proceeding was first filed in June 2017. Plaintiffs' amended Complaint was filed over two years later to add a purported representative class member, leaving the underlying allegations largely unchanged. The Second Circuit has found that similar circumstances rebutted assertions of imminent irreparable injury. *See Tough Traveler*, 60 F.3d 968 (four-month delay); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (10-week delay). This Court should reach the same conclusion.

Further, Plaintiffs' request for injunctive relief here is duplicative of Plaintiffs' existing discharge orders and is therefore an unavailable successive injunction. Moreover, Plaintiffs give no indication that their alleged injuries could not be remedied through monetary damages.

For all of these reasons, Plaintiffs have not demonstrated that they will suffer imminent irreparable harm if the Court does not grant their request for a preliminary injunction. The Court should deny the PI Motion as a result.

### 3. The balance of the equities tips against Plaintiffs' request for a preliminary injunction.

The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. *See Jayaraj*, 66 F.3d at 39 ("[T]he single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm *before a decision on the merits can be rendered*."). Plaintiffs have not

shown that they require an injunction to prevent imminent irreparable harm or that an injunction is necessary for the Court to be able to render a meaningful decision on the merits in this action. Yet, they ask the Court to impose a burdensome, unnecessary injunction. This balance of equities instructs that the Court should deny Plaintiffs' request for a preliminary injunction.

First, a preliminary injunction is unnecessary. Plaintiffs' action is founded on alleged discharge injunction violations, which requires that the debtor must enforce his or her discharge through a motion for contempt (once there has been a determination of discharge) or through declaratory relief. *See supra* Argument I. A request for additional injunctive relief is successive of the discharge, and is therefore unavailable redundant relief. *See, e.g. Alderwoods*, 682 F.3d at 966, 970. Further, a preliminary injunction pending the outcome of a dispute regarding dischargeability of student loans does not square with the Supreme Court's holdings in *Espinosa* and *Tennessee Student Assistance Corporation*, among other authorities, which place the burden on the debtor to seek a determination regarding dischargeability and find that the loans are enforceable until such a determination is made. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268–69 (2010) ("[T]he Bankruptcy Rules require a party seeking to determine the dischargeability of a student loan debt to commence an adversary proceeding by serving a summons and complaint on affected creditors."); *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) (noting that student loan debt is presumptively non-dischargeable and that a debtor must file an adversary proceeding to discharge it).

Second, granting Plaintiffs' request for a preliminary injunction would cause significant confusion, and possibly further financial hardship, to borrowers. If the Court issues a preliminary injunction, the merits of Plaintiffs' claims may not be finally resolved

for months—or even years.  Borrowers would suddenly cease receiving communications regarding their student loans, and—because Plaintiffs' Proposed Order lacks any specificity as to the particular actions enjoined—Defendants may not be able to respond to any inquiries they may make.  Defendants would likely have to suspend borrowers' automatic payments and may even have to reject borrowers' voluntary payments. Borrowers may believe that they are relieved of their student loan debt, and may take on other financial obligations in the meantime.

Yet, because the requested injunctive relief is merely temporary, borrowers' loans may keep accruing interest.  Then, months or years from now, after the merits of Plaintiffs' claims have been adjudicated, if Defendants prevail—whether on the merits or on how a debtor may enforce the discharge—borrowers will suddenly start receiving communications, statements, collection efforts, and other contact from Defendants.  In addition to the confusion caused by this pause, the resumption of student loan payments may strain their abilities to meet monthly financial commitments that they took on during that pause.  Borrowers have a remedy if Plaintiffs are correct that their loans were discharged in bankruptcy and they have incurred compensable damages; but borrowers will not have a remedy if Plaintiffs are wrong and they incur costs and other obligations as a result of an improvidently granted preliminary injunction—including interest that will have accrued in the meantime.

Finally, Defendants will necessarily incur substantial administrative and other costs and damages complying with any preliminary injunctive relief this Court orders. Because the Court's jurisdiction over a nationwide class has not been determined, though, the degree to which that relief would harm Defendants is indeterminate as well.

For these reasons, the balance of the equities disfavors granting Plaintiffs' request for a preliminary injunction, which the Court should deny as a result.

### 4.    An injunction would be against the public interest

As set forth herein, the Court lacks jurisdiction to grant Plaintiffs a nationwide preliminary injunction. But even ignoring that limitation, the public interest is not served by granting the extraordinary relief Plaintiffs seek: it is contrary to the holdings of *Espinosa* and *Tennessee Student Assistance Corporation*, which require a borrower to commence an adversary proceeding to determine the dischargeability of his or her student loans. Congress has enacted a broad exception to discharge for student loans and the public interest is not served by undermining Congressional intent to effectively rewrite the Bankruptcy Code prior to any determination on the merits. *See, e.g.*, *In re Corbin*, 506 B.R. 287, 296 (Bankr. W.D. Wash. 2014).

Further, Plaintiffs ask the Court to enter this injunction on the basis of their novel interpretation of both the meaning and scope of § 523(a)(8). No court has issued a decision determining that student loans, on their face issued for qualified education expenses, are presumptively dischargeable. No court has ever found that a bankruptcy discharge extends to the whole amount of such loans. Immature or untested theories are particularly inappropriate for resolution on a nationwide class basis. *See, e.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746–51 (5th Cir. 1996) (describing the myriad problems attendant to class-wide consideration of novel legal theories); *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 494–96 (E.D. Pa. 1997) (finding that class action is not a superior vehicle to litigate an immature tort); *In re Norplant Contraceptive Prods. Liability Litig.*, 168 F.R.D. 577, 578 (E.D. Tex. 1996) (denying motion for certification of class asserting

immature tort); *Tijerina v. Phillip Morris, Inc.*, No. 2:95–cv–120–J, 1996 WL 885617, at *6 (N.D. Tex. Oct. 8, 1996) (same).

