# EXHIBIT A

# In The Matter Of:

*Haas v.*
*Navient Solutions, LLC,*

---

*Patricia P. Peterson*
*September 19, 2017*
*Confidential*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



**WILCOX & FETZER LTD.**

Original File Haas v. Navient 09-19-17 depo of Patricia Peterson Confidential.txt

Min-U-Script® with Word Index

## Page 229

1  MR. FARRELL: Object to the
2  form.
3  THE WITNESS: Probably.
4  BY MR. BURGE:
5  Q. Who would know that?
6  MR. FARRELL: Object to the
7  form.
8  THE WITNESS: Jeff Stein.
9  BY MR. BURGE:
10 Q. I don't know if we have come across
11 Jeff Stein. What is his position?
12 A. **Jeff is vice president of our**
13 **servicing operations, the back-of-office**
14 **processing.**
15 Q. Now, when you write off a loan because
16 you determine that it's been discharged in
17 bankruptcy, do you know if you issue a 1099 to
18 the borrower?
19 MR. FARRELL: Object to the form
20 of the question.
21 THE WITNESS: No, we do not.
22 BY MR. BURGE:
23 Q. When you settle a loan where you
24 decide to take less than the full amount to

## Page 230

1  resolve the loan balance, do you issue a 1099
2  to the borrower?
3  A. **If it's above a certain amount, yes.**
4  Q. So if the person had 20,000 in
5  outstanding student loans and you agreed to
6  settle it for $8,000, so there was a $12,000
7  difference, do you issue a 1099 for $12,000?
8  A. **I don't recall the bottom threshold,**
9  **but at that limit, yes. But I don't know what**
10 **the bottom level is.**
11 Q. But if you conclude that a student
12 loan is discharged, that's a $20,000 student
13 loan, so you're not going to collect anymore,
14 you don't issue a 1099 for that?
15 A. **Will you rephrase it? Sorry.**
16 Q. If you determine by your procedures
17 that a student loan is discharged, and it's a
18 $20,000 student loan that you're going to
19 write off and not collect on anymore, you
20 don't issue a 1099.
21 A. **Correct.**
22 Q. Do you know why you issued a 1099 in
23 one situation and not the other?
24 A. **No.**

## Page 231

1  Q. Those are just the procedures Navient
2  follows?
3  A. Yes.
4  Q. I want to go back to that language at
5  the top of the page there where it said, "Only
6  if requested, we can return payments from the
7  discharge order date to present since legally
8  the borrower was no longer responsible once
9  the discharge order was issued."
10    Do you see that?
11 A. I do.
12 Q. That's Navient recognizing that
13 payments made after a discharge that
14 discharged the debt should be returned, right?
15    MR. FARRELL: Object to the form
16 of the question.
17    THE WITNESS: Go back to -- we
18 set a procedure based off of legal guidance,
19 and our procedure would say that, since we
20 opted to write off the balance of this
21 account, we are not going to keep any
22 payments.
23 BY MR. BURGE:
24 Q. Okay. Take a look at a different

## Page 232

1  document that we will mark as Peterson 15.
2     (Peterson Deposition Exhibit
3  No. 15 was marked for identification.)
4     BY MR. BURGE:
5  Q. You know what, I marked the wrong one,
6  I'm sorry. Give me that back. That's my
7  mistake. I'm sure that was fascinating
8  reading.
9  A. **Now I know what to look forward to**
10 **later.**
11 Q. We're never going to look at that one.
12 Saving us all time.
13    What I have actually marked as
14 Peterson 15 is a document that is Bates
15 labeled NAV02, a bunch of zeros, and then 13.
16 I will ask you if you recognize this document.
17 A. Yes.
18 Q. What is this document?
19 A. **This is the correspondence processing**
20 **group, the claim processing group, their**
21 **procedures for processing discharges and**
22 **dismissals.**
23 Q. Now, I want to flip to the back, 223.
24 And so this is the set of procedures that you

Patricia P. Peterson — Page 233

1 follow once you get notice that a bankruptcy
2 has ended either in dismissal or discharge.
3   Correct?
4 A. Yes.
5 Q. So after you go through a number of
6 steps, you then get to step 7, which is to
7 send the L180 letter unless the private loan
8 will be discharged.
9   Correct?
10 A. Yes.
11 Q. And so once you've determined --
12 you've gone through the steps and you have
13 got -- the bankruptcy is over, you then send
14 that L180 letter to the borrower, correct?
15 Unless you conclude that the private loan is
16 going to be discharged.
17 A. Yes.
18 Q. Now, I want to take a look at what
19 that L180 letter looks like. So mark this as
20 Peterson 16.
21    (Peterson Deposition Exhibit
22 No. 16 was marked for identification.)
23    BY MR. BURGE:
24 Q. I'll ask you if you recognize this

Patricia P. Peterson — Page 234

1 document.
2 A. Yeah.
3 Q. Okay. It doesn't have the L180 letter
4 I think maybe because the way it was produced,
5 but do you recognize this to be the L180
6 letter?
7 A. Yeah.
8 Q. Okay. And the information it provides
9 is: "We have been notified that your
10 bankruptcy case has been concluded. Since the
11 loan shown above was not discharged through
12 your bankruptcy, you are responsible for
13 repaying the remaining balance of the loan
14 according to the terms of the promissory
15 note."
16    See that?
17 A. I do.
18 Q. This is what you send to the borrower
19 once they finished their bankruptcy and you're
20 putting them back into repayment, correct?
21 A. Yes.
22 Q. And you described this as an attempt
23 to collect on a debt?
24 A. No.

Patricia P. Peterson — Page 235

1 Q. This is just notifying them that they
2 need to start making payments?
3 A. Yes.
4 Q. Let me show you another document.
5 This was not produced in this case, but it was
6 publicly filed in another case. Mark it as
7 Peterson 17.
8    (Peterson Deposition Exhibit
9 No. 17 was marked for identification.)
10    BY MR. BURGE:
11 Q. I think it pretty closely tracks the
12 language of Peterson 16. Do you recognize
13 this document?
14 A. It looks to be the same document, just
15 a different version.
16 Q. Slightly different form. But this
17 would also be that L180 letter, right?
18 A. I can't tell that from here.
19    MR. FARRELL: Jason, I'm going
20 to tell you, not because I'm trying to do this
21 but just so you know, you can read through the
22 blackout. If you hold it at the right angle,
23 I can read the blacked-out information.
24    MR. BURGE: This whole thing's

Patricia P. Peterson — Page 236

1 subject to a protective order.
2    MR. FARRELL: I'm just letting
3 you know.
4    MR. BURGE: Hopefully this will
5 make it easier if we ever have to submit it to
6 the court or anything. Agreed. I don't think
7 any of it's secret. You can look up the case
8 number and see who it is.
9    MR. FARRELL: Wanted to let you
10 know in case you were intending for that to be
11 permanent blackout. It's not.
12    MR. BURGE: Understood.
13    BY MR. BURGE:
14 Q. If you look on the right side in these
15 kind of small -- you see in the far right is
16 an "L180"?
17 A. Okay.
18 Q. That suggests this is the L180 letter?
19 A. Okay.
20 Q. Maybe this is just a different form
21 that was used on or about December 2nd of
22 2015?
23 A. Yeah. Our letters got reviewed very
24 frequently.