# EXHIBIT C

**In The Matter Of:**

*Haas v.*
*Navient Solutions, LLC,*

---

*Patricia P. Peterson*
*January 12, 2018*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



**WILCOX & FETZER LTD.**

Original File Haas v. Navient 01-12-18 depo of Patricia Peterson Confidential.txt

Min-U-Script® with Word Index

CONFIDENTIAL - PETERSON                    Page 485

1  not in bankruptcy?
2  A.  They are.
3  Q.  Okay.  So the bankruptcy litigation
4  unit is engaged any time there is
5  collections litigation?
6  A.  To help with the documentation
7  that's needed for the outside groups, yes.
8  Q.  Okay.  Now, for litigation,
9  collections litigation, is there always an
10 in-house counsel assigned, or are there
11 situations where the collections department
12 works directly with an outside attorney,
13 without any in-house counsel?
14 A.  I'm not familiar with all the
15 places that in-house counsel is involved
16 there.
17 Q.  Okay.  You just don't know one way
18 or the other?
19 A.  Right.
20 Q.  Okay.  Do you have any sense of how
21 many cases Navient has brought against
22 people trying to collect career training
23 loans?
24 A.  No.

CONFIDENTIAL - PETERSON                    Page 486

1  Q.  Order of magnitude?
2  A.  No.
3  Q.  Would Navient have that information
4  somewhere?
5  A.  I believe so.
6  Q.  Okay.  Did you make any attempt to
7  gather that for this deposition?
8  A.  Not that I'm aware of.
9     MR. FARRELL: I'm sorry, Jason,
10 was the question just collect or was it
11 litigation?  Because you had been talking
12 about litigation.  And are you now just
13 talking generally about collections?
14    MR. BURGE: Specifically about
15 litigation, how many times Navient has
16 litigated against.
17    MR. FARRELL: With career
18 training borrower.
19    BY MR. BURGE:
20 Q.  Okay.  You understood one of the
21 topics we wanted to talk about is the total
22 number of borrowers with Navient-serviced
23 Consumer Education Loans whom you have sued
24 in state court after receipt of discharge

CONFIDENTIAL - PETERSON                    Page 487

1  to obtain judgment on consumer education
2  loans?
3     MR. FARRELL: We objected to
4  that.  I don't have our letters back and
5  forth, but I think we came to some
6  understanding on that one.  Didn't we?
7     MS. SIEG: Yeah, we did.
8     MR. FARRELL: We weren't going
9  to go pull all that information.  We weren't
10 going to get you exact numbers, I think.
11    MS. SIEG: Right.  It is not --
12 the parties agreed that the scope of this
13 topic is not a tally of complaints filed
14 against individual borrowers but generally
15 the company's process surrounding collection
16 in litigation.
17    BY MR. BURGE:
18 Q.  Okay.  Navient certainly, we agreed
19 not to gather that for this deposition, but
20 Navient certainly could identify the number
21 of times they have sued borrowers in state
22 court to collect debts, correct?
23 A.  Yes.
24 Q.  Okay.  We will take a look at a

CONFIDENTIAL - PETERSON                    Page 488

1  couple of letters.
2     (Peterson Deposition Exhibit 47
3  was marked for identification.)
4  Q.  I show you a document marked
5  Peterson 47.  I ask you if you recognize
6  this document.
7  A.  I may have seen it at one point.
8  Q.  Okay.  So this is a form document
9  sent to borrowers post bankruptcy, right?
10 A.  The form, can you expand on what
11 you mean by a form document?
12 Q.  So I'm saying that this, something
13 has gone horribly wrong if a borrower got a
14 document that looked exactly like this,
15 right?  Because what is supposed to happen
16 is that the information would be filled in
17 for the specific borrower that this is sent
18 to, and then this would be sent to a
19 borrower, correct?
20 A.  This is a template.
21 Q.  Exactly, it is a template.  That's
22 what I meant by form.
23 A.  Okay.  Okay.
24 Q.  Okay.  So this is a template for a

CONFIDENTIAL - PETERSON                                    Page 489

1    letter that would be potentially sent to a
2    borrower post bankruptcy, right?
3  **A.  Yes.**
4  Q.   And if this letter is sent, it is
5    because there has been a determination that
6    the loans, the loans that will be listed
7    below were not discharged in bankruptcy,
8    and it is telling them they are responsible
9    for resuming repayment, correct?
10 **A.  Yes.**
11 Q.   And I don't know if this is -- I
12   know we looked at a document last time that
13   was the L180 letter.  I think this is a
14   slightly different template.  This is the
15   same concept of the L180 letter, correct?
16 **A.  You would have to show me the L180**
17 **letter.  I don't recall exactly the**
18 **language that was on it.  But if you say it**
19 **was a discharge letter, then yes.**
20 Q.   Okay.  And this is meant to be sent
21   after you have made the determination,
22   according to the procedures, about whether
23   or not the loans are dischargeable, right?
24 **A.  Yes.**

CONFIDENTIAL - PETERSON                                    Page 490

1  Q.   And I think I have, it is the exact
2    same document only missing the top of it so
3    I'll skip that one.
4        Now, I show you this, marked as
5    Exhibit 48.
6        (Peterson Deposition Exhibit 48
7    was marked for identification.)
8  Q.   I ask you if you recognize this
9    document?
10 **A.  At some point in time I've seen it,**
11 **yes.**
12 Q.   This is another template, right?
13 **A.  Yes.**
14 Q.   And here it looks like the
15   determination has been made that there was
16   a discharge and the borrower is no longer
17   obligated to pay the debt, correct?
18 **A.  Yes, and the co-signer is.**
19 Q.   And so this letter is being sent to
20   the co-signer, stating that the borrower
21   has got a discharge, we have determined
22   that they have discharged the debt, and now
23   you are responsible?
24 **A.  Yes.**

CONFIDENTIAL - PETERSON                                    Page 491

1  Q.   Correct.  Now, this would only be
2    sent if you went through your procedures
3    and conclude that the borrower was
4    discharged, correct?
5  **A.  That's the intent of the letter.**
6  **It is possible that we would send this**
7  **because the customer, the co-signer**
8  **questions again later, and so we may send**
9  **them another copy of this letter at a**
10 **different time.**
11 Q.   But if you concluded, if you
12   followed your procedures and concluded that
13   the borrower was not discharged, you
14   shouldn't send this letter, right?
15 **A.  Right.  They would have gotten the**
16 **other letter.**
17 Q.   Okay.  And internally in your
18   system, you are tracking, after you get
19   notice of a bankruptcy discharge, whether
20   you sent the borrower is still responsible
21   letter or the co-signer is responsible
22   letter, right?
23 **A.  Yes.**
24 Q.   So you would know for each account

CONFIDENTIAL - PETERSON                                    Page 492

1    which of these two letters you sent?
2  **A.  Yes.**
3  Q.   Okay.  I'm going to turn to a
4    different topic, specifically the Truth in
5    Lending Act.  Do you have any understanding
6    of what the Truth in Lending Act is?
7  **A.  Vaguely.**
8  Q.   Okay.  Can you give me just your
9    lay understanding of what it does, if you
10   have such an understanding?
11     **MR. FARRELL:** Is this within
12   one of your topics?
13     **MR. BURGE:** I believe so.  And
14   it is certainly within the topics of the
15   documents you provided to us.  I'm not going
16   to have a whole lot of questions about it.  I
17   just want to point out a statement that's on
18   one of these.
19     **MR. FARRELL:** Okay.
20     **MR. BURGE:** This won't be a
21   long topic.
22     **THE WITNESS:** If I saw the
23   document, I could generally recall what it
24   says, yes.