# Exhibit G

to

Declaration of George F. Carpinello

Case 1-17-01085-ess Doc 140-7 Filed 05/08/19 Entered 05/08/19 16:04:59

```
        IN THE UNITED STATES BANKRUPTCY COURT
         FOR THE EASTERN DISTRICT OF NEW YORK
                      - - -
  In re:                       :
                               :
  HILAL K. HOMAIDAN,           :
  f/k/a Helal K.               :
  Homaidan,                    :
                               : Chapter 7
         Debtor.               :
  ---------------------- :
                               : Case No.
  HILAL K. HOMAIDAN on         : 08-48275 (ESS)
  behalf of himself and        :
  all others similarly         :
  situated,                    : CONFIDENTIAL
                               :
         Plaintiff,            :
                               :
         v.                    :
                               :
  SLM CORPORATION, SALLIE      :
  MAE, INC., NAVIENT           :
  SOLUTIONS, LLC, and          :
  NAVIENT CREDIT FINANCE       :
  CORPORATION,                 :
                               :
         Defendants.           :
                      - - -
              Tuesday, July 9, 2019
                      - - -
```

30(b)(6) deposition of PATRICIA PETERSON, taken pursuant to notice, was held at the law offices of Friedlander & Gorris, 1201 Market Street, Wilmington, Delaware, beginning at 9:41 AM on the above date, before Constance S. Kent, a Certified Court Reporter, Registered Professional Reporter and Notary Public in and for the state of Delaware.

\* \* \*

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com

Case 1-17-01085-ess    Doc 140-7    Filed 02/08/19    Entered 02/08/19 16:04:59

MAGNA
LEGAL SERVICES

|   | Page 42 |   | Page 43 |
|---|---|---|---|

Page 42

```
 1   looking at that policy, which I believe
 2   we looked at in the last one, so I think
 3   it's in the material that was produced.
 4             As it relates to the debt
 5   being discharged, I can go through that
 6   flow.
 7        Q.   Okay.
 8        A.   So from the dischargeability
 9   of the debt, we're first going to look at
10   the 1098-E eligible flag and that 1098-E
11   eligible flag has, I believe it's four
12   different values.  If the value is a no,
13   and it's never been a -- one of the other
14   values, then the debt would be discharged
15   and we would write off the balance.
16             Any of the other fields of a
17   Y, a Q or blank or a no that has been
18   changed before, we would then proceed in
19   the tree to look at the actual Title IV,
20   and if it was a loan made to a Title IV
21   school, the loan would not be discharged
22   and written off.  A non-Title IV would be
23   written off.
24        Q.   Okay.  Do you know how a
```

Page 43

```
 1   loan is designated within one of those
 2   four, one being N, the others being Y, Q
 3   and -- I'm sorry.  Let's back up.
 4             You said that a loan is
 5   written off if there's an N in the 1098
 6   field and it's never been anything else,
 7   correct?
 8        A.   Correct.
 9        Q.   Who makes -- do you know
10   what goes into the decision to put an N
11   in that column?
12        A.   That is based off of whether
13   the loan proceeds were used for a
14   qualified education expense.
15        Q.   And how do you determine
16   whether or not a loan has been used for a
17   qualified education expense?
18        A.   One of the ways is based off
19   of the program itself, so we had a career
20   training loan is an example of a loan
21   that could be showing a no.
22        Q.   Are there other loan
23   programs that would show a no
24   automatically?
```

Page 44

```
 1        A.   I don't recall.
 2        Q.   Would a Tuition Answer Loan
 3   show an N automatically?
 4        A.   No.
 5        Q.   Okay.
 6        A.   Not typically.
 7        Q.   Pardon me, not typically?
 8        A.   Not typically.
 9        Q.   All right.  I'm going to
10   show you a document.
11             MS. SWANSON:  That we'll
12        mark as Exhibit 2 that we used in
13        your last deposition, just ask you
14        a couple of questions about it.
15             This is Navient's private
16        lending bankruptcy policy as of
17        March 1st, 2017.
18             (Exhibit No. 2,
19        Confidential-Policy, Private
20        Lending Bankruptcy, Bates
21        NAVHOM01000017 through 20, was
22        marked for identification.)
23   BY MS. SWANSON:
24        Q.   Do you know who this policy
```

Page 45

```
 1   was -- or this document was created by?
 2        A.   Someone in our -- our
 3   compliance group typically is responsible
 4   for writing the policy.
 5        Q.   Is your compliance group
 6   also called Credit Risk Management?
 7        A.   No.
 8        Q.   Is Credit Risk Management a
 9   subset of your compliance group?
10        A.   No.
11        Q.   All right.  Why does it say
12   "Department:  Credit Risk Management" on
13   this document?
14        A.   They're responsible for
15   setting the policy but not necessarily
16   did they author the actual document.
17        Q.   Okay.  Do you know -- can
18   you tell me that -- your compliance
19   department, who is in charge of
20   compliance at Navient?
21             MR. FARRELL:  Currently?
22             MS. SWANSON:  Currently.
23             THE WITNESS:  Steve Hauber.
24   BY MS. SWANSON:
```



Page 66

```
 1      A.   When we receive a discharge
 2   or notification of bankruptcy.
 3      Q.   Do you know what goes into
 4   that determination?
 5          MR. FARRELL:  Object to the
 6      form.
 7          THE WITNESS:  Can you get
 8      more specific?
 9   BY MS. SWANSON:
10      Q.   Sure.  So in this discharge
11   of debtor it says:
12          "Navient must determine if
13   the loan is considered a nondischargeable
14   education loan."
15          Do you know what factors
16   Navient considers other than those that
17   it consideration at origination to
18   determine if the loan is a
19   nondischargeable education loan?
20          MR. FARRELL:  Object to the
21      form because it's already been
22      asked and answered.  She told you
23      about the decision tree that the
24      procedure tells somebody to go
```

