# Exhibit R

to

Declaration of George F. Carpinello

Case 1-17-01085-ess Doc 240-18 Filed 05/08/20 Entered 05/08/20 16:04:29

**THIS OFFERING MEMORANDUM IS BEING PROVIDED ONLY TO (1) "QUALIFIED INSTITUTIONAL BUYERS" ("QIBs") AS DEFINED IN RULE 144A ("RULE 144A") PROMULGATED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR (2) NON-U.S. PERSONS OUTSIDE THE UNITED STATES OF AMERICA PURSUANT TO THE REQUIREMENTS OF REGULATION S PROMULGATED UNDER THE SECURITIES ACT ("REGULATION S"). REPRODUCTION OR FURTHER DISTRIBUTION OF THIS OFFERING MEMORANDUM IS FORBIDDEN. THIS OFFERING OF THE NOTES DESCRIBED IN THIS OFFERING MEMORANDUM WILL NOT BE REGISTERED UNDER THE SECURITIES ACT, ANY UNITED STATES STATE SECURITIES OR "BLUE SKY" LAWS OR ANY SECURITIES LAWS OF ANY OTHER JURISDICTION.**

# OFFERING MEMORANDUM
## $589,818,000
## SLM Private Education Loan Trust 2009-CT
Issuing Entity

## SLM Funding LLC
Depositor

## Sallie Mae, Inc.
Sponsor, Servicer and Administrator

## Student Loan-Backed Notes

On December 10, 2009, the trust will issue:

| Class | Principal | Interest Rate | Maturity |
|---|---|---|---|
| **Group I** | | | |
| Floating Rate Class I-A Notes | $391,243,000 | Prime Rate minus 0.90% | April 15, 2039 |
| **Group II** | | | |
| Floating Rate Class II-A Notes | $198,575,000 | One-Month LIBOR plus 1.85% | April 15, 2039 |

The trust will make payments primarily from collections on a pool of career training loans which consists generally of (i) one group of career training loans that bear interest based on the prime rate and (ii) one group of career training loans that bear interest based on LIBOR. Career training loans are education loans generally made to students or parents of students to help finance trade school education, private kindergarten through secondary school education, pre-college tutorial programs, part-time community college and continuing education programs as well as internet-based education programs. No career training loans are guaranteed or reinsured under the Federal Family Education Loan Program or any other federal student loan program. Interest and principal on the notes in each group will be payable on the 15th day of each calendar month, beginning in January 2010. Credit enhancement for the notes in each group consists of overcollateralization from the student loans in the related group, cash on deposit in a related reserve account for each group and limited cross-collateralization from the other group, as described in this offering memorandum. These funds will be available only for a limited period of time. The interest rate on the class I-A notes will be determined by reference to the prime rate and the interest rate on the class II-A notes will be determined by reference to LIBOR. A description of how the prime rate and LIBOR are determined appears under "*Description of the Notes—Interest*" in this offering memorandum.

On the closing date, any notes represented by interests in a Rule 144A global note will constitute "eligible collateral" under the Term Asset-Backed Securities Loan Facility ("TALF") provided by the Federal Reserve Bank of New York. The notes and the trust student loans will satisfy all applicable criteria for securities relating to "private student loans" under TALF. If you want to obtain a loan from the Federal Reserve Bank of New York under TALF, you should consult with your financial and legal advisers regarding the program requirements of, eligibility for, and related legal and economic risks in connection with, TALF loans.

Other than as provided in this offering memorandum, no person has been authorized to give any information or to make any representations other than as contained in this offering memorandum and, if given or made, such information or representations must not be relied upon. This offering memorandum does not constitute an offer to sell, or a solicitation of an offer to buy, any securities other than the notes, nor an offer of such securities to any person in any state or other jurisdiction in which it is unlawful to make such offer or solicitation. The delivery of this offering memorandum at any time does not imply that the information in this offering memorandum is correct as of any time subsequent to its date. This offering memorandum should be read in conjunction with the attached base offering memorandum, which is an integral part hereof.

**The notes have not been approved or disapproved by the Securities and Exchange Commission, any state securities commission or any other regulatory authority, nor have any of the foregoing authorities passed upon or endorsed the merits of this offering or the accuracy or adequacy of this offering memorandum. Any representation to the contrary is a criminal offense.**

The information contained in this offering memorandum is intended for use solely by QIBs as defined in Rule 144A or non-U.S. Persons outside the United States pursuant to the requirements of Regulation S to whom this document is delivered, and may not be reproduced in whole or in part.

