

October 5, 2021

<u>**VIA ECF**</u>
Hon. Elizabeth S. Stong
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

  Re: *Homaidan v. SLM Corporation. et al.,* Adv. Pro. No. 17-1085-ESS

**Dear Judge Stong:**

  We write in response to Defendant Navient's notice of supplemental authority attaching Judge Schofield's recent decision in *DiDonato v. GC Services Limited Partnership, et al.*, 1:20-cv-2154 (LGS) (S.D.N.Y.).

  We believe that this decision was wrongly decided for several reasons:

  *First*, as this Court is aware, 11 U.S.C. § 727 provides that a Chapter 7 discharge order discharges all debts unless those debts come within the expressed terms of § 523. It is clear that creditors – and not the debtor – bear the burden of proving that a debt is exempt from discharge, including as exempt from discharge under § 523(a)(8). That section provides that a private student loan is nondischargeable if, and only if, it is a qualified education loan under the Internal Revenue Code and the Higher Education Act, *i.e.*, the loan must be made to a student who attends a Title IV institution and the loan must not exceed the cost of attendance. Even though there was ample evidence that Mr. DiDonato's loans clearly exceeded cost of attendance, Judge Schofield implied, but did not expressly hold, that Mr. DiDonato could not argue the loans were dischargeable because certain boilerplate language in his promissory note stated that the loans were qualified education loans and because he acknowledged that he was using the loans for educational purposes. Judge Schofield implied that Mr. DiDonato should not have accepted the money, or even should have given some of the money back, to the extent that some of the funds may have exceeded the cost of attendance.

  The underlying premise of this reasoning is incorrect. A student may accept a loan for educational and living expenses, but the student is not certifying that the loan comes within the technical meaning of "qualified education loan" and "cost of attendance" as strictly defined in § 523(a)(8)(B) of the Bankruptcy Code and the related definitions in the



Hon. Elizabeth S. Stong
October 5, 2021
Page 2

Internal Revenue Code and the Higher Education Act. Indeed, no lay person would have the ability to do that, or even know what the technical terms "qualified education loan" or "qualified education expenses" mean.

Further, to the extent that the boilerplate asserts that the loan is a "qualified education loan as described in § 221(d)(1) of the Internal Revenue Code of 1996, 26 U.S.C. § 221(d)(1), and that therefore this loan is not dischargeable in bankruptcy," such language is legally irrelevant to the issue of dischargeability. It constitutes a pre-bankruptcy waiver of dischargeability and is against public policy. *Golden v. J.P. Morgan Chase (In re Golden)*, 596 B.R. 239, at 267 (Bankr. E.D.N.Y. 2019); *Greensward, Inc. v. Cietek (In re Cietek)*, 390 B.R. 773, 779–80 (Bankr. N.D.N.Y. 2008) ("The court concurs with Levinson and its progeny that a pre-petition waiver of dischargeability of a debt is against public policy."); s*ee* Dkt. 86 at 15-19. As a matter of evidentiary fact, a student loan either comes within the terms of § 523(a)(8)(B) or it does not. A loan can be for educational purposes and still not be a "qualified education loan" under § 523(a)(8). The boilerplate language in the promissory note cannot convert a dischargeable loan into a nondischargeable one and there is no principle of estoppel recognized in bankruptcy law that would allow for such a conversion.

*Second*, the *DiDonato* court held that it would not certify a class under Rule 23(b)(1) because individual class members could not opt out to receive individual damages. That was factually incorrect since the plaintiff in that case, as in this case, is not proposing a non-opt out class. As in any class action providing for monetary recovery, class members in this case would receive written notice of a proposed settlement and would have the ability to opt out.

*Third*, the *DiDonato* court held that individual issues would predominate. First, issues of predominance do not apply to the separate Rule 23(b)(2) class asserted here. Also, contrary to the court's conclusion, none of the individual issues would require a minitrial. Each individual student's cost of attendance and whether they attended a Title IV school are all objective facts that can be determined from Navient's own records and from other sources. None of the individual issues involves degrees of harm or intent or any other personalized measure, like a class member's reliance. The predominance inquiry is supposed to evaluate the *quality* of the common and individual issues, not the quantity, to determine if common issues predominate such that the class action device obtains some efficiencies over separate, individual trials. The *DiDonato* court never undertook that analysis. Instead the *DiDonato* court ignored the substantial caselaw to the effect that



individual issues should not defeat class certification where common issues predominate. *See* Dkt. 169, at 29-33; Dkt. 218, at 16-18.

*Finally*, without any analysis at all, the *DiDonato* court concluded that the class definition proposed in that case constituted a fail-safe class. A fail-safe class is a class that is defined in terms of the legal issues to be determined. The *DiDonato* court erred because the proposed class in that case was defined using objective, factual criteria. In any event, the proposed class here is defined solely by objective facts, not legal conclusions (*see* Dkt. 218, at 21-23), and even if the class were fail-safe, the remedy would be to redefine the class, not deny certification. *See* Rule 23(c)(1)(C).

For all the foregoing reasons, we believe that the decision in *DiDonato* should not be followed in this case.

Respectfully submitted,

/s/ *George F. Carpinello*
George F. Carpinello

GFC/slb

cc via ECF: Counsel of Record