UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HALIL HOMAIDAN aka Helal K. Homaidan<br><br>            Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>            Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HALIL HOMAIDAN on behalf of himself and all others similarly situated,<br><br>and<br><br>REEHAM YOUSSEF,<br><br>            Plaintiffs,<br><br>  v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>            Defendants. | Adv. Pro. No. 17-1085 |

## **PLAINTIFFS' NOTICE OF MOTION FOR A TEMPORARY RESTRAINING ORDER**

TO ALL PARTIES:

      **PLEASE TAKE NOTICE**, that a hearing on the motion will be held before the

Honorable Elizabeth S. Stong, United States Bankruptcy Judge in the United States Bankruptcy

Court for the Eastern District of New York, 271-C Cadmen Plaza East, Room 3585, Brooklyn,

New York 11201 on May 11, 2022, at 12:00 p.m. or as soon thereafter as counsel may be heard.

Any responses or objections to the motion must be in writing and shall conform to the Federal

Rules of Civil Procedure and the local bankruptcy rules of the Eastern District of New York and

shall be filed with the bankruptcy court and served so as to be received by May 4, 2022.

Dated:  April 7, 2022                    Respectfully submitted,


**BOIES SCHILLER FLEXNER LLP**

By: _/s/ George F. Carpinello_

George F. Carpinello
Adam R. Shaw
Jenna C. Smith
30 South Pearl Street
Albany, NY  12207
(518) 434-0600

**JONES, SWANSON, HUDDELL &
GARRISON, L.L.C.**
Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170


*Counsel for Plaintiffs Hilal Homaidan and Reeham
Youssef*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HALIL HOMAIDAN aka Helal K. Homaidan<br><br>                  Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>                  Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HALIL HOMAIDAN on behalf of himself and all others similarly situated,<br><br>and<br><br>REEHAM YOUSSEF,<br><br>                  Plaintiffs,<br><br>   v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>                  Defendants. | Adv. Pro. No. 17-1085 |

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 2

   A.  Plaintiff Hilal Homaidan.................................................................................................. 2

   B.  Plaintiff Reeham Youssef ............................................................................................... 3

   C.  Relevant Procedural History ........................................................................................... 5

ARGUMENT .............................................................................................................................. 5

   I.   LEGAL STANDARD ................................................................................................. 5

   II.  PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER
         TO PROTECT THE PUTATIVE CLASS FROM NAVIENT'S UNLAWFUL
         COLLECTION EFFORTS. ........................................................................................ 6

      A.  Plaintiffs Need Not Show Irreparable Harm. ......................................................... 6

      B.  In Any Event, Plaintiffs and the Proposed Class Continue to Suffer Irreparable
          Injury in the Absence of a Temporary Restraining Order....................................... 7

      C.  Plaintiffs are Likely to Succeed on the Merits. ..................................................... 10

      D.  The Balance of the Hardships Tips in Favor of Plaintiffs and the Putative Class.  12

CONCLUSION...................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3M Company v. CovCare, Inc.*,
   No. 21-CV-01644, 2021 WL 7162292 (E.D.N.Y. Apr. 7, 2021) ............................................. 6

*Abdi v. Duke*,
   280 F. Supp. 3d 373 (W.D.N.Y. 2017) .................................................................................... 13

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015) ..................................................................................................... 6

*Britestarr Homes, Inc. v. City of New York* (*In re Britestarr Homes, Inc.*),
   368 B.R. 106 (Bankr. D. Conn. 2007) ...................................................................................... 6

*Bronsdon v. Educ. Credit Mgmt. Assoc.* (*In re Bronsdon*),
   435 B.R. 791 (1st Cir. BAP. 2010) ......................................................................................... 10

*Daniel v. Oaks and Johnson* (*In re Daniel*),
   98 B.R. 73 (Bankr. M.D. Fla. 1989) ..................................................................................... 8, 9

*Diaz v. Heavy Action Recovery* (*In re Diaz*),
   526 B.R. 685 (Bankr. S.D. Tex. 2015) ................................................................................. 7, 9

*DiGeronimo v. Weissberg* (*In re DiGeronimo*),
   354 B.R. 625 (Bankr. E.D.N.Y. 2006) ................................................................................... 11

*Dodge v. Cty. of Orange*,
   209 F.R.D. 65 (S.D.N.Y. 2002) ............................................................................................. 13

