**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**HILAL K. HOMAIDAN,**<br>**f/k/a Helal K. Homaidan,**<br><br>      **Debtor.** | **Chapter 7**<br><br>**Case No. 08-48275 (ESS)** |
| In re:<br><br>**REEHAM YOUSSEF aka Reeham**<br>**Navarro Youssef aka Reeham N. Youssef,**<br><br>      **Debtor.** | **Chapter 7**<br><br>**Case No. 13-46495 (ESS)** |
| **HILAL K. HOMAIDAN on behalf of**<br>**himself and all others similarly situated**<br><br>      **Plaintiff,**<br><br>v.<br><br>**SALLIE MAE, INC,**<br>**NAVIENT SOLUTIONS, LLC,**<br>**NAVIENT CREDIT FINANCE**<br>**CORPORATION**<br><br>      **Defendants.** | **Adv. Pro. No. 17-1085** |

**OPPOSITION TO PLAINTIFFS' MOTION**
**FOR A TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

RELEVANT BACKGROUND ................................................................................. 2

    I.      Private Student Loans: 80-Plus Divergent Loan Programs .................................. 2

    II.    Which Loan Programs Does this Case Reach?  Plaintiffs' Shifting
            Positions................................................................................................................ 3

    III.   Which Loans Does this Case Reach?  Plaintiffs' Shifting Positions ..................... 4

    IV.   Which Loans Does the TRO Motion Reach?  Plaintiffs Never Really Say ........... 6

    V.     What Evidence Supports Issuance of a TRO?  Essentially None ......................... 7

ARGUMENT ............................................................................................................ 9

    I.      Plaintiffs Seek an Unauthorized TRO of Indefinite Duration .............................. 9

    II.    Plaintiffs Seek an Unauthorized TRO of Nationwide Scope.............................. 10

          A.      Plaintiffs Have Only One Potential Claim:  To Enforce Injunctions
                   Through Contempt.................................................................................. 10

          B.      Only the Issuing Court is Empowered to Enforce An Injunction
                   Through Contempt.................................................................................. 11

    III.   Plaintiffs Seek an Unauthorized TRO for an As-Yet Uncertified Class.............. 14

    IV.   Plaintiffs Seek an Unauthorized Burden-Shifting TRO....................................... 18

    V.     Plaintiffs Seek an Unauthorized TRO in Favor of Uninjured Parties with
            no Article III Standing ........................................................................................ 20

    VI.   Plaintiffs Seek an Unauthorized TRO with No Proof of any Emergency or
            Exigency ............................................................................................................. 24

    VII.  Plaintiffs Seek an Unauthorized TRO With No Showing of a Likelihood
            of Success............................................................................................................ 28

    VIII. Plaintiffs Seek an Unauthorized TRO that Would Fail for Vagueness ............... 29

CONCLUSION........................................................................................................ 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alderwoods Group., Inc. v. Garcia*,
  682 F.3d 958 (11th Cir. 2012) ....................................................................... *passim*

*American Esp. Financial Advisors v., Thorely*,
  147 F.3d 229 (2d Cir. 1998)........................................................................26

*Anderson v. Credit One Bank, N.A.*,
  884 F.3d 382 (2d Cir. 2018)....................................................................11, 14

*Andino v. Fischer*,
  555 F.Supp.2d 418 (S.D.N.Y. 2008)..............................................................19

*Barrientos v. Wells Fargo Bank, N.A.*,
  633 F.3d 1186 (9th Cir. 2011) ....................................................................10

*Beastie Boys v. Monster Energy Co.*,
  87 F. Supp. 3d 672 (S.D.N.Y. 2015)..............................................................24

*In re Belton v. GE Cap. Retail Bank*,
  961 F.3d 612 (2d Cir. 2020)........................................................................14

*Bessette v. Avco Fin. Serv., Inc.*,
  230 F.3d 439 (1st Cir. 2000)........................................................................10

*Bradley v. Fina*,
  550 F. App'x 150 (4th Cir. 2014) ....................................................................10

*Bronx Household of Faith v. Bd. of Educ. of City of New York*,
  331 F.3d 342 (2d Cir. 2003)........................................................................19

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985)........................................................................25

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
  990 F.2d 25 (1st Cir. 1993)........................................................................23

*Cox v. Zale Del., Inc.*,
  239 F.3d 910 (7th Cir. 2001) (Posner, J.) ........................................................10, 11

*In re Crocker*,
  941 F.3d 206 (5th Cir. 2019) ....................................................................13, 14, 24

*In re Debs*,
 158 U.S. 564 (1895)......................................................................................................11

*Denney v. Deutsche Bank AG*,
 443 F.3d 253 (2d Cir. 2006)........................................................................................24

*DSC Communications Corp. v. DGI Techs., Inc.*
 81 F.3d 597 (5th Cir. 1996) ........................................................................................23

*eCapital Com. Fin. Corp.v. Hitachi Cap. Am. Corp.*,
 519 F.Supp.3d 1129 (S.D. Fla. 2021) .........................................................................22

*Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drives Loc. No. 20*,
 415 U.S. 423 (1974) .....................................................................................................19

*Garfield v. Ocwen Loan Servicing*,
 811 F.3d 86 (2d Cir. 2016)..........................................................................................10

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*,
 13 F. Supp.2d 417 (S.D.N.Y. 1998)............................................................................25

*Gunn v. Univ. Comm, to End the War in Viet Nam*,
 399 U.S. 383 (1970).....................................................................................................11

*In re Joubert v. ABN AMRO Mort. Group., Inc.*,
 411 F.3d 452 (3d Cir. 2005).........................................................................................10

*LaForest v. Former Clean Air Holding Co.*,
 376 F.3d 48 (2d Cir. 2004)..........................................................................................15

*Life Techs. Corp. v. AB Sciex Pte Ltd*,
 2011 WL 1419612 (S.D.N.Y. Apr. 11, 2011).............................................................25

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992).....................................................................................................23

*Matrix Essentials v. Quality King Distributors, Inc.*,
 346 F. Supp.2d 384 ......................................................................................................27

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l
 Union*,
 239 F.3d 172 (2d Cir. 2001).........................................................................................29

*Mova Pharma Corp. v. Shalala*,
 140 F.3d 1060 (D.C. Cir. 1998)...................................................................................23

*Munaf v. Green*,
 553 U.S. 674 (2008)........................................................................................................2

*Matter of Nat'l Gypsum Co.*,
  118 F.3d 1056 (5th Cir. 1997) ..............................................................................11

*Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*,
  479 F.Supp. 351 (N.D. Ga. 1979) ..........................................................................23

*Pan Am. World Airways, Inc. v. Flight Engineers' Intern. Ass'n*,
  306 F.2d 840 (2d Cir. 1962)...................................................................................9

*Perez v. Danbury Hosp.*,
  347 F. 3d 419 (2d Cir. 2003)..................................................................................27

*Pertuso v. Ford Motor Credit Co.*,
  233 F.3d 417 (6th Cir. 2000) .................................................................................10

*Philip Morris, Inc. v. Otanedia Ltd.*,
  331 F. Supp. 2d 246-47 (S.D.N.Y. 2004) ..............................................................24

*Roso-Lino Beverage Dist. v. Coca-Cola Bottling Co. of New York*,
  749 F.2d 124 (2d Cir. 1984)...................................................................................26

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
  241 F.3d 232 (2d Cir. 2001)...................................................................................29

*Schmidt v. Lessard*,
  414 U.S. 473 (1974)...............................................................................................29

*Shady Grove Orthopedics Assocs. V. Allstate Ins. Co.*,
  559 U.S. 393 (2008)...............................................................................................18

*Silber v. Barbara's Bakery, Inc.*
  950 F.Supp.2d 432 (E.D.N.Y. 2013) ......................................................................25

*Standard Inv. Chartered, Inc. v. NASD*,
  2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007).........................................................26

*Suntrust Bank v. Houghton Mifflin Co.*,
  268 F.3d 1257 (11th Cir. 2001) .............................................................................23

*Taggart v. Lorenzen*,
  139 S. Ct. 1795 (2019)................................................................................. *passim*

*Tennessee Student Assistance Corp. v. Hood*,
  541 U.S. 440 (2004)...............................................................................................22

*Tough Traveler, Ltd. v. Outbound Products*,
  60 F.3d 964 (2d Cir. 1995).....................................................................................27

