UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HOMAIDAN aka Helal K. Homaidan<br><br>          Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>          Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HOMAIDAN aka Helal K. Homaidan<br><br>and<br><br>REEHAM YOUSSEF,<br>on behalf of themselves and all others similarly situated,<br>          Plaintiffs,<br><br>   v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>          Defendants. | Adv. Pro. No. 17-1085 |

## **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER**

**Dated: May 20, 2022**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................iii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.     THE PROPOSED CLASS IS CLEARLY DEFINED IN THE MOTION FOR CLASS CERTIFICATION ............................................................................................... 3

II.    PLAINTIFFS AND THE CLASS HAVE SHOWN A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS. ........................................................................................... 5

III.   THE SCOPE OF THE TRO AND PRELIMINARY INJUNCTION ARE NOT UNCERTAIN. ..................................................................................................................... 6

IV.   THIS COURT HAS JURISDICTION OVER A NATIONWIDE CLASS. ....................... 7

V.    THIS COURT HAS THE POWER TO ISSUE A TEMPORARY RESTRAINING ORDER DESPITE THE FACT THAT THE CLASS HAS NOT YET BEEN CERTIFIED. .......................................................................................................................... 9

VI.   A TEMPORARY RESTRAINING ORDER WILL NOT HARM THE CLASS. ........... 10

VII.  IMMEDIATE INJUNCTIVE RELIEF IS APPROPRIATE NOW. ................................. 10

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ajasa v. Wells Fargo Bank, N.A. (In re Ajasa)*,
   627 B.R. 6 (Bankr. E.D.N.Y. 2021) ............................................................................................ 7

*Ajasa v. Wells Fargo Bank, N.A. (In re Ajasa)*,
   1:21- cv-07085 (E.D.N.Y. April 13, 2022) .................................................................................. 8

*Anderson v. Credit One Bank, N.A.* (*In re Anderson*),
   Adv. Pro. No. 15-08214, (Bankr. S.D.N.Y. May 14, 2015) ........................................................ 7

*Anderson v. Credit One Bank, N.A.* (*In re Anderson*),
   19-cv-03981-NSR, Dkt. No. 20 (S.D.N.Y. Sept. 11, 2019) ........................................................ 8

*Bank of Crete v. Koskotes*,
   733 F. Supp. 648 (S.D.N.Y. 1990) .............................................................................................. 9

*Belton v. GE Capital Retail Bank* (*In re Belton*),
   7:21-cv09492, (S.D.N.Y. Feb. 10, 2022) .................................................................................... 8

*Bruce v. Citicorp.*,
   Case No. 22-134 (May 4, 2022) .................................................................................................. 8

*Bruce v. Citigroup Inc.* (*In Re Bruce*),
   Adv. Pro. No. 14-08224, (Bankr. S.D.N.Y. July 22, 2021) ........................................................ 7

*Credit One Financial v. Anderson (In re Anderson)*,
   550 B.R. 228 (S.D.N.Y. 2016) .................................................................................................... 7

*Credit One Financial v. Anderson (In re Anderson)*,
   No. 7:15-cv-04227, (S.D.N.Y. 2016) .......................................................................................... 7

*Echevarria v. Bank of America Corp.* (*In re Echevarria*),
   Adv. Pro. No. 14-08216, (Bankr. S.D.N.Y. April 14, 2015) ...................................................... 8

*Echevarria v. Bank of America Corp.* (*In re Echevarria*),
   17-cv-08026- VB, (S.D.N.Y. Mar. 14, 2018) ............................................................................. 8

*Golden v. Discover Bank (In re Golden)*,
   630 B.R. 869 (Bankr. E.D.N.Y. 2021) ........................................................................................ 7

*Golden v. JP Morgan Chase Bank (In re Golden)*,
   596 B.R. 239 (E.D.N.Y. 2019) .................................................................................................... 6

*Haynes v. Chase Bank USA, N.A.* (*In re Haynes*),
  Adv. Pro. No. 13-08370, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) .......................... 8

