UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

In re:                                                                    Chapter 7

Hilal Khalil Homaidan,                                                     Case No. 08-48275-ess
*aka* Helal K Homaidan,

                                Debtor.

-------------------------------------------------------------------------x

In re:                                                                    Chapter 7

Reeham Youssef,                                                           Case No. 13-46495-ess
*aka* Reeham Navarro Youssef,
*aka* Reeham N. Youssef,

                                Debtor.

-------------------------------------------------------------------------x

Hilal Khalil Homaidan on behalf of himself and
all others similarly situated,

and                                                                       Adv. Pro. No. 17-1085-ess

Reeham Youssef,

                           Plaintiffs,

     v.

Sallie Mae, Inc., Navient Solutions, LLC,
Navient Credit Finance Corporation,

                           Defendants.

-------------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE PLAINTIFFS' <br> MOTION FOR A TEMPORARY RESTRAINING ORDER

*Appearances*:

George F. Carpinello, Esq.          Thomas M. Farrell, Esq.
Adam Shaw, Esq.                McGuire Woods LLP
Robert C Tietjen, Esq.            JPMorgan Chase Tower
Boies Schiller Flexner LLP       600 Travis Street (Suite 7500)
30 South Pearl Street (11th Floor)   Houston, TX 77002
Albany, NY 12207             *Attorneys for Defendants*
  *Attorneys for Plaintiffs*

Jason W. Burge, Esq.
Kathryn J. Johnson, Esq.
Fishman Haygood LLP
201 Saint Charles Avenue (Suite 4600)
New Orleans, LA 70170
  *Attorneys for Plaintiffs*

Lynn E. Swanson, Esq.
Peter N. Freiberg, Esq.
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70130
  *Attorneys for Plaintiffs*

Shawn R. Fox, Esq.
Joseph A. Florczak, Esq.
Dion W. Hayes, Esq.
K. Elizabeth Sieg, Esq.
McGuireWoods LLP
1345 Avenue of the Americas (7th Floor)
New York, NY 10105
  *Attorneys for Defendants*

July 8, 2022

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Before the Court is the motion for a temporary restraining order of Hilal Khalil Homaidan and Reeham Youssef (the "Plaintiffs").  The Plaintiffs seek, on behalf of themselves and all other similarly situated within a putative class, a temporary restraining order immediately to enjoin defendants Navient Solutions, LLC and Navient Credit Finance Corporation (together, "Navient") from continuing their collection efforts on certain loans held by the Plaintiffs and the members of the putative class (the "TRO Motion").  The Plaintiffs seek this relief on grounds that these private student loans are within the scope of their Chapter 7 bankruptcy discharges, and that Navient has disregarded that fact as it has continued its collection efforts for many years, including for the five years that this action has been pending.

In this adversary proceeding, the Plaintiffs allege, as to themselves and the putative class, that they attended or intended to attend Title IV institutions and received private loans owned or serviced by the Defendants that exceeded the cost of attendance at such institutions as defined by Internal Revenue Code Section 221(d), that they obtained bankruptcy discharges after January 1, 2005, that they have not reaffirmed their loans, and that they have been, and may continue to be, subjected to the Defendants' actions to collect on these loans.

Specifically, the Plaintiffs argue that their private student loans were discharged in their Chapter 7 bankruptcy cases because these loans do not meet the requirements to be nondischargeable under Bankruptcy Code Section 523(a)(8)(B) – that is, their loans are not "qualified education loan[s]" pursuant to Internal Revenue Code Section 221(d)(1).  Namely, the Plaintiffs assert their loans do not meet Internal Revenue Code Section 221(d)'s requirement that a loan must not exceed the cost of attendance at a Title IV institution to be a "qualified education

loan."  As such, they assert, the Defendants' continuing collection efforts on their outstanding private student loans that were discharged violate the statutory bankruptcy discharge contained in Bankruptcy Code Section 524(a)(2).  And at this stage in these proceedings, the Plaintiffs argue, the requirements for interim injunctive relief in favor of the putative nationwide class have been met, and these collection efforts should be stopped.

Navient opposes the TRO Motion, on several grounds.  As a threshold matter, they argue that the only pathway to a remedy for a violation of the bankruptcy discharge is a proceeding or motion for contempt.  Navient states that this Court lacks the jurisdiction to address violations of discharge orders entered by other bankruptcy courts.  Navient also argues that certain putative class members lack Article III standing to seek relief against Navient, as they have suffered no harm.

In addition, Navient contends that a temporary restraining order is not warranted here, as the Plaintiffs cannot establish a likelihood of success on the merits because, among other reasons, each plaintiff certified on their loan documents that their loans were within the cost of attendance at a Title IV institution.  Further, Navient argues that irreparable harm is not present here, as the Plaintiffs substantially delayed in seeking this relief.  And finally, Navient argues that the public interest weighs against granting the TRO Motion, as injunctive relief may harm certain members of the putative class.

For these reasons, among others, Navient argues that the Plaintiffs cannot meet their burden, and that the TRO Motion should be denied.

### Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  In addition, this Court may adjudicate these claims to final judgment to the

2

extent that they are core proceedings pursuant to Judiciary Code Section 157(b).

**Background**

*Mr. Homaidan's Bankruptcy Case*

On December 4, 2008, Hilal Khalil Homaidan, *aka* Helal K. Homaidan, filed a petition for

relief under Chapter 7 of the Bankruptcy Code, Case No. 08-48275.  On December 19, 2008, Mr.

Homaidan filed his schedules and statements, and on March 9, 2009, he filed certain amended

schedules.  *In re Homaidan*, Case No. 08-48275, ECF Nos. 11, 19.  In his Schedule F, "Creditors

Holding Unsecured Nonpriority Claims," he listed "Tuition Answer" loans owed to Sallie Mae in

the amounts of $7,983.19 and $8,190.11.  *In re Homaidan*, Case No. 08-48275, ECF No. 19.  On

January 15, 2009, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no

non-exempt property to distribute."  *In re Homaidan*, Case No. 08-48275, Doc. entry dated January

15, 2009.  On April 9, 2009, the Court entered an order discharging Mr. Homaidan, and on March 5,

2010, his bankruptcy case was closed.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a

determination of the dischargeability of certain of his student loans, and on May 26, 2017, the Court

entered an order reopening the case.

*Ms. Youssef's Bankruptcy Case*

On October 29, 2013, Reeham Youssef, *aka* Reeham Navarro Youssef, *aka* Reeham N

Youssef, filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 13-46495.  On

October 29, 2013, Ms. Youssef filed her schedules and statements.  *In re Youssef*, Case No. 13-

46495, ECF No. 1.  In her Schedule F, "Creditors Holding Unsecured Nonpriority Claims," she

listed "Student Loan[s]" owed to Sallie Mae in the amounts of $9,055.00, $13,413.00, $6,415.00,

$35,580.00, $23,596.00, $4,095.00, $16,275.00 and $29,493.00.  *Id*.  On December 13, 2013, the

Chapter 7 Trustee filed a "no-asset" report stating that "there is no property available for

distribution from the estate over and above that exempted by law." *In re Youssef*, Case No. 13-46495, Doc. entry dated December 13, 2013.  On February 6, 2014, the Court entered an order discharging Ms. Youssef, and on that same day, her bankruptcy case was closed.  *In re Youssef*, Case No. 13-46495, ECF No. 9.

On October 1, 2019, Ms. Youssef moved to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on December 4, 2019, the Court entered an order reopening the case.

*Selected Procedural History of this Adversary Proceeding*

On June 23, 2017, Mr. Homaidan commenced this adversary proceeding (the "Adversary Proceeding") as a putative class action, on behalf of himself and others similarly situated, by filing a complaint against SLM Corporation, Sallie Mae, Inc., Navient Solutions, LLC, and Navient Credit Finance Corporation.  ECF No. 1.  As to himself, Mr. Homaidan seeks a determination that certain debts that he incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and costs, for the Defendants' willful violations of the bankruptcy discharge order entered in his case.  And as to the class, he seeks the same the relief.

On October 30, 2017, Navient filed a motion to compel arbitration or, in the alternative, to dismiss the Adversary Proceeding (the "Motion to Compel or Dismiss") and a Memorandum of Law in Support of the Motion to Compel or Dismiss (the "Mot. to Compel or Dismiss Mem.").  ECF Nos. 16, 17.  In the Motion to Compel or Dismiss, Navient argued that Mr. Homaidan's private Tuition Answer Loans "constitute obligations to repay funds received as educational benefits, and are therefore excepted from discharge under [Section] 523(a)(8)(A)(ii) of the Bankruptcy Code."  Mot. to Compel or Dismiss Mem. at 23-24.  On December 1, 2017, the Court approved a stipulation of dismissal as to defendant SLM Corporation.  ECF No. 23.

4

On January 8, 2018, Mr. Homaidan filed opposition to the Motion to Compel or Dismiss. ECF No. 27.  On January 26, 2018, Navient filed a reply in support of the Motion to Compel or Dismiss.  ECF No. 29.

On July 25, 2018, the Court issued a memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to compel arbitration of Mr. Homaidan's claims.  *Homaidan v. SLM Corp.* (*In re Homaidan*), 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

On January 31, 2019, the Court issued a second memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to dismiss the Adversary Proceeding.  *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86 (Bankr. E.D.N.Y. 2019).  On February 14, 2019, Navient filed a notice of appeal to the District Court of this Court's order denying the request to dismiss the Adversary Proceeding.  ECF No. 105.

Thereafter, on October 21, 2019, Mr. Homaidan filed an amended complaint to add Ms. Youssef as a named plaintiff and proposed class representative (the "Amended Complaint" or "Am. Compl.").  ECF No. 160.  On December 18, 2019, this Court entered an Order permitting amendment of the complaint to add Ms. Youssef as a named plaintiff and a proposed class representative.  ECF No. 166.

On December 19, 2019, the Plaintiffs filed a motion seeking three forms of relief:  an order certifying a nationwide class in this Adversary Proceeding; an order for partial summary judgement on liability and restitution; and an order preliminarily enjoining the Defendants from collecting or making attempts to collect on the discharged debts pending final resolution of this proceeding (the "Pending Motions").  ECF No. 168.  That same day, the Plaintiffs filed a memorandum of law in support of the portion of the Pending Motions seeking class certification (the "Class Certification Motion" or "Class Cert. Mot.").  ECF No. 169.  In the Class Certification Motion, the Plaintiffs seek to certify an injunctive relief1( class pursuant to Federal Rule of Civil Procedure 23(b)(2), and a

damages class pursuant to Federal Rule of Civil Procedure 23(b)(2), consisting of:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mot. at 15.

On February 25, 2020, the District Court granted Navient's motion to certify the order denying the Motion to Compel or Dismiss to the extent it sought to dismiss the Adversary proceeding for direct appeal to the Second Circuit.  *Homaidan v. Sallie Mae, Inc.*, 2020 WL 5668972 (Bankr. E.D.N.Y. Feb. 25, 2020).  And on July 15, 2021, the Second Circuit affirmed this Court's order denying Navient's motion to dismiss the Adversary Proceeding.  *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021).  There, the court found that private loans do not come within Section 523(a)(8)(A)(ii) because they are not "an obligation to repay funds as an educational benefit."  *Homaidan*, 3 F.4th at 601 (quoting 11 U.S.C. 523(a)(8)(A)(ii)).  In reviewing the exceptions to discharge contained in Section 523(a)(8), the Second Circuit observed:

> [Section] 523(a)(8)(A)(i) covers government and nonprofit-backed loans and educational benefit overpayments; [Section] 523(a)(8)(A)(ii) covers scholarships, stipends, and conditional education grants; and [Section] 523(a)(8)(B) covers private loans made to individuals attending eligible schools for certain qualified expenses.

*Homaidan*, 3 F.4th at 604.

As to Section 523(a)(8)(B), the Second Circuit explained that "for a loan to be 'qualified' under [Section] 523(a)(8)(B), the student must attend an eligible educational institution and the loan must fund only higher education expenses."  *Homaidan*, 3 F.4th at 601 n.3 (first citing 26 U.S.C. § 25A(f)(2); and then citing 26 U.S.C. § 221(d)).

On August 23, 2021, this Court entered an Order assigning the Adversary Proceeding to mediation.  ECF No. 302.  And on September 7, 2021, this Court entered a Stipulation and

6

Mediation Order, where the parties jointly accepted Eric Green of Resolutions LLC to provide mediation services.  ECF No. 304.

On March 14, 2022, the Plaintiffs filed a letter stating that it is "clear" the Adversary Proceeding "will not settle without a ruling by the Court" on the Pending Motions.  ECF No. 310. The letter also stated that the Plaintiffs planned to file the TRO Motion.  *Id.*  On March 22, 2022, Navient responded by filing their own letter, stating that Navient remains engaged in the mediation process and disagrees that this Adversary Proceeding will not settle without a ruling on the Pending Motions.  ECF No. 313.

On April 7, 2022, the Plaintiffs filed this motion for a temporary restraining order.  ECF No. 314.  On April 11, 2022, this Court entered an Order scheduling a conference on the TRO Motion for April 14, 2022.  ECF No. 316.  On April 14, 2022, the Court held an initial hearing on the TRO Motion and, with the consent of the parties, set a briefing schedule on the TRO Motion.

On the following day, April 15, 2022, this Court entered an Order setting a briefing schedule and scheduling a continued conference and argument on the TRO Motion.  ECF No. 318.  As stated in the Order, the Defendants were directed to file any opposition to the TRO Motion by May 9, 2022, the Plaintiffs were directed to file any reply to the Defendants' opposition by May 23, 2022, and a continued conference on the TRO Motion was set for May 11, 2022.  *See id.*

On May 9, 2022, Navient filed opposition to the TRO Motion (the "Opposition" or "Opp."). ECF No. 320.  On May 20, 2022, the Plaintiffs filed a reply memorandum of law in further support of the TRO Motion (the "Reply").  ECF No. 321.

And on May 25, 2022, the Court held oral argument on the TRO Motion, at which the parties, by counsel, appeared and were heard, and the record is now closed.

*The Allegations of the Amended Complaint*

In view of the nature of the relief sought in this TRO Motion, it is helpful to summarize the

principal allegations of the Amended Complaint. *See In re Homaidan*, 596 B.R. at 91-93

(discussing the allegations contained in the Amended Complaint).

The Plaintiffs, on behalf of themselves and all others similarly situated (the "Putative Class

Members"), seek a declaratory judgment, injunctive relief, and damages arising from Sallie Mae.

Inc. and Navient's alleged "pattern and practice" of violating the discharge injunction provided by

Bankruptcy Code Section 542(a)(2).  Am. Compl. ¶ 2.

The Plaintiffs allege that "[f]or the last ten years, [the Defendants] have . . . engaged in a

massive effort to defraud student debtors and to subvert the orderly working of the bankruptcy

courts."  *Id*.  They claim that the "Defendants . . . originat[ed] and service[ed] dischargeable

consumer loans [while] disguising them as nondischargeable student loans."  *Id*.  The Plaintiffs

advance these allegations on behalf of an alleged class of "similarly situated individuals who have

declared bankruptcy since 2005 [across the United States,] with loans originated and/or serviced by

Defendants."  Am. Compl. ¶ 5.  And they allege that these loans "do not meet the definition of a

nondischargeable qualified education loan" as set forth in Internal Revenue Code Section 221(d)

and Bankruptcy Code Section 523(a)(8)(B).  *Id.*.

The Plaintiffs allege that the "Defendants represented to student debtors that the Bankruptcy

Code prohibited discharge of *any* loan made to any person for any educational purpose."  Am.

Compl. ¶ 28.  They claim that the Defendants "failed to disclose facts and information that would

inform debtors of the fact that private loans were only non-dischargeable if they met the

requirements of section 523(a)(8)(B), and in particular, that Class Members' nonqualified loans

were, in fact, discharged in bankruptcy."  *Id*.  And the Plaintiffs state that the Defendants utilized

bankruptcy laws "to defraud vulnerable and unsophisticated student borrowers."  Am. Compl. ¶ 29.

The Plaintiffs allege that the "Defendants either misrepresented or failed to disclose facts and

information related to the dischargeability of private loans," and that the Defendants did not make

8

the same misrepresentations "to more sophisticated parties." Am. Compl. ¶ 33.

The Plaintiffs request that the Court declare that the Plaintiffs and Class Members' debts were discharged upon the entry of the applicable statutory bankruptcy discharge injunctions, because they are not student loans excluded from discharge under Bankruptcy Code Section 523(a)(8). They seek permanent injunctive relief prohibiting the Defendants from continuing to seek collection on the Plaintiffs and Class Members' discharged debts. The Plaintiffs also request that since the Defendants were notified of the Plaintiffs and Class Members' discharge orders pursuant to Bankruptcy Rule 4004(g), and still sought to collect on these debts by use of "dunning letters, phone calls, negative reports made to credit bureaus, failure to update credit reports, and commencing or continuing legal action to recover [these] debts in violation of [Bankruptcy Code Section 524]," the Court should cite the Defendants for civil contempt for their willful violations of the Discharge Order, and order them to pay damages in an amount to be determined at trial pursuant to Bankruptcy Code Sections 524 and 105, and also to pay his attorneys' fees and costs. Am. Compl. ¶¶ 90-93.

As stated in the Amended Complaint, the Plaintiffs seek to maintain this action on behalf of themselves and as representatives of Putative Class Members who:

- obtained private Tuition Answer Loans in amounts that exceeded the "Cost of Attendance";

- were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;

- have never reaffirmed any pre-petition Tuition Answer loan; and

- have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

Am. Compl. ¶ 73.

*This TRO Motion*

The Plaintiffs state that Mr. Homaidan enrolled in Emerson College in the Fall of 2006. TRO Motion at 2.  On September 12, 2006, Mr. Homaidan entered into a "Tuition Answer" loan with Navient in the amount of $6,177 and a second loan for $6,390 on October 6, 2006.  TRO Motion at 2.  The Plaintiffs state that both loans were made directly to Mr. Homaidan and did not involve Emerson College's financial aid office.  *Id*.  The Plaintiffs also assert that these loans were not made for qualified educational expenses, and that Defendants made no effort to obtain certification from Emerson College that either loan was within the school's cost of attendance, or even that Mr. Homaidan was a full-time or part-time student attending a qualified academic institution.  *Id*.  And the Plaintiffs argue that the Defendants did not determine that either of the loans made to Mr. Homaidan was a "qualified education loan," as that term is defined in Bankruptcy Code Section 523(a)(8)(B), before disbursing these funds.  *Id*.

