UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HOMAIDAN fka Helal K. Homaidan<br><br>　　　　　　Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>　　　　　　Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HOMAIDAN and REEHAM YOUSSEF on behalf of themselves and all others similarly situated<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>　　　　　　Defendants. | Adv. Pro. No. 17-1085 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
<u>OF THEIR MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

BACKGROUND ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

    I.     RECENT APPLICATION OF FIRST PRINCIPLES OF BANKRUPTCY LAW SHOW THAT PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS. ................................................................................................... 1

         A.     Navient Bears the Burden of Showing that the Debts Held By Plaintiff and the Class are Nondischargeable. ............................................ 2

         B.     Navient Does Not Meet any of the Narrow Exceptions to Discharge Contained in § 523. ....................................................................... 3

         C.     Navient Continues to Collect on Discharged Student Loans. ...................... 4

    II.    THIS COURT HAS THE AUTHORITY TO GRANT A CLASS-WIDE PRELIMINARY INJUNCTION PRIOR TO CERTIFICATION. ......................... 6

    III.   THE REQUESTED INJUNCTIVE RELIEF IS APPROPRIATE AND CAN BE PROPERLY TAILORED ..................................................................... 7

CONCLUSION ........................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Abdi v. Duke*,
   280 F. Supp. 3d 373 (W.D.N.Y. 2017) ................................................................................ 7

*Gallagher v. New York State Bd. of Elections*,
   477 F. Supp. 3d 19 (S.D.N.Y. 2020) .................................................................................... 7

*Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*),
   3 F.4th 595 (2d Cir. 2021) ............................................................................................. 2, 3, 4

*In re Haroon*,
   313 B.R. 686 (Bankr. E.D. Va. 2004) ................................................................................... 3

*Mazloom v. Navient Sols., LLC et al* (*In re Mazloom*),
   Adv. Pro. No. 20-80033-6, 2022 WL 950932 (Bankr N.D.N.Y. Mar. 29, 2022) ................... 3

*McDaniel v. Navient Sols. LLC* (*In re McDaniel*),
   590 B.R. 537 (Bankr. D. Colo. 2018), *aff'd*, 97 F.3d 1083 (10th Cir. 2020) ........................ 3

*Yang v. Kellner*,
   458 F. Supp. 3d 199 (S.D.N.Y. May 5, 2020) ...................................................................... 7

*Yang v. Kosinski*,
   805 F. App'x 63 (2d Cir. 2020), *and aff'd* 960 F.3d 119 (2d Cir. 2020) ................................ 7

**Other Authorities**

Newberg on Class Actions § 24:83 (4th ed. 2002) ..................................................................... 7

**Statutes and Rules**

20 U.S.C. § 1087ll ....................................................................................................................... 4

11 U.S.C. § 523 ............................................................................................................................ 4

11 U.S.C. § 524 .................................................................................................................... 2, 3, 6

11 U.S.C. § 727 ............................................................................................................................ 2

Fed. R. Bankr. Pro. 4007 .............................................................................................................. 3

Fed. R. Civ. P. 23(c)(1)(C) .......................................................................................................... 7

Internal Revenue Code § 221(d)(1) ............................................................................................. 4

Taxpayer Relief Act of 1997 ........................................................................................................ 4

Plaintiffs respectfully submit this Supplemental Memorandum of Law in Support of Their Motion for a Preliminary Injunction. Dkt. No. 171.

## BACKGROUND

Because the Court is familiar with the issues in this case, this brief will highlight and update only those issues necessary for the purpose of evaluating Plaintiffs' Motion for a Preliminary Injunction. Plaintiffs continue to rely on and incorporate here all of their prior arguments, evidence, and briefs submitted in this action to date.

For over ten years, Defendants Navient Solutions, LLC and Navient Credit Finance Corp. (together, "Navient" or "Defendants") have illegally collected on the discharged student loans held by Plaintiffs and the proposed class. In recognition of the ongoing irreparable harm incurred by Plaintiffs and the proposed class they seek to represent, on July 08, 2022, this Court issued a memorandum-decision granting in part Plaintiffs' Motion for a Temporary Restraining Order, temporarily enjoining Defendants from continuing these illegal collection activities until September 20, 2022. Dkt. No. 341. The same reasons relied by the Court in its well-reasoned decision granting the Temporary Restraining Order remain true and applicable to Plaintiffs' Motion for a Preliminary Injunction. In addition, several courts have issued relevant decisions relying on fundamental principles of bankruptcy law in the past three years that lend further support to Plaintiffs' Motion.

