UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| | |
| Hilal Khalil Homaidan, | Case No. 08-48275-ess |
| *aka* Helal K Homaidan, | |

Debtor.

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| | |
| Reeham Youssef, | Case No. 13-46495-ess |
| *aka* Reeham Navarro Youssef, | |
| *aka* Reeham N. Youssef, | |

Debtor.

------------------------------------------------------------------------x

Hilal Khalil Homaidan on behalf of himself and
all others similarly situated,

and                                                                   Adv. Pro. No. 17-1085-ess

Reeham Youssef,

Plaintiffs,

v.

Sallie Mae, Inc., Navient Solutions, LLC,
Navient Credit Finance Corporation,

Defendants.

------------------------------------------------------------------------x

## MEMORANDUM DECISION ON NAVIENT'S
## MOTION FOR A STAY PENDING APPEAL

*Appearances*:

| | |
|---|---|
| George F. Carpinello, Esq. | Thomas M. Farrell, Esq. |
| Adam Shaw, Esq. | McGuire Woods LLP |
| Robert C Tietjen, Esq. | JPMorgan Chase Tower |
| Boies Schiller Flexner LLP | 600 Travis Street (Suite 7500) |
| 30 South Pearl Street (11th Floor) | Houston, TX 77002 |
| Albany, NY 12207 | *Attorneys for Defendants* |
| *Attorneys for Plaintiffs* | |

Jason W. Burge, Esq.  
Kathryn J. Johnson, Esq.  
Fishman Haygood LLP  
201 Saint Charles Avenue (Suite 4600)  
New Orleans, LA 70170  
 *Attorneys for Plaintiffs*

Shawn R. Fox, Esq.  
Joseph A. Florczak, Esq.  
Dion W. Hayes, Esq.  
K. Elizabeth Sieg, Esq.  
McGuireWoods LLP  
1345 Avenue of the Americas (7th Floor)  
New York, NY 10105  
 *Attorneys for Defendants*

Lynn E. Swanson, Esq.  
Peter N. Freiberg, Esq.  
Jones, Swanson, Huddell & Garrison, LLC  
601 Poydras Street (Suite 2655)  
New Orleans, LA 70130  
 *Attorneys for Plaintiffs*

September 2, 2022

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion for a stay pending appeal of this Court's temporary restraining order entered on July 11, 2022 (the "TRO") by Navient Solutions, LLC and Navient Credit Finance Corporation (together, "Navient"). Navient seeks a stay of this Court's direction that it cease its collection efforts on "Tuition Answer Loans" that "exceed the cost of attendance" as defined by Internal Revenue Code § 221(d), and that have an outstanding loan balance subject to collection held by the Plaintiffs and the members of a putative nationwide class of borrowers who received discharges in bankruptcy. Amended Complaint ("Am. Compl."), ECF No. 160, ¶ 73.

Navient makes several arguments in support of its motion. As a threshold matter, Navient states that this Court lacks the jurisdiction to address violations of discharge orders entered by other bankruptcy courts. Navient also argues that the TRO was not warranted here, as the Plaintiffs cannot establish a likelihood of success on the merits because, among other reasons, each member of the putative class certified on their loan documents that their loans were within the cost of attendance at a Title IV institution. Further, Navient argues that the Plaintiffs substantially delayed in seeking a TRO, and therefore this Court lacked the authority to issue the order. And finally, Navient argues that the public interest weighs in favor of staying the TRO, as injunctive relief may harm certain members of the putative class and reward unscrupulous borrowers.

For these reasons, among others, Navient argues that the effective date of the TRO should be stayed until the resolution of its appeal.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b).

## Background

### *Mr. Homaidan's Bankruptcy Case*

On December 4, 2008, Hilal Khalil Homaidan, *aka* Helal K. Homaidan, filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 08-48275.  On December 19, 2008, Mr. Homaidan filed his schedules and statements, and on March 9, 2009, he filed certain amended schedules.  ECF Nos. 11, 19.  In his Schedule F, "Creditors Holding Unsecured Nonpriority Claims," he listed "Tuition Answer" loans owed to Sallie Mae in the amounts of $7,983.19 and $8,190.11.  On January 15, 2009, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute."  Case No. 08-48275, Doc. entry dated January 15, 2009. On April 9, 2009, the Court entered an order discharging Mr. Homaidan, and on that same day, his bankruptcy case was closed.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a determination of the dischargeability of certain of his student loans, and on May 26, 2017, the Court entered an order reopening the case.

### *Ms. Youssef's Bankruptcy Case*

On October 29, 2013, Reeham Youssef, aka Reeham Navarro Youssef, aka Reeham N Youssef, filed a petition for relief under Chapter 7 of the Bankruptcy Code.  *In re Reeham*

*Youssef*, Case No. 13-46495.  On October 29, 2013, Ms. Youssef filed her schedules and statements.  Case No. 13-46495, ECF No. 1.  In her Schedule F, "Creditors Holding Unsecured Nonpriority Claims," she listed "Student Loan[s]" owed to Sallie Mae in the amounts of $9,055.00, $13,413.00, $6,415.00, $35,580.00, $23,596.00, $4,095.00, $16,275.00 and $29,493.00.  *Id.*  On December 13, 2013, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute."  Case No. 13-46495, Doc. entry dated December 13, 2013.  On February 6, 2014, the Court entered an order discharging Ms. Youssef, and on that same day, her bankruptcy case was closed.  Case No. 13-46495, ECF No. 9.

On October 1, 2019, Ms. Youssef moved to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on December 4, 2019, the Court entered an order reopening the case.

*Selected Procedural History of this Adversary Proceeding*

On June 23, 2017, Mr. Homaidan commenced this adversary proceeding (the "Adversary Proceeding") as a putative class action, on behalf of himself and others similarly situated, by filing a complaint against SLM Corporation, Sallie Mae, Inc., Navient Solutions, LLC, and Navient Credit Finance Corporation.  As to himself, Mr. Homaidan seeks a determination that certain debts that he incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and costs, for the Defendants' willful violations of the bankruptcy discharge order entered in his case. And as to the class, he seeks the same the relief.  Compl., Adv. Pro. No. 17-01085, ECF No. 1.

On October 30, 2017, Navient filed a motion to compel arbitration or, in the alternative, to dismiss the Adversary Proceeding (the "Motion to Compel or Dismiss") and a Memorandum of Law in Support of the Motion to Compel or Dismiss (the "Mot. to Compel or Dismiss

Mem."). ECF Nos. 16, 17. In the Motion to Compel or Dismiss, Navient argued that Mr.

Homaidan's private Tuition Answer Loans "constitute obligations to repay funds received as

educational benefits, and are therefore excepted from discharge under [Section] 523(a)(8)(A)(ii)

of the Bankruptcy Code." Mot. to Compel or Dismiss Mem. at 23-24. On December 1, 2017, the

Court approved a stipulation of dismissal as to defendant SLM Corporation. ECF No. 23. On

December 1, 2017, the Court approved a stipulation of dismissal as to defendant SLM

Corporation. *See* ECF No. 23.

On January 8, 2018, Mr. Homaidan filed opposition to the Motion to Compel or Dismiss.

ECF No. 27. On January 26, 2018, Navient filed a reply in support of the Motion to Compel or

Dismiss. ECF No. 29.

On July 25, 2018, the Court issued a memorandum decision on the Motion to Compel or

Dismiss, and denied the motion to the extent it sought to compel arbitration of Mr. Homaidan's

claims. *Homaidan v. SLM Corp.* (*In re Homaidan*), 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

On January 31, 2019, the Court issued a second memorandum decision on the Motion to

Compel or Dismiss, and denied the motion to the extent it sought to dismiss the Adversary

Proceeding. *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86 (Bankr. E.D.N.Y. 2019).

On February 14, 2019, Navient filed a notice of appeal to the District Court of this Court's order

denying the request to dismiss the Adversary Proceeding. ECF No. 105.

Thereafter, on October 21, 2019, Mr. Homaidan filed an amended complaint to add Ms.

Youssef as a named plaintiff and proposed class representative. Am. Compl., ECF No. 160. On

December 18, 2019, this Court entered an Order permitting amendment of the complaint to add

Ms. Youssef as a named plaintiff and a proposed class representative. ECF No. 166.

On December 19, 2019, the Plaintiffs filed a motion seeking three forms of relief: an

order certifying a nationwide class in this Adversary Proceeding; an order for partial summary

judgement on liability and restitution (the "Motion for Partial Summary Judgment"); and the

Preliminary Injunction Motion (collectively, the "Pending Motions").  ECF No. 168.  That same

day, the Plaintiffs filed a memorandum of law in support of the portion of the Class Certification

Motion (the "Class Certification Motion" or "Class Cert. Mot."), ECF No. 169, and the

Preliminary Injunction Motion, ECF No. 171.

In the Class Certification Motion, the Plaintiffs seek to certify an injunctive relief class

pursuant to Federal Rule of Civil Procedure 23(b)(2), and a damages class pursuant to Federal

Rule of Civil Procedure 23(b)(2), consisting of:

> Individuals who attended or intended to attend Title IV institutions and who
> received private loans owned or serviced by Defendants which exceeded the cost
> of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained
> bankruptcy discharges after January 1, 2005; who were subsequently subjected to
> Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mot. at 15.

On December 20, 2019, the Plaintiffs filed an amended Preliminary Injunction Motion.

*See* ECF No. 180.  On January 28, 2020, this Court entered an Order scheduling a hearing an oral

argument on the Preliminary Injunction Motion for February 18, 2020.  *See* ECF No. 184.

On February 3, 2020, Navient filed a response in opposition to the Preliminary Injunction

Motion.  *See* ECF No. 189.  On February 12, 2020, the Plaintiffs filed a reply in support of the

Preliminary Injunction Memorandum.  *See* ECF No. 194.

On February 25, 2020, the District Court granted Navient's motion to certify the order

denying the Motion to Compel or Dismiss to the extent it sought to dismiss the Adversary

proceeding for direct appeal to the Second Circuit.  *Homaidan v. Sallie Mae, Inc.*, 2020 WL

5668972 (Bankr. E.D.N.Y. Feb. 25, 2020).  And on July 15, 2021, the Second Circuit affirmed

this Court's order denying Navient's motion to dismiss the Adversary Proceeding. *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021). There, the court found that private loans do not come within Section 523(a)(8)(A)(ii) because they are not "an obligation to repay funds as an educational benefit." *Homaidan*, 3 F.4th at 601 (quoting 11 U.S.C. 523(a)(8)(A)(ii)). In reviewing the exceptions to discharge contained in Section 523(a)(8), the Second Circuit observed:

> [Section] 523(a)(8)(A)(i) covers government and nonprofit-backed loans and educational benefit overpayments; [Section] 523(a)(8)(A)(ii) covers scholarships, stipends, and conditional education grants; and [Section] 523(a)(8)(B) covers private loans made to individuals attending eligible schools for certain qualified expenses.

*Homaidan*, 3 F.4th at 604.

As to Section 523(a)(8)(B), the Second Circuit explained that "for a loan to be 'qualified' under [Section] 523(a)(8)(B), the student must attend an eligible educational institution and the loan must fund only higher education expenses." *Homaidan*, 3 F.4th at 601 n.3 (first citing 26 U.S.C. § 25A(f)(2); and then citing 26 U.S.C. § 221(d)).

On August 23, 2021, this Court entered an Order assigning the Adversary Proceeding to mediation. ECF No. 302. And on September 7, 2021, this Court entered a Stipulation and Mediation Order, where the parties jointly accepted Eric Green of Resolutions LLC to provide mediation services. ECF No. 304.

On March 14, 2022, the Plaintiffs filed a letter stating that it is "clear" the Adversary Proceeding "will not settle without a ruling by the Court" on the Pending Motions. ECF No. 310. The letter also stated that the Plaintiffs planned to file the TRO Motion. *Id.* On March 22, 2022, Navient responded by filing their own letter, stating that Navient remains engaged in the mediation process and disagrees that this Adversary Proceeding will not settle without a ruling

on the Pending Motions.  ECF No. 313.

On April 7, 2022, the Plaintiffs filed a motion for a temporary restraining order (the "TRO Motion").  TRO Motion, ECF No. 314.  On April 11, 2022, this Court entered an Order scheduling a conference on the TRO Motion for April 14, 2022.  ECF No. 316.  On April 14, 2022, the Court held an initial hearing on the TRO Motion and, with the consent of the parties, set a briefing schedule on the TRO Motion.

On April 15, 2022, this Court entered an Order scheduling a continued conference on the TRO Motion and setting briefing deadlines.  ECF No. 318.  As stated in the Order, the Defendants were directed to file any opposition to the TRO Motion by May 9, 2022; the Plaintiffs were directed to file any reply to the Defendants' opposition by May 23, 2022; and the Court scheduled a continued conference on the TRO Motion for May 11, 2022.  *See* ECF No. 318.

On May 9, 2022, Navient filed opposition to the TRO Motion.  *See* ECF No. 320.  On May 20, 2022, the Plaintiffs filed a reply memorandum of law in support of the TRO Motion. *See* ECF No. 321.  On May 25, 2022, the Court held oral argument on the TRO Motion, at which the parties, by counsel, appeared and were heard.

On July 8, 2022, the Court issued a memorandum decision on the TRO Motion (the "TRO Decision"), granting in part the TRO Motion to the extent that it enjoined Navient from taking any acts to collect on Tuition Answer Loans held by the Plaintiffs and putative class members, as the class is described in the Amended Complaint, that exceed the cost of attendance as defined by Internal Revenue Code § 221(d), and that have an outstanding balance subject to collection.  *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 640 B.R. 810 (Bankr. E.D.N.Y. 2022).  TRO Decision, ECF No. 341.  And on that same day, the Court issued the TRO, in

accordance with the TRO Decision.  TRO, ECF No. 342.

On July 25, 2022, Navient filed a notice of appeal to the District Court of this Court's TRO, and this Motion to Stay Temporary Restraining Order (the "Motion to Stay").  Motion to Stay, ECF No. 350, 351.  On July 26, 2022, Navient filed a Notice of Motion to Stay Temporary Restraining Order.  ECF No. 356.  On August 23, 2022, the Plaintiffs filed a Memorandum of Law in Opposition to Defendants' Motion to Stay Temporary Restraining Order (the "Opposition" or "Opp.").  Opposition, ECF No. 369.  And on August 26, 2022, Navient filed a reply brief in support of the Motion (the "Reply").  Reply, ECF No. 373.

On August 29 and August 31, 2022, the Court held oral argument on the Motion to Stay, at which the parties, by counsel, appeared and were heard, and the record is now closed.

<u>The Allegations of the Amended Complaint</u>

In view of the nature of the relief sought in this Motion to Stay, it is helpful to summarize the principal allegations of the Amended Complaint.  *See In re Homaidan*, 596 B.R. at 91-93 (discussing the allegations contained in the Amended Complaint).