Thus, to the extent that Plaintiffs advance a theory that is not just wrong but is also novel, it would be against public policy to issue a nationwide preliminary injunction. Moreover, doing so presumes that an adjudication of the merits on a class basis by this Court is permissible, which will usurp other courts' ability to apply the law of their jurisdictions to the orders they issued. Such a finding is similarly violative of public policy. In short, Plaintiffs have failed to meet their burden on this element as well.

### b.    Plaintiffs' Proposed Preliminary Injunction violates the Federal Rules

### 1.    The Proposed Order lacks the required specificity

Even if this Court could issue a preliminary injunction in this case, the proposed order does not meet the strictures of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 65, which is incorporated into this adversary proceeding under Federal Rule of Bankruptcy Procedure 7065, provides that every order granting a request for preliminary injunction must: (1) state the reasons why it issued; (2) state its terms specifically; and (3) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. Fed. R. Civ. P. 65(d).

The Proposed Order submitted by Plaintiffs here falls woefully short of this standard. First, it offers no reasons why the Court entered it. Second, it utterly fails to state its terms in any specificity. The entirety of the proposed injunction reads:

> ORDERED that Defendants shall immediately cease any collection or acts of collection on any of their direct-to-consumer loans without prejudice to their right to petition the Court for partial relief from said injunction upon a showing that certain borrowers' loans do not exceed the cost of attendance as defined in Internal Revenue Code § 221(d).

Proposed Order at 2.

This brief paragraph is barren of any meaningful detail on the scope and duration of the preliminary injunction. It contains no specificity as to the act or acts restrained or required. The proposed order does not limit the injunction's application to Plaintiffs and proposed class members, but broadly mandates that Defendants "cease any collection or acts of collection on any of their direct-to-consumer loans" *Id.* at 2. Such an injunction, if applied, would expressly enjoin every Tuition Answer Loan serviced by Defendants, even those where such loans undisputedly qualify as qualified education loans exempt from discharge under § 523(a)(8). Indeed, the proposed injunction requires the Court to presume that all "direct-to-consumer loans" have been discharged despite the fact that no adversary proceeding has ever been filed to address dischargeability of these student loans.

Moreover, the proposed order does not define what acts constitute "collection or acts of collection." For example, and without limitation, would Defendants violate the proposed injunction by answering calls from class members? By accepting voluntary payments from class members? By challenging dischargeability in this or any other pending action?

When faced with similar circumstances, the Supreme Court and the Second Circuit have found such failures to constitute reversible error. *See, e.g.*, *Schmidt v. Lessard*, 414 U.S. 473, 476, (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240–41 (2d Cir. 2001) ("[A]n injunction must 'be specific and definite

enough to apprise those within its scope of the conduct that is being proscribed. . . . to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing."); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 174 (2d Cir. 2001) (vacating injunction as overly vague). For the same reasons, the Court should deny Plaintiffs' Motion.

## 2. Plaintiffs must post a bond

Federal Rule of Civil Procedure 65 also provides that the Court "may issue a preliminary injunction . . . *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). The bond requirement "assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir.2011). The Second Circuit has made clear that the appropriate amount of the bond is in the Court's discretion. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir.1996); *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 202 (E.D.N.Y. 2013).

Here, Plaintiffs have requested a nationwide injunction and do not propose to post a bond. As argued above, the potential scope of available preliminary injunctive relief to be issued, if any, is exceedingly broad and also indeterminate because this Court cannot enforce other courts' discharge injunctions—which the requested preliminary injunction presumes. Further, Plaintiffs' Motion for Class Certification, and thus class membership, will not be fully briefed until March 2020. *See* Dkt. No. 183. As a result, the costs and

damages that Defendants would incur in complying with any such Court-ordered injunction are indeterminate and, potentially, massive.  Accordingly, the amount of the bond required from the Plaintiffs is not determinable until the Court rules on the potential scope of Plaintiffs' class, to the extent a certifiable class exists at all.  The Court should therefore refrain from ruling on Plaintiffs' Motion until after it resolves Plaintiffs' motion for class certification.  In any case, though, the Court should not relieve Plaintiffs of their duty to post a bond in an amount sufficient to compensate Defendants for their costs and damages associated with any injunction, consistent with Rule 65(c).

## <u>Conclusion</u>

For the reasons set forth above, this Court should deny Plaintiffs' Motion for a Preliminary Injunction and grant such further relief as the Court deems just, necessary, and proper.

[*Signature follows on next page.*]

Dated: February 3, 2020
      New York, New York

Respectfully submitted,

/s/ *Shawn R. Fox*

Shawn R. Fox
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone:   212.548.2100
Email: sfox@mcguirewoods.com

—and—

Thomas M. Farrell (*pro hac vice*)
McGuireWoods LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
Telephone:   713.571.9191
E-mail: tfarrell@mcguirewoods.com

—and—

Dion W. Hayes (*pro hac vice*)
K. Elizabeth Sieg (*pro hac vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219
Telephone:   804.775.1000
Email: dhayes@mcguirewoods.com
bsieg@mcguirewoods.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of February, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Shawn R. Fox*