Page 67

```
 1      through.  So I don't know if
 2      you're -- I think she's already
 3      answered it.
 4          But go ahead if you can.
 5          THE WITNESS:  No, I was --
 6      sorry, I was trying to understand
 7      what your question was because
 8      that's what I was also thinking,
 9      it was the same thing we went
10      through.  So I'm not sure if
11      you're asking it a different way.
12   BY MS. SWANSON:
13      Q.   Does the PA Claims team look
14   at anything but that decision tree that
15   we've talked about in determining if the
16   loan is considered a nondischargeable
17   education loan?
18      A.   No, they use that decision
19   tree.
20      Q.   For every different type of
21   loan?
22      A.   Correct.
23      Q.   Would you agree that this
24   policy obliges Navient to determine if
```

Page 68

```
 1   loan is dischargeable before it resumes
 2   collecting it?
 3          MR. FARRELL:  Objection to
 4      form.
 5          THE WITNESS:  Can you
 6      restate that.
 7          MS. SWANSON:  Can you repeat
 8      that for me, please?
 9          THE WITNESS:  No, can you
10      just restate it?  I don't
11      understand the question.
12   BY MS. SWANSON:
13      Q.   Sure.  Would you agree that
14   this policy obliges Navient to determine
15   whether or not a loan is discharged in
16   bankruptcy before it resumes collecting?
17          MR. FARRELL:  Object to
18      form.
19          THE WITNESS:  Yes.
20   BY MS. SWANSON:
21      Q.   Okay.  And does Navient, in
22   fact, determine whether the debt is
23   dischargeable for each loan for which it
24   receives a notice of discharge?
```

Page 69

```
 1          MR. FARRELL:  Object to the
 2      form.
 3          THE WITNESS:  Yes, each loan
 4      is evaluated independently.
 5   BY MS. SWANSON:
 6      Q.   And is the analysis anything
 7   other than the decision tree?
 8      A.   No.  As it relates to
 9   private student loans.
10      Q.   So there's a section at the
11   top of 19 here called Nondischargeable
12   Loans, and it lists out three specific
13   requirements that -- we looked at this a
14   few minutes ago.  There's three
15   requirements, one is: "An educational
16   benefit, overpayment of loan made,
17   insured or guaranteed by a government
18   unit," et cetera.  One is: "An
19   obligation to repay funds such as an
20   educational benefit, scholarship or
21   stipend," and the third is: "Any other
22   educational loan that is a qualified
23   education loan."
24          So Navient does not look at
```



Page 70

```
 1   any of these requirements in this
 2   document on the page 19, it only looks at
 3   whether or not the loan is eligible to
 4   receive a 1098-E, and then, if necessary,
 5   looks at whether or not it's a Title IV
 6   school; is that correct?
 7           MR. FARRELL:  Object to the
 8       form.
 9           THE WITNESS:  The 1098-E and
10       those two -- and the Title IV
11       incorporate the three bullets.
12   BY MS. SWANSON:
13       Q.   Is there any other -- any
14   other requirement -- well, why don't we
15   move on to where Navient defines the
16   qualified education loan.
17           MS. SWANSON:  I would like
18       to show you a document, what we'll
19       call Exhibit 3.  This is the --
20       it's on Sallie Mae letterhead.
21       It's called Policy Bulletin
22       98-117, Reporting Student Loan
23       Interest, 2008 tax year.
24           (Exhibit No. 3,
```

Page 71

```
 1       Confidential-Policy Bulletin
 2       98-117, Bates NAV070000112 through
 3       123, was marked for
 4       identification.)
 5           MR. FARRELL:  Since we're
 6       about to go to a new document,
 7       we've been going about an hour, do
 8       you want to take a break or are
 9       you --
10           THE WITNESS:  I was actually
11       thinking if we could, that would
12       be great.
13           MR. FARRELL:  Okay.
14           MS. SWANSON:  Sure.
15           MR. FARRELL:  Take a quick
16       bathroom break and then we can
17       dive into this.
18           (Recess called at 10:48 AM
19       to 11:04 AM.)
20   BY MS. SWANSON:
21       Q.   All right.  Did you get a
22   chance to take a look at this policy
23   bulletin that I handed you before we took
24   our break?
```

Page 72

```
 1       A.   I did.
 2       Q.   All right.  What is the
 3   purpose of this policy?
 4       A.   It defines our reporting
 5   requirements for student loans for this
 6   specific tax year.
 7       Q.   For this specific 2008 tax
 8   year?
 9       A.   Correct.
10       Q.   Do you have one of these for
11   every specific tax year?
12       A.   I believe there is one, yes.
13       Q.   Okay.  Is the purpose of
14   this to determine -- to use this to
15   determine who to send a 1098-E to?
16       A.   The policy governs the --
17   what and when we should send a 1098, yes.
18       Q.   Okay.  And if you turn to
19   the page that ends with 37 at the bottom,
20   there is a list of "Key Terms Continued."
21           Can you tell me what your
22   understanding before or after having read
23   this Qualified Education Loan Key Term,
24   what is your understanding of what
```