We are offering the notes through the initial purchasers when and if issued. Application has been made for the notes to be listed on the Official List of the Luxembourg Stock Exchange and to be traded on the Luxembourg Stock Exchange's Euro MTF Market.

We are not offering the notes in any state or other jurisdiction where the offer is prohibited.

You should consider carefully the risk factors beginning on page 15 of this offering memorandum and on page 19 of the attached base offering memorandum.

The notes are asset-backed securities issued by and are obligations of the issuing entity, which is a trust. They are not obligations of or interests in SLM Corporation, the sponsor, administrator, servicer, depositor, the seller or any of their affiliates.

The notes are not guaranteed or insured by the United States or any governmental agency.

**Initial Purchasers and Joint Book-Runners**

**Deutsche Bank Securities**　　　　　　　　　　　　**J.P. Morgan**

December 2, 2009

CONFIDENTIAL

NAV160004510
NAVHOM01105504

| | |
|---|---|
| *Withdrawal Or Downgrade Of Initial Ratings May Decrease The Prices Of Your Notes* | The offering memorandum supplement for your notes will specify the minimum required ratings for the notes. A security rating is not a recommendation to buy, sell or hold securities. Similar ratings on different types of securities do not necessarily mean the same thing. A rating agency may revise or withdraw its rating at any time if it believes circumstances have changed. A subsequent downgrade in the rating on your notes is likely to decrease the price a subsequent purchaser will be willing to pay for your notes. |
| *An Issuing Entity May Be Affected By Delayed Payments From Borrowers Called To Active Military Service* | The Servicemembers Civil Relief Act and similar state and local laws provide payment relief to borrowers who enter active military service and to borrowers in reserve status who are called to active duty after the origination of their trust student loans. Recent and ongoing military operations by the United States have increased the number of citizens who are in active military service, including persons in reserve status who have been called or may be called to active duty.<br><br>We do not know how many trust student loans have been or may be affected by the application of these laws. As a result, there may be unanticipated delays in payment and losses on the trust student loans. |
| *Consumer Protection Laws May Affect Enforceability Of Student Loans* | Numerous federal and state consumer protection laws, including various state usury laws and related regulations, impose substantial requirements upon lenders and servicers involved in consumer finance. Some states impose finance charge ceilings and other restrictions on certain consumer transactions and require contract disclosures in addition to those required under federal law. These requirements impose specific statutory liability that could affect an assignee's ability to enforce consumer finance contracts such as the student loans. In addition, the remedies available to the indenture trustee or the noteholders upon an event of default under the indenture may not be readily available or may be limited by applicable state and federal laws. |
| *Risk Of Bankruptcy Discharge Of Private Credit Student Loans* | Private credit student loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy. Private credit student loans can become dischargeable if the borrower proves that keeping the loans non-dischargeable would impose an undue hardship on the debtor and the debtor's dependents. In addition, direct-to-consumer loans are disbursed directly to the borrowers |

27

CONFIDENTIAL

|  | based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that the loans are not used for qualified education expenses. If you own any notes in a related issuing entity, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the issuing entity's credit enhancement. |
|---|---|
| *Subordinated Noteholders May Not Be Able To Direct The Indenture Trustee Upon An Event Of Default Under The Indenture* | If specified in the related offering memorandum supplement, and an event of default occurs under the indenture, only the holders of the controlling class of notes, which is defined as the holders of the then outstanding class or classes of the most senior notes, will be able to waive that event of default, accelerate the maturity dates of the notes or direct any remedial action under the related indenture. In this event, the holders of any outstanding subordinated class or classes of notes will not have any rights to direct any remedial action until each more senior class of notes has been paid in full. |
| *In The Event Of An Early Termination Of A Swap Agreement Due To Certain Swap Termination Events, An Issuing Entity May Be Required To Make A Large Termination Payment To Any Related Swap Counterparty* | To the extent described in the related offering memorandum supplement, when a class of notes bears interest at a fixed rate, an issuing entity may enter into one or more interest rate swap agreements to hedge basis risk.<br><br>A swap agreement generally may not be terminated except upon the occurrence of enumerated termination events set forth in the applicable swap agreement which will be described in the related offering memorandum supplement. Depending on the reason for the termination, however, a swap termination payment may be due from either the issuing entity or the related swap counterparty.<br><br>If a termination event under any of these swap agreements occurs and the issuing entity owes the related swap counterparty a large termination payment that is required to be paid pro rata with interest due to the related notes, the issuing entity may not have sufficient available funds on that or future distribution dates to make required payments of interest or principal, and the holders of all classes of notes may suffer a loss. |

28