*Eastern Airlines, Inc. v. Rolleston* (*In re Ionosphere Clubs, Inc.*),
   111 B.R. 423 (Bankr. S.D.N.Y. 1990) ..................................................................................... 6

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ..................................................................................................... 7

*Fish v. Kobach*,
   189 F. Supp. 3d 1107 (D. Kan. 2016) .................................................................................... 13

*Fisher v. Apostolou*,
   155 F.3d 876 (7th Cir. 1998) ................................................................................................... 7

*Garcia v. Yonkers Sch. Dist.*,
   561 F.3d 97 (2d Cir. 2009) ....................................................................................................... 5

*Garrity v. Leffler* (*In re Neuman*),
71 B.R. 567 (S.D.N.Y. 1987) .................................................................... 7

*Golden v. JPMorgan Chase Bank* (*In re Golden*),
596 B.R. 239 (Bankr. E.D.N.Y. 2019) ..................................................... 11

*Grogan v. Garner*,
498 U.S. 279 (1991) ................................................................................ 10

*HarperCollins Publishers L.L.C. v. Gawker Media LLC*,
721 F. Supp. 2d 303 (S.D.N.Y. 2010) ....................................................... 5

*In re Haroon*,
313 B.R. 686 (E.D. Va. 2004) ........................................................... 10, 11

*J.O.P. v. U.S. Dep't of Homeland Security*,
409 F. Supp. 3d 367 (D. Md. 2019) ......................................................... 13

*LaForest v. Former Clean Air Holding Co.*,
376 F.3d 48 (2d Cir. 2004) ...................................................................... 13

*Lee v. Orr*,
No. 13-cv-8719, 2013 WL 6490577 (N.D. Ill. Dec. 10, 2013) ............... 13

*Ligon v. City of New York*,
925 F. Supp. 2d 478 (S.D.N.Y. 2013) ..................................................... 13

*Lopez v. New York City*,
No. 17-CV-3014, 2018 WL 11385136 (S.D.N.Y. Dec. 21, 2018) ............. 6

*LTV Steel Co., Inc. v. Bd. of Educ.* (*In re Chateaugay Corp.*),
93 B.R. 26 (S.D.N.Y. 1988) ....................................................................... 7

*Marini v. Adamo* (*In re Adamo*),
560 B.R. 642 (E.D.N.Y. 2016) ................................................................ 10

*Mullins v. Cole*,
218 F. Supp. 3d 488 (S.D. W. Va. 2016) ................................................. 13

*NWL Holdings, Inc. v. Eden Center, Inc.* (*In re Ames Department Stores, Inc.*),
317 B.R. 260 (Bankr. S.D.N.Y. 2004) ....................................................... 7

*Renshaw v. Renshaw* (*In re Renshaw*),
222 F.3d 82 (2d Cir. 2000) ...................................................................... 10

*Rodriguez v. Providence Comm. Corrections*,
155 F. Supp. 3d 758 (M.D. Tenn. 2015) ................................................. 13

*Strouchler v. Shah*,
  892 F. Supp. 2d 504 (S.D.N.Y. 2012) ....................................................................... 13

*The 1031 Tax Group, LLC, v. Alvarez* (*In re The 1031 Tax Group, LLC*),
  397 B.R. 670 (Bankr. S.D.N.Y. 2008) ........................................................................ 6

*Wang v. Guo* (*In re Guo*),
  548 B.R. 396 (E.D.N.Y. 2016) .................................................................................. 10

**Statutes**

11 U.S.C. § 523(a)(8) ................................................................................................... 10

11 U.S.C. § 523(a)(8)(B) ....................................................................................... 2, 3, 4

**Rules**

Federal Rule of Bankruptcy Procedure 7065(b) ............................................................ 1

Federal Rule of Civil Procedure 65(b) .......................................................................... 1

**Other Authorities**

4 Collier on Bankruptcy ¶ 524.LH [1] (15th ed. rev. 2005) ....................................... 11

William B. Rubenstein, Newberg on Class Actions § 4:30 ......................................... 12

Pursuant to Federal Rule of Bankruptcy Procedure 7065(b) and Federal Rule of Civil Procedure 65(b), Plaintiffs Hilal Homaidan and Reeham Youssef, on behalf of themselves and all others similarly situated, submit this Memorandum of Law in Support of their Motion for a Temporary Restraining Order.