*United States Aid Finds, Inc. v. Espinosa*,
  559 U.S. 260 (2010)................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................15, 16, 18

*Walls v. Wells Fargo Bank, N.A.*,
  276 F.3d 502 (9th Cir. 2002) ................................................................10

*Winter v. Nat. Resource Council*,
  555 U.S. 7 (2008)................................................................20

**Statutes**

11 U.S.C. § 105................................................................26, 27

11 U.S.C. § 105(a)................................................................12

11 U.S.C. § 362................................................................11

11 U.S.C. § 362(h)................................................................10

11 U.S.C. § 523(8)(A)(i)................................................................3

11 U.S.C. § 523(a)(8)................................................................19, 22

11 U.S.C. § 523(a)(8)(B) ................................................................ *passim*

11 U.S.C. § 524................................................................11

11 U.S.C. § 524(a)(2)................................................................11, 12

28 U.S.C. § 157................................................................13

28 U.S.C. § 1334................................................................13

U.S. Bankruptcy Code ................................................................10, 13

**Other Authorities**

Article III, U.S. Constitution................................................................ *passim*

Bankruptcy Rule 7065 ................................................................9, 29

Fed. R. Civ. P. 65................................................................29, 30, 31, 32

Fed. R. Civ. P. 65(b)(2)................................................................9, 10

Fed. R. Civ. P. 65(d)................................................................29

Rule 23 ......................................................................................................................3, 15, 18, 21

Rule 23(b)(2)............................................................................................................15, 16

Rule 23(b)(3)..................................................................................................................15

Rule 65(d)(1)(C) .............................................................................................................31

7AA Wright & Miller, Federal Practice and Procedure § 1786 ....................................18

Defendants Navient Solutions, LLC and Navient Credit Finance Corporation (collectively "Navient") submit this Opposition to Plaintiffs' Motion for a Temporary Restraining Order (Dkt. No. 314).  Navient respectfully states as follows:

## INTRODUCTION

Plaintiffs seek a mandatory, temporary restraining order ("TRO") that would dramatically alter the status quo.  At the same time, they provide virtually no details regarding the actual relief they seek.  Plaintiffs' motion only hints at the scope of the remedy sought and is vague to the point of being almost meaningless.  Plaintiffs, moreover, have failed to submit any proposed order that would otherwise provide notice of the specific restraint they ask the Court to impose on Navient.

That said, from the few crumbs of information Plaintiffs do provide, it appears that they may be seeking a restraining order of massive scope that would include at least the following elements:  (1) an indefinite duration; (2) a nationwide geographic scope; (3) application to an uncertified class; (4) an impermissible burden-shifting process totally at odds with the standards governing TROs and preliminary injunctions; and (5) restraint on activity that even plaintiffs concede to be 100% lawful in favor of borrowers who have no Article III standing.  They seek all of this with virtually no supporting evidence and without any showing of the urgency required for the issuance of a TRO.

All of this is improper.  And, it all seems motivated by counsel's dissatisfaction with the pace of settlement discussions and by their desire to create leverage over Navient in future negotiations.  Apparently, for the nearly five years that this case has been pending, Plaintiffs perceived no emergency requiring such extraordinary relief until April 7, 2022, when Navient did not accept their latest settlement offer.  *See* Letter to the Court, Dkt. No. 310 (tying the filing of a TRO motion to mediation having not yet produced a settlement); TRO Motion, Dkt. No. 314, p. 1

(purporting to justify a TRO because settlement discussions have not yet resulted in a resolution); *id.*, p. 5 (same).

Plaintiffs' injection of settlement discussions into the mix is both unfortunate and inappropriate, especially since Navient cannot in response disclose the confidential details of what has been said at mediation or in the talks with the mediator that remain ongoing even as of today. Suffice it to say, the status of settlement negotiations, whatever that status may be, cannot relieve Plaintiffs of their burden to establish the existence of the well-defined requirements for obtaining the truly exceptional relief they seek. *See, e.g., Munaf v. Green*, 553 U.S. 674, 689-90 (2008) (TRO, never awarded as of right, is an "extraordinary and drastic" remedy). Since Plaintiffs cannot meet their burden, their motion should be denied.

**RELEVANT BACKGROUND**

## I.    Private Student Loans: 80-Plus Divergent Loan Programs

At a high level, this case involves "private" student loans—those that were not issued or guaranteed by a "governmental unit"—for attendance at Title IV institutions. The private loans that Navient services were issued under more than 80 different programs with differing characteristics. *See* Declaration of Thomas M. Farrell  at ¶¶ 8-9. Some of these programs were funded in whole or in part by governmental units or nonprofit institutions. *Id*. at ¶ 9. Under certain programs, a loan could only be issued with the involvement of the school's financial aid office, which would certify that the loan was a "qualified education loan." *Id*. at ¶ 8. Under still other programs, a loan could be issued without the school's participation and upon the borrower's own certification that the loan amount was within the "cost of attendance." *Id*. at ¶ 3.

These programmatic differences are important in assessing the dischargeability of loans in bankruptcy. For example, there is no need to assess the "cost of attendance" on loans issued under programs funded in whole or in part by nonprofit institutions; the nonprofit involvement in those

loans is enough by itself to render them non-dischargeable.  *See* 11 U.S.C. § 523(8)(A)(i).  As another example, for programs where cost of attendance *is* relevant, school certification through the financial aid office should be enough by itself to make a loan non-dischargeable under 11 U.S.C. § 523(a)(8)(B), a point that even Plaintiffs (at least at times) seem to concede.  A loan made outside of the financial aid office, on the other hand, requires a different analysis, which may turn on the  existence of a borrower certification in the loan documents (Navient's view) or may require a comparison of the loan amount to the actual cost of attendance (Plaintiffs' view).

In light of these differences, any analysis of the issues in this case must focus on the specific loans and loan programs at issue.  That is easy enough for the two named Plaintiffs, both of whom received loans issued under the "Tuition Answer" program.  *See* Complaint, Dkt. No. 160, ¶¶ 40, 54.  But things get more complicated when Plaintiffs' class-action allegations are considered, in large part because Plaintiffs have taken a series of shifting positions that have purported to move the goal posts in important ways.

## II.    Which Loan Programs Does this Case Reach?  Plaintiffs' Shifting Positions

In the operative complaint, Plaintiffs limit the scope of the putative class to mirror the circumstances alleged for the named Plaintiffs.  With respect to loan type, the putative class outlined in the complaint is limited to "Tuition Answer loans."  *See* Complaint, Dkt. No. 160, ¶ 73(a) (limiting class definition to those who "[o]btained Tuition Answer loans"); *see also id.*, ¶ 64 ("[a]ll Class Members borrowed Tuition Answer loans"); *id.*, ¶¶ 79-82 (limiting discussion of Rule 23 factors to Tuition Answer loans); *id.*, ¶ 88 (seeking declaratory judgment limited to Tuition Answer loans); *id.*, ¶ 90 (limiting claim for discharge violations to Tuition Answer loans).

Notwithstanding this limitation in the complaint, Plaintiffs purport in their motion for class certification to greatly expand the scope of this case.  The class definition in the certification motion jettisons the complaint's limitation to only those borrowers who obtained Tuition Answer

loans.  Instead, the certification motion seeks to open class membership to borrowers who received *any* "private loans" associated with "Title IV institutions."  *See* Certification Motion, Dkt. No. 169, p. 15.  This expansion, if given effect, would ensnare in this case over $3 billion in loans issued under all of the 80-plus programs mentioned above.  Many of these programs issued loans that would be non-dischargeable for independent reasons having nothing to do with any relationship between the loan amount and the borrower's cost of attendance.

By their motion for preliminary injunction ("PI"), filed just two minutes after their motion for class certification, Plaintiffs effectively propose yet another modification to the scope of this case.  Specifically, the PI motion seeks to enjoin Navient from collecting on "direct to consumer" loans, a category that encompasses more than just Tuition Answer loans, but does not reach all "private" student loans.[1]  *See* PI motion, ECF No. 171, p. 1; Proposed Order, Dkt. No. 168-1 at p. 2. In this respect, the PI motion seeks relief broader than that sought in the complaint, but narrower than that sought in the certification motion.