*Haynes v. Chase Bank USA, N.A.* (*In re Haynes*),
  18-cv-03307-VB, (S.D.N.Y. Aug. 24, 2018) .............................................................................. 8

*Homaidan v. SLM Corp. (In re Homaidan)*,
  3 F.4th 595 (2d Cir. 2021) .......................................................................................................... 5

*IGT v. High 5 Games, LLC*,
  No. 17-CV-9792, 2018 WL 2939032 (S.D.N.Y. April 17, 2018) ................................................ 9

*In re Homaidan*,
  596 B.R. 86 (E.D.N.Y. 2019) ...................................................................................................... 8

*LaForest v. Former Clean Air Holding, Co., Inc.*,
  376 F.3d 48 (2d Cir. 2004) .......................................................................................................... 9

*Taggart v. Lorenzen*,
  139 S. Ct. 1795 (2019).......................................................................................................... 1, 6

**Statutes**

11 U.S.C. § 528(a)(8)...................................................................................................................... 5

26 U.S.C. § 221(d) .......................................................................................................................... 4

Plaintiffs Hilal Homaidan and Reeham Youssef, on their own behalf and on behalf of others similarly situated, submit this Reply Memorandum of Law in further support of their Motion for a Temporary Restraining Order ("TRO").

## PRELIMINARY STATEMENT

In opposition to the Motion for a TRO, Defendants resurrect many of the arguments that already have been rebutted in the previous papers submitted in support of Plaintiffs' motions for class certification, a preliminary injunction, and summary judgment.

*First,* Defendants argue that the class as to which the injunction would apply is uncertain. That is incorrect because the class is clearly defined as individuals who received private loans at Title IV institutions, whose loans exceeded the cost of attendance, and who received a discharge in bankruptcy. Defendants contend that they have made loans to some people under governmental loan programs or that were made by non-profit institutions. Loans made by the government or non-profit institutions are simply not included in the class. Defendants do not rebut the fact that the overwhelming number of private loans at issue here were made without nonprofit or government involvement and therefore come within the scope of the class.

*Second*, buried in the back of their brief, is Defendants' half-hearted argument that Plaintiffs have no likelihood of success on the merits. But, in fact, Defendants actions are so devoid of justification that their illegal conduct risks punitive damages under *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

*Third*, Defendants complain that there has been no identification of which loans in their portfolio exceed the cost of attendance. But that does not entitle Defendants to continue to collect on the thousands of loans that exceed cost of attendance. Many thousands of such loans, on their face, exceed the applicable cost of attendance, however it is calculated. There can be no dispute

that for those loans Defendants have no defense. Moreover, it is Defendants who are responsible for any uncertainty as to which loans exceed the cost of attendance. When Defendants made the loans and collected on the loans post-bankruptcy, they made absolutely no effort to determine whether the loans were within the cost of attendance. They now complain that it would be burdensome to do the evaluation of the cost of attendance that they were required to do when they made the loans and when they attempted to collect on the loans after a discharge order.

Stunningly, Defendants believe that they should be able to continue to collect on thousands of discharged loans because *some* unknown and unidentified number of private loans may be nondischargeable. That is not the law and Defendants' illegal activity needs to stop now.

*Fourth*, Defendants complain that the scope of the preliminary injunction and TRO is uncertain. That is incorrect. Plaintiffs seek a TRO and preliminary injunction that enjoins Defendants from collecting on any private loans that exceed the cost of attendance for individuals who received a discharge in bankruptcy. Defendants are free to identify which loans are excluded from the class by virtue of being within the cost of attendance. If Defendants think that such loans exist, they can present such evidence to the Court and exclude those loans from the injunction. There is no reason for the Court to deny relief to an entire class because Defendants chose to make loans in reckless disregard of the standards of dischargeability and now claim that the injunction is overbroad.

*Fifth,* Defendants argue that this Court does not have jurisdiction over a national class. This issue has already been decided against Defendants' position, twice.

*Sixth,* Defendants contend that this Court cannot enter a TRO or a preliminary injunction unless and until it certifies a class. That proposition is simply wrong and Defendants cite no case law to support their argument.