The Plaintiffs also state that on December 4, 2008, Mr. Homaidan sought relief under Title 11 by filing a Chapter 7 bankruptcy case in this Court, and that Mr. Homaidan scheduled his private Tuition Answer Loans on Schedule F of his bankruptcy petition.  *Id*.  On April 9, 2009, this Court entered a discharge of all of Mr. Homaidan's properly scheduled dischargeable pre-petition debt, and the Defendants were notified by the Court of the discharge.  TRO Motion at 2-3.

And the Plaintiffs state that, despite the discharge of Mr. Homaidan's private Tuition Answer Loans that exceed the cost of attendance, the Defendants advised Mr. Homaidan that these loans were not discharged, and thereafter, engaged the services of various collection firms to attempt to collect on this discharged debt in violation of Mr. Homaidan's bankruptcy discharge and the Bankruptcy Code.  TRO Motion at 3.  The Plaintiffs note that on June 23, 2017, Mr. Homaidan commenced this adversary proceeding on behalf of himself and all other similarly situated individuals, seeking a declaration that the Defendants' direct-to-consumer loans that exceed the cost of attendance under Bankruptcy Code Section 523(a)(8)(B) are dischargeable in bankruptcy, as well

as damages, including restitution of all funds obtained by the Defendants from collecting on these discharged debts, and attorneys' fees and costs.  *Id.*

As to Ms. Youssef, the Plaintiffs state that from 2005 to 2008, she was a student at Queens College of the City University of New York.  *Id.*  They state that the cost of attendance for an in-state student living off campus at Queens College was $16,816 for the 2005-06 academic year; $17,293 for the 2006-07 academic year; and $17,725 for the 2007-08 academic year.  *Id.*

The Plaintiffs also state that, during the 2006-07 academic year, Ms. Youssef received a school-certified loan of $6,000 and four private Tuition Answer Loans from Sallie Mae totaling $31,850.  TRO Motion at 4.  They state that in the following 2007-08 academic year, Ms. Youssef received two private Tuition Answer Loans totaling $24,150.  *Id.*  And they state that most or all of the private Tuition Answer Loans that Ms. Youssef received exceeded the cost of attendance and, therefore, here again, these loans did not meet the criteria to be nondischargeable qualified education loans as that term is defined in Bankruptcy Code Section 523(a)(8)(B).  *Id.*

The Plaintiffs also state that on October 29, 2013, Ms. Youssef sought relief under Title 11 by filing a Chapter 7 bankruptcy case in this Court.  *Id.*  They assert that Ms. Youssef scheduled her private Tuition Answer Loans on Schedule F of her bankruptcy petition.  *Id.*  On February 6, 2014, this Court entered a discharge of all of Ms. Youssef's properly scheduled dischargeable pre-petition debt, and the Defendants were notified by the Court of the discharge.  *Id.*

And here again, the Plaintiffs state that instead of treating Ms. Youssef's private Tuition Answer Loans as discharged, the Defendants advised Ms. Youssef that these loans were not discharged, demanded repayment from Ms. Youssef on those loans, and resumed collection on the loans even though they had been discharged.  *Id.*  Like Mr. Homaidan, Ms. Youssef seeks a declaration that her private Tuition Answer Loans "in excess of" the cost of attendance were discharged in her bankruptcy case, an injunction prohibiting the continued collection of the loans,

and damages, including restitution of all funds obtained by the Defendants from their unlawful

collection efforts on these discharged debts, and attorney's fees and costs.  TRO Motion at 5.

In support of the TRO Motion, the Plaintiffs first address the question of irreparable harm.

At the outset, the Plaintiffs argue that ordinarily, a plaintiff seeking a temporary restraining order is

required to show the likelihood of irreparable harm in the absence of such an order.  TRO Motion at

6 (citing *Lopez v. New York City*, 2018 WL 11385136, at *1 (S.D.N.Y. Dec. 21, 2018)).  At the

same time, the Plaintiffs note, courts in this Circuit have recognized that "a bankruptcy court,

pursuant to its powers under § 105, may grant a preliminary injunction to protect the debtor or the

estate without a showing of irreparable injury."  TRO Motion at 6 (collecting cases).  As former

Bankruptcy Judge Gerber explained:

> "[I]t is manifestly proper, in this Court's view, to invoke section 105(a) 'to enforce
> or implement' the Court's earlier orders and to prevent abuses of process.  Exercise
> of the Court's section 105(a) authority in this manner, and for this purpose,
> vindicates the interests of the *Court*, as much as (and perhaps more than) it vindicates
> the interest of an individual litigant.  Particularly in such a situation, it is not
> surprising that the usual grounds for injunctive relief, such as irreparable injury, need
> not be shown in a proceeding for an injunction under section 105(a)."

TRO Motion at 7 (quoting *NWL Holdings, Inc. v. Eden Center, Inc. (In re Ames Dep't Stores, Inc.)*,

317 B.R. 260, 274 (Bankr. S.D.N.Y. 2004)) (emphasis in original).

The Plaintiffs argue that it is undisputed that they and every member of the putative class

obtained discharges in bankruptcy, protecting them from the collection of all properly-scheduled

dischargeable debts.  They also state that Defendants are violating those individual discharge orders

by continuing to collect on these discharged debts.  Accordingly, and consistent with the bankruptcy

court's findings in *In re Ames Department Stores*, the Plaintiffs assert that not only the debtors'

interests, but also "the interests of the *Court*," should be protected, and no further showing of

irreparable harm should be required to warrant the entry of a temporary restraining order.  TRO

Motion at 7.

And in all events, the Plaintiffs argue that Navient's unwarranted collection activities give rise to irreparable harm, because the act of repeatedly attempting to collect a discharged debt in and of itself creates irreparable injury.  TRO Motion at 8 (citing *Diaz v. Heavy Action Recovery* (*In re Diaz*), 526 B.R. 685, 694 (Bankr. S.D. Tex. 2015)).  As one illustration, the Plaintiffs point to *Daniel v. Oaks and Johnson* (*In re Daniel*), where the debtor sought a preliminary and permanent injunction against a law firm's continuing efforts to collect a discharged debt.  There, the court held that "'any action or attempt to collect [the debt] in spite of a discharge is a clear violation of the permanent injunction included in the discharge,'" and that "'if the injunctive relief sought by the Debtors in this adversary proceeding is not granted the Debtors will suffer irreparable harm.'"  TRO Motion at 8 (quoting *Daniel v. Oaks and Johnson* (*In re Daniel*), 98 B.R. 73, 75-76 (Bankr. M.D. Fla. 1989.)  The Plaintiffs also note that in an action in the bankruptcy court for the Southern District of Texas, these Defendants agreed to stop collecting "all non-Title IV loans" while a preliminary injunction motion was pending.  TRO Motion at 8 (citing *Crocker v. Navient Solutions, LLC* (*In re Crocker*), Adv. Pro. No. 16-03175 (S.D. Tex.)).

The Plaintiffs conclude that in light of the Defendants' "flagrant disregard" of the Putative Class Members' statutory bankruptcy discharge injunctions, and their continued collection efforts of these discharged debts, the Putative Class Members will suffer irreparable harm if a temporary restraining order is not entered.  TRO Motion at 9-10.

Next, the Plaintiffs address the question of likelihood of success on the merits.  The Plaintiffs argue that they are likely to succeed on the merits because the Defendants have no legal basis to justify collecting on debts that exceed the Putative Class Members' cost of attendance, and are therefore violating the statutory bankruptcy discharge.  TRO Motion at 10.  The Plaintiffs assert that the Defendants bear the burden of establishing whether any of their direct-to consumer loans are nondischargeable under the terms of Section 523(a)(8).  TRO Motion at 10 (collecting cases).

And the Plaintiffs contend that the sole basis on which Defendants can claim that these direct-to-consumer loans are categorically nondischargeable is Bankruptcy Code Section 523(a)(8)(B), which requires that a student loan be within the cost of attendance at an eligible educational institution in order to be outside the scope of the debtor's discharge.  TRO Motion at 11 (citing *Golden v. JPMorgan Chase Bank* (*In re Golden*), 596 B.R. 239, 267-69 (Bankr. E.D.N.Y. 2019)).

The Plaintiffs contend that here, Navient has made no effort to determine whether the Putative Class Members' loans were within the cost of attendance.  And the Plaintiffs argue that "Navient knows that there are thousands of loans that, on their face, exceed any conceivable definition of the cost of attendance."  TRO Motion at 12.

The Plaintiffs conclude by arguing that Defendants have admitted to attempting to collect on private direct-to-consumer loans that were issued to Plaintiffs and Putative Class Members, that exceeded the cost of attendance, and that were discharged by virtue of each Putative Class Members' individual bankruptcy proceedings.  As the Defendants have no defense to this conduct, the Plaintiffs assert they are therefore likely to prevail on the merits.  *Id.*

Next, the Plaintiffs address the question of the balance of hardships.  They argue that the balance of hardships tips in their favor because these loans represent a very small part of Navient's loan portfolio – while the Plaintiffs and the Putative Class Members are faced with the choice between making payments on discharged debt, or not making those payments and risking harm to their credit report.  *Id.*  The Plaintiffs assert this constitutes added financial hardship and pressure to the Putative Class Members of continuing to make payments on discharged loans.  *Id.*  In addition, in the absence of injunctive relief, the Putative Class Members will continue to be "harassed" by the Defendants for payments on debts that were discharged in their bankruptcy cases.  *Id.*  And here again, the Plaintiffs note that in a different action raising similar issues concerning the collection of assertedly discharged debt, *In re Crocker*, Navient has agreed to refrain from collecting on these

debts for more than two years, and has now agreed to treat all such loans issued to class members in the Fifth Circuit as fully discharged.  TRO Motion at 12 (citing *In re Crocker*, Adv. Pro. No. 16-03175 (S.D. Tex.)).

And finally, the Plaintiffs argue that, as many courts have found, a putative class may be entitled to temporary or preliminary injunctive relief prior to class certification.  TRO Motion at 13 (collecting cases).  As the Plaintiffs assert, courts recognize that "'certain circumstances give rise to the need for prompt injunctive relief for a named plaintiff or on behalf of a class and that the court may conditionally certify the class or otherwise award a broad preliminary injunction, without a formal class ruling, under its general equity powers.'"  TRO Motion at 13 (quoting *Ligon v. City of New York*, 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013)).  At present, the Defendants' continuing collection efforts are pressuring the Putative Class Members into making payments on debts that were discharged in bankruptcy.  Unless injunctive relief is directed by the Court, these collection activities on the Putative Class Members' discharged debts will impose further irreparable harm by depriving them of a "fresh start."  TRO Motion at 13-14.

### *Navient's Response to the TRO Motion*

Navient opposes any form of temporary injunctive relief.  At the outset, Navient responds that the Plaintiffs seek an unauthorized temporary restraining order of indefinite duration.  Opp. at 9.  Indeed, Navient asserts that this is one of the few points on which the TRO Motion is actually clear:  "The purpose of this Motion for a Temporary Restraining Order is to stop Navient's illegal collection efforts *until such time that the Court can rule on the motion for preliminary injunction*."  Opp. at 9 (quoting TRO Motion at 1).  Navient states that, since there is no indication that the Court will be able to rule on the preliminary injunction motion within 14 days (or even 28 days) of the issuance of any temporary restraining order, the proposed temporary restraining order could well last beyond the prescribed time periods as set forth in Federal Rule of Civil Procedure 65(b)(2).

Navient argues that a temporary restraining order of such indefinite duration would violate the clear provisions of Rule 65(b)(2), and for this reason alone, the TRO Motion should be denied.  Opp. at 9-10.

Second, Navient responds that the Plaintiffs seek an unauthorized temporary restraining order of nationwide scope.  Opp. at 10.  Navient first argues that, because the relief that the Plaintiffs seek is available only through an action for contempt, and since contempt can be addressed only by the court that entered the order at issue, this Court's authority to grant the requested relief would be limited to borrowers who received discharges in the Eastern District of New York.  *Id.*

Navient points out that the Plaintiffs have only one potential claim:  to enforce each debtor's discharge injunction by a proceeding for contempt.  *Id.*  It argues that there is no statutory provision – in the Bankruptcy Code or elsewhere – that establishes an express cause of action for alleged violations of bankruptcy discharge orders.  As a result, Navient states, every court to consider the issue has held that no private right of action exists by which a debtor can assert claims that a creditor has violated his or her discharge.  Opp. at 10 (collecting cases).  Rather, Navient argues, since a discharge order "'operates as an injunction,'" violations must be addressed by a motion or request to hold the creditor in contempt.  Opp. at 11 (first quoting 11 U.S.C. § 524(a)(2); then citing *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 967 (11th Cir. 2012)); and then citing *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001)).

Navient also responds that the Second Circuit has held that this is the rule, even though the scope of the discharge injunction is defined by statute:  "'Neither the statutory basis of the [discharge] order nor its similarity – even uniformity – across bankruptcy cases alters the simple fact that the discharge injunction is an order issued by the bankruptcy court[.]'"  Opp. at 11 (quoting *Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 390-91 (2d Cir. 2018)).

16

In addition, Navient responds that only the issuing court is empowered to enforce an injunction through a contempt proceeding.  Opp. at 11.  It asserts that this Court's authority to direct nationwide relief is lacking because the power to address contemptuous conduct in violation of an injunction resides uniquely and solely in the court that issued the order that allegedly was violated.  Opp. at 11 (citing *Gunn v. Univ. Comm. to End the War in Viet Nam*, 399 U.S. 383, 389 (1970)).  And Navient points to the Supreme Court's decision in *Taggart v. Lorenzen*, where the Court observed:

> "[t]he statutes specifying that a discharge order 'operates as an injunction'; § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions. . . . [A]s part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction."

Opp. at 12 (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)).

Navient argues that this "old soil" includes the "traditional" limitation from "equity practice" that only the issuing court can address contempt claims for violating an injunction, and that the Eleventh Circuit correctly reached this conclusion in *Alderwoods*.  Opp. at 12.  In *Alderwoods*, Navient notes, the Eleventh Circuit held that a bankruptcy court "'lacked jurisdiction to entertain the complaint [asserting discharge violation claims on behalf of debtors that received a discharge in a different district] because the discharge injunction was never its to enforce.'"  Opp. at 12 (quoting *Alderwoods*, 682 F.3d at 971).  Navient also notes that the Fifth Circuit reached a similar conclusion in a putative nationwide class action – the same class action context that is now before this Court.  Opp. at 13 (citing *Crocker v. Navient Solutions, L.L.C.* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019)).

Navient asserts that there can be little doubt that when faced directly with the issue, the Second Circuit will apply *Taggart* in the same way and conclude, as the Fifth and Eleventh Circuits

have, that any action for contempt of a discharge injunction must be heard by the court that issued the discharge.  Opp. at 14 (citing *Belton v. GE Cap. Retail Bank* (*In re Belton*), 961 F.3d 612, 617-18 (2d Cir. 2020)).

Next, Navient responds that the Plaintiffs seek an unauthorized temporary restraining order for an as-yet uncertified class.  Opp. at 14.  It states that the Plaintiffs cite to just one case from the Second Circuit in support of their argument that a classwide injunction can be issued before a class is certified, and argues that the case – *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004) – is clearly distinguishable from than the circumstances present here.  Opp. at 15.  There, Navient argues, the district court issued a class-wide preliminary injunction before certification of the class.  But by the time case was ripe for decision at the Second Circuit, any error in that process had been cured by the district court's issuance of a subsequent order certifying the class.  *Id.*  And Navient notes that in *LaForest*, certification was sought – and granted – under Rule 23(b)(2), which permits class-wide "final injunctive relief" without the need to provide notice and an opportunity to exclude themselves or "opt out" of the class.  *Id.*

Here, by contrast, Navient argues that class certification would need to proceed under Rule 23(b)(3), not Rule 23(b)(2).  Opp. at 15 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011)).  Navient urges that, as the Supreme Court found in *Wal-Mart Stores, Inc. v. Dukes*, class certification under Rule 23(b)(2) is not available where monetary relief is not incidental to injunctive relief and "'when each class member would be entitled to an individualized award of monetary damages.'"  Opp. at 15-16 (quoting *Wal-Mart Stores*, 564 U.S. at 360-61).

Navient asserts that following the "correct" sequence – considering the Plaintiffs' motions for a temporary restraining order and preliminary injunction only *after* class certification and *after* class members are given notice and an opportunity to opt out – would give these putative class members the opportunity to protect their interests.  Once notified of the issues, they could make an

informed choice among various options:  remain in the class and suspend loan payments, thereby accepting the risk that accrued interest could potentially increase their indebtedness; remain in the class and continue to make loan payments, thereby mitigating the risk that accrued interest could later increase their indebtedness; or opt out of the class altogether.  Opp. at 17-18.

And Navient argues that granting a temporary restraining order or a preliminary injunction *before* class certification would have the opposite impact.  It would effectively expose a significant portion of the putative class to substantial harm without notice or an opportunity to protect themselves.  This would be problematic in the Rule 23(b)(2) context (where opt-out rights are not available), but in the Rule 23(b)(3) context, where no class can be certified without opt-out rights, it would be unconstitutional.  Opp. at 18 (citing 7AA Wright & Miller, Federal Practice and Procedure § 1786 (without the notice and opt-out requirements applicable to Rule 23(b)(3) classes, "it would be constitutionally impermissible to give the judgment binding effect against the absent class members")).

Navient also responds that the Plaintiffs seek an unauthorized burden-shifting temporary restraining order.  Opp. at 18.  That is because here, the Plaintiffs ask the Court to impose injunctive relief covering *all* loans and *all* borrowers to which their legal theory could even *theoretically* apply (either because their loans were "private" or because they were "direct to consumer").  Because the Plaintiffs have not identified the specific class members in whose favor a temporary restraining order or preliminary injunction would operate, and have similarly not identified any loans other than those of the two named Plaintiffs that actually exceeded the cost of attendance, the temporary and preliminary injunctive relief that they seek would leave it to Navient to determine which borrowers, and which loans, are within the scope of any injunction.  Opp. at 19.