## ARGUMENT

I. **Recent Application of First Principles of Bankruptcy Law Show that Plaintiffs are Likely to Prevail on the Merits.**

In the almost three years since Plaintiffs first moved for a preliminary injunction, numerous courts have applied the fundamental principles of the Bankruptcy Code that are foundational to

the instant action, reinforcing that Plaintiffs have shown a substantial likelihood of success on the merits.

### A. Navient Bears the Burden of Showing that the Debts Held By Plaintiff and the Class are Nondischargeable.

At its core, this case is straight-forward and is governed by long standing and unassailable principles of bankruptcy law. Plaintiffs sought and obtained relief under Chapter 7 of the Bankruptcy Code. According to 11 U.S.C. § 727(a), at the conclusion of a Chapter 7 case, the Bankruptcy Court "shall grant the debtor a discharge." As it relates to this case, that order "discharges the debtor from all debts that arose before the date of the order," except as provided in § 523 of the Code. 11 U.S.C. § 727(b). The Bankruptcy Code authorizes a broad discharge to fulfill one of the most fundamental purposes of the Code: to provide a fresh start to honest but unfortunate debtors. *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 3 F.4th 595, 600 (2d Cir. 2021).

Once a discharge order is entered, it enjoins anyone from trying to collect on the debts that were discharged. 11 U.S.C. § 524. Specifically, § 524 provides that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." *Id*. The injunction is automatic, meaning a debtor need not take any further action for the prohibition to apply. It is meant to apply broadly and to encompass all manners of collection. Creditors who act to collect discharged debts in contravention of § 524 are subject to claims for declaratory judgment that the debt was discharged, equitable claims to cease the collection and return the money collected, as well as clams for compensatory damages and contempt sanctions for knowing and willful violations of the Bankruptcy Code.

### B. Navient Does Not Meet any of the Narrow Exceptions to Discharge Contained in § 523.

As noted above, Section 523 provides the statutory requirements for certain types of student loan debts to be excepted from discharge. Significantly, the exceptions to discharge contained in § 523 are to be read narrowly so as to protect the fresh start and to allow for the broadest discharge of debts. *Mazloom v. Navient Sols., LLC et al* (*In re Mazloom*), Adv. Pro. No. 20-80033-6, 2022 WL 950932, at *4 (Bankr N.D.N.Y. Mar. 29, 2022). In furtherance of that policy, creditors—and not debtors—bear the burden of proving that an exception to discharge applies. *In re Homaidan*, 3 F.4th at 600. If there is any ambiguity about whether a particular debt falls within one of § 523's narrow exceptions, either a creditor or a debtor may apply to the Bankruptcy Court to determine if the debt was discharged. Fed. R. Bankr. Pro. 4007.

Whether or not a debt is dischargeable depends on the characteristics of the debt prior to the date of the discharge order; subsequent events cannot change that determination. 4 Collier on Bankruptcy, ¶ 523.04 (16th ed. revised 2020); *see also McDaniel v. Navient Sols. LLC* (*In re McDaniel*), 590 B.R. 537, 552 (Bankr. D. Colo. 2018), aff'd, 97 F.3d 1083 (10th Cir. 2020). Thus, a debt is either discharged or not at the time the discharge order is entered. *In re Haroon*, 313 B.R. 686, 689 (Bankr. E.D. Va. 2004). This fact is vitally important, and also one of black letter law: the statutory discharge injunction becomes operational immediately upon entry of the discharge order. If a creditor is unsure of whether or not a particular debt was discharged, it risks violating the discharge injunction if it acts to collect a debt that was in fact discharged. *In re Haroon*, 313 B.R. at 689. In other words, a creditor acts at its own peril and risks violating the discharge injunction of § 524 if it acts to collect a debt before first obtaining a determination that the debt was in fact discharged. *Id.*; *see also* 4 Collier on Bankruptcy, ¶ 523.04 (16th ed. revised 2020).