The Plaintiffs, on behalf of themselves and all others similarly situated (the "Putative Class Members"), seek a declaratory judgment, injunctive relief, and damages arising from Sallie Mae. Inc. and Navient's alleged "pattern and practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2).  Am. Compl. ¶ 2.

The Plaintiffs allege that "[f]or the last ten years, [the Defendants] have . . . engaged in a massive effort to defraud student debtors and to subvert the orderly working of the bankruptcy courts."  *Id*.  They claim that the "Defendants . . . originat[ed] and service[ed] dischargeable consumer loans [while] disguising them as nondischargeable student loans."  *Id*.  The Plaintiffs advance these allegations on behalf of an alleged class of "similarly situated individuals who

have declared bankruptcy since 2005 [across the United States,] with loans originated and/or serviced by Defendants." Am. Compl. ¶ 5. And they allege that these loans "do not meet the definition of a nondischargeable qualified education loan" as set forth in Internal Revenue Code Section 221(d) and Bankruptcy Code Section 523(a)(8)(B). *Id.*

The Plaintiffs allege that the "Defendants represented to student debtors that the Bankruptcy Code prohibited discharge of *any* loan made to any person for any educational purpose." Am. Compl. ¶ 28. They claim that the Defendants "failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and in particular, that Class Members' nonqualified loans were, in fact, discharged in bankruptcy." *Id.* And the Plaintiffs state that the Defendants utilized bankruptcy laws "to defraud vulnerable and unsophisticated student borrowers." Am. Compl. ¶ 29. The Plaintiffs allege that the "Defendants either misrepresented or failed to disclose facts and information related to the dischargeability of private loans," and that the Defendants did not make the same misrepresentations "to more sophisticated parties." Am. Compl. ¶ 33.

The Plaintiffs request that the Court declare that the Plaintiffs and Class Members' debts were discharged upon the entry of the applicable statutory bankruptcy discharge injunctions, because they are not student loans excluded from discharge under Bankruptcy Code Section 523(a)(8). They seek permanent injunctive relief prohibiting the Defendants from continuing to seek collection on the Plaintiffs and Class Members' discharged debts. The Plaintiffs also request that since the Defendants were notified of the Plaintiffs and Class Members' discharge orders pursuant to Bankruptcy Rule 4004(g), and still sought to collect on these debts by use of "dunning letters, phone calls, negative reports made to credit bureaus, failure to update credit

reports, and commencing or continuing legal action to recover [these] debts in violation of [Bankruptcy Code Section 524]," the Court should cite the Defendants for civil contempt for their willful violations of the Discharge Order, and order them to pay damages in an amount to be determined at trial pursuant to Bankruptcy Code Sections 524 and 105, and also to pay his attorneys' fees and costs.  Am. Compl. ¶¶ 90-93.

As stated in the Amended Complaint, the Plaintiffs seek to maintain this action on behalf of themselves and as representatives of Putative Class Members who:

- obtained private Tuition Answer Loans in amounts that exceeded the "Cost of Attendance";

- were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;

- have never reaffirmed any pre-petition Tuition Answer loan; and

- have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

Am. Compl. ¶ 73.

### *This Motion to Stay*

Navient makes several arguments in support of the Motion to Stay.  At the outset, Navient states that under Bankruptcy Rule 8007, a party may move in the bankruptcy court for "'the suspension . . . of proceedings in a case or other relief permitted by [Rule 8007(e)].'" Motion to Stay at 4 (quoting Fed. R. Bankr. P. 8007(a)(1)(D)).  And it notes that Bankruptcy Rule 8007(e) permits a bankruptcy court to suspend proceedings in the case or issue other appropriate orders during the pendency of an appeal.  Motion to Stay at 5 (citing Fed. R. Bankr. P. 8007(e)).

Navient states that courts considering a stay pending appeal balance the following four factors:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies."

Motion to Stay at 5 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  Navient also states that the degree to which a factor is required varies with the other factors' strengths.  Motion to Stay at 5 (citing *In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014)).

Navient asserts that it has a strong likelihood of prevailing on appeal.  Motion to Stay at 5.  It states that this consideration independently justifies a stay, even without consideration of the remaining factors.  Motion to Stay at 5-6.

As to the first factor, whether it has made a strong showing that it is likely to succeed on the merits, Navient argues that this Court lacked the authority to enter the TRO because it grants nationwide relief, effectively enforcing discharge injunctions issued by bankruptcy judges outside of the Eastern District of New York.  Motion to Stay at 6-7.  It contends that it is likely to prevail on its position that, to this extent, the TRO exceeded the Court's authority.  Motion to Stay at 6.  And it argues that the circuit courts presented with the question of nationwide relief here – the Fifth, Seventh, Ninth, and Eleventh Circuits – have uniformly held that a bankruptcy court does *not* have the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits.  Motion to Stay at 6 (citing *Crocker v. Navient Solutions, L.L.C.*, 941 F.3d 206, 216-17 (5th Cir. 2019); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 919-17 (7th Cir. 2001); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509-10 (9th Cir. 2002); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012)).

Navient also contends that the Second Circuit has signaled strongly that it will align itself with its sister circuits on this point. Motion to Stay at 6 (citing *Belton v. GE Capital Retail Bank* (*In re Belton*)*, 961 F.3d 612, 617 (2d Cir. 2020); *Anderson v. Credit One Bank, N.A.,* 884 F.3d 382, 390-91 (2d Cir. 2018)). And Navient states that the Second Circuit is now poised to rule definitively on this issue in *Bruce v. Citigroup Inc.* (*In re Bruce*), Case No. 22-134 (2d Cir. May 4, 2022). Motion to Stay at 6-7. Navient asserts that this authority, and the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), show that there is a substantial likelihood that Navient will prevail on its position that the TRO impermissibly provides relief to borrowers who obtained discharges outside of the Eastern District of New York. Motion to Stay at 7.

Navient also argues that it is likely to succeed on the merits of its appeal because this Court lacked authority to grant class-wide relief. Motion to Stay at 7-9. It points out that there is a motion for class certification pending, but no class has been certified. Motion to Stay at 7. As a result, Navient asserts that the TRO "restrains Navient from engaging in collection activities directed at borrowers who, at this point, are strangers to this case." *Id.*

Navient also argues that it has a strong likelihood of prevailing on its position that this Court erred in enjoining Navient on a class-wide basis before determining whether a class could ever be certified. Motion to Stay at 8. It states that even assuming courts have discretion in some circumstances to grant class-wide injunctive relief before certifying a class, this is not a case justifying the exercise of such discretion, as Navient contends that the Plaintiffs have offered an unpersuasive argument to justify class certification, and there is an unjustified five-year delay as to the Plaintiffs' seeking a temporary restraining order. *Id.*

Navient states that the authority that the Plaintiffs cite for injunctive relief prior to class certification is limited to situations where certification was sought under Rule 23(b)(2), which allows for class certification when "'final injunctive relief . . . is appropriate respecting the class as a whole.'"  Motion to Stay at 8 (quoting *LaForest v. Former Clean Air Holding Co.,* 376 F.3d 48 (2d Cir. 2004)).  Here, by contrast, Navient argues that any certification order would have to be entered, if at all, under Rule 23(b)(3), since the Plaintiffs seek individual monetary awards to potentially thousands of putative class members.  Motion to Stay at 8 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360-61 (2011)).  It asserts that in a Rule 23(b)(3) case, absent class members must receive notice and an opportunity to exclude themselves from the class.  Motion to Stay at 8.  And Navient contends that this distinction renders the grant of class-wide relief before class certification particularly inappropriate in this case.  Motion to Stay at 9.

Here, Navient argues that by entering the TRO before certifying the class and providing notice, this Court has put absent class members at substantial risk of harm without any meaningful opportunity to protect their interests.  *Id*.  Navient concludes by asserting that while there might have been argument justifying that approach in a case seeking certification of a no-notice class under Rule 23(b)(2), it is completely inappropriate – and likely unconstitutional – in a Rule 23(b)(3) case such as this.  *Id*.

And finally, Navient contends that this Court lacked authority to grant relief on a record devoid of supporting evidence.  *Id*.  It argues that the TRO materially alters the status quo that has existed since this case was filed some five years ago.  *Id*.  According to Navient, because the TRO alters the status quo, the Plaintiffs were required to show a "clear" or "substantial" likelihood of success on the merits in order to obtain injunctive relief on a provisional basis.

Motion to Stay at 9 (citing *Bronx Household of Faith v. Bd. of Educ. of City of New York,* 331 F.3d 342, 349 (2d Cir. 2003)).

With this standard in mind, Navient argues that since the Plaintiffs sought class-wide relief, and since their claim depends on proof that Navient is collecting on loans that exceed the cost of attendance, the Plaintiffs should have been required to establish at least two key points related to the merits of this dispute:  first, the legal proposition that it is unlawful to collect on a loan that exceeds the cost of attendance and second, the factual proposition that Navient is likely doing so across the universe of loans covered by the TRO.  Motion to Stay at 9-10.  Navient asserts that the Plaintiffs failed to make either showing.  Motion to Stay at 10.

On the legal point, Navient argues that it is likely to prevail since both Mr. Homaidan and Ms. Youssef certified to Navient in the applicable loan documents that their loans were within the cost of attendance and they were borrowing the funds to pay qualified education expenses. *Id*.  Navient asserts that these certifications conclusively show why and for what purpose the debts were "incurred," thus satisfying the test for non-dischargeability that, through IRC Section 221(d)(1), is incorporated into the Bankruptcy Code.  Motion to Stay at 11.

Navient contends that it also has a strong likelihood of success on the merits because, it asserts, the Plaintiffs did not offer competent evidence to show that it is, in fact, collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance.  *Id*.  At the most, according to Navient, the Plaintiffs demonstrated that Mr. Homaidan and Ms. Youssef received Tuition Answer Loans in amounts that may have exceeded average, estimated cost-of-attendance figures for the relevant academic years reported by the "Integrated Postsecondary Education Data System" ("IPEDS").  *Id*.

And Navient contends that it is likely to succeed on the merits of its appeal because this Court lacked the authority to grant temporary injunctive relief after five years of unexplained delay by the Plaintiffs in seeking such relief. Motion to Stay at 12. It argues that it is likely to prevail on appeal because this delay, for which the Plaintiffs offered no meaningful explanation, precludes issuance of the extraordinary relief set forth in the Order. *Id.* According to Navient, in the Second Circuit, a delay in seeking injunctive relief of only a "couple of months" will generally foreclose issuance of a preliminary injunction or a temporary restraining order. Motion to Stay at 12 (citing *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985); *Gidatev, S.R.L. v. Campaniello Imports. Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)). As such, Navient argues that here, there was a multi-year delay, which by itself makes it highly likely that the TRO will be reversed on appeal. Motion to Stay at 12.

Navient asserts that it is likely to succeed on appeal because this Court lacked authority to grant relief through an order that does not comply with Federal Rule of Civil Procedure 65. *Id.* It states that the TRO suffers from at least two defects that render it non-compliant with Rule 65 and the requirements for injunctive relief. *Id.*

First, Navient argues that the TRO does not list the loans on which Navient can no longer collect, nor does it identify any specific borrowers to whom Navient is restrained from directing collection activities. *Id.* Instead, Navient asserts that the TRO "implicitly incorporates by reference tens of thousands of loan records and financial-aid records that may show whether a loan exceeded the cost of attendance, thus leaving it to Navient – under threat of contempt – to locate and review those records and to guess that it is interpreting them consistent with the Court's view." *Id.* In this way, Navient contends that the TRO plainly violates Rule 65, which requires that a restrained party be able to identify "the act or acts restrained or required" from the

four corners of the injunction and without having to interpret external materials referenced or incorporated in the order.  Motion to Stay at 12-13 (citing *Corning Inc. v. PicVue Elecs., Ltd.,* 365 F.3d 156, 158 (2d Cir. 2004)).

Second, Navient argues that the TRO precludes collection activities on loans that "exceed the cost of attendance," but provides no guidance whatsoever on how to determine whether a loan falls into that category.  Motion to Stay at 13.  Navient points out that the Plaintiffs contend that average, estimated data published by IPEDS is a reliable indicator of cost of attendance, but Navient disputes that position.  *Id.*  Navient argues that borrower certifications constitute a sufficient basis on which to determine whether cost-of-attendance criteria under Bankruptcy Code Section 523(a)(8)(B) have been satisfied.  *Id.*  Navient then asserts that by referring only to loans exceeding the "cost of attendance," the TRO leaves these important questions unresolved. Motion to Stay at 13-14.

According to Navient, the result of this is that the TRO is really nothing more than a successive injunction that, like the discharge injunctions it purports to enforce, says nothing more than "obey the law."  Motion to Stay at 14.  Navient argues that it is likely to prevail on its position that such an injunction is improper.  Motion to Stay at 14 (citing *Alderwoods,* 682 F.3d at 968).

Finally, Navient contends that notwithstanding a clear dispute between the parties concerning what constitutes an "act to collect," the TRO does not delineate what Navient is required to do or what it is prohibited from doing, in order for it to be compliant.  Motion to Stay at 14.  As a result, Navient asserts that without defining "acts to collect," the TRO is vague and requires Navient to guess at its meaning.  *Id.*

As to the second factor, whether it will be irreparably injured absent a stay, in determining whether an order should be stayed pending appeal, Navient argues that it will be irreparably injured absent a stay.  Motion to Stay at 15.  That is because the TRO will cause irreparable injury to Navient in at least two ways.  First, compliance with the TRO will require Navient to incur significant costs since the Court did not require the posting of any bond, and since Mr. Homaidan and Ms. Youssef are likely judgment proof, Navient will have no meaningful remedy to recoup these costs should it later be determined that the Order was improvidently entered.  *Id.*  These compliance costs, Navient asserts, amount to irreparable injury.  Motion to Stay at 15 (citing *Allstate Ins. Co. v. Harvey Fam. Chiropractic,* 677 F. App'x 716, 718 (2d Cir. 2017); *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)).

And second, Navient argues that, as demonstrated by the Declaration of Patricia Peterson, ECF No. 323 at 5, the TRO is almost certain to cause many loans, and potentially thousands of loans, that are currently being repaid to slip into default.  Motion to Stay at 15.  Navient states that while this may not impact its legal ability to seek repayment, it does mean, practically speaking, that the TRO will likely cause Navient substantial, real-world losses that it will never recover, even if it ultimately prevails in this case.  *Id.*

As to the third factor, whether the issuance of a stay will substantially other parties interested in the proceeding, Navient argues that a stay will not substantially injure other interested parties.  Motion to Stay at 16.  It contends that staying the TRO pending appeal will allow the continuation of the status quo that has existed since this case was commenced *over five years ago*.  *Id.*  Navient asserts that if the Plaintiffs ultimately prevail in this case, any injury suffered by borrowers who made payments on discharged loans would be remediable by an

award of money damages.  *Id*.  And it states that that the fact that the Plaintiffs waited for *two years* to seek a preliminary injunction and waited another *three years* after that to seek a temporary restraining order should effectively estop them from opposing a stay pending appeal on the basis of any claim that borrowers may suffer irreparable harm.  Motion to Stay at 16 (citing *Citibank*, 756 F.2d at 276).