Page 73

```
 1   constitutes a qualified education loan?
 2       A.   Do you want me to read it?
 3       Q.   Sure.  This is your
 4   understanding?  If your understanding is
 5   what you've read here -- why don't you go
 6   ahead and read that and then I'd like to
 7   hear what your interpretation of that
 8   might be.
 9       A.   Okay.
10           "A loan incurred within a
11   reasonable period and used solely to pay
12   the cost of qualified higher education
13   expenses at an eligible educational
14   institution for a student enrolled at
15   least half-time in a program leading to a
16   degree, certificate or other recognized
17   educational credential.  Qualified
18   education loan must be made to a borrower
19   who is the student, the student's spouse
20   or a party for which the student is a
21   dependent based on Federal Income Tax
22   rules.
23           "The term excludes mixed use
24   loans such as a consolidation loan
```

Page 78

```
 1      in the system, but it doesn't have
 2      the label that you were trying to
 3      give it so that's why I answered
 4      the way that I did.
 5          And so now on to your next
 6      question, if you can repeat that.
 7          (Pertinent portion of the
 8      record is read.)
 9          MR. FARRELL:  Objection to
10      form.
11          THE WITNESS:  That flag is
12      the field that says whether
13      they're 1098-E eligible, which
14      1098-E eligible is based on
15      qualified expenses.
16  BY MS. SWANSON:
17      Q.   Do you know what
18  considerations are taken into account in
19  filling out the 1098-E field?
20      A.   Kind of a broad question.
21  Can you get more specific with that?
22      Q.   What does Navient look at
23  when they're filling in the 1098 field?
24      A.   At the time the loan is
```

Page 79

```
 1  made, so let's stay on Mr. Homaidan's
 2  account, he certified in the type of loan
 3  that he had that he certified that he --
 4  this loan was being used for qualified
 5  education and so the flag was turned to a
 6  yes, it's eligible for 1098.
 7          If we get the certification
 8  from the school, they're also certifying
 9  that it's 1098, so then the flag is
10  also a Y.
11          In the case of a career
12  training loan, the school did not certify
13  that it's qualified so it became a no.
14      Q.   Does Navient look at the
15  cost of qualified higher education
16  expenses at each school?  When it
17  originates a loan?
18      A.   No.
19      Q.   Does Navient look at other
20  loans that the borrower has requested
21  during that school year to determine
22  whether or not expenses are qualified
23  higher education expenses?
24      A.   No --
```

Page 80

```
 1      Q.   Does Navient use the term
 2  "cost of attendance" ever?
 3          MR. FARRELL:  Object to the
 4      form.
 5          THE WITNESS:  That phrase is
 6      used, yes.
 7  BY MS. SWANSON:
 8      Q.   So you're familiar with the
 9  term "cost of attendance"?
10      A.   Generally speaking, yes.
11      Q.   Is there any difference
12  between the term "higher education
13  expenses" -- I'm sorry, "qualified higher
14  education expenses" and "cost of
15  attendance" in your mind?
16          MR. FARRELL:  Object to the
17      form.
18          MS. SWANSON:  What's
19      objectionable about that form?
20          MR. FARRELL:  Object to the
21      extent that it calls for a legal
22      conclusion and what might exist in
23      her mind as a personal witness is
24      not particularly relevant.
```

Page 81

```
 1  BY MS. SWANSON:
 2      Q.   Does Navient consider a
 3  qualified higher education expense to be
 4  the same as cost of attendance?
 5          MR. FARRELL:  Object to the
 6      form.
 7          THE WITNESS:  I don't know.
 8  BY MS. SWANSON:
 9      Q.   Is there somebody that
10  would?
11          MR. FARRELL:  Objection to
12      form.
13          THE WITNESS:  I don't know.
14  BY MS. SWANSON:
15      Q.   Does Navient track anywhere
16  in its systems anywhere, the cost of
17  attendance?
18          MR. FARRELL:  Objection,
19      asked and answered.
20          THE WITNESS:  There are -- I
21      have seen on some accounts or on
22      applications themselves that cost
23      of attendance is listed, but as a
24      normal course of business, that's
```



21 (Pages 78 to 81)

Page 82

```
 1      not something that we capture,
 2      it's up to the school or the
 3      customer themselves to make sure
 4      that the expenses is part of the
 5      qualified expense.
 6  BY MS. SWANSON:
 7      Q.   What is the purpose -- why
 8  does Navient track 1098 eligibility?
 9      A.   We're required to by the
10  IRS.
11      Q.   You're required to track
12  10- -- interest by the IRS?
13      A.   We're obligated by the -- to
14  the IRS to report interest that a
15  customer has paid on qualified education
16  loan expenses.
17      Q.   All right.  So if we go back
18  to the document we were just looking at,
19  the loan reporting -- the student --
20  reporting student loan interest.  At the
21  bottom of 37, midway to the bottom:
22           "Qualified higher education
23  expenses are defined by Navient as:
24           "The cost of attending an
```

Page 83

```
 1      eligible educational institution on at
 2      least a half-time basis as determined by
 3      the school in accordance with the Higher
 4      Education Act."
 5           Is that what it says?
 6      A.   Yes.
 7      Q.   Does Navient track anywhere
 8  in its systems the cost of attending an
 9  eligible educational institution as
10  determined by the school?
11           MR. FARRELL:  Objection,
12      asked and answered.
13           THE WITNESS:  As I stated in
14      the last question, we may have
15      that information on some accounts,
16      but it's not typically something
17      that we would capture and store in
18      our system.
19  BY MS. SWANSON:
20      Q.   Okay.  If you turn to the
21  next page of the Student Loan Interest
22  Reporting policy.  It says that the --
23  Applicable Loans, it says:
24           "The guidance in this
```