## INTRODUCTION

This case is about protecting the fresh start of scores of debtors whose debts were discharged in bankruptcy.  Those debtors took the supremely consequential step of laying bear their economic lives in return for one thing—a viable fresh start.  Defendants have deprived Plaintiffs and the putative class of that fresh start by disregarding each debtor's lawfully obtained discharge orders and continuing to attempt to collect on these discharged debts.  Navient illegally collects hundreds of thousands of dollars of discharged debts every month—and has illegally collected tens of millions of dollars during the course of this lawsuit.  Those collections are purposeful and willful and are continuing today and every day into the future.  Navient's actions devastate the debtors' lives, interfering with the ability to get housing, jobs and to be socially healthy and productive.  Navient knows that there are thousands of loans that, on their face, exceed any conceivable definition of the cost of attendance.  We implore the Court to protect the fresh start and to stop Navient's illegal collection efforts.

We recognize that there is a preliminary injunction motion pending before the Court. However, based on Navient's conduct so far in this litigation, it is clear that Navient will not stop its illegal behavior until they are ordered to do so by a court.  No negotiated settlement or abatement could be obtained by the parties nor even by a mediator despite seven months and numerous mediation sessions.  The purpose of this Motion for a Temporary Restraining Order is to stop Navient's illegal collection efforts until such time that the Court can rule on the motion for a preliminary injunction.  Plaintiffs satisfy each of the prerequisites for obtaining a temporary

restraining order: Plaintiffs have shown a likelihood of success on the merits and Navient has no defense to collecting on unqualified education loans; Plaintiffs and the putative class are enduring irreparable harm each day that Navient's illegal collection efforts remain unaddressed; and the balance of the hardships weighs decidedly in favor of Plaintiffs and the putative class and thus warrants the interim measure of enjoining Navient from continuing its collection efforts.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Plaintiff Hilal Homaidan

Plaintiff Hilal Homaidan enrolled in Emerson College in the Fall of 2006.  Dkt. No. 177 ("Declaration of Hilal Homaidan"), dated December 9, 2019 at ¶¶ 3 to 7.  Mr. Homaidan dropped out in the first few weeks.  *Id.*  Nonetheless, on September 12, 2006, Navient gave him a "Tuition Answer loan: in the amount of $6,177 and a second loan for $6,390 on October 6, 2006.  *Id.*  Both loans were made directly to Mr. Homaidan and did not involve the financial aid office of Emerson. Dkt. No. 1 ("Complaint") at ¶¶ 30, 40.  Moreover, they were not made for qualified educational expenses.  Dkt. No. 1 at ¶ 40.  Defendants made no effort to obtain certification from Emerson that either loan was within the cost of attendance or even that Mr. Homaidan was a full-time or part-time student attending a qualified university.  Thus, Defendants did not determine that either loan was a "qualified education loan" as that term is defined in 11 U.S.C. § 523(a)(8)(B) before disbursing these funds.

On December 4, 2008, Mr. Homaidan sought relief under Title 11 in this Court.  *In re Homaidan*, Case No. 08-48275 (Dkt. No. 1) (Bankr. E.D.N.Y.).  Mr. Homaidan scheduled the Tuition Answer Loans on Schedule F of his petition.  Dkt. No. 177 (Homaidan Decl. at ¶ 9); *see also* Dkt. No. 11 at Schedule F.  On April 9, 2009, this Court ordered discharge of all Mr. Homaidan's properly scheduled pre-petition debt. Dkt. No. 177 (Homaidan Decl. at ¶ 10); *see also*

Dkt. No. 21.  Defendants were duly notified of the discharge. Dkt. No. 177 (Homaidan Decl. at ¶ 11); *see also* Dkt. No. 22.