III.    **Which Loans Does this Case Reach?  Plaintiffs' Shifting Positions**

Based on the shifting allegations described above, it is unclear whether this case ultimately involves all "private" Title IV loans, all "direct to consumer" Title IV loans, or just "Tuition Answer" loans.  Regardless of how that open question is ultimately answered, it is clear that Plaintiffs' liability theory—at least the one stated in the complaint—is entirely dependent on identifying loans that exceeded the "cost of attendance." *See generally* Complaint, Dkt.160; Motion for Partial Summary Judgment, Dkt. No. 170.  Yet, here too, Plaintiffs' allegations have shifted in material ways.

---

[1] Plaintiffs suggest that "direct to consumer" loans are those where the proceeds were sent directly to the borrower, as opposed to the school.  *See* Dkt. No, 179, ¶ 25.  That said, Plaintiffs nowhere provide a more precise definition or identify the specific loan programs that they contend to have issued any such "direct to consumer" loans.

To start, the putative class in the complaint is limited to borrowers who in fact obtained loans in amounts that "exceeded the Cost of Attendance." *See* Complaint, Dkt. No. 160, ¶ 73(a) (limiting class definition to those who "[o]btained" loans in "amounts that exceeded the Cost of Attendance"); *id*., ¶ 64 ("[a]ll Class Members" borrowed "amounts that exceeded the Cost of Attendance"). That same limitation is set forth in the motion for class certification, which formally defines the putative class to include only those borrowers who "received loans . . . which exceeded the cost of attendance." Certification Motion, Dkt. No. 169, ¶ 15. In this way, the formal class definition is tethered to Plaintiffs' theory of the case.

The PI motion, though, is infinitely broader than the complaint when it comes to loan amounts. While the complaint (and the definition section of the certification motion) limit the putative class to borrowers who obtained loans in excess of the cost of attendance, the PI motion seeks to enjoin Navient from collecting on *all* direct-to-consumer loans. As Plaintiffs explicitly acknowledge in their briefing on the PI motion, their proposed injunction would prohibit Navient (at least initially) from collecting on loans that were *within* the cost of attendance and that are, without question, non-dischargeable under 11 U.S.C. § 523(a)(8)(B).

While Plaintiffs thus clearly seek a preliminary injunction that would restrain *lawful* collection activities on loans *within* the cost of attendance, it is unclear whether they thereby also seek to formally include borrowers on such loans within their proposed class definition. Logic suggests that they must intend that result, as it is difficult to understand how a class-wide injunction could issue in favor of borrowers who are *not* class members. In places, Plaintiffs' briefing seems to confirm that this is their intent. *See* Certification Motion, Dkt. No. 169, p. 24 (indicating that borrowers on loans within cost of attendance would initially be class members, subject to Navient's ability, after certification and after issuance of a class-wide injunction, to have them later

"excluded from the class.").  At other places, Plaintiffs seem to signal an intent to keep class membership limited to borrowers whose loans exceeded the cost of attendance, notwithstanding their request for a class-wide injunction of broader scope.  *See* Reply in Support of Certification, Dkt. No. 218, p. 21 ("the class is defined as individuals who [among other things] . . . received private loans  . . . that exceeded the cost of attendance").

In short, it remains unclear whether Plaintiffs are proposing a class that formally includes borrowers on loans that were within the cost of attendance or whether they are instead proposing that the Court somehow grant relief to such borrowers without making them actual parties or class members.  Whatever the answer to that critical question, this much is clear:  Plaintiffs seek through their PI motion to preclude Navient from engaging in the entirely *lawful* conduct of collecting on loans that were *within* the cost of attendance and that are unquestionably non-dischargeable under 11 U.S.C. § 523(a)(8)(B).

## IV.    Which Loans Does the TRO Motion Reach?  Plaintiffs Never Really Say

To make things even muddier, Plaintiffs' current TRO motion for the most part ignores these critical question of scope, with no explicit indication of whether the TRO they seek would follow the narrower contours of their complaint or the broader contours outlined in their certification motion or their PI motion.  The TRO motion makes a few passing references to "direct to consumer" loans, suggesting that the intended scope of the TRO would mirror that outlined in the PI motion, but that point is unclear.  Given the vagaries of the TRO motion, Navient and the Court can only guess at the actual scope of the restraining order Plaintiffs seek.[2]

---

[2] Since the TRO Motion references in a few places the pending PI motion, Navient's best guess is that Plaintiffs are seeking a TRO with the same scope and structure as suggested by the proposed order they submitted with their PI motion.  *See* Proposed Order, Dkt. No. 168-1.  Navient will respond to the TRO Motion as if that guess is correct. But, to be clear, it is just a guess.

## V.    What Evidence Supports Issuance of a TRO?  Essentially None

The only evidentiary support for Plaintiffs' TRO Motion is the Declaration of George F. Carpinello.  *See* Dkt. No. 315.  That declaration, however, does not even address, let alone satisfy, the elements for issuance of a TRO.  The declaration says nothing about why there is now an emergency requiring immediate action.  It is likewise fails to identify the borrowers or loans on which immediate relief is requested.  And, it offers literally nothing to demonstrate that any Plaintiff or any class member is likely to succeed on claims against Navient or will suffer any interim injury before final resolution of this case.  To the contrary, the Carpinello declaration does only two things: (1) it establishes the irrelevant point that settlement discussions have not yet led to resolution; and (2) it attaches an order and a transcript from a different case against Navient that involved loan programs and legal issues *not* at issue in *this* case.

In the TRO Motion itself, Plaintiffs do refer back to declarations from Hilal Homaidan (Dkt. No. 177) and Reeham Youssef (Dkt. No. 178), which were offered in 2019 in support of the PI motion.  But, those declarations are limited to the individual circumstances of Homaidan and Youssef.  Having been filed *in 2019*, they obviously do not address whether there are exigent circumstances requiring emergency relief *in 2022*.  And, they provide literally *no* information about the loans or loan programs that Plaintiffs apparently intend to sweep into the scope of their proposed TRO. The Homaidan and Youssef declarations, like the Carpinello declaration, are silent on whether and to what extent any putative class member is likely to succeed on claims against Navient or will suffer any harm while litigation of this case continues.

Critically, these declarations fail to address any of the facts that would be necessary to evaluate whether putative class members are entitled to provisional relief by way of TRO or preliminary injunction.  Plaintiffs' legal theory, of course, depends on identifying putative class members who actually received bankruptcy discharges and who actually received loan proceeds

in excess of the cost of attendance on loans that would be non-dischargeable, if at all, under 11

U.S.C. § 523(a)(8)(B).  The Carpinello, Homaidan, and Youssef declarations address none of this:

- The declarations fail to identify or address the circumstances of any putative class members, let alone whether and when any of them actually received bankruptcy discharges.

- The declarations fail to identify the types of loans issued to putative class members (or the characteristics of the programs under which they were issued) and thus provide no basis for determining that section 523(a)(8)(B) is the only provision that could have rendered them non-dischargeable.

- The declarations fail to address the actual cost of attendance on loans issued to putative class members or whether any such loan exceeded the cost of attendance and thus provide no basis on which to conclude that any putative class member is likely to succeed on the merits.

Given this glaring lack of evidence, Plaintiffs have provided the Court with *no* basis on which to restrain Navient from engaging in collection activities directed at any of the tens of thousands of putative class members they seek to represent.  Nor could any of the other declarations or exhibits filed in 2019 in support of the PI motion serve to fill this evidentiary void. The evidence offered in 2019, like that offered in 2022, fails to identify putative class members who actually received discharges; fails to identify the specific loans, loan programs, or borrowers for which injunctive relief is sought; fails to identify the actual cost of attendance applicable to any putative class member; fails to identify any reliable or practical method for determining the actual cost of attendance for any putative class member; and fails to identify any specific loans to putative class members that exceeded the cost of attendance.

The 2019 evidence does reference a database provided by Navient in discovery detailing approximately 322,000 private student loans serviced by Navient.  From that database, Plaintiffs in the 2019 briefing on the PI motion draw various inferences they claim to support their right to class certification and to class-wide injunctive relief.  But all of those inferences spring from three demonstrably false premises–*i.e.*, that section 523(a)(8)(B) is the *only* basis on which the loans in

that database could be deemed non-dischargeable; that all of the borrowers referenced in that database actually received bankruptcy discharges; and that so-called IPEDs data provides a reliable basis on which to determine the actual cost of attendance for each of the borrowers in that database. Since none of these propositions is true (*see* Farrell Decl., 3-9; Dkt. Nos. 188, 189, 191, & 200), the database and all inferences drawn from it are of *no* evidentiary value in assessing either the PI motion or the TRO motion.