2

*Seventh*, Defendants argue that the TRO would harm those borrowers who do not come within the definition of the class or who wish to continue making payments on their loans. That concern is wrong as a matter of law and exists in every case where a defendant claims that it will ultimately prevail. Further, that concern did not prevent Defendants from agreeing to a consent order in *Crocker v. Navient Solutions, L.L.C.* (*In re Crocker*), Adv. Pro. 16-03175, Dkt. No. 123 (Bankr. S.D. Tex. Apr. 13, 2017), or from entering a letter agreement in *Mazloom v. Navient Solutions, LLC*, Adv. Pro. 20-80036, Dkt. No. 119 (Bankr. N.D.N.Y. Apr. 26, 2022) to refrain from continued collection in these actions. Any purported harm to the class is easily addressed. Defendants can provide court-approved notice to the class advising them of the entry of the TRO and advising anyone who wishes to continue making payments on their loans that they may do so.

*Eighth*, Defendants complain that Plaintiffs have made no showing as to why immediate injunctive relief should be entered. The fact that Defendants are collecting millions of dollars from people whose debts are discharged in bankruptcy should, in and of itself, provide sufficient reason for this Court to take immediate action. Defendants complain that any TRO should be of limited duration and Plaintiffs agree. Plaintiffs believe that the TRO should only last until the Court is able to rule on Plaintiffs' motion for a preliminary injunction that was made in December 2019.

*Finally*, it is entirely untrue, as Defendants suggest (Dkt. No. 320 at 2), that mediation or settlement talks are ongoing. They are not. The mediation terminated on March 11, 2022. There have been absolutely no settlement discussions since.

## **ARGUMENT**

### I. **THE PROPOSED CLASS IS CLEARLY DEFINED IN THE MOTION FOR CLASS CERTIFICATION**

In their motion for class certification filed on December 19, 2019 (Dkt. No. 169 at 15), Plaintiffs define the class as follows:

3

> Individuals who attended or intended to attend Title IV institutions and received private loans owned or serviced by Defendants, which exceeded the costs of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

This class definition is clear, definite, and based upon objective criteria. The definition specifically says "private" loans. Defendants' complaint that they hold loans that were made by governmental entities or non-profits is a *non sequitur* since governmental and non-profit loans are excluded from the scope of the class.

Defendants also complain that "'determining 'cost of attendance' for putative class members would involve thousands of highly individualized, borrower specific inquiries.'" Defs.' Br. (Dkt. No. 320 at 21, n.7). However, it is beyond dispute that there are thousands of loans that on their face exceed any amount of the cost of attendance that Defendants have posited. There is no defense for collecting on those loans. Indeed it is ironic that Defendants now complain about the effort they have to expend to determine the cost of attendance because Defendants made absolutely no effort to determine cost of attendance, either when they made the loans or when they resumed collection on those loans post-discharge and falsely told thousands of borrowers that their loans were not discharged in bankruptcy. *See* Dkt. No. 170 at 7-13 ("Plaintiffs' Mem. of Law in Support of their Motion for Partial Summary Judgment dated Dec. 19, 2019") ("S.J. Brief"). Defendants apparently believe that, because they have created a system to obscure which loans are nondischargeable, they are entitled to collect on *all* the loans, discharged or not. Because Defendants have the burden of proving nondischargeability and should be investigating dischargeability before they collect post-discharge, it is appropriate for the Court to enjoin Defendants from collecting on all private loans that exceed the cost of attendance and were the

subject of a bankruptcy discharge, unless and until Defendants identify loans that are outside the class.