Navient argues that the Plaintiffs do not cite any authority for this kind of burden-shifting relief, and none exists.  To obtain an injunction or a temporary restraining order, the movant must

identify specific, real-word facts and demonstrate that, based on those facts, the movant is at least "likely" to succeed on the merits of a viable legal cause of action.  Opp. at 19 (citing *Andino v. Fischer,* 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)).  And here, Navient states, that has not occurred.

Navient states that, under the applicable standards, it is not enough to identify a potential legal theory and a universe of people who might be able to avail themselves of that theory, depending on uncertain and undeveloped facts.  Opp. at 20 (citing *Winter v. Nat. Resources Defense Council, Inc*., 555 U.S. 7, 22 (2008) (preliminary injunctions cannot be based on "possibilit[ies]")).  It argues that is all that the Plaintiffs have done here, because in substance, the Plaintiffs' request for relief amounts to speculation that all borrowers on private loans or direct-to consumer loans are within a universe of people that theoretically could be subject to unlawful collection activities.  And Navient notes that the Plaintiffs concede that there are thousands of people within that universe who are not being subjected to any illegal collection activity – because their loans have been paid off.  Opp. at 20.  *See* Reply at 6.

Navient contends that without more, there simply is no basis on which to conclude that there is a "clear" or "substantial" likelihood that the thousands of borrowers that could come within the scope of the Plaintiffs' proposed injunctive relief will succeed on any claim against Navient.  In this context, Navient urges, it would be patently improper to issue a blanket injunction in favor of everyone who could hypothetically have a claim against Navient, thereby foisting on Navient the burden to identify those who cannot prevail or who are unlikely to prevail.  Opp. at 20.

Further, Navient responds that the Plaintiffs seek an unauthorized temporary restraining order in favor of uninjured parties with no Article III standing.  *Id.*  Here again, Navient asserts that the Plaintiffs seek to shift to Navient the burden to identify those parties who should *not* be class members and to identify those loans and borrowers as to which the Plaintiffs do *not* have any

chance of succeeding on the merits.  Opp. at 21.  Navient urges that it does not matter that it may bear the ultimate burden at trial to show that certain loans were nondischargeable.  Rather, to obtain a temporary or preliminary injunctive relief, the Plaintiffs must show that there is a substantial likelihood that Navient will be unable to meet its burden at trial, and they must make that showing with respect to each borrower and loan for which they seek provisional relief.  Opp. at 23 (collecting cases).  And here, Navient asserts, the Plaintiffs have not even attempted to make this showing, but have instead simply assumed the issue away by proposing a structure that would impermissibly shift this burden to Navient.  Opp. at 23.

To the same effect, Navient argues that the Plaintiffs' attempt to restrain collection activities on loans that were within the cost of attendance, and thus nondischargeable under Bankruptcy Code Section 523(a)(8)(B), transgresses the constitutional limitations on the exercise of judicial power. Navient asserts that these borrowers have been subjected to no wrongdoing, and have suffered no harm.  If any one of them were to sue Navient individually for discharge violations, they would be unable to assert *any* injury in fact fairly traceable to the challenged action and would thus lack Article III standing.  Opp. at 23-24 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Navient notes that Second Circuit has recognized that "'[n]o class may be certified that contains members lacking Article III standing' and any 'class must therefore be defined in such a way that anyone within it would have standing.'"  Opp. at 24 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).  As such, Navient contends that this fundamental requirement for class standing is a barrier to the Plaintiffs' request for a global injunction in favor of thousands of uninjured parties, as any such injunction would violate Article III standing requirements from the moment of its issuance.  Opp. at 24.

Next, Navient responds that the Plaintiffs seek an unauthorized temporary restraining order with no proof of any emergency or exigency.  Opp. at 25.  Navient points out that the Plaintiffs

waited more than two years after the complaint was filed – until December 19, 2019 – to seek a preliminary injunction. And then, the Plaintiffs waited more than two additional years – until April 7, 2022 – to file this TRO Motion. *Id.* It contends that this delay is highly relevant and counsels strongly against granting the emergency and provisional relief that the Plaintiffs seek. *Id.* Navient asserts that there is no emergency or exigent circumstance here that could possibly justify the temporary restraining order that the Plaintiffs seek, as demonstrated by the fact that they delayed filing their motion for over five years. Nothing new has happened in that five-year period, and Navient asserts that the only purpose for the TRO Motion is that it might put pressure on Navient to settle. This unexcused five-year delay is yet a further reason, Navient urges, why the TRO Motion should be denied. Opp. at 28.

And Navient responds that the Plaintiffs seek an unauthorized temporary restraining order with no showing of a likelihood of success on the merits. *Id.* Navient asserts that the Plaintiffs have not even attempted to establish a likelihood of success with respect to any claims that absent members of the as-yet uncertified class could potentially have against Navient.

And as to the named Plaintiffs themselves, Navient states that their attempt to establish a likelihood of success on the merits also falls short. *Id.* Navient points out that Mr. Homaidan could not possibly be entitled to a restraining order or an injunction against future collection activities, as his loans have been paid in full and currently have no outstanding balances subject to collection. *Id.* And as to Ms. Youssef, Navient notes that it has already explained – in opposition to the pending motions for class certification, for summary judgment, and for a preliminary injunction – why she is unlikely to prevail on the merits of any of her claims. As set forth in those submissions, Ms. Youssef represented to Navient in her loan documents that her loans were within the cost of attendance and would be used only for qualified educational expenses, and therefore, she cannot prevail on her discharge violation claims. Opp. at 28-29.

Finally, Navient responds that the Plaintiffs seek an unauthorized temporary restraining order that would fail for vagueness. Opp. at 29. Navient argues that Federal Rule of Civil Procedure 65, made applicable here by Bankruptcy Rule 7065, provides that every restraining order and every order granting a preliminary injunction must: "'(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.'" Opp. at 29 (quoting Fed. R. Civ. P. 65(d)). Navient states that any such order would improperly encompass thousands of borrowers with bankruptcy discharges for whom the Plaintiffs have not demonstrated any likelihood of success on the merits of their claims, and would also encompass, in an unconstitutional way, thousands of discharged borrowers who, even assuming the validity of the Plaintiffs' legal theory, have been subjected to no wrongdoing and have suffered no injury. Opp. at 30. And Navient argues that even if the Plaintiffs' proposed burden-shifting structure were otherwise proper, the order that they appear to seek would be impermissibly overbroad in violation of the requirements of Rule 65 in multiple ways, and would place Navient at risk of contempt without any meaningful notice of the activities that it is precluded from undertaking. *Id.*

*The Plaintiffs' Reply*

In their Reply, the Plaintiffs first point out that the proposed class is clearly defined in their Class Certification Motion. Reply at 3. They state that the class is defined as follows:

> "Individuals who attended or intended to attend Title IV institutions and received private loans owned or served by Defendants, which exceeded the costs of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans."

Reply at 3-4 (quoting Class Cert. Mot. at 15). The Plaintiffs assert that this class definition is clear, definite, and based upon objective criteria, including the designation that the scope of the class is

limited to individuals with "private" loans, excluding loans that involve governmental or non-profit entities.  Reply at 4.

The Plaintiffs next reply that they and the proposed class have shown a clear likelihood of success on the merits.  Reply at 5.  First, the Plaintiffs point out that the Second Circuit's decision in *Homaidan v. Sallie Mae, Inc.*, shows that Section 523(a)(8)(A)(ii) does not apply to exempt the Putative Class Members' loans from the scope of their bankruptcy discharges.  Reply at 5 (citing *Homaidan*, 3 F.4th 595 (2d Cir. 2021)).  Second, they state that none of the Putative Class Members' loans comes within the exception to discharge of Bankruptcy Code Section 523(a)(8)(A)(i), because they are, by the very terms of the class definition, private, nongovernmental loans.  Reply at 5-6.  Third, the Plaintiffs contend that a boilerplate statement on a loan document stating a loan is nondischargeable is not controlling, and points to a decision of this Court where this same argument was rejected.  Reply at 6 (citing *In re Golden*, 596 B.R. at 267).

In addition, the Plaintiffs reply that if a loan is not within the cost of attendance, it is not a qualified education loan and it is not within Section 523(a)(8)(B).  Reply at 6.  And they argue that the Putative Class Members are the borrowers in thousands of loans whose face amounts exceed any cost of attendance that Navient claims may applies.  *Id.*

With respect to the individual named plaintiffs, the Plaintiffs reply that the Defendants' arguments have no merit.  *Id.*  As to Ms. Youssef, the Plaintiffs state that the Defendants' argument that her private Tuition Answer Loan is nondischargeable as a consequence of certain boilerplate loan document language is simply mistaken.  *Id.*  And as to Mr. Homaidan, the Plaintiffs argue that he may still be entitled to relief in the form of a declaratory judgment, restitution, or a finding of contempt, and note that the fact that his loan no longer has a balance does not relieve the Defendants from liability for any post-discharge collection activities on a discharged debt.  *Id.*

The Plaintiffs also reply that the scope of the temporary restraining order and preliminary injunction that they seek is not uncertain. *Id.* They argue that the scope of the proposed temporary restraining order is clear, in that Defendants should be enjoined from collecting on any loans held by members of the proposed class that exceed the cost of attendance. *Id.*

In addition, the Plaintiffs reply that this Court has jurisdiction over a nationwide class. Reply at 7. The Plaintiffs note that bankruptcy and district courts within the Second Circuit have held that bankruptcy courts have jurisdiction to enforce the statutory discharge injunction under Bankruptcy Code Section 524 in the context of a nationwide class. Reply at 7 (collecting cases). And the Plaintiffs point out that at least five nationwide class actions for declaratory and injunctive relief for violations of Section 524 have already been certified and finally approved by district courts within the Second Circuit. Reply at 8. The Plaintiffs also argue that at a minimum, there is no question that this Court has jurisdiction to enter a declaratory judgment that the loans at issue are dischargeable, and to enter an injunction and direct that restitution be made. Reply at 8 (citing *In re Homaidan*, 596 B.R. at 100-01).

The Plaintiffs also reply that this Court has the power to issue a temporary restraining order before the proposed class has been certified. Reply at 9. They note that this Court has the authority to issue a class-wide injunction after making a conditional determination with regard to the certifiability of the class. *Id.* And they assert that numerous courts have granted a preliminary injunction prior to final class certification. Reply at 9 (citing TRO Motion at 12). The Plaintiffs state that the conditions of Federal Rule of Civil Procedure 23 have been met and there are common questions of fact and law apply to the entire class. Reply at 9. And in response to the Defendants' observation that many of the cases cited by the Plaintiffs involve Federal Rule of Civil Procedure 23(b)(2) classes seeking injunctive relief, the Plaintiffs note that here too, the putative class seeks injunctive relief. Reply at 9-10.

Next, the Plaintiffs reply that a temporary restraining order will not harm the class.  Reply at 10.  In response to the Defendants' argument that a temporary restraining order would somehow be harmful to the Putative Class Members because it would prevent Defendants from sending collection communications and engaging in other collection activities, the Plaintiffs note that the Defendants have previously agreed voluntarily to cease collection activities in other cases.  *Id.*

Finally, the Plaintiffs argue that immediate injunctive relief is warranted, and warranted now.  *Id.*  In particular, the Plaintiffs argue that exigent circumstances warranting injunctive relief are present here because Navient admits that it is continuing to collect on over 300,000 loans, the vast majority of which have been discharged in bankruptcy.  *Id.*  The Plaintiffs assert that this collection activity constitutes irreparable injury, and that the Plaintiffs' preliminary injunction motion filed in 2019 should not detract from the immediate and urgent need for this Court to issue a temporary restraining order.  Reply at 10-11.

<u>The May 25, 2022 Hearing on the TRO Motion</u>

On May 25, 2022, the Court held a hearing and oral argument on the Plaintiffs' TRO Motion at which Plaintiffs and Navient, each by counsel, appeared and were heard (the "May 25 Hearing"). The Plaintiffs and Navient set forth their arguments at length, and responded to extensive questions from the Court.

At the outset, the Plaintiffs explain that they seek temporary injunctive relief only on behalf of the Putative Class Members – that is, those individuals who received private loans who received a discharge in bankruptcy and who attended a Title IV institution.  May 25, 2022 Hearing Transcript ("Hearing Tr."), ECF No. 324, at 5:14-22.  The Plaintiffs also emphasize that the putative class does not include individuals whose student loans are government or non-profit funded or guaranteed loans.  Hearing Tr. at 11:6-13.  The Plaintiffs assert that this is in accord with the definition of the

putative class as set forth in the Class Certification Motion, and that this sets the boundaries as to the scope of the relief that the Plaintiffs may seek.  Hearing Tr. at 99:8-18; 105:18-24.

In the context of this putative class, the Plaintiffs argue that Navient acknowledges that it has been collecting on the Putative Class Members' loans without determining whether those loans are within or exceed the applicable cost of attendance pursuant to Internal Revenue Code Section 221(d)(2).  Hearing Tr. at 5:23-25; 6:7-22.  They point to the deposition of Patricia Peterson, Senior Vice President, Operations Support, of Navient Solutions, LLC as set forth in their motions for summary judgment and a preliminary injunction, and argue that her testimony shows that Navient made no effort to determine whether the Putative Class Members' loans are within the applicable cost of attendance.  Hearing Tr. at 5:25-6:1-6.

And the Plaintiffs state that under Bankruptcy Code Section 523(a)(8)(B), a private student loan is nondischargeable only if it is a qualified education loan and within the terms of Internal Revenue Code Section 221(d)(2) – that is, only if the loan does not exceed the cost of attendance, less other scholarship grants and loans.  Hearing Tr. at 6:9-15.

Next, as to the element of irreparable injury, the Plaintiffs argue that as a threshold matter, under Bankruptcy Code Section 105, they need not show irreparable injury here.  Hearing Tr. at 6:23-25.  And in all events, they urge that, as recognized by the courts in *In re Daniel*, 98 B.R. at 75-76, and *In re Diaz*, 526 B.R. at 694, a creditor's efforts to collect on a discharged debt constitutes irreparable injury, and that is what Navient has done here.  Hearing Tr. at 6:16-22; 7:1-5.  The Plaintiffs also assert that although this case involves money in the form of money damages, courts, including the bankruptcy courts in *In re Daniel* and *In re Diaz*, recognize that a request for money damages is not an impediment to a finding of irreparable injury.  Hearing Tr. at 7:22-25; 8:1-10.

As to the question of likelihood of success on the merits, the Plaintiffs argue that – by definition – the Putative Class Members on whose behalf they seek temporary injunctive relief do

not include holders of loans funded or guaranteed in part by government or non-profit institutions. Rather, the Putative Class Members are holders of private loans, who attended Title IV institutions, who received a bankruptcy discharge, and whose loans exceed the cost of attendance.  Hearing Tr. at 8:12-17; 26:5-18.  And as to these private loans, the Plaintiffs assert that Navient continues to pursue its collection efforts on these discharged debts.  Hearing Tr. at 8:20-22.

As to the named plaintiffs, the Plaintiffs state that Ms. Youssef received private Tuition Answer Loans that exceeded her actual cost of attendance.  Hearing Tr. at 8:23-9:1-2.  They also assert that Navient admits that as to the loans of "tens of thousands" Putative Class Members that it continues to collect, it has made no effort to determine whether the loans exceed the cost of attendance.  Hearing Tr. at 9:2-5.  And they note that in the five years that this Adversary Proceeding has been pending, Navient has made no effort to determine whether some 322,000 potential Putative Class Members have received a discharge, despite being in possession of information that would permit it to discern this fact.  Hearing Tr. at 9:19-10:1-3.  As a result, the Plaintiffs argue, Navient is pursuing collection on Putative Class Members' private loans that have been discharged.  Hearing Tr. at 11:6-21.

The Plaintiffs also argue that discovery provided by Navient shows that "tens of thousands" of loans held by Putative Class Members, on their face, exceed the maximum cost of attendance at various Title IV institutions.  Hearing Tr. at 16:4-25.  *See* Hearing Tr. at 17:1-2; 17:12-14; 17:17-25; 18:5-9.  They assert that it is no defense to the Plaintiffs' likelihood of success that the Defendants have not identified which of the Putative Class Members' loans exceed or come within the cost of attendance.  Hearing Tr. at 12:6-25; 13:1.

And the Plaintiffs disagree that their likelihood of success on the merits is diminished because Ms. Youssef and Putative Class Members signed "boilerplate" certifications on their loan documents that their loans were within the cost of attendance and are therefore nondischargeable,

28

and contend that such a waiver is simply unenforceable.  Hearing Tr. at 13:2-16.  *See* Hearing Tr. at 77:2-13.

As to the balance of the hardships, the Plaintiffs argue that this tips in their favor, as the Navient continues to pursue collection on the Putative Class Members' discharged loans, which constitute a small portion of its loan portfolio.  Hearing Tr. at 28:18-25, 29:1-3.  They state that the financial hardship that Navient will face by foregoing collection on these Putative Class Members' loans is far less than that faced by the Putative Class Members, who have experienced financial difficulties as shown by their bankruptcy filings, and who may continue to suffer financial hardship in the form of other debts that they must pay.  Hearing Tr. at 28:21-25; 29:1-12.

As to the public interest, the Plaintiffs argue that this will not be harmed by the issuance of an injunction.  They assert that temporarily enjoining Navient's collection of these Putative Class Members' loans is consistent with the public interest, because it will protect the bankruptcy discharge and the "fresh start" which is at the "heart of the Bankruptcy Code."  Hearing Tr. at 29:24-25; 30-1-5.  The Plaintiffs also note that in other cases, Navient has agreed to cease the collection of loans during the pendency of the case.  Hearing Tr. at 79:6-19.

The Plaintiffs also state that any perceived delay in their request for temporary injunctive relief is not a reason to deny that relief now.  They note that they were not able to obtain discovery from the Defendants for some time.  Hearing Tr. at 31:7-10.  And the Plaintiffs also point out that they moved for a preliminary injunction in December 2019, so that the Defendants have had notice of the prospect of injunctive relief for some time, and Navient will not be prejudiced if that relief is granted.  Hearing Tr. at 31:11-25; 32:1-9.