It has already been established that the loans at issue in this case do not fall within § 523 (a)(8(A)(i) or § 523(a)(8)(A)(ii). *See generally In re Homaidan*, 3 F.4th 595. Thus, in order to avoid liability, Navient bears the burden of showing that each of the loans at issue fall within § 523(a)(8)(B). Under § 523(a)(8)(B), only loans that are "*qualified* education loan[s], as defined in section 221(d)(1) of the Internal Revenue Code of 1986," are dischargeable. Under Internal Revenue Code § 221(d)(1), "qualified education loan" means indebtedness incurred by the taxpayer solely to pay qualified higher education expenses for an eligible student. Qualified higher education expenses, in turn, means "the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. § 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution. The Higher Education Act, 20 U.S.C. § 1087ll, defines cost of attendance to be the amount each institution determines is its cost of attendance under the statute, minus other loans, grants and scholarships.

### C. Navient Continues to Collect on Discharged Student Loans.

Navient was always fully aware of these requirements and limitations on the dischargeability of private educational debts. *First*, the discharge order itself notified Navient that not all student loan debts are dischargeable. The discharge order is a standard, uniform order that is the same throughout the Unites States. It provides that all debts that are dischargeable are discharged upon entry of the order. Notably, it warns creditors and debtors alike that most student loan debts are dischargeable. Thus, by definition, the discharge order is notifying creditors that some student loan debts are not discharged.

*Second*, some of Navient's own loan documents provide that Navient is seeking to lend amounts that are within the cost of attendance at a school minus other financial aid. These documents show beyond any dispute that Navient knew, and had the ability to determine, the cost of attendance associated for every loan. *See, e.g.*, Dkt. No. 338-1 ("Sallie Mae Smart Option

4

Student Loan Quick Reference Guide") at 14 ("The maximum annual loan amount is the published cost of attendance less financial aid as certified by the school," explaining that to determine the "cost of attendance," "[r]efer to allowable costs under Higher Education Guidelines"); Dkt. No. 338-3 ("Signature Student Program Guide") at 21 ("Annual Loan Amount: cost of education less financial aid received"); Dkt. No. 338-5 ("Career Training Program Guide") ("Applicants can apply for up to the total cost of their education for tuition and other education-related expenses, less other financial aid received."); Dkt. No. 338-6 ("Career Training Certifications") at 1 (certifying that "all funds over and above the Tuition Amount represent qualified education expenses, and the Total Loan Amount Requested in Section B does not exceed the cost of attendance determined in accordance with the federal Higher Education Act").

*Third*, Navient told its investors that some of the loans that it held were dischargeable in bankruptcy. In an offering memorandum circulated to investors in 2009, Navient stated the following:

> Private credit student loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy . . . . In addition, direct-to-consumer loans are dispersed directly to the borrowers based upon certification and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that the loans are not used for qualified educational expenses. If you own any notes in a related issuing entity, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the issuing entities credit enhancement.

*See* Dkt. No. 179 ("Carpinello Decl."), Ex. R.

While Navient knew that its private education loans that exceeded the cost of attendance were dischargeable, it nonetheless had a uniform policy of collecting on these loans after discharge, regardless of whether the loan was actually nondischargeable. Navient has admitted that its policy is to stop collecting on loans when a petition for bankruptcy is filed and then to restart collecting

on the loans as soon as the discharge order is issued. *See* Dkt. No. 170 ("Plaintiffs' MOL ISO Mtn. for Summary Judgment") at 11. Incredibly, Navient has admitted that it receives discharge orders and then essentially throws them in the trash. The discharge order has essentially no effect on Navient. Rather than considering the discharge order as an injunction against collections, Navient sees it as waiving a green flag to re-commence collecting. Worse, Navient is still following that policy today—years after the start of this case and the exposure of the illegality of its conduct.

Navient's excuses for its actions in this case demonstrate its illegal behaviors. Navient argues that it cannot determine whether a loan is within the cost of attendance, while simultaneously conceding that some loan amounts on their face exceed even the most expensive formulation of cost of attendance. However, rather than not collecting on any loans after bankruptcy discharge to ensure compliance with § 524, Navient decides to <u>collect on all of them</u> without ever looking to the cost of attendance of the loan.

Accordingly, Plaintiffs have met their burden of showing a substantial likelihood of success on the merits.

## II. This Court has the Authority to Grant a Class-wide Preliminary Injunction Prior to Certification.

Navient continues to argue that preliminary injunctive relief cannot be granted on a class-wide basis prior to certification.