As to the fourth and final stay pending appeal factor, where the public interest lies, Navient argues that the public interest favors issuance of a stay.  Motion to Stay at 16.  Navient asserts that there is a strong public interest in ensuring that citizens are not prejudiced by legal processes without first being provided notice and an opportunity to be heard.  Navient contends that the TRO violates this public interest because it is likely to cause significant harm to potentially thousands of absent members of a putative class before a class has been certified and before they have been given notice or any other meaningful opportunity to protect their interests. Motion to Stay at 16-17.  Navient asserts that there is also a strong public interest in protecting both lenders and borrowers from unscrupulous practices in connection with student loans and other lending transactions, and that the TRO runs afoul of this public interest by effectively rewarding borrowers for having submitted loan applications and other loan documents containing material misrepresentations.  Motion to Stay at 17.

*The Plaintiffs' Opposition to the Motion to Stay*

The Plaintiffs oppose Navient's request for a stay pending appeal, on several grounds.

As to the first factor, whether Navient has made a strong showing that it is likely to succeed on the merits, the Plaintiffs disagree, for several reasons.  Opp. at 3.  At the outset, they state that where the order being appealed is interlocutory, the "'relevant "likelihood of success" looks to whether the District Court will grant the Defendants' leave to file an interlocutory

appeal, not the possibility that the Defendants will succeed on the merits of that appeal.'"  Opp.

at 3 (quoting *Turner v. Frascella Enterprises, Inc.* (*In re Frascella Enterprises, Inc.*), 388 B.R.

619, 623 (Bankr. E.D. Pa. 2008)).  And they note that Navient jumps to the question of whether

it will actually prevail on the merits, if granted leave to appeal, and does not address the

threshold question of whether it has a likelihood of success on whether the appeal itself should

even proceed.  Opp. at 3-4.

In addition, the Plaintiffs argue that Navient's motion for leave to appeal the TRO must

fail because:

> (1) TROs are not appealable as of right; (2) the TRO is not a preliminary
> injunction; and (3) Navient cannot meet the standards for an interlocutory appeal
> under 28 U.S.C. § 1292(b), which requires the order being appealed to involve
> "[i] a controlling question of law [ii] as to which there is substantial ground for
> difference of opinion and [iii] that an immediate appeal from the order may
> materially advance the ultimate termination of the litigation[.]"

Opp. at 4 (quoting 28 U.S.C. § 1292(b)).  As a result, the Plaintiffs argue that there is no

likelihood of success on Navient's motion for leave to appeal, and that for this reason alone, this

Court should deny the Motion to Stay.  Opp. at 4.

Next, the Plaintiffs contend that there is no likelihood of success on the merits of an

appeal.  Opp. at 4.  They first argue that Navient bears the burden of establishing whether any of

its direct-to-consumer loans, including the Tuition Answer Loans which are the subject of the

TRO, are nondischargeable under Section 523(a)(8).  Opp. at 4 (citing *Homaidan*, 3 F.4th at

600).  That is, a debtor does not need to take any action to enjoy the fresh start guaranteed by the

Bankruptcy Code – it is the creditor who risks violating the law by continuing to collect on a

debt without first determining whether it was discharged.  Opp. at 5 (citing *In re Haroon*, 313

B.R. 686, 689 (Bankr. E.D. Va. 2004)).  The Plaintiffs state that in considering the TRO Motion,

this Court has already determined that the Plaintiffs, not Navient, have demonstrated a likelihood

of success on the merits.  Opp. at 5-6.  For the same reasons, it should reject Navient's argument it will prevail on appeal here.  Opp. at 6.

The Plaintiffs also argue that the Court specifically found that it possessed the authority to enter the TRO on behalf of a nationwide class.  *Id*.  The Plaintiffs acknowledge that Navient cites the Second Circuit's granting of a petition for leave to file a direct appeal in *In re Bruce* as an indication "that there exist substantial grounds on which to question this Court's view of its authority to address alleged discharge violations from around the country."  Opp. at 7 (quoting Motion to Stay at 7)).  But the Plaintiffs argue that just because the Second Circuit accepted an appeal is not an indication that it will rule in Navient's favor.  Opp. at 7.  The Plaintiffs assert that the Court already rejected Navient's argument that it lacked authority to grant nationwide relief based on authority from this Circuit, and until the Second Circuit rules otherwise, it should do so again.  *Id*.

The Plaintiffs then assert that Navient's argument that the Court lacked authority to grant class-wide relief prior to certification is not compelling.  *Id*.  They point out that they showed, and the Court agreed, that absent a temporary restraining order, the Defendants would continue their illegal collection efforts against Ms. Youssef and the putative class.  Opp. at 8.

The Plaintiffs next address Navient's argument that the Court lacked authority to grant relief "'on a record devoid of supporting evidence.'"  Opp. at 8 (quoting Motion to Stay at 9-10).  The Plaintiffs contend that the plain language of Section 523(a)(8)(B) excepts from discharge "'any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code.'"  Opp. at 8 (quoting 11 U.S.C. § 523(a)(8)(B)).  And they point out that Section 221(d)(1) defines "'qualified education loan'" as "'any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses'" which is defined in Section

221(d)(2) as "'the cost of attendance'" at an eligible educational institution, minus scholarships, allowances, or other payments.  Opp. at 8-9.  Thus, the Plaintiffs argue, the record before the Court was sufficient to show that the Tuition Answer Loans at issue that exceed the cost of attendance are not excepted from discharge, and that the borrower certifications upon which Navient claims to rely are not determinative.  Opp. at 9.

Next, the Plaintiffs address Navient's argument that the "'Plaintiffs offered literally no competent evidence that Navient is in fact collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance.'"  Motion to Stay at 11.  The Plaintiffs point out that at the hearing on the TRO Motion, Navient acknowledged that there "'is a potential that there are some loans out there where the amount of the loan exceeded the cost of attendance.'"  Opp. at 9 (quoting TRO Decision at 30).  And the Plaintiffs also note that Navient's corporate representative has repeatedly testified that Navient makes no effort to determine whether any of the loans at issue were within the cost of attendance.  Opp. at 9 (citing ECF No. 170 at 7-9).  The Plaintiffs argue that it is the creditor that bears the burden of proving that a loan is nondischargeable, and that Navient has failed to do so here.  Opp. at 10.

Finally, as to a substantial possibility of success on appeal, the Plaintiffs argue that Navient's argument that the TRO is non-compliant and violates Rule 65 because it does not identify the "'act or acts restrained or required'" must also be rejected.  Opp. at 10 (quoting Motion to Stay at 13).  The Plaintiffs assert that Navient's failure to comply with the law – or inability to determine whether a particular loan is within the scope of a debtor's bankruptcy discharge –does not provide a persuasive basis for Navient to argue that the TRO requiring Navient to determine objective facts applicable to the loans it collects on is vague.  Opp. at 10.

The Plaintiffs contend that if Navient cannot determine whether a loan exceeded the cost of attendance, it should not be attempting to collect on it after a bankruptcy discharge. *Id*. Finally, the Plaintiffs point out that the Court rejected Navient's "delay" argument, and none of the arguments advanced by Navient support a substantial possibility of success on appeal. *Id*.

As to the second factor, whether Navient will be irreparably injured absent a stay, the Plaintiffs respond that Navient will not suffer any irreparable injury, for several reasons. *Id*. They point out that this Court already found that absent the TRO, the Plaintiffs and the putative class, not Navient, will be irreparably injured. *Id*. The Plaintiffs contend that Navient's inability to discern which loans it may legally collect on is not a valid reason not to enjoin it from its illegal collection activity. Opp. at 11. And they assert that the Court should not reverse course and stay the TRO relief simply because Navient incurs costs to pause collections. *Id*.

As to the third factor, whether the issuance of a stay will substantially injure other parties interested in the proceeding, the Plaintiffs respond that a stay of the TRO will substantially injure the Plaintiffs and Putative Class Members and is contrary to the public interest. Opp. at 12. They state that, and this and other courts have recognized, the mere act of repeatedly attempting to collect a discharged debt in and of itself creates irreparable injury. Opp. at 12 (citing *Diaz v. Heavy Action Recovery* (*In re Diaz*), 526 B.R. 685, 694 (Bankr. S.D. Tex. 2015); *Daniel v. Oaks* (*In re Daniel*), 98 B.R. 73, 76 (Bankr. M.D. Fla. 1989)). The Plaintiffs contend that they and the Putative Class Members will be substantially injured by a stay of the TRO, and the fact that their injury has been ongoing for years compounds – rather than diminishes – that injury. Opp. at 12.

And finally, as to the fourth factor, whether the public interest lies, the Plaintiffs assert that for many of these same reasons, the public interest does not weigh in favor of staying the TRO. *Id*. They state that the TRO protects borrowers who have received bankruptcy discharges

from debt collection activities that violate the "fresh start," and note that this "fresh start" is at the heart of the Bankruptcy Code. *Id*. The Plaintiffs point out that as this Court noted, "'the public interest is not served by the collection of a discharged debt, and the public interest is not disserved by enjoining that activity.'" Opp. at 12 (quoting TRO Decision at 65).

<u>Navient's Reply in Support of the Motion to Stay</u>

Navient replies that it has a strong likelihood of prevailing on the merits of its appeal. Reply at 3-4. It argues that the Court lacked authority to grant nationwide relief. Reply at 4. Navient asserts that the authority to do what the Bankruptcy Court did here – enforcing a contempt order on a nationwide basis – was wholly lacking because the power to address contemptuous conduct in violation of an injunction resides uniquely and solely in the court that issued the order that was allegedly violated. Reply at 4 (citing *Gunn v. Univ. Comm. to End the War in Vietnam*, 399 U.S. 383, 389 (1970)).

Navient also replies that the Plaintiffs do not accord sufficient weight to the fact that on May 4, 2022, the Second Circuit granted a petition for leave to file a direct appeal in *In re Bruce*, in order to address the specific question of whether a bankruptcy court "'can adjudicate nationwide class claims for contempt predicated on alleged violations of discharge injunctions issued by other courts nationwide.'" Reply at 6 (citing Opp. at 7). And it argues that the fact that the Second Circuit has elected to address the precise legal issue presented here suggests either that it would resolve the legal issue in a manner that would be favorable to Navient, or, at a minimum, that there remains enough ambiguity that lower courts in the Circuit should refrain from "jumping the gun" without further guidance. Reply at 6. Navient contends that either outcome reflects the current uncertainty of the law, and that this reinforces the need for a stay of the TRO. Reply at 6 (citing *Bd. of Trustees of the Michigan Reg'l Council of Carpenters Emp.*

*Benefit Fund v. Blue Cross Blue Shield of Michigan*, 2013 WL 12184249, at *1 (E.D. Mich. Aug. 13, 2013)).

And Navient replies that this Court lacked the authority to grant class-wide relief.  Reply at 6.  It asserts that although there is some authority permitting courts to exercise their discretion to grant class-wide injunctive relief before certifying a class, especially where the pre-certification junction is sought under Rule 23(b)(2), that discretion is not warranted here.  Reply at 7 (citing *LaForest*, 376 F.3d at 48).  In that context, Navient contends, absent class members can be bound by a judgment with no notice and no opportunity to opt out.

Here, by contrast, Navient argues that any certification order would have to be entered, if at all, under Rule 23(b)(3), since the Plaintiffs seek individual monetary awards for a large number of putative class members.  Reply at 7-8 (citing *Dukes,* 564 U.S. at 360-61).  In a Rule 23(b)(3) case, it states, absent class members must receive notice and an opportunity to exclude themselves from the class.  Reply at 8.  Navient asserts that by entering the Order before certifying the class and providing notice, the Court has put absent class members at substantial risk of harm without any meaningful opportunity to protect their interests.  *Id.*

In addition, Navient replies that it is likely to succeed on the merits of its appeal because the Court lacked authority to grant relief on "a record devoid of supporting evidence."  *Id.* According to Navient, a stay pending appeal is justified because of two critical errors in the Injunctive Order – first, the erroneous assumption that the "cost of attendance" under Section 523(a)(8)(B) can be mathematically determined; and second, the lack of an evidentiary basis to find that Navient is collecting or plans to collect on any loan amount disbursed to the borrower that exceeded the borrower's actual cost of attendance.  *Id.*

Navient asserts that Section 523(a)(8) requires courts to engage in a purpose-based analysis rather than the rigid and simplistic calculation that the Plaintiffs suggest, and it points to a decision in the Sixth Circuit that, it argues, is consistent with this view.  Reply at 9 (citing *Conti v. Arrowood Indemnity Co.* (*In re Conti*), 982 F.3d 445, 449 (6th Cir. 2020)).  Under this interpretation of Section 523(a)(8)(B), Navient states, it is likely to prevail since both Mr. Homaidan and Ms. Youssef certified to Navient in the applicable loan documents that their respective loans were within the cost of attendance and that they were borrowing the funds to pay qualified education expenses.  Reply at 9.

Alternatively, even under the Plaintiffs' construction of Section 523(a)(8)(B), Navient argues that the Plaintiffs' claims will still likely fail based on the current record, because the Plaintiffs have offered no evidence that it is actually collecting or will collect on any loan where the amount disbursed to the borrower exceeds the actual cost of attendance.  Reply at 10. According to Navient, the Plaintiffs cite to a few minor pieces of evidence that only suggest the possibility that Navient might have collected on discharged student loans.  *Id*.  Navient claims that the evidence cited by the Plaintiffs – based largely upon a brief remark made at the TRO Motion hearing – suggests only that that it has not yet affirmatively disproven these allegations. *Id*.  Navient argues that this is simply not the correct framework for analyzing the viability of Plaintiffs' requests for injunctive relief.  *Id*.  In this context, the Plaintiffs bear the burden of proving the likelihood of success of their claims, and they have not done so.  *Id*.

Navient further replies that it is likely to succeed on the merits of its appeal because this Court lacked the authority to grant relief after five years of unexplained delay.  *Id*.  It asserts that this delay was far too long to warrant any kind of injunctive relief, much less the sweeping and immediate relief granted to the Plaintiffs in the TRO.  Reply at 10 (citing *Weight Watchers, Int'l,*

*Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005)).  Navient contends that it is highly likely that the TRO will be vacated on appeal for this reason, especially considering that the Plaintiffs continue to refuse to offer any explanation for their delay.  Reply at 10.

Navient also replies that it has a likelihood of success on its appeal because the Court lacked authority to grant relief through a non-compliant order.  *Id*.  It states that Rule 65 requires that a restrained party be able to identify "the act or acts restrained or required" from the four corners of the injunction.  Reply at 11.  Navient asserts that the Plaintiffs appear to argue that the TRO complies with Rule 65 because Navient could *theoretically* determine which loans are subject to the Injunctive Order by drawing inferences from the Injunctive Order and evaluating voluminous records, but that is the precise "guesswork" that the four-corners requirement is designed to avoid so that an enjoined party can properly structure its compliance with the order. Reply at 11 (citing *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 415 (7th Cir. 2008); *Buckingham Corp. v. Karp*, 762 F.2d 257, 260 (2d Cir. 1985)).