Page 84

```
 1  bulletin applies to," can you -- can you
 2  tell me what -- what are the applicable
 3  loan -- applicable loans in this
 4  bulletin -- or the guidance -- can you
 5  read for me the Applicable Loan section.
 6      A.   Sure.
 7           "The guidance in the
 8  bulletin applies to FFELP, HEAL and
 9  private loans that meet the definition of
10  a qualified education loan.  If the
11  servicer is unsure whether a loan is a
12  qualified education loan, certification
13  must be obtained from the borrower.  (See
14  section Qualified Education Loans
15  Certification Requirement.)
16           "The guidance in this
17  bulletin does not apply to the following
18  private loans which do not meet the
19  definition of a qualified education
20  loan."
21           And then it lists out
22  approximately ten different loan
23  programs.
24      Q.   And the Tuition Answer Loan
```

Page 85

```
 1  program is not listed on this sheet; is
 2  that right?
 3      A.   That's right.
 4      Q.   Okay.  All right.  Let's --
 5  do you track whether or not -- does
 6  Navient track in its system anywhere
 7  whether or not the certification is made
 8  by the school or the certification is
 9  made by the borrower himself?
10      A.   It definitely tracks if we
11  receive something from the school as far
12  as the school certification.  I don't
13  know about -- we have a date that the
14  borrower signed their promissory note but
15  that's all I'm aware of.  So not
16  specifically that I'm aware of.
17      Q.   Okay.  Does the Tuition
18  Answer Loan application have a place on
19  it for the school to certify?
20      A.   I do not believe so.
21      Q.   Okay.  Did you receive from
22  Mr. Homaidan a separate
23  self-certification other than that that
24  you referenced in his promissory note?
```



22 (Pages 82 to 85)

| Page 110 | Page 111 |
|---|---|
| 1 describe or lay out the process for<br>2 determining dischargeability?<br>3     A. It does. This is specific<br>4 to FDR, so some of the codes that I was<br>5 talking to you about are what CLASS has<br>6 on them, so those Qs and Y and N. FDR<br>7 those fields are slightly different and<br>8 so that's why they're not necessarily<br>9 matching up to the description I gave but<br>10 the -- they were translating into FDR<br>11 codes upon conversion.<br>12     Q. So is this an old procedure?<br>13     A. Well, it definitely -- I<br>14 mean, it's from, I don't -- it looks like<br>15 2016, so this would have been done after<br>16 conversion, but the procedure is not<br>17 different between CLASS and FDR, just the<br>18 identification, those codes that I was<br>19 walking through, are different to what<br>20 we're looking for.<br>21     Q. Right. So in this<br>22 procedure, the discharge analysis begins<br>23 with the school type and ends with the<br>24 1098-E eligibility; isn't that right? | 1     A. That's what it shows here,<br>2 but in the end it gets to the same place.<br>3 You're still using the same decision.<br>4     Q. Well, that's not actually<br>5 true, is it? If you start with the<br>6 school type -- if you start with the<br>7 school type and it is a Title IV school,<br>8 then what happens?<br>9     A. Then you're going to look at<br>10 the 1098-E eligible flag. And then if<br>11 it's in our no example, it's<br>12 dischargeable.<br>13     Q. Do you know what the 0 or 4<br>14 stand for in this particular procedure?<br>15     A. I don't recall.<br>16     Q. And do you know what the 2<br>17 stands for?<br>18     A. I don't. I don't recall.<br>19     Q. Would you agree that there's<br>20 no analysis in this procedure as to the<br>21 cost of attendance?<br>22     MR. FARRELL: Object to the<br>23     form.<br>24     THE WITNESS: There's no -- |
| Page 112 | Page 113 |
| 1     that's correct, there's no<br>2     analysis on cost of attendance.<br>3 BY MS. SWANSON:<br>4     Q. And there's also no analysis<br>5 of whether or not the borrower is a full<br>6 or a part-time student?<br>7     A. Correct.<br>8     Q. At the very top of this<br>9 page 79 of this particular procedure, can<br>10 you tell me what the school types stand<br>11 for?<br>12     A. I do not know.<br>13     Q. You don't know what a School<br>14 Type A is?<br>15     A. I do not.<br>16     Q. Or a School Type B?<br>17     A. No.<br>18     Q. Or a School Type C or D?<br>19     A. I do not.<br>20     Q. Who would know that?<br>21     A. The Pennsylvania Claims team<br>22 that processes these documents.<br>23     Q. Are there other discharge<br>24 procedures for different types of loans | 1 or loan programs or is this the entirety<br>2 of the FDR discharge/charge-off<br>3 procedures?<br>4     A. I believe this is the only<br>5 one.<br>6     Q. All right. The next<br>7 document I'd like you to look at is<br>8 bankruptcy write-offs.<br>9     (Exhibit No. 6,<br>10     Confidential-Bankruptcy<br>11     Write-offs, Bates NAV030082557<br>12     through 82558, was marked for<br>13     identification.)<br>14 BY MS. SWANSON:<br>15     Q. All right. This says that:<br>16     "All bankruptcy write-offs<br>17 are completed by the bankruptcy<br>18 supervisor in the claims department."<br>19     Is that the PA Claims<br>20 department?<br>21     A. Yes.<br>22     Q. And is the bankruptcy<br>23 supervisor John Zemetro?<br>24     A. No. |