Despite the discharge of Mr. Homaidan's Tuition Answer Loans, Defendants advised Mr. Homaidan that his Tuition Answer Loans were not discharged and thereafter engaged the services of various collection firms to attempt to collect on this discharged debt in violation of this Court's discharge order and the Bankruptcy Code.  Dkt. No. 177 (Homaidan Decl. at ¶ 12, Ex. C).  In particular, Defendants sent correspondence and notices to Mr. Homaidan demanding repayment of the Tuition Answer Loans on at least August 3, 2010, September 6, 2010, September 8, 2010 and July 5, 2011.  *Id.* at ¶ 13, Exs. D-G.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a determination of the dischargeability of his Tuition Answer Loans.  Case No. 08-48275, Dkt. Nos. 28 and 30.  On May 26, 2017, the Court entered an order reopening the case.  Case No. 08-48275, Dkt. No. 31.  On June 23, 2017, Mr. Homaidan commenced this adversary proceeding on behalf of himself and all other similarly situated, seeking a determination that Defendants' direct-to-consumer loans that exceed the cost of attendance under 11 U.S.C. § 523(a)(8)(B) are dischargeable in bankruptcy, as well as damages including attorney's fees and costs and restitution of all funds obtained by Defendants from collecting on discharged debts.

### B.  Plaintiff Reeham Youssef

From 2005 to 2008 Plaintiff Reeham Youssef was a student at Queens College of the City University of New York.   Dkt. No. 178 (Declaration of Reeham Youssef") dated December 19, 2019 at ¶ 2.  The cost of attendance for an in-state student living off campus at Queens College was $16,816 for the academic year of 2005 to 2006; $17,293 for the academic year of 2006 to 2007; and $17,725 for the academic year of 2007 to 2008.  *Id.* at ¶ 3.  During the 2005 to 2006

academic year, Ms. Youssef received a school certified loan of $4,800. *Id*. at ¶ 4. During the 2006 to 2007 academic year, Ms. Youssef received a school certified loan of $6,000 and four Tuition Answer Loans from Sallie Mae totaling $31,850. *Id.* at ¶ 5, Ex. A. During the 2007 to 2008 academic year, Ms. Youssef received two Tuition Answer Loans totaling $24,150. *Id.* at ¶ 6. Most or all of the Tuition Answer Loans Ms. Youssef received exceeded the cost of attendance and, therefore, were not qualified education loans as that term is used as defined in 11 U.S.C. § 523(a)(8)(B). *Id.* at ¶ 7.

On October 29, 2013, Ms. Youssef sought relief under Title 11 in this Court. *In re Reeham Youssef*, Case No. 1- 13-46495 (ESS) (Bankr. E.D.N.Y.). Ms. Youssef properly scheduled the Tuition Answer Loans on Schedule F of her petition. Dkt. No. 178 (Youseef Decl. at ¶ 9); *see also* Dkt. No. 1 ("Complaint"). On February 6, 2014, this Court entered an order discharging all of Ms. Youssef's properly scheduled pre-petitioned debts. Dkt. No. 178 (Youseef Decl. at ¶ 10); *see also* Dkt. No. 9. Also on February 6, 2014, Defendants were duly notified of the discharge of Ms. Youssef's pre-petition debts. Dkt. No. 10. Nonetheless, instead of treating Ms. Youssef's Tuition Answer Loans as discharged, Defendants advised Ms. Youssef that her Tuition Answer Loans were not discharged, demanded repayment from Ms. Youssef on those loans and resumed collection on the loans even though they had been discharged. Dkt. No. 178 (Youssef Decl. at ¶¶ 11-13).

On October 1, 2019, Ms. Youssef moved to re-open her bankruptcy proceeding (Dkt. No. 11) and to amend the complaint in the above-entitled adversary proceeding. Dkt. No. 156. The Court granted the motion to re-open and to amend the complaint herein from the bench on October 16, 2019. Dkt. No. 179, Ex. A. On December 4, 2019, the Court entered an order re-opening Ms.

Youssef's bankruptcy proceeding.  Dkt. No. 179, Ex. B.  On December 17, 2019, the Court entered an order amending the complaint to add Ms. Youssef as a Plaintiff.  Dkt. No. 166.

Like Mr. Homaidan, Ms. Youssef seeks a declaration that her private loans in excess of the cost of attendence loans were discharged, an injunction prohibiting the continued collection of the loans, and an award of damages including attorney's fees and costs and restitution of all funds obtained by Defendants from their unlawful collection efforts on her discharged debts.

### C.  Relevant Procedural History

On December 19, 2019, Plaintiffs moved for a preliminary injunction.  Dkt. No. 171.  The motion is still pending before the Court.  Defendants have continued their unlawful collection efforts throughout the pendency of this action.  They collect hundreds of thousands of dollars from the putative class every month.  They collect tens of millions of dollars from the putative class every year and are continuing to do so.