The TRO motion thus pends before the Court with essentially no evidentiary support and, most certainly, with no evidence that could possibly support an injunction purportedly benefiting thousands of absent members of a putative class.

## ARGUMENT

### I.    Plaintiffs Seek an Unauthorized TRO of Indefinite Duration

Under Federal Rule of Civil Procedure 65(b)(2), made applicable here through Bankruptcy Rule 7065, the initial term of a temporary restraining order is limited to 14 days.  And, that initial term can only be extended once, for no more than 14 additional days. In other words, a TRO can never last more than 28 days.  This limitation applies equally to *ex parte* TROs issued without notice and to TROs issued after notice and a full adversarial hearing.  *See*, *e.g.*, *Pan Am. World Airways, Inc. v. Flight Engineers' Intern. Ass'n*, 306 F.2d 840 (2d Cir. 1962).

Here, Plaintiffs seek a TRO of indefinite duration.  This is one of the few points on which their TRO motion is actually clear:  "The purpose of this Motion for a Temporary Restraining Order is to stop Navient's illegal collection efforts *until such time that the Court can rule on the motion for preliminary injunction*."  TRO Motion, Dkt. No. 314, p. 1 (emphasis added).

Since there is no indication that the Court will be able to rule on the PI motion within 14 days (or even 28 days) of the issuance of any TRO, the proposed TRO could well last beyond the

prescribed time periods.  Any such TRO of indefinite duration would violate the clear provisions of Rule 65(b)(2).  For this reason alone, Plaintiffs' motion for TRO should be denied.

## II.    Plaintiffs Seek an Unauthorized TRO of Nationwide Scope

Plaintiffs seek a nationwide TRO that would restrain collection activities in favor of borrowers who received discharge injunctions in every judicial district in the country.  But, because the relief Plaintiffs seek is only available through an action for contempt, and since contempt can only be addressed by the court that issued an injunction, any authority this Court has to grant the requested relief would be limited to borrowers who received discharges in the Eastern District of New York.

### A.    Plaintiffs Have Only One Potential Claim:  To Enforce Injunctions Through Contempt

There is no statutory provision (in the Bankruptcy Code or elsewhere) establishing an express cause of action for alleged violations of bankruptcy discharge orders.  As a result, every court to consider the issue has held that no private right of action exists by which a debtor can assert claims that a creditor has violated his or her discharge.  *See*, *e.g.*, *Garfield v. Ocwen Loan Servicing*, 811 F.3d 86, 91–92 (2d Cir. 2016); *Bradley v. Fina*, 550 F. App'x 150, 154 (4th Cir. 2014); *Alderwoods Group., Inc. v. Garcia*, 682 F.3d 958, 966, 970 (11th Cir. 2012); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188–89 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (Posner, J.); *Pertuso*, 233 F.3d at 421–23; *Bessette v. Avco Fin. Serv., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000); *see also In re Joubert v. ABN AMRO Mort. Group., Inc.*, 411 F.3d 452, 456 (3d Cir. 2005).[3]

---

[3] Congressional action with respect to the automatic stay confirms the validity of this conclusion.  Congress amended the Bankruptcy Code in 1984 to "provide an express right of action under the automatic stay provision of 11 U.S.C. § 362(h)."  *Pertuso v. Ford Motor Credit Co*., 233 F.3d 417, 422 (6th Cir. 2000).  "It did so because reliance on the

That is not to say that there is no remedy at all against a creditor who violates a discharge order. Rather, since a discharge order "operates as an injunction," 11 U.S.C. § 524(a)(2), violations must be addressed through a motion or request to hold the creditor in contempt. *See, e.g.*, *Alderwoods*, 682 F.3d at 967; *Cox*, 239 F.3d at 915–16. That is because "the creditor who attempts to collect a discharged debt is violating . . . an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge." *Cox*, 239 F.3d at 915; *see also Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997). As the Second Circuit has held, this is the case even though the scope of the discharge injunction is defined by statute: "Neither the statutory basis of the [discharge] order nor its similarity—even uniformity—across bankruptcy cases alters the simple fact that the discharge injunction is an order issued by the bankruptcy court[.]" *Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 390–91 (2d Cir. 2018).

> **B.    Only the Issuing Court is Empowered to Enforce An Injunction Through Contempt**

From the clear rule that discharge injunctions can only be enforced through actions for contempt, it follows that this Court lacks authority to impose the nationwide relief that Plaintiffs seek. That authority is lacking because the power to address contemptuous conduct in violation of an injunction resides uniquely and solely in the court that issued the order allegedly violated. *See, e.g., Gunn v. Univ. Comm, to End the War in Viet Nam*, 399 U.S. 383, 389 (1970).

This limitation on the power to address contempt has been part of American jurisprudence for well over a hundred years and traces its roots back to common-law England. *See, e.g.*, *In re Debs*, 158 U.S. 564, 594-95 (1895). And, far more recently, the United States Supreme Court, in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), confirmed that this limitation applies in cases

---

contempt power to remedy violations of § 362 had been widely criticized." *Id.* In contrast, Congress did not create an "express right of action" for the companion statute to § 362: the § 524 discharge injunction. *Id.*

alleging violations of discharge injunctions (which are statutory and uniform) to the same extent as in cases involving non-statutory injunctions that are hand-crafted by individual judges.

As the Court said in *Taggart*, "[t]he statutes specifying that a discharge order 'operates as an injunction'; § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions. . . . [A]s part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." 139 S. Ct. at 1801.

This "old soil" includes the "traditional" limitation from "equity practice" that only the issuing court can address contempt claims for violating an injunction. Indeed, the Eleventh Circuit correctly reached this conclusion in *Alderwoods,* some seven years before *Taggart*. There, the court considered whether "a bankruptcy court in one federal district has jurisdiction to determine whether a debt was discharged in a bankruptcy case litigated in another federal district." *Alderwoods*, 682 F.3d at 961. After finding that "the ultimate question . . . is which court has the power to enforce the discharge injunction," the Eleventh Circuit concluded that "the court that issued the injunctive order alone possesses the power to enforce compliance with, and punish contempt of, that order." *Id*. at 968, 969, 971.

As a result, the Eleventh Circuit held that the court in which the discharge-violation claims were filed, but which had not issued the underlying discharge order, "lacked jurisdiction to entertain the complaint because the discharge injunction was never its to enforce." *Id*. at 971. This result followed from the nature of a bankruptcy court's jurisdiction over a debtor's estate, *id*. at

969, and from the general proposition that a court that enters an injunction retains the sole jurisdiction to enforce it. *Id*. at 970.

The Fifth Circuit, in a 2019 opinion issued after *Taggart* was decided, reached the same conclusion, this time in the precise class-action context now before this Court. *See In re Crocker*, 941 F.3d 206 (5th Cir. 2019). In *Crocker*, the bankruptcy court determined it had jurisdiction to interpret and enforce against Navient discharge orders entered in other districts. *See id*. at 215. In essence, the *Crocker* bankruptcy court reasoned that (a) because a discharge injunction was not subject to discretionary interpretation, there should not be any obligation to return to the issuing court for its enforcement; and (b) when enforcing a discharge, a court is simply enforcing the statute. *Id*. The bankruptcy court also cited as authority 28 U.S.C. § 157, which sets out many of the procedures for bankruptcy courts and the authority of the district courts over them, and 28 U.S.C. § 1334, which grants to district courts "original and exclusive jurisdiction of all cases under" the Bankruptcy Code, with some exceptions. *Id*.

The Fifth Circuit soundly rejected the bankruptcy court's reasoning and conclusion, focusing its analysis on a narrow question: "[O]ur question is limited: may a different bankruptcy court than the one that issued the discharge that caused the injunction to arise, enforce that injunction regardless of whether the impediment is jurisdiction, venue, prudential considerations, or something else?" *Id*.

In ruling that the issuing court was the sole place where the contempt proceeding could occur, the Fifth Circuit found that "the Supreme Court decision [in *Taggart*] placed the civil contempt that results from violating a bankruptcy discharge injunction under the general principles for contempt" and held that enforcement of discharge injunctions through contempt proceedings

is limited to the "originating court." *Id*. at 216 (citing *Taggart*, 139 S. Ct. at 1801; *Anderson*, 884 F.3d at 390–91.)