Defendants make the fundamentally untrue argument that student loans are presumed to be nondischargeable and that a borrower must bring an adversary proceeding before a student loan can be discharged. That is exactly the opposite of how bankruptcy law works. Student loans are no different than any other consumer loan. They are discharged by operation of law pursuant to the Court's discharge order. Only some student loan debts are excepted from discharge under 11 U.S.C. § 528(a)(8). The Court's discharge order specifically warns creditors like Defendants that not all student loans debts are excepted from discharge. A creditor who attempts to collect on a debt without knowing whether the debt is discharged bears the risk that it is illegally collecting on a discharged debt in violation of § 524. That is why either the creditor or the debtor can bring an adversary proceeding to seek a determination as to dischargeability. Prior to that determination, a private student loan that was discharged by the discharge order remains discharged. And, notably, the creditor always bears the burden of proving that the private student loan was not in fact discharged by the Court's discharged order. Dkt. 314 (Pls.' Moving Br.) at 10-11.

## II. PLAINTIFFS AND THE CLASS HAVE SHOWN A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS.

Buried in the back of their brief is Defendants' half-hearted argument that Plaintiffs do not have a likelihood of success with regard to the merits. But of course, the opposite is true. Defendants have virtually no argument left to justify their post-discharge collection efforts on loans which do not come within any of the provisions of § 523(a)(8). The Second Circuit's decision in *Homaidan v. SLM Corp.* (*In re Homaidan*), 3 F.4th 595 (2d Cir. 2021) rang the death knell to Defendants' argument that § 523(a)(8)(A)(ii) somehow applied to their loans. Similarly, none of the loans within this class come within § 523(a)(8)(A)(i) because they are private,

nongovernmental loans. Finally, Defendants' only argument under § 523(a)(8)(B) is that all their private loans are nondischargeable because their boilerplate promissory notes *say* they are nondischargeable. Dkt. 320 (Defs.' Br.) at 29. This argument has already been rejected by this Court. *See Golden v. JP Morgan Chase Bank* (*In re Golden*), 596 B.R. 239, 267 (E.D.N.Y. 2019); *see also Mazloom v. Navient Solutions, LLC* (*In re Mazloom*), Adv. Pro. 20-80033-6 (Bankr. N.D.N.Y. Mar. 29, 2022), attached hereto as Exhibit A; Pls.' S.J. Br. (Dkt. No. 170) at 17-19 (S.J. Brief). If a loan is not within the cost of attendance it is not a qualified education loan and it is not within § 523(a)(8)(B) whatever the note purports to say. Indeed, Defendants are so devoid of excuse for their reckless and illegal conduct that they risk punitive sanctions under *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) because it is now free from doubt that private loans that exceed the cost of attendance are dischargeable in bankruptcy. There are thousands of loans whose face amounts exceed any cost of attendance Defendants claim applies.

With regard to the individual Plaintiffs, Defendants' arguments are equally meritless. With regard to Plaintiff Youssef, Defendants resurrect once again the argument that her loan is nondischargeable because her loan documents contain boilerplate language suggesting that the loan is nondischargeable. For the reasons set forth immediately above, that is not a defense and clearly does not justify Defendants' actions. With regard to Plaintiff Homaidan, it is true that he does not need injunctive relief but that does not mean that he is not entitled to declaratory, restitutionary, or contempt relief. The mere fact that his loan was paid off does not relieve Defendants of liability for collecting post-discharge on a dischargeable debt.

### III.   THE SCOPE OF THE TRO AND PRELIMINARY INJUNCTION ARE NOT UNCERTAIN.

The scope of the proposed TRO is quite clear: Defendants should be enjoined from collecting on any loans held by members of the class that exceed the cost of attendance.

Defendants' self-imposed, head-in-the-sand approach as to which loans exceed the cost of attendance cannot immunize them from the imposition of a TRO. If a court enjoined a company from selling all units of a product containing counterfeit parts, the defendant could not avoid the injunction by telling the court that it intentionally kept no record of which units had the parts, and therefore that it should be free to sell all its units. That defendant would still be subject to an order requiring it to cease selling all units until it could determine which ones did not contain the counterfeit parts. This case is worse because Defendants were *already* on notice that they could not collect on debts post-discharge without first determining that the debt was nondischargeable. Yet, Defendants not only created a system that made it difficult for them to determine which of its loans exceeded the cost of attendance, they went ahead and tried to collect on the loans *knowing* that they had not made any *bona fide* effort to determine dischargeability. Defendants cannot now claim to be burdened by the very system they created.