And finally, the Plaintiffs assert that this Court has jurisdiction to issue injunctive relief in connection with the Putative Class Members' nationwide class.  Hearing Tr. at 82:1-9.  They observe that while Navient argues that only the bankruptcy court that entered a debtor's discharge

may enforce that discharge with an order for contempt, here the Plaintiffs seek injunctive and declaratory relief, and not a finding of contempt. Hearing Tr. at 82:17-25; 83:1-12. They also state that here, the Defendants are violating the bankruptcy discharge injunction statute, and this Court plainly has jurisdiction to enjoin a defendant from violating a statute on a nationwide basis. Hearing Tr. at 83:3-12.

Navient responds that as an initial matter, the Plaintiffs have not been clear or consistent as to the scope of the injunctive relief that they seek. Hearing Tr. at 33:13-17. It observes that initially, the Plaintiffs sought a preliminary injunction or restraint against collection on all private loans, but now seek to enjoin only the collection of private loans that exceed the cost of attendance. Hearing Tr. at 33:22-25; 34:1-4. And it points out that the Amended Complaint addresses only relief for private Tuition Answer Loans, but the Plaintiffs' Class Certification Motion seeks relief with respect to all private loans. Hearing Tr. at 34:5-22. Viewed another way, Navient states, the Plaintiffs' requested relief on this TRO Motion is broader than the relief that they seek in the Amended Complaint, and based on a different theory of liability. Hearing Tr. at 97:16-20.

As to likelihood of success on the merits, Navient acknowledges that "there is a potential that there are some loans out there where the amount of the loan exceeded the cost of attendance." Hearing Tr. at 36:23-25; 37:1. And indeed, Navient acknowledges that "there is the potential that" loans in excess of the cost of attendance exist. Hearing Tr. at 94:11-25; 95:1-21. But Navient disputes that it has somehow conceded that it has have violated the discharge injunction as to any Putative Class Member. Hearing Tr. at 36:18-25; 37:1-3.

Navient also asserts that the Putative Class Members' certifications in their loan documents are sufficient to invoke Bankruptcy Code Section 523(a)(8)(B) and to establish that the Putative Class Members' loans are nondischargeable. Hearing Tr. at 39:3-10. Specifically, it argues that the certification contained in the Putative Class Members' loan documents is a factual recitation that the

amount of their loan is within the cost of attendance and will only be used for that purpose, and that this factual recitation – "not boilerplate statements on nondischargeability, but specific factual recitations by the borrowers that the amount of the loan is within the cost of attendance and will only be used for that purpose" – is sufficient to establish that the loan is nondischargeable under Section 523(a)(8)(B).  Hearing Tr. at 39:5-10.

And Navient also points to Internal Revenue Code Section 221(d)(1), and argues that a qualified education loan is "any indebtedness incurred . . . solely to pay qualified education expenses, which are then defined as expenses . . . by way of cost of attendance."  Hearing Tr. at 40:1-12.  It notes that "the focus of the statute is on the purpose for which the loan was issued and the purpose for which the loan was taken."  Hearing Tr. at 40:15-16.  So, where the borrower makes this certification, "that they are incurring a loan for the purpose that is set forth in the statute," and indicates "that they're going to use the loan for that purpose," that suffices to establish that the loan is nondischargeable.  Hearing Tr. at 40:17-20.

Further, Navient notes that if a Putative Class Member made a misrepresentation on their loan documentation certification to the effect that their loan was within the cost of attendance when it was not, then that misrepresentation would provide an alternative basis for that loan to be nondischargeable under Bankruptcy Code Sections 523(a)(2), 523(a)(4), and 523(a)(6).  Hearing Tr. at 65:19-22; 66:1-6.

As to irreparable harm, Navient argues that the Plaintiffs' delay in bringing the TRO Motion counsels strongly against granting relief.  Hearing Tr. at 48:21-25; 49:1-1.  It points out that the Plaintiffs brought the TRO Motion more than five years after this Adversary Proceeding was commenced, and some thirteen years after the commencement of the allegedly unlawful activity.  Hearing Tr. at 49:5-10.  And Navient states that since the Plaintiffs did not move promptly at the outset of this action to seek injunctive relief, they should not be able to seek this relief now.

Hearing Tr. at 51:13-25; 52:1-3.  And Navient notes that throughout the pendency of this case, the Plaintiffs have not been prevented from seeking the relief that they now seek in the TRO Motion. Hearing Tr. at 52:4-10.

As to the public interest, Navient argues that the Putative Class Members would be harmed, not helped, by the injunctive relief that the Plaintiffs seek.  Hearing Tr. at 53:8-21.  Specifically, as set forth in their opposition to the TRO Motion, Navient asserts that Putative Class Members would be harmed by a lack of notice or an opportunity to opt out of the scope of the preliminary injunctive relief.  Hearing Tr. at 56:2-13.  And Navient contends that on the record before the Court, the putative class is inherently uncertifiable, and as a consequence, no provisional notice or opportunity to opt out of any injunctive relief could remedy any potential harm to the Putative Class Members. Hearing Tr. 58:14-25; 59:1-16.

And finally, Navient argues that if any injunctive relief is issued by this Court, it must be limited to Putative Class Members who received their statutory bankruptcy discharge in the Eastern District of New York, because only the court that issues an injunction is empowered to enforce it. Hearing Tr. at 88:20-23.  Navient also notes that, because the discharge injunction is only enforceable through an action for contempt, the only relief that the Plaintiffs may seek at this time is a finding of contempt – and that form of relief must be sought in the court in which Putative Class Members received their discharge.  Hearing Tr. at 94:1-7.

### The Applicable Legal Standards

#### *The Elements of a Discharge Violation Claim*

Bankruptcy Code Section 524 describes the effect of a discharge.  It states that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524.  In order adequately

to state a claim for a violation of the bankruptcy discharge injunction, a plaintiff-debtor must allege that the debtor received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge. *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008).

Of course, for a bankruptcy discharge violation claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt. *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018) (stating that "[t]he discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt *that is discharged*" (emphasis added)); *In re Azevedo*, 506 B.R. 277, 283 (Bankr. E.D. Cal. 2014) (observing that "[s]howing a violation of a discharge order by definition requires showing specifically that the order applies to the debt on which the violation is premised") (citing 11 U.S.C. § 524(a)(1)-(2)); *Otten v. Majesty Used Cars, Inc.* (*In re Otten*), 2013 WL 1881736, at *7-8 (Bankr. E.D.N.Y. May 3, 2013) (analyzing the scope of a discharge injunction issued in the plaintiff's bankruptcy case in the context of determining whether the defendants' actions violated the discharge injunction).

### *Bankruptcy Jurisdiction Under Judiciary Code Section 1334*

Judiciary Code Section 1334 sets forth the grounds for federal jurisdiction over bankruptcy matters. Section 1334(a) provides that "[e]xcept as provided in [Section 1334(b),] the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a).

Section 1334(b) confers original but not exclusive jurisdiction upon district courts in all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Significantly, Section 1334(b) provides the bankruptcy courts with the ability to reach beyond the assets of a particular bankruptcy estate – as one court noted in considering a motion to dismiss a putative nationwide class, "[a] court no longer is restricted to dealing only with assets under its control; it also has the ability to deal with other matters affecting debtors." *Noletto v.*

*Nationsbanc Mortgage Corp.* (*In re Noletto*), 244 B.R. 845, 849 (Bankr. S.D. Ala. 2000).

And Section 1334(e) confers exclusive jurisdiction upon the district and bankruptcy courts of the debtor's property, the property of the estate. 28 U.S.C. § 1334(e)(1). As the court observed in *In re Noletto*, Section 1334(e) "vests the 'home court' with the exclusive power to control and distribute property of the estate." *In re Noletto*, 244 B.R. at 854. But equally, "[Section] 1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code." *Id. See Harker v. Wells Fargo Bank, NA* (*In re Krause*), 414 B.R. 243, 255-56 (Bankr. S.D. Ohio 2009) (finding that "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violations of provisions of the [Bankruptcy] Code, other federal statutory provisions, or other remedies").

### *Authority of the Bankruptcy Court Under Bankruptcy Code Section 105*

Bankruptcy Code Section 105 grants the bankruptcy court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. It also provides that the court is not precluded from "*sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.*

While Section 105 is often viewed as a broad grant of authority, it is similarly well established that this Section also "limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'" *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

As the Second Circuit has observed:

The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing. This language "suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective."

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003)

(quoting 2 *Collier on Bankruptcy* ¶ 105.01[1] (15th ed. 2003)).

<u>The Standard for the Entry of a Temporary Restraining Order</u>

Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, calls for the movant to meet a high standard, and several elements must be shown. "In this Circuit, 'the standard for an entry of a [temporary restraining order] is the same as for a preliminary injunction.'" *3M Co. v. CovCare, Inc.*, 2021 WL 7162292, at *2 (E.D.N.Y. Apr. 7, 2021) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). A party seeking a temporary restraining order must demonstrate:

(1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved" by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

As to the question of a likelihood of success on the merits, courts agree that a "party seeking injunctive relief 'need only show a likelihood of success on the merits of at least one of [its] claims.'" *3M Co.*, 2021 WL 7162292, at *2 (quoting *Home It, Inc. v. Wen*, 2020 WL 353098, at *5 (E.D.N.Y. Jan. 21, 2020)). In addition, "a plaintiff 'need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent.'" *Home IT, Inc.*, 2020 WL 353098, at *5 (quoting *Broker Genius, Inc. v. Volpone*, 313 F.

Supp. 3d 484, 497 (S.D.N.Y. 2018)).

As to the question of irreparable injury, "[i]rreparable injury has been defined as harm where 'remedies available at law, such as monetary damages, are inadequate to compensate' the plaintiff." *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011) (quoting *Salinger*, 607 F.3d at 80). "'Thus, if it appears that the potential harm to the moving party is simply a monetary loss, the potential injury is normally not deemed irreparable and hence does not justify injunctive relief.'" *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013) (quoting *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982)). The showing of irreparable injury is "the most important prerequisite for the issuance of a preliminary injunction." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995) (citing *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir 1990)).

And the irreparable harm must be more than speculative or remote. Instead, in order to succeed on an application for a temporary restraining order, the moving party must generally show that, "on the facts of their case, the failure to issue an injunction would actually cause [them] irreparable harm." *Salinger*, 607 F.3d at 82. At the same time, in the bankruptcy context, a limited exception exists where the "irreparable harm requirement" will be met if the action that the debtor seeks to enjoin "threatens the reorganization process or . . . impair[s] the court's jurisdiction with respect to a case before it." *Alert Holdings, Inc. v. Interstate Protective Servs.* (*In re Alert Holdings, Inc.*), 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) (citing cases). More specifically, the court may issue a temporary restraining order or preliminary injunction if the action that the debtor seeks to enjoin "would embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the Debtor's estate and reorganization prospects." *Alert Holdings*, 148 B.R. at 200.

As to the balance of hardships, "a court 'must balance the competing claims of injury and

must consider the effect on each party of the granting or withholding the requested relief.'" *Main Street Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter*, 555 U.S. at 24 (2008)).  The party moving for a temporary restraining order "must establish that the 'balance of hardships tips in their favor regardless of the likelihood of success.'" *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Salinger*, 607 F.3d at 79-80).  And in this context, "[t]he relevant harm is the harm that . . . occurs to the parties' legal interests" and "cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger*, 607 F.3d at 81.

And finally, as to the question of the public interest, "[i]n considering the public interest element for granting an injunction, the focus is generally on how the parties' specific actions would impact the public at large." *Roman Catholic Diocese of Syracuse, New York v. LG 35 Doe* (*In re Roman Catholic Diocese of Syracuse, New York*), 628 B.R. 571, 582 (Bankr. N.D.N.Y. 2021) (citing *Winter*, 555 U.S. at 13-14).  "Courts have long recognized that public interest is a 'supple principle' with 'as many and as variegated applications . . . as the situations that have brought it into play.'" *In re Roman Catholic Diocese*, 628 B.R. at 583 (quoting *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

<u>Discussion</u>

This motion places several questions before the Court.  At the outset, Navient opposes all of the relief sought by the Plaintiffs and the Putative Class members on grounds, in substance, that the temporary restraining order that is sought is "unauthorized."  If that is so, then it should not be necessary to proceed further, and the Court begins with that question.

Next, the Court considers whether the Plaintiffs have shown that they have satisfied each of the elements necessary to be entitled to a temporary restraining order.  A party seeking this relief must demonstrate a likelihood of success on the merits or "sufficiently serious questions going to

the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the plaintiff's favor," a likelihood of "irreparable injury in the absence of an injunction," that "the balance of hardships tips in the plaintiff's favor," and that the "public interest would not be disserved" by the issuance of an injunction. *3M Co.*, 2021 WL 7162292, at *2 (quoting *Benihana, Inc.*, 784 F.3d at 895). The Court addresses each of these elements in turn.

But that is not the end of the Court's inquiry. The Plaintiffs seek this relief on behalf of a nationwide class of Putative Class Members. Navient asserts that any relief that this Court may enter must be limited to Putative Class Members who received a bankruptcy discharge in this District, because only the court that enters an injunction – including the statutory bankruptcy discharge injunction –is empowered to enforce it. Viewed another way, Navient argues that relief for an asserted violation of a debtor's discharge may be sought only in the court or District where that discharge was entered. So, the Court next considers whether a temporary restraining order may be entered on behalf of the entire putative class.

And finally, the Plaintiffs seek this relief not only on behalf of Putative Class Members who, like Mr. Homaidan and Ms. Youssef, entered into private Tuition Answer Loans that exceed the cost of attendance – as set forth in the Amended Complaint – but also on behalf of a larger group, encompassing student borrowers who entered into other private loans that exceed the cost of attendance – as set forth in the Class Certification Motion. Navient argues that the shifting and expanding scope of the Plaintiffs' request for relief goes too far, and should not be allowed. And lastly, the Court takes up this question.

<u>*Whether the Plaintiffs Seek an "Unauthorized" Temporary Restraining Order*</u>

As a threshold matter, Navient argues that, for several different reasons, the temporary restraining order sought by the Plaintiffs is "unauthorized." Opp. at 9-32. The Court begins by addressing these arguments.

First, Navient argues that the Plaintiffs seek an unauthorized temporary restraining order in favor of uninjured parties with no Article III standing.  Opp. at 20.  That is, Navient asserts that the Plaintiffs seek to shift to Navient the burden to identify those parties who should *not* be class members and to identify those loans and borrowers on which the Plaintiffs do *not* have any chance of succeeding on the merits.  Opp. at 21.  And it asserts that the Plaintiffs' attempt to restrain collection activities on loans that are within the cost of attendance runs afoul of constitutional limitations on the exercise of judicial power because, as Navient sees it, the borrowers on these loans have been subjected to *no* wrongdoing and have suffered *no* harm.  If any one of them were to sue Navient individually for discharge violations, they would be unable to assert *any* injury in fact fairly traceable to the challenged action and would thus lack Article III standing.  Opp. at 23-24 (citing *Lujan*, 504 U.S. at 560-61).  Navient also points to the Second Circuit's decision in *Denney* for support, and notes that there, the court stated that "'[n]o class may be certified that contains members lacking Article III standing' and any 'class must therefore be defined in such a way that anyone within it would have standing.'"  Opp. at 24 (quoting *Denney*, 443 F.3d at 264).  For this reason alone, Navient asserts, the Plaintiffs' attempt to obtain a broad injunction must fail, because it would include thousands of uninjured parties who are simply not entitled to any relief.  Opp. at 24.

Here, at the outset, the record shows that Mr. Homaidan and Ms. Youssef have Article III standing to bring a claim against the Defendants based on their allegations that they were injured by Navient's attempts to collect or collecting on their student loans that were in excess of the cost of attendance and discharged in bankruptcy, and their claims that their injuries may be redressed by damages and injunctive relief.  *See Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 420 (S.D.N.Y. 2014) (stating that "[p]laintiff here has Article III standing to sue Defendants based on allegations that it suffered injury . . . and that its injury is

redressable by the award of statutory damages under those two statutes as well as injunctive relief.").

At the same time, "Article III standing is distinct from the issue of 'class standing,' *i.e.*, standing to assert claims on behalf of others." *Bais Yaakov*, 36 F. Supp. 3d at 420. "'[T]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)). "'Th[e] conclusion [that a named plaintiff has a case or controversy] does not automatically establish that [the named plaintiff] is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to "fairly and adequately protect the interests of the class."'" *NECA-IBEW*, 693 F.3d at 159 (quoting *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

As the Second Circuit has stated, in distilling a broad standard for class standing, "in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW*, 693 F.3d at 162 (first quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); and then citing *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).

And here, the record shows that the Plaintiffs tailored their request for a temporary restraining order to encompass only those Putative Class Members who, at this time and at this stage in these proceedings, have standing to seek this relief. That is, the Plaintiffs do *not* seek this relief

on behalf of borrowers whose private Tuition Answer Loans or other private student loans do *not* exceed the cost of attendance. Nor do they seek preliminary injunctive relief on behalf of Putative Class Members whose loans exceed the cost of attendance, but who no longer have outstanding any balance to be paid – because there are no ongoing collection efforts.

And in all events, the Plaintiffs have limited their request for temporary injunctive relief to Ms. Youssef and those similarly situated Putative Class Members who currently have loans that are subject to Navient's ongoing collection efforts. That is, they seek this relief on behalf of those Putative Class Members with private Tuition Answer Loans and other private loans that exceed the cost of attendance, and that have an outstanding balance that is due. Those loans, they assert, were discharged, and Navient's collection activities should cease. Reply at 6. It is also no barrier to temporary injunctive relief that these Putative Class Members would need to be identified by Navient. *See Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 41-42 (N.D. Cal. 2020) (rejecting argument against temporary injunctive relief that entity to be restrained would be required to identify persons subject to the relief).

For these reasons, the Plaintiffs have Article III standing to bring the TRO Motion, and they seek temporary injunctive relief only on behalf of Putative Class Members who are similarly situated and have standing to seek the same relief.