Navient ignores the well-established precedent establishing that it is within the Court's sound discretion to grant a class-wide preliminary injunction prior to, simultaneously with, or even after certifying a class. It has long been held that "a court may issue a classwide preliminary injunction in a putative class action suit prior to a ruling on the class certification motion." *See* 2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed.). Indeed, as the Southern District of

New York recently ruled, "where the claims are styled as on behalf of all similarly situated persons . . . 'the Court need not formally certify a class in order to issue the requested preliminary relief.'" *Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 39 (S.D.N.Y. 2020), (quoting *Yang v. Kellner*, 458 F. Supp. 3d 199, 208–09, (S.D.N.Y. May 5, 2020), *aff'd sub nom.*, *Yang v. Kosinski*, 805 F. App'x 63 (2d Cir. 2020), *and aff'd* 960 F.3d 119 (2d Cir. 2020)); *see also Gallagher*, 477 F. Supp. 3d at 39 n.2 ("The absence of formal certification is no barrier to classwide preliminary injunctive relief.") (quoting Newberg on Class Actions § 24:83 (4th ed. 2002)); *Abdi v. Duke*, 280 F. Supp. 3d 373, 400 (W.D.N.Y. 2017), *order clarified*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018), *vacated in part on other grounds*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019) ("Under appropriate circumstances, a court may grant preliminary injunctive relief in favor of putative class members before class certification, and correspondingly, assess the harm to putative class members when considering the preliminary injunction motion.").

One reason for allowing such equitable flexibility is because class rulings are considered provisional and can be revisited at any time, including through trial. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

## III.  THE REQUESTED INJUNCTIVE RELIEF IS APPROPRIATE AND CAN BE PROPERLY TAILORED.

Navient's latest argument, that any injunctive relief would be overbroad because Navient would be forced to identify which loans actually exceed the cost of attendance, should be rejected because it flips the law on its head. As noted, the law has always been, and Navient has always known, that its private loans that exceed the cost of attendance are subject to bankruptcy discharge. *See, e.g.*, Dkt. No. 338-1 ("Sallie Mae Smart Option Student Loan Quick Reference Guide") at 14 ("The maximum annual loan amount is the published cost of attendance less financial aid as

certified by the school"). It has thousands of school certification forms that seek to gather that exact information. *See, e.g.*, Dkt. No. 338-6 ("Career Training Certifications") at 1 (certifying that "all funds over and above the Tuition Amount represent qualified education expenses, and the Total Loan Amount Requested in Section B does not exceed the cost of attendance determined in accordance with the federal Higher Education Act").

In addition, as noted above, Navient specifically warned its investors that some of its loans were dischargeable in bankruptcy. *See* p. 6, *infra*; *see also* Dkt. No. 179 ("Carpinello Decl."), Ex. R.

Thus, Navient has always had the ability to determine whether a loan was within the cost of attendance, and indeed the responsibility to make such a determination post discharge prior to restarting collections. It makes no sense for Navient to now complain that requiring it to make such a determination is somehow overbroad. It particularly makes no sense here, because there is overwhelming evidence that thousands of loans on their face exceed even maximum formulations of the amount of the borrower's cost of attendance. Instead of at least stopping collections on those loans, where it is so plainly obvious that Navient is breaking the law, Navient claims that an injunction requiring it to now determine the cost of attendance for its post discharge loans is overbroad and somehow this fact gives Navient the right to continue collecting on all its loans. That is a perversion of the discharge injunction and the operation of Bankruptcy law.

## CONCLUSION

For all of the foregoing reasons and the reasons contained in Plaintiffs' prior arguments, evidence, and briefs, Plaintiffs respectfully request that their Motion for a Preliminary Injunction be granted.

Case 1-17-01085-ess    Doc 363    Filed 08/05/22    Entered 08/05/22 17:03:38

Dated: August 5, 2022                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/ George F. Carpinello*
George F. Carpinello
Adam R. Shaw
Jenna C. Smith
30 South Pearl Street
Albany, NY 12207
(518) 434-0600

**JONES, SWANSON, HUDDELL & DASCHBACH, L.L.C.**
Lynn E. Swanson (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

*Counsel for Plaintiffs Hilal Homaidan and Reeham Youssef*

9

**CERTIFICATE OF SERVICE**

I, George F. Carpinello, hereby certify that on the 5th day of August, 2022, I served the forgoing document on all counsel of record via ECF.

>	*/s/ George F. Carpinello*
>	George F. Carpinello