Moreover, Navient contends that the Plaintiffs do not address the reality that the TRO commands Navient to do little more than "obey the law."  Reply at 11.  It asserts that the TRO precludes collection activities on loans that "exceed the cost of attendance," but provides no guidance whatsoever on how to determine whether a loan falls into that category and ignores that determining the cost of attendance remains a central merits question unresolved in this case.  *Id*. And it argues that because the Putative Class Members' individual discharge orders already have the force of law, the TRO "'do[es] not require [Navient] to do anything more than that already imposed by law.'"  Reply at 12 (quoting *Dublino v. McCarthy*, 2019 WL 2053829, at *20 (N.D.N.Y. May 9, 2019)).  Navient also asserts that, "'as the Second Circuit instructs, "an injunction must be more specific than a simple command that the defendant obey the law."'"

Reply at 12 (quoting *Harrington v. Racki* (*In re Bishop*), 578 B.R. 158, 167 (W.D.N.Y. 2017); and citing *Alderwoods*, 682 F.3d at 968).

Finally, Navient replies that without defining "acts to collect," the TRO does not tell it what it is required to do, or what it is prohibited from doing, in order to comply with its terms. Reply at 12 (citing *Patriot Homes*, 512 F.3d at 415). Navient states that without defining "acts to collect," the TRO is vague and requires it to guess at its meaning. Reply at 12.

As to the question of irreparable injury in the absence of a stay pending appeal, Navient replies that it will be irreparably injured absent a stay because, while it is labelled as a temporary restraint, the TRO is actually an affirmative command. *Id.* And because it is designed in a way that will prevent Navient from recovering the economic losses it will incur during the 14-day period of restraint, Navient will suffer an irreversible loss without a stay. *Id.*

Navient replies that here, it has shown that it will suffer injury which "'cannot be remedied'" absent a stay, in at least two ways. TRO at 13 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). First, Navient states, compliance with the Injunctive Order will require Navient to incur significant costs. Reply at 13. And second, according to Navient, the TRO will almost certainly cause many loans that are currently being repaid to slip into default. *Id.* According to Navient, although the precise dollar figure Navient will lose is unknown at this point, the harm Navient will clearly suffer in the absence of a stay is neither "'remote'" nor "'speculative;'" rather, it is concrete and imminent, and, therefore, sufficient to demonstrate irreparable harm. Reply at 14 (quoting *Grand River*, 481 F.3d at 66).

As to the question of substantial injury to other parties in the absence of a stay, Navient replies that a stay will not substantially injure other interested parties, for several reasons. Reply at 14. According to Navient, after waiting a half decade to seek a temporary restraining order

against Navient, the Plaintiffs effectively argue that any pause in the TRO would result in injury to them.  Reply at 15.  Navient responds that the Plaintiffs' years-long delays in seeking injunctive relief undercut any argument that the Plaintiffs *now* face injury if a stay is granted. Reply at 15 (citing *Citibank*, 756 F.2d at 276-77).  And it argues that Plaintiffs offer little argument as to why maintaining the status quo that predates the TRO would harm them, and they offer no "credible" risk of irreparable harm to borrowers that would result from a stay of the TRO, who will still retain all of their legal rights and remedies whether the TRO stands or is dissolved.  Reply at 15.

And finally, as to the question of the public interest, Navient replies that the public interest favors the issuance of a stay pending appeal.  *Id.*  Navient contends that whatever the public interest might be in seeing this particular putative class of debtors getting a "fresh start," there are stronger competing public interests in ensuring that bankruptcy discharge orders do not prejudice citizens without first providing them with notice and an opportunity to be heard, or promote dishonest borrowing practices – and here, it asserts, the TRO plainly violates both of these interests.  Reply at 16.

Navient notes that if the Court had deferred entry of the TRO until after certification of a class, the class members, under Rule 23(b)(3), would have been entitled to notice and an opportunity to exclude themselves from the class, thereby receiving the opportunity to protect themselves from the potential harm that the TRO may engender.  It argues that the TRO deprives absent class members of basic due process rights, and the public interest favors giving meaning to Rule 23's "procedural protections" for absent class members.  *Id.*

In addition, Navient replies that the public interest is not served by the TRO, which, according to Navient, effectively rewards borrowers for having submitted loan documents

containing material misrepresentations.  *Id*.  Any public interest that may lie in seeing this

putative class of debtors get a "fresh start" is not harmed by pausing the TRO until these issues

can be resolved on appeal.  Reply at 17.  Granting a stay does not prevent the debtors from

getting a fresh start, but rather ensures that debtors will not be subject to the confusion and

uncertainty of the TRO without notice and with the ultimate merits in this case undetermined.

*Id*.

### The Applicable Legal Standards

Bankruptcy Rule 8007 provides that "a party must move first in the bankruptcy court for .

. . a stay of a[n] . . . order . . . of the bankruptcy court pending appeal."  Fed. R. Bankr. P.

8007(a)(1)(A).  The Second Circuit has applied the *Nken v. Holder* standard when deciding

whether to grant a stay pending appeal:

> The factors relevant to granting a stay pending appeal are [1] the applicant's
> "strong showing that he is likely to succeed on the merits," [2] irreparable injury
> to the applicant in the absence of a stay, [3] substantial injury to the nonmoving
> party if a stay is issued, and [4] the public interest.

*Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken*, 556

U.S. at 434).

As the Second Circuit has observed, "[t]he first two factors are the most critical, but a

stay 'is not a matter of right, even if irreparable injury might otherwise result,' it is 'an exercise

of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the

circumstances justify an exercise of that discretion.'"  *de Blasio*, 973 F.3d at 48 (quoting *Nken*,

556 U.S. at 433-34).  *See In re Taub*, 470 B.R. 273, 277 (E.D.N.Y. 2012) (quoting *In re Smith*,

2009 WL 366577, at *2 (E.D.N.Y. Feb. 12, 2009)).

In addition, the party moving for a stay of an order pending appeal "'bears the burden of

proving that a stay should be granted, and stays pending an appeal are only granted in limited

circumstances.'" *In re Taub*, 470 B.R. at 277 (quoting *In re Smith*, 2009 WL 366577, at *2).

That is, the moving party bears the burden of proof and must show "'satisfactory' evidence on all

four" factors. *Bijan-Sara Corp. v. Fed. Deposit Ins. Corp.* (*In re Bijan-Sara Corp.*), 203 B.R.

358, 360 (B.A.P. 2d Cir. 1996) (quoting *In re Charles and Lillian Brown's Hotel, Inc.*, 93 B.R.

49, 53 (Bankr. S.D.N.Y. 1988)).

As to the first factor, whether the movant has demonstrated a strong showing that it is

likely to succeed on the merits, the Second Circuit has observed that "[t]he necessary 'level' or

'degree' of possibility of success will vary according to the court's assessment of the other [stay]

factors." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Washington Metro. Area*

*Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). As the Second

Circuit has found, a stay pending appeal may be granted where "the likelihood of success is not

high but the balance of hardships favors the applicant, . . . and . . . a stay may be granted where

the probability of success is 'high' and 'some injury' has been shown." *Mohammed*, 309 F.3d at

101 (quoting *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C.

Cir. 1985)). "'Simply stated, more of one excuses less of the other.'" *Mohammed*, 309 F.3d at

101 (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150,

153 (6th Cir. 1991)) (citation omitted).

In other words, "the test contemplates that a movant may be granted relief even if it

demonstrates something less than a likelihood of success on the merits of its appeal." *Sutherland*

*v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012). If the movant party "shows

'serious questions' going to the merits of its appeal as well as irreparable harm, the stay may be

granted if the balance of hardships 'tips decidedly' in favor of the moving party." *Sutherland*,

856 F. Supp. 2d at 640 (quoting *Citigroup v. Global Mkts., Inc. v. VCG Special Opportunities*

*Master Fund Ltd.*, 598 F.3d 30, 34-38 (2d Cir. 2010)).  "The stronger the showing that the movant makes as to its likelihood of success on the merits, the less compelling need be the movant's demonstration of harm."  *Sutherland*, 856 F. Supp. 2d at 641 (citing *Mohammed*, 309 F.3d at 107).  Viewed another way, "the Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed."  *ACC Bondholders Grp. v. Adelphia Comms. Corp.* (*In re Adelphia*), 361 B.R. 337, 347 (S.D.N.Y. 2007).  However, where a "likelihood of success [is] totally lacking, the aggregate assessment of the factors bearing on issuance of a stay pending appeal cannot possibly support a stay."  *de Blasio*, 973 F.3d at 49 (citing *United States v. Simcho*, 326 F. App'x 791, 794 (5th Cir. 2009)).

As to the second factor, whether the movant will suffer irreparable injury absent a stay, courts agree that the harm must be "'neither remote nor speculative, but actual and imminent.'" *In re Adelphia*, 361 B.R. at 347 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

As to the third factor, whether a party will suffer substantial injury if a stay is issued, the party seeking the stay must also establish that a stay will not substantially harm the non-moving party.  *Mohammed*, 309 F.3d at 100.  "In other words, the moving party must show that the balance of harms tips in favor of granting the stay."  *In re Adelphia*, 361 B.R. at 349.

And finally, as to the fourth factor, the question of the public interest, the movant must demonstrate that the public interest will not be adversely affected if a stay pending appeal is granted.  "This factor calls for the court to weigh the public interest in the matter, and to consider and balance the goal of efficient case administration and the right to a meaningful review on appeal."  *In re Taub*, 2010 WL 3911360, at *3 (Bankr. E.D.N.Y. Oct. 1, 2010) (citing *In re Adelphia*, 361 B.R. at 349).

## Discussion

### *Whether the Court Should Consider Whether Navient Has Made a Strong Showing that It Is Likely To Succeed on the Merits of its Appeal*

As an initial matter, the Court considers the Plaintiffs' argument that the relevant inquiry on this Motion to Stay is whether Navient has shown a likelihood of success on its request for leave to appeal the TRO.  Opp. at 3.  The Plaintiffs assert that where the order being appealed is interlocutory, the "'relevant "likelihood of success" looks to whether the district court will grant the Defendants leave to file an interlocutory appeal, not the possibility that the Defendants will succeed on the merits of that appeal.'"  Opp. at 3 (quoting *In re Frascella Enterprises, Inc.*, 388 B.R. at 623).

In considering whether to stay an interlocutory order pending appeal, courts in this circuit evaluate whether "'the stay applicant has made a strong showing that he is likely to succeed on the merits.'"  *Sutherland*, 856 F. Supp. 2d at 640 (quoting *Nken*, 556 U.S. at 434)).  As a consequence, the relevant inquiry here appears to be the merits of the appeal.  *See Sutherland*, 856 F. Supp. 2d at 640.  And "[t]he first two questions – addressing likely success and irreparable harm to the movant – are the most salient concerns."  *Sutherland*, 856 F. Supp. 2d at 641 (citing *Nken*, 556 U.S. at 434).  The Court will "accordingly address those first."  *Sutherland* 856 F. Supp. 2d at 641.

### *Whether Navient Has Made a Strong Showing that It Is Likely To Succeed on the Merits of its Appeal*

As described above, Navient has advanced several arguments in support of its position that it is likely to succeed on the merits of its appeal.  The Court addresses these arguments below.

<u>Whether this Court Lacked the Authority To Grant Nationwide Relief.</u>  The Court first considers Navient's argument that it lacks the authority to grant nationwide relief.  Motion to Stay at 6.  Navient asserts that the TRO grants nationwide relief, effectively enforcing discharge injunctions issued by bankruptcy judges outside of the Eastern District of New York.  *Id*.  And it contends that it is likely to prevail on its position that, to this extent, the TRO exceeds this Court's authority.  *Id*.  Navient asserts that when presented with similar questions of nationwide relief, the Fifth, Seventh, Ninth, and Eleventh Circuits have held that a bankruptcy court does *not* have the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits.  Motion to Stay at 6 (citing *Crocker*, 941 F.3d at 216-17; *Cox*, 239 F.3d at 919-17; *Walls*, 276 F.3d at 509-10; *Alderwoods*, 682 F.3d at 970).

Navient also contends that the Second Circuit is likely to agree with the other circuits that have addressed this issue.  Motion to Stay at 6 (citing *In re Belton,* 961 F.3d at 617; *Anderson,* 884 F.3d at 390-91).  And it notes that this issue is presently before the Second Circuit in *In re Bruce*.  Motion to Stay at 6-7.  It argues that this authority, and the Supreme Court's decision in *Taggart*, show that it is likely to succeed on the merits of its argument that this Court's TRO impermissibly provides relief to debtors who received bankruptcy discharges outside of this District.  Motion to Stay at 7.

In response, the Plaintiffs point to this Court's findings that it possesses the authority to issue the TRO on behalf of a nationwide class.  Opp. at 6.  They acknowledge that Navient cites the Second Circuit's decision to permit a direct appeal in *In re Bruce* as evidence "that there exist substantial grounds on which to question this Court's view of its authority to address alleged discharge violations from around the country."  Opp. at 7 (quoting Motion to Stay at 7).  But they note that the decision to allow a direct appeal is not the same as a decision to rule in

Navient's favor.  Opp. at 7.  And they assert that this Court has already concluded that it has the authority to enter nationwide relief as set forth in the TRO, relying on Second Circuit authority, and unless the Second Circuit rules otherwise, it should do so again.  *Id.*

As the Supreme Court has stated, "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction."  *Thomas v. General Motors Corp.*, 522 U.S. 222, 236 (1998).  And as the Second Circuit has observed, "[v]iolation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred."  *Striller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963).  But as this Court observed in *In re Golden*, "this is a starting point, and does not answer the question of whether the issuing court may also entertain a request for *broader* relief, or whether *only* the issuing court may determine whether a violation has occurred."  *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 896, 918 (Bankr. E.D.N.Y. 2021) (citing *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 627 B.R. 6, 23 (Bankr. E.D.N.Y. 2021)) (emphasis in original).

First, in examining the statutory bankruptcy discharge injunction, this Court has observed that "it is created by Bankruptcy Code Section 524(a), which states that it 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.'"  *In re Golden*, 630 B.R. at 918 (quoting 11 U.S.C. § 524(a)(2)).  "'[T]he bankruptcy discharge order is a form, a national form, which is issued in every case when there is, in fact, a discharge.  By statute, in [Section] 524(a)(2), it operates as an injunction . . . .  It is not a handcrafted order.'"  *In re Golden*, 630 B.R. at 918 (quoting *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL 3608891, at *8 (Bankr. S.D.N.Y. July 22, 2014)).  That is the "'fundamental difference between [a] normal injunction issued by a court after considering the factors required to be applied in

issuing an injunction order and the injunction created by Congress in [Bankruptcy Code] Section 524(a) to support the discharge under Section 727.'"  *In re Golden*, 630 B.R. at 918-19 (quoting *In re Haynes*, 2014 WL 3608891, at *8).  *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445-46 (1st Cir. 2000) (holding that "when dealing, as here, with violation of a purely statutory order," such as the discharge injunction imposed by Section 524, it is not necessary to return to "the court that issued the original discharge order").