Page 118

```
 1  Exhibit 6, which should be in front of
 2  you, titled FDR Chapter Seven and Fraud
 3  Charge Off Procedures.  I think we were
 4  going to go to page 79 at the top of the
 5  page and you were going to describe to
 6  us what the --
 7          MR. FARRELL:  You're asking
 8      about 5, not 6?
 9          MS. SWANSON:  You're right.
10  BY MS. SWANSON:
11      Q.  I do mean 5, not 6.  I'm
12  sorry.
13          Did you get a chance to
14  refresh your memory as to the school
15  types?
16      A.  I did.
17      Q.  All right.  What is School
18  Type A?
19      A.  Title IV, for profit.
20      Q.  Okay.  And School Type B?
21      A.  Title IV, not for profit.
22      Q.  All right.  What is School
23  Type C?
24      A.  Non-Title IV, for profit.
```

Page 119

```
 1      Q.  Okay.  And School Type D?
 2      A.  Non-Title IV, not for
 3  profit.
 4      Q.  All right.  So if you look
 5  at that decision tree up there in 4:
 6          "If the school is Title IV,
 7  profit or nonprofit, then the account is
 8  not eligible for discharge, proceed to
 9  Step 12."
10          Is that what that says?
11      A.  Yes.
12      Q.  And what is Step 12?
13      A.  "Put a note on the account
14  and then" -- "Put a note on the account
15  in our manual freeform chronicle memo via
16  CIS screen to note action taken on
17  account.  Include if Pacer was checked,
18  if the school code is non-Title IV, et
19  cetera."
20      Q.  How could it be if you've --
21  if the -- if the "if" is that the school
22  is Title IV, how could -- in what
23  instance would you go to Step 12 and note
24  something about the school code being
```

Page 120

```
 1  non-Title IV?
 2      A.  It's just an example because
 3  in Step 5 it also tells you to go to
 4  Step 12, so it's just a general note to
 5  give some details about what you saw on
 6  the account.
 7      Q.  Got you.  All right.
 8          So according to this
 9  procedure, if the school type is a
10  Title IV school, whether profit or
11  nonprofit, you don't go into the 1098
12  analysis; is that right?
13      A.  If the school type -- will
14  you repeat that one more time.
15      Q.  If the school type is
16  Title IV, whether or not it's profit or
17  not project, you skip right over the
18  analysis of the 1098-E eligibility?
19      A.  Correct.
20      Q.  So in that instance, would
21  you -- would you analyze at all whether
22  or not the loan is a qualified education
23  loan?
24      A.  So the procedures don't
```

Page 121

```
 1  appear to be clear in that way, but if we
 2  go to the very top of what's in 4, it
 3  says review the school type field at the
 4  top of the screen and the Title IV in
 5  eligibility data at the bottom of the
 6  screen.  So you're looking at both of
 7  those, so that Title IV ineligible date
 8  is also reviewed.
 9      Q.  Does that have something to
10  do with 1098-E eligibility?
11      A.  I don't -- I don't recall
12  this.  This is not something I looked at
13  for this -- preparing for this.
14      Q.  Okay.  So let me ask you
15  another question about if the school type
16  is A or B, meaning that it is a Title IV
17  school, whether or not it's profit or
18  nonprofit, would Navient perform any
19  analysis of qualified higher education
20  expenses?
21      A.  Not independently, no.
22      Q.  Okay.  And the same question
23  if the school type is an A or B, so a
24  Title IV school, whether or not it's
```

Page 142

1  don't have an insurer on these, meaning
2  there's not a third party that we're
3  filing a claim with, so definition-wise
4  in my mind they're self-insured but I
5  don't know if we defined that in any of
6  our procedures.
7      Q.  Okay.  Well, let's talk a
8  little bit about this procedure then.
9          What are the steps in this
10 loan?  I mean, I'm sorry, what are the
11 steps in this procedure and we can again
12 skip over the whether or not there's a
13 cosigner on the loan?
14     A.  So in this case, there was
15 a -- change must be the way that we are
16 originating the loans because we call a
17 distinction between when the loan was
18 disbursed.  At the very top it says:
19         "Career Training Loans with
20 a file date of 10/18/2005 and forward
21 disbursed to a Title IV school are
22 nondischargeable."
23         So this is specifically
24 talking about if the bankruptcy was filed

Page 143

1  prior to, it has one process.  If it was
2  filed after it has a different process.
3      Q.  Okay.  Let's talk about if
4  the bankruptcy filing date is after
5  October 18th of 2005, what's the next
6  step?
7      A.  The next step is to evaluate
8  the 1098-E field and if the 1098-E field
9  is not a no, in this case, so it's a Y, Q
10 or a blank, then the loan is placed back
11 into repayment.  If it's got a no, then
12 we're doing a view to see if it was ever
13 changed.
14     Q.  Okay.  So if the 1098 field
15 is a Q, a Y or a blank, in this procedure
16 we don't go to the next step of looking
17 at 1098 eligibility at all; is that
18 correct?
19     A.  I don't see a reference to
20 it here.
21     Q.  Okay.  And then what happens
22 if the 1098 field on the screen in this
23 particular procedure that we've marked as
24 Exhibit 8, what if that's an N?

Page 144

1      A.  We're evaluating whether or
2  not that flag was ever a Y or a Q and if
3  it was ever a Y or a Q then the loan is
4  not discharged.  If it was never a Y or a
5  Q, then it's discharged.  However, in
6  this one, there's also reference to the
7  school type being looked at.
8      Q.  Only in the event that the
9  flag has never changed from Q or Y to an
10 N, correct?
11     A.  Correct.
12     Q.  All right.  So, again, with
13 this procedure there's no further
14 analysis of whether or not the loans
15 proceeds were used for a qualified higher
16 education expense?
17     A.  There is, in the case of a
18 no, based off of the 1098-E eligible
19 flag.
20     Q.  Okay.  There's no analysis
21 of cost of attendance of a full- or
22 part-time student in that analysis, is
23 there?
24     A.  No.