In August 2021, the parties agreed to engage in non-binding mediation.  *See* Dkt. No. 310 ("March 14, 2022 Letter to the Court").  The parties then mediated for seven months at numerous mediation sessions to no avail.  *See* Declaration of George F. Carpinello at ¶ 2.  It is clear Navient will not stop its illegal collections unless ordered to do so by this Court.

### ARGUMENT

## I.    LEGAL STANDARD

"The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."  *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009).  A temporary restraining order is a short-term protective device that was designed to protect a party from irreparable harm until more lasting relief, such as a preliminary injunction, can be sought. *HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F. Supp. 2d 303, 305 (S.D.N.Y.

2010).  In this case, a temporary restraining order is necessary to protect the putative class until such time as the Court rules on Plaintiffs' Motion for a Preliminary Injunction or on Plaintiffs' Motion for Summary Judgment.

The standard for entry of a temporary restraining order is the same as that for a preliminary injunction.  *3M Company v. CovCare, Inc.*, No. 21-CV-01644, 2021 WL 7162292, at *2 (E.D.N.Y. Apr. 7, 2021).  The party seeking the entry of a temporary restraining order must demonstrate: (1) a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; (4) that the "public interest would not be disserved" by the issuance of an injunction.  *Id*. (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)).

## II.    PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER TO PROTECT THE PUTATIVE CLASS FROM NAVIENT'S UNLAWFUL COLLECTION EFFORTS.

### A.    Plaintiffs Need Not Show Irreparable Harm.

Ordinarily, a plaintiff seeking a temporary restraining order is required to show the likelihood of irreparable harm in the absence of such an order.  *Lopez v. New York City*, No. 17-CV-3014, 2018 WL 11385136, at *1 (S.D.N.Y. Dec. 21, 2018).  However, a bankruptcy court, pursuant to its powers under § 105, may grant a preliminary injunction to protect the debtor or the estate without a showing of irreparable injury.  *The 1031 Tax Group, LLC, v. Alvarez* (*In re The 1031 Tax Group, LLC*), 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008); *Britestarr Homes, Inc. v. City of New York* (*In re Britestarr Homes, Inc.*), 368 B.R. 106, 108 (Bankr. D. Conn. 2007); *Eastern Airlines, Inc. v. Rolleston* (*In re Ionosphere Clubs, Inc.*), 111 B.R. 423, 431 (Bankr. S.D.N.Y. 1990), *aff'd in part and rev'd in part on other grounds*, 124 B.R. 635 (S.D.N.Y. 1999); *LTV Steel*

*Co., Inc. v. Bd. of Educ.* (*In re Chateaugay Corp.*), 93 B.R. 26, 29 (S.D.N.Y. 1988); *Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567, 571 (S.D.N.Y. 1987); *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).

>       As former Bankruptcy Judge Gerber explained,

> … it is manifestly proper, in this Court's view, to invoke section 105(a) "to enforce or implement" the Court's earlier orders and to prevent abuses of process. Exercise of the Court's section 105(a) authority in this manner, and for this purpose, vindicates the interests of the *Court*, as much as (and perhaps more than) it vindicates the interest of an individual litigant. Particularly in such a situation, it is not surprising that the usual grounds for injunctive relief, such as irreparable injury, need not be shown in a proceeding for an injunction under section 105(a).

*NWL Holdings, Inc. v. Eden Center, Inc.* (*In re Ames Department Stores, Inc.*), 317 B.R. 260, 274 (Bankr. S.D.N.Y. 2004) (emphasis in original). Here, it is undisputed that Plaintiffs and every member of the putative class obtained discharges in bankruptcy protecting all properly-scheduled dischargeable debts and that Defendants are violating those individual discharge orders by continuing to collect on these discharged debts. Accordingly, Plaintiffs need not make any additional showing of irreparable harm to warrant a temporary restraining order.