There can, moreover, be little doubt that the Second Circuit, when faced directly with the issue, will read *Taggart* the same way and conclude, as have the Fifth and Eleventh Circuits, that any action for contempt of a discharge injunction must be heard by the court that issued the discharge. *See In re Belton v. GE Cap. Retail Bank*, 961 F.3d 612 (2d Cir. 2020). As the Second Circuit held in *Belton*:

> [W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order. Most circuits that have considered the issue have rejected the notion. *See Crocker*, 941 F.3d at 216–17 ("We adopt the language of [*Anderson*] that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.' "); *Alderwoods Grp.*, 682 F.3d at 970 ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Walls*, 276 F.3d at 509–10 (same); *Cox*, 239 F.3d at 916–17 (same); *but see Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) (holding that a debtor is not required to "bring her claims in the court that issued the original discharge order"). And those cases are buttressed by the Supreme Court's recent decision in *Taggart*, which made clear that the contempt powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions." 139 S. Ct. at 1802.

*Id*. at 617-18*; see also Anderson*, 844 F.3d at 391 ("violations of this court-ordered injunction are enforceable only by the bankruptcy court and only by a contempt citation).

\* \* \*

Under *Taggart*, and as explained in *Crocker* and *Alderwoods*, this Court cannot issue the nationwide relief that Plaintiffs seek.  This is yet another reason requiring denial of the TRO motion.

## III.    Plaintiffs Seek an Unauthorized TRO for an As-Yet Uncertified Class

Plaintiffs have moved for class certification, but that motion remains pending.  They nevertheless seek a pre-certification TRO in favor of a putative class, arguing that courts have

broad authority under "general equity powers" to issue class-wide injunctive relief "without a formal class ruling." TRO Motion, Dkt. No. 314, p. 13. On this point, Plaintiffs have again shifted positions. In their briefing on the PI motion, Plaintiffs acknowledge that a certification order would have to precede any injunctive order. Certification Motion, Dkt. No. 194, p. 6 ("Plaintiffs are not asking for the entry of an injunction prior to the Court's determination of the class certification issue."). They have now reversed themselves on the critical question of timing.

Plaintiffs cite only one case from the Second Circuit to support the proposition that a class-wide injunction can be issued before a class is certified. *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004). *LaForest*, however, is clearly distinguishable. There, the district court issued a class-wide preliminary injunction before certification of the class. But, by the time case was ripe for decision at the Second Circuit, any error in that process had been cured by the district court's issuance of a subsequent order certifying the class. The timing question presented here was not presented in *LaForest*.

*LaForest*, moreover, was a case in which certification was sought—and was properly granted—under subsection (b)(2) of Rule 23, which allows for class-wide "final injunctive relief" without the necessity of providing class members notice and an opportunity to exclude themselves from the class (*i.e.*, to "opt out"). The same is true for each of the other cases Plaintiffs cite as authority for granting a pre-certification injunction—each was a (b)(2) case where opt-out rights were not required. Here, by contrast, any certification order would have to be issued, if at all, under subsection (b)(3). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011) (certification under (b)(2) is unavailable where monetary relief is not incidental to injunctive relief

and "when each class member would be entitled to an individualized award of monetary damages").[4]

This distinction is critical in a case like this. Here, the proposed injunctive relief, if granted, could potentially benefit some putative class members, but it is also certain to prejudice, perhaps severely, other putative class members. The potential for this disparate treatment arises from the nature of the interim relief Plaintiffs seek. The proposed TRO and preliminary injunction would prevent Navient from sending collection communications and engaging in other collection activities until the entry of final judgment. With this kind of interim relief in place, putative class members would not receive statements or other requests for payment from Navient and most, if not all, would simply stop paying down their loans. *See* Farrell Declaration at ¶ 11. Presumably, that is the whole point of the TRO motion and the preliminary injunction motion: to provide putative class members with a basis on which to discontinue loan payments while this case proceeds to final resolution.

But, Plaintiffs have not asked for any order preventing the accrual of interest during any period of interim relief, nor would there be any legal basis on which to enter any such order. Thus, even if a TRO or preliminary injunction were issued, interest would continue to accrue on unpaid loan balances. This continued accrual of interest would not harm any putative class member who might be entitled, at the end of this case, to have her entire loan balance erased; the accrued interest, as with any unpaid principal, would be wiped away for any such putative class member by any final judgment against Navient.

---

[4] On this point, Navient incorporates the discussion of Rule 23(b)(2) and *Wal-Mart Stores, Inc. v. Dukes* from its Opposition to Plaintiffs' Motion for Class Certification. *See* Dkt. No. 200, pp. 22-27. As that discussion makes clear, Plaintiffs' request for individualized monetary relief is of central importance in this case, and there is no "final injunctive relief" that could be "appropriate" as applied to the "class as a whole."

On the other hand, putative class members who, after final judgment, will remain obligated on all or a portion of their loans will suffer a different fate.[5]  Those putative class members will have to resume payment on their loans at the end of this case, but their indebtedness and their monthly payments will be significantly higher (due to accrued and unpaid interest) than they would have been if their payments had continued during the pendency of this case.

This no hypothetical problem.  As explained in more detail below, plaintiffs seek a TRO (and ultimately a preliminary injunction) that would temporarily enjoin collection activities on loans that were *within* the cost of attendance and were thus unquestionably made non-dischargeable by 11 U.S.C. § 523(a)(8)(B).  As Plaintiffs acknowledge, even if interim relief were to be granted, those loans can and likely will go back into collection after final judgment in this case, thereby guaranteeing the harm described above for thousands of borrowers.

Following the correct sequence—entertaining TRO and preliminary injunction motions only *after* class certification and *after* class members are given notice and opportunity to opt out— would give these putative class members the opportunity to protect their interests.  Once notified of the issues, they could make an informed choice among various options:  remain in the class and suspend loan payments, thereby accepting the risk that accrued interest could potentially increase their indebtedness; remain in the class and continue to make loan payments, thereby mitigating the

---

[5] Even if the Court were to issue the proposed TRO and preliminary injunction, there are a number of scenarios under which loans covered by this provisional relief could, upon final judgment, reenter the collection process, albeit with balances increased through accrued interest.  First, the many loans *within* the cost of attendance that would be captured by the proposed injunctive relief would almost certainly be returned to collection status.  Second, it is far from certain that Plaintiffs will ultimately prevail on their liability theory, meaning that *all* loans covered by the proposed provisional relief could go back into collection at the end of this case.  Third, although Plaintiffs advocate an all-or-nothing theory under which any excess over the cost of attendance (even one penny) renders the entire loan dischargeable, there is no support for that extreme position; even if Plaintiffs otherwise prevail on their liability theory, it is highly likely that Navient will remain entitled to collect on the portions of such loans that were within the cost of attendance.

risk that accrued interest could later increase their indebtedness; or exclude themselves from the class altogether.

Granting a TRO or a preliminary injunction *before* class certification would have the opposite impact.  It would effectively expose a significant portion of the putative class to substantial harm without notice or an opportunity to protect themselves.  This would be problematic enough in the (b)(2) context (where opt-out rights are not available). In the (b)(3) context, where no class can be certified without opt-out rights, it would be patently unconstitutional.  *See*, *e.g.*, 7AA Wright & Miller, Federal Practice and Procedure § 1786 (without the notice and opt-out requirements applicable to (b)(3) classes, "it would be constitutionally impermissible to give the judgment binding effect against the absent class members").

For this additional reason, Plaintiffs' TRO motion should be denied.

## IV.    Plaintiffs Seek an Unauthorized Burden-Shifting TRO

As previously noted, Plaintiffs theorize that certain of the loans on which Navient continues to collect were discharged in bankruptcy because the disbursed amount exceeded the "cost of attendance."  That is Plaintiffs' sole theory of liability.  One would expect, then, that Plaintiffs would limit any putative class to borrowers who received such "excess" loans and to provide a reasonable methodology to ascertain the identity of such borrowers.  Plaintiffs, after all, have the burden to satisfy *all* Rule 23 requirements for certification of a class, including that the proposed class is ascertainable and that the claims of the class representatives are typical of those of the putative class.  S*ee, e.g.*, *Wal-Mart Stores v. Dukes*, 564 U.S. at 350; *Shady Grove Orthopedics Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2008).