## IV. THIS COURT HAS JURISDICTION OVER A NATIONWIDE CLASS.

Seven separate decisions within the Second Circuit, including two from this Court, have now held that bankruptcy courts in this circuit have jurisdiction over a national class to enforce violations of § 524, which Defendants failed to acknowledge in their opposition. *See Bruce v. Citigroup Inc.* (*In Re Bruce*), Adv. Pro. No. 14-08224, Dkt. No. 135 (Bankr. S.D.N.Y. July 22, 2021) (Drain., J.); *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 627 B.R. 6, 26 (Bankr. E.D.N.Y. 2021) (Stong, J.); *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 869 (Bankr. E.D.N.Y. 2021) (Stong, J.); *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), Adv. Pro. No. 15-08214, Dkt. No. 15 (Bankr. S.D.N.Y. May 14, 2015) (Drain., J.); *Credit One Financial v. Anderson* (*In re Anderson*), 550 B.R. 228 (S.D.N.Y. 2016) (Roman, J.) (denying appellant's request for leave to appeal order denying motion to strike national class allegations); *Credit One Financial v. Anderson* (*In re Anderson*), No. 7:15-cv-04227, Dkt. No. 57 (S.D.N.Y. 2016) (Roman, J.) (denying motion

for leave to appeal district court's previous order denying leave to appeal); *Echevarria v. Bank of America Corp.* (*In re Echevarria*), Adv. Pro. No. 14-08216, Dkt. No. 83 (Bankr. S.D.N.Y. April 14, 2015) (Drain, J.); *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), Adv. Pro. No. 13-08370, 2014 WL 3608891, at *6-9 (Bankr. S.D.N.Y. July 22, 2014) (Drain, J.).

Moreover, five other nationwide class actions for declaratory contempt relief for violations of § 524 have already been certified and finally approved by the district court. *Anderson v. Capital One Bank (USA), N.A.* (*In re Anderson*), 19-cv-03981-NSR, Dkt. No. 20 (S.D.N.Y. Sept. 11, 2019); *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 18-cv-03307-VB, Dkt. No. 19 (S.D.N.Y. Aug. 24, 2018); *Echevarria v. Bank of America Corp.* (*In re Echevarria*), 17-cv-08026- VB, Dkt. No. 23 (S.D.N.Y. Mar. 14, 2018); *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 1:21- cv-07085 (E.D.N.Y. April 13, 2022); *Belton v. GE Capital Retail Bank* (*In re Belton*), 7:21-cv09492, Dkt. No. 17 (S.D.N.Y. Feb. 10, 2022).

It is true that the Second Circuit Court of Appeals has accepted review in *Bruce v. Citicorp.* Case No. 22-134, Dkt. No. 32 (May 4, 2022). However, that should not deter this Court from entering immediate relief. First, it will likely be more than a year before the Second Circuit finally rules on the matter. Second, the argument made by appellants in the *Bruce* appeal and the arguments made by Defendants here is that this Court does not have nationwide jurisdiction to enter an order of contempt against Defendants, even though Defendants are present before the Court. Whatever the merits of that argument, it is undisputed that this Court has nationwide jurisdiction to enter a declaratory judgment that the loans at issue are dischargeable, and to enter an injunction and to order restitutionary relief. The constraints that Defendants perceive with regard to the issuance of contempt do not apply at all to any of these forms of relief. *See In re Homaidan*, 596 B.R. 86, 100-101 (E.D.N.Y. 2019) (finding that the complaint seeks declaratory

8

judgment relief); *see also Bank of Crete v. Koskotes*, 733 F. Supp. 648, 649 (S.D.N.Y. 1990) ("Federal courts that issue injunctions can and should give declaratory guidance defining the meaning and scope of injunctions issued"); *IGT v. High 5 Games, LLC*, No. 17-CV-9792, 2018 WL 2939032 (S.D.N.Y. April 17, 2018) (same).