Navient also argues that the Plaintiffs seek an unauthorized temporary restraining order of indefinite duration. Opp. at 9. But this argument misconstrues both the Plaintiffs' request for relief and the applicable law. To be sure, Federal Rule of Civil Procedure 65 sets boundaries on the duration of temporary injunctive relief. At the same time, an application for a temporary restraining order need not state the intended duration of that relief. Instead, as the Second Circuit and other courts have found, a temporary restraining order that provides it will be in effect for an indefinite duration and ultimately remains in effect beyond the time limitations contained in Federal Rule of

Civil Procedure 65(b) is simply treated as a preliminary injunction of indefinite duration.  *See Truck Drivers Local Union No. 807, Intern. Broth. of Teamsters v. Bohack Corp.*, 541 F.2d 312, 316 (2d Cir. 1976) (observing that "[w]hen the district court extended for an indefinite period of time the terms of the temporary restraining order . . . and refused to dissolve it, the order became appealable as the grant of a preliminary injunction.").  *See also In re Criminal Contempt Proceedings Against Crawford*, 133 F. Supp. 2d 249, 256 (S.D.N.Y. 2001) (citing *Sampson v. Murray*, 415 U.S. 61, 87-88 (1974)) (observing that "[t]he Court stated clearly and unequivocally in the TRO that it was to remain in effect until resolution of the plaintiffs' motion for preliminary injunction. . . .  The Supreme Court and the appellate courts have held that where, as here, a district court expressly extends a TRO issued after notice and a hearing beyond the . . . limit[s] in Rule 65(b), the TRO does not cease to exist . . . , but instead becomes an enforceable preliminary injunction subject to appellate review.").

Finally, Navient argues that the Plaintiffs seek an unauthorized temporary restraining order that would fail for vagueness.  Opp. at 29.  It notes that Federal Rule of Civil Procedure 65, made applicable here by Bankruptcy Rule 7065, provides that every temporary restraining order and every order granting a preliminary injunction must "'(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.'"  Opp. at 29 (quoting Fed. R. Civ. P. 65(d)).  Navient asserts that any order entered in response to the TRO Motion would improperly encompass thousands of discharged borrowers for whom the Plaintiffs have not established a likelihood of success on the merits, and would improperly extend relief, in an unconstitutional way, to thousands of discharged borrowers who, even assuming the validity of the Plaintiffs' legal theory, have been subjected to no wrongdoing and have suffered no injury – because their loans do not exceed the cost of attendance.  Opp. at 30.

And Navient asserts that even if the burden-shifting that is proposed by the Plaintiffs were otherwise proper, the overbroad order that they seek – encompassing borrowers whether or not their loans were issued pursuant to a loan program guaranteed or funded by a non-profit institution, and all "direct to consumer loans," would still violate the requirements of Rule 65 in multiple ways and would put Navient at risk of contempt without any meaningful notice of the activities that it would be precluded from conducting.  *Id.*

Navient is correct that any order entered by this Court in response to the TRO Motion must be clear, concise, and in compliance with the requirements of Rule 65.  As the Second Circuit has observed, "[a] court is required to frame its orders so that those who must obey them will know what the court intends to forbid." *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980) (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).  "'[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.'" *Diapulse Corp.*, 626 F.2d at 1111 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).  "It is for this reason that Fed. R. Civ. P. 65(d) . . . provides that every order granting an injunction shall be specific in its terms and describe in reasonable detail the acts sought to be restrained." *Diapulse Corp.*, 626 F.2d at 1111.

Similarly, there can be no doubt that the responsibility to comply with the requirements of Rule 65(d) belongs to this Court.  That is, in crafting any order that may be entered in response to the TRO Motion, this Court must take care to "state the reasons why it issued; . . . state its terms specifically; and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(b)(2).  When courts do not meet these standards, their orders do not withstand appellate scrutiny.  *See Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967) (concluding that "there was not sufficient compliance with Rule 65(d).  The court stated no valid reason for the issuance of the injunction . . . .  The order does not

43

specifically describe the act or acts sought to be restrained."); *Diapulse Corp.*, 626 F.3d at 1111 (citations omitted) (observing that "[a]n order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny."); *Brumbly Metals, Inc. v. Bargen*, 275 F.2d 46, 49 (7th Cir. 1960) (citation omitted) (observing that "an order which did not comply with Rule 65(d) was not necessarily void; but that if it were assailed on appeal, it should be set aside for failure to comply with the rule.").

This Court agrees with Navient that an order enjoining conduct must be clear – in stating the reasons why it issued, stating its terms with specificity, and stating precisely the actions that are restrained or required.  This is a significant task indeed, but it is not an insurmountable one, and if the Plaintiffs have met the applicable standards for temporary injunctive relief, it does not render the issuance of a temporary restraining order unauthorized in these circumstances.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, do not seek an "unauthorized" temporary restraining order.

### Whether the Plaintiffs Have Shown a Likelihood of Success on the Merits

The first element that a plaintiff must establish in order to be entitled to temporary or preliminary injunctive relief is "'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor.'"  *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)).

In this adversary proceeding, the Plaintiffs, on behalf of themselves and the Putative Class Members, seek a declaratory judgment, permanent injunctive relief, and damages arising from the Defendants' alleged "pattern and practice" of violating the discharge injunction provided by

Bankruptcy Code Section 542(a)(2) by collecting on the Plaintiffs' and the Putative Class Members' discharged student loans – loans which, the Plaintiffs state, are within the scope of their bankruptcy discharges because they exceed the applicable cost of attendance and therefore do not qualify for the exception to discharge described in Bankruptcy Code Section 523(a)(8)(B).  Am. Compl. ¶¶ 2, 64, 87-94.

Specifically, in the Amended Complaint, the Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9) that the Plaintiffs' and the Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance are not nondischargeable student loans or qualified education loans, and were therefore discharged upon entry of their bankruptcy discharges.  Am. Compl. ¶¶ 64, 88.  Additionally, the Plaintiffs allege that the Defendants violated the Plaintiffs' and the Putative Class Members' statutory bankruptcy discharge injunctions because their Tuition Answer Loans were discharged, the Defendants were notified of their discharge orders, and the Defendants nevertheless continued to collect on their loans.  Am. Compl. ¶¶ 89-92.  The TRO Motion, by referring to the proposed class as set forth in the Class Certification Motion, broadens the scope of the relief sought from the Amended Complaint.  That is, the TRO Motion seeks relief encompassing not just Tuition Answer Loans, but all "private loans" held by the Putative Class Members and owned or serviced by Navient.  *See* Class Cert. Mot. at 15.  *See also* TRO Motion at 7, 12.

The Plaintiffs argue that they are likely to succeed on the merits because the Putative Class Members' private student loans are not nondischargeable under Bankruptcy Code Section 523(a)(8) or any of its subsections, and as a result, the Defendants' collection efforts violate the statutory bankruptcy discharge injunction.  TRO Motion at 10-12.  They also argue that the sole basis on which the Defendants could claim that Putative Class Members' loans are nondischargeable is based on Bankruptcy Code Section 523(a)(8)(B), which requires that loans be within the cost of

attendance at an eligible educational institution.  TRO Motion at 11 (citing *In re Golden*, 596 B.R. at 267-69).  And the Plaintiffs assert that the Defendants took no steps to determine whether these loans were within the cost of attendance.  TRO Motion at 11-12.  As a result, the Plaintiffs argue that the Defendants effectively admit to attempting to collect on private direct-to-consumer loans that were issued to Putative Class Members, that exceeded the cost of attendance, and that were discharged in their bankruptcy cases.  TRO Motion at 12.

Navient responds that Mr. Homaidan is not entitled to a temporary restraining order or an injunction against future collection activities, because his loans have been paid in full and currently have no outstanding balances subject to collection – that is, there is simply no loan balance left to collect.  Opp. at 28.  Navient also asserts that Ms. Youssef is unlikely to prevail on the merits of any of her claims, because she represented to Navient in her loan documents that her loans were within the cost of attendance and would be used only for qualified educational expenses.  Opp. at 28-29.

As stated above, in order adequately to state a claim for violation of the statutory bankruptcy discharge injunction, the Plaintiffs must allege that they received a discharge, the Defendants received notice of the discharge, and the Defendants intended the acts that violated the discharge. *Motichko*, 395 B.R. at 31.  And of course, for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt.  *See Eppolito*, 583 B.R. at 826.

Much of the record relating to these matters appears to be undisputed.  As to Mr. Homaidan, as Navient points out and the Plaintiffs do not dispute, any order enjoining collection activities would simply not be applicable to him – or to any other Putative Class Member whose loan balance has been satisfied in full.  *See* Reply at 6 (stating that "[w]ith regard to Plaintiff Homaidan, it is true that he does not need injunctive relief").  And as to Ms. Youssef and similarly situated Putative Class Members, the parties appear not to dispute that these individuals took out private Tuition Answer Loans or other private loans owned or serviced by the Defendants, that they received a

46

discharge in their Chapter 7 bankruptcy cases, that the Defendants received notice of those discharges, and that the Defendants sought to collect on their loans.

What is disputed, however, is whether the private loans at issue are within the scope of the Plaintiffs' and the Putative Class Members' dischargeable debt. *See Eppolito*, 583 B.R. at 826. In *Homaidan*, the Second Circuit concluded that private student loans do not qualify for an exclusion from discharge under Section 523(a)(8)(A)(ii), because these loans are not an "educational benefit" under that Section. As the court explained, Section 523(a)(8)(A)(ii) "covers scholarships, stipends, and conditional education grants; and § 523(a)(8)(B) covers private loans made to individuals attending eligible schools for certain qualified expenses." *Homaidan*, 3 F.4th at 604. And as the court observed:

> Navient's broad reading – under which any loan is nondischargeable under [Section] 523(a)(8)(A)(ii) if it was used to further one's education – would draw virtually all student loans within the scope of [Section] 523(a)(8)(A)(ii). That construction provides too much. If it were adopted, the other subsections of [Section] 523(a)(8) – both of which delineate specific categories of nondischargeable educational debt – would be swallowed up. . . .

> The evolution of [Section] 523(a)(8) confirms that it is not a catch-all for educational loans.

*Homaidan*, 3 F.4th at 602-03.

That is, and as the Second Circuit has explained, Section 523(a)(8)(A)(ii) does not have a role to play in the analysis of the dischargeability of the Putative Class Members' private Tuition Answer Loans or other private loans, because "by constructing a statute with three distinct subsections, 'Congress intended each [one] to have a distinct function and to target different kinds of debt[].'" *Homaidan*, 3 F.4th at 603 (quoting *Inst. of Imaginal Stud. v. Christoff* (*In re Christoff*), 527 B.R. 624, 634 (9th Cir. B.A.P. 2015)).

And Section 523(a)(8)(B) plainly excludes certain private student loans – described as "qualified education loan[s], as defined in [Internal Revenue Code] section 221(d)(1)," from the

scope of a debtor's bankruptcy discharge – but only where specified criteria are met.  These criteria include that the student borrower attended or intended to attend a Title IV institution and received a private loan that is within the cost of attendance at that institution as defined by Internal Revenue Code Section 221(d).  But just as plainly, and as a matter of logic, if those criteria are *not* met, then the exclusion from discharge does *not* apply.

As a consequence, the Plaintiffs have shown that to the extent their private student loans, including private Tuition Answer Loans, do not meet the criteria of Section 523(a)(8)(B), they are within the scope of their bankruptcy discharges.  And they have shown this with respect to their private Tuition Answer Loans and those of similarly situated Putative Class Members – students who attended or intended to attend Title IV institutions and received private loans owned or serviced by the Defendants that exceeded the cost of attendance at such institutions as defined by Internal Revenue Code Section 221(d), who obtained bankruptcy discharges after January 1, 2005, who have not reaffirmed their loans, and who have been, and may continue to be, subjected to the Defendants' actions to collect on their loans – because by the very terms of the Plaintiffs' claims and class definition, these private student loans that exceed the cost of attendance are outside the scope of Section 523(a)(8)(B)'s exclusion from discharge.  *See* Class Cert. Mot. at 15.  *See also Homaidan*, 3 F.4th at 605.

Finally, Navient's argument that certifications by the Plaintiffs and the Putative Class Members in their loan documentation that their loans were within the cost of attendance and would be used only for qualified educational expenses establish that these loans are nondischargeable is not persuasive, for several reasons.

At the outset, courts agree that such standardized "boilerplate" certifications or statements by borrowers are not enforceable in bankruptcy for this purpose.  *See, e.g.*, *Tamasco v. Nicholls* (*In re Nicholls*), 2010 WL 5128627, at *2 (Bankr. E.D.N.Y. Dec. 10, 2010) (agreeing that "prepetition

waivers of dischargeability are unenforceable as against public policy"); *Hayhoe v. Cole* (*In re Cole*), 226 B.R. 647, 651 (B.A.P. 9th Cir. 1998) (holding that a stipulated judgment in which a chapter 7 debtor agreed that a debt would be nondischargeable under Section 523(a)(2) was an impermissible waiver of the bankruptcy discharge); *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779-80 (Bankr. N.D.N.Y. 2008) (stating that "pre-petition waivers of discharge are fundamentally void and offend the public policy of promoting a fresh start for individuals").

Separately, it is worth noting that the question of dischargeability of a private student loan under Bankruptcy Code Section 523(a)(8)(B) turns on objective, not subjective, matters including the facts and circumstances of the loan and the applicable cost of attendance.  If the facts show that a private student loan *exceeds* the applicable cost of attendance, then that borrower's statement – boilerplate or otherwise – that a loan *does not exceed* the cost of attendance does not change those facts.

And finally, the Bankruptcy Code provides a well-traveled path for a creditor to argue that a debtor procured a loan by fraudulent or dishonest means.  If Navient seeks to establish that in a particular situation, the borrower obtained their loan "by . . . false pretenses, a false representation, or actual fraud," then it may do so, by bringing a dischargeability action under Bankruptcy Code Section 523(a)(2)(A).  In such an action, Navient will bear the burden to show:

> first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made; third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation.

*First Am. Title Ins. Co. v. Moses* (*In re Moses*)*,* 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing *Fleet Credit Card Servs. L.P. v. Macias* (*In re Macias*)*,* 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citation omitted)).  But Section 523(a)(2)(A) actions arise in the context of a discharged debt, and if the necessary showing is made, that debt will be excluded from the scope of a debtor's discharge.

Section 523(a)(2)(A) does not provide a self-executing or preemptive means for a creditor to avoid the consequences of a discharge violation.

*      *      *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown a likelihood of success on the merits of their discharge violation claims against Navient. The Plaintiffs have shown a likelihood of success on the merits of their claim that their private Tuition Answer Loans that exceed the cost of attendance do not meet the nondischargeability requirements of Bankruptcy Code Section 523(a)(8)(B), and are therefore within the scope of their bankruptcy discharges. And the Plaintiffs have shown a likelihood of success on the merits of their claim that Navient received notice of their bankruptcy discharges, and intended the acts that violated the discharge to collect on these discharged debts – that is, that Navient has violated the statutory bankruptcy discharge injunction as to the Plaintiffs and the Putative Class Members.

### _Whether the Plaintiffs Have Shown a Likelihood of Irreparable Injury in the Absence of Relief_

The second element that a plaintiff must establish in order to be entitled to temporary or preliminary injunctive relief is "a likelihood of 'irreparable injury in the absence of an injunction.'" _Benihana, Inc._, 784 F.3d at 895 (quoting _Salinger_, 607 F.3d at 79-80)).

At the outset, the Plaintiffs assert that the requirement of individual irreparable injury may not even apply in this situation, because the relief that they seek will protect the Plaintiffs and the Putative Class Members from continued violations of their bankruptcy discharges. They state that "a bankruptcy court, pursuant to its powers under § 105, may grant a preliminary injunction to protect the debtor or the estate without a showing of irreparable injury." TRO Motion at 6 (collecting cases). This is because, in substance, the injunctive relief that is sought "'vindicates the interests of the _Court_, as much as (and perhaps more than) it vindicates the interest of an individual

50

litigant.'"  TRO Motion at 7 (quoting *In re Ames Dep't Stores, Inc.*, 317 B.R. at 274 (emphasis in

original)).  And the Plaintiffs assert that it is "undisputed" that the Defendants have violated the

Putative Class Members' statutory bankruptcy discharge injunctions by collecting on their private

Tuition Answer Loans that exceed the cost of attendance after those loans were discharged, so that

"[the] Plaintiffs need not make any additional showing of irreparable harm to warrant a temporary

restraining order."  TRO Motion at 7.

   And separately, the Plaintiffs argue that they have established that they and the Putative

Class Members "continue to suffer irreparable harm imposed by Defendants' illegal collection

activity."  *Id*.  They assert that the Defendants have acted in "flagrant disregard" of the statutory

bankruptcy discharge injunctions applicable to the Putative Class Members by repeatedly

attempting to collect on these discharged debts, and that these "continued collection efforts will

cause Plaintiffs and class members to suffer irreparable harm if a temporary restraining order is not

entered."  TRO Motion at 9-10.  They point to cases concluding that the act of repeatedly attempting

to collect a debt that has been discharged creates irreparable injury, noting the conclusion of one

bankruptcy court that "[i]f [the creditor] continues to call Plaintiffs, damages alone would not

compensate them for the stress caused by" the ongoing collection efforts.  TRO Motion at 8

(quoting *In re Diaz*, 526 B.R. at 695).  And they note that another bankruptcy court similarly found

that "'any action or attempt to collect [debt] in spite of a discharge is a clear violation of the

permanent injunction included in the discharge,'" and concluded that injunctive relief was necessary

in order to prevent "'irreparable harm.'"  TRO Motion at 8 (quoting *In re Daniel*, 98 B.R. at 76).

   Navient responds that the Plaintiffs do not cite any persuasive authority to support their

assertion that irreparable injury is not a necessary element in a request for a temporary restraining

order involving the bankruptcy discharge injunction, and additionally, that every case the Plaintiffs

cite for their argument that a finding of irreparable injury is not necessary pursuant to Section 105

was decided before the Supreme Court's decision in *Taggart*, which mandates that "irreparable injury . . . remain[s] [a] critical element[] to consider in any action for injunctive relief brought under section 105."  Opp. at 27 (citing *Taggart*, 139 S. Ct. at 1801).