Navient points to the Fifth Circuit's decision in *Crocker* and the Eleventh Circuit's decision in *Alderwoods*, and other decisions, and argues that "a bankruptcy court does not have the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits."  Motion to Stay at 6.

The court in *Alderwoods* noted that "the discharge injunction itself is like an All Writs Act injunction issued 'in aid of' a court's jurisdiction . . . in that the discharge injunction is 'in aid of' the purpose of the Bankruptcy Code."  *Alderwoods*, 682 F.3d at 972 n.24 (quoting 28 U.S.C. § 1651).  But, as this Court concluded in *In re Golden*, the Bankruptcy Code provides an additional source of authority to bankruptcy courts, distinct from the All Writs Act – and this is Bankruptcy Code Section 105(a).  *In re Golden*, 630 B.R. at 919.  Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  And these "provisions of this title" include the statutory bankruptcy discharge that is set forth in Bankruptcy Code Section 524(a).

Here, as this Court found in *In re Golden* and elsewhere, the bankruptcy court's decision in *In re Haynes* provides helpful guidance.  Considering first the All Writs Act, the court observed that "[v]ery clearly, that statute is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be

enforced." *In re Haynes*, 2014 WL 3608891, at *8.  The court went on to observe that, by

contrast, Section 105(a) "is quite different":

> Although modeled on the All Writs Act, . . . [Section 105] does not refer to aiding
> the Court's own jurisdiction. . . .  [T]he legislative history of this section, in H.R.
> Rep. 95-595, states that, among other things, Section 105 is intended to 'cover
> any powers traditionally exercised by a bankruptcy court that are *not*
> encompassed by the all writs statute.'  (Emphasis added.)  The statutes are
> different, in other words.

*Id.*

> The *Haynes* court continued:

> I believe it is a mistake to rely upon the All Writs Act cases to hold that a
> bankruptcy court has power under the applicable statute only to enforce its own
> orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727
> . . . in particular.

*Id.*  "That is, the authority granted to bankruptcy courts by Section 105 is – explicitly and by

design – broader than the authority granted to federal courts in the All Writs Act."  *In re Golden*,

630 B.R. at 920 (citing *Ajasa*, 627 B.R. at 24).

Other courts have similarly concluded that the "plain meaning" of Section 105(a) gives

broad authority to bankruptcy courts to "'issue *any* order . . . necessary to carry out the

provisions of the bankruptcy code.'"  *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.* (*In re

Terrebonne Fuel & Lube, Inc.*), 108 F.3d 609, 613 (5th Cir. 1997) (quoting *Burd v. Walters* (*In

re Walters*), 868 F.2d 665, 669 (4th Cir. 1989)) (emphasis added).  *See, e.g.*, *Rodriguez v.

Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 458 (Bankr. S.D. Tex. 2008)

(stating that "Section 105(a) plainly states that the court can issue any 'judgment' necessary or

appropriate to carry out the requirements of the bankruptcy code.  Any judgment would include

any remedy available in a private cause of action.").  *See also In re Jewish Mem'l Hosp.*, 13 B.R.

417, 419 (Bankr. S.D.N.Y. 1981) (Lifland, B.J.) (citing *Young v. Higbee Co.*, 324 U.S. 204, 214

(1945)) (observing that "[i]t is well established that the Bankruptcy Court is a court of equity and that its proceedings are inherently proceedings in equity.").

A third piece of the picture is the source of the Court's jurisdiction, including its subject matter jurisdiction. Here, the Plaintiffs' claims arise under the Bankruptcy Code, and specifically, under Bankruptcy Code Sections 727, 524(a)(2), and 105(a). *See In re Golden*, 630 B.R. at 920. "As a consequence, for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's subject matter jurisdiction, because the claim is a 'civil proceeding[] arising under title 11.'" *In re Golden*, 630 B.R. at 920 (quoting 28 U.S.C. § 1334(b)). As this Court has stated, "'there [are] few matters as "core" to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code.'" *In re Golden*, 630 B.R. at 920 (quoting *In re Haynes*, 2014 WL 3608891, at *7). "[T]he question[] of . . . jurisdiction to grant relief" and the question of subject matter jurisdiction are intertwined. *In re Golden*, 630 B.R. at 920. "It is axiomatic that this Court has subject matter jurisdiction to consider the discharge injunction violation claims" of Mr. Homaidan and Ms. Youssef as the named plaintiffs, who filed Chapter 7 bankruptcy cases in this District, because those are core matters. *Id.*

Notably, other courts have reached similar conclusions, and have certified class actions, including nationwide class actions, to address a range of bankruptcy claims where the class as certified extended outside of the bankruptcy court's home district. And courts have correctly observed that where jurisdiction is lacking, they are required – even *sua sponte* – to dismiss the case. *See, e.g., In re C.R. Davidson Co.*, 232 B.R. 549, 551 (B.A.P. 2d Cir. 1999) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (observing that "[w]hen such jurisdiction is lacking, and although no party has raised the issue, we have the duty to

dismiss sua sponte."). *See also Receivables Exchange, LLC v. Hotton*, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (citations omitted) (stating that "when a complaint fails to plead subject matter jurisdiction, the Court is obligated to dismiss it *sua sponte*.").

And this Court and others "have similarly recognized that the jurisdiction to enter a nationwide remedy is part of the court's jurisdiction over the putative class." *In re Golden*, 630 B.R. at 922 (first citing *Vick v. NCO Fin. Sys., Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 1328830 (E.D. Tex. Mar. 30, 2010); and then citing *Rojas v. Citi Corp. Trust Bank FSB* (*In re Rojas*), 2009 WL 2496807, at *10 (Bankr. S.D. Tex. Aug. 12, 2009)). For example, in *Sheffield v. HomeSide Lending, Inc.* (*In re Sheffield*), 281 B.R. 24 (Bankr. S.D. Ala. 2000), the bankruptcy court certified a nationwide class with respect to claims arising from a creditor's failure to disclose post-petition, pre-confirmation attorney fees in its proofs of claim. *See In re Noletto*, 281 B.R. at 46-48 (same); *Dean v. First Union Mortg. Corp.* (*In re Harris*), 280 B.R. 876 (Bankr. S.D. Ala. 2001) (same).

"Bankruptcy courts have also noted, in different contexts, that in the appropriate circumstances, the certification of a nationwide class may be permitted, particularly when the relief sought is not solely *in rem* in nature." *In re Golden*, 630 B.R. at 921. For example, in *Chiang v. Neilson* (*In re Death Row Records, Inc.*), 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012), the Ninth Circuit Bankruptcy Appellate Panel permitted certification of a nationwide class as to "turnover, declaratory and injunctive relief claims" noting that they "are not solely *in rem* claims." *In re Death Row Records, Inc.*, 2012 WL 952292, at *12.

As this Court and others have observed:

"[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy court *strictly to in rem matters involving property of the debtor or property of the estate* and not as a restriction on nationwide jurisdiction

> over claims for violation of provisions of the Code, other federal statutory
> provisions, or other remedies that might be available to debtors and trustees."

*In re Golden*, 630 B.R. at 921 (quoting *In re Krause*, 414 B.R. 243 at 255-56).  And as this Court

has previously noted, "'[Judiciary Code] Section 1334(b) grants subject matter jurisdiction over

any debtor claims that fall within the court's "related to," "arising in," or "arising under"

jurisdiction, regardless of where the claimant's bankruptcy petition was filed.'"  *In re Golden*,

630 B.R. at 921 (quoting *Cano v. GMAC Mortg. Corp.* (*In re Cano*), 410 B.R. 506, 551 (Bankr.

S.D. Tex. 2009)).

To be sure, in many of these nationwide class actions, the relief sought did not

necessarily call for the court to address a discharge order entered outside of its district.  Instead,

these cases addressed other matters that are fundamental to the bankruptcy system, including the

disclosure of fees in a proof of claim and other alleged violations of the Bankruptcy Code and

other statutes.  But in each circumstance, the court concluded that a nationwide class was both

possible and appropriate. As stated by this Court and others, "'this conclusion advances the goals

and purpose of the class action mechanism.  Class actions promote efficiency and economy in

litigation.  Their design permits numerous parties to collectively litigate claims that might be

uneconomical to litigate individually.'"  *In re Golden*, 630 B.R. at 921-22 (quoting *Bank United

v. Manley*, 273 B.R. 229, 249-50 (N.D. Ala. 2001)).

Moreover, "'if bankruptcy court jurisdiction is not permitted over a class action of

debtors, Rule 7023 is virtually read out of the rules.  This would ascribe to Congress the intent to

categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a

clear indication of such intent.'"  *In re Golden*, 630 B.R. at 922 (quoting *Wilborn v. Wells Fargo

Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 754 (5th Cir. 2010)).  As one court observed in

denying a motion to dismiss a putative nationwide class action asserting violations of the

statutory bankruptcy discharge, "[t]he Court has the power to provide all of the relief requested." *Vick*, 2010 WL 1330637, at *4.

And finally, nationwide settlements of class actions asserting statutory bankruptcy discharge injunction violations have been approved by bankruptcy and district courts in several cases within the Second Circuit.  In such circumstances, again, the court necessarily concluded that it could enter an order that, in effect, provided for relief outside of its own district, including with respect to an asserted violation of a discharge order entered in another district by another court.  *See Belton v. GE Capital Retail Bank* (*In re Belton*), 21-cv-09492, at ECF No. 17 (S.D.N.Y. Feb. 10, 2022); *Ajasa v. Wells Fargo Bank, N.A.*, 21-cv-07085-ENV, at ECF No. 18 (E.D.N.Y. April 25, 2022); *Anderson v. Capital One Bank (USA), N.A.*, 19-cv-03981-NSR, at ECF No. 20 (S.D.N.Y. Sept. 11, 2019); *Anderson v. Capital One Bank (USA), N.A.*, 15-08342-RDD, at ECF No. 99 (Bankr. S.D.N.Y. Jan. 7, 2021); *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-03307-VB, at ECF No. 19 (S.D.N.Y. Aug. 24, 2018); *Haynes v. Chase Bank U.S.A., N.A.*, 13-08370-RDD, at ECF No. 133 (Bankr. S.D.N.Y. Sept. 27, 2018); *Echevarria v. Bank of America Corp.*, 17-cv-08026-VB, at ECF No. 23 (S.D.N.Y. Mar. 14, 2018); *Echevarria v. Bank of America Corp.*, 14-08216-RDD, at ECF No. 121 (Bankr. S.D.N.Y. Mar. 15, 2018).  While each of these cases ultimately reached a consensual outcome, that consensus cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction to enter a remedy, where it is otherwise lacking.  As the Second Circuit has observed, "[j]urisdiction cannot be created by the consent of the parties."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal citations omitted).

In each of these nationwide class actions entertained by the bankruptcy and district courts, the court exercised jurisdiction over discharge orders entered by other courts in other

districts around the country.  As a result, "this Court's subject matter jurisdiction to . . . enter a remedy in this case[] should not be limited by the scope of that request," including nationwide relief for the putative class.  *In re Golden*, 630 B.R. at 923.  That is, there is no limitation through "any shortcoming in this Court's jurisdiction to consider, and if appropriate to enter," a remedy applicable to the putative nationwide class.  *Id.*

Next, the Court considers whether – as Navient argues – the Second Circuit's observation in *In re Belton* compels the conclusion that any action for contempt of a bankruptcy discharge injunction must be heard by the court that issued the discharge.  Motion to Stay at 6.

In *In re Belton*, the Second Circuit wrote:

> [W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order.  Most circuits that have considered the issue have rejected the notion.  *See Crocker*, 941 F.3d at 216-17 ("We adopt the language of [*Anderson*] that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'"); *Alderwoods Grp.*, 682 F.3d at 970 ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Walls*, 276 F.3d at 509-10 (same); *Cox*, 239 F.3d at 916-17 (same); *but see Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) (holding that a debtor is not required to "bring her claims in the court that issued the original discharge order").  And those cases are buttressed by the Supreme Court's recent decision in *Taggart*, which made clear that the contempt powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions."  139 S. Ct. at 1802.

*In re Belton*, 961 F.3d at 617-18.

In *In re Belton*, the Second Circuit addressed the question of whether an asserted violation of the statutory bankruptcy discharge injunction was within the scope of a pre-dispute arbitration agreement.  The court affirmed the district and bankruptcy court's conclusion that "the alleged violation of a bankruptcy court discharge order" is not an arbitrable dispute because, as it held in *Anderson*, "arbitration was in 'inherent conflict' with enforcement of a discharge injunction."  *In re Belton*, 961 F.3d at 615 (quoting *Anderson*, 884 F.3d at 390).  But there, as in

*Anderson*, the issue before the court was not the scope of a bankruptcy court's subject matter jurisdiction over a nationwide class, or the question of nationwide relief.  And recognizing this, the *Belton* court stated that "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *Anderson* should be read as a tacit endorsement of such."  *In re Belton*, 961 F.3d at 617.

As this Court recognized in *In re Golden*, *Anderson* addressed the question of the arbitrability of a discharge order violation in "the context of bankruptcy courts and the bankruptcy system, not solely a single bankruptcy court or district.  The court did not address, and did not need to address, whether the issuing judge, or district, or circuit set the boundary for the bankruptcy court's jurisdiction in the matter before it."  *In re Golden*, 630 B.R. at 925. Similarly, and again as this Court found in *In re Golden*, *In re Belton* addressed the same issue, and found that "'the alleged violation of a bankruptcy court discharge order' is not an arbitrable dispute because, as the *Anderson* court found, 'arbitration was in "inherent conflict" with enforcement of a discharge injunction.'"  *In re Golden*, 630 B.R. at 925 (quoting *In re Belton*, 961 F.3d at 615).

Further, here, "these claims 'arise under' the Bankruptcy Code, are separate and distinct from any *in rem* basis for the bankruptcy court's jurisdiction, and go to the heart of one of the fundamental protections of the bankruptcy system – that is, the debtor's discharge and opportunity for a fresh start."  *In re Golden*, 630 B.R. at 926.  As the court in *In re Haynes* explained:

> While it is true that a substantial portion of bankruptcy jurisdiction is *in rem*, that is, jurisdiction over the debtor's estate wherever located, it is not the only basis for bankruptcy jurisdiction, which, under 28 U.S.C. Section 1334(b), extends to "all civil proceedings arising under title 11," including under 11 U.S.C. Sections 524

and 727.  In fact, . . . these fundamental, if not the fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or *in rem* jurisdiction.  They have everything to do with prohibiting the collection of *in personam* debts that, before the bankruptcy discharge, were owed by the debtor.

*In re Haynes*, 2014 WL 3608891, at *6.