Page 145

1      Q.  If you look at the Step 3,
2  if -- if the 1098 field is an N and has
3  never been anything but an N, then the
4  next step is to look at whether or not
5  the school type is A or B or C or D,
6  correct?
7      A.  Yes.
8      Q.  And if you determine that
9  the 1098 field has never been anything
10 but an N, and the school type is A or B,
11 meaning that it's Title IV, whether it's
12 for profit or not, then you proceed to
13 Step 4 to determine if the loan is
14 dischargeable?
15     A.  Yes.
16     Q.  So can you describe what
17 those two steps in Step 4 are, if first
18 notice discharge is received and the loan
19 is deemed dischargeable then?
20     A.  We're looking at the first
21 notice discharge is received and it's
22 determined to be dischargeable, then we
23 are going to submit the account for
24 write-off.

Page 150

1  A. Because in both procedures
2  you're looking at both the 1098-E flag as
3  well as the school type.
4  Q. Except for in the procedure
5  number -- that's Exhibit No. 5. Let's
6  look at that.
7  A. Right, but we also -- I'm
8  also not able to tell you with certainty
9  whether Procedure No. 7 replaces 5
10 because this has an earlier date.
11 Q. Right. But they have
12 different titles?
13 A. Yes.
14 Q. Okay. So do you know who it
15 would be -- if I had this question
16 continuing after today, which I suspect I
17 might, would I talk to PA Claims,
18 somebody at PA Claims about these
19 different procedures or what would you
20 recommend as the next step to figure out
21 which procedures are followed in
22 determining dischargeability of Tuition
23 Answer Loans?
24 A. PA Claims is responsible for

Page 151

1  these procedures.
2  Q. Okay. So would that be --
3  would there be a particular person I
4  would talk to at PA Claims or would it be
5  Zemetro?
6  A. Probably Zemetro.
7  Q. Okay. Are there certain
8  loans that are never qualified education
9  loans?
10 A. Yes, I believe there was a
11 listing of some of those in one of the
12 other policy documents we reviewed.
13 Q. Right. That was in the
14 reporting student interest policy.
15     Is that the only place where
16 nonqualified education loans are listed
17 that you're aware of?
18 A. I don't know if it's listed
19 elsewhere.
20 Q. You don't know if it's
21 listed elsewhere?
22 A. I don't.
23 Q. Are you familiar with the
24 terms "school certified" or "school

Page 152

1  channel"?
2      MR. FARRELL: I'm sorry,
3      what was the second one?
4      MS. SWANSON: School
5      channel.
6      THE WITNESS: School
7      certified, yes. School channel,
8      maybe. I've heard the term.
9  BY MS. SWANSON:
10 Q. Do you think those two terms
11 mean the same thing?
12 A. I believe so.
13 Q. All right. And what is your
14 understanding of those terms? Do you
15 have an understanding as to those terms?
16 A. When -- there's two
17 different ways that the private loans can
18 be made, one was the Tuition Answer
19 program, which is direct-to-consumer, and
20 so that case the school is not involved
21 in the certification process.
22     In the other loan programs,
23 many of our other private loan programs
24 the school is involved in certifying and

Page 153

1  so those would go through a school
2  channel or a school certification
3  process.
4  Q. Okay. Are you -- are there
5  any other education loans other than
6  Tuition Answer Loans that are considered
7  to be direct-to-consumer loans?
8  A. I believe the Bar Study Loan
9  is one.
10 Q. Are there any others?
11 A. I don't know.
12 Q. Is it your testimony that
13 Navient does not -- well, let me just ask
14 you, does Navient track cost of
15 attendance for any of its loans?
16 A. We may have instances where
17 we have cost of attendance in our
18 records, but other than that, a normal
19 course of business it's not something
20 that we would always keep or even have
21 access to.
22 Q. Okay. So you wouldn't have
23 it for all school channel borrowers?
24 A. Correct.

|  | Page 158 | Page 159 |
|---|---|---|

**Page 158**

1  A. We pulled the FICO or the
2 credit score information as a part of our
3 underwriting, and then there may be cases
4 where it isn't an auto decision, meaning
5 we didn't say yes or didn't say no from
6 the beginning, that we would look for
7 more details on the credit bureau report.
8  Q. And would there be fields in
9 Navient's systems to track that
10 additional information that you're
11 looking at from a credit report?
12  A. Fields, you're meaning so
13 it's something you can run a query
14 against?
15  Q. Yes.
16  A. No, I do not believe so.
17  Q. Are you familiar with
18 Navient's data tables?
19  A. Some, yes.
20  Q. Did you prepare for today --
21 did you look at any data tables to
22 prepare for today?
23  A. No.
24  Q. Okay. How do you have

**Page 159**

1 knowledge of the data tables?
2  A. Before -- until about two
3 years ago I had a team that was
4 responsible for pulling data used for
5 cases like this or for other cases that
6 we have.
7  Q. Okay. Are you familiar with
8 data tables where origination information
9 would be stored?
10  A. Some.
11  Q. Okay. Does Navient make
12 loans to borrowers who are attending
13 school less than half time?
14  A. Tuition Answer or any loans?
15  Q. Any loans.
16  A. Yes.
17  Q. Are they all Tuition Answer
18 Loans?
19  A. No.
20  Q. Are they -- so does Navient
21 make student loans or loans for education
22 to borrowers for attending school less
23 than half time?
24  A. I'll go back to the Bar

**Page 160**

1 Study Loan. That person is not in school
2 at all when we loan them that money.
3  Q. Okay. So the two categories
4 that you can think of would be Tuition
5 Answer and Bar Study?
6  A. I don't recall saying
7 Tuition Answer.
8  Q. Oh, okay. Can you think of
9 any other examples of loans that are made
10 to borrowers who are attending school
11 less than half time?
12  A. I believe our policy
13 requires that the student be attending at
14 least half time before they get --
15 generally speaking before they get
16 student loans.
17  Q. Okay. Do you know whether
18 Navient has a field in their systems that
19 indicates whether or not a borrower is an
20 in-state or out-of-state resident for
21 purpose of tuition and fees?
22  A. I do not know.
23  Q. Okay. Can you describe the
24 Tuition Answer Loan program, please?