>       **B.       In Any Event, Plaintiffs and the Putative Class Continue to Suffer Irreparable Injury in the Absence of a Temporary Restraining Order.**

In any event, there is no question that Plaintiffs and the putative class continue to suffer irreparable harm imposed by Defendants' illegal collection activity. Irreparable harm is satisfied where a plaintiff demonstrates that "they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

The mere act of repeatedly attempting to collect a debt that has been discharged in and of itself creates irreparable injury. *See Diaz v. Heavy Action Recovery* (*In re Diaz*), 526 B.R. 685, 694 (Bankr. S.D. Tex. 2015):

> If ARA continues to call Plaintiffs, damages alone would not compensate them for the stress caused by the harassing phone calls. It appears that ARA continued to make calls as recently as October of 2014, when Plaintiffs met with their attorney regarding a new round of phone calls. . . . ARA persisted in their conduct despite facing the threat of court-ordered damages due to the complaint pending against them. In junctive relief is necessary to prevent further violations of the discharge injunction.

*Id.* at 695.

Similarly, in *Daniel v. Oaks and Johnson* (*In re Daniel*), 98 B.R. 73 (Bankr. M.D. Fla. 1989), a debtor who had been granted a discharge sought a preliminary and permanent injunction enforcing the provisions of § 524(a), prohibiting a law firm representing a creditor from proceeding against the debtor in a state court lawsuit, and ordering the firm to cease and desist any further attempts to collect on that debt. *Id.* at 76. The court held that "any action or attempt to collect [the debt] in spite of a discharge is a clear violation of the permanent injunction included in the discharge," and held that "if the injunctive relief sought by the Debtors in this adversary proceeding is not granted the Debtors will suffer irreparable harm." *Id.*

The same conclusion was reached by Judge Jones in *Crocker v. Navient Solutions, LLC* (*In re Crocker*), Adv. Pro. No. 16-03175 (S.D. Tex.), which involves a class of former debtors who held private Navient loans issued for attendance at non-Title IV schools. During the pendency of that proceeding, Navient entered an "Agreed-to-Order" on April 11, 2017, whereby they agreed to immediately cease collecting on all non-Title IV loans pending further order of the court. *See* Declaration of George F. Carpinello at ¶ 3, Ex. A ("April 11, 2017 Order"). The April 11, 2017 Order was entered following a hearing with the Court on Plaintiff's motion for a preliminary injunction, prompted by important comments from Judge Jones about the harm of Navient's

collection activities on the putative class. *See* Carpinello Decl. at ¶ 4, Ex. B ("March 23, 2017 Hearing Tr."):

> I've seen the effects of collection activities first hand. I mean, I've seen people who in and they can't carry on a conversation without breaking into tears. I've seen kids who won't answer the telephone because they're afraid. You know, I've seen - - and I've seen minority children who won't look a white person in the eye because they've been told that's the bill collector.

> The effects are real and they're serious and they're - - I mean, they can have an impact on someone's life. And so the context of timing, I will just tell you, I'm not bothered by at all.

March 23, 2017 Hearing Tr. at 57:19-58:05. As Judge Jones reasoned, in light of the undeniable harm caused by erroneously collecting on discharged debts, "I don't know why Navient wouldn't simply agree to suspend any collection activities against folks who are covered by [the class definition] . . . because . . . if it turns out that you're wrong, it elevates the ultimate damage model tremendously. . ." *Id.* at 58:15-21.

The Court went on to note that the harm of continued collection efforts was significant, especially when compared to the relatively small impact this would have on Navient's bottom line. "I don't know why, given the significance of the impact, on individuals, and given the relatively small impact that, number one it's a relatively small number of cases with respect to Navient's entire portfolio" and that "given that it can touch people" other than those who signed the note, including children, grandparents, spouses, and parents. *Id.* at 59:02-09. "I don't know why Navient wouldn't simply agree just to suspend collection activities with the understanding that we're not going to hang around. This isn't going to last forever. I mean, this is going to move forward." *Id.* at 59:09-13.

In this case, as in *Crocker*, *Diaz,* and *Daniel*, Defendants have acted in "flagrant disregard" of the discharge injunctions by repeatedly attempting to collect on Plaintiffs' and class members'

discharged debts.  And as in *Crocker*, *Diaz,* and *Daniel*, Defendants' continued collection efforts will cause Plaintiffs and class members to suffer irreparable harm if a temporary restraining order is not entered.

### C.    Plaintiffs are Likely to Succeed on the Merits.

As is more fully set forth in Plaintiff's motion for partial summary judgment (Dkt. No. 170), Defendants have no legal basis to justify collecting on debts that exceed the debtors' cost of attendance, nor do they have any valid defense for doing so.  Defendants' actions are illegal and violate the discharge injunction of § 524.  Therefore, not only are Plaintiffs likely to succeed on the merits, but they have already established Defendants' liability.