One would also expect, in this context, that Plaintiffs would identify in any motion for TRO or preliminary injunction the parties (be they named plaintiffs or putative class members) who actually received loans exceeding the cost of attendance and are thus in need of injunctive

relief to protect their interests, given that the burden to prove the requisites for issuance of a TRO or a preliminary injunction rests always on the movant and can never be shifted to the respondent. *See, e.g.*, *Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drives Loc. No. 20*, 415 U.S. 423, 444 (1974).

Here, Plaintiffs ask the Court to relieve them of all of these burdens and to impose injunctive relief covering *all* loans and *all* borrowers to which their legal theory could even *theoretically* apply (either because their loans were "private" or because they were "direct to consumer").  Because Plaintiffs have failed to identify the specific class members in whose favor a TRO or preliminary injunction would operate and have similarly failed to identify any loans (other than those of the two named Plaintiffs) that actually exceeded the cost of attendance, the TRO and preliminary injunction they seek would leave it to Navient to figure out which borrowers it is restrained from contacting and which loans it must place into a collection cease.[6]

Plaintiffs cite no authority for this kind of burden-shifting relief, and none exists.  To obtain an injunction or a TRO, the movant must identify specific, real-word facts and demonstrate that, based on those facts, the movant is at least "likely" to succeed on the merits of a viable legal cause of action.  *See, e.g.*, *Andino v. Fischer*, 555 F.Supp.2d 418, 419 (S.D.N.Y. 2008)(collecting Second Circuit cases).  Where, as here, the movant seeks a mandatory injunction that would alter the status quo, the burden is even higher, requiring proof of a "clear" or "substantial" likelihood of success. *See, e.g.*, *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003).

---

[6] Plaintiffs acknowledge that this proposed relief would necessarily preclude lawful collection activities on loans clearly exempt from discharge under 11 U.S.C. § 523(a)(8), but they say that is not problematic, since Navient will later, after issuance of injunctive relief, have the opportunity to move the Court to exempt certain borrowers or loans from the injunction's scope.  The fallacy in that position is addressed separately in Section V.

It follows that injunctions cannot be based on hypotheticals. Under the applicable standards, it is obviously not enough to identify a potential legal theory and a universe of people who might or might not be able to avail themselves of that theory, depending on uncertain and undeveloped facts. *See, e.g.*, *Winter v. Nat. Resource Council*, 555 U.S. 7, 22 (2008) (preliminary injunctions cannot be based on "possibilit[ies]"). Yet, that is all that Plaintiffs have done here. They say that private loans or direct-to-consumer loans are non-dischargeable in some circumstances, but they have to concede, and do concede, that such loans might well be dischargeable in other circumstances. They say that all borrowers on private loans or direct-to-consumer loans are within a universe of people that could theoretically be subject to unlawful collection activities, but they have to concede, and do concede, that there are thousands of people within that universe who are not being subjected to any illegal collection activity.

Without more, there simply is no basis on which to conclude that there is a "clear" or "substantial" likelihood that the thousands of borrowers who would be captured in the proposed injunctive relief will succeed on any claim against Navient. In this context, it would be patently improper to issue a blanket injunction in favor of everyone who could hypothetically have a claim against Navient, thereby foisting on Navient the burden to weed out those who cannot prevail or who are unlikely to prevail.

For this additional reason, the TRO motion should be denied.

## V.    Plaintiffs Seek an Unauthorized TRO in Favor of Uninjured Parties with no Article III Standing

The burden-shifting process proposed by Plaintiffs is particularly pernicious because it would ensnare in the injunction's scope thousands of borrowers who, plaintiffs concede, have suffered *no* injury and against whom Navient has committed *no* wrong. To this significant extent, the proposed injunction is untethered to Plaintiffs' legal theory and is grossly overbroad.

Plaintiffs' answer is to say that, once this overbroad relief is put in place, Navient will be free to come forward with evidence identifying the uninjured parties. Under Plaintiffs' proposed structure, once Navient proves that it has acted lawfully vis-a-vis these uninjured parties, they can be removed from the class and exempted from the reach of any TRO or preliminary injunction imposed by the Court. *See* Dkt. No. 168-1. In other words, Plaintiffs seek to shift to Navient the burden to identify those parties who should *not* be class members and to identify those loans and borrowers on which Plaintiffs do *not* have any chance of succeeding on the merits.

Plaintiffs have undoubtedly proposed this unprecedented structure out of a recognition that there is no way to address "cost of attendance" issues on a class-wide basis consistent with the requirements of Rule 23.[7] So, they have instead suggested that Navient be enjoined from collection activities on *all* Title IV loans that are "private" or at least all of them that were "direct to consumer." If adopted, this would grant injunctive relief—at least until Navient came forward with the individualized evidence on "cost of attendance" that Plaintiffs cannot find or refuse to present—in favor of borrowers who received loans that did *not* exceed the cost of attendance and whose loans were unquestionably non-dischargeable under 11 U.S.C. § 523(a)(8)(B).

---

[7] For at least three reasons, determining "cost of attendance" for putative class members would involve thousands of highly individualized, borrower-specific inquiries. First, cost of attendance varies from school to school; here, even if one only considers Tuition Answer loans, the attendance costs at no fewer than 3,000 schools would have to be identified. *See* Farrell Declaration at ¶ 12. Second, although Title IV schools are required to determine cost of attendance, that determination can and often does vary from student to student at each school, based on individualized circumstances. As a result, school-published data on average or estimated costs is not sufficient for purposes of addressing Plaintiffs' legal theory. *See* Dkt. Nos. 188, 189, 191, & 200. Rather, determining an accurate cost-of-attendance figure would require review of the records and circumstances of thousands of individual students. Third, under Plaintiffs' theory, the cost of attendance determined by the school for a particular student is only the starting point. For purposes of 11 U.S.C. § 523(a)(8)(B), Plaintiffs say, the final cost of attendance can only be determined for a given student after deducting from the school-determined cost all of the other financial aid available to that student, whether in the form of scholarships, stipends, or otherwise. The only way to get that information is again to review the individual records and circumstances of each putative class member.

This structure, for which Plaintiffs offer no support, would turn on its head the traditional and mandated procedure for resolving motions for class certification and for injunctive relief of a temporary and preliminary nature.

Plaintiffs seem to suggest that this burden-shifting at the preliminary injunction and TRO stage is permissible because Navient, as creditor, bears the ultimate burden of proving that the loans at issue fit with one of the exceptions to discharge set forth in 11 U.S.C. § 523(a)(8). *See* PI motion, Dkt. No. 171, pp. 1-2 ("Since the burden is on [Navient] to establish non-dischargeability, collection on all direct-to-consumer loans . . . should immediately cease.  If and when [Navient] can establish that particular loans do not exceed the cost of attendance, they may apply to the Court for permission to resume collection as to those loans."); *see* also Motion for Partial Summary Judgment, Dkt. No. 170, pp. 15-17.

This argument fails to justify the radical, burden-shifting relief Plaintiffs seek for a least two reasons.  First, Plaintiffs tell only half the story on the burden issue.  It may be true that, once the issue is joined, a creditor has the burden to show that a student loan is non-dischargeable under one or more of the subparts of 11 U.S.C. § 523(a)(8).  That said, upon initial issuance of a discharge, debts scheduled as student loans are presumed to be non-dischargeable; any debtor who contends that her student loans should be treated differently has the burden to file an adversary proceeding and to obtain a ruling.  *See*, *e.g., United States Aid Finds, Inc. v. Espinosa*, 559 U.S. 260, 269, 274 n. 11 (2010); *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). It is only then—after the debtor has challenged non-dischargeability—that the substantive burden shifts to the creditor to prove application of one of 11 U.S.C. § 523(a)(8)'s exceptions to discharge.

This distinction is important here, of course, because—out of the thousands of borrowers in the putative class—only Homaidan and Youssef have filed an adversary proceeding claiming

that their loans were subject to discharge.  For all other borrowers and loans in the putative class, no burden has yet been shifted to Navient.

And, as important, a plaintiff seeking a TRO or preliminary injunction retains the burden to show that it is likely to succeed on the merits of *all* issues, even those on which the defendant, at final trial, will bear the burden of proof.  *See, e.g.*, *eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.,* 519 F.Supp.3d 1129, 1134 (S.D. Fla. 2021); *Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.,* 479 F.Supp. 351, 355 (N.D. Ga. 1979) (*citing  Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir. 1974)).