V.  **THIS COURT HAS THE POWER TO ISSUE A TEMPORARY RESTRAINING ORDER DESPITE THE FACT THAT THE CLASS HAS NOT YET BEEN CERTIFIED.**

As Plaintiffs have said before, the order in which the Court wishes to address the various motions before the Court is obviously within the Court's discretion. However, the case law is clear that this Court has the authority to issue a class-wide injunction after making a conditional determination with regard to the certifiability of the class. The facts supporting class certification are before the Court and it is clear that the conditions of Rule 23 have been met and that there are common questions of fact and law that apply to the entire class. *See generally*, Dkt. No. 169.

In their moving brief, Plaintiffs cited numerous cases in which courts have granted a preliminary injunction prior to final class certification. Dkt. No. 314 (Pls.' Moving Br.) at 12. Defendants cite no cases to the contrary and their attempt to distinguish the cases cited by Plaintiffs is unavailing. First, Defendants argue that *LaForest v. Former Clean Air Holding, Co., Inc.*, 376 F.3d 48 (2d Cir. 2004) is not relevant because, by the time the matter got to the Second Circuit, the district court had certified the class. But the issue before the Second Circuit was whether what the district court did *before* it had certified the class was proper and in this regard, the Second Circuit expressly held that the district court had not "abused its discretion in relying on this evidence in concluding that the then putative class suffered irreparable harm warranting a preliminary injunction." *Id.* at 56. Further, Defendants argue that many of the cases cited by Plaintiffs involved Rule 23(b)(2) classes seeking injunctive relief. They fail to explain, however, what the relevance of this fact is. In this case, as in the cases cited, the putative class seeks

injunctive relief because it is suffering irreparable injury and needs relief before the court is able to finally certify the class. Plaintiffs seek injunctive relief to enjoin Defendants from collecting on discharged debts, even if the certification will be determined at a future date.

## VI.   A TEMPORARY RESTRAINING ORDER WILL NOT HARM THE CLASS.

Defendants argue that a TRO would harm the class because it would prevent Defendants "from sending collection communications and engaging in other collection activities until the entry of final judgment. With this kind of interim relief in place, putative class members would not receive statements or other requests for payment from Navient and most, if not all, would simply stop paying down their loans." Dkt. No. 320 at 16.

Defendants' concerns are disingenuous in light of the fact that Defendants agreed to voluntarily cease collection in both the *Crocker* and *Mazloom* actions, both of which relate to classes of student borrowers who attended non-Title IV institutions. To the extent that there may be class members that wish to receive statements, Defendants may be relieved from the injunction to send statements to those who wish to receive them so long as they notify all members of the class that no payment need be made, unless or until they receive further notification from the Court.

## VII.   IMMEDIATE INJUNCTIVE RELIEF IS APPROPRIATE NOW.

Defendants argue that Plaintiffs failed to identify the exigent circumstances requiring emergency relief in 2022, noting that they filed their motion for a preliminary injunction back in December 2019. The exigent circumstances are the fact that Navient admits that it is continuing to collect on over 300,000 loans, the vast majority of which have likely been discharged in bankruptcy. Navient to this day is collecting millions of dollars from people who can least afford to make these payments and whose loans have been discharged in bankruptcy. The effect on a member of this class was graphically illustrated by Judge Jones' comments in *Crocker* and recited in Plaintiffs' moving brief. Dkt. No. 314 (Pls.' Moving Br.) at 8-9. The fact that this irreparable

injury was also felt by the class at the time the motion for a preliminary injunction was made in no way mitigates or otherwise has any bearing on the need for the Court to order a temporary restraining order to stop this conduct.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that their motion for a temporary restraining order be granted.

Dated:  May 20, 2022                                          Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/ George F. Carpinello*

George F. Carpinello
Adam R. Shaw
Jenna C. Smith
30 South Pearl Street
Albany, NY  12207
(518) 434-0600

**JONES, SWANSON, HUDDELL & DASCHBACH, L.L.C.**
Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

*Counsel for Plaintiffs Hilal Homaidan and Reeham Youssef*