Here, the Court begins with the question of whether the Plaintiffs and the Putative Class Members are required to show a likelihood of irreparable injury in connection with their request for temporary injunctive relief.  The Court has already concluded that the Plaintiffs have shown a likelihood of success on the merits of their claim that their private Tuition Answer Loans that exceed the cost of attendance were discharged in their bankruptcy cases, that the Defendants received notice of the discharge, and finally, that the Defendants continued to collect on those loans, in violation of their discharges.  As the bankruptcy court found in *In re Ames Department Stores, Inc.*, this conduct poses a threat to the bankruptcy process, and the injunction that the Plaintiffs seek "'vindicates the interests of the *Court*, as much as (and perhaps more than) it vindicates the interest of an individual litigant.'"  TRO Motion at 7 (quoting *In re Ames Dep't Stores, Inc.*, 317 B.R. at 274 (emphasis in original)).

And separately, in the alternative, the Plaintiffs and the Putative Class Members have shown that there is "a likelihood of 'irreparable injury in the absence of an injunction.'"  *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)).  They have shown a likelihood of success on the merits of their claim that the Defendants have acted in violation of the statutory bankruptcy discharge injunction, by continuing to collect on their private Tuition Answer Loans that exceed the cost of attendance, and therefore are outside the scope of the discharge exception contained in Bankruptcy Code Section 523(a)(8)(B).

An attempt to collect on a discharged debt is not just about money – it is about the hardships and burdens that impair a debtor's efforts to achieve the "fresh start" that is a centerpiece of the bankruptcy system.  As the Plaintiffs note:

> In the absence of injunctive relief, Plaintiffs and the class members will continue to be harassed by Defendants for payments on debts that have actually been discharged in Bankruptcy.  This will not only cause them to endure the stress of receiving harassing phone calls and letters, but also the financial hardship and pressure of continuing to make payments on these discharged loans.

TRO Motion at 12.  That is, these acts by Navient to collect on a discharged debt amount to irreparable harm, and an award of damages after the fact is not sufficient to remedy that harm.

This conclusion is consistent with widely accepted principles of bankruptcy law, including the importance of a debtor's "fresh start."  As this Court and others have observed, "'[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start."'" *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 896, 911 (Bankr. E.D.N.Y. 2021) (quoting *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007)).  The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy."  *In re McKenzie-Gilyard*, 388 B.R. at 480.  And as stated by the bankruptcy court in a related context, "there is . . . a strong policy in protecting a debtor's fresh start after their bankruptcy proceedings are resolved."  *Credit One Bank, N.A. v. Anderson* (*In re Anderson*), 560 B.R. 84, 93 (Bankr. S.D.N.Y. 2016).  *See In re Daniel*, 98 B.R. at 75-76 (any attempt to collect a discharged debt "is a clear violation of the permanent injunction included in the discharge[,]" and failing to grant injunctive relief against such collection efforts will lead to irreparable harm); *In re Diaz*, 526 B.R. at 694 (stating that "irreparable injury" is established where a creditor persisted in collecting a debt that it knew was discharged, and money "damages alone would not compensate" the debtors "for the stress caused by the harassing" collection efforts).

Two additional points are worthy of note.  First, Navient argues that this request for relief is premature – that is, that the Plaintiffs may not seek injunctive relief for the Putative Class Members before a class has been certified because, among other reasons, this relief would effectively expose a

significant number of the Putative Class Members to substantial harm without notice or an opportunity to protect themselves by electing to opt out of the class.  Opp. at 17-18; Hearing Tr. at 53:8-21; 56:2-13.  Navient also argues that the Plaintiffs have cited just one case from the Second Circuit to support the proposition that a class-wide injunction may be issued before the class is certified, *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004), and urge that *LaForest* is distinguishable because, among other reasons, "by the time [the] case was ripe for decision at the Second Circuit, any error in that process had been cured by the . . . issuance of a subsequent order certifying the class."  Opp. at 15.

The Plaintiffs disagree, and argue that "[c]ourts routinely grant preliminary injunctive relief on behalf of a putative class prior to class certification."  TRO Motion at 13 (citing William B. Rubenstein, Newberg on Class Actions § 4:30 n. 8.50 (5th ed. 2017)).  In support of this assertion, they point to the Second Circuit's decision in *LaForest* and to decisions of several district courts within and outside the Second Circuit in which preliminary injunctive relief was entered in favor of a putative class prior to certification.  TRO Motion at 13 (citing cases).

Here, this Court is satisfied that an adequate basis has been established to consider – at this time – the question of temporary injunctive relief on behalf of the Putative Class members.  As the district court found in *Ligon v. City of New York*, the facts and circumstances of a particular case may warrant the entry of a preliminary injunction on behalf of a putative class before a class is formally certified.  In *Ligon*, the putative class was "'comprised of individuals who have been or are at risk of being subjected to the New York City Police Department's practice of stopping individuals outside of buildings enrolled in Operation Clean Halls in the Bronx on suspicion of trespassing inside those buildings.'"  *Ligon*, 925 F. Supp. 2d at 539.  The court concluded that class certification was not a prerequisite to granting injunctive relief to the putative class, and stated that "'[i]t is well established that "[c]ertain circumstances give rise to the need for prompt injunctive

relief for a named plaintiff or on behalf of a class" and that the "court may . . . award a broad

preliminary injunction, without a formal class ruling, under its general equity powers.'" *Ligon*, 925

F. Supp. 2d at 539 (quoting *Strouchler v. Shah*, 891 F. Supp. 2d 504, 516-17 (S.D.N.Y. 2012)).

Here, as in *Ligon*, the record shows that circumstances are present that warrant "prompt

injunctive relief for a named plaintiff . . . on behalf of a class." *Ligon*, 925 F. Supp. 2d at 539. The

Plaintiffs have demonstrated a "likely irreparable harm on behalf of the putative class." *Ligon*, 925

F. Supp. 2d at 539 (citing *Stouchler*, 891 F. Supp. 2d at 515). In particular, the Plaintiffs have

shown that Ms. Youssef and each of the Putative Class Members that holds a private Tuition

Answer Loan that exceeds the cost of attendance and has an outstanding balance is likely to be

subjected to continued collection activities by Navient in violation of their bankruptcy discharges.

And there is nothing in the record to show, or even suggest, that Navient will stop, or even pause,

those collection activities in the absence of a direction from this Court.

Second, Navient argues that this request for relief is long overdue – that is, that the Plaintiffs

have waited too long to seek injunctive relief for themselves and the Putative Class Members. This

delay, Navient asserts, shows that a temporary restraining order is not warranted here because the

Plaintiffs do not, and cannot, show that any emergency or exigent circumstance exists, and as a

result, any harm suffered by the Plaintiffs and the Putative Class Members is not irreparable. Opp.

at 25. Navient points to the fact that the Plaintiffs waited more than two years after the complaint

was filed – until December 19, 2019 – to seek a preliminary injunction, and then waited more than

two years after that – until April 7, 2022 – to seek a temporary restraining order. *Id.* Navient asserts

that this delay counsels strongly against granting the injunctive relief that the Plaintiffs now seek.

*Id.*

Navient correctly notes that much time has passed since this Adversary Proceeding was

commenced in 2017. And in some circumstances, courts have found that the passage of time,

without more, weighs against the granting of temporary or preliminary injunctive relief.  As one court observed, "'[w]hile delay does not always undermine an alleged need for preliminary relief, months-long delays in seeking [injunctive relief] have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompany a motion for preliminary relief.'"  *Silent Gliss Inc. v. Silent Gliss Int'l Ltd.*, 2022 WL 1525484, at *8 (E.D.N.Y. May 13, 2022) (quoting *Silber*, 950 F. Supp. 2d at 439).  And as another court found, "[b]ecause preliminary injunctions" and temporary restraining orders "are predicated upon 'urgent need for speedy action,' delay in seeking the remedy suggests that the remedy is not really needed, or that the harm is not really irreparable."  *Minzer v. Keegan*, 1997 WL 34842191, at *6 (E.D.N.Y. Sept. 22, 1997) (citation omitted) (quoting *CitiBank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

At the same time, "[c]ourts may excuse delays '[i]f the movant can provide a credible explanation for its inactivity.'"  *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (quoting *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)).  As one example, "[c]ourts have excused delays where the parties diligently pursue settlement negotiations."  *Hodnett*, 2021 WL 535485, at *6 (citing *Marks Org.*, 784 F. Supp. 2d at 333).

And similarly, a delay caused by a plaintiff's good faith investigation of their claims does not weigh against a finding of irreparable harm.  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (citing *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992)).  "The existence of prejudice to the non-movant caused by the movant's delay is also a relevant factor."  *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 n.1 (2d Cir. 1998) (citing *Tom Doherty*, 60 F.3d at 39).  And "delay alone" does not require denial of temporary or preliminary injunctive relief.  *Marks Org.*, 784 F. Supp. 2d at 333 (citing *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998)).

The Court "thus begins its analysis by recognizing the Second Circuit's instruction that '[a] . . . court should *generally* consider delay in assessing irreparable harm,' even if it is not dispositive of the issue." *Marks Org.*, 784 F. Supp. 2d at 333 (quoting *Tom Doherty*, 60 F.3d at 39).  And the starting point for this analysis is the timeline of this Adversary Proceeding, including the time spent in dispositive motion practice before this Court, on appeal in the District Court and the Second Circuit, and finally, in court-annexed mediation.

On June 23, 2017, Mr. Homaidan commenced this Adversary Proceeding by filing the complaint.  Within a few months, on October 30, 2017, Navient filed a Motion to Compel or Dismiss, asserting that as a matter of law, this action should be dismissed because Mr. Homaidan's claims should be heard in an arbitration, not in court, and separately that this Adversary Proceeding should be dismissed because the Putative Class Members student loans were excluded from their bankruptcy discharges pursuant to Bankruptcy Code Section 523(a)(8)(A)(ii).

The Court first considered Navient's Motion to Compel or Dismiss to the extent that it sought to compel arbitration of Mr. Homaidan's claims, and after a period of time to permit the parties to brief and argue that issue, on July 25, 2018, the Court entered a decision denying that portion of Navient's requested relief.  *See In re Homaidan*, 587 B.R. at 443.  Navient appealed that decision on August 10, 2018, and pursuant to the parties' stipulation, the appeal was dismissed on November 5, 2018.

Next, the Court considered Navient's Motion to Compel or Dismiss to the extent that it sought to dismiss Mr. Homaidan's claims on grounds that the private Tuition Answer Loans that exceed the cost of attendance were excluded from discharge under Bankruptcy Code Section 523(a)(8)(A)(ii).  Again, after a period of time to permit the parties to brief and argue that issue, on January 31, 2019, the Court entered a decision denying that portion of Navient's requested relief.  *See In re Homaidan*, 596 B.R. at 106-07, 110.  And on February 14, 2019, Navient filed an

interlocutory appeal of this Court's decision denying the motion to dismiss in the District Court.

ECF No. 105.  At the same time, Navient also sought leave to pursue a direct appeal to the Second

Circuit.  ECF No. 107.

While the appeal was pending in the District Court, on December 17, 2019, this Court issued

an order amending the complaint to add Ms. Youssef as an additional named plaintiff and proposed

class representative.  ECF No. 166.  And on December 19, 2019, the Plaintiffs filed a motion for

class certification, a motion for partial summary judgment, and a motion for a preliminary

injunction.  ECF No. 168.

More than a year later, on February 25, 2020, the District Court granted Navient's motion to

certify this Court's order denying the Motion to Compel or Dismiss to the extent that it sought to

dismiss the Adversary Proceeding.  That appeal proceeded in the Second Circuit, and some sixteen

months later, on July 15, 2021, the Second Circuit affirmed this Court's decision denying Navient's

request to dismiss the Adversary Proceeding on grounds, in substance, that reading Section

523(a)(8)(A)(ii) to exclude private student loans from a debtor's bankruptcy discharge is

"unsupported by plain meaning."  *Homaidan*, 3 F.4th at 601.

Less than two weeks after the appellate process was concluded, on July 28, 2021, this Court

held a continued pre-trial conference in this Adversary Proceeding.  At this point, Navient's legal

defenses of arbitrability and an alternative basis for the nondischargeability of the Plaintiffs' and the

Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance had been

resolved against it, by this Court and by the Second Circuit.  With the consent of the parties, on

August 20, 2021, the Court entered an order assigning this matter to mediation.  ECF No. 302.

The parties diligently pursued that path for some months, but ultimately, the mediation

process was not fruitful.  On March 14, 2022, the Plaintiffs filed a letter stating that mediation was

not successful, and that "it is now clear that this matter will not settle without a ruling by the Court

on the pending motions for preliminary injunction, summary judgment and class certification."

ECF No. 310. On March 22, 2022, Navient filed a letter stating its "disagree[ment] with the

characterization in the [Plaintiffs'] letter regarding the parties' mediation efforts. Navient remains

engaged in the process and believes that it is premature to conclude that this matter will not settle

without a ruling on the pending motions." ECF No. 313. And just over two weeks later, on April 7,

2022, the Plaintiffs filed this TRO Motion.

At each step of this long procedural path, Navient and the Plaintiffs each – quite

appropriately – made motions, sought appellate review, and pursued a mediation pathway to a

consensual resolution, and each of these steps took time. Some took considerable time. But at this

stage in these proceedings, and based on this record, it is simply not accurate to suggest that the

Plaintiffs somehow delayed or waited too long to bring this TRO Motion and seek temporary or

preliminary injunctive relief. It was Navient, not the Plaintiffs, that brought a motion to compel

arbitration, and to dismiss this Adversary Proceeding. From October 2017 to July 2021, Navient's

motions and appeal were pending and vigorously disputed in the District Court and Second Circuit.

And in those requests for relief, Navient sought final and dispositive relief, on legal grounds. Had

Navient been successful, this case would be over. Thereafter, the parties – with the encouragement

of this Court – attempted to reach a consensual resolution, through court-annexed mediation. This

matter was referred to mediation within some six weeks of the Second Circuit's decision, and that

process continued from August 2021 to at least March 2022. Some two weeks later, the Plaintiffs

brought this TRO Motion.

Notably, Navient does not assert that it has been prejudiced by this passage of time. Nor

does the record suggest that the Plaintiffs brought the TRO Motion as a litigation tactic against

Navient. Indeed, in the five years that this Adversary Proceeding has been pending, as many as

sixty additional monthly payments have come due on the Plaintiffs' and the Putative Class

Members' debt that may well have been discharged in bankruptcy.

*   *   *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown a likelihood of irreparable injury in the absence of relief.

<u>*Whether the Plaintiffs Have Shown that the Balance of Hardships Tips in Their Favor*</u>

The third element that a plaintiff must establish in order to be entitled to temporary or preliminary injunctive relief is that "'the balance of hardships tips in the plaintiff's favor.'" *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)).

The Plaintiffs argue that the balance of hardships tip in their favor because the Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance comprise a small portion of Navient's portfolio, while those loans – and the prospect that they have been discharged – have large consequences for each of the Putative Class Members.  TRO Motion at 12.  They argue that at present, the Plaintiffs and the Putative Class Members with outstanding balances on their loans face the difficult choice of continuing to make payments on discharged debt, or suspending those payments and risking damage to their credit reports, and many other hardships in their economic lives.  TRO Motion at 1, 12.

The Plaintiffs also note that that financial hardship that Navient would face by temporarily foregoing collection on the Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance is significantly less than the hardships that will be experienced by the Putative Class Members if these loans continue to be subject to collection.  They note that these individuals have experienced significant financial difficulties, as shown by their filing for bankruptcy and receiving bankruptcy discharges, and that they are likely to continue to suffer financial hardship as they work to address their debt.  Hearing Tr. at 28:21-25; 29:1-12.  And the Plaintiffs point out that

60

Navient agreed to refrain from collecting on discharged debts for over two years in *In re Crocker*, and has now agreed to treat all such loans issued to class members in the Fifth Circuit as fully discharged.  TRO Motion at 12 (citing *In re Crocker*, Adv. Pro. No. 16-03175 (S.D. Tex.)).

Here, the Court addresses a very particular task – it must "'balance the competing claims of injury and must consider the effect on each party of the granting or withholding the requested relief.'"  *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Winter*, 555 U.S. at 24).  In this context, "[t]he relevant harm is the harm that . . . occurs to the parties' *legal interests*."  *Salinger*, 607 F.3d at 81 (emphasis added).  And notably, this is distinct from the question of likelihood of success on the merits.  That is, the party seeking this relief "must establish that the 'balance of hardships tips in their favor regardless of the likelihood of success.'"  *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Salinger*, 607 F.3d at 79-80).

And here, the balance of hardships tips in favor of the Plaintiffs and the Putative Class Members, for several reasons.

The legal interests of the Putative Class Members are grounded in their bankruptcy discharges and opportunity for a "fresh start."  Indeed, as the Supreme Court has observed, "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"  *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)).  Those legal interests, and those bankruptcy discharges, are injured by Navient's ongoing debt collection efforts.

Viewed another way, these Putative Class Members whose private Tuition Answer Loan student debt that exceeds the cost of attendance has been discharged have a legal interest protected by the Bankruptcy Code's discharge injunction – not to be pursued for the collection of discharged debts.  As one bankruptcy court observed, "'[t]he discharge of a debt pursuant to § 727 triggers the operation of § 524, which protects the debtor from any personal liability on the debt.'"  *In re*

*Nassoko*, 405 B.R. 515, 519 (Bankr. S.D.N.Y. 2009) (quoting *Green v. Welsh*, 956 F.3d 30, 33 (2d Cir. 1992)).  And more generally, the collection of a discharged debt threatens and may well violate both these statutory legal interests and the broader relief that is encompassed by the bankruptcy discharge and "fresh start."

By contrast, Navient does not have a legal interest in continuing to collect on a loan held by a Putative Class Member where that student borrower attended or intended to attend a Title IV institution and received a private loan that exceeded the cost of attendance at that institution as defined by Internal Revenue Code Section 221(d), because that loan does not meet the criteria of Bankruptcy Code Section 523(a)(8)(B) to be excluded from discharge.  There simply cannot be a legal interest in continuing to collect on a discharged debt, and Navient has no legal interest that would be harmed by injunctive relief preventing the collection of such discharged debts.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown that the balance of hardships tips in their favor.

*Whether the Plaintiffs Have Shown that the Public Interest Would Not Be Disserved by a Temporary Restraining Order*

The fourth element that a plaintiff must establish in order to be entitled to temporary or preliminary injunctive relief is that "the 'public interest would not be disserved' by the issuance of an injunction."  *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)).