Mr. Homaidan and Ms. Youssef seek, for themselves and for all Putative Class Members, neither more nor less than the full benefit of their statutory bankruptcy discharges.  "And under Bankruptcy Code Section 524(a), the discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor.*'"  *In re Golden*, 630 B.R. at 927 (quoting 11 U.S.C. § 524(a)(2)).  Their claims do not concern "'property of the estate, as of the commencement of the case,' or 'property of the estate,' as addressed by Judicial Code Section 1334(e)(1)."  *In re Golden*, 630 B.R. at 927.

And a violation of the Plaintiffs' and Putative Class Members statutory bankruptcy discharges is, of course, the violation of a statute.  As the Seventh Circuit recognized, "Section 524(a)(2) . . . enjoins . . . collection[,] . . . so the creditor who attempts to collect a discharged debt is violating . . . a statute."  *Cox*, 239 F.3d at 915.  As this Court has noted, "Bankruptcy Code Section 105 grants the bankruptcy court power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"  *In re Golden*, 630 B.R. at 914 (quoting 11 U.S.C. § 105).  As the court in *In re Haynes* recognized, Section 105 permits a bankruptcy court to enforce "the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular."  *In re Haynes*, 2014 WL 3608891, at *8.  A bankruptcy court "is well within its authority if it exercises its equitable powers to enforce a specific code provision."  *Vick*, 2010 WL 1330637, at *3 (citing *In re Rodriguez*, 396 B.R. at 455-60).

Finally, the Court considers the Supreme Court's ruling in *Taggart*.  In *Taggart*, the Supreme Court observed that "the statutes specifying that a discharge order 'operates as an injunction,' and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, bring with them the 'old soil' that has long governed how courts enforce injunctions."  *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C. § 524(a)(2) and § 105(a)).  And it found that "as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction."  *Taggart*, 139 S. Ct. at 1801. As the Supreme Court explained, this "old soil" is the source of "traditional standards" as to when a finding of civil contempt may lie, and leads to the conclusion that a court may hold a creditor in civil contempt for violating a debtor's discharge if there is "no fair ground of doubt as to whether the order barred the creditor's conduct."  *Taggart*, 139 S. Ct. at 1799.

That is, *Taggart* addressed the nature of the creditor's conduct and the scope of the debtor's discharge, and held that a finding of civil contempt may issue only where the question of the creditor's violation is decisively answered in the affirmative – where there is "no fair ground of doubt" as to the existence of the violation.  And the "old soil" informs the question of intent, not the question of whether a bankruptcy court has jurisdiction to grant injunctive relief applicable to a putative nationwide class.  While *Taggart* surely has a role to play in determining a creditor's liability, it simply does not address whether this question may be considered by a court solely in an individual debtor's case, or in a district-wide class, or, as here, in a putative nationwide class.  *In re Golden*, 630 B.R. at 927.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that this Court lacked the authority to grant nationwide relief.

Whether the Court Lacked the Authority To Enter Class-Wide Relief.  The Court next considers Navient's argument that it is likely to succeed on the merits of its appeal because the Court lacked the authority to enter class-wide relief.  Motion to Stay at 7.

Navient notes that while a motion for class certification is pending, no class has been certified.  *Id*.  As a consequence, it asserts, the TRO prevents it from collection activities directed at borrowers who are "strangers to this case."  *Id*.  Navient argues that it is likely to succeed on the merits of this argument, because this Court erred in enjoining it on a class-wide basis before determining whether a class could ever be certified.  Motion to Stay at 8.  And it states that to the extent that courts have discretion in some circumstances to grant class-wide injunctive relief before a class is certified, that discretion should not be exercised here, both because the Plaintiffs have not shown that a class should be certified, and because the Plaintiffs waited far too long to seek the TRO.  *Id*.

Navient also asserts that the authority cited by the Plaintiffs in support of their request for injunctive relief arises in the context of class actions where certification was sought under Rule 23(b)(2), which allows for class certification when final injunctive relief is appropriate for the entire class.  *Id*.  And here, by contrast, Navient states that any class would need to be certified under Rule 23(b)(3), because the Plaintiffs seek individual monetary awards for potentially thousands of putative class members.  Motion to Stay at 8 (citing *Dukes,* 564 U.S. at 360-61).  It asserts that in a Rule 23(b)(3) case, absent class members are entitled to notice and an opportunity to exclude themselves from the class.  Motion to Stay at 8.  It contends that this

renders class-wide relief before a class is certified particularly inappropriate here.  Motion to Stay at 9.

And Navient argues that by entering the TRO before certifying the class and providing notice, this Court has put absent class members at substantial risk of harm without any meaningful opportunity to protect their interests.  *Id*.  Finally, Navient states that it is certainly inappropriate, and likely unconstitutional, to enter class-wide relief in a Rule 23(b)(3) case such as this.  *Id*.

The Plaintiffs respond that Navient's argument that the Court lacked authority to grant class-wide relief prior to certification is not compelling.  Opp. at 7.  They observe that they showed, and the Court agreed, that without a temporary restraining order, the Defendants would continue their illegal collection efforts against Ms. Youssef and the putative class.  Opp. at 8.

Here, this Court is satisfied that an adequate basis was established to consider the question of temporary injunctive relief on behalf of the Putative Class members.  As the district court found in *Ligon v. City of New York*, the facts and circumstances of a particular case may warrant the entry of a preliminary injunction on behalf of a putative class before a class is formally certified.  In *Ligon*, the putative class was "'comprised of individuals who have been or are at risk of being subjected to the New York City Police Department's practice of stopping individuals outside of buildings enrolled in Operation Clean Halls in the Bronx on suspicion of trespassing inside those buildings.'"  *Ligon v. City of New York*, 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013).  The court concluded that class certification was not a prerequisite to granting injunctive relief to the putative class, and stated that "'[i]t is well established that "[c]ertain circumstances give rise to the need for prompt injunctive relief for a named plaintiff or on behalf of a class" and that the "court may . . . award a broad preliminary injunction, without a formal

class ruling, under its general equity powers.'"  *Ligon*, 925 F. Supp. 2d at 539 (quoting *Strouchler v. Shah*, 891 F. Supp. 2d 504, 516-17 (S.D.N.Y. 2012)).

Here, as in *Ligon*, the record shows that circumstances are present that warrant "prompt injunctive relief for a named plaintiff . . . on behalf of a class."  *Ligon*, 925 F. Supp. 2d at 539. The Plaintiffs have demonstrated a "likely irreparable harm on behalf of the putative class." *Ligon*, 925 F. Supp. 2d at 539 (citing *Strouchler*, 891 F. Supp. 2d at 515).  In particular, the Plaintiffs have shown that Ms. Youssef and each of the Putative Class Members that holds a private Tuition Answer Loan that exceeds the cost of attendance and has an outstanding balance is likely to be subjected to continued collection activities by Navient in violation of their bankruptcy discharges.  And there is nothing in the record to show, or even suggest, that Navient will stop, or even pause, those collection activities in the absence of a direction from this Court.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that this Court lacked the authority to enter class-wide relief.

<u>Whether the Court Lacked the Authority To Grant Relief Based on Deficiencies in the Evidence.</u>  The Court next considers Navient's argument that it is likely to succeed on the merits of its appeal because the Court lacked authority to grant relief on a record that was, it asserts, "devoid of supporting evidence."  Motion to Stay at 9.

Navient argues that because the TRO materially alters the status quo that has existed since this case was filed some five years ago, the Plaintiffs must show a "clear" or "substantial" likelihood of success on the merits in order to obtain temporary injunctive relief.  Motion to Stay at 9 (citing *Bronx Household of Faith*, 331 F.3d at 349).

With this standard in mind, Navient argues that since the Plaintiffs sought class-wide relief, and since their claim depends on proof that Navient is collecting on loans that exceed the cost of attendance, they should have been required to establish first, the legal proposition that it is unlawful to collect on a loan that exceeds the cost of attendance; and second, the factual proposition that Navient is engaged in such unlawful collection activity on the loans that are encompassed by the TRO.  Motion to Stay at 9-10.  And Navient asserts that the Plaintiffs did not make either showing.  Motion to Stay at 10.

As to the legal proposition, Navient argues that it is likely to prevail on the merits of its appeal because both Mr. Homaidan and Ms. Youssef certified to Navient in their loan documents that the loans were within the cost of attendance and would be used to pay qualified education expenses.  *Id*.  It states that these certifications show why and for what purpose the debts were "incurred," and therefore satisfy the test for nondischargeability established by IRC Section 221(d)(1) and the Bankruptcy Code.  Motion to Stay at 11.

As to the factual proposition, Navient contends that it is likely to prevail as well, because the Plaintiffs offered no competent evidence to show that Navient is in fact collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance.  *Id*.  At most, it argues, the Plaintiffs demonstrated that Mr. Homaidan and Ms. Youssef received Tuition Answer Loans in amounts that may have exceeded average, estimated cost-of-attendance figures for the relevant academic years reported by IPEDS.  *Id*.

And Navient asserts that Section 523(a)(8) requires the court to engage in a purpose-based analysis, looking to the "initial purpose of the . . . loan, rather than their actual uses," to

determine whether the loan comes within the scope of Section 523(a)(8)(B).  *In re Conti*, 982 F.3d at 449.

The Plaintiffs respond that the plain language of Bankruptcy Code Section 523(a)(8)(B) excepts from discharge "'any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code[.]'"  Opp. at 8 (quoting 11 U.S.C. § 523(a)(8)(B)).  They note that IRC Section 221(d)(1) defines "'qualified education loan'" as "'any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses'" which is defined in Section 221(d)(2) as "'the cost of attendance'" at an eligible educational institution, minus scholarships, allowances, or other payments.  Opp. at 8-9.  Thus, the Plaintiffs argue that the Court had a sufficient basis to conclude that the Tuition Answer Loans at issue that exceed the cost of attendance are not excepted from discharge, and that the borrower certifications that Navient relies on are not determinative.  Opp. at 9.

The Plaintiffs also address Navient's argument that they offered "'literally no competent evidence that Navient is in fact collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance.'"  Motion to Stay at 11.  They point out that at the hearing on the TRO Motion, Navient acknowledged that there "'is a potential that there are some loans out there where the amount of the loan exceeded the cost of attendance.'"  Opp. at 9 (quoting TRO Decision at 30).  And they note that Navient's corporate representative has repeatedly testified that Navient makes no effort to determine whether any of the loans at issue were within the cost of attendance.  Opp. at 9 (citing Plaintiffs' Mem. of Law in Support of Motion for Partial Summ. J.,  ECF No. 170 at 7-9).  They argue that it is the creditor that bears the burden of proving that a loan is nondischargeable, and that Navient has failed to do here.  Opp. at 10.

The starting point for considering whether the record upon which the Court entered the TRO was "devoid of evidence" may well begin with a review of the elements of the Plaintiffs' claim.  In order adequately to state a claim for violation of the statutory bankruptcy discharge injunction, the Plaintiffs must allege that they received a discharge, the Defendants received notice of the discharge, and the Defendants intended the acts that violated the discharge.  *See Motichko v. Premium Asset Recovery Corp.* (*In re Motichko*), 395 B.R. 25, 31 (Bankr. N.D. Oh. 2008).  For a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt.  *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018).

Much of the record relating to these matters appears to be undisputed.  As to Mr. Homaidan, as Navient pointed out and the Plaintiffs did not dispute, any order enjoining collection activities would simply not be applicable to him – or to any other Putative Class Member whose loan balance has been satisfied in full.  *See* Plaintiffs' Reply Mem. of Law in Further Support of TRO Motion, ECF No. 321, at 6 (stating that "[w]ith regard to Plaintiff Homaidan, it is true that he does not need injunctive relief").  And as to Ms. Youssef and similarly situated Putative Class Members, the parties appear not to dispute that these individuals took out private Tuition Answer Loans or other private loans owned or serviced by the Defendants, that they received a discharge in their Chapter 7 bankruptcy cases, that the Defendants received notice of those discharges, and that the Defendants sought to collect on their loans.

What is disputed, however, is whether the private loans at issue are within the scope of the Plaintiffs' and the Putative Class Members' dischargeable debt.  *See In re Eppolito*, 583 B.R. at 826.  The Plaintiffs argue that the plain language of Section 523(a)(8)(B) excepts from discharge "any other educational loan that is a qualified education loan, as defined in section

221(d)(1) of the Internal Revenue Code[.]" 11 U.S.C. § 523(a)(8)(B). Section 221(d)(1) defines

"qualified education loan" as "any indebtedness incurred by the taxpayer solely to pay qualified

higher education expenses" which is defined in Section 221(d)(2) as "the cost of attendance" at

an eligible educational institution, minus scholarships, allowances, or other payments.

In *Homaidan*, the Second Circuit concluded that private student loans do not qualify for

an exclusion from discharge under Section 523(a)(8)(A)(ii), because these loans are not an

"educational benefit" under that Section. As the court explained, Section 523(a)(8)(A)(ii)

"covers scholarships, stipends, and conditional education grants; and § 523(a)(8)(B) covers

private loans made to individuals attending eligible schools for certain qualified expenses."

*Homaidan*, 3 F.4th at 604. And as the court observed:

> Navient's broad reading – under which any loan is nondischargeable under
> [Section] 523(a)(8)(A)(ii) if it was used to further one's education – would draw
> virtually all student loans within the scope of [Section] 523(a)(8)(A)(ii). That
> construction provides too much. If it were adopted, the other subsections of
> [Section] 523(a)(8) – both of which delineate specific categories of
> nondischargeable educational debt – would be swallowed up. . . . The evolution of
> [Section] 523(a)(8) confirms that it is not a catch-all for educational loans.

*Homaidan*, 3 F.4th at 602-03.

That is, and as the Second Circuit has explained, Section 523(a)(8)(A)(ii) does not have a

role to play in the analysis of the dischargeability of the Putative Class Members' private Tuition

Answer Loans or other private loans, because "by constructing a statute with three distinct

subsections, 'Congress intended each [one] to have a distinct function and to target different

kinds of debt[].'" *Homaidan*, 3 F.4th at 603 (quoting *Inst. of Imaginal Stud. v. Christoff* (*In re*

*Christoff*), 527 B.R. 624, 634 (9th Cir. B.A.P. 2015)).

Furthermore, Section 523(a)(8)(B) plainly excludes certain private student loans –

described as "qualified education loan[s], as defined in [Internal Revenue Code] section

221(d)(1)," from the scope of a debtor's bankruptcy discharge – but only where specified criteria are met. These criteria include that the student borrower attended or intended to attend a Title IV institution and received a private loan that is within the cost of attendance at that institution as defined by Internal Revenue Code Section 221(d). But just as plainly, and as a matter of logic, if those criteria are *not* met, then the exclusion from discharge does *not* apply.