**Page 161**

1  A. Just general information?
2  Q. Yes.
3  A. Tuition Answer Loan program
4 is a loan program that is made to --
5 directly to students who are going to
6 school or it could be made to a person
7 that is taking a loan out on behalf of
8 the student. So a parent or other
9 dependent.
10  Q. Okay.
11  A. Direct to consumer.
12  Q. What do you mean by direct
13 to consumer in this instance?
14  A. In this instance it means
15 that the school is not involved in the
16 certification process.
17  Q. Okay.
18  A. And the loan proceeds are
19 sent directly to the customer.
20  Q. In all Tuition Answer Loans?
21  A. Yes, I believe so.
22  Q. So the Tuition Answer Loan
23 doesn't require a school certification at
24 all?



Page 162

1     A.  It does not, no.
2     Q.  Okay.  All right.  I've got
3 Exhibit No. -- what are we at, 9?
4         THE REPORTER:  Yes.
5         (Exhibit No. 9, Document
6     entitled, Sallie Mae Tuition
7     Answer Loan, was marked for
8     identification.)
9         THE WITNESS:  Can I have a
10     break?
11         MR. FARRELL:  Of course you
12     may.
13         (Recess called at 2:11 PM to
14     2:19 PM.)
15         MR. FARRELL:  She wanted to
16     clarify the last answer she gave
17     you about whether in a Tuition
18     Answer Loan the school certifies,
19     I think she wanted to clarify
20     something.
21         Is that the point?
22 BY MS. SWANSON:
23     Q.  Okay.
24     A.  That's the one.  So you

Page 163

1 asked the question whether the school has
2 to certify the Tuition Answer Loan, and
3 my answer was, no, as it relates to the
4 cost of education, we don't ask for them
5 to certify that.  But we do require that
6 we get information from the school
7 through the borrower about their
8 enrollment information, so whether
9 they're enrolled in school or not.
10     Q.  For a Tuition Answer Loan?
11     A.  Yes.
12     Q.  Okay.  All right.  I wanted
13 to go back to, I think it's
14 Exhibit No. 3, it's that reporting
15 student interest document.
16         Can you look at page 937,
17 and look at the definition or the key
18 term "qualified higher education
19 expenses."
20         So is this now the
21 definition of qualified higher education
22 expenses?
23     A.  In this document, yes.
24     Q.  So -- okay.  If we could

Page 164

1 then move on to Exhibit 9 I just showed
2 you.
3         First, can you tell me what
4 is your understanding of what the cost of
5 attending an eligible educational
6 institution on at least a half-time basis
7 as determined by the school in accordance
8 with the Higher Education Act, that
9 definition of qualified higher education
10 expenses, what do you understand it to
11 include?
12     A.  I'm sure I won't give an
13 all-inclusive list, but it would be -- I
14 think the IRS actually spells out on
15 what's included, but it would be tuition,
16 fees, books, living expenses.  I believe
17 it also covers travel to school back and
18 forth.
19     Q.  Okay.
20     A.  I'm sure that's not an
21 exhaustive list.
22     Q.  Sure.  But if you turn to
23 this Tuition Answer Loan promotional
24 material, this says over here on the