Notably, Defendants bear the burden of establishing whether any of their direct-to-consumer loans are non-dischargeable under the terms of the § 523(a)(8). *Grogan v. Garner*, 498 U.S. 279, 283 (1991) (referring to the burden a creditor must meet to avoid dischargeability); *Renshaw v. Renshaw* (*In re Renshaw*), 222 F.3d 82, 86 (2d Cir. 2000) ("creditor [must] prove by a preponderance of the evidence that its claims is one that is nondischargeable."); *Bronsdon v. Educ. Credit Mgmt. Assoc.* (*In re Bronsdon*), 435 B.R. 791, 796 (1st Cir. BAP. 2010) ("creditor bears the initial burden of establishing that the debt is of the type accepted from discharge under § 523(a)(8)."); *In re Haroon*, 313 B.R. 686, 688 (E.D. Va. 2004) ("in the case of a student loan, [creditor] bears initial burden of proving that the debt was incurred for educational purposes."); *Marini v. Adamo* (*In re Adamo*), 560 B.R. 642, 647 (E.D.N.Y. 2016) ("the burden of proof in an action to determine dischargeability is on the creditor to prove the elements of its dischargeability complaint by preponderance of the evidence."); *Wang v. Guo* (*In re Guo*), 548 B.R. 396, 401 (E.D.N.Y. 2016) ("The creditor objecting to dischargeability bears the burden of proof by a preponderance of the evidence.").  Defendants simply ignore this burden and continue to collect on the loans at issue without any justification.

10

It is a fundamental principle of bankruptcy law, and in fact the discharge order itself warns creditors, that a debtor's debts are discharged immediately upon entry of the order. A debtor is not required to jump through any additional hoops to enjoy the fresh start guaranteed by the Bankruptcy Code. It is the creditor who risks violating the law by continuing to collect on a debt without first determining whether the debt was discharged or not. *In re Haroon*, 313 B.R. at 689 ("[A] creditor who attempts to collect the debt proceeds at his own peril and accepts the consequences of his own actions."); *see also* 4 Collier on Bankruptcy ¶ 524.LH [1] at 524-57 (15th ed. rev. 2005). By instead continuing to collect on these discharged debts without making any attempt to determine whether they were legally collectable or not, Defendants proceeded at their own risk. *DiGeronimo v. Weissberg* (*In re DiGeronimo*), 354 B.R. 625, 641 (Bankr. E.D.N.Y. 2006) ("In sum, the Court finds that the Defendants proceeded at their peril when they continued their collection efforts against the Debtor despite knowing that there had been entry of the Discharge."); *In re Haroon*, 313 B.R. at 689 ("[A] creditor who attempts to collect the debt proceeds at his own peril and accepts the consequences of his own actions.").

In their opposition to Plaintiffs' motion for partial summary judgment, Defendants raise numerous issues as to why one of § 523's narrow exceptions to discharge applies. *See generally* Dkt. No. 188. Plaintiffs have sufficiently disproven each of these arguments in their reply in support of their motion. Dkt. No. 193.

The sole basis on which Defendants can claim that their direct-to-consumer loans are non-dischargeable is under § 523(a)(8)(B), which requires that the loans were within the cost of attendance at an eligible educational institution. *See generally*, *Golden v. JPMorgan Chase Bank* (*In re Golden*), 596 B.R. 239, 267-69 (Bankr. E.D.N.Y. 2019) (Stong, J.) (analyzing § 523(a)(8)(B)). However, Defendants' designated Rule 30(b)(6) witness, Patricia Peterson, has

repeatedly testified that Navient makes no effort to determine whether any of these loans were within the cost of attendance. *See* Dkt. No. 170 at 7-9. In any event, Navient knows that there are thousands of loans that, on their face, exceed any conceivable definition of the cost of attendance.

Quite simply, Defendants admit to attempting to collect on private direct-to-consumer loans that were issued to Plaintiffs and the putative class, that exceeded the cost of attendance, and that were discharged by virtue of each class member's individual bankruptcy proceedings. They have no defense to this conduct and Plaintiffs are therefore likely to prevail on the merits.