Thus, for present purposes, it does not matter that Navient may bear the ultimate burden at trial to show that certain loans were non-dischargeable.  To obtain a preliminary injunction or a TRO, Plaintiffs must show that there is a substantial likelihood that Navient will be unable at trial to meet its burden, and they must make that showing with respect to each borrower and loan for which they seek provisional relief.  *See, e.g.*, *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,* 990 F.2d 25, 27 (1st Cir. 1993) (at preliminary injunction stage, plaintiff must demonstrate that defendant is not likely to prevail on its defenses); *Suntrust Bank v. Houghton Mifflin Co.,* 268 F.3d 1257, 1275 n. 2 (11th Cir. 2001) (same); *Mova Pharma Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (same); *DSC Communications Corp. v. DGI Techs., Inc*. 81 F.3d 597, 601 (5th Cir. 1996) (same).  Plaintiffs have not even attempted to make this showing, but have instead simply assumed the issue away by proposing a structure that would impermissibly shift the burden to Navient.

To compound the problem, Plaintiffs' attempt to restrain collection activities on loans that even they would admit were within the cost of attendance (and thus non-dischargeable under 11 U.S.C. § 523(a)(8)(B)) runs directly into constitutional limitations on the exercise of judicial

power.  The borrowers on these loans, even Plaintiffs would admit, have been subjected to *no* wrongdoing and have suffered *no* harm.  If any one of them were to sue Navient individually for discharge violations, they would be unable to assert *any* injury in fact fairly traceable to the challenged action and would thus lack Article III standing.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

It follows that the loans of these uninjured borrowers against whom Navient has committed none of the wrongdoing alleged in this case cannot be included within the scope of any class or any injunctive relief.  *See, e.g., Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  As the Second Circuit made clear in *Denney*, "[n]o class may be certified that contains members lacking Article III standing" and any "class must therefore be defined in such a way that anyone within it would have standing."  *Id.*

This fundamental requirement for class standing dooms Plaintiffs' attempt to obtain a global injunction in favor of thousands of uninjured parties.  Any such injunction would violate Article III standing requirements from the moment of its issuance.  And, no effort to give Navient an after-the-fact mechanism through which to later seek exceptions for certain loans or borrowers could retroactively make constitutional a structure that was unconstitutional at its birth.[8]

---

[8] Injunctions necessary to restrain unlawful conduct may sometimes by necessity also prevent the enjoined party from engaging in *some* degree of lawful activity.  So long as the injunction is narrowly tailored to minimize interference with lawful conduct, there are circumstances in which such an injunction may be permissible. *Compare Philip Morris, Inc. v. Otanedia Ltd.*, 331 F. Supp. 2d 246-47, 288 (S.D.N.Y. 2004) *with Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 640 (S.D.N.Y. 2015).  These principles are not at play here.  The injunctive relief requested by Plaintiffs would preclude collection activities with respect to thousands of borrowers whose loans were within the cost of attendance.  As to those borrowers, the injunction would not incidentally restrain lawful conduct as part of a broader effort to stop illegality. Rather, as to those borrowers, there is no illegality of any kind to enjoin; 100% of the restrained conduct would be completely lawful.

**VI.    Plaintiffs Seek an Unauthorized TRO with No Proof of any Emergency or Exigency**

Plaintiffs filed this suit on June 23, 2017.  *See* Dkt. No. 1.  When the complaint was filed, Plaintiffs' counsel was well familiar with the practice, in cases like this, of seeking temporary or preliminary relief on an emergency or expedited basis on the theory that a borrower subjected to a creditor's post-discharge collection efforts suffers harm that is necessary irreparable.  Indeed, the plaintiffs' lawyers here have cited the Court to proceedings in *Crocker*, a discharge-violation case they filed against Navient a few months before they filed this case.  In *Crocker*, these same lawyers sought and obtained a TRO within days of filing the complaint and promptly thereafter sought a preliminary injunction on a class-wide basis.   They had in hand, by March 2017, on-the-record comments from the court that they now cite to this Court as persuasive authority for a finding that the class here will suffer irreparable injury in the absence of emergency relief.  *See* TRO Motion, Dkt. No, 314, p. 9.

It is thus not surprising that the initial complaint in this case, and all subsequent amendments, have contained a request for injunctive relief.  What *is* surprising is that counsel waited more than two years after the complaint was filed—until December 19, 2019—to seek a preliminary injunction.  It is equally surprising that they waited another two-plus years after that— until April 7, 2022—to seek an emergency TRO.

This delay is highly relevant and counsels strongly against granting the emergency and provisional relief Plaintiffs seek.  *See, e.g.*, *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985); *Silber v. Barbara's Bakery, Inc.* 950 F.Supp.2d 432, 441-42 (E.D.N.Y. 2013).  TROs and preliminary injunctions are routinely denied based on periods of delay far less than those here. *See, e.g.*, *Life Techs. Corp. v. AB Sciex Pte Ltd,* 2011 WL 1419612, at *7 (S.D.N.Y. Apr. 11, 2011). In fact, courts within the Second Circuit typically decline to grant preliminary injunctions in the

face of unexplained delay of more than two months.  *See, e.g.*, *Gidatex, S.R.L. v. Campaniello Imports, Ltd.,* 13 F. Supp.2d 417, 419 (S.D.N.Y. 1998).

Plaintiffs acknowledge a delay far exceeding this two-month benchmark, but seek to excuse it on three grounds.  First, they say that the Navient defendants "knew their conduct was illegal" and thus "can hardly complain about any delay."  Dkt. 194, p. 1.  This is just not true.  Navient has never conceded that it engaged in any improper conduct vis-à-vis Homaidan, Youssef, or any putative class member.  Far from it.  Navient to this day is pursuing in absolute good faith its firmly held view that it will ultimately prevail in this case.

Next, Plaintiffs claim that their delay in seeking provisional relief was necessary because, at the inception of this case, Navient engaged in "substantial motion practice."  *Id.*   Again, not true.  Navient has filed a number of motions, but Plaintiffs have not identified a single one of them that interfered with their ability to move for provisional injunctive relief.  And, the law is clear that, notwithstanding Navient's motions, this Court could have entertained any motion filed by Plaintiffs for a restraining order or injunctive relief.  *See, e.g.*, *Roso-Lino Beverage Dist. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124 (2d Cir. 1984) (pending motion to compel arbitration does not prevent issuance of preliminary injunction); *American Esp. Financial Advisors  v., Thorely,* 147 F.3d 229 (2d Cir. 1998) (same); *Standard Inv. Chartered, Inc. v. NASD*, 2007 WL 1121734, at *3 (S.D.N.Y. Apr. 11, 2007) (pending motion to dismiss does not preclude the issuance of injunctive relief).

Third, Plaintiffs contend that their own delay in seeking provisional relief is somehow excused because Navient supposedly "delay[ed] in providing adequate discovery."  Dkt. 194, p. 1.  But, Plaintiffs fail to support that claim with any specifics or to detail any diligence on their part to have expedited the discovery process.  And, since the preliminary injunction and TRO motions

they ultimately filed rely only minimally on Navient-provided discovery, this claim, in any event, rings hollow.

Thus, with no viable excuse for their years-long delay, Plaintiffs are forced to fall back on the last-ditch claim that the delay, even if unexcused, is legally irrelevant.  This claim, in turn, is based on the dubious proposition that the normal requirement to show irreparable injury is somehow suspended when injunctive relief is sought under 11 U.S.C. § 105.  *See* Dkt. No. 314, pp. 6-7.  In essence, Plaintiffs argue that there is a presumption of irreparable injury whenever section 105 is invoked as the basis for injunctive relief.

In support of this view, Plaintiffs cite a handful of cases decided before the Supreme Court's 2019 decision in *Taggart v. Lorenzen.*  None of them involves an alleged discharge violation, and none of them even remotely supports the proposition that section 105 broadly supplants the traditional standards for granting injunctive relief.  And, even if those cases had interpreted section 105 in this manner, that interpretation would have been effectively overruled by *Taggart*. *Taggart* makes clear that "traditional standards of equity practice" are incorporated into section 105, *see* 139 S. Ct. at 1801, which necessarily means that irreparable injury (and unexcused delay) remain critical elements to consider in any action for injunctive relief brought under section 105.  *See also Perez v. Danbury Hosp.,* 347 F. 3d 419, 426 (2d Cir. 2003) (analyzing laches and undue delay—part of the "old soil" of equity practice—in contempt action); *Matrix Essentials v. Quality King Distributors, Inc.*, 346 F. Supp.2d 384, 392 (E.D.N.Y. 2004 (same).