The Plaintiffs argue that the public interest would not be harmed by the issuance of a temporary restraining order for many of the same reasons that they urge that the balance of hardships tips in their favor.  That is, in substance, they argue that temporarily enjoining Navient from collecting on private Tuition Answer Loans made to Putative Class Members that exceed the

62

cost of attendance protects those borrowers from collection activity that violates their bankruptcy discharges and imperils their "fresh start," which is the "heart of the bankruptcy code."  Hearing Tr. at 29:24-25; 30:1-5.  In the TRO Motion, the Plaintiffs assert that Navient's collection efforts "are pressuring putative class members into making payments on debts that were otherwise discharged in bankruptcy and will impose further irreparable harm by depriving them of the fresh start that is one of the fundamental purposes of the Bankruptcy Code," and state that "this is precisely the type of irreparable harm that temporary injunctive relief is designed to protect against."  TRO Motion at 13-14.

Navient responds that the injunctive relief requested by the Plaintiffs would harm, not help, the Putative Class Members, and would create "a very substantial risk of severely prejudicing the members in the class, and for that reason we don't think that it can be said that this requested relief serves the public interest."  Hearing Tr. at 53:17-21.  Navient asserts that the Plaintiffs "have not asked for any order preventing the accrual of interest during any period of interim relief" and "if a TRO or preliminary injunction were issued, interest would continue to accrue on unpaid loan balances."  Opp. at 16.  As the accrued interest would increase during the period of relief, "putative class members will have to resume payment on their loans" and "their indebtedness and their monthly payments will be significantly higher (due to accrued and unpaid interest) than they would have been if their payments had continued during the pendency of this case," therefore ultimately harming these Putative Class Members.  Opp. at 17.  Navient also argues that the Putative Class Members would be harmed by a lack of notice or an opportunity to opt out – and this harm, too, would disserve the public interest.  Hearing Tr. at 56:2-13.  And Navient adds that the putative class is inherently uncertifiable, so that no provisional notice or opportunity to opt out of injunctive relief would remedy any potential harm to the Putative Class Members.  Hearing Tr. at 59:4-16.

Here, the Court considers not just the interests of the parties, but the broader question of the

public interest, and whether the public interest would be disserved by the entry of the relief that the Plaintiffs seek.  As one bankruptcy court observed, "the focus is generally on how the parties' specific actions would impact the public at large."  *In re Roman Catholic Diocese*, 628 B.R. at 582 (citing *Winter*, 555 U.S. at 13-14).  And the facts and circumstances must be considered in light of the particular situation.  "Courts have long recognized that public interest is a 'supple principle' with 'as many and as variegated applications . . . as the situations that have brought it into play.'" *In re Roman Catholic Diocese*, 628 B.R. at 583 (quoting *Railroad Comm'n*, 312 U.S. at 500).

Still, a piece of the picture is the interests of the parties that are at stake, and this includes interests that are widely recognized, including by the Supreme Court – the interests reflected in "[t]he principal purpose of the Bankruptcy Code," which is "to grant a 'fresh start' to the 'honest but unfortunate debtor.'"  *Marrama*, 549 U.S. at 367 (quoting *Grogan*, 498 U.S. at 286, 287). When the bankruptcy discharge is violated, that purposes of the Bankruptcy Code are undermined not only to the detriment of the discharged debtor, but also to the detriment of the public interest.

Bankruptcy and other courts recognize this in a variety in contexts.  As one bankruptcy court observed, in finding that the public interest weighed against issuing a stay to halt an adversary proceeding in favor of arbitration, "there is . . . a strong policy in protecting a debtor's fresh start after their bankruptcy proceedings are resolved."  *In re Anderson*, 560 B.R. at 93.  And as this Court has found, "'[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start."'"  *In re Golden*, 630 B.R. at 911 (quoting *In re McKenzie-Gilyard*, 388 B.R. at 480).  The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy." *In re McKenzie-Gilyard*, 388 B.R. at 480.  And where the public interest in this "fresh start" is threatened, "[b]ased on the . . . importance of protecting the 'fresh start' which Chapter 7 offers the honest but unfortunate debtor, a preliminary injunction is not only warranted but necessary to

preserve the integrity of the bankruptcy process." *Archambault v. Hershman (In re Archambault)*, 174 B.R. 923, 936 (Bankr. W.D. Mich. 1994).

That is, the public interest in "protecting a debtor's fresh start after their bankruptcy proceedings are resolved" would not be disserved by the entry of a temporary restraining order that enjoins Navient from collecting from Putative Class Members on private Tuition Answer Loans that exceed the cost of attendance. *In re Anderson*, 560 B.R. at 93. Simply put, the public interest is not served by the collection of a discharged debt, and the public interest is not disserved by enjoining that activity.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown that the public interest would not be disserved by a temporary restraining order.

*Whether the Plaintiffs Have Shown that this Court May Enter a Temporary Restraining Order on Behalf of All Putative Class Members*

The next question that the Court considers is whether the Plaintiffs are entitled to temporary injunctive relief on behalf of a nationwide class of Putative Class Members, as they request, or only on behalf of those debtors who received their statutory bankruptcy discharges in this judicial district, as Navient states.

As a matter of the scope of the remedy that the Plaintiffs may seek, Navient argues that if any injunctive relief is issued by this Court, it must be limited to those Putative Class Members who received their bankruptcy discharge in the Eastern District of New York, because the discharge is a form of injunction, and only the court that issues an injunction is empowered to enforce it. Hearing Tr. at 88:20-23. *See* Opp. at 11-14. Navient argues that, because the bankruptcy discharge is enforceable only through an action for contempt, the only relief that the Plaintiffs may seek at this

time is a finding of contempt – and that form of relief must be sought in each court or district in which each Putative Class Member received their discharge.  Hearing Tr. at 94:1-7.  And it states that "this Court lacks authority to impose the nationwide relief that Plaintiffs seek . . . because the power to address contemptuous conduct in violation of an injunction resides uniquely and solely in the court that issued the order allegedly violated."  Opp. at 11.  *See* Hearing Tr. at 88:20-23

Navient also points to the Supreme Court's decision in *Taggart*, and cites the Court's observation that:

> "[t]he statutes specifying that a discharge order 'operates as an injunction'; § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions. . . . [A]s part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction."

Opp. at 11-12 (quoting *Taggart*, 139 S. Ct. at 1801).  This "old soil," Navient asserts, includes the "traditional" limitation from "equity practice" that only the issuing court can address contempt claims for violating an injunction.

To the same effect, Navient cites the decision of the Eleventh Circuit in *Alderwoods*, where the court held that the bankruptcy court "lacked jurisdiction to entertain the complaint [asserting discharge violation claims on behalf of debtors that received a bankruptcy discharge in a different district] because the discharge injunction was never its to enforce."  Opp. at 12 (quoting *Alderwoods*, 682 F.3d at 971).  Navient also notes that the Fifth Circuit reached a similar conclusion in a putative nationwide class action – the same class action context that is now before this Court. Opp. at 13 (citing *In re Crocker*, 941 F.3d at 215).

Navient also points to the Second Circuit's decision in *In re Belton*, and asserts that there can be little doubt that when faced directly with the issue, the Second Circuit will apply *Taggart* in the same way and conclude, as the Fifth and Eleventh Circuits have, that any action for contempt of

a bankruptcy discharge injunction must be heard by the court that issued the discharge.  Opp. at 14 (citing *In re Belton*, 961 F.3d at 617-18).

The Plaintiffs respond that "[s]even separate decisions within the Second Circuit, including two from this Court, have now held that bankruptcy courts in this circuit have jurisdiction over a nationwide class to enforce violations of [Bankruptcy Code Section] 524."  Reply at 7 (citing cases). The Plaintiffs also point to "five other nationwide class actions for declaratory contempt relief for violations of [Bankruptcy Code Section] 524 [that] have already been certified and finally approved by the district court."  Reply at 8 (citing cases).  And the Plaintiffs argue that at a minimum, there is no question that this Court has nationwide jurisdiction to enter a declaratory judgment that the loans at issue are dischargeable, to enter an injunction, and to direct that restitution be made.  Reply at 8 (citing *In re Homaidan*, 596 B.R. at 100-01).

As the Supreme Court has stated, "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction."  *Thomas v. General Motors Corp.*, 522 U.S. 222, 236 (1998).  And as the Second Circuit has observed, "[v]iolation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred."  *Striller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963).  But as this Court observed in *In re Golden*, "this is a starting point, and does not answer the question of whether the issuing court may also entertain a request for *broader* relief, or whether *only* the issuing court may determine whether a violation has occurred."  *In re Golden*, 630 B.R. at 918 (citing *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 627 B.R. 6, 23 (Bankr. E.D.N.Y. 2021)) (emphasis in original).

First, in examining the statutory bankruptcy discharge injunction, this Court has observed that "it is created by Bankruptcy Code Section 524(a), which states that it 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.'"  *In re Golden*, 630

67

B.R. at 918 (quoting 11 U.S.C. § 524(a)(2)). "'[T]he bankruptcy discharge order is a form, a national form, which is issued in every case when there is, in fact, a discharge. By statute, in [Section] 524(a)(2), it operates as an injunction . . . . It is not a handcrafted order.'" *In re Golden*, 630 B.R. at 918 (quoting *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL 3608891, at *8 (Bankr. S.D.N.Y. July 22, 2014)). That is the "'fundamental difference between [a] normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in [Bankruptcy Code] Section 524(a) to support the discharge under Section 727.'" *In re Golden*, 630 B.R. at 918-19 (quoting *In re Haynes*, 2014 WL 3608891, at *8). *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445-46 (1st Cir. 2000) (holding that "when dealing, as here, with violation of a purely statutory order," such as the discharge injunction imposed by Section 524, it is not necessary to return to "the court that issued the original discharge order").

Another piece of the picture is the source of the bankruptcy court's authority to enforce its own orders and, more generally, to enforce the provisions of the Bankruptcy Code, including the statutory bankruptcy discharge injunction. One source of federal court authority is the All Writs Act. The All Writs Act states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). And some courts have looked to that Act to conclude that only the court that issued a debtor's bankruptcy discharge should have the power to enforce that injunction. *See Ajasa*, 627 B.R. at 23.

Navient points to the Eleventh Circuit's decision in *Alderwoods* and other decisions, and argues that following that reasoning, only the court that issues a discharge "can address contempt claims for violating an injunction." Opp. at 12 (citing *Alderwoods*, 682 F.3d at 971). It asserts that this is a consequence of the nature of a bankruptcy court's jurisdiction over *a debtor's estate*, and

from the notion that only the court that enters an injunction has the jurisdiction to enforce it.  Opp. at 12-13 (citing *Alderwoods*, 682 F.3d at 969-70).  In addition, the court in *Alderwoods* separately noted that "the discharge injunction itself is like an All Writs Act injunction issued 'in aid of' a court's jurisdiction . . . in that the discharge injunction is 'in aid of' the purpose of the Bankruptcy Code." *Alderwoods*, 682 F.3d at 972 n.24 (quoting 28 U.S.C. § 1651).

But again, as this Court concluded in *In re Golden*, the Bankruptcy Code provides an additional source of authority to bankruptcy courts, distinct from the All Writs Act – and this is Bankruptcy Code Section 105(a).  *In re Golden*, 630 B.R. at 919.  Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  And these "provisions of this title" include the statutory bankruptcy discharge that is set forth in Bankruptcy Code Section 524(a).

Here, as this Court found in *In re Golden*, the bankruptcy court's decision in *In re Haynes* provides helpful guidance.  Considering first the All Writs Act, the court observed that "[v]ery clearly, that statute is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be enforced."  *In re Haynes*, 2014 WL 3608891, at *8.  The court went on to observe that, by contrast, Section 105(a) "is quite different":

> Although modeled on the All Writs Act, . . . [Section 105] does not refer to aiding the Court's own jurisdiction. . . .  [T]he legislative history of this section, in H.R. Rep. 95-595, states that, among other things, Section 105 is intended to 'cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute.'  (Emphasis added.)  The statutes are different, in other words.

*Id.*

The *Haynes* court continued:

> I believe it is a mistake to rely upon the All Writs Act cases to hold that a bankruptcy court has power under the applicable statute only to enforce its own orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular.

*Id.* "That is, the authority granted to bankruptcy courts by Section 105 is – explicitly and by design – broader than the authority granted to federal courts in the All Writs Act." *In re Golden*, 630 B.R. at 920 (citing *Ajasa*, 627 B.R. at 24).

Other courts have similarly concluded that the "plain meaning" of Section 105(a) gives broad authority to bankruptcy courts to "'issue *any* order . . . necessary to carry out the provisions of the bankruptcy code.'" *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.* (*In re Terrebonne Fuel & Lube, Inc.*), 108 F.3d 609, 613 (5th Cir. 1997) (quoting *Burd v. Walters* (*In re Walters*), 868 F.2d 665, 669 (4th Cir. 1989)) (emphasis added). *See, e.g.*, *Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 458 (Bankr. S.D. Tex. 2008) (stating that "Section 105(a) plainly states that the court can issue any 'judgment' necessary or appropriate to carry out the requirements of the bankruptcy code.  Any judgment would include any remedy available in a private cause of action."). *See also In re Jewish Mem'l Hosp.*, 13 B.R. 417, 419 (Bankr. S.D.N.Y. 1981) (Lifland, B.J.) (citing *Young v. Higbee Co.*, 324 U.S. 204, 214 (1945)) (observing that "[i]t is well established that the Bankruptcy Court is a court of equity and that its proceedings are inherently proceedings in equity.").

A third piece of the picture is the source of the Court's jurisdiction, including its subject matter jurisdiction.  Here, the Plaintiffs' claims arise under the Bankruptcy Code, and specifically, under Bankruptcy Code Sections 727, 524(a)(2), and 105(a).  *See In re Golden*, 630 B.R. at 920. "As a consequence, for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's subject matter jurisdiction, because the claim is a 'civil proceeding[] arising under title 11.'" *In re Golden*, 630 B.R. at 920 (quoting 28 U.S.C. § 1334(b)).  As this Court has stated, "'there [are] few matters as "core" to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code.'" *In re Golden*, 630 B.R. at 920 (quoting *Haynes*, 2014 WL 3608891, at *7). "[T]he question[] of . . . jurisdiction to

grant relief" and the question of subject matter jurisdiction are intertwined. *In re Golden*, 630 B.R. at 920. "It is axiomatic that this Court has subject matter jurisdiction to consider the discharge injunction violation claims" of Mr. Homaidan and Ms. Youssef as the named plaintiffs, who filed Chapter 7 bankruptcy cases in this District, because those are core matters. *Id.*

Notably, other courts have reached similar conclusions, and have certified class actions, including nationwide class actions, to address a range of bankruptcy claims where the class as certified extended outside of the bankruptcy court's home district. And courts have correctly observed that where jurisdiction is lacking, they are required – even *sua sponte* – to dismiss the case. *See, e.g., In re C.R. Davidson Co.*, 232 B.R. 549, 551 (B.A.P. 2d Cir. 1999) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (observing that "[w]hen such jurisdiction is lacking, and although no party has raised the issue, we have the duty to dismiss sua sponte."). *See also Receivables Exchange, LLC v. Hotton*, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (citations omitted) (stating that "when a complaint fails to plead subject matter jurisdiction, the Court is obligated to dismiss it *sua sponte*.").

And this Court and others "have similarly recognized that the jurisdiction to enter a nationwide remedy is part of the court's jurisdiction over the putative class." *In re Golden*, 630 B.R. at 922 (first citing *Vick v. NCO Fin. Sys., Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 1328830 (E.D. Tex. Mar. 30, 2010); and then citing *Rojas v. Citi Corp. Trust Bank FSB (In re Rojas)*, 2009 WL 2496807, at *10 (Bankr. S.D. Tex. Aug. 12, 2009)). For example, in *Sheffield v. HomeSide Lending, Inc. (In re Sheffield)*, 281 B.R. 24 (Bankr. S.D. Ala. 2000), the bankruptcy court certified a nationwide class with respect to claims arising from a creditor's failure to disclose post-petition, pre-confirmation attorney fees in its proofs of claim. *See In re Noletto*, 281 B.R. at 46-48 (same); *Dean v. First Union Mortg. Corp. (In re Harris)*, 280 B.R. 876 (Bankr. S.D. Ala. 2001) (same).

"Bankruptcy courts have also noted, in different contexts, that in the appropriate circumstances, the certification of a nationwide class may be permitted, particularly when the relief sought is not solely *in rem* in nature." *In re Golden*, 630 B.R. at 921. For example, in *Chiang v. Neilson* (*In re Death Row Records, Inc.*), 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012), the Ninth Circuit Bankruptcy Appellate Panel permitted certification of a nationwide class as to "turnover, declaratory and injunctive relief claims" noting that they "are not solely *in rem* claims." *In re Death Row Records, Inc.*, 2012 WL 952292, at *12.

As this Court and others have observed:

> "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy court *strictly to in rem matters involving property of the debtor or property of the estate* and not as a restriction on nationwide jurisdiction over claims for violation of provisions of the Code, other federal statutory provisions, or other remedies that might be available to debtors and trustees."

*In re Golden*, 630 B.R. at 921 (quoting *In re Krause*, 414 B.R. 243 at 255-56).

And as this Court has previously noted, "'[Judiciary Code] Section 1334(b) grants subject matter jurisdiction over any debtor claims that fall within the court's "related to," "arising in," or "arising under" jurisdiction, regardless of where the claimant's bankruptcy petition was filed.'" *In re Golden*, 630 B.R. at 921 (quoting *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506, 551 (Bankr. S.D. Tex. 2009)).

To be sure, in many of these nationwide class actions, the relief sought did not necessarily call for the court to address a discharge order entered outside of its district. Instead, these cases addressed other matters that are fundamental to the bankruptcy system, including the disclosure of fees in a proof of claim and other alleged violations of the Bankruptcy Code and other statutes. But in each circumstance, the court concluded that a nationwide class was both possible and appropriate. As stated by this Court and others, "'this conclusion advances the goals and purpose of the class action mechanism. Class actions promote efficiency and economy in litigation. Their design

permits numerous parties to collectively litigate claims that might be uneconomical to litigate individually.'" *In re Golden*, 630 B.R. at 921-22 (quoting *Bank United v. Manley*, 273 B.R. 229, 249-50 (N.D. Ala. 2001)).