As a consequence, the Plaintiffs have shown that to the extent their private student loans, including private Tuition Answer Loans, do not meet the criteria of Section 523(a)(8)(B), they are within the scope of their bankruptcy discharges. And they have shown this with respect to their private Tuition Answer Loans and those of similarly situated Putative Class Members – students who attended or intended to attend Title IV institutions and received private loans owned or serviced by the Defendants that exceeded the cost of attendance at such institutions as defined by Internal Revenue Code Section 221(d), who obtained bankruptcy discharges after January 1, 2005, who have not reaffirmed their loans, and who have been, and may continue to be, subjected to the Defendants' actions to collect on their loans – because by the very terms of the Plaintiffs' claims and class definition, these private student loans that exceed the cost of attendance are outside the scope of Section 523(a)(8)(B)'s exclusion from discharge. *See* Class Cert. Mot. at 15. *See also Homaidan*, 3 F.4th at 605.

As to the question of whether certifications by the Plaintiffs and the Putative Class Members in their loan documentation that their loans were within the cost of attendance and would be used only for qualified educational expenses establish that these loans are nondischargeable, Navient's argument is not persuasive, for several reasons.

At the outset, Navient argues that the "Plaintiffs offered literally no competent evidence that Navient is in fact collecting or attempting to collect on any loan where the amount disbursed

to the borrower exceeded the borrower's actual cost of attendance."  Motion to Stay at 11.  And it points again to the certifications signed by each borrower as evidence in support of its view. Motion to Stay at 110.

But courts agree that such standardized "boilerplate" certifications or statements by borrowers are not enforceable in bankruptcy for this purpose.  *See, e.g.*, *Tamasco v. Nicholls* (*In re Nicholls*), 2010 WL 5128627, at *2 (Bankr. E.D.N.Y. Dec. 10, 2010) (agreeing that "prepetition waivers of dischargeability are unenforceable as against public policy"); *Hayhoe v. Cole* (*In re Cole*), 226 B.R. 647, 651 (B.A.P. 9th Cir. 1998) (holding that a stipulated judgment in which a chapter 7 debtor agreed that a debt would be nondischargeable under Section 523(a)(2) was an impermissible waiver of the bankruptcy discharge); *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779-80 (Bankr. N.D.N.Y. 2008) (stating that "pre-petition waivers of discharge are fundamentally void and offend the public policy of promoting a fresh start for individuals").

In addition, Navient argues, in substance, that at most the Plaintiffs have shown that Mr. Homaidan and Ms. Youssef received Tuition Answer Loans in amounts that may have exceeded average, estimated cost-of-attendance figures for the relevant academic years as reported by IPEDS.  At the same time, Navient has acknowledged that that there "is a potential that there are some loans out there where the amount of the loan exceeded the cost of attendance."  *In re Homaidan*, 640 B.R. at 837 (quoting hearing transcript).  And as the Plaintiffs note, Navient's corporate representative has testified that Navient does not take steps to determine whether any of the loans at issue were within the cost of attendance. *See* Plaintiffs' Mem. of Law in Support of Mot. for Partial Summ. J., ECF No. 170, at 7-9.

That is, it seems that in opposing the TRO and now in seeking this stay pending appeal, Navient attempts to turn on the head the very purpose of the bankruptcy discharge – which is, as this and other courts recognize in many contexts, to grant the debtor a "fresh start."  And as to a discharged debt, that "fresh start" requires no further action from a debtor.  It is the creditor, not the debtor, that bears the burden of establishing that a loan is in fact, nondischargeable.

Separately, it is worth noting that the question of dischargeability of a private student loan under Section 523(a)(8)(B) turns on objective, not subjective, matters including the facts and circumstances of the loan and the applicable cost of attendance.  If the facts show that a private student loan *exceeds* the applicable cost of attendance, then it does not change those facts that borrower made a statement – boilerplate or otherwise – that a loan does not exceed the cost of attendance.

As a consequence, the Tuition Answer Loans at issue that exceed the cost of attendance are not excepted from discharge.  These loans do not meet the nondischargeability requirements of Bankruptcy Code Section 523(a)(8)(B), and are therefore within the scope of their bankruptcy discharges.  Navient received notice of these bankruptcy discharges, and intended the acts that violated the discharge to collect on these discharged debts.  That is, that Navient has violated the statutory bankruptcy discharge injunction as to the Plaintiffs and the Putative Class Members.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that this Court lacked the authority to grant relief based on deficiencies in the evidence.

<u>Whether the Court Lacked Authority To Grant Temporary Injunctive Relief Because this Case Has Been Pending for Five Years.</u>  The Court next considers Navient's argument that it is

likely to succeed on the merits of its appeal because this case has been pending for some five years.  Motion to Stay at 12.

Navient argues that the Plaintiffs waited too long to seek temporary injunctive relief for themselves and the Putative Class Members, pointing to the fact that the Plaintiffs waited five years to seek a temporary restraining order after this case was filed.  *Id.*  According to Navient, in the Second Circuit, a delay in seeking injunctive relief of only a "couple of months" will generally foreclose issuance of a preliminary injunction or a temporary restraining order.  Motion to Stay at 12 (citing *Citibank*, 756 F.2d at 276; *Gidatev, S.R.L.*, 13 F. Supp. 2d at 419).  As such, Navient argues that here, there was a multi-year delay, which by itself makes it highly likely that the TRO will be reversed on appeal.  Motion to Stay at 12.

The Plaintiffs respond that the Court has previously rejected Navient's "delay" argument, and with good reason.  Opp. at 10.

Navient correctly notes that much time has passed since this Adversary Proceeding was commenced in 2017.  And in some circumstances, courts have found that the passage of time, without more, weighs against the granting of temporary or preliminary injunctive relief.  As one court observed, "'[w]hile delay does not always undermine an alleged need for preliminary relief, months-long delays in seeking [injunctive relief] have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompany a motion for preliminary relief.'" *Silent Gliss Inc. v. Silent Gliss Int'l Ltd.*, 2022 WL 1525484, at *8 (E.D.N.Y. May 13, 2022) (quoting *Silber*, 950 F. Supp. 2d at 439).  And as another court found, "[b]ecause preliminary injunctions" and temporary restraining orders "are predicated upon 'urgent need for speedy action,' delay in seeking the remedy suggests that the remedy is not really needed, or that the

harm is not really irreparable." *Minzer v. Keegan*, 1997 WL 34842191, at *6 (E.D.N.Y. Sept. 22, 1997) (citation omitted) (quoting *Citibank*, 756 F.2d at 276).

At the same time, however, "[c]ourts may excuse delays '[i]f the movant can provide a credible explanation for its inactivity.'" *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (quoting *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)).  As one example, "[c]ourts have excused delays where the parties diligently pursue settlement negotiations." *Hodnett*, 2021 WL 535485, at *6 (citing *Marks Org.*, 784 F. Supp. 2d at 333).

Similarly, a delay caused by a plaintiff's good faith investigation of their claims does not weigh against a finding of irreparable harm.  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (citing *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992)). "The existence of prejudice to the non-movant caused by the movant's delay is also a relevant factor." *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 n.1 (2d Cir. 1998) (citing *Tom Doherty*, 60 F.3d at 39).  And "delay alone" does not require denial of temporary or preliminary injunctive relief.  *Marks Org.*, 784 F. Supp. 2d at 333 (citing *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998)).

The Court "thus begins its analysis by recognizing the Second Circuit's instruction that '[a] . . . court should *generally* consider delay in assessing irreparable harm,' even if it is not dispositive of the issue." *Marks Org.*, 784 F. Supp. 2d at 333 (quoting *Tom Doherty*, 60 F.3d at 39).  And the starting point for this analysis is the timeline of this Adversary Proceeding, including the time spent in dispositive motion practice before this Court, on appeal in the District Court and the Second Circuit, and finally, in court-annexed mediation.

On June 23, 2017, Mr. Homaidan commenced this Adversary Proceeding by filing the complaint. Within a few months, on October 30, 2017, Navient filed a Motion to Compel or Dismiss, asserting that as a matter of law, this action should be dismissed because Mr. Homaidan's claims should be heard in an arbitration, not in court, and separately that this Adversary Proceeding should be dismissed because the Putative Class Members student loans were excluded from their bankruptcy discharges pursuant to Bankruptcy Code Section 523(a)(8)(A)(ii).

The Court first considered Navient's Motion to Compel or Dismiss to the extent that it sought to compel arbitration of Mr. Homaidan's claims, and after a period of time to permit the parties to brief and argue that issue, on July 25, 2018, the Court entered a decision denying that portion of Navient's requested relief. *See In re Homaidan*, 587 B.R. at 443. Navient appealed that decision on August 10, 2018, and pursuant to the parties' stipulation, the appeal was dismissed on November 5, 2018.

Next, the Court considered Navient's Motion to Compel or Dismiss to the extent that it sought to dismiss Mr. Homaidan's claims on grounds that the private Tuition Answer Loans that exceed the cost of attendance were excluded from discharge under Bankruptcy Code Section 523(a)(8)(A)(ii). Again, after a period of time to permit the parties to brief and argue that issue, on January 31, 2019, the Court entered a decision denying that portion of Navient's requested relief. *See In re Homaidan*, 596 B.R. at 106-07, 110. And on February 14, 2019, Navient filed an interlocutory appeal of this Court's decision denying the motion to dismiss in the District Court. ECF No. 105. At the same time, Navient also sought leave to pursue a direct appeal to the Second Circuit. ECF No. 107.

While the appeal was pending in the District Court, on December 17, 2019, this Court issued an order amending the complaint to add Ms. Youssef as an additional named plaintiff and proposed class representative. ECF No. 166. And on December 19, 2019, the Plaintiffs filed a motion for class certification, a motion for partial summary judgment, and a motion for a preliminary injunction. ECF No. 168.

More than a year later, on February 25, 2020, the District Court granted Navient's motion to certify this Court's order denying the Motion to Compel or Dismiss to the extent that it sought to dismiss the Adversary Proceeding. That appeal proceeded in the Second Circuit, and some sixteen months later, on July 15, 2021, the Second Circuit affirmed this Court's decision denying Navient's request to dismiss the Adversary Proceeding on grounds, in substance, that reading Section 523(a)(8)(A)(ii) to exclude private student loans from a debtor's bankruptcy discharge is "unsupported by plain meaning." *Homaidan*, 3 F.4th at 601.

Less than two weeks after the appellate process was concluded, on July 28, 2021, this Court held a continued pre-trial conference in this Adversary Proceeding. At this point, Navient's legal defenses of arbitrability and an alternative basis for the nondischargeability of the Plaintiffs' and the Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance had been resolved against it, by this Court and by the Second Circuit. With the consent of the parties, on August 20, 2021, the Court entered an order assigning this matter to mediation. ECF No. 302.

The parties diligently pursued that path for some months, but ultimately, the mediation process was not fruitful. On March 14, 2022, the Plaintiffs filed a letter stating that mediation was not successful, and that "it is now clear that this matter will not settle without a ruling by the Court on the pending motions for preliminary injunction, summary judgment and class

certification." ECF No. 310. On March 22, 2022, Navient filed a letter stating its "disagree[ment] with the characterization in the [Plaintiffs'] letter regarding the parties' mediation efforts. Navient remains engaged in the process and believes that it is premature to conclude that this matter will not settle without a ruling on the pending motions." ECF No. 313. And just over two weeks later, on April 7, 2022, the Plaintiffs filed the motion seeking a temporary restraining order.

At each step of this long procedural path, Navient and the Plaintiffs each – quite appropriately – made motions, sought appellate review, and pursued a mediation pathway to a consensual resolution, and each of these steps took time. Some took considerable time. But at this stage in these proceedings, and based on this record, it is simply not accurate to suggest that the Plaintiffs somehow delayed or waited too long to bring the TRO Motion and seek temporary or preliminary injunctive relief. It was Navient, not the Plaintiffs, that brought a motion to compel arbitration, and to dismiss this Adversary Proceeding. From October 2017 to July 2021, Navient's motions and appeal were pending and vigorously disputed in the District Court and Second Circuit. And in those requests for relief, Navient sought final and dispositive relief, on legal grounds. Had Navient been successful, this case would be over. Thereafter, the parties – with the encouragement of this Court – attempted to reach a consensual resolution, through court-annexed mediation. This matter was referred to mediation within some six weeks of the Second Circuit's decision, and that process continued from August 2021 to at least March 2022. Some two weeks later, the Plaintiffs brought the TRO Motion.

Notably, Navient does not assert that it has been prejudiced by this passage of time. Nor does the record suggest that the Plaintiffs brought the TRO Motion as a litigation tactic against Navient. Indeed, in the five years that this Adversary Proceeding has been pending, as many as

sixty additional monthly payments have come due on the Plaintiffs' and the Putative Class Members' debt that may well have been discharged in bankruptcy.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits of its appeal on grounds that the Court lacked authority to issue the TRO because this case has been pending for five years, or any perceived delay by the Plaintiffs in seeking temporary injunctive relief.

<u>Whether the Court Lacked Authority To Grant Relief Because the TRO Does Not Comply with Federal Rule of Civil Procedure 65.</u>  The Court next considers Navient's argument that it is likely to succeed on the merits of its appeal because it lacked authority to grant relief in the form of an order that does not comply with Federal Rule of Civil Procedure 65.  Motion to Stay at 12.  According to Navient, the TRO suffers from at least two defects that render it non-compliant with Rule 65 and the requirements for the entry of injunctive relief.  *Id.*

First, Navient argues that the TRO does not list the loans on which it can no longer collect, nor does it identify any specific borrowers as to whom Navient is restrained from directing collection activities.  *Id.*  Instead, Navient asserts that the TRO implicitly incorporates by reference tens of thousands of loan records and financial-aid records that may show whether a loan exceeded the cost of attendance, thus leaving it to Navient – under threat of contempt – to locate and review those records and to guess whether it is interpreting them consistent with the Court's direction.  *Id.*  It contends that in this way, the TRO plainly violates Rule 65, which requires that a restrained party be able to identify "the act or acts restrained or required" from the four corners of the injunction and without having to interpret external materials referenced or incorporated in the order.  Motion to Stay at 12-13 (citing *Corning*, 365 F.3d at 158).

And second, Navient argues that the TRO precludes collection activities on loans that "exceed the cost of attendance," but provides no guidance on how to determine whether a loan comes within that category.  Motion to Stay at 13.  It notes that the Plaintiffs contend that average, estimated data published by IPEDS is a reliable indicator of cost of attendance, but Navient disputes that view.  *Id.*  And it argues that borrower certifications constitute a sufficient basis on which to determine whether cost-of-attendance criteria under Bankruptcy Code Section 523(a)(8)(B) have been satisfied.  *Id.*  Navient then asserts that by referring only to loans exceeding the "cost of attendance," the TRO leaves these important questions unresolved.  Motion to Stay at 13-14.

According to Navient, the result of this is that the TRO is really nothing more than a successive injunction that, like the discharge injunctions it purports to enforce, says nothing more than: "obey the law."  Motion to Stay at 14.  And it argues that it is likely to prevail on its position that such an injunction is improper.  Motion to Stay at 14 (citing *Alderwoods*, 682 F.3d at 968).