Page 165

1 right, right-hand corner and down it
2 says:  "What does the Tuition Answer Loan
3 cover?"  The last one listed there is:
4 "Fraternity, sorority or club dues."
5         Do you think that those are
6 included within Navient's definition of
7 qualified higher education expenses?
8     A.  I don't know.
9     Q.  Do you think that the Higher
10 Education Act contemplated fraternity and
11 sorority dues in its definition of
12 qualified higher education expenses?
13         MR. FARRELL:  Objection to
14     form.
15         THE WITNESS:  I don't know.
16 BY MS. SWANSON:
17     Q.  Okay.  Are you familiar with
18 the requirements for receipt of the
19 Tuition Answer Loan?
20     A.  Generally, yes.
21     Q.  Okay.
22         MS. SWANSON:  I'm going to
23     present you with Exhibit 10.
24         (Exhibit No. 10,

```
                                                    Page 166
 1      Confidential-Instructions for
 2      completing the Tuition Answer Loan
 3      application, Bates NAV0500000298
 4      through 319, was marked for
 5      identification.)
 6              THE WITNESS:  Okay.
 7   BY MS. SWANSON:
 8      Q.   Okay.  On this first page,
 9   it lists some student musts, and then the
10   third student must is that a student must
11   be enrolled at least half time in a
12   degree or certificate granting program at
13   a participating Title IV eligible degree
14   granting institution.
15              Do you know the reason that
16   a borrower must be enrolled at least
17   half-time in the degree or certificate
18   granting program at a participating Title
19   IV eligible degree granting institution?
20      A.   I can't tell you the
21   background on why we put that in our
22   requirements.
23      Q.   Okay.  Do you know why the
24   loan limits listed here at the bottom of
```

```
                                                    Page 167
 1   the page reference cost of attendance?
 2      A.   I don't.
 3      Q.   And Navient doesn't do any
 4   analysis of the cost of attendance, do
 5   they?
 6      A.   No.
 7      Q.   Do you know why that this
 8   instructions for completing the Tuition
 9   Answer Loan application would dictate
10   that the maximum loan limit is $40,000 a
11   year to cover any qualified higher
12   education expense?
13      A.   I don't have all of the
14   background on why we picked that amount
15   of money, but I'm sure it was a credit
16   risk decision.
17      Q.   All right.  Would you turn
18   to the page that ends with 312?
19              There's an application
20   checklist.  I'd like you to look at that
21   and tell me whether or not you see any
22   requirement in the application checklist
23   having to do with calculated cost of
24   attendance.
```

```
                                                    Page 168
 1      A.   It's not in the checklist,
 2   no, but it's listed elsewhere.
 3      Q.   Where we just looked on the
 4   first page?
 5      A.   And on the application
 6   itself.
 7      Q.   Where else on the
 8   application is it referenced?
 9      A.   Page Bates stamped 15, in
10   the "top loan requested amount" in
11   parentheses in that first line it says:
12   "Depending on the type of school, it may
13   not exceed the estimated cost of
14   attendance."
15      Q.   But Navient doesn't ask for
16   the estimated cost of attendance; is that
17   correct?
18      A.   No, we ask the borrower to
19   certify that it's not above the cost of
20   attendance.
21      Q.   Where is that certification
22   found?
23      A.   There's information -- well,
24   obviously this a part of what they're
```

```
                                                    Page 169
 1   filling out, so when they sign it they're
 2   certifying that everything is true to the
 3   best of their knowledge, and then there's
 4   some reference in, I believe it's in Q?
 5   I saw it just a minute ago.
 6              23.  It does -- in this one
 7   I thought it mentioned the cost of
 8   attendance.  I was wrong.
 9      Q.   Okay.
10              MR. FARRELL:  You were
11      looking at Q2 though.
12              THE WITNESS:  I was looking
13      at Q2.  That's where they're
14      saying they're using it for a
15      qualified education loan.
16   BY MS. SWANSON:
17      Q.   All right.  Do you see any
18   requirement in the application checklist
19   having to do with qualified higher
20   education expenses?
21      A.   Not in the checklist, no.
22      Q.   And do you see it elsewhere
23   in this application?
24      A.   Yes, in the loan request
```

### Page 174

1  of our application process had to have
2  happened, either the customer certified
3  it through the loan application or the
4  school certified it if it was through the
5  school.
6      Q.   Okay.  Are there any other
7  documents that Navient has in its
8  possession other than this promissory
9  note and loan application for
10 Mr. Homaidan that -- other than those two
11 spots that you mentioned, Q2 and in the
12 net loan proceeds, is there any other
13 documents that you have where he
14 self-certified his loan as a qualified
15 higher education loan?
16         MR. FARRELL:  Object to the
17     form.  She said those were two
18     places that she was --
19     specifically pointed out on the
20     application.  She said there could
21     be other places in the
22     application.  But I understand
23     your question to be is there
24     anyplace other than the promissory

### Page 175

1     note and the application.
2         MS. SWANSON:  Correct.
3         THE WITNESS:  Not that I'm
4     aware of.
5  BY MS. SWANSON:
6      Q.   Okay.  You mentioned that --
7  scratch that.
8         And I think we've gone over
9  this, but is there any analysis done
10 after a borrower declares bankruptcy to
11 determine whether the loan is a qualified
12 education loan other than the 1098-E
13 categorization?
14     A.   No.
15     Q.   So is there any analysis
16 done after a borrower declares bankruptcy
17 to determine whether the borrower was
18 less than a half-time student?
19     A.   No, but the loan couldn't
20 have been made if he was less than half
21 time.
22     Q.   Pursuant to these
23 instructions on the Tuition Answer Loan?
24     A.   Correct.

### Page 176

1      Q.   Right.  Is there any
2  analysis done after a borrower declares
3  bankruptcy to determine whether the loan
4  was provided for qualified higher
5  education expenses except for the
6  categorization in the 1098-E field?
7      A.   After the bankruptcy is
8  filed?
9      Q.   Yes.
10     A.   No.
11     Q.   And is there any analysis
12 done after a borrower declares bankruptcy
13 to determine whether the loan was within
14 the cost of attendance?  Other than the
15 1098-E eligibility field.
16     A.   No.
17     Q.   Okay.  I'm going to show you
18 Mr. Homaidan's Tuition Answer Loan
19 application, and this is for a loan
20 line -- Loan 9.
21         (Exhibit No. 11,
22     Confidential-Loan 9, Bates
23     NAVHOM20000030 through 40, was
24     marked for identification.)

### Page 177

1  BY MS. SWANSON:
2      Q.   So did you get a chance to
3  look at this document before this
4  deposition today?
5      A.   Yes.
6      Q.   All right.  This application
7  is for a Tuition Answer Loan, correct?
8      A.   Yes.
9      Q.   Is this the particular
10 Tuition Answer Loan that you said that
11 you did look at?
12     A.   Yes.
13     Q.   Okay.  And you see on his
14 application just like the blank
15 application we just looked at on Bates
16 No. 33 at the top, it says that the loan
17 may not exceed the estimated cost of
18 attendance, correct?
19     A.   Yes.
20     Q.   There's no further
21 certification in this document that
22 you're aware of as to the cost of
23 attendance, is there?
24     A.   We defined that it's got to