### D.    The Balance of the Hardships Tips in Favor of Plaintiffs and the Class.

Finally, it is clear that the balance of hardships tips in favor of Plaintiffs and the class. In the absence of injunctive relief, Plaintiffs and the class members will continue to be harassed by Defendants for payments on debts that have actually been discharged in Bankruptcy. This will not only cause them to endure the stress of receiving harassing phone calls and letters, but also the financial hardship and pressure of continuing to make payments on these discharged loans. Indeed, many members of the class have been misled to believe that their loans have not been discharged because they have received notices from Navient after discharge expressly advising the class that their loans are nondischargeable and are due and owing.

Navient, in contrast, will suffer no significant hardship if it is enjoined from collecting or accruing interest on these loans. The loans at issue in this case represent a very small percentage of Navient's overall portfolio and ceasing collection activities is unlikely to have a significant impact on Navient's bottom line. Moreover, Navient had already agreed to refrain from collecting on discharged debts for over two years in the context of the *Crocker* case, and now has agreed to treat all such loans issued to class members in the Fifth Circuit as fully discharged. There is no credible argument as to why consumers outside the Fifth Circuit should be treated any differently.

Courts routinely grant preliminary injunctive relief on behalf of a putative class prior to class certification. *See* William B. Rubenstein, Newberg on Class Actions § 4:30 n. 8.50 (5th ed. 2017) (stating that a court may issue preliminary injunctive relief prior to ruling on class certification and collecting cases); *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004) (affirming district court's grant of preliminary injunctive relief in favor of putative class prior to certification); *Abdi v. Duke*, 280 F. Supp. 3d 373, 400 (W.D.N.Y. 2017) (issuing preliminary injunctive relief prior to ruling on class certification); *Ligon v. City of New York*, 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013) (same); *Strouchler v. Shah*, 892 F. Supp. 2d 504, 518-19 (S.D.N.Y. 2012) (same); *Dodge v. Cty. of Orange*, 209 F.R.D. 65, 77 (S.D.N.Y. 2002) (same); *J.O.P. v. U.S. Dep't of Homeland Security*, 409 F. Supp. 3d 367, 376 (D. Md. 2019) (same); *Mullins v. Cole*, 218 F. Supp. 3d 488 (S.D. W. Va. 2016) (same); *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1148 n. 163 (D. Kan. 2016) (same); *Rodriguez v. Providence Comm. Corrections*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015) (same); *Lee v. Orr*, No. 13-cv-8719, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) (same).

In so holding, courts recognize that "certain circumstances give rise to the need for prompt injunctive relief for a named plaintiff or on behalf of a class and that the court may conditionally certify the class or otherwise award a broad preliminary injunction, without a formal class ruling, under its general equity powers." *Ligon*, 925 F. Supp. 2d at 539 (internal quotation omitted). Here, Plaintiffs have shown that in the absence of a temporary restraining order, Defendants will continue their illegal collection efforts directed at Plaintiffs and members of the putative class. Such collection efforts are pressuring putative class members into making payments on debts that were otherwise discharged in bankruptcy and will impose further irreparable harm by depriving

them of the fresh start that is one of the fundamental purposes of the Bankruptcy Code.  This is precisely the type of irreparable harm that temporary injunctive relief is designed to protect against.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant a temporary restraining order to immediately enjoin Navient from continuing collection efforts  on the loans held by Plaintiffs and the putative class.

Dated:  April 7, 2022                              Respectfully submitted,


                                                  **BOIES SCHILLER FLEXNER LLP**

                                                  By: */s/ George F. Carpinello*

                                                  George F. Carpinello
                                                  Adam R. Shaw
                                                  Jenna C. Smith
                                                  30 South Pearl Street
                                                  Albany, NY  12207
                                                  (518) 434-0600

                                                  **JONES, SWANSON, HUDDELL &
                                                  GARRISON, L.L.C.**
                                                  Lynn E. Swanson (admitted *pro hac vice*)
                                                  Peter Freiberg (admitted *pro hac vice*)
                                                  601 Poydras Street, Suite 2655
                                                  New Orleans, Louisiana 70130

                                                  **FISHMAN HAYGOOD LLP**
                                                  Jason W. Burge (admitted *pro hac vice*)
                                                  201 St. Charles Avenue, 46th Floor
                                                  New Orleans, Louisiana 70170


                                                  *Counsel for Plaintiffs Hilal Homaidan and Reeham
                                                  Youssef*