And, even if there were a presumption of irreparable injury under section 105, it would not make irrelevant the years of unexcused delay that exist here.  In the limited circumstances where such a presumption arises, "any such presumption of irreparable harm is inoperative if the plaintiff

has delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995).

In short, there is no emergency or exigent circumstance here that could possibly justify the TRO Plaintiffs seek, as demonstrated by the fact that they delayed filing their motion for over five years. Nothing new has happened in that five-year period, other than counsel apparently coming to the view that a belated TRO motion might put pressure on Navient to settle. Needless to say, settlement pressure is not among the legitimate purposes for which a TRO may be issued. Plaintiffs' unexcused five-year delay is yet another basis on which their TRO motion should be denied.

## VII.    Plaintiffs Seek an Unauthorized TRO With No Showing of a Likelihood of Success

As described above, plaintiffs have not even tried to establish a likelihood of success with respect to any claims that absent members of the as-yet uncertified class could potentially have against Navient. As to named Plaintiffs Youssef and Homaidan, the attempt has been made, but it falls far short.

Homaidan, for his part, could not possibly be entitled to a restraining order or an injunction against future collection activities. Homaidan's loans have been paid in full and currently have no outstanding balances subject to collection. *See* Dkt. No. 188 at 5-6. And, it is undisputed that Homaidan's loans were paid voluntarily by an unnamed benefactor whom Homaidan either cannot or will not identify. *Id.*

Accordingly, since Homaidan has not himself been injured by any past collection activities and is not subject to any ongoing or future collection activities, he has no standing to assert *any* claims against Navient, let alone any claims for injunctive relief.

With respect to Youssef, Navient has already explained—in opposition to the pending motions for class certification, for summary judgment, and for a preliminary injunction—why she

is unlikely to prevail on the merits of any of her claims.  *See* Dkt Nos. 172, 189, & 200.  Navient incorporates those oppositions here by reference.   As demonstrated in those oppositions, Youssef—having represented to Navient in her loan documents that her loans were within the cost of attendance and would be used only for qualified educational expenses—cannot prevail on her discharge-violation claims.

## VIII.    Plaintiffs Seek an Unauthorized TRO that Would Fail for Vagueness

Federal Rule of Civil Procedure 65, incorporated here through Bankruptcy Rule 7065, provides that every restraining order and every order granting a preliminary injunction must: "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d).

"[These] specificity provisions of Rule 65(d) are no mere technical requirements.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240–41 (2d Cir. 2001) ("[A]n injunction must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed. . . . to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing."); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 174 (2d Cir. 2001) (vacating injunction as overly vague).

Here, the operative portion of the order that Plaintiffs have proposed on their preliminary injunction motion reads in full:

> ORDERED that Defendants shall immediately cease any collection or acts of collection on any of their direct-to-consumer loans without prejudice to their right to petition the Court for partial relief from said injunction upon a showing that certain borrowers' loans do not exceed the cost of attendance as defined in Internal Revenue Code § 221(d).

Dkt. No. 168-1. Presumably, Plaintiffs contend that the "direct to consumer" loans that would be covered by such an order constitute a subset of the 322,000 loans identified in the database that Navient provided in discovery.

To the extent Plaintiffs seek a similarly worded and structured order on their TRO motion, all of the burden-shifting and Article III problems identified above come into play. As previously discussed, any such order would improperly embrace thousands of discharged borrowers for whom Plaintiffs have failed to demonstrate any likelihood of success and would further cover, in an unconstitutional way, thousands of discharged borrowers who, even assuming the validity of Plaintiffs' legal theory, have been subjected to no wrongdoing and have suffered no injury.

That said, even if the proposed burden-shifting structure proposed by Plaintiffs were otherwise proper, the overbroad order they apparently seek would still violate the requirements of Rule 65 in multiple ways and would put Navient at risk of contempt without any meaningful notice of the activities that Navient is precluded from conducting.

First, the proposed order appears to assume that all "direct to consumer" loans are non-dischargeable, if at all, under 11 U.S.C. § 523(a)(8)(B). If that premise were accurate, then Plaintiffs' allegations around "cost of attendance" would arguably be relevant to all direct-to-consumer loans. Plaintiffs, however, have offered no evidence to validate the premise. And, indeed, the assumption built into their proposed order is wrong. The database of 322,000 loans potentially at issue contains certain loans that were "direct to consumer," but that were issued under programs guaranteed or funded, at least in part, by non-profit institutions. *See* Farrell

Declaration at ¶ 9.  Accordingly, any order covering all direct-to-consumer loans would be significantly overbroad.

Second, the proposed order appears to assume that there is a universe of direct-to-consumer loans without non-profit guarantees or funding that is known to or easily discernable by Navient. Even if that were true, the proposed order would still be problematic, since if fails to identify that universe, either by loan number, by borrower name, by program name, or by some other means that would give Navient fair notice of the specific loans at issue.  Any restraining order or injunction would have to provide that level of specificity within its four corners; otherwise Navient would be unable to comply without "referring to other document[s]," in violation of Rule 65(d)(1)(C).

And, in any event, the assumption is again wrong.  Because many of the 80-plus loan programs in the database have not been the subject of detailed discovery in this case, neither Navient nor Plaintiffs have assessed whether or in what sense they offered "direct to consumer" loans.  Plaintiffs, moreover, have provided no meaningful definition of the phrase "direct to consumer."  Thus, to comply with the order proposed by Plaintiffs, Navient would have to first locate and review detailed records related to more than 80 loans programs and then make a guess as to which loans, if any, within those programs Plaintiffs would view as being "direct to consumer."  Any injunctive order that required that level of guesswork and that level of record review could not possibly pass muster under Rule 65, especially where, as here, it would purport to require an "immediate" cessation of activity by Navient without providing any time for Navient to conduct the research necessary to comply.

Third, the proposed order references only loans, with no mention of the borrowers or obligors on those loans.  On its face, the order would require the cessation of collection activities

on all "direct to consumer" loans, even those on which *no* obligor (whether the primary borrower or a co-borrower) ever received a bankruptcy discharge.  To that extent, the proposed order is obviously overbroad.  Any restraining or injunctive order would of course have to be limited to activities directed at obligors who actually received discharges.  And, even on loans with a discharged obligor, any injunctive order would have to allow Navient to continue collection activities directed at any co-borrowers or co-obligors who did not themselves receive discharges.  Yet, Plaintiffs' proposed order would also bar that completely lawful activity.

Finally, the proposed order violates Rule 65 by failing to define the activities that constitute "collection or acts of collection."  For example, and without limitation, would Navient violate the proposed injunction by answering calls or inquiries from class members?  By sending communications to class members that reference the status of their loans but do not ask for payment?  By accepting voluntary payments from class members?  By challenging dischargeability in this or any other pending legal action?  By make reports to credit agencies?  By failing to update or correct information previously reported to credit agencies?  By making entries in Navient's internal records regarding the loans at issue?  By failing to update or revise Navient's internal records?  Without clarity on these issues, the proposed order lacks the specificity required by Rule 65.

## CONCLUSION

As the above analysis reveals, Plaintiffs' position is fundamentally flawed in multiple respects.  In Dkt. Nos. 188, 189, 189, 191, and 200, which Navient hereby incorporates by reference, Navient exposed additional flaws, including (among others) Plaintiffs' improper request for a "successive" injunction and their unjustified request to be relieved of the obligation to post a bond or other security.  Based on all of these flaws, and on Plaintiffs' failure to meet their burden of proof, their TRO motion—filed years too late—should be denied.

Respectfully submitted,

/s/ *Shawn R. Fox*
Shawn R. Fox
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone: 212.548.2100
Email: sfox@mcguirewoods.com

- and -

Thomas M. Farrell (pro hac vice)
McGuireWoods LLP
845 Texas Avenue, Suite 2400
Houston, Texas 77002
Telephone: 713.571.9191
Email: tfarrell@mcguirewoods.com

- and -

Dion W. Hayes (pro hac vice)
K. Elizabeth Sieg (pro hac vice)
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Email: dhayes@mcguirewoods.com
Email: bsieg@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on the 9th day of May, 2022, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Shawn R. Fox*
Shawn R. Fox