Moreover, "'if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules. This would ascribe to Congress the intent to categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a clear indication of such intent.'" *In re Golden*, 630 B.R. at 922 (quoting *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 754 (5th Cir. 2010)). As one court observed in denying a motion to dismiss a putative nationwide class action asserting violations of the statutory bankruptcy discharge, "[t]he Court has the power to provide all of the relief requested." *Vick*, 2010 WL 1330637, at *4.

And finally, nationwide settlements of class actions asserting statutory bankruptcy discharge injunction violations have been approved by bankruptcy and district courts in several cases within the Second Circuit. In such circumstances, again, the court necessarily concluded that it could enter an order that, in effect, provided for relief outside of its own district, including with respect to an asserted violation of a discharge order entered in another district by another court. *See Belton v. GE Capital Retail Bank (In re Belton)*, 21-cv-09492, at ECF No. 17 (S.D.N.Y. Feb. 10, 2022); *Ajasa v. Wells Fargo Bank, N.A.*, 21-cv-07085-ENV, at ECF No. 18 (E.D.N.Y. April 25, 2022); *Anderson v. Capital One Bank (USA), N.A.*, 19-cv-03981-NSR, at ECF No. 20 (S.D.N.Y. Sept. 11, 2019); *Anderson v. Capital One Bank (USA), N.A.*, 15-08342-RDD, at ECF No. 99 (Bankr. S.D.N.Y. Jan. 7, 2021); *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-03307-VB, at ECF No. 19 (S.D.N.Y. Aug. 24, 2018); *Haynes v. Chase Bank U.S.A., N.A.*, 13-08370-RDD, at ECF No. 133 (Bankr. S.D.N.Y. Sept. 27, 2018); *Echevarria v. Bank of America Corp.*, 17-cv-08026-VB, at ECF No. 23 (S.D.N.Y. Mar. 14, 2018); *Echevarria v. Bank of America Corp.*, 14-08216-RDD, at ECF No. 121 (Bankr. S.D.N.Y.

Mar. 15, 2018).  While each of these cases ultimately reached a consensual outcome, that consensus cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction to enter a remedy, where it is otherwise lacking.  As the Second Circuit has observed, "[j]urisdiction cannot be created by the consent of the parties."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal citations omitted).

In each of these nationwide class actions entertained by the bankruptcy and district courts, the court exercised jurisdiction over discharge orders entered by other courts in other districts around the country.  As a result, "this Court's subject matter jurisdiction to . . . enter a remedy in this case[] should not be limited by the scope of that request," including nationwide relief for the putative class.  *In re Golden*, 630 B.R. at 923.  That is, there is no limitation through "any shortcoming in this Court's jurisdiction to consider, and if appropriate to enter," a remedy applicable to the putative nationwide class.  *Id.*

Next, the Court considers whether – as the Defendants argue – the Second Circuit's observation in *In re Belton* compels the conclusion that any action for contempt of a bankruptcy discharge injunction must be heard by the court that issued the discharge.  Opp. at 14.

In *In re Belton*, the Second Circuit wrote:

[W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order.  Most circuits that have considered the issue have rejected the notion.  *See Crocker*, 941 F.3d at 216-17 ("We adopt the language of [*Anderson*] that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'"); *Alderwoods Grp.*, 682 F.3d at 970 ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Walls*, 276 F.3d at 509-10 (same); *Cox*, 239 F.3d at 916-17 (same); *but see Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) (holding that a debtor is not required to "bring her claims in the court that issued the original discharge order").  And those cases are buttressed by the Supreme Court's recent decision in *Taggart*, which made clear that the contempt powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions."  139 S. Ct. at 1802.

*In re Belton*, 961 F.3d at 617-18.

In *In re Belton*, the Second Circuit addressed the question of whether an asserted violation of the statutory bankruptcy discharge injunction was within the scope of a pre-dispute arbitration agreement.  The court affirmed the district and bankruptcy court's conclusion that "the alleged violation of a bankruptcy court discharge order" is not an arbitrable dispute because, as it held in *Anderson*, "arbitration was in 'inherent conflict' with enforcement of a discharge injunction."  *In re Belton*, 961 F.3d at 615 (quoting *Anderson*, 884 F.3d at 390).  But there, as in *Anderson*, the issue before the court was not the scope of a bankruptcy court's subject matter jurisdiction over a nationwide class, or the question of nationwide relief.  And recognizing this, the *Belton* court stated that "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *Anderson* should be read as a tacit endorsement of such."  *In re Belton*, 961 F.3d at 617.

As this Court recognized in *In re Golden*, *Anderson* addressed the question of the arbitrability of a discharge order violation in "the context of bankruptcy courts and the bankruptcy system, not solely a single bankruptcy court or district.  The court did not address, and did not need to address, whether the issuing judge, or district, or circuit set the boundary for the bankruptcy court's jurisdiction in the matter before it."  *In re Golden*, 630 B.R. at 925.  Similarly, and again as this Court found in *In re Golden*, *In re Belton* addressed the same issue, and found that "'the alleged violation of a bankruptcy court discharge order' is not an arbitrable dispute because, as the *Anderson* court found, 'arbitration was in "inherent conflict" with enforcement of a discharge injunction.'"  *In re Golden*, 630 B.R. at 925 (quoting *In re Belton*, 961 F.3d at 615).

Further, here, "these claims 'arise under' the Bankruptcy Code, are separate and distinct from any *in rem* basis for the bankruptcy court's jurisdiction, and go to the heart of one of the fundamental protections of the bankruptcy system – that is, the debtor's discharge and opportunity

for a fresh start." *In re Golden*, 630 B.R. at 926.  As the court in *Haynes* explained:

> While it is true that a substantial portion of bankruptcy jurisdiction is *in rem*, that is, jurisdiction over the debtor's estate wherever located, it is not the only basis for bankruptcy jurisdiction, which, under 28 U.S.C. Section 1334(b), extends to "all civil proceedings arising under title 11," including under 11 U.S.C. Sections 524 and 727. In fact, . . . these fundamental, if not the fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or *in rem* jurisdiction.  They have everything to do with prohibiting the collection of *in personam* debts that, before the bankruptcy discharge, were owed by the debtor.

*In re Haynes*, 2014 WL 3608891, at *6.

Mr. Homaidan and Ms. Youssef seek, for themselves and for all Putative Class Members, neither more nor less than the full benefit of their statutory bankruptcy discharges.  "And under Bankruptcy Code Section 524(a), the discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*.'"  *In re Golden*, 630 B.R. at 927 (quoting 11 U.S.C. § 524(a)(2)).  Their claims do not concern "'property of the estate, as of the commencement of the case,' or 'property of the estate,' as addressed by Judicial Code Section 1334(e)(1)."  *In re Golden*, 630 B.R. at 927.

And a violation of the Plaintiffs' and Putative Class Members statutory bankruptcy discharges is, of course, the violation of a statute.  As the Seventh Circuit recognized, "Section 524(a)(2) . . . enjoins . . . collection[,] . . . so the creditor who attempts to collect a discharged debt is violating . . . a statute."  *Cox*, 239 F.3d at 915.  As this Court has noted, "Bankruptcy Code Section 105 grants the bankruptcy court power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"  *In re Golden*, 630 B.R. at 914 (quoting 11 U.S.C. § 105).  As the court in *In re Haynes* recognized, Section 105 permits a bankruptcy court to enforce "the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular."  *In re Haynes*, 2014 WL 3608891, at *8.  A bankruptcy court "is well within its authority if it exercises its

equitable powers to enforce a specific code provision." *Vick*, 2010 WL 1330637, at *3 (citing

*Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 455-60 (Bankr. S.D.

Tex. 2008)).

      Finally, the Court considers the Supreme Court's ruling in *Taggart*.  In *Taggart*, the Supreme

Court observed that "the statutes specifying that a discharge order 'operates as an injunction,' and

that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out'

other bankruptcy provisions, bring with them the 'old soil' that has long governed how courts

enforce injunctions." *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C. § 524(a)(2) and § 105(a)).

And it found that "as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate

the traditional standards in equity practice for determining when a party may be held in civil

contempt for violating an injunction." *Taggart*, 139 S. Ct. at 1801.  As the Supreme Court

explained, this "old soil" is the source of "traditional standards" as to when a finding of civil

contempt may lie, and leads to the conclusion that a court may hold a creditor in civil contempt for

violating a debtor's discharge if there is "no fair ground of doubt as to whether the order barred the

creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

      That is, *Taggart* addressed the nature of the creditor's conduct and the scope of the debtor's

discharge, and held that a finding of civil contempt may issue only where the question of the

creditor's violation is decisively answered in the affirmative – where there is "no fair ground of

doubt" as to the existence of the violation.  And the "old soil" informs the question of intent, not the

question of whether a bankruptcy court has jurisdiction to grant injunctive relief applicable to a

putative nationwide class.  While *Taggart* surely has a role to play in determining a creditor's

liability, it simply does not address whether this question may be considered by a court solely in an

individual debtor's case, or in a district-wide class, or, as here, in a putative nationwide class.  *In re*

*Golden*, 630 B.R. at 927.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown that this Court may enter a temporary restraining order on behalf of the Putative Class Members, whether or not their bankruptcy discharge was entered in this District.

### Whether the Plaintiffs Have Shown that Relief Is Appropriate Not Only on Behalf of Putative Class Members with Tuition Answer Loans that Exceed the Cost of Attendance, But Also on Behalf of Putative Class Members with Other Private Loans that Exceed the Cost of Attendance

The final question that the Court considers is whether it is appropriate at this time to enter temporary injunctive relief on behalf of the Plaintiffs and the Putative Class Members with outstanding loan balances as identified in the Amended Complaint – that is, holders of Tuition Answer Loans, who attended Title IV institutions, who received a bankruptcy discharge, and whose loans exceed the cost of attendance (Am. Compl. ¶ 73) – or alternatively, as identified in the Class Certification Motion – that is, holders of any private student loan, who attended Title VI institutions, who received a bankruptcy discharge, and whose loans exceed the cost of attendance (Class Cert. Mot. at 15).

In the TRO Motion, the Plaintiffs ask for temporary injunctive relief to stop Navient's collection activities on behalf of Putative Class Members "who received private loans at Title VI institutions, whose loans exceed the cost of attendance, and who received a discharge in bankruptcy." Reply at 1. *See* Hearing Tr. at 5:14-22. And they state that this scope of relief is in accord with the class definition as set forth in the Class Certification Motion, and point to that definition as controlling as to the scope of the relief that the Plaintiffs may now seek. Hearing Tr. at 99:8-22; 105:18-24.

Navient responds that the Plaintiffs have not been clear as to the scope of the injunctive relief that they seek. Hearing Tr. at 33:13-17. It asserts that the Plaintiffs have advanced a series of

"shifting positions" as to the loan programs at issue, and points to several references in the Amended Complaint to borrowers with "'Tuition Answer loans.'" Opp. at 3 (quoting Am. Compl. ¶¶ 73(a), 64). The same is true, Navient notes, with respect to the Amended Complaint. Hearing Tr. at 97:16-20. And Navient objects that "[n]otwithstanding this limitation in the complaint, Plaintiffs purport in their motion for class certification to greatly expand the scope of this case" – and now, the relief sought in this TRO Motion – by including not just borrowers with outstanding balances on Tuition Answer Loans, but also borrowers with any type of private loan that exceeds the cost of attendance. Opp. at 3. *See* Hearing Tr. at 33:22-25; 34:1-4.

As a starting point, courts recognize that the parameters of an asserted class may develop over time. As the Second Circuit has noted, "[a] court is not bound by the class definition proposed in the complaint." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). And as another court has observed, "a court . . . 'has broad discretion to modify the class definition as appropriate.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 463 (S.D.N.Y. 2018) (quoting 5 Moore's Federal Practice § 23.21[6] (3d ed. 2017)).

Courts also recognize that a class action plaintiff may redefine the class in their motion for class certification, and that definition may become the one that is controlling. As one court observed, "courts have the discretion, at the certification stage, to redefine classes" *Carrillo v. Wells Fargo Bank, N.A.*, 2019 WL 3714801, at *13 n.8 (E.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019). Other courts are in accord. *See, e.g.*, *Kopaleishvili v. Uzbek Logistics, Inc.*, 2019 WL 6609212, at *3 (S.D. Ohio Dec. 5, 2019) (citing *Cowan v. Nationwide Mut. Ins. Co.*, 2019 WL 4667497, at *7 (S.D. Ohio Sept. 25, 2019)) (finding plaintiff's class definition in their motion for class certification to be controlling over the class definition in the complaint).

At the same time, the court's discretion to modify the definition of a putative class as set

forth in the complaint should be exercised with restraint.  And restraint is particularly likely to be warranted where, as here, the matter to be decided by the Court is not whether to certify a class, but whether to enter temporary injunctive relief, and where the proposed modification of the class as alleged would expand, not contract, the scope of an alleged class.  Until a motion for class certification is decided, it is likely to be the complaint, and not the motion for class certification, that establishes the parameters and expectations of the putative class members, the defendants, and other interested parties.

 This is consistent with the decisions that have addressed this and similar issues.  At least two courts in this Circuit have found it appropriate to expand the scope of a class beyond the parameters alleged in the complaint at the time of class certification.  In *Menking ex rel. Menking v. Daines*, the court considered a situation where the "plaintiff initially sought certification of a citywide class in the Complaint . . . [and] [b]ased on evidence obtained in discovery, . . . concluded that a new and expanded statewide definition for the proposed class would be proper."  *Menking ex rel. Menking v. Daines*, 287 F.R.D. 174, 181 (S.D.N.Y. 2012).  The defendants did not object, and the court determined that "a statewide class definition would be appropriate."  *Id*.  And in *McCarthy v. Paine Webber Group, Inc.*, the court observed that "[t]he class as certified is the class that was requested in plaintiffs' Motion for Class Certification that was the subject of several memoranda of law by both plaintiffs and defendants.  Contrary to defendants' assertions, the Court is not bound by the class definition proposed in the complaint."  *McCarthy v. Paine Webber Grp., Inc.*, 164 F.R.D. 309, 311 (D. Conn. 1995) (citing *Robidoux*, 987 F.3d at 937).

 A similar conclusion was reached by the court in *In re Namenda Direct Purchaser Antitrust Litigation*.  In *Namenda*, the court reviewed *Menking* and *McCarthy*, and observed that "a plaintiff's expansion of the class definition beyond that which was proposed in the complaint is not categorically improper."  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 211

(S.D.N.Y. 2018).  The court also found that the plaintiffs "are not attempting to add any new defendants, . . . [n]or are they attempting to broaden the class definition 'in the midst of' class certification briefing – they included the expanded definition at the outset, in their initial motion for certification."  *Namenda*, 331 F. Supp. 3d at 211.  And the court concluded that "[u]ltimately, consistent with the certifying court's broad discretion over class definition and obligation to reassess class rulings as the case develops," there is "no reason to disregard the class definition" that the plaintiffs proposed "simply because it expands upon the definition found" in the Amended Complaint.  *Namenda*, 331 F. Supp. 3d at 212 (citing *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)).

Here, it is clear that the Court has the discretion to consider and, if warranted by the record, to certify an appropriate class, even if the parameters of that class differ from the class definition set forth in the allegations of the Amended Complaint.  It is similarly clear that the Court's discretion to do so should be exercised in the right context, based on the appropriate record, and with adequate notice and an opportunity for both the proponents and the opponents of certification to be heard.  Courts that have followed this path, and certified a class that is larger than the class defined in the complaint, have generally done so in the context of a motion for class certification.  And while this Court has the discretion to expand the definition of the class at this stage as well – in considering a motion for a temporary restraining order – it also has the discretion to decline to do so, and to defer that question until consideration of the pending requests for a preliminary injunction or alternatively, for certification of the class.

*       *       *

In this TRO Motion, the Court has addressed several questions.  As described herein, the Court disagrees that the Plaintiffs seek, on behalf of themselves and the Putative Class Members, an "unauthorized" temporary restraining order.  This is because, among other reasons, the Plaintiffs

limit their request for relief to those individuals with Article III standing, and do *not* seek temporary injunctive relief on behalf of borrowers whose private Tuition Answer Loans do *not* exceed the cost of attendance, or who no longer have any outstanding any balance to be paid.  The Plaintiffs also do not seek temporary injunctive relief of indefinite duration, or an order that would fail for vagueness.

Next, the Court is satisfied that each of the criteria for the entry of temporary injunctive relief has been met.  That is, the Plaintiffs have shown a likelihood of success on the merits of their statutory bankruptcy discharge violation claims against Navient, a likelihood of irreparable injury in the absence of relief, that the balance of hardships tips in their favor, and that the public interest would not be disserved by the entry of a temporary restraining order.

And finally, the Court is persuaded that the Plaintiffs have shown that they are entitled to relief on behalf of a nationwide class of Putative Class Members, not just those class members who received a bankruptcy discharge in this District.  At the same time, the Court is not persuaded that – at this stage in these proceedings – it is appropriate to extend that relief beyond the Plaintiffs and Putative Class Members as described in the Amended Complaint.  That is, the Court concludes that temporary injunctive relief is warranted to direct Navient to cease its collection efforts on Tuition Answer Loans that exceed the cost of attendance from Ms. Youssef and those Putative Class Members whose loans have an outstanding balance, as the class is described in the Amended Complaint.  The Court declines the invitation to expand this relief – at this time – to the larger group of those Putative Class Members encompassing student borrowers who entered into other private loans that exceed the cost of attendance, as the class is described in the Class Certification Motion.

## Conclusion

For the reasons stated herein, and based on the entire record, the Plaintiffs' Motion for a Temporary Restraining Order is granted in part.  Navient is restrained and enjoined from taking any acts to collect on Tuition Answer Loans held by the Plaintiffs and the Putative Class Members, as

the class is described in the Amended Complaint, that exceed the cost of attendance as defined by Internal Revenue Code § 221(d), and that have an outstanding balance subject to collection.  In order to permit Navient reasonable and sufficient time to implement compliance measures, Navient shall have sixty days to comply with this direction.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**July 8, 2022**

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**