Finally, on this point, Navient contends that notwithstanding a clear dispute between the parties concerning what constitutes an "act to collect," the TRO does not delineate what Navient can and cannot do in order to comply with the TRO.  Motion to Stay at 14.  As a result, Navient asserts that without defining "acts to collect," the TRO is vague and requires Navient to guess at its meaning.  *Id.*

The Plaintiffs respond that Navient's argument that the TRO is non-compliant and violates Rule 65 because it does not identify the "'act or acts restrained or required'" must be rejected.  Opp. at 10 (quoting Motion to Stay at 13).  The Plaintiffs assert that Navient's failure to comply with the law – or inability even to determine whether a particular loan is discharged –

cannot be grounds for it to argue that the TRO requiring Navient to determine objective facts applicable to the loans it collects on is vague. Opp. at 10. The Plaintiffs contend that if Navient cannot determine whether a loan exceeded the cost of attendance, it should not be attempting to collect on it after a bankruptcy discharge. *Id.*

At the outset, the TRO describes the loans that Navient is prohibited from attempting to collect. As the Order directs:

> [It is] ORDERED, that Navient is restrained and enjoined from taking any acts to collect on Tuition Answer Loans held by the Plaintiffs and the Putative Class Members, as the class is described in the Amended Complaint, that exceed the cost of attendance as defined by Internal Revenue Code § 221(d), and that have an outstanding balance subject to collection.

TRO at 4-5.

Here, the Court finds that Navient's arguments that it somehow cannot discern which loans come within the scope of the TRO are not persuasive. There can be no doubt that as a significant participant in the student loan marketplace, Navient is familiar with its portfolio of student loans, including the loans that have been the subject of this adversary proceeding for some five years. The concept of "cost of attendance" is not one that the Plaintiffs created, nor one that the Court invented for purposes of the TRO. It is, instead, set forth in the Internal Revenue Code and incorporated by reference in the Bankruptcy Code. It has been a subject of this action for five years. And it is a significant piece of the picture in determining whether a private student loan is within or outside of a debtor's discharge.

The Court similarly finds that Navient's arguments that it would have to guess at the meaning of "acts to collect" in order to comply with the TRO not to be persuasive. As Navient stated in opposition the TRO Motion:

> [I]t engages in many activities that it considers to be normal "servicing" activities, such as: sending out monthly statements; allowing borrowers to enroll in a "Auto

> Pay" system where bank accounts are automatically debited each month; accepting and crediting payments from borrowers, whether through Auto Pay or otherwise; providing balance and pay-off information to borrowers, sending tax and other account information to borrowers; answering borrower questions; calculating and accruing interest based on payment status; and making reports to credit agencies based on loan and payment status.

Decl. of Patricia Peterson, ECF No. 323, at ¶ 4.

And Navient has acknowledged that "[o]nce a loan goes into monetary default or becomes delinquent, [it] engages in other activities that [it] considers to be 'collection' activities that may include periodic written or telephonic communications to the borrowers or referral of accounts to collection agencies." *Id.*

That is, it is reasonable to assume that Navient is aware of what it does to collect on a loan, and it is hard to imagine that Navient would need to look to the Plaintiffs or the Court for information or direction in that arena. Lenders routinely must pause their collection efforts when a borrower files a bankruptcy case and triggers the protection of the Bankruptcy Code's automatic stay. Routine collection efforts should be straightforward to identify, and in compliance with the TRO to place on pause, for the duration of this Court's injunctive relief.

Notably, courts have not been persuaded by similar arguments in other settings. For example, in *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal. 2020), Immigration and Customs Enforcement ("ICE") detainees filed a proposed habeas class action challenging the conditions of their confinement, contending that they were at "serious risk of becoming infected with Covid-19 because ICE has refused to alter conditions at the facilities so as to enable people to keep their distance from one another." *Zepeda Rivas*, 445 F. Supp. 3d at 38. There, the plaintiffs filed a "motion for a temporary restraining order requiring ICE to take measures that will enable social distancing." *Id.* In finding that the requirements for a temporary restraining order were met, the court rejected ICE's argument that "it will take a significant amount of time

for the agency to prepare a list of detainees with health vulnerabilities because it is 'burdensome.'" *Zepeda Rivas*, 445 F. Supp. 3d at 40.  Instead, the court observed that "[t]he fact that ICE does not have such a list at the ready, six weeks after Governor Newsom shut down the entire state and one week after this lawsuit was filed, speaks volumes about where the safety of the people at these facilities falls on ICE's list of priorities." *Id.*

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that the TRO does not comply with Federal Rule of Civil Procedure 65.

*       *       *

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits of its appeal.

### *Whether Navient Has Shown that in the Absence of a Stay, It Will Suffer Irreparable Injury*

The second factor that the Court must consider is whether, in the absence of a stay, Navient will suffer irreparable injury.  This type of injury must be a harm that is "neither remote nor speculative, but actual and imminent." *In re Adelphia*, 361 B.R. at 347 (citing *Tucker Anthony*, 888 F.2d at 975).  The party moving for a stay must demonstrate that this injury cannot be remedied without a stay, and that monetary relief will not be adequate.  *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011).

Here, Navient argues that it will suffer two injuries if the TRO is not stayed:  first, that compliance with the TRO will require it to incur significant costs; and second, that the TRO will cause loans that are currently being paid to slip into default, leading to losses that as a practical matter, cannot likely be recovered.  Reply at 13.  While its precise losses are presently unknown, Navient asserts that it will clearly suffer harm in the absence of a stay that is neither "'remote'"

nor "'speculative;'" rather, it is concrete and imminent, and therefore sufficient to demonstrate irreparable harm.  Reply at 14 (quoting *Grand River*, 481 F.3d at 66).

The Plaintiffs respond that Navient will not be irreparably injured absent a stay.  Opp. at 10.  They note that this Court already found that absent the TRO, the Plaintiffs and the putative class, not Navient, will be irreparably injured.  Opp. at 10.  And they contend that Navient's asserted inability to identify those loans on which it may not legally collect is not a valid reason to stay the TRO enjoining it from its illegal collection activity.  Opp. at 11.  The Plaintiffs assert that the Court should not reverse course and stay the TRO relief simply because Navient incurs costs to cease, even temporarily, these unlawful collection activities.  *Id.*

The Court finds Navient's arguments not to be persuasive.  At the outset, it is worth noting that the TRO affects Navient only to the extent that it is collecting on discharged debts – and this is plainly an activity which Navient should not undertake.  Further, the Court has already found that absent the TRO, the Plaintiffs and the putative class will be irreparably injured by this unlawful collection activity.  And in all events, the types of economic damage that Navient has identified – the costs of compliance and the prospect of missed collections for the brief period that the TRO will be in place – are simply not the same as irreparable injury.

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not shown that it will suffer irreparable injury in the absence of a stay.

### *Whether Navient Has Shown that a Stay of the TRO Will Not Cause Substantial Injury to the Plaintiffs*

The third factor that the Court must consider is whether imposing a stay will cause substantial injury to the Plaintiffs.  To prevail on this factor, the party seeking the stay must show that a stay will not substantially harm the non-moving party.  *See Mohammed*, 309 F.3d at 100.

"In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *In re Adelphia*, 361 B.R. at 349.

Navient argues that a stay will not substantially injure other interested parties. Motion to Stay at 16. It contends that staying the TRO pending appeal will allow the continuation of the status quo that has existed since this case was commenced over five years ago. Motion to Stay at 16. Navient points out that if the Plaintiffs ultimately prevail in this case, any injury suffered by borrowers who made payments on discharged loans could be remedied by an award of money damages. Motion to Stay at 16. And it asserts that the fact that the Plaintiffs waited for *two years* to seek a preliminary injunction and waited another *three years* after that to seek a temporary restraining order should effectively estop them from opposing a stay pending appeal on the basis of any claim that borrowers may suffer irreparable harm. Motion to Stay at 16 (citing *Citibank*, 756 F.2d at 276).

The Plaintiffs respond that staying the TRO will substantially injure the Plaintiffs and Putative Class Members and is contrary to the public interest. Opp. at 12. They argue that the "mere" act of repeatedly attempting to collect on a discharged debt, in and of itself, creates irreparable injury. Opp. at 12 (citing *In re Diaz*, 526 B.R. at 694; *In re Daniel*, 98 B.R. at 76). And they contend that the fact that these unlawful collection activities have been ongoing for years compounds, rather than diminishes, this injury. As a result, the Plaintiffs argue, the Plaintiffs and Putative Class Members will suffer substantial injury if the TRO is stayed. Opp. at 12.

Here again, the Court finds Navient's arguments not to be persuasive. Navient appears to accord insufficient weight to the fact that, as this Court and others have concluded, "[a]n attempt to collect on a discharged debt is not just about money – it is about the hardships and burdens

that impair a debtor's efforts to achieve the 'fresh start' that is a centerpiece of the bankruptcy system." *In re Homaidan*, 640 B.R. at 851.  That is, Ms. Youssef and the Putative Class Members will suffer substantial and irreparable harm from Navient's continuing efforts to collect on their discharged debt.  And they will be denied the "fresh start" that is so integral to a bankruptcy discharge.  This harm is actual and imminent, and reaches beyond the ability of monetary compensation to remedy.  While it is true that this harm has been part of the picture since this case was filed, now that Navient has not prevailed in its legal defense in the Second Circuit and the parties' efforts to settle through mediation are over, this harm has come to the fore, and it is time for it to be addressed.

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not shown that the Plaintiffs will not suffer substantial injury if a stay of the TRO is issued.

### *Whether Navient Has Shown that the Public Interest Will Not Be Adversely Affected if a Stay Pending Appeal Is Granted*

The fourth factor that the Court must consider is the public interest.  As this Court and others have observed, this factor calls for the court to weigh the public interest, and to consider and balance several goals and objectives, including efficient case administration and the right to a meaningful review on appeal.  *In re Taub*, 2010 WL 3911360, at *3 (citing *In re Adelphia*, 361 B.R. at 349).

Navient argues that the public interest favors issuance of a stay.  Motion to Stay at 16.  It asserts that there is a strong public interest in ensuring that citizens are not prejudiced by legal processes without first being provided notice and an opportunity to be heard.  Navient contends that the TRO violates this public interest because it is likely to cause significant harm to potentially thousands of absent members of a putative class before a class has been certified and

before they have been given notice or any other meaningful opportunity to protect their interests. Motion to Stay at 16-17.  And it asserts that there is also a strong public interest in protecting both lenders and borrowers from unscrupulous practices in connection with student loans and other lending transactions, and that the TRO runs afoul of this public interest by effectively rewarding borrowers that submitted loan applications and other loan documents containing material misrepresentations.  Motion to Stay at 17.

Finally, Navient argues that any public interest that there might be as to seeing this putative class of debtors get a "fresh start" is not harmed by pausing the TRO until these issues can be resolved on appeal.  Reply at 17.  According to Navient, granting a stay does not prevent those debtors from getting a fresh start, but rather ensures that debtors will not be subject to the confusion and uncertainty of the TRO without notice and with the ultimate merits in this case still undetermined.  *Id*.

The Plaintiffs respond that the public interest does not weigh in favor of staying the TRO. Opp. at 12.  According to the Plaintiffs, the TRO protects, rather than threatens, borrowers from unlawful collection activities that violate the fresh start that is at the heart of the Bankruptcy Code.  *Id*.  They point out that as this Court aptly noted, "'the public interest is not served by the collection of a discharged debt, and the public interest is not disserved by enjoining that activity.'"  Opp. at 12 (quoting TRO Decision at 65).

Here, the Court agrees with Navient that respect for fundamental notions of due process and notice is in the public interest.  But the Court is not persuaded that these foundational concepts are threatened, or even put at risk, by the TRO or by the denial of a stay of the TRO effective date pending appeal.  The TRO does not limit the rights of potential class members under Rule 23 in any respect, nor does it prevent any kind of notice to the putative class.  Indeed,

when the possibility of notice to the Putative Class Members was raised by the Court with the parties, Navient declined to pursue this path, stating it does not believe "giving any kind of provisional notice at this point is appropriate." May 25, 2022 Hearing Transcript, ECF No. 324, at 58:14-22.

Other courts facing similar questions have reached similar conclusions. As one bankruptcy court observed, in finding that the public interest weighed against issuing a stay to halt an adversary proceeding in favor of arbitration, "there is . . . a strong policy in protecting a debtor's fresh start after their bankruptcy proceedings are resolved." *In re Anderson*, 560 B.R. at 93. As this Court has found, "'[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start."'" *In re Golden*, 630 B.R. at 911 (quoting *In re McKenzie-Gilyard*, 388 B.R. at 480). The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy." *In re McKenzie-Gilyard*, 388 B.R. at 480.

And where the public interest in this "fresh start" is threatened, "[b]ased on the . . . importance of protecting the 'fresh start' which Chapter 7 offers the honest but unfortunate debtor, a preliminary injunction is not only warranted but necessary to preserve the integrity of the bankruptcy process." *Archambault v. Hershman (In re Archambault)*, 174 B.R. 923, 936 (Bankr. W.D. Mich. 1994). The public interest in "protecting a debtor's fresh start after their bankruptcy proceedings are resolved" would be disserved by the entry of a stay pending appeal of the TRO. *In re Anderson*, 560 B.R. at 93. In other words, the public interest is not served by the collection of a discharged debt, and the public interest is not disserved by enjoining that activity.

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not shown that the public interest weighs in favor of a stay pending appeal.

\*               \*               \*

On this Motion for a Stay, Navient has presented many arguments that are familiar to the Court and the parties, and several additional arguments as well.  Motions such as this provide the Court with an opportunity to revisit the arguments and issues in the case, thoughtfully to consider and reconsider those arguments and the Court's prior analysis and conclusions, and where appropriate, to modify or amend its prior assessments of the record.  And this Court has done so here.

In addition, this Motion for a Stay permits the Court carefully to consider whether the temporary and interim relief provided in the TRO is warranted by the record, and warranted immediately – or alternatively, whether it should be stayed so that Navient can pursue an appeal.

And based on the entire record, and after careful and thorough consideration of all of the arguments and authorities that have been presented, the Court concludes that the TRO should not be stayed.  As set forth herein, Navient has not made a strong showing that it is likely to succeed on the merits of its appeal.  Nor has it shown that it will suffer irreparable injury in the absence of a stay, or that the Plaintiffs will not suffer substantial injury if a stay of the TRO is issued.  And finally, Navient has not shown that the public interest weighs in favor of a stay pending appeal.

It is worth noting that, at the time the TRO was entered, this Court delayed the effective date of the relief for sixty days, in accordance with Navient's representations that it would take sixty days to comply with a direction to cease its collection activities on the loans that are at issue here – private student loans that exceed the cost of attendance and therefore are outside the

scope of Section 523(a)(8)(B)'s exclusion from discharge.  So, while that date is now imminent, Navient has had the notice that it indicated it would need to be able to comply.

### <u>Conclusion</u>

For the reasons stated herein, and based on the entire record, Navient's Motion to Stay Temporary Restraining Order is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
      **September 2, 2022**

                                        **Elizabeth S. Stong**
                             **United States Bankruptcy Judge**