UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| HILAL KHALIL HOMAIDAN,<br>*aka* Helal K Homaidan, | Case No. 08-48275-ess |
| Debtor. | |

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| REEHAM YOUSSEF,<br>*aka* Reeham Navarro Youssef,<br>*aka* Reeham N. Youssef, | Case No. 13-46495-ess |
| Debtor. | |

------------------------------------------------------------------------x

| | |
|---|---|
| HILAL KHALIL HOMAIDAN, on behalf of himself and all others similarly situated, | |
| and | Adv. Pro. No. 17-1085-ess |
| REEHAM YOUSSEF, | |
| Plaintiffs, | |
| v. | |
| SALLIE MAE, INC., NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION, | |
| Defendants. | |

------------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE PLAINTIFFS'
## MOTION FOR A PRELIMINARY INJUNCTION

*Appearances*:

| | |
|---|---|
| George F. Carpinello, Esq. | Thomas M. Farrell, Esq. |
| Adam Shaw, Esq. | McGuire Woods LLP |
| Robert C. Tietjen, Esq. | JPMorgan Chase Tower |
| Boies Schiller Flexner LLP | 600 Travis Street (Suite 7500) |
| 30 South Pearl Street (11th Floor) | Houston, TX 77002 |
| Albany, NY 12207 | *Attorneys for Defendants* |
| *Attorneys for Plaintiffs* | |

Jason W. Burge, Esq.
Kathryn J. Johnson, Esq.
Fishman Haygood LLP
201 Saint Charles Avenue (Suite 4600)
New Orleans, LA 70170
   *Attorneys for Plaintiffs*

Lynn E. Swanson, Esq.
Peter N. Freiberg, Esq.
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70130
   *Attorneys for Plaintiffs*

Shawn R. Fox, Esq.
Joseph A. Florczak, Esq.
Dion W. Hayes, Esq.
K. Elizabeth Sieg, Esq.
McGuireWoods LLP
1345 Avenue of the Americas (7th Floor)
New York, NY 10105
   *Attorneys for Defendants*

October 17, 2022

HON. ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

<u>**Introduction**</u>

Before the Court is the motion for a preliminary injunction of Hilal Khalil Homaidan and Reeham Youssef (the "Plaintiffs").  The Plaintiffs seek, on behalf of themselves and all others similarly situated within a putative class, a preliminary injunction to enjoin Navient Solutions, LLC and Navient Credit Finance Corp. (together, "Navient") from continuing their collection efforts on certain loans held by the Plaintiffs and the members of the putative class (the "Preliminary Injunction Motion").  The Plaintiffs seek this relief on grounds that these private student loans are within the scope of their Chapter 7 bankruptcy discharges, and that Navient has disregarded that fact as it has continued its collection efforts for at least the past ten years.

In this adversary proceeding, the Plaintiffs allege, as to themselves and the putative class, that they attended or intended to attend Title IV institutions and received private loans owned or serviced by the Defendants that exceeded the cost of attendance at such institutions as defined by Internal Revenue Code Section 221(d), that they obtained bankruptcy discharges after January 1, 2005, that they have not reaffirmed their loans, and that they have been, and may continue to be, subjected to the Defendants' actions to collect on these loans.

Specifically, the Plaintiffs argue that their private student loans were discharged in their Chapter 7 bankruptcy cases because these loans do not meet the requirements to be nondischargeable under Bankruptcy Code Section 523(a)(8)(B) – that is, their loans are not "qualified education loan[s]" pursuant to Internal Revenue Code Section 221(d)(1).  Namely, the Plaintiffs assert their loans do not meet Internal Revenue Code Section 221(d)'s requirement that a loan must not exceed the cost of attendance at a Title IV institution to be a "qualified education loan."  As such, they assert, the Defendants' continuing collection efforts on their outstanding

private student loans that were discharged violate the statutory bankruptcy discharge contained in Bankruptcy Code Section 524(a)(2).  And at this stage in these proceedings, the Plaintiffs argue, the requirements for preliminary injunctive relief in favor of the putative nationwide class have been met, and these collection efforts should be stopped.

Navient opposes the Preliminary Injunction Motion, on several grounds.  As a threshold matter, it argues that the only pathway to a remedy for a violation of the bankruptcy discharge is a proceeding or motion for contempt.  Navient states that this Court lacks the jurisdiction to address violations of discharge orders entered by other bankruptcy courts.  Navient also argues that certain putative class members lack Article III standing to seek relief against it, as they have suffered no harm.

In addition, Navient contends that a preliminary injunction is not warranted here, as the Plaintiffs cannot establish a likelihood of success on the merits because, among other reasons, each plaintiff certified on their loan documents that their loans were within the cost of attendance at a Title IV institution.  Further, Navient argues that irreparable harm is not present here, as the Plaintiffs substantially delayed in seeking this relief.  And finally, Navient argues that the public interest weighs against granting the Preliminary Injunction Motion, as injunctive relief would be against public policy because it would undermine Congressional intent.

For these reasons, among others, Navient argues that the Plaintiffs cannot meet their burden, and that the Preliminary Injunction Motion should be denied.

### Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  In addition, this Court may adjudicate these claims to final

2

judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b).

## **Background**

### *Mr. Homaidan's Bankruptcy Case*

On December 4, 2008, Hilal Khalil Homaidan, *aka* Helal K. Homaidan, filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 08-48275.  On December 19, 2008, Mr. Homaidan filed his schedules and statements, and on March 9, 2009, he filed certain amended schedules.  *In re Homaidan*, Case No. 08-48275, ECF Nos. 11, 19.  In his Schedule F, "Creditors Holding Unsecured Nonpriority Claims," he listed "Tuition Answer" loans owed to Sallie Mae in the amounts of $7,983.19 and $8,190.11.  *In re Homaidan*, Case No. 08-48275, ECF No. 19.  On January 15, 2009, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute."  *In re Homaidan*, Case No. 08-48275, Doc. entry dated January 15, 2009.  On April 9, 2009, the Court entered an order discharging Mr. Homaidan (the "Homaidan Discharge Order"), and on that same day, his bankruptcy case was closed.  *In re Homaidan*, Case No. 08-48275, ECF No. 21.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a determination of the dischargeability of certain of his student loans, and on May 26, 2017, the Court entered an order reopening the case.

### *Ms. Youssef's Bankruptcy Case*

On October 29, 2013, Reeham Youssef, aka Reeham Navarro Youssef, aka Reeham N Youssef, filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 13-46495. On October 29, 2013, Ms. Youssef filed her schedules and statements.  *In re Youssef*, Case No. 13-46495, ECF No. 1.  In her Schedule F, "Creditors Holding Unsecured Nonpriority Claims," she listed "Student Loan[s]" owed to Sallie Mae in the amounts of $9,055.00, $13,413.00, $6,415.00, $35,580.00, $23,596.00, $4,095.00, $16,275.00, and $29,493.00.  *Id.*  On December

13, 2013, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute." *In re Youssef*, Case No. 13-46495, Doc. entry dated December 13, 2013.  On February 6, 2014, the Court entered an order discharging Ms. Youssef (the "Youssef Discharge Order"), and on that same day, her bankruptcy case was closed.  *In re Youssef*, Case No. 13-46495, ECF No. 9.

On October 1, 2019, Ms. Youssef moved to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on December 4, 2019, the Court entered an order reopening the case.  *In re Youssef*, Case No. 13-46495, ECF No. 12.

*Selected Procedural History of this Adversary Proceeding*

On June 23, 2017, Mr. Homaidan commenced this adversary proceeding (the "Adversary Proceeding") as a putative class action, on behalf of himself and others similarly situated, by filing a complaint against SLM Corporation, Sallie Mae, Inc., Navient Solutions, LLC, and Navient Credit Finance Corporation.  Compl., ECF No. 1.  As to himself, Mr. Homaidan seeks a determination that certain debts that he incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and costs, for the Defendants' willful violations of the bankruptcy discharge order entered in his case.  And as to the class, he seeks the same relief.  *Id.*

On October 30, 2017, Navient filed a motion to compel arbitration or, in the alternative, to dismiss the Adversary Proceeding (the "Motion to Compel or Dismiss") and a Memorandum of Law in Support of the Motion to Compel or Dismiss (the "Mot. to Compel or Dismiss Mem.").  ECF Nos. 16, 17.  In the Motion to Compel or Dismiss, Navient argued that Mr. Homaidan's private Tuition Answer Loans "constitute obligations to repay funds received as educational benefits, and are therefore excepted from discharge under [Section] 523(a)(8)(A)(ii) of the Bankruptcy Code."  Mot. to Compel or Dismiss Mem. at 23-24.  On December 1, 2017,

4

the Court approved a stipulation of dismissal as to defendant SLM Corporation.  ECF No. 23.

On January 8, 2018, Mr. Homaidan filed opposition to the Motion to Compel or Dismiss. ECF No. 27.  On January 26, 2018, Navient filed a reply in support of the Motion to Compel or Dismiss.  ECF No. 29.

On July 25, 2018, the Court issued a memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to compel arbitration of Mr. Homaidan's claims.  *Homaidan v. SLM Corp.* (*In re Homaidan*), 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

On January 31, 2019, the Court issued a second memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to dismiss the Adversary Proceeding.  *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86 (Bankr. E.D.N.Y. 2019). On February 14, 2019, Navient filed a notice of appeal to the District Court of this Court's order denying its request to dismiss the Adversary Proceeding.  ECF No. 105.

Thereafter, on October 21, 2019, Mr. Homaidan filed an amended complaint to add Ms. Youssef as a named plaintiff and proposed class representative (the "Amended Complaint" or "Am. Compl.").  ECF No. 160.  On December 18, 2019, this Court entered an Order permitting amendment of the complaint to add Ms. Youssef as a named plaintiff and a proposed class representative.  ECF No. 166.

On December 19, 2019, the Plaintiffs filed a motion seeking three forms of relief:  an order certifying a nationwide class in this Adversary Proceeding (the "Class Certification Motion" or "Class Cert. Mot."), an order for partial summary judgment on liability and restitution (the "Partial Summary Judgment Motion"), and the Preliminary Injunction Motion (together, the "Pending Motions").  ECF No. 168.  That same day, the Plaintiffs filed three memoranda of law in support of each of the three forms of relief sought, including a

memorandum in support of the Preliminary Injunction Motion (the "Preliminary Injunction Memorandum" or "Prelim. Inj. Mem.").  ECF No. 171.

In the Class Certification Motion, the Plaintiffs seek to certify an injunctive relief class pursuant to Federal Rule of Civil Procedure 23(b)(2), and a damages class pursuant to Federal Rule of Civil Procedure 23(b)(3), consisting of:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mot. at 15.

On December 20, 2019, the Plaintiffs filed an amended Preliminary Injunction Motion. ECF No. 180.  On January 28, 2020, this Court entered an Order scheduling a hearing and argument on the Preliminary Injunction Motion for February 18, 2020.  ECF No. 184.

On February 3, 2020, Navient filed a response in opposition to the Preliminary Injunction Motion (the "Opposition" or "Opp.").  ECF No. 189.  On February 12, 2020, the Plaintiffs filed a reply in support of the Preliminary Injunction Motion (the "Reply").  ECF No. 194.

On February 25, 2020, the District Court granted Navient's motion to certify the order denying the Motion to Compel or Dismiss to the extent it sought to dismiss the Adversary proceeding for direct appeal to the Second Circuit.  *Homaidan v. Sallie Mae, Inc*., 2020 WL 5668972 (Bankr. E.D.N.Y. Feb. 25, 2020).  And on July 15, 2021, the Second Circuit affirmed this Court's order denying Navient's motion to dismiss the Adversary Proceeding.  *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021).  There, the court found that private student loans do not come within Section 523(a)(8)(A)(ii)'s exclusion from discharge because they are not "an obligation to repay funds received as an educational benefit."  *Homaidan*, 3 F.4th at 601 (quoting

11 U.S.C. 523(a)(8)(A)(ii)).  In reviewing the exceptions to discharge contained in Section

523(a)(8), the Second Circuit observed:

> [Section] 523(a)(8)(A)(i) covers government and nonprofit-backed loans and
> educational benefit overpayments; [Section] 523(a)(8)(A)(ii) covers scholarships,
> stipends, and conditional education grants; and [Section] 523(a)(8)(B) covers
> private loans made to individuals attending eligible schools for certain qualified
> expenses.

*Homaidan*, 3 F.4th at 604.

As to Section 523(a)(8)(B), the Second Circuit explained that "for a loan to be 'qualified'

under [Section] 523(a)(8)(B), the student must attend an eligible educational institution and the

loan must fund only higher education expenses."  *Homaidan*, 3 F.4th at 601 n.3 (first citing 26

U.S.C. § 25A(f)(2); and then citing 26 U.S.C. § 221(d)).

On August 23, 2021, this Court entered an Order assigning this Adversary Proceeding to

mediation.  ECF No. 302.  And on September 7, 2021, this Court entered a Stipulation and

Mediation Order, where the parties jointly accepted Eric Green of Resolutions LLC to provide

mediation services.  ECF No. 304.

On March 14, 2022, the Plaintiffs filed a letter stating that it is "clear" the Adversary

Proceeding "will not settle without a ruling by the Court" on the Pending Motions.  ECF No.

310.  The letter also stated that the Plaintiffs planned to file a motion for a temporary restraining

order.  *Id*.  On March 22, 2022, Navient responded by filing its own letter, stating that it remains

engaged in the mediation process and disagreeing that this Adversary Proceeding will not settle

without a ruling on the Pending Motions.  ECF No. 313.

On April 7, 2022, the Plaintiffs filed a motion for a temporary restraining order (the

"TRO Motion").  ECF No. 314.  On April 11, 2022, this Court entered an Order scheduling a

conference on the TRO Motion for April 14, 2022.  ECF No. 316.  On April 14, 2022, the Court

held an initial hearing on the TRO Motion and, with the consent of the parties, set a briefing

schedule on the motion.

On April 15, 2022, this Court entered an Order scheduling a continued conference on the

TRO Motion and setting briefing deadlines.  ECF No. 318.  As stated in the Order, the

Defendants were directed to file any opposition to the TRO Motion by May 9, 2022; the

Plaintiffs were directed to file any reply to the Defendants' opposition by May 23, 2022; and the

Court scheduled a continued conference on the TRO Motion for May 11, 2022.  ECF No. 318.

On May 9, 2022, Navient filed opposition to the TRO Motion.  ECF No. 320.  On May

20, 2022, the Plaintiffs filed a reply memorandum of law in support of the TRO Motion.  ECF

No. 321.  On May 25, 2022, the Court held oral argument on the TRO Motion, at which the

parties, by counsel, appeared and were heard.

On July 8, 2022, the Court issued a memorandum decision on the TRO Motion (the

"TRO Decision") and an order granting in part the TRO Motion to the extent that it sought to

enjoin Navient from taking any acts to collect on private Tuition Answer Loans held by the

Plaintiffs and Putative Class Members, as the class is described in the Amended Complaint, that

exceed the cost of attendance as defined by Internal Revenue Code § 221(d), and that have an

outstanding balance subject to collection.  *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 640

B.R. 810 (Bankr. E.D.N.Y. 2022); TRO Decision, ECF No. 341.

On July 21, 2022, the Court held a hearing on the Preliminary Injunction Motion and set

a schedule for the filing of supplemental briefs.  The Plaintiffs were directed to file supplemental

briefs on the Preliminary Injunction Motion and Class Certification Motion by August 5, 2022,

the Defendants were directed to file supplemental opposition briefs by August 19, 2022, and the

Plaintiffs were directed to file any reply briefs to the Defendants' supplemental opposition by

August 26, 2022.

On July 25, 2022, Navient filed a notice of appeal to the District Court of this Court's order granting in part the TRO Motion, as well as a Motion to Stay Temporary Restraining Order (the "Motion to Stay"). *See* ECF No. 350, 351. And on July 26, 2022, Navient filed a Notice of Motion to Stay Temporary Restraining Order. ECF No. 356.

On August 5, 2022, the Plaintiffs filed a supplemental memorandum of law in support of the Preliminary Injunction Motion (the "Supplemental Memorandum" or "Supp. Mem."), ECF No. 363. On August 19, 2022, Navient filed a supplemental memorandum in opposition to the Preliminary Injunction Motion (the "Supplemental Opposition" or "Supp. Opp."), ECF No. 368. On August 26, 2022, the Plaintiffs filed a supplemental reply in further support of the Preliminary Injunction Motion (the "Supplemental Reply" or "Supp. Reply"). ECF No. 372.

On September 2, 2022, the Court issued a memorandum decision (the "Stay Decision") and an order denying Navient's request for a stay pending appeal. *See* ECF Nos. 376, 377. And on September 6, 2022, the District Court denied Navient's request for leave to appeal, effectively denying a stay as well, in its Memorandum and Order. ECF No. 380. *See Navient Sols., LLC v. Homaidan*, 2022 WL 4079579 (E.D.N.Y. Sept. 6, 2022).

The TRO was set to expire on September 20, 2022. On September 9, 2022, the Court entered an Order to Show Cause why the TRO should not be extended for good cause pursuant to Federal Rule of Civil Procedure 65, to be heard on September 19, 2022. The parties were directed to file any opposition to the Order to Show Cause by September 14, 2022, and to file responses to any opposition by September 16, 2022. And on September 14, 2022, Navient filed a response to the Order to Show Cause, consenting to extend the TRO for an additional 14 days, to October 3, 2022. ECF No. 387.

The Court held a hearing on the Order to Show Cause on September 19, 2022 at which the Plaintiffs and Navient, by counsel, appeared and were heard.  At that hearing, the possibility of a scheduling conflict with the Jewish high holy days was noted, and thereafter, on September 20, 2022, Navient filed a letter consenting to an extension of the TRO through October 14, 2022. ECF No. 395.  And also on September 19, 2022, the Court held oral argument on the Preliminary Injunction Motion, at which the Plaintiffs and Navient, by counsel, appeared and were heard, and the record is now closed.

*The Allegations of the Amended Complaint*

In view of the nature of the relief sought in this Preliminary Injunction Motion, it is helpful to summarize the principal allegations of the Amended Complaint.  *See In re Homaidan*, 596 B.R. at 91-93 (discussing the allegations contained in the Amended Complaint).

The Plaintiffs, on behalf of themselves and all others similarly situated (the "Putative Class Members"), seek a declaratory judgment, injunctive relief, and damages arising from Sallie Mae. Inc. and Navient's alleged "pattern and practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2).  Am. Compl. ¶ 2.

The Plaintiffs allege that "[f]or the last ten years, [the Defendants] have . . . engaged in a massive effort to defraud student debtors and to subvert the orderly working of the bankruptcy courts."  *Id*.  They claim that the "Defendants . . . originat[ed] and service[ed] dischargeable consumer loans [while] disguising them as nondischargeable student loans."  *Id*.  The Plaintiffs advance these allegations on behalf of an alleged class of "similarly situated individuals who have declared bankruptcy since 2005 [across the United States,] with loans originated and/or serviced by Defendants."  Am. Compl. ¶ 5.  And they allege that these loans "do not meet the definition of a nondischargeable qualified education loan" as set forth in Internal Revenue Code Section 221(d) and Bankruptcy Code Section 523(a)(8)(B).  *Id*.

10

The Plaintiffs allege that the "Defendants represented to student debtors that the Bankruptcy Code prohibited discharge of *any* loan made to any person for any educational purpose." Am. Compl. ¶ 28. They claim that the Defendants "failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and in particular, that Class Members' nonqualified loans were, in fact, discharged in bankruptcy." *Id*. And the Plaintiffs state that the Defendants utilized bankruptcy laws "to defraud vulnerable and unsophisticated student borrowers." Am. Compl. ¶ 29. The Plaintiffs allege that the "Defendants either misrepresented or failed to disclose facts and information related to the dischargeability of private loans," and that the Defendants did not make the same misrepresentations "to more sophisticated parties." Am. Compl. ¶ 33.

The Plaintiffs request that the Court declare that the Plaintiffs and Class Members' debts were discharged upon the entry of the applicable statutory bankruptcy discharge injunctions, because they are not student loans excluded from discharge under Bankruptcy Code Section 523(a)(8). They seek permanent injunctive relief prohibiting the Defendants from continuing to seek to collect on the Plaintiffs and Class Members' discharged debts. The Plaintiffs also request that since the Defendants were notified of the Plaintiffs and Class Members' discharge orders pursuant to Bankruptcy Rule 4004(g), and still sought to collect on these debts by use of "dunning letters, phone calls, negative reports made to credit bureaus, failure to update credit reports, and commencing or continuing legal action to recover [these] debts in violation of [Bankruptcy Code Section 524]," the Court should cite the Defendants for civil contempt for their willful violations of the Discharge Order, and order them to pay damages in an amount to be determined at trial pursuant to Bankruptcy Code Sections 524 and 105, and also to pay their

attorneys' fees and costs.  Am. Compl. ¶¶ 90-93.

As stated in the Amended Complaint, the Plaintiffs seek to maintain this action on behalf

of themselves and as representatives of Putative Class Members who:

- obtained private Tuition Answer loans in amounts that exceeded the "Cost of Attendance";

- were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;

- have never reaffirmed any pre-petition Tuition Answer loan; and

- have nonetheless been subjected to the Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

Am. Compl. ¶ 73.

*This Preliminary Injunction Motion*

In the Preliminary Injunction Memorandum, the Plaintiffs argue that for at least the past

ten years, the Defendants have knowingly violated Bankruptcy Code Section 524 by collecting

on discharged debts, in violation of Putative Class Members' discharge orders and the statutory

discharge injunction.  Prelim. Inj. Mem. at 1. They assert that the Defendants made "direct-to-

consumer" loans to Putative Class Members without obtaining any certification from a Title IV

educational institution that these loans were within the cost of attendance and were, therefore, a

"qualified higher education expense." *Id.*

As a result, the Plaintiffs contend that hundreds of millions of dollars of Putative Class

Members' student loans are not excluded from discharge under Bankruptcy Code Section 523

and that the Defendants have been collecting or attempting to collect these debts, despite the fact

that they were discharged in bankruptcy. *Id.*  They argue that because the Defendants are

continuing to collect on discharged debts, this Court should enter a preliminary injunction

enjoining the Defendants from collecting on any "direct-to-consumer loan" that they cannot

establish does not exceed the cost of attendance.  *Id.*

The Plaintiffs state:

> "[t]o obtain a preliminary injunction, a party must: (1) demonstrate that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits for making them a fair ground for litigation, and a balance of hardship tipping decidedly in its favor."

Prelim. Inj. Mem. at 2 (quoting *Lusk v. Vill. of Coldspring*, 475 F.3d 480, 485 (2d Cir. 2005)).

At the same time, the Plaintiffs assert that under Section 105, a bankruptcy court may grant a

preliminary injunction to protect the debtor or the estate without a showing of irreparable injury.

Prelim. Inj. Mem. at 2.  According to the Plaintiffs, "'[a]n injunction against violation of the

discharge already exists by operation of law,'" and therefore the Plaintiffs "'in reality seek[] a

contempt order for the violation of an injunction that already exists.'"  Prelim. Inj. Mem. at 2-3

(quoting *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011)).

The Plaintiffs note that, as one bankruptcy court explained:

> ". . . it is manifestly proper, in this Court's view, to invoke section 105(a) 'to enforce or implement' the Court's earlier orders and to prevent abuses of process. Exercise of the Court's section 105(a) authority in this manner, and for this purpose, vindicates the interests of the *Court*, as much as (and perhaps more than) it vindicates the interest of the individual litigant.  Particularly in such a situation, it is not surprising that the usual grounds for injunctive relief, such as irreparable injury, need not be shown in a proceeding for an injunction under section 105(a)."

Prelim. Inj. Mem. at 3 (quoting *NWL Holdings, Inc. v. Eden Center, Inc.* (*In re Ames Dep't

Stores, Inc.*), 317 B.R. 260, 274 (Bankr. S.D.N.Y. 2004) (emphasis in original)).

The Plaintiffs also argue that in all events, the act of repeatedly attempting to collect a

debt that has been discharged constitutes irreparable injury for purposes of considering

preliminary injunctive relief.  Prelim. Inj. Mem. at 3 (citing *Diaz v. Heavy Action Recovery* (*In re

Diaz*), 526 B.R. 685 (Bankr. S.D. Tex. 2015); *Daniel v. Oaks and Johnson* (*In re Daniel*), 98

B.R. 73 (Bankr. M.D. Fla. 1989)).  As a result, the Plaintiffs argue that they and the Putative

Class Members will suffer irreparable harm if an injunction is not entered.  Prelim. Inj. Mem. at

4.

Further, the Plaintiffs argue that the Defendants have no legal basis for collecting on

debts that exceed the cost of attendance, and therefore, that they are likely to succeed on the

merits.  *Id.*

Next, the Plaintiffs argue that the balance of hardships tips in favor of them and the

Putative Class Members.  Without injunctive relief, they assert, they will continue to be harassed

by the Defendants as they pursue the collection of discharged debts.  And this will cause not only

the stress of harassing telephone calls and letters, but also the financial hardship and burden of

continued payment on discharged loans.  *Id.*  By contrast, the Defendants will not suffer hardship

at all from the entry of a preliminary injunction, because they do not have the legal right to

collect on these discharged debts.  In addition, these debts constitute a small portion of the

Defendants' overall loan portfolio.  *Id.*  And the Plaintiffs point out that in another action, the

Defendants have voluntarily agreed to a court order requiring them to discontinue collection on

"direct-to-consumer" loans made to individuals who received a discharge in bankruptcy and who

were not attending Title IV schools at the time they received their loans.  Prelim. Inj. Mem. at 5

(citing Agreed Order, *Crocker v. Navient Sols., LLC* (*In re Crocker*), Case No. 16-03175, Dkt.

122 (S.D. Tex. April 11, 2017) (the "*Crocker* Agreed Order").

Finally, the Plaintiffs argue that this Court should not require them to post a bond.  They

assert that Bankruptcy Rule 7065 provides that a court may grant a preliminary injunction on the

application of a debtor without requiring compliance with Federal Rule of Civil Procedure 65(c).

And in light of the financial resources of the Defendants and limited means of the class

members, a bond should not be required.  Prelim. Inj. Mem. at 5 (citing *Rivera v. Town of Huntington Hous. Auth.*, 2012 WL 19337667 (E.D.N.Y. May 29, 2012)).

*Navient's Opposition to the Preliminary Injunction Motion*

Navient opposes the entry of a preliminary injunction of any scope by this Court.

At the outset, Navient responds that Section 105 does not excuse the Plaintiffs from showing irreparable harm.  Opp. at 5.  It asserts that in each of the cases cited by Plaintiffs, the preliminary injunctive relief issued either protected a debtor's reorganization effort, or addressed the decision of another forum that threatened to deprive the bankruptcy court of jurisdiction over a dispute.  *Id*.  And Navient notes that none of the cases cited by Plaintiffs addresses any asserted violation of a discharge injunction.  Opp. at 6.

Next, Navient argues that when a bankruptcy court enters an order discharging a debtor from their liability on eligible, properly scheduled prepetition debts, it effects an injunction against the collection of those discharged debts.  *Id*.  It observes that Congress made the deliberate choice to codify the bankruptcy discharge in the form of an "'injunction.'"  Opp. at 7 (quoting 11 U.S.C. § 524(a)(2)).  And it notes that Congress made the deliberate choice not to create a private right of action for discharge violation claims in the Bankruptcy Code.  Opp. at 7. Navient argues that Congress's instruction is therefore clear: there is no private right of action for a debtor to assert a discharge violation claim against a creditor, and accordingly, such a claim must take the form of an action for contempt.  *Id*.  According to Navient, by omitting a private right of action for discharge violation claims and codifying the bankruptcy discharge as having injunctive effect, Congress necessarily imposed on the discharge the usual rules under which all injunctions exist, namely, that an injunction may only be enforced in a contempt proceeding before the issuing court.  Opp. at 8.

Citing *Taggart v. Lorenzen*, Navient asserts that the Supreme Court endorses this point:

> "The statutes specifying that a discharge order 'operates as an injunction,' §
> 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary
> or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with
> them the 'old soil' that has long governed how courts enforce injunctions."

Opp. at 8 (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)).

Navient also points to the Second Circuit's decision in *Anderson v. Credit One Bank,
N.A.* (*In re Anderson*), where it notes that the Second Circuit observed that "'the discharge
injunction is an order issued by the bankruptcy court and that the bankruptcy court alone
possesses the power and the unique expertise to enforce it.'" Opp. at 8 (quoting *Anderson v.
Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 391 (2d Cir. 2018)). It contends that this
limitation for a finding of contempt for violation of an injunction is jurisdictional, whether a
plaintiff seeks contempt sanctions, declaratory relief, or both. Opp. at 9 (citing *Alderwoods Grp.,
Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012)).

According to Navient, this position is supported by three considerations: "First, the
bankruptcy court that issued the discharge order retains jurisdiction to enforce it." Opp. at 9
(citing *Galaz v. Katona*, 841 F.3d 316, 322 (5th Cir. 2016); *Cox v. Zale Del., Inc.*, 239 F.3d 910,
917 (7th Cir. 2001)). Second, authorizing the bankruptcy court to interpret and enforce
discharge orders from foreign jurisdictions would "'put enforcement of the discharge injunction
in the hands of a court'" that lacked jurisdiction to enter the order in the first place. Opp. at 9
(quoting *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509-10 (9th Cir. 2002)). And third,
Navient asserts that "chaos" would result if a plaintiff could take an order from one jurisdiction
and forum shop to a different district that had an alternative, more sympathetic interpretation
than the issuing court. Opp. at 9 (citing *Alderwoods*, 682 F.3d at 970).

Further, Navient argues that while the discharge injunction is a statutory injunction,
neither the Supreme Court, the Second Circuit, nor any other circuit has distinguished between

16

"bespoke" injunctions crafted by a court and statutorily defined injunctions.  Opp. at 9-10.  It notes that other courts have not found this distinction to be meaningful, and that the Second Circuit has reasoned that "'[t]hough the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated.'"  Opp. at 10 (quoting *In re Anderson*, 884 F.3d at 390-91).  Navient asserts that nothing "'in the nature of the bankruptcy court or in the terms of the Bankruptcy [Code]'" authorizes a "special rule" that would enable it to interpret and enforce discharge orders entered by courts in "'foreign judicial districts.'"  Opp. at 10 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934)).

Navient also contends that the Fifth Circuit was presented with the question of interpretation of the statutory injunction in *Crocker v. Navient Solutions, L.L.C.* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019), and determined that the court that issues a discharge order is the sole venue where a contempt proceeding for a violation of the statutory discharge injunction may occur.  Opp. at 11 (citing *In re Crocker*, 941 F.3d at 216).

Likewise, Navient asserts that the Eleventh Circuit faced this same issue in *Alderwoods Group, Inc. v. Garcia*, where it considered whether "'a bankruptcy court in one federal district has jurisdiction to determine whether a debt was discharged in a bankruptcy case litigated in another federal district.'"  Opp. at 11-12 (quoting *Alderwoods*, 682 F.3d at 961).  Navient points out that, in *Alderwoods*, the Eleventh Circuit concluded that "'the court that issued the injunctive order alone possesses the power to enforce compliance with, and punish contempt of, that order.'"  Opp. at 12 (quoting *Alderwoods*, 682 F.3d at 970).  And as a result, the Eleventh Circuit held that a court in which a discharge violation claim is filed, but which did not enter the

underlying discharge order, "'lacked jurisdiction to entertain the complaint because the discharge injunction was never its to enforce.'"  Opp. at 12 (quoting *Alderwoods*, 682 F.3d at 971).

Next, Navient argues that the Plaintiffs cannot obtain a preliminary injunction preventing the collection of the discharged student loans belonging to them and Putative Class Members, as this relief was already achieved by their bankruptcy discharge orders.  Opp. at 13.  According to Navient, the Plaintiffs' requested preliminary injunction demands no more relief than what the Bankruptcy Code already provides to them, and granting successive injunctive relief on the same point would be superfluous.  Opp. at 13 (citing *Alderwoods*, 682 F.3d at 968; and *Barrientos*, 633 F.3d at 1190).

Navient then argues that the Plaintiffs' requested injunction is overbroad and presumes the existence of a certifiable class.  Opp. at 13.  It argues that Mr. Homaidan lacks standing to request a stay of collection actions on behalf of the Putative Class Members, as all of his student loans have been paid in full.  Opp. at 14.  And it asserts that no certifiable class exists because this Court lacks authority to interpret or enforce other the discharge orders of other bankruptcy courts, and because, among other defects, no common issues predominate in the Plaintiffs' claims, and the named Plaintiffs are not adequate class representatives.  *Id.*

As to the merits of the Plaintiffs' claim for preliminary injunctive relief, Navient asserts that they cannot meet their burden to obtain this relief.  Opp. at 15.  At the outset, it argues that the Plaintiffs are not likely to succeed on the merits.  *Id.*  In support of this position, Navient refers the Court to its Memorandum in Opposition to Summary Judgment.  (the "MSJ Opposition" or "MSJ Opp."), attached to the Opposition at Exhibit A.  *Id.*  And there, Navient argues that it was entitled to rely on certifications from student loan borrowers that their student loans would be used only for educational expenses and were within the cost of attendance.  MSJ

Opp., ECF No. 188, at 33.  It asserts that these promises and representations made by Mr. Homaidan and Ms. Youssef are either dispositive, or create a fact question sufficient to defeat summary judgment.  *Id.*

Navient also argues that the Plaintiffs will not be irreparably harmed if an injunction does not issue.  Opp. at 15.  At the outset, Navient states that the Court should require the Plaintiffs to prove this element for injunctive relief.  *Id.*  It argues that the Plaintiffs have not shown that, should they prevail in the Adversary Proceeding, money damages will not be sufficient to offset any damages that they may have sustained.  Opp. at 16.

Next, Navient contends that the cases cited by the Plaintiffs to support their positions that the act of attempting to collect on a discharged debt constitutes irreparable harm can be distinguished from the circumstances here.  Opp. at 16 (citing *In re Diaz*, 526 B.R. 685; and *In re Daniel*, 98 B.R. at 76).  As to *In re Diaz*, it asserts that the case may be distinguished because no court has ever made a determination that the Plaintiffs' private Tuition Answer Loans were discharged in bankruptcy, neither of the named Plaintiffs contested the dischargeability of their private Tuition Answer Loans prior to this Adversary Proceeding, and the Plaintiffs have offered no evidence of any abusive collection conduct.  Opp. at 16.  And as to *In re Daniel*, Navient argues that this case may be distinguished because there was no question as to whether the debt at issue was discharged; the creditor did not file a timely adversary proceeding to contest dischargeability, and the court did not disclose the basis for its finding of irreparable harm.  *Id.*

Navient also points out that the Plaintiffs' "substantial delay" in seeking a preliminary injunction weighs against their claims of imminent irreparable injury absent injunctive relief.  *Id.*  Navient asserts that the Plaintiffs waited over two years from the filing of the Adversary Proceeding to seek a preliminary injunction, and the Second Circuit has found that months-long

delays in seeking a preliminary injunction is a ground for denying such relief.  Opp. at 17 (citing *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995); and *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

And Navient argues that the balance of equities tips against the Plaintiffs' request for a preliminary injunctive relief.  Opp. at 17.  It argues that a preliminary injunction is unnecessary, as it would be successive relief because Putative Class Members have each received a discharge.  Accordingly, such relief would be unavailable.  Opp. at 18 (citing *Alderwoods*, 682 F.3d at 966, 970).  Also, Navient contends that a preliminary injunction pending the outcome of a dispute regarding dischargeability of student loans does not accord with the Supreme Court's decisions in *United Student Aid Funds, Inc. v. Espinosa* and *Tennessee Student Assistance Corp. v. Hood*, which, it asserts, place the burden on the Plaintiffs to seek a determination as to dischargeability and permit these loans to be collected until that determination is made.  Opp. at 18 (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268-69 (2010); *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004)).

Navient also argues that granting the Plaintiffs' request for a preliminary injunction would harm the Putative Class Members, as they would not be able to contact Navient with questions about their student loans or to make payments while interest would continue to accrue.  And if Navient ultimately prevails, the resumption of student loan payments could strain their financial resources.  Opp. at 19.  Finally, Navient asserts that in order to comply with a preliminary injunction, it will incur substantial administrative and other costs and damages, and that this burden will be compounded by the fact that a nationwide class has not yet been certified.  *Id*.

As to the question of the public interest, Navient points to the fact that Congress has enacted a broad exception to discharge for student loans.  It states that the public interest is not served by undermining this Congressional intent, effectively rewriting the Bankruptcy Code before a decision has been made on the merits of the Plaintiffs' claims.  Opp. at 20 (citing *Benson v. Corbin* (*In re Corbin*), 506 B.R. 287, 296 (Bankr. W.D. Wash. 2014)).  And Navient asserts that no court has ever found that student loans that state on their face that they are for qualified education expenses are dischargeable, or that a bankruptcy discharge extends to the full amount of these loans.  Navient asserts that "[i]mmature" or untested theories are particularly inappropriate for resolution on a nationwide basis.  Opp. at 20 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746-51 (5th Cir. 1996)).  As such, Navient contends that the Plaintiffs advance a theory that not only may be incorrect, but also may be against public policy.  Opp. at 21.

Next, Navient argues that the preliminary injunction sought by the Plaintiffs violates Rule 65, because the Plaintiffs' proposed order lacks the required specificity.  *Id.*  It states that the proposed order offers no reasons as to why the Court entered it and does not set forth the terms of the relief with sufficient specificity because, among other reasons, it does not state its duration or the act or acts restrained or required.  Opp. at 21-22.

Finally, Navient argues that in the event that preliminary injunctive relief is granted, the Plaintiffs must post a bond, as required by Rule 65(c).  Opp. at 23.  It asserts that the costs and damages that the Defendants would incur in complying with any Court-ordered preliminary relief are indeterminate, and potentially could be massive.  Navient also asserts that the amount of the bond cannot be set until after the Court rules on the Plaintiffs' motion for class certification and determines the size of the class, to the extent that a certifiable class exists at all.  Opp. at 24.

*The Plaintiffs' Reply in Support of the Preliminary Injunction Motion*

In reply, the Plaintiffs argue that under Bankruptcy Code Section 105, this Court may grant a preliminary injunction without a showing of irreparable injury.  Reply at 2.  And in all events, they argue that Navient's continued acts of collecting on Putative Class Members discharged student loans constitutes irreparable harm.  Reply at 2-3.

Next, the Plaintiffs reply that the Supreme Court's decisions in *Espinosa* and *Hood* do not support Navient's position.  Reply at 3.  They state that in these cases, the loans at issue were plainly nondischargeable under the terms of Section 523(a)(8), and the debtors sought undue hardship discharges of these nondischargeable student loans.  Reply at 3 (citing *Espinosa*, 559 U.S. 260, and *Hood*, 541 U.S. 440 (2004)).  And here, by contrast, the Defendants' "direct-to-consumer" loans do not satisfy the requirements of Section 523(a)(8), and are discharged debts. Reply at 3-4.  The Plaintiffs argue that even if a presumption of nondischargeability applied here, as in undue hardship cases, that presumption has been rebutted, for the reasons set forth in their Partial Summary Judgment Motion.  Reply at 4. And they state that the Defendants simply have no defense to the dischargeability of private student loans that exceed the cost of attendance.  *Id.*

The Plaintiffs also argue that this Court may enter an order directing preliminary injunctive relief.  *Id.*  They state that this Court has the authority under Section 105 to state that certain acts violate Section 524, and to order parties to stop these violative acts under penalty of contempt.  *Id.*  And the Plaintiffs contend that Section 105 gives the Court the power to direct any equitable remedy "'demonstrably necessary to preserve a right elsewhere provided in the [Bankruptcy] Code,'" including any form of relief "'to the extent that such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code and provide full remedial relief.'"  Reply at 4 (quoting *Solow v. Kalikow* (*In re Kalikow*), 602 F.3d 82, 97 (2d Cir. 2010)).  They add that a court always has the power, in enforcing an injunction, to require a party to take

22

specific steps to comply with the injunction.  Reply at 4 (citing *Tronok, Inc. v. Anadarko Petroleum Corp.*, 594 B.R. 21, 55 (S.D.N.Y. 2016)).  And the Plaintiffs argue that a court has the inherent authority to order a party to stop violating an injunction.  Reply at 5 (citing *In re Diaz*, 526 B.R. at 688).

In addition, the Plaintiffs reply that the Court has the authority to exercise jurisdiction over a nationwide class.  Reply at 5.  They state that the Defendants acknowledge that this Court has jurisdiction to certify a nationwide class.  Reply at 5 (citing Opp. at 9, n.1).  In addition, the Plaintiffs maintain that the Court should exercise that jurisdiction here, as the Defendants are engaging in conduct affecting the Putative Class Members on a nationwide basis.  Reply at 5-6 (citing *In re Brizinova*, 565 B.R. 488, 503 (Bankr. E.D.N.Y. 2017)).

And the Plaintiffs argue that their request for preliminary injunctive relief is not overbroad.  Reply at 6.  They assert that the class as defined in their Class Certification Motion is the operative class for such relief, and that the class should not be limited to borrowers with private Tuition Answer Loans.  *Id*.  And they urge that the fact that the Amended Complaint references private Tuition Answer Loans does not prevent the Plaintiffs from seeking the certification of a class as justified by the facts.  *Id*.  The Plaintiffs also note that their Class Certification Motion was made at the same time that this Preliminary Injunction Motion was made, and that it remains pending.  *Id*.

Next, the Plaintiffs reply that a preliminary injunction will not cause a hardship to Putative Class Members.  *Id*.  They state that these borrowers will not suffer any hardship if a preliminary injunction is entered, because the Court can direct the Defendants to provide notice to the Putative Class Members that the Defendants have been ordered not to take any acts to collect these debts, and they do not need to make payments until they receive further notice from

the Court.  Reply at 7.  The Plaintiffs assert that borrowers will understand that they are not

"relieved of their student loan debt" because the notice will explain that the injunction is a

preliminary order of the Court, and that a final determination has not been made.  *Id.*

The Plaintiffs also argue that this Court should not impose a bond.  Reply at 8.  They

state that the Defendants have not described or supported any claim of injury.  Reply at 9.  They

also note that the Defendants do not offer evidence, by affidavit or otherwise, of the asserted

substantial administrative costs that they will incur if a preliminary injunction is entered.  Reply

at 7.  The Plaintiffs state that the Defendants have unclean hands, as they continue to seek to

collect on Putative Class Members' loans that have been discharged.  Reply at 7-8.  And they

point out that in a different case, the Defendants agreed to discontinue their collection activities

on "direct-to-consumer" career training loans made to borrowers that received a discharge in

bankruptcy, and that order did not cause any administrative disruption or undue cost.  Reply at 8

(citing *Crocker* Agreed Order).

And the Plaintiffs reply that the Defendants' claim that their proposed order does not

meet the requirements of Rule 65 is without merit.  Reply at 8.  They note that this Court can set

forth its reasons for issuing an order in a separate decision, negating this concern.  *Id.*  They also

point out that the Defendants do not need a description of the meaning of an act of collection

because – as the Defendants acknowledge – Section 524 is already a statutory injunction against

acts to collect on a discharged debt.  *Id.*

*The Plaintiffs' Supplemental Memorandum of Law in Support of the Preliminary Injunction Motion*

In their Supplemental Memorandum, the Plaintiffs argue that the recent application of

first principles of bankruptcy law shows that they are likely to prevail on the merits of their

claims.  Supp. Mem. at 1.  The Plaintiffs point out that Navient bears the burden of showing that

the debts held by Putative Class Members are nondischargeable.  Supp. Mem. at 2.  And they note that the Putative Class Members sought and obtained relief, including a bankruptcy discharge, in their Chapter 7 bankruptcy cases.  *Id*.  The Plaintiffs argue that once a discharge has been entered, Section 524 enjoins the collection of any debts that have been discharged.  *Id*.  They assert that this injunction is "automatic" – that is, the debtor does not need to take any further action for the prohibition on the collection of a discharged debt to apply.  *Id*.

Next, the Plaintiffs contend that Navient does not meet any of the narrow exceptions to discharge contained in Section 523.  Supp. Mem. at 3.  They argue that the exceptions to discharge contained in Section 523 are to be read narrowly, allowing for the broadest discharge of debts, in order to protect a debtor's fresh start.  Supp. Mem. at 3 (citing *Mazloom v. Navient Sols., LLC* (*In re Mazloom*), 2022 WL 950932, at *4 (Bankr. N.D.N.Y. Mar. 29, 2022)).  And the Plaintiffs add that in furtherance of that policy, creditors – and not debtors – bear the burden of proving that an exception to discharge applies.  Supp. Mem. at 3 (citing *Homaidan*, 3 F.4th at 600).

The Plaintiffs argue that whether or not a debt is dischargeable depends on the characteristics of the debt prior to the date of the discharge order.  Supp. Mem. at 3 (citing *McDaniel v. Navient Sols. LLC* (*In re McDaniel*), 590 B.R. 537, 552 (Bankr. D. Colo. 2018), *aff'd*, 97 F.3d 1083 (10th Cir. 2020)).  That is, they observe, a debt is either discharged or not at the time the discharge order is entered.  Supp. Mem. at 3 (citing *In re Haroon*, 313 B.R. 686, 689 (Bankr. E.D. Va. 2004)).  And they state:

> This fact is vitally important, and also one of black letter law: the statutory discharge injunction becomes operational immediately upon entry of the discharge order.  If a creditor is unsure of whether or not a particular debt was discharged, it risks violating the discharge injunction if it acts to collect a debt that was in fact discharged.  *In re Haroon*, 313 B.R. at 689.  In other words, a creditor acts at its own peril and risks violating the discharge injunction of § 524

if it acts to collect a debt before first obtaining a determination that the debt was
in fact discharged.

Supp. Mem. at 3 (citing *In re Haroon*, 313 B.R. at 689; and citing 4 Collier on Bankruptcy, ¶

523.04 (16th ed. revised 2020).

The Plaintiffs argue that it has already been established that the loans at issue here do not

come within Section 523(a)(8)(A)(i) or Section 523(a)(8)(A)(ii).  Supp. Mem. at 4 (citing

*Homaidan*, 3 F.4th at 595).  As a result, to avoid liability, Navient now bears the burden of

showing that each of the loans at issue comes within Section 523(a)(8)(B).  Supp. Mem. at 4.

They note that Navient told its own investors that certain of the loans that it held were

dischargeable in bankruptcy in a memorandum circulated to those investors in 2009.  Supp.

Mem. at 5 (quoting Declaration of George Carpinello (the "Carpinello Decl."), ECF No. 179,

Exh. R (Offering Memorandum)).  And they contend that while Navient knew that its private

education loans that exceeded the cost of attendance were dischargeable, it nonetheless had a

uniform policy of collecting on these loans after discharge, without regard to whether the loan

was, in fact, nondischargeable.  Supp. Mem. at 5.  The Plaintiffs assert that Navient is

simultaneously arguing that it cannot determine whether a loan is within the cost of attendance

and acknowledging that some loan amounts on their face exceed the cost of attendance.  Supp.

Mem. at 6.  Accordingly, the Plaintiffs argue that they have met their burden to show a

substantial likelihood of success on the merits.  *Id*.

In addition, the Plaintiffs state that this Court has the authority to grant a class-wide

preliminary injunction prior to class certification.  *Id*.  They assert that it is within the Court's

discretion to grant a class-wide preliminary injunction prior to, simultaneously with, or even

after certifying a class.  *Id*.  And they point out that "'where the claims are styled as on behalf of

all similarly situated persons . . . "the Court need not formally certify a class in order to issue the

requested preliminary relief.""" Supp. Mem. at 6-7 (quoting *Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 39 (S.D.N.Y. 2020) (quoting *Yang v. Kellner*, 458 F. Supp. 3d 199, 208-09 (S.D.N.Y. 2020), *aff'd sub nom.*, *Yang v. Kosinski*, 805 F. App'x 63 (2d Cir. 2020), *and aff'd*, 960 F.3d 119 (2d Cir. 2020))). The Plaintiffs argue that class certification rulings are provisional and can be revisited at any time, allowing for this flexibility. Supp. Mem. at 7.

The Plaintiffs contend that the requested injunctive relief is appropriate and can be properly tailored to the circumstances present here. *Id.* They argue that Navient's argument that any injunctive relief would be overbroad because it would be forced to identify which loans actually exceeded the cost of attendance should be rejected. *Id.* In addition, they note that Navient has always known what the law is, and that private loans that exceed the cost of attendance are subject to bankruptcy discharge. *Id.* And they observe that Navient is in possession of thousands of school certification forms that seek to gather information on the cost of attendance. Supp. Mem. at 7-8. They point out that that "Navient specifically warned its investors that some of its loans were dischargeable in bankruptcy." Supp. Mem. at 8. As such, the Plaintiffs contend that Navient has always had the ability to determine whether a loan was within the cost of attendance and, therefore, excluded from the scope of a debtor's discharge. *Id.*

*Navient's Supplemental Memorandum in Opposition to the Plaintiff's Motion for a Preliminary Injunction*

In its Supplemental Opposition, Navient responds that the Plaintiffs cannot demonstrate that they are entitled to a nationwide injunction, or any other preliminary injunctive relief. Supp. Opp. at 3.

Navient argues that recent case law cited by the Plaintiffs to support their argument for a preliminary injunction – *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021); *McDaniel v. Navient Solutions, LLC*, 97 F.3d 1083 (10th Cir. 2020); and *Mazloom v. Navient Solutions, LLC*,

2022 WL 950932 (Bankr. N.D.N.Y. Mar. 29, 2022) – does not address the specific Bankruptcy

Code section at issue here, Section 523(a)(8)(B).  *Id.*  Rather, it states, those cases address other

subsections of Section 523(a)(8) and do not apply here.  Supp. Opp. at 3-4.

Navient also points to the Second Circuit's decision in *Tingling v. Educational Credit

Management Corp.* (*In re Tingling*), 990 F.3d 304 (2d Cir. 2021), where the court stated that

"'[s]tudent loans are presumptively nondischargeable in bankruptcy.'"  Supp. Opp. at 4 (quoting

*In re Tingling*, 990 F.3d at 308).  As this case confirms, it states, the Plaintiffs bear the initial

burden to raise whether the presumption of dischargeability for student loans is overcome with

respect to their private Tuition Answer Loans.  Supp. Opp. at 4-5.  And Navient cites *In re Conti*,

982 F.3d 445 (6th Cir. 2020), and argues that the Sixth Circuit "validated another of the key

points that Navient has made since the inception of this case – *i.e.*, that the purpose test,

originally developed in cases construing 11 U.S.C. § 523(a)(8)(A), applies 'with equal strength'

to the analysis of 'qualified education loans under subsection (8)(B).'"  Supp. Opp. at 5 (quoting

*In re Conti*, 982 F.3d at 449).  According to Navient, this principle makes it highly unlikely that

the Plaintiffs will prevail on the merits.  Supp. Opp. at 5.

And Navient responds that the Plaintiffs have not shown a likelihood of success on the

merits.  *Id.*  It contends that in the TRO Decision, the Court summarized and adopted the legal

basis for the Plaintiffs' view that they have a likelihood of succeeding on the merits, reasoning

that, in substance: (1) for every student who attends a Title IV institution, there is a specific

dollar amount, objectively verifiable, that constitutes the "cost of attendance"; (2) for every such

student who obtains a Tuition Answer Loan, there is another specific dollar amount, also

objectively verifiable, that constitutes the amount the student has borrowed; and (3) if the

objectively verifiable loan amount exceeds the objectively verifiable cost of attendance, the loan

is not a "qualified education loan," rendering the loan dischargeable in bankruptcy.  Supp. Opp. at 6.

> Navient asserts that in adopting this framework:

> [This] Court appears in the TRO Decision[] to have (1) concluded, as a factual matter, that the Tuition Answer loans of the Named Plaintiffs (Homaidan and Youssef) exceeded their costs of attendance and (2) assumed that there are some number of similarly situated putative class members who also obtained Tuition Answer loans where, mathematically, the loan amount exceeded the cost of attendance.

*Id*.  Navient disagrees with the Court's reasoning and factual findings as set forth in the TRO Decision, and argues that they are not supported by the record.  *Id*.  Instead, it states, under a correct interpretation of the law and the facts, the Plaintiffs do not have a likelihood of succeeding on the merits here.  *Id*.  Navient adds that, even following the Plaintiffs' logic, only the portion of a loan that exceeds the cost of attendance should be discharged.  Supp. Opp. at 9-10.

Navient asserts that, by referring to Internal Revenue Code § 221(d) in Section 523(a)(8)(B), Congress chose to link the definition of "qualified education loan" to the purpose for which the indebtedness was incurred.  Supp. Opp. at 7.  It argues that "[s]ince an 'indebtedness' is a 'qualified education loan' if it is 'incurred solely to pay' the cost of attendance, the question ultimately becomes:  Why did the borrower incur the debt?"  *Id*.

Next, Navient argues that with this textual understanding of the relevant statutes, the court is tasked with discerning the borrower's reason or purpose for incurring the debt.  Supp. Opp. at 8.  According to Navient, "'[a] loan's purpose is centrally discerned from the lender's agreement with the borrower.'"  Supp. Opp. at 8 (quoting *In re Conti*, 982 F.3d at 449).  As such, it contends that its practice of relying on borrower certifications in loan applications and loan

agreements to determine whether a loan is a qualified education loan and nondischargeable under Section 523(a)(8)(B) complies fully with the Bankruptcy Code.  Supp. Opp. at 8.

Navient also points to 15 U.S.C. § 1638(e)(3), which requires private lenders to obtain borrower certifications that their student loans do not exceed the cost of attendance, and then argues that this statutory provision means that a private education lender has no duty to verify or go beyond those certifications.  *Id*.  And it notes that this is consistent with Section 523(a)(8)(B).  Supp. Opp. at 8-9.  Navient contends that dischargeability may be determined based on facts as to which the parties have stipulated, so long as the stipulated facts address the requirements of Section 523.  Supp. Opp. at 9 (citing *Klingman v. Levison*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987)).  Navient then asserts that it relies on stipulations, representations, and promises in loan documents with Putative Class Members that not only overlap with the elements of Section 523(a)(8)(B), but also are dispositive as to the borrower's purpose in entering into the loan.  Supp. Opp. at 9.

With respect to the factual record, Navient argues that as to Mr. Homaidan, it has shown that all of his financial aid for 2006 was less than the average cost of attendance that Emerson College published in its 2006 catalogue – and accordingly, the Plaintiffs have not shown that Mr. Homaidan is likely to succeed on the merits.  Supp. Opp. at 11.

And as to Ms. Youssef's cost of attendance, Navient argues that the Plaintiffs have offered only the conclusory statement, unsubstantiated by supporting documents, that "'[t]he cost of attendance for an in-state student living off campus at Queens College was $16,816 for the academic year 2005 to 2006; $17,293 for the academic year of 2006 to 2007; and $17,725 for the academic years of 2007 to 2008.'"  Supp. Opp. at 11 (quoting Declaration of Reeham Youssef (the "Youssef Decl."), ECF No. 178-1, ¶ 3).  It asserts that Ms. Youssef does not connect these

assertions to the categories set forth in the definition of "cost of attendance" as set forth in 20 U.S.C. § 1087*ll*.  Supp. Opp. at 11.  Instead, Navient states, it appears that Ms. Youssef simply pulled these numbers from the Integrated Postsecondary Education Data Systems or "IPEDS" database, which does not capture any student's individualized cost of attendance and similarly omits critical cost components.  *Id*.  Here as well, Navient agues, the Plaintiffs have not shown that Ms. Youssef is likely to succeed on the merits.  *Id*.

To the same effect, Navient points to Putative Class Member R.P., for whom the Plaintiffs attempt to offer evidence on cost of attendance in the form of an IPEDS printout.  Supp. Opp. at 12.  It asserts that this printout does not show R.P.'s individualized cost of attendance and omits key cost categories listed in 20 U.S.C. § 1087*ll* as critical components of "cost of attendance."  *Id*.  Navient argues that this evidence is not competent to establish R.P.'s individualized and actual cost of attendance, leaving the Plaintiffs with no competent evidence to establish, even under their legal theory, that any claim on R.P.'s behalf is likely to succeed on the merits.  *Id*.  Accordingly, and here too, Navient asserts that the Plaintiffs have not established a likelihood of success on the merits.  *Id*.

And Navient argues that the Plaintiffs have not shown a likelihood of irreparable harm in the absence of preliminary injunctive relief.  *Id*.  It contends that the theory of irreparable injury advanced by the Plaintiffs and adopted by the Court is at odds with controlling Second Circuit authority and is otherwise flawed.  *Id*.  It asserts that the conclusion that Section 105 dispenses with the need to find irreparable injury cannot be reconciled with the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).  *Id*.  Following *Taggart*, Navient argues that unexcused delay must be considered in any action under Section 105 for injunctive relief.  *Id*.

And it contends that unjustifiable delay in seeking injunctive relief precludes a finding of irreparable injury.  Supp. Opp. at 13.

In addition, Navient states, this Court based its conclusion in the TRO Decision that a showing of irreparable injury is not required in large part on the notion that an injunction is needed to vindicate the interests of the Court, rather than the interests of individual debtors.  Supp. Opp. at 13 (citing *In re Homaidan*, 640 B.R. at 850).  It asserts that if this were true, that concept would apply only to the Plaintiffs and the Putative Class Members who received discharges in the Eastern District of New York.  Supp. Opp. at 13.  And Navient argues that such reasoning lends additional support to its own argument that any relief should be limited to borrowers who received discharges in *this* Court – the Eastern District of New York.  *Id.*

Further, Navient argues that the Plaintiffs have not shown that they are entitled to an injunction of the geographic and substantive scope they seek.  Supp. Opp. at 14.  Navient states that, as it has argued in opposition to the Plaintiffs' Class Certification Motion, any authority this Court has to enforce discharge orders – whether by certifying a class or by entering a pre-certification injunction impacting Putative Class Members – is limited to borrowers who received discharges in the Eastern District of New York.  *Id.*  And similarly, Navient argues that the Plaintiffs would not be entitled to injunctive relief with respect to loans other than private Tuition Answer Loans.  Supp. Opp. at 15.

Navient argues that the Plaintiffs are not entitled to a burden-shifting injunction.  Supp. Opp. at 16.  It points out that the Plaintiffs have failed to identify the specific class members in whose favor a preliminary injunction would operate, and have similarly failed to identify any loans, other than those of the two named Plaintiffs, that may have actually exceeded the cost of attendance.  *Id.*  Therefore, it contends that the preliminary injunction sought by the Plaintiffs

would require Navient to determine which borrowers are affected, and which loans it must place into a collection cease.  Supp. Opp. at 16-17.  Navient asserts that the Plaintiffs cite no authority for this kind of burden-shifting relief, and that none exists.  Supp. Opp. at 17.  To obtain an injunction, the movant must identify specific, real-word facts and demonstrate that, based on those facts, the movant is at least "likely" to succeed on the merits of a viable legal cause of action.  Supp. Opp. at 17 (citing *Andino v. Fischer,* 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)) (collecting Second Circuit cases).  Where, as here, the movant seeks a mandatory injunction that would alter the status quo, the burden is even higher, requiring proof of a "clear" or "substantial" likelihood of success.  Supp. Opp. at 17 (quoting *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003)).

Navient argues that here, it is "patently improper" to issue a blanket injunction in favor of everyone who could hypothetically have a claim against it, thereby foisting on Navient the burden to identify those who cannot or are unlikely to prevail.  Supp. Opp. at 18.  In other words, according to Navient, the Plaintiffs seek to shift to Navient the burden to identify those parties who should not be class members and to identify those loans and borrowers on which the Plaintiffs do not have any prospect of succeeding on the merits.  *Id.*  It contends that because the Plaintiffs have suggested that Navient be enjoined from collection activities on all Title IV loans that were "direct to consumer," this approach would grant injunctive relief – at least until Navient came forward with individualized evidence on "cost of attendance" – in favor of the borrowers who received loans that did not exceed the cost of attendance and whose loans are unquestionably nondischargeable under 11 U.S.C. § 523(a)(8)(B).  Supp. Opp. at 19.

Navient argues that this burden-shifting approach is incorrect because upon the issuance of a discharge, debts scheduled as student loans are presumed to be nondischargeable, and any

debtor who contends that her student loans should be treated differently has the burden to file an adversary proceeding.  Supp. Opp. at 20 (citing *In re Tingling*, 990 F.3d at 308).  It is only then – after the debtor has challenged nondischargeability – that the substantive burden shifts to the creditor to prove application of one of Section 523(a)(8)'s exceptions to discharge.  Supp. Opp. at 20.  It asserts that this distinction is important because the only Putative Class Members that have filed an adversary proceeding claiming that their loans were subject to discharge are Mr. Homaidan and Ms. Youssef.  Supp. Opp. at 20.  By this logic, for all other borrowers in the putative class, no burden has yet been shifted to Navient.  *Id*.  Additionally, Navient points out that, in any event, a plaintiff seeking a preliminary injunction retains the burden to show that it is likely to succeed on the merits of all issues, even those on which the defendant, at final trial, will bear the burden of proof.  Supp. Opp. at 20 (citing *eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1134 (S.D. Fla. 2021)).

Accordingly, Navient argues that the Plaintiffs must show that there is a substantial likelihood that Navient will be unable to meet its burden at trial, and the Plaintiffs must make that showing with respect to each borrower and loan for which they seek provisional relief. Supp. Opp. at 21 (citing *Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*, 990 F.2d 25, 27 (1st Cir. 1993); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1275 n.3 (11th Cir. 2001); *Mova Pharma Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998); *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996)).  It maintains that the Plaintiffs have not even attempted to make this showing but have instead simply assumed the issue away by proposing a structure that would impermissibly shift the burden to Navient.  Supp. Opp. at 21.

As such, Navient asserts that the Plaintiffs' attempt to restrain collection activities on loans that even they would admit were within the cost of attendance (and thus nondischargeable

under Section 523(a)(8)(B) runs directly into constitutional limitations on the exercise of judicial power.  *Id.*  They state that even the Plaintiffs would admit that these borrowers have been subjected to no wrongdoing and have suffered no harm.  *Id.*  If any one of them were to sue Navient individually for discharge violations, they would be unable to assert any injury in fact fairly traceable to the challenged action and would thus lack Article III standing.  Supp. Opp. at 21 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Navient argues that the Plaintiffs are not entitled to an injunction that fails to identify the loans and borrowers within its scope.  Supp. Opp. at 23.  Navient points out that Rule 65 provides that every restraining order and every order granting a preliminary injunction must "'(A) state the reasons why it issued; (B) state its terms specifically; and (C) described in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.'"  Supp. Opp. at 23 (quoting Fed. R. Civ. P. 65(d)).  It states that the Plaintiffs' proposed order violates Rule 65's requirements in multiple ways, and would put Navient at risk of contempt without any meaningful notice of the activities that it is precluded from conducting.  Supp. Opp. at 24.

Navient contends that the Plaintiffs' proposed order assumes that all "direct-to-consumer" loans are nondischargeable under Section 523(a)(8)(B), but notes that the 322,000 loans identified by Navient as potentially at issue include loans that were issued under programs guaranteed or funded, at least in part, by nonprofit institutions.  *Id.*  These loans, it asserts, may well be nondischargeable under Section 523(a)(8)(A)(i), rendering the proposed order overbroad. *Id.*

Navient also argues that the proposed order reflects the assumption that there is a universe of "direct-to-consumer" loans without nonprofit guarantees or funding that is known to

or easily discernable by Navient.  Supp. Opp. at 25.  Even if that were true, according to Navient, the proposed order would still be problematic, since it fails to identify that universe, either by loan number, by borrower name, by program name, or by some other means that would give Navient fair notice of the specific loans at issue.  *Id.*  It requests that any injunction provide that level of specificity within its four corners; otherwise, Navient will be unable to comply without "referring to other document[s]," in violation of Rule 65(d)(1)(C).  Supp. Opp. at 25 (quoting Fed. R. Civ. P. 65(d)(1)(C)).

And Navient points out that the proposed order references only loans, with no mention of the borrowers or obligors on those loans.  Supp. Opp. at 25.  Navient's position is that, on its face, the proposed order requires the cessation of collection activities on all "direct-to-consumer" loans, even those on which *no* obligor (whether the primary borrower or a co-borrower) ever received a bankruptcy discharge.  *Id.*  To that extent, Navient asserts that the proposed order is overbroad, as it would bar Navient from engaging in legal collection activity.  Supp. Opp. at 25-26.

And finally, Navient argues that the Plaintiffs are not entitled to an injunction that fails to identify the proscribed conduct.  Supp. Opp. at 26.  It argues that the proposed order violates Rule 65 by failing to define the activities that constitute "collection or acts of collection."  *Id.*  For this reason as well, according to Navient, the proposed order lacks the specificity required by Rule 65.  *Id.*

*The Plaintiffs' Supplemental Reply in Further Support of the Preliminary Injunction Motion*

In their Supplemental Reply, the Plaintiffs argue that Navient bears the burden of proof to show that certain loans are nondischargeable; that cost of attendance is determined by objective criteria based upon ascertainable numbers; that Navient cannot rely upon boilerplate certifications in the promissory notes; that they have shown a likelihood of success on the merits;

that the Plaintiffs will be irreparably injured absent a preliminary injunction; that the Court has jurisdiction to issue an injunction related to a nationwide class; that the Plaintiffs are entitled to an injunction that applies to all of Navient's private loans that exceed the cost of attendance, not just private Tuition Answer Loans; and that the preliminary injunction would not apply to all of Navient's loans.  Supp. Reply at i, 1-2, 8-9.

As to whether Navient bears the burden of proof as to the nondischargeability of a particular loan, the Plaintiffs point to the Second Circuit's prior decision in this case, *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021), and Bankruptcy Rule 4005.  They distinguish *In re Tingling*'s statement regarding presumptions by pointing out that the issue in *In re Tingling* – the question of whether an undue hardship discharge would be available in the context of an undisputedly nondischargeable federal student loan – is unrelated to the matter before the Court here – the question of whether a private student loan that exceeds the cost of attendance is within the scope of the borrower's discharge.  Supp. Reply at 3 (citing *In re Tingling*, 990 F.3d 304).

As to the determination of the cost of attendance, the Plaintiffs reply that this may be established by objective criteria.  Supp. Reply at 4.  They dispute Navient's position that the borrower's intent is determinative of whether a loan is a "qualified education loan" by pointing to Section 523(a)(8)(B) and the Internal Revenue Code.  *Id*.  And they distinguish *In re Conti*, where the loan was indisputably within the cost of attendance, and the issue turned on the purpose stated in the loan documents, as opposed to the borrower's actual use of the funds.  Supp. Reply at 4 (citing *In re Conti*, 982 F.3d at 449).  The Plaintiffs submit that the statutory structure as set forth in the Bankruptcy Code and other statutes calls for calculations based on objective cost of attendance figures, not subjective considerations.  Supp. Reply at 5.

As to Navient's reliance on "boilerplate language in its promissory notes," the Plaintiffs state that this is "against public policy." *Id*. The Plaintiffs dispute Navient's position that the borrower certifications state facts, as opposed to legal conclusions, pointing to the language in the certification stating that the borrower "certif[ies] that this loan is a qualified education loan" and "therefore this loan is nondischargeable in bankruptcy except pursuant to 11 U.S.C. § 523(a)(8)." Supp. Reply at 5-6 (citing Youssef Decl. ¶ 5). And the Plaintiffs contend that "[t]his is expressly a waiver of dischargeability, which is unenforceable as a matter of law." Supp. Reply at 6. The Plaintiffs also note that such waivers are irrelevant when, as a matter of fact, the loans exceed the cost of attendance. *Id*.

As to their likelihood of success on the merits and the question of irreparable injury, the Plaintiffs cite the TRO Decision to support their contention both that they are likely to succeed on the merits and that they will suffer irreparable injury in the absence of injunctive relief. Supp. Reply at 6-7 (citing *In re Homaidan*, 640 B.R. at 847-51). They argue that the Court's reasoning that "'[a]n attempt to collect on a discharged debt is not just about money – it is about the hardships and burdens that impair a debtor's efforts to achieve the "fresh start" that is a centerpiece of the bankruptcy system'" applies with the same force to the Preliminary Injunction Motion as it did to the TRO Motion. Supp. Reply at 7 (citing *In re Homaidan*, 640 B.R. at 851). And the Plaintiffs maintain that the "years long delay" that Navient highlights should not prejudice their motion, when the Preliminary Injunction Motion "has been pending for several years," during which it was "vigorously litigated." Supp. Reply at 7.

As to whether this Court has jurisdiction to consider relief on behalf of a nationwide class, the Plaintiffs cite prior decisions of this Court and other bankruptcy courts within the Second Circuit, including the decision of the Southern District of New York Bankruptcy Court in

*Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 641 B.R. 1 (Bankr. S.D.N.Y. 2022).  Supp.

Reply at 8.  They note that in *Anderson*, the bankruptcy court found:

> "Jurisdiction flowing from those sections of the Bankruptcy Code and 28 U.S.C.
> §§ 157(a)-(b) and 1334(b) therefore can be exercised to determine whether, in
> recognition of the power conferred by Bankruptcy Rules 7023, the Court should
> certify a nationwide class of debtors whose identical discharge orders were
> allegedly breached by implementation of the same, uniformly applied policy, the
> issue presently before this Court."

Supp. Reply at 8 (quoting *In re Anderson*, 641 B.R. at 19).

As to whether they are entitled to an injunction that reaches all of Navient's private

student loans that exceed the cost of attendance, not just private Tuition Answer Loans, the

Plaintiffs again point to this Court's TRO Decision in *In re Homaidan* to show that they have

demonstrated a likelihood of success on the merits with respect to all of Navient's private student

loans held by Putative Class Members that exceed the cost of attendance, not just private Tuition

Answer Loans.  Supp. Reply at 9 (citing *In re Homaidan*, 640 B.R. at 848).  And the Plaintiffs

disagree with Navient's interpretation of the relief requested in their proposed order, and state

that they now seek a preliminary injunction that "should only apply to those loans that exceed the

cost of attendance."  Supp. Reply at 9.  The Plaintiffs submit that a preliminary injunction can be

sufficiently clear without identifying each individual loan, and state that it was Navient's

responsibility to determine whether a loan was within the cost of attendance before it made and

began collecting on those loans – especially after receiving notice that a borrower received a

discharge in a bankruptcy case.  Supp. Reply at 9-10.

## **The Applicable Legal Standards**

### *The Elements of a Discharge Injunction Violation Claim*

Bankruptcy Code Section 524 describes the effect of a discharge.  It states that a

bankruptcy discharge "operates as an injunction against the commencement or continuation of an

action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524. In order adequately to allege a claim for violations of a discharge injunction, a plaintiff-debtor must allege that the debtor received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge. *Motichko v. Premium Asset Recovery Corp.* (*In re Motichko*), 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008). Of course, for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt. *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018) (stating that "[t]he discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt *that is discharged*" (emphasis added)); *In re Azevedo*, 506 B.R. 277, 283 (Bankr. E.D. Cal. 2014) (observing that "[s]howing a violation of a discharge order by definition requires showing specifically that the order applies to the debt on which the violation is premised") (citing 11 U.S.C. § 524(a)(1)-(2)); *Otten v. Majesty Used Cars, Inc.* (*In re Otten*), 2013 WL 1881736, at *6-8 (Bankr. E.D.N.Y. May 3, 2013) (analyzing the scope of a discharge injunction issued in the plaintiff's bankruptcy case in the context of determining whether the defendants' actions violated the discharge injunction).

*Bankruptcy Jurisdiction Under Judiciary Code Section 1334*

Judiciary Code Section 1334 sets forth the grounds for federal jurisdiction over bankruptcy matters. Section 1334(a) provides that "[e]xcept as provided in [Section 1334(b)], the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a).

Section 1334(b) confers original but not exclusive jurisdiction upon district courts in all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Significantly, Section 1334(b) provides the bankruptcy courts with the ability

to reach beyond the assets of a particular bankruptcy estate – as one court noted in considering a motion to dismiss a putative nationwide class, "[a] court no longer is restricted to dealing only with assets under its control; it also has the ability to deal with other matters affecting debtors." *Noletto v. Nationsbanc Mortg. Corp.* (*In re Noletto*), 244 B.R. 845, 849 (Bankr. S.D. Ala. 2000).

And Section 1334(e) confers exclusive jurisdiction upon the district and bankruptcy courts of the debtor's property, the property of the estate.  28 U.S.C. § 1334(e)(1).  As the court observed in *In re Noletto*, Section 1334(e) "vests the 'home court' with the exclusive power to control and distribute property of the estate."  *In re Noletto*, 244 B.R. at 854.  But equally, "[Section] 1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code."  *Id.  See Harker v. Wells Fargo Bank, NA* (*In re Krause*), 414 B.R. 243, 255-56 (Bankr. S.D. Ohio 2009) (finding that "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violations of provisions of the [Bankruptcy] Code, other federal statutory provisions, or other remedies").

*Authority of the Bankruptcy Court Under Bankruptcy Code Section 105*

Bankruptcy Code Section 105 grants the bankruptcy court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  It also provides that the court is not precluded from "*sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  *Id.*

While Section 105 is often viewed as a broad grant of authority, it is similarly well established that it also "limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'"  *FDIC v. Colonial Realty Co.*, 966

41

F.2d 57, 59 (2d Cir. 1992) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206

(1988)).

As the Second Circuit has observed:

> The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing. This language "suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective."

*New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003)

(quoting 2 *Collier on Bankruptcy* ¶ 105.01[1] (15th ed. 2003)).

At the same time, nothing in the Bankruptcy Code restricts a bankruptcy court from

issuing orders to enforce a discharge injunction, and the Supreme Court's decision in *Taggart*

"confirms the dual nature of the power conferred by the Judiciary Code's grant of bankruptcy

jurisdiction to enforce the discharge" by finding "the source of power to enforce the discharge in

sections 105(a) and 524(a)(2) of the Bankruptcy Code, not just the contempt power." *In re*

*Anderson*, 641 B.R. at 18 (citing *Taggart*, 139 S. Ct. at 1801).

### *The Requirements for the Entry of a Preliminary Injunction*

The starting point for consideration of a request for a preliminary injunction is

Bankruptcy Rule 7065 and its companion rule, Federal Rule 65. Bankruptcy Rule 7065 states

that "Rule 65 [of the Federal Rules of Civil Procedure] applies in adversary proceedings, except

that a . . . preliminary injunction may be issued on application of a debtor, trustee, or debtor in

possession without compliance with Rule 65(c)." Fed. R. Bankr. P. 7065.

The standard for the entry of a preliminary injunction has been stated plainly by the

Second Circuit. A party seeking a preliminary injunction must demonstrate:

> "(1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of

> hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction."

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

First, a party seeking a preliminary injunction "need only 'show a likelihood of success on the merits of at least one of [its] claims.'" *Home It, Inc. v. Wen*, 2020 WL 353098, at *5 (E.D.N.Y. Jan. 21, 2020) (quoting *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019)). In addition, "a plaintiff 'need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent.'" *Home IT, Inc. v. Wen*, 2020 WL 353098, at *5 (quoting *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018)).

Second, as to irreparable injury, "[i]rreparable injury has been defined as harm where 'remedies available at law, such as monetary damages, are inadequate to compensate' the plaintiff." *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011) (quoting *Salinger*, 607 F.3d at 80). "'Thus, if it appears that the potential harm to the moving party is simply a monetary loss, the potential injury is normally not deemed irreparable and hence does not justify injunctive relief.'" *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013) (quoting *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982)). The showing of irreparable injury is "the most important prerequisite for the issuance of a preliminary injunction." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

Further, a party moving for a preliminary injunction must generally show that, "on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Salinger*, 607 F.3d at 82. In the bankruptcy context, however, the "irreparable harm

requirement" need not be met if the action that the debtor seeks to enjoin "threatens the reorganization process or . . . impair[s] the court's jurisdiction with respect to a case before it." *Alert Holdings, Inc. v. Interstate Protective Servs.* (*In re Alert Holdings, Inc.*), 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992).  More specifically, the Court may issue a preliminary injunction if the action that the Debtor seeks to enjoin "would embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the Debtor's estate and reorganization prospects."  *Alert Holdings*, 148 B.R. at 200.

Third, as to the balance of hardships, "a court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding the requested relief.'"  *Main Street Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter*, 555 U.S. at 24 (2008)).  The party moving for preliminary injunctive relief "must establish that the 'balance of hardships tips in their favor regardless of the likelihood of success.'"  *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Salinger*, 607 F.3d at 79-80).  And in this context, "[t]he relevant harm is the harm that . . . occurs to the parties' legal interests" and "cannot be remedied after a final adjudication, whether by damages or a permanent injunction."  *Salinger*, 607 F.3d at 81.

Finally, as to the question of the public interest, "[i]n considering the public interest element for granting an injunction, the focus is generally on how the parties' specific actions would impact the public at large."  *Roman Catholic Diocese of Syracuse, N.Y. v. LG 35 Doe* (*In re Roman Catholic Diocese of Syracuse, N.Y.*), 628 B.R. 571, 583 (Bankr. N.D.N.Y. 2021) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 13-14 (2000)).  "Courts have long recognized that public interest is a 'supple principle' with 'as many and as variegated applications . . . as the situations that have brought it into play.'"  *Roman Catholic Diocese*, 628

B.R. at 583 (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

To the same effect, the Second Circuit has noted that the holdings in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006), and *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) "stand for the proposition that when a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest." *S.E.C. v. Citigroup Glob. Markets Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012).

## Discussion

The party seeking a preliminary injunction must demonstrate a likelihood of success on the merits or "'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the plaintiff's favor'"; "a likelihood of 'irreparable injury in the absence of an injunction'"; "that 'the balance of hardships tips in the plaintiff's favor'"; and finally, "that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80). The Court will address each of these elements in turn.

But first, the Court addresses a set of threshold questions in the context of Navient's argument that the Plaintiffs seek improper preliminary injunctive relief, including the questions of whether the Plaintiffs have Article III standing to bring the Preliminary Injunction Motion, whether the preliminary injunction that the Plaintiffs seek is prohibitory or mandatory, and whether the preliminary injunction they seek improperly shifts a burden to the Defendants.

### *Whether the Plaintiffs Seek an Improper Preliminary Injunction*

The Court begins with the fundamental question of standing, and in particular, whether the Plaintiffs and the Putative Class Members have Article III standing to seek relief here.

Here, at the outset, the record shows that Mr. Homaidan and Ms. Youssef have Article III

standing to bring a claim against the Defendants based on their allegations that they were injured by Navient's attempts to collect or collecting on their student loans that were in excess of the cost of attendance and discharged in bankruptcy, and their claims that their injuries may be redressed by damages and injunctive relief. *See Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 420 (S.D.N.Y. 2014) (stating that "[p]laintiff here has Article III standing to sue Defendants based on allegations that it suffered injury . . . and that its injury is redressable by the award of statutory damages under those two statutes as well as injunctive relief").

At the same time, "Article III standing is distinct from the issue of 'class standing,' *i.e.*, standing to assert claims on behalf of others." *Bais Yaakov*, 36 F. Supp. 3d at 420. "'[T]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)). The conclusion that a named plaintiff has a case or controversy "'does not automatically establish that [the named plaintiff] is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to "fairly and adequately protect the interests of the class."'" *NECA-IBEW*, 693 F.3d at 159 (quoting *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (quoting Fed. R. Civ. P. 23(a))).

As the Second Circuit has stated, in distilling a broad standard for class standing, "in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he 'personally

has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,'

and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have

caused injury to other members of the putative class by the same defendants."  *NECA-IBEW*, 693

F.3d at 162 (first quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); and then quoting *Gratz v.*

*Bollinger*, 539 U.S. 244, 267 (2003)).

Here, the record also shows that the Plaintiffs have tailored their request for a preliminary

injunction to encompass only those Putative Class Members who, at this time and at this stage in

these proceedings, have standing to seek this relief.  That is, the Plaintiffs do *not* seek this relief

on behalf of borrowers whose private Tuition Answer Loans or other private student loans do *not*

exceed the cost of attendance.  Nor do they seek preliminary injunctive relief on behalf of

Putative Class Members whose loans exceed the cost of attendance, but who no longer have

outstanding any balance to be paid – because as to those borrowers, there are no ongoing

collection efforts.

And in all events, the Plaintiffs have limited their request for preliminary injunctive relief

to Ms. Youssef and those similarly situated Putative Class Members who currently have loans

that are subject to Navient's ongoing collection efforts.  Prelim. Inj. Mem. at 1.  That is, they

seek this relief only on behalf of those Putative Class Members with private Tuition Answer

Loans and other private loans that exceed the cost of attendance, and that have an outstanding

balance that is due.  Those loans, they assert, were discharged, and Navient's collection activities

should cease.  *Id.*

Next, the Court must determine whether the preliminary injunction sought by the

Plaintiffs is prohibitory or mandatory.  This is a distinction with a difference, because it affects

the legal standard that a plaintiff must meet in order to be entitled to relief.

As the Second Circuit has observed, "[c]ourts refer to preliminary injunctions as prohibitory or mandatory. Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League, LLC v. U.S. Soccer Federation, Inc.*, 883 F.3d 32, 36-37 (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League*, 883 F.3d at 37 (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

A proposed injunction's effect on the status quo informs the standard, and therefore the Court must ascertain the status quo, which is the "'last actual, peaceable uncontested status which preceded the pending controversy.'" *N. Am. Soccer League*, 883 F.3d at 37 (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014)). Importantly, the "'status quo' in preliminary-injunction parlance is really a 'status quo ante.' . . . . This special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *N. Am. Soccer League*, 883 F.3d at 37 n.5 (quoting *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983)).

Here, the "last actual, peaceable uncontested status which preceded the pending controversy" is the situation that existed *before* Navient engaged in collection efforts on the Plaintiffs' and the Putative Class Members' outstanding student loans and *after* the Plaintiffs and the Putative Class Members received their bankruptcy discharges. *N. Am. Soccer League*, 883 F.3d at 37 (quoting *Mastrio*, 768 F.3d at 120).

Viewed another way, it is Navient's collection efforts on the Putative Class Members' assertedly discharged student loans that give rise to this dispute. *See, e.g.*, *General Mills, Inc. v.*

*Chobani, LLC*, 158 F. Supp. 3d 106, 117 (N.D.N.Y. 2016) (finding that the "last peaceable uncontested status" was immediately before an advertising campaign was launched, because the campaign assertedly constituted false advertising in violation of the Lanham Act, "since the claims made in that advertising are what give rise to the underlying dispute").  And the preliminary injunction sought by the Plaintiffs on behalf of themselves and the Putative Class Members with outstanding loan balances subject to collection does neither more nor less than restore the status quo to the point before Navient's collection of those assertedly discharged debts began.

Accordingly, the relief sought by the Plaintiffs is prohibitory, not mandatory, and the Plaintiffs need not meet the heightened preliminary injunction standard for success on the merits.

And finally, it is no barrier to preliminary injunctive relief that the Putative Class Members entitled to such relief would need to be identified by Navient.  In the Amended Complaint, the Plaintiffs assert their claims on behalf of themselves and all other similarly situated Putative Class Members, and they have described that class in terms that are sufficient to inform Navient as to the parameters of the relief that they seek.  It is well established that within these parameters, the burden to prove that an exception to discharge applies rests on the creditor, not the debtor.  *See, e.g.*, *Homaidan*, 3 F.4th at 600 (stating that "[t]he creditor bears the burden of establishing that a debt is excepted from discharge"); *In re Mazloom*, 2022 WL 950932, at *3 (citing *Kashikar v. Turnstile Capital Mgmt., LLC* (*In re Kashikar*), 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017)) (observing that "[i]n an action to determine the dischargeability of a purported student loan debt pursuant to § 523(a)(8), the creditor has the initial burden to establish, by a preponderance of the evidence, the existence of the debt and that the debt is an educational loan within the statute's parameters"); *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779

(Bankr. N.D.N.Y. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)) (holding that "[a] creditor seeking to except a debt from discharge under § 523(a) must prove the necessary elements by a preponderance of the evidence").

It is worth noting that courts have reached similar conclusions in response to similar arguments, including in the context of temporary or preliminary injunctive relief.  For example, in *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal. 2020), a putative class of immigration detainees brought an action against the U.S. Immigration and Customs Enforcement ("ICE") challenging the conditions of their confinement, and in particular, asserting that they were at "serious risk of becoming infected with COVID-19 because ICE has refused to alter conditions at the facilities so as to enable people to keep their distance from one another." *Zepeda Rivas*, 445 F. Supp. 3d at 38.  The plaintiffs sought a "temporary restraining order requiring ICE to take measures that will enable social distancing."  *Id.*

The court rejected ICE's argument that relief should be denied because "it will take a significant amount of time for the agency to prepare a list of detainees with health vulnerabilities" and would be "'burdensome'" and inappropriate to require ICE to undertake this task.  *Zepeda Rivas*, 445 F. Supp. 3d at 40.  The court ordered ICE to provide it and class counsel with "information and records regarding each detainee at the facilities," sufficient to "implement a system to consider individual bail applications" and to craft appropriate relief.  *Zepeda Rivas*, 445 F. Supp. 3d at 41.

That is, if the Plaintiffs are able to establish a likelihood of success on the merits of their claims, which they assert on behalf of themselves and all other similarly situated Putative Class Members, then – as the Second Circuit has held in this case and elsewhere – it will be Navient's task, not the Plaintiffs' task, to establish that a loan is within the scope of the exception to

discharge set forth in Section 523(a)(8)(B), in order to justify its continued collection efforts as to a Plaintiffs or a Putative Class Member. *See Homaidan*, 3 F.4th at 600. *See also In re Conti*, 982 F.3d at 448 (stating that "[a] creditor must prove a debt is excepted from discharge by a preponderance of the evidence"). And for these reasons, the Plaintiffs do not seek an impermissible burden-shifting injunction.

In sum, the Court concludes that as to these threshold questions concerning the Plaintiffs' request for preliminary injunctive relief, the Plaintiffs have Article III standing to seek this relief on behalf of themselves and the Putative Class Members, and they seek preliminary injunctive relief only on behalf of Putative Class Members who are similarly situated and have standing to seek the same relief. In addition, the preliminary injunction sought by the Plaintiffs is prohibitory, not mandatory, in nature because it relates back to the "'last actual, peaceable uncontested status'" between the parties and seeks to return the parties to the status quo before Navient's asserted violations of the Plaintiffs' bankruptcy discharges began. *N. Am. Soccer League*, 883 F.3d at 37 (quoting *Mastrio*, 768 F.3d at 120). And finally, the preliminary injunction that the Plaintiffs seek does not improperly shift a burden to Navient or the Defendants.

### *Whether the Preliminary Injunction Sought by the Plaintiffs Violates Federal Rule of Civil Procedure 65*

Next, the Court turns to the question of whether the preliminary injunction sought by the Plaintiffs violates Federal Rule of Civil Procedure 65.

Navient argues that the preliminary injunction sought by the Plaintiffs violates Rule 65 because, in substance, the proposed preliminary injunction order submitted by the Plaintiffs does not meet the requirements of that rule. Opp. at 21. In particular, Navient asserts that in violation of Rule 65, the proposed preliminary injunction order offers no reasons as to its entry by this

Court.  *Id*.  It also contends that the proposed order cannot be entered because it does not state its scope and duration – that is, the proposed order is silent as to the length of time that it would be in effect, and the act or acts by Navient that would be restrained or required.  Opp. at 21-22.

Navient also argues that the proposed order seems to be based on the assumption that all "direct-to-consumer" loans are dischargeable pursuant to Bankruptcy Code Section 523(a)(8)(B), and points out that this overlooks the fact that the database of 322,000 loans produced by Navient in discovery includes loans issued under programs guaranteed or funded, at least in part, by nonprofit institutions, and that these loans are likely nondischargeable under Bankruptcy Code Section 523(a)(8)(A)(i).  So, to this extent, Navient asserts, the Plaintiffs' proposed order is overbroad.  Supp. Opp. at 24.

And Navient argues that the proposed order assumes that there is a universe of "direct-to-consumer" loans without nonprofit guarantees or funding that it can easily identify, but does not identify which of the loans in Navient's database come within this universe.  As a consequence, Navient states, it would not be able to comply with the proposed order directing preliminary injunctive relief without "'referring to other document[s],' in violation of Rule 65(d)(1)(C)."  Supp. Opp. at 25 (quoting Fed. R. Civ. P. 65(d)(1)(C)).

Next, Navient states that the Plaintiffs' proposed order references only loans, with no description of the borrowers or obligors on those loans.  Navient asserts that as a consequence, the proposed order could conceivably be interpreted to require it to cease its collection activities on *all* "direct-to-consumer" loans, including those loans as to which *no* obligor – whether the primary borrower or a co-borrower – ever received a bankruptcy discharge.  On this additional basis, Navient asserts that the proposed order is overbroad, as it would bar Navient from engaging in legal collection activity.  Supp. Opp. at 25-26.

The starting point for addressing the questions identified by Navient is Federal Rule of Civil Procedure 65, made applicable here by Bankruptcy Rule 7065.  Rule 65 provides that "every order granting an injunction and every restraining order must:  (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).

Navient is correct that any order entered by this Court in response to the Preliminary Injunction Motion must be clear, concise, and in compliance with the requirements of Rule 65. As the Second Circuit has observed, "[a] court is required to frame its orders so that those who must obey them will know what the court intends to forbid."  *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980) (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).  "'[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.'"  *Diapulse Corp.*, 626 F.2d at 1111 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).  "It is for this reason that Fed. R. Civ. P. 65(d) . . . provides that every order granting an injunction shall be specific in its terms and describe in reasonable detail the acts sought to be restrained."  *Diapulse Corp.*, 626 F.2d at 1111.

Similarly, there can be no doubt that the responsibility to comply with the requirements of Rule 65(d) belongs to this Court.  That is, in crafting any order that may be entered in response to the Preliminary Injunction Motion, this Court must take care to "state the reasons why it issued; . . . state its terms specifically; and . . . describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  When courts do not meet these standards, their orders do not withstand

appellate scrutiny.  *See Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967) (concluding that "there was not sufficient compliance with Rule 65(d)" when "[t]he court stated no valid reason for the issuance of the injunction" and the order "d[id] not specifically describe the act or acts sought to be restrained"); *Diapulse Corp.*, 626 F.3d at 1111 (citations omitted) (observing that "[a]n order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny"); *Brumbly Metals, Inc. v. Bargen*, 275 F.2d 46, 49 (7th Cir. 1960) (citation omitted) (observing that "an order which did not comply with Rule 65(d) was not necessarily void; but that if it were assailed on appeal, it should be set aside for failure to comply with the rule").

And this Court agrees with Navient that an order enjoining conduct must be clear – in stating the reasons why it issued, stating its terms with specificity, and stating precisely the actions that are restrained or required.  This is a significant task indeed, but it is not an insurmountable one, and if the Plaintiffs have met the applicable standards for preliminary injunctive relief, it does not render the issuance of a preliminary injunction unauthorized in these circumstances.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, do not seek an "unauthorized" preliminary injunction.

### *Whether the Plaintiffs Have Shown a Likelihood of Success on the Merits or a Sufficiently Serious Question Going to the Merits*

The first element that a plaintiff must establish in order to be entitled to preliminary injunctive relief is "'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping

decidedly in the plaintiff's favor.'" *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)).

In this adversary proceeding, the Plaintiffs, on behalf of themselves and the Putative Class Members, seek a declaratory judgment, permanent injunctive relief, and damages arising from the Defendants' alleged "pattern and practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2) by collecting on the Plaintiffs' and the Putative Class Members' discharged student loans – loans which, the Plaintiffs state, are within the scope of their bankruptcy discharges because they exceed the applicable cost of attendance and therefore do not qualify for the exception to discharge described in Bankruptcy Code Section 523(a)(8)(B).  Am. Compl. ¶¶ 2, 64, 87-94.

Specifically, in the Amended Complaint, the Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9) that the Plaintiffs' and the Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance are not nondischargeable student loans or qualified education loans, and were therefore discharged upon entry of their bankruptcy discharges.  Am. Compl. ¶¶ 64, 88.  Additionally, the Plaintiffs allege that the Defendants violated the Plaintiffs' and the Putative Class Members' statutory bankruptcy discharge injunctions because their private Tuition Answer Loans were discharged, the Defendants were notified of their discharge orders, and the Defendants nevertheless continued to collect on their loans.  Am. Compl. ¶¶ 89-92.

The Plaintiffs argue that the Defendants do not have a legal basis to collect on loans that exceed the cost of attendance, and therefore, that they are likely to succeed on the merits of their claims.  Prelim. Inj. Mem. at 4.  They assert that their private student loans do not come within any of the exceptions to discharge contained in Section 523.  Supp. Mem. at 3.  And they argue

that Section 523's discharge exceptions should be read narrowly, in order to protect a debtor's fresh start.  Supp. Mem. at 3 (citing *In re Mazloom*, 2022 WL 950932, at *4).  The Plaintiffs also assert that it has already been established in this case that the loans at issue do not come within the scope of Section 523(a)(8)(A)(i) or Section 523(a)(8)(A)(ii).  As a consequence, they state, Navient must cease its collection activities on these loans, or show that a loan comes within the scope of Section 523(a)(8)(B) because it does not exceed the cost of attendance.  Supp. Mem. at 4.

In addition, the Plaintiffs note that Navient told its own investors that certain of the loans in its portfolio were dischargeable in bankruptcy in a 2009 offering memorandum circulated to investors.  Supp. Mem. at 5.  They argue that on the one hand, Navient knew that its private education loans that exceeded the cost of attendance were dischargeable in bankruptcy – but on the other, Navient followed a policy of collecting on these loans after discharge, regardless of the circumstances.  *Id*.  And the Plaintiffs maintain that Navient asserts that it cannot determine whether a loan is within the cost of attendance, while at the same time it acknowledges that some of its loans – on their face – exceed the cost of attendance.  Supp. Mem. at 6.  For all of these reasons, the Plaintiffs state that they have a substantial likelihood of success on the merits of their claims.  *Id*.

In response, Navient argues that it was, and is, entitled to rely on certifications from student loan borrowers that these loans would be used only for educational expenses within the cost of attendance.  MSJ Opp. at 33.  It asserts that Mr. Homaidan's and Ms. Youssef's representations, and those of the Putative Class Members, in their loan documentation establish that the Plaintiffs are not likely to succeed on the merits of their discharge violation claims.  *Id*.

Navient also points to the Sixth Circuit's observation that "'a loan's purpose is centrally

discerned from the lender's agreement with the borrower,'" and states that, in substance, it does not need to look beyond these borrower's certifications to ascertain whether a loan is excluded from the borrower's bankruptcy discharge.  Supp. Opp. at 8 (quoting *In re Conti*, 982 F.3d at 449).  For these reasons, Navient states that its practice of relying on borrower certifications in loan applications and loan agreements is a sufficient basis to determine whether a loan is a qualified education loan that meets all of the nondischargeability requirements of Section 523(a)(8)(B), and satisfies the requirements of the Bankruptcy Code.  Supp. Opp. at 8.

To the same effect, Navient cites 15 U.S.C. § 1638(e)(3), which requires a private education lender to obtain a certification from the borrower that their student loans do not exceed the cost of attendance.  *Id*.  It asserts that consistent with Section 523(a)(8), a private lender may rely on these certifications, and need not take steps to confirm their accuracy.  Supp. Opp. at 8-9.

And Navient contends that the dischargeability of a debt, including a student loan, may be determined based on "facts to which the parties have stipulated" and "stipulations, representations, and promises" so long as those "facts" overlap with the elements of Section 523 that are at issue.  Supp. Opp. at 9 (citing *Klingman*, 831 F.2d at 1296 n.3).  It points to statements in the loan documents of the Plaintiffs and the Putative Class Members as to the purpose of their loans, and argues that these statements not only "overlap" with Section 523(a)(8)(B)'s elements but also "are conclusive on the precise issue [here] – the borrower's purpose in incurring the loan."  Supp. Opp. at 8-9.

As stated above, in order to prove their claim for violations of a discharge injunction, the Plaintiffs must show that they received a discharge, the Defendants received notice of the discharge, and the Defendants intended the acts that violated the discharge.  *In re Motichko*, 395 B.R. at 31.  And for a discharge injunction claim to lie, the debt at issue must be within the scope

of the debtor's dischargeable debt.  *See In re Eppolito*, 583 B.R. at 826.

Much of the record relating to these matters appears to be undisputed.  As to Ms. Youssef and similarly situated Putative Class Members, the parties appear not to dispute that these individuals took out private Tuition Answer Loans or other private loans owned or serviced by the Defendants, that they received a discharge in their Chapter 7 bankruptcy cases, that the Defendants received notice of those discharges, that the Defendants sought to collect on their loans, and that these loans have outstanding balances.

What is disputed, however, is whether the private loans at issue are within the scope of the Plaintiffs' and the Putative Class Members' dischargeable debt.  *Id*.  In *Homaidan*, the Second Circuit concluded that private student loans do not qualify for an exclusion from discharge under Section 523(a)(8)(A)(ii), because these loans are not an "educational benefit" under that Section.  As the court explained, Section 523(a)(8)(A)(ii) "covers scholarships, stipends, and conditional education grants; and § 523(a)(8)(B) covers private loans made to individuals attending eligible schools for certain qualified expenses."  *Homaidan*, 3 F.4th at 604. And as the court observed:

> Navient's broad reading – under which *any* loan is nondischargeable under [Section] 523(a)(8)(A)(ii) if it was used to further one's education – would draw virtually all student loans within the scope of [Section] 523(a)(8)(A)(ii).  That construction provides too much.  If it were adopted, the other subsections of [Section] 523(a)(8) – both of which delineate specific categories of nondischargeable educational debt – would be swallowed up. . . .

> The evolution of [Section] 523(a)(8) confirms that it is not a catch-all for educational loans.

*Homaidan*, 3 F.4th at 602-03 (emphasis in original).

That is, and as the Second Circuit has explained, Section 523(a)(8)(A)(ii) does not have a role to play in the analysis of the dischargeability of the Putative Class Members' private Tuition

Answer Loans or other private loans, because "by constructing a statute with three distinct subsections, 'Congress intended each [one] to have a distinct function and to target different kinds of debt[].'" *Homaidan*, 3 F.4th at 603 (quoting *Inst. of Imaginal Stud. v. Christoff* (*In re Christoff*), 527 B.R. 624, 634 (9th Cir. B.A.P. 2015)).

And Section 523(a)(8)(B) plainly excludes certain private student loans – described as "qualified education loan[s], as defined in [Internal Revenue Code] section 221(d)(1)," from the scope of a debtor's bankruptcy discharge – but only where specified criteria are met.  11 U.S.C. § 523(a)(8)(B).  These criteria include that the student borrower attended or intended to attend a Title IV institution and received a private loan that is within the cost of attendance at that institution as defined by Internal Revenue Code Section 221(d).  26 U.S.C. § 221(d).

In addition, "cost of attendance" is not a description of an individual student's personal cost of completing a year of education.  Rather, as the court explained in *In re Conti*, "20 U.S.C. § 1087*ll* lists a series of expenses that comprise the 'cost of attendance,' including sums for tuition & fees, room & board, books, materials, supplies, transportation, and 'miscellaneous personal expenses' for enrolled students, *in amounts determined by the university*."  *In re Conti*, 982 F.3d at 448 (emphasis added).

This result is not affected by what Navient has characterized as the "purpose test" for assessing whether a private student loan is within or outside a debtor's discharge.  As the court in *In re Conti* noted, it is the "initial purpose" of the loans at issue, "rather than their actual uses, [that determines] whether they fall within the scope of [Section 523(a)](8)(B)."  *In re Conti*, 982 F.3d at 449.  And as Chief Judge (and former Bankruptcy Judge) Cole observed, "allowing debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the

student loan system." *Id.*

But this does not mean that the threshold requirement that a private student loan come within the "cost of attendance" is somehow read out of Section 523(a)(8)(B). And indeed, as the *In re Conti* court noted, "none of the loan amounts exceeded the cost of attendance . . . for the relevant enrollment period minus the maximum sum of [the applicable financial aid]." *In re Conti*, 982 F.3d at 447. *See In re Conti*, 982 F.3d at 449, 450 (stating that "the loan amounts did not exceed the cost of attendance at Michigan minus Conti's only applicable scholarships and financial aid" and "the loan amounts fall within the total cost of attendance, minus any other applicable financial aid"). *See Fernandez-Lopez v. Nat'l Collegiate Student Loan Tr. 2006-2 (In re Fernandez-Lopez)*, 2021 WL 5312990, at *9 (Bankr W.D. Mich. Feb. 10, 2021) (finding that unlike the situation in *In re Conti*, the court could not conclude that the debtor's student loan was exempted from discharge because, among other factors, "the loan exceeded the cost of attendance by about three times").

So plainly, when the applicable criteria are met, a private student loan may well be excluded from a debtor's bankruptcy discharge. And the nondischargeability of the loan will not change, even if the student borrower puts the funds to a different "purpose" by "misus[ing] the funds for non-educational expenses." *In re Conti*, 982 F.3d at 449. But just as plainly, and as a matter of logic, if those criteria are *not* met, then the exclusion from discharge does *not* apply.

Navient also urges that as a matter of the factual record, the Plaintiffs and the Putative Class Members – including the named plaintiffs Mr. Homaidan and Ms. Youssef – have not shown that they are likely to succeed on the merits because, in substance, the numbers as to their private student loans, financial aid, and cost of attendance simply do not add up.

As to Mr. Homaidan, Navient states that his financial aid for 2006 was less than Emerson

College's average cost of attendance as published in its 2006 catalogue.  Supp. Opp. at 11.

And as to Ms. Youssef, it contends that the Plaintiffs have offered only the conclusory statement, unsubstantiated by any supporting documents, that "'[t]he cost of attendance for an in-state student living off campus at Queens College was $16,816 for the academic year 2005 to 2006; $17,293 for the academic year of 2006 to 2007; and $17,725 for the academic years of 2007 to 2008.'"  Supp. Opp. at 11 (quoting Youssef Decl. ¶ 3).  It states that Ms. Youssef has not linked these conclusions to the cost categories set forth in the "cost of attendance" definition set forth in 20 U.S.C. § 1087*ll*, and instead, that she "simply pulled the numbers in her Declaration from the IPEDS database, which . . . does not capture any student's individualized cost of attendance, and . . . fails to capture critical cost components."  Supp. Opp. at 11.

Navient also points to Putative Class Member R.P., and states that for this individual, the Plaintiffs present nothing more than an IPEDS printout.  Supp. Opp. at 12.  Navient asserts that the printout does not capture R.P.'s individualized cost of attendance and omits key cost categories listed in 20 U.S.C. § 1087*ll* as critical components of "cost of attendance."  *Id.*  Navient argues that here too, this is not sufficient to establish R.P.'s individualized and actual cost of attendance.  *Id.*  And as a result, Navient asserts, the Plaintiffs have presented no competent evidence to establish, even under their legal theory, that any claim on R.P.'s behalf is likely to succeed on the merits.  *Id.*

Navient's arguments concerning the record before the Court on this Preliminary Injunction Motion are not persuasive, for at least two reasons.

At the outset, Navient's argument that IPEDS data somehow cannot play a role in the determination of whether a debtor's private student loan is within the scope of their bankruptcy discharge because it does not reflect that debtor's individualized, personal circumstances

misconstrues the meaning and application of "cost of attendance" in the context of Section 523(a)(8)(B).

As this and other courts have found, a borrower's "cost of attendance" is not determined by the individual student borrower's individualized choices.  It is not a question of whether a student is thrifty, or moderate, or extravagant.  Rather, as the Sixth Circuit found, "the 'cost of attendance'" includes "sums for tuition & fees, room & board, books, materials, supplies, transportation, and 'miscellaneous personal expenses' for enrolled students, *in amounts determined by the university*."  *In re Conti*, 982 F.3d at 448 (emphasis added).

While the costs incurred by individual students – and individual debtors – may vary widely based on their individual circumstances and choices, the "amounts determined by the university" based on specified criteria including tuition and fees, room and board, "books, materials, supplies, transportation, and 'miscellaneous personal expenses'" are "determined by the university" and reported on the IPEDS data system.  *In re Conti*, 982 F.3d at 448.  *See* Reply Declaration of Mark Kantrowitz, ECF No. 220, at 2, ¶ 4.  In *In re Conti*, the court looked to the cost of attendance "as determined by the university" and as certified by the school's financial aid office, rather than the plaintiff's individualized costs, to determine that their loans did not exceed the cost of attendance.  *In re Conti*, 982 F.3d at 447.

And separately, this Court has previously considered whether and to what extent IPEDS data may be considered as part of the record on the question of whether a private student loan exceeds the cost of attendance.  In *Golden v. National Collegiate Student Loan Trust 2005-3* (*In re Golden*), 2022 WL 362913 (Bankr. E.D.N.Y. Feb. 4, 2022), this Court assessed whether to strike portions of an expert's report on grounds that it stated legal opinions, rather than expert opinions.  There, the Court concluded that the report would be stricken in part, to the extent that

it stated, "legal opinions, interpretations, or conclusions . . . or alternatively, states a legal opinion on the ultimate issues to be decided." *In re Golden*, 2022 WL 362913, at *14.  At the same time, the Court concluded that the expert's report would not be stricken to the extent that it stated, "expert opinion, based on [the expert's] education, experience, and expertise." *In re Golden*, 2022 WL 362913, at *15.

The Court also found that IPEDS data stated or quoted in the expert's report concerning cost of attendance would not be stricken:

> [T]o the extent that an expert's testimony . . . simply states or quotes from . . . survey responses and data reported to IPEDS, that is not a statement of legal opinion, or for that matter expert opinion at all . . . And to this extent, the Motion to Strike is denied.
>
> . . .
>
> The Motion to Strike . . . is denied to the extent that the [Expert] Report states or quotes from . . . survey responses and data reported to IPEDS.

*In re Golden*, 2022 WL 362913, at *14-15.

As a consequence, the Plaintiffs have shown that to the extent that their private student loans, including private Tuition Answer Loans, do not meet the criteria of Section 523(a)(8)(B), they are within the scope of their bankruptcy discharges.  And they have shown this with respect to their private Tuition Answer Loans and those of similarly situated Putative Class Members – students who attended or intended to attend Title IV institutions and received private loans owned or serviced by the Defendants that exceeded the cost of attendance at such institutions as defined by Internal Revenue Code Section 221(d), who obtained bankruptcy discharges after January 1, 2005, who have not reaffirmed their loans, and who have been, and may continue to be, subjected to the Defendants' actions to collect on their loans – because, by the very terms of the Plaintiffs' claims and class definition, these private student loans that exceed the cost of

attendance are outside the scope of Section 523(a)(8)(B)'s exclusion from discharge.  *See* Class Cert. Mot. at 15.  *See also Homaidan*, 3 F.4th at 605.

Finally, Navient's argument that certifications by the Plaintiffs and the Putative Class Members in their loan documentation that their loans were within the cost of attendance and would be used only for qualified educational expenses establish that these loans are nondischargeable is not persuasive, for several reasons.

At the outset, courts agree that such standardized "boilerplate" certifications or statements by borrowers are not enforceable in bankruptcy for the purpose of determining dischargeability.  *See, e.g.*, *Tamasco v. Nicholls* (*In re Nicholls*), 2010 WL 5128627, at *2 (Bankr. E.D.N.Y. Dec. 10, 2010) (agreeing that "prepetition waivers of dischargeability are unenforceable as against public policy"); *Hayhoe v. Cole* (*In re Cole*), 226 B.R. 647, 651 (B.A.P. 9th Cir. 1998) (holding that a stipulated judgment in which a chapter 7 debtor agreed that a debt would be nondischargeable under Section 523(a)(2) was an impermissible waiver of the bankruptcy discharge); *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779-80 (Bankr. N.D.N.Y. 2008) (stating that "pre-petition waivers of discharge are fundamentally void and offend the public policy of promoting a fresh start for individuals").

As the Bankruptcy Appellate Panel explained in *In re Cole*, this is because "there is no recognized exception to discharge for prepetition waivers of discharge or dischargeability."  *In re Cole*, 226 B.R. at 653.  Nor should there be, because "Section 727(b) states that all debts are dischargeable in bankruptcy unless specifically excepted under § 523."  *In re Cole*, 226 B.R. at 653 (citing 11 U.S.C. § 727(b)).  That is, as the court observed, "[i]f bankruptcy courts enforced prepetition waivers of discharge, they would effectively be creating an exception to discharge that Congress had not enumerated."  *In re Cole*, 226 B.R. at 653.  And of course, it is for

Congress, not the courts, to expand or contract the scope of the Bankruptcy Code's statutory exceptions to discharge.

Navient's assertion that the Plaintiffs have not shown a likelihood of success on the merits because the dischargeability of a debt, including these private student loans, may be determined based on "facts to which the parties have stipulated" and "stipulations, representations, and promises" so long as those "facts" overlap with the elements of Section 523 that are at issue, is similarly unavailing here, for several reasons.  Supp. Opp. at 9 (citing *Klingman*, 831 F.2d at 1296 n.3).

At the outset, Navient's argument appears to be based on the premise that the standardized "boilerplate" certifications or statements by borrowers in their loan documents may be viewed in the same light as "facts to which the parties have stipulated," or "stipulations, representations, and promises."  Supp. Opp. at 9.  Even putting the public policy concerns associated with prepetition waivers of dischargeability to the side, this is simply not a reasonable characterization of the standardized loan documentation language upon which Navient seeks to rely.  Whatever it is, and whatever persuasive weight it may carry, it is far short of a "stipulation."

And in support of its assertion that "the case law recognizes that dischargeability may be determined based on facts to which the parties have stipulated," Navient cites to a footnote in *Klingman v. Levison*.  *Id*.  But that case arises in a very different context, addresses a very different question, and does not lend support to Navient's position.

In *Klingman*, the Seventh Circuit applied principles of collateral estoppel to affirm the district and bankruptcy courts' determinations that a debt based on a stipulated state court consent judgment in which the debtor, "an experienced attorney," acknowledged that he

committed a fraud or defalcation while acting in a fiduciary capacity, was nondischargeable under Bankruptcy Code Section 523(a)(4).  *Klingman*, 831 F.2d at 1296, n.2.

In reaching this conclusion, the court noted that the stipulated consent judgment entered into by the debtor "did not constitute a waiver of [the debtor's] right to have a bankruptcy court determine the dischargeability of the debt."  *Klingman*, 831 F.2d at 1296, n.3.  The court also observed that "[g]enerally, all debts are dischargeable in bankruptcy unless specifically excepted by a provision in the Bankruptcy Code" and "[f]or public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."  *Id*.

To be sure, the *Klingman* court stated that "a debtor may stipulate to the underlying facts that the bankruptcy court must examine to determine whether a debt is dischargeable," and if the requirements of collateral estoppel are met, then that stipulated judgment may well serve to estop the debtor from contesting the same issues for a second time in the bankruptcy court.  *Id*.  But in *Klingman*, there was prior, contested litigation that was resolved with a court-approved stipulation and consent order, and the question was whether the requirements of collateral estoppel were met.  Here, by contrast, none of that is part of the record, and the question is starkly different.

Other courts considering the scope and application of *Klingman* have reached similar conclusions.  As one bankruptcy court explained:

> An agreement to waive the dischargeability of a debt is not enforceable as a matter of public policy.  This is distinct from a factual stipulation entered into between parties in a prior piece of litigation which may properly serve as the basis for application of the doctrine of collateral estoppel or issue preclusion in later litigation between them.  . . . [the court] granted the creditor's motion for summary judgment under the doctrine of collateral estoppel and found the debt nondischargeable.  [The court's] ruling, however, was not based on the prepetition contractual waiver of the discharge of the debt.  Rather, [it] held that such agreement was not enforceable as a matter of public policy.  . . . The basis for finding the doctrine of collateral estoppel applicable was the stipulated facts

66

> which demonstrated a breach of fiduciary duty. . . . The Seventh Circuit expressly
> affirmed [the court's] finding that the stipulation that the debt would not be
> dischargeable in a bankruptcy case did not constitute a waiver of the debtor's
> right to have the bankruptcy court determine the dischargeability of the debt.

*Shaw Steel, Inc. v. Morris* (*In re Morris*), 1998 WL 355510, at *8 (Bankr. N.D. Ill. June 30,

1998) (citations omitted).

Separately, it is worth noting that the question of dischargeability of a private student

loan under Bankruptcy Code Section 523(a)(8)(B) turns on objective, not subjective, matters

including the facts and circumstances of the loan and the applicable cost of attendance. If the

facts show that a private student loan *exceeds* the applicable cost of attendance, then that

borrower's statement – boilerplate or otherwise – that a loan *does not exceed* the cost of

attendance does not change those facts.

And finally, this does not mean that this action, or the Plaintiffs' claims for relief, are

somehow a shield against deception or fraud by a debtor. The Bankruptcy Code provides a well-

traveled path for a creditor to show that a debtor procured a loan by fraudulent or dishonest

means. Nothing in the relief that the Plaintiffs seek, either in the context of this Preliminary

Injunction Motion or in this adversary proceeding, would compromise or limit Navient's right to

assert such a claim. If Navient seeks to establish that in a particular situation, the borrower

obtained their loan "by . . . false pretenses, a false representation, or actual fraud," then it may do

so, by bringing a dischargeability action under Bankruptcy Code Section 523(a)(2)(A). In such

an action, Navient would bear the burden to show:

> first, that the debtor made a false representation; second, that the debtor knew the
> representation was false at the time it was made; third, that the debtor made the
> false representation with the intent to deceive the creditor; fourth, that the creditor
> justifiably relied on the representation; and finally, that the creditor sustained a
> loss that was proximately caused by the false representation.

*First Am. Title Ins. Co. v. Moses* (*In re Moses*), 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing

*Fleet Credit Card Servs. L.P. v. Macias* (*In re Macias*)*,* 324 B.R. 181, 187 (Bankr. E.D.N.Y.

2004) (citation omitted)).

But it is worth noting that Section 523(a)(2)(A) actions arise in the context of a

discharged debt, and if the necessary showing is made, that debt will be excluded from the scope

of a debtor's discharge.  Section 523(a)(2)(A) does not provide a self-executing or preemptive

means for a creditor to avoid the consequences of a discharge violation.

Next, Navient argues that even using the Plaintiffs' logic that a student loan that exceeds

the cost of attendance is not a "qualified education loan," rendering the loan dischargeable in

bankruptcy, only the portion of a loan that exceeds the cost of attendance should be

dischargeable pursuant to Section 523(a)(8)(B).  Supp. Opp. at 9-10.

While this argument may have some logic, it does not find a basis in the law.  The

Bankruptcy Code does not allow for a partial discharge of student loan debt.  As one court

explained:

> Section 523(a)(8)'s language refers to a debt in its totality, and does not envision
> only a portion being discharged.  This conclusion is strengthened by the
> observation that Congress knows how to allow a partial discharge when it so
> desires, and has done so in statutory subsections coexisting with § 523(a)(8).  It is
> a fundamental tenet of statutory interpretation that "where Congress has failed to
> include language in statutes, it is presumed to be intentional when the phrase is
> used elsewhere in the Code."

*Pincus v. Graduate Loan Ctr.* (*In re Pincus*), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002) (quoting

*United Student Aid Funds Inc. v. Taylor* (*In re Taylor*), 223 B.R. 747, 753 (B.A.P. 9th Cir.

1998)) .  Here again, it is for Congress, not the courts, to expand or contract the scope of the

Bankruptcy Code's statutory exceptions to discharge.  Accordingly, if a private student loan

exceeds the applicable cost of attendance, then the entire student loan debt is dischargeable, and

collections efforts against the entire debt must be enjoined if the applicable standards are met.

*Id.*

                            \*                \*              \*

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown a likelihood of success on the merits of their discharge violation claims against Navient.  The Plaintiffs have shown a likelihood of success on the merits of their claim that their private Tuition Answer Loans that exceed the cost of attendance do not meet the nondischargeability requirements of Bankruptcy Code Section 523(a)(8)(B), and are therefore within the scope of their bankruptcy discharges.  And the Plaintiffs have shown a likelihood of success on the merits of their claim that Navient received notice of their bankruptcy discharges, and intended the acts that violated the discharge to collect on these discharged debts – that is, that Navient has violated the statutory bankruptcy discharge injunction as to the Plaintiffs and the Putative Class Members.

**Whether the Plaintiffs Have Shown a Likelihood of Irreparable Injury in the Absence of Relief**

The second element that a plaintiff must establish in order to be entitled to preliminary injunctive relief is "a likelihood of 'irreparable injury in the absence of an injunction.'" *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)).

At the outset, the Plaintiffs assert that the requirement of individual irreparable injury may not apply here, because the relief that they seek will protect the Plaintiffs and the Putative Class Members from continued violations of their bankruptcy discharges.  They state that "a bankruptcy court, pursuant to its powers under § 105, may grant a preliminary injunction to protect the debtor or the estate without a showing of irreparable injury."  Prelim. Inj. Mem. at 2 (collecting cases).  This is because, in substance, "'[a]n injunction against violation of the discharge already exists by operation of law' and therefore the Plaintiffs "'in reality seek[] a contempt order for the violation of an injunction that already exists.'"  Prelim. Inj. Mem. at 2-3

(quoting *Barrientos*, 633 F.3d at 1190).

And separately, the Plaintiffs argue that they have established that the Defendants'
continued collection efforts will cause the Plaintiffs and the Putative Class Members to suffer
irreparable harm if an injunction is not entered.  Prelim. Inj. Mem. at 4.  They assert that the
Defendants have acted in "flagrant disregard" of the statutory bankruptcy discharge injunctions
applicable to the Putative Class Members by repeatedly attempting to collect on these discharged
debts.  *Id*.  They point to cases concluding that the act of repeatedly attempting to collect a debt
that has been discharged creates irreparable injury, noting the conclusion of one bankruptcy court
that if the creditor "continues to call Plaintiffs, damages alone would not compensate them for
the stress caused by" the ongoing collection efforts.  Prelim. Inj. Mem. at 3 (quoting *In re Diaz*,
526 B.R. at 695).  And they note that another bankruptcy court similarly found that "'any action
or attempt to collect [debt] in spite of a discharge is a clear violation of the permanent injunction
included in the discharge,'" and concluded that injunctive relief was necessary in order to
prevent "'irreparable harm.'"  Prelim. Inj. Mem. at 3-4 (quoting *In re Daniel*, 98 B.R. at 76).

Navient responds that Bankruptcy Code Section 105 does not excuse the Plaintiffs from
showing irreparable harm.  Opp. at 5.  Navient adds that the Plaintiffs do not cite any authority to
support their assertion that irreparable injury is not a necessary element in a request for a
preliminary injunction involving the bankruptcy discharge injunction.  Opp. at 6.  Additionally,
Navient argues that in every case cited by the Plaintiffs in support of their argument that a
finding of irreparable injury is not necessary pursuant to Section 105, preliminary injunctive
relief was issued either to protect a debtor's reorganization efforts, or because the decision of
another forum threatened to deprive the bankruptcy court of its jurisdiction to consider a dispute.
Opp. at 5.

Navient also argues that the conclusion that Section 105 somehow dispenses with the need to find irreparable injury cannot be reconciled with the Supreme Court's decision in *Taggart v. Lorenzen*. Supp. Opp. at 12. And under *Taggart*, Navient argues that unexcused delay must be considered in any action under Section 105 for injunctive relief. *Id.*

Navient asserts that in the TRO Decision, this Court concluded that a showing of irreparable injury was not required pursuant to Section 105 on grounds that the injunction sought by the Plaintiffs on behalf of themselves and the Putative Class Members vindicates the interests of the Court, rather than the interests of individual debtors. Supp. Opp. at 13 (quoting *In re Homaidan*, 640 B.R. at 850). It states that if this is reasoning is valid, then any injunctive relief should extend only to the Plaintiffs and the Putative Class Members who received discharges in *this* Court – the Eastern District of New York. Supp. Opp. at 13. Finally, Navient contends that the Plaintiffs' unjustifiable delay in seeking injunctive relief precludes a finding of irreparable injury. *Id.*

Here, the Court begins with the question of whether the Plaintiffs and the Putative Class Members are required to show a likelihood of irreparable injury in connection with their request for preliminary injunctive relief. The Court has already concluded that the Plaintiffs have shown a likelihood of success on the merits of their claim that their private Tuition Answer Loans that exceed the cost of attendance were discharged in their bankruptcy cases, that the Defendants received notice of the discharge, and finally, that the Defendants continued to collect on those loans, in violation of their discharges. As the bankruptcy court found in *In re Ames Department Stores, Inc.*, and as this Court concluded in the TRO Decision, this conduct poses a threat to the bankruptcy process, and the injunction that the Plaintiffs seek "vindicates the interests of the *Court*, as much as (and perhaps more than) it vindicates the interest of an individual litigant." *In*

*re Ames Dep't Stores, Inc.*, 317 B.R. at 274 (emphasis in original).

To be sure, in concluding that discharge injunction violations pose a threat to "the interests of the *Court*," the bankruptcy process, and the integrity of a bankruptcy court's orders, as much as they threaten "the interest of an individual" debtor, this Court is not setting a boundary at the limits of one judge's caseload, or the cases assigned to a particular courthouse, or the borders of a federal judicial district. Navient's alleged disregard for the statutory bankruptcy discharge injunction has been asserted on a nationwide scale, and this Court's findings here and in the TRO Decision are made in the context of the claims in the Amended Complaint.

To the same effect, it is not a particular bankruptcy judge, or the judges in a particular courthouse, or the bankruptcy court in a single judicial district, that experiences the threat to the bankruptcy process. As the bankruptcy court in *In re Ames Department Stores* observed, it is "the interests of the *Court*," and the bankruptcy process and system, that are put at risk. *Id.* And by Constitutional directive, the bankruptcy system is a uniform system, not a local one. U.S. Const., Art. I, § 8 cl. 4. *See Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1775 (stating that "[t]he Bankruptcy Clause empowers Congress to establish 'uniform Laws on the subject of Bankruptcies throughout the United States'" and observing that this "uniformity requirement" is not "toothless").

Separately, in the alternative, it is clear from the record that the Plaintiffs and the Putative Class Members have shown that there is "a likelihood of 'irreparable injury in the absence of an injunction.'" *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)). Here, the Plaintiffs have shown a likelihood of success on the merits of their claim that the Defendants have acted in violation of the statutory bankruptcy discharge injunction, by continuing to collect

on their private Tuition Answer Loans that exceed the cost of attendance, and therefore are outside the scope of the discharge exception contained in Bankruptcy Code Section 523(a)(8)(B).

As this Court observed in the TRO Decision, an attempt to collect on a discharged debt is not just about money – it is about the hardships and burdens that impair a debtor's efforts to achieve the "fresh start" that is a centerpiece of the bankruptcy system. *See In re Homaidan*, 640 B.R. at 851. As the Plaintiffs note, "[i]n the absence of a preliminary injunction," the Plaintiffs and Putative Class Members "will continue to be harassed by Defendants" for payments on debts that have actually been discharged in Bankruptcy. Prelim. Inj. Mem. at 4. This will not only cause them to endure the stress of receiving harassing telephone calls and letters, but also to experience the financial hardship and pressure of continuing to make payments on these discharged loans. Prelim. Inj. Mem. at 4. That is, these acts by Navient to collect on a discharged debt amount to irreparable harm, and an award of damages after the fact is not sufficient to remedy that harm.

This conclusion is consistent with widely accepted principles of bankruptcy law, including the importance of a debtor's "fresh start." As this Court and others have observed, "'[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start."'" *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 896, 911 (Bankr. E.D.N.Y. 2021) (quoting *McKenzie-Gilyard v. HSBC Bank Nev., N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007)). The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy." *In re McKenzie-Gilyard*, 388 B.R. at 480. And as stated by the bankruptcy court in a related context, "there is . . . a strong policy in protecting a debtor's fresh start after their bankruptcy proceedings are resolved." *Credit One Bank, N.A. v. Anderson* (*In re*

73

*Anderson*), 560 B.R. 84, 93 (Bankr. S.D.N.Y. 2016); *see In re Daniel*, 98 B.R. at 75-76 (any attempt to collect a discharged debt "is a clear violation of the permanent injunction included in the discharge[,]" and failing to grant injunctive relief against such collection efforts will lead to irreparable harm); *In re Diaz*, 526 B.R. at 694 (stating that "irreparable injury" is established where a creditor persisted in collecting a debt that it knew was discharged and that money "damages alone would not compensate" the debtors "for the stress caused by the harassing" collection efforts).

This conclusion is also consistent with recent decisions applying *Taggart* in similar contexts.  As one bankruptcy court observed, "[f]rom the Bankruptcy Code's inception, breach of the discharge has been recognized as an injury" and, "to violate the injunction, pressure is enough . . . because freedom from such pressure is the tradeoff for going through a bankruptcy case."  *In re Anderson*, 641 B.R. at 55 (citing *Taggart*, 139 S. Ct. at 1801).

Navient also argues that this request for relief is long overdue – that is, that the Plaintiffs have waited too long to seek injunctive relief for themselves and the Putative Class Members. This delay, Navient asserts, weighs against their claims of imminent irreparable injury absent injunctive relief.  Opp. at 16.  It points to the fact that the Plaintiffs waited more than two years after the complaint was filed – until December 19, 2019 – to seek this relief.  Opp. at 17. Navient asserts that this delay counsels strongly against granting the injunctive relief that the Plaintiffs now seek, as the Second Circuit has found that months-long delays in seeking a preliminary injunction is a ground for denying such relief.  *Id*.  And Navient contends that unjustifiable delay in seeking injunctive relief precludes a finding of irreparable injury.  Supp. Opp. at 13.

Navient correctly notes that much time has passed since this Adversary Proceeding was

commenced in 2017. And in some circumstances, courts have found that the passage of time, without more, weighs against the granting of preliminary injunctive relief. As one court observed, "'[w]hile delay does not always undermine an alleged need for preliminary relief, months-long delays in seeking [injunctive relief] have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompany a motion for preliminary relief.'" *Silent Gliss Inc. v. Silent Gliss Int'l Ltd.*, 2022 WL 1525484, at *8 (E.D.N.Y. May 13, 2022) (quoting *Silber*, 950 F. Supp. 2d at 439). And as another court found, "[b]ecause preliminary injunctions are predicated upon 'urgent need for speedy action,' delay in seeking the remedy suggests that the remedy is not really needed, or that the harm is not really irreparable." *Minzer v. Keegan*, 1997 WL 34842191, at *6 (E.D.N.Y. Sept. 22, 1997) (citation omitted) (quoting *CitiBank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

At the same time, "[c]ourts may excuse delays '[i]f the movant can provide a credible explanation for its inactivity.'" *Hodnett v. Medalist Partners Opp. Master Fund II-a, L.P.*, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (quoting *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)). As one example, "[c]ourts have excused delays where the parties diligently pursue settlement negotiations." *Hodnett*, 2021 WL 535485, at *6 (citing *Marks Org., Inc.*, 784 F. Supp. 2d at 333).

Similarly, a delay caused by a plaintiff's good faith investigation of their claims does not weigh against a finding of irreparable harm. *Tom Doherty Assocs.*, 60 F.3d at 39 (citing *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992)). "The existence of prejudice to the non-movant caused by the movant's delay is also a relevant factor." *Gidatex, S.r.L.*, 13 F. Supp. 2d at 419 n.1 (citing *Tom Doherty Assocs.*, 60 F.3d at 39). And "delay alone" does not require denial of preliminary injunctive relief. *Marks Org., Inc.*, 784 F. Supp. 2d at 333 (citing *Marcy*

*Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998)).

The Court "thus begins its analysis by recognizing the Second Circuit's instruction that '[a] . . . court should *generally* consider delay in assessing irreparable harm,' even if it is not dispositive of the issue." *Marks Org., Inc.*, 784 F. Supp. 2d at 333 (quoting *Tom Doherty Assocs.*, 60 F.3d at 39). And the starting point for this analysis is the timeline of this Adversary Proceeding, including the time spent in dispositive motion practice before this Court, on appeal in the District Court and the Second Circuit, and finally, in court-annexed mediation.

On June 23, 2017, Mr. Homaidan commenced this Adversary Proceeding by filing the complaint. Within a few months, on October 30, 2017, Navient filed a Motion to Compel or Dismiss, asserting that as a matter of law, this action should be dismissed because Mr. Homaidan's claims should be heard in an arbitration, not in court, and separately that this Adversary Proceeding should be dismissed because the Putative Class Members student loans were excluded from their bankruptcy discharges pursuant to Bankruptcy Code Section 523(a)(8)(A)(ii).

The Court first considered Navient's Motion to Compel or Dismiss to the extent that it sought to compel arbitration of Mr. Homaidan's claims, and after a period of time allowing the parties to brief and argue that issue, on July 25, 2018, the Court entered a decision denying that portion of Navient's requested relief. *See In re Homaidan*, 587 B.R. at 443. Navient appealed that decision on August 10, 2018, and, pursuant to the parties' stipulation, the appeal was dismissed on November 5, 2018.

Next, the Court considered Navient's Motion to Compel or Dismiss to the extent that it sought to dismiss Mr. Homaidan's claims on grounds that the private Tuition Answer Loans that exceed the cost of attendance were excluded from discharge under Bankruptcy Code Section

523(a)(8)(A)(ii).  Again, after a period of time to permit the parties to brief and argue that issue, on January 31, 2019, the Court entered a decision denying that portion of Navient's requested relief.  *See In re Homaidan*, 596 B.R. at 106-07, 110.  On February 14, 2019, Navient filed an interlocutory appeal of this Court's decision denying the motion to dismiss in the District Court.  ECF No. 105.  At the same time, Navient also sought leave to pursue a direct appeal to the Second Circuit.  ECF No. 107.

On December 17, 2019, while the appeal was pending in the District Court, this Court issued an order amending the complaint to add Ms. Youssef as an additional named plaintiff and proposed class representative.  ECF No. 166.  Then, on December 19, 2019, the Plaintiffs filed a motion for class certification, a motion for partial summary judgment, and a motion for a preliminary injunction.  ECF No. 168.

More than a year later, on February 25, 2020, the District Court granted Navient's motion to certify this Court's order denying the Motion to Compel or Dismiss to the extent that it sought to dismiss the Adversary Proceeding.  That appeal proceeded in the Second Circuit, and on July 15, 2021, some sixteen months later, the Second Circuit affirmed this Court's decision denying Navient's request to dismiss the Adversary Proceeding on grounds, in substance, that reading Section 523(a)(8)(A)(ii) to exclude private student loans from a debtor's bankruptcy discharge is "unsupported by plain meaning."  *Homaidan*, 3 F.4th at 601.

On July 28, 2021, less than two weeks after the appellate process concluded, this Court held a continued pre-trial conference in this Adversary Proceeding.  At this point, Navient's legal defenses of arbitrability and an alternative basis for the nondischargeability of the Plaintiffs' and the Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance had been resolved against it, by this Court and by the Second Circuit.  With the consent of the

parties, on August 20, 2021, the Court entered an order assigning this matter to mediation.  ECF No. 302.

The parties diligently pursued that path for some months, but ultimately, the mediation process was not fruitful.  On March 14, 2022, the Plaintiffs filed a letter stating that mediation was not successful, and that "it is now clear that this matter will not settle without a ruling by the Court on the pending motions for preliminary injunction, summary judgment and class certification."  ECF No. 310.  On March 22, 2022, Navient filed a letter stating its "disagree[ment] with the characterization in the [Plaintiffs'] letter regarding the parties' mediation efforts.  Navient remains engaged in the process and believes that it is premature to conclude that this matter will not settle without a ruling on the pending motions."  ECF No. 313.  Just over two weeks later, on April 7, 2022, the Plaintiffs filed the TRO Motion.  ECF No. 314.

On July 8, 2022, after extensive briefing by the Plaintiffs and Navient, the Court issued the TRO Decision.  In that decision, the Court provided that the TRO would become effective in sixty days, on September 6, 2022.  On July 25, 2022, Navient filed a notice of appeal of the TRO, and also filed the Motion to Stay.  *See* ECF No. 350, 351.  And on September 6, 2022, the District Court denied Navient's request for leave to appeal, effectively denying a stay as well, in a Memorandum and Order.  ECF No. 380.  *See Navient Sols., LLC v. Homaidan*, 2022 WL 4079579 (E.D.N.Y. Sept. 6, 2022).

At each step of this long procedural path, Navient and the Plaintiffs each – quite appropriately – made motions, sought appellate review, and pursued a mediation pathway to a consensual resolution, and each of these steps took time.  Some took considerable time.  But at this stage in these proceedings, and based on this record, it is simply not accurate to suggest that the Plaintiffs somehow delayed or waited too long to bring the Preliminary Injunction Motion

and seek preliminary injunctive relief.  It was Navient, not the Plaintiffs, that brought a motion to compel arbitration, and to dismiss this Adversary Proceeding.  From October 2017 to July 2021, Navient's motions and appeal were pending and vigorously disputed in the District Court and Second Circuit.  And in those requests for relief, Navient sought final and dispositive relief, on legal grounds.  Had Navient been successful, this case would be over.  Thereafter, the parties – with the encouragement of this Court – attempted to reach a consensual resolution, through court-annexed mediation.  This matter was referred to mediation within some six weeks of the Second Circuit's decision, and that process continued from August 2021 to at least March 2022.

Some two weeks later, the Plaintiffs brought the TRO Motion.  The TRO Motion was promptly briefed, argued, and adjudicated, and the Court entered the TRO Decision and a TRO on July 8, 2022, with temporary injunctive relief to become sixty days later, on September 6, 2022, to allow Navient a suitable period of time to come into compliance with its terms.

Notably, Navient does not assert that it has been prejudiced by this passage of time.  Nor does the record suggest that the Plaintiffs brought the Preliminary Injunction Motion as a litigation tactic against Navient.  Indeed, in the more than five years that this Adversary Proceeding has been pending, more than sixty additional monthly payments have come due on the Plaintiffs' and the Putative Class Members' debt that may well have been discharged in bankruptcy.  This passage of time is no barrier to a finding of a likelihood of irreparable injury in the absence of preliminary injunctive relief.

An additional point is worthy of note.  The Plaintiffs have moved for certification of a class, and their Class Certification Motion remains pending.  In the TRO Motion and now on this Preliminary Injunction Motion, the Plaintiffs seek interim relief on behalf of those Putative Class Members with private Tuition Answer Loans and other private loans that exceed the cost of

attendance, and that have an outstanding balance that is due.  Those loans, they assert, were
discharged, and Navient's collection activities should cease.  Prelim. Inj. Mem. at 1.

As this Court found in the TRO Decision, "the facts and circumstances of a particular
case may warrant the entry of a preliminary injunction on behalf of a putative class before a class
is formally certified."  *In re Homaidan*, 640 B.R. at 852.  Here, as in the TRO Decision, this
Court looks to *Ligon v. City of New York*, in which the district court granted a preliminary
injunction applicable to a putative class before the question of class certification was decided.
*See Ligon v. City of New York*, 925 F. Supp. 2d 478, 539, 542-45 (S.D.N.Y. 2013).

In *Ligon*, the court observed that "[p]laintiffs have moved for class certification in
connection with their motion for a preliminary injunction," and that the putative class was
"'comprised of individuals who have been or are at risk of being subjected to the New York City
Police Department's practice of stopping individuals outside of buildings enrolled in Operation
Clean Halls in the Bronx on suspicion of trespassing inside those buildings.'"  *Ligon*, 925 F.
Supp. 2d at 539 (citation omitted).

In finding that class certification was not a prerequisite to granting injunctive relief to the
putative class, the *Ligon* court noted that "'[i]t is well established that "[c]ertain circumstances
give rise to the need for prompt injunctive relief for a named plaintiff or on behalf of a class" and
that the "court may . . . award a broad preliminary injunction, without a formal class ruling,
under its general equity powers.'"  *Ligon*, 925 F. Supp. 2d at 539 (quoting *Strouchler v. Shah*,
891 F. Supp. 2d 504, 516-17 (S.D.N.Y. 2012)).  The court held that the "plaintiffs ha[d] carried
their burden of showing likely irreparable harm on behalf of the putative class," as "the putative
class in this case is threatened with imminent violations of their constitutional rights in the
absence of preliminary relief."  *Ligon*, 925 F. Supp. 2d at 539 (citing *Strouchler*, 891 F. Supp. 2d

at 515).

Here, as in *Ligon*, circumstances are present that warrant "prompt injunctive relief for a named plaintiff . . . on behalf of a class." *Ligon*, 925 F. Supp. 2d at 539. That is, the Plaintiffs have demonstrated a "likely irreparable harm on behalf of the putative class." *Ligon*, 925 F. Supp. 2d at 539 (citing *Strouchler*, 891 F. Supp. 2d at 515). In particular, the Plaintiffs have shown that Ms. Youssef and each of the Putative Class Members that holds a private Tuition Answer Loan that exceeds the cost of attendance and has an outstanding balance is likely to be subjected to continued collection activities by Navient in violation of their bankruptcy discharges. And there is nothing in the record to show, or even suggest, that Navient will stop, or even pause, those collection activities in the absence of a direction from this Court. Accordingly, there is no impediment to this Court granting injunctive relief as to the putative class prior to formal certification. *See Ligon*, 925 F. Supp. 2d at 539.

*        *        *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown a likelihood of irreparable injury in the absence of relief.

### *Whether the Plaintiffs Have Shown that the Balance of Hardships Weighs in Their Favor*

The third element that a plaintiff must establish in order to be entitled to preliminary injunctive relief is that "'the balance of hardships tips in the plaintiff's favor.'" *Benihana, Inc.*, 784 F.3d at 895 (quoting *Salinger*, 607 F.3d at 79-80)).

The Plaintiffs argue that the balance of hardships tip in the favor of them and the Putative Class Members, as they will continue to be harassed by the Defendants for the payment of discharged debts. They assert that this will cause not only the stress of harassing telephone calls and letters, but also the financial hardship of continued payment on discharged loans. Prelim.

Inj. Mem. at 4.  And the Plaintiffs submit that, by contrast, the Defendants will not suffer from the entry of a preliminary injunction, since they have no legal right to collect on these discharged debts, which constitute a small portion of their loan portfolio.  *Id.*  In addition, the Plaintiffs point out that in another action, *In re Crocker*, the Defendants agreed to a court order requiring them to discontinue collection on "direct-to-consumer" loans made to individuals who received a discharge in bankruptcy and who were not attending Title IV schools at the time they received their loans.  Prelim. Inj. Mem. at 5 (citing *Crocker* Agreed Order).

Navient responds that a preliminary injunction is unnecessary because it would amount to duplicative and successive relief.  Opp. at 18.  It states that the Plaintiffs and the Putative Class Members have already received bankruptcy discharges that enjoin the collection of their discharged debt, and accordingly, such relief is unavailable.  Opp. at 18 (citing *Alderwoods*, 682 F.3d at 966, 970).  And Navient argues that that a preliminary injunction pending the outcome of a dispute regarding the dischargeability of their private student loans does not accord with the Supreme Court's decisions in *Espinosa* and *Hood*.  These authorities, Navient asserts, place the burden on the Plaintiffs and the Putative Class Members to seek individualized determinations as to the dischargeability of their loans.  Opp. at 18.  And until they do, Navient states, it should be free to collect on those loans.  Opp. at 18 (citing *Espinosa*, 559 U.S. at 268-69; *Hood*, 541 U.S. at 450).

Navient also asserts that granting the preliminary injunction would harm Putative Class Members, because they will not be able to contact Navient with questions about their student loans or make payments on those loans, while interest would continue to accrue.  Opp. at 19. And Navient argues that if it ultimately prevails here, the resumption of student loan payments may strain their financial resources.  *Id.*  Finally, Navient argues that it will incur substantial

administrative and other costs and damages complying with any preliminary injunctive relief, compounded by the fact that a nationwide class has not yet been determined.  *Id*.

The Plaintiffs reply that *Espinosa* and *Hood* arise in different contexts and address different questions than those presented here.  Reply at 3.  They note that in both cases, the loans at issue were plainly nondischargeable debts within the scope of Section 523(a)(8).  *Id*.  In such circumstances, the Plaintiffs state, unless the debtor seeks an undue hardship discharge, the student loan is presumed to be nondischargeable.  They argue that the same is not the case here, as the Plaintiffs' and the Putative Class Members' "direct-to-consumer" student loans that exceed the cost of attendance are not nondischargeable student loans.  And the Plaintiffs contend that even if there were an initial presumption of nondischargeability here, that presumption has been successfully rebutted with respect to loans that exceed the cost of attendance.  Reply at 4.

Here, the Court addresses a very particular task – it must "'balance the competing claims of injury and must consider the effect on each party of the granting or withholding the requested relief.'"  *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Winter*, 555 U.S. at 24).  In this context, "[t]he relevant harm is the harm that . . . occurs to the parties' *legal interests*."  *Salinger*, 607 F.3d at 81 (emphasis added).  And notably, this is distinct from the question of likelihood of success on the merits.  That is, the party seeking this relief "must establish that the 'balance of hardships tips in their favor regardless of the likelihood of success.'"  *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Salinger*, 607 F.3d at 79-80).

Here, the balance of hardships tips in favor of the Plaintiffs and the Putative Class Members, for several reasons.

The legal interests of the Putative Class Members are grounded in their bankruptcy discharges and opportunities for "fresh starts."  Indeed, as the Supreme Court has observed,

"[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"  *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 87 (1991)).  Those legal interests, and those bankruptcy discharges, are injured by Navient's ongoing debt collection efforts.

Viewed another way, these Putative Class Members with private Tuition Answer Loan student debts that exceed the cost of attendance and have been discharged have a legal interest protected by the Bankruptcy Code's discharge injunction – not to be pursued for the collection of discharged debts.  As one bankruptcy court observed, "'[t]he discharge of a debt pursuant to § 727 triggers the operation of § 524, which protects the debtor from any personal liability on the debt.'"  *In re Nassoko*, 405 B.R. 515, 519 (Bankr. S.D.N.Y. 2009) (quoting *Green v. Welsh*, 956 F.3d 30, 33 (2d Cir. 1992)).  More generally, the collection of a discharged debt threatens and may well violate both these statutory legal interests and the broader relief encompassed by the bankruptcy discharge and "fresh start."

By contrast, Navient does not have a legal interest in continuing to collect on a loan held by a Putative Class Member where that student borrower attended or intended to attend a Title IV institution and received a private loan that exceeded the cost of attendance at that institution as defined by Internal Revenue Code Section 221(d), because that loan does not meet the criteria of Bankruptcy Code Section 523(a)(8)(B) to be excluded from discharge.  There simply cannot be a legal interest in continuing to collect on a discharged debt, and Navient has no legal interest that would be harmed by injunctive relief preventing the collection of such discharged debts.

And the Supreme Court's decisions in *Espinosa* and *Hood* do not require, or even suggest, a different conclusion.  In *Espinosa*, the Court found that the bankruptcy court's order confirming a debtor's Chapter 13 plan in which the debtor proposed to pay only the principal,

and to discharge the interest, on his student loan, was not void. The parties did not dispute that the loan was nondischargeable, as a federally-guaranteed student loan. *Espinosa*, 559 U.S. at 265 n.1. But the Court also found that "the [Bankruptcy] Code makes plain that bankruptcy courts have the authority – indeed, the obligation – to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)." *Espinosa*, 559 U.S. at 277. And the Court stated that "to comply with § 523(a)(8)'s directive, the bankruptcy court must make an independent determination of undue hardship before a [Chapter 13] plan is confirmed, even if the creditor fails to object or appear in the adversary proceeding." *Espinosa*, 559 U.S. at 278. While this is important guidance to Chapter 13 debtors, their counsel, their creditors, and courts, it does not have a role to play in the issues before this Court here.

To the same effect, in *Hood*, the Supreme Court considered "whether [the Bankruptcy Clause] grants Congress the authority to abrogate state sovereign immunity from private suits" in the context of a debtor's action to seek an "undue hardship" discharge of her government-guaranteed student loans. *Hood*, 541 U.S. at 443. And there, the Court concluded that "a proceeding initiated by a debtor to determine the dischargeability of a student loan debt is not a suit against the State for purposes of the Eleventh Amendment." *Id.*

To be sure, the Court observed that a student loan that is backed by a government guarantee – there, the Tennessee Student Assistance Corporation – is presumptively nondischargeable under Section 523(a)(8), and that this exclusion from discharge is "'self-executing.'" *Hood*, 540 U.S. at 450 (quoting 3 W. Norton, Bankruptcy Law and Practice 2d § 47:52, p. 47-137 to 47-138. The Court also observed that "[u]nless the debtor affirmatively secures a hardship determination, the discharge will not include a student loan debt." *Hood*, 540 U.S. at 450. But here, the loans at issue are not backed by government guarantees, and Section

523(a)(8) does not apply in the same way to the Plaintiffs' and the Putative Class Members' private student loans that exceed the cost of attendance.  So here as well, the Supreme Court's guidance does not apply to the situation before this Court.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown that the balance of hardships tips in their favor.

### _Whether the Plaintiffs Have Shown that the Public Interest Would Not Be Disserved by the Issuance of an Injunction_

The fourth element that a plaintiff must establish in order to be entitled to preliminary injunctive relief is that "the 'public interest would not be disserved' by the issuance of an injunction."  _Benihana, Inc._, 784 F.3d at 895 (quoting _Salinger_, 607 F.3d at 79-80)).

The Plaintiffs argue, in substance, that the public interest would not be harmed by the issuance of a preliminary injunction for many of the same reasons that they argue that the balance of hardships tips in their favor.  And they note that a preliminary injunction would enjoin activities that are injurious to the public interest, including the reliance by lenders and loan servicers on "boilerplate" certifications and the collection of discharged debt.  As they state, "[b]oilerplate certifications cannot transform a dischargeable loan into a non-dischargeable loan and pre-bankruptcy waivers of dischargeability are against public policy."  Supp. Reply at 2.

Navient responds that Congress has enacted a broad exception to discharge for student loans in the Bankruptcy Code, and that the public interest is not served by undermining Congressional intent effectively to rewrite the Bankruptcy Code prior to a determination of dischargeability of these private student loans on the merits.  Opp. at 20 (citing _In re Corbin_, 506 B.R. at 296).  It also asserts out that no court has ever determined that student loans issued on

86

their face for qualified education expenses are dischargeable, or that a bankruptcy discharge extends to the full amount of such loans. Opp. at 20. And Navient contends that "[i]mmature" or untested theories are particularly inappropriate for resolution "on a nationwide class basis." Opp. at 20 (citing *Castano*, 84 F.3d at 746-51). As such, Navient argues that because the Plaintiffs advance a theory that "is not just wrong but is also novel," it would violate public policy, and presumably injure the public interest, "to issue a nationwide preliminary injunction." Opp. at 21.

Here, the Court considers not just the interests of the parties, but the broader question of the public interest and whether the public interest would be disserved by the entry of the relief that the Plaintiffs seek. As one bankruptcy court observed, "the focus is generally on how the parties' specific actions would impact the public at large." *In re Roman Catholic Diocese*, 628 B.R. at 583 (citing *Winter*, 555 U.S. at 13-14). And the facts and circumstances must be considered in light of the particular situation. "Courts have long recognized that public interest is a 'supple principle' with 'as many and as variegated applications . . . as the situations that have brought it into play.'" *In re Roman Catholic Diocese*, 628 B.R. at 583 (quoting *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

Still, a piece of the picture is the interests of the parties that are at stake, and this includes interests that are widely recognized, including by the Supreme Court – the interests reflected in "[t]he principal purpose of the Bankruptcy Code," which is "to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama*, 549 U.S. at 367 (quoting *Grogan*, 498 U.S. at 286-87). When the bankruptcy discharge is violated, the purposes of the Bankruptcy Code are undermined not only to the detriment of the discharged debtor, but also to the detriment of the public interest.

Bankruptcy and other courts recognize this in a variety in contexts. As one bankruptcy

court observed, in finding that the public interest weighed against issuing a stay to halt an adversary proceeding in favor of arbitration, "there is . . . a strong policy in protecting a debtor's fresh start after their bankruptcy proceedings are resolved." *In re Anderson*, 560 B.R. at 93. And as this Court has found, "'[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start."'" *In re Golden*, 630 B.R. at 911 (quoting *In re McKenzie-Gilyard*, 388 B.R. at 480). The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy." *In re McKenzie-Gilyard*, 388 B.R. at 480. And where the public interest in this "fresh start" is threatened, "[b]ased on the . . . importance of protecting the 'fresh start' which Chapter 7 offers the honest but unfortunate debtor, a preliminary injunction is not only warranted but necessary to preserve the integrity of the bankruptcy process." *Archambault v. Hershman* (*In re Archambault*), 174 B.R. 923, 936 (Bankr. W.D. Mich. 1994).

And while it is true that "allowing debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the student loan system," it is also true that Congress intended for lenders and borrowers to meet specific, objective criteria for nondischargeability. *In re Conti*, 982 F.3d at 449. And where those nondischargeability criteria are not met, and the loan is discharged, then the strongest public interest is in the integrity of the bankruptcy discharge.

That is, the public interest in "protecting a debtor's fresh start after their bankruptcy proceedings are resolved" would not be disserved by the entry of a preliminary injunction that enjoins Navient from collecting from Putative Class Members on private Tuition Answer Loans that exceed the cost of attendance. *In re Anderson*, 560 B.R. at 93. Simply put, the public interest is not served by the collection of a discharged debt, and the public interest is not

disserved by enjoining that activity.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown that the public interest would not be disserved by a preliminary injunction.

### *Whether the Plaintiffs Have Shown that this Court May Enter a Preliminary Injunction on Behalf of All Putative Class Members*

The next question that the Court considers is whether the Plaintiffs are entitled to preliminary injunctive relief on behalf of a nationwide class of Putative Class Members, as they request, or only on behalf of those debtors who received their statutory bankruptcy discharges in this judicial district, as Navient proposes.

As a matter of the scope of the remedy that the Plaintiffs may seek, Navient argues that because the bankruptcy discharge is enforceable only through an action for contempt, the only relief that the Plaintiffs may seek at this time is a finding of contempt – and that form of relief must be sought in each court or district in which each Putative Class Member received their discharge.  Opp. at 7-10.  Navient states that nothing "'in the nature of the bankruptcy court or in the terms of the Bankruptcy [Code]' authorizes a 'special rule' that would enable it to interpret and enforce discharge orders entered by courts in foreign judicial districts."  Opp. at 10 (quoting *Local Loan Co.*, 292 U.S. at 240).

Navient also points to the Supreme Court's decision in *Taggart*, and cites the Court's observation that:

> "[t]he statutes specifying that a discharge order 'operates as an injunction'; § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions."

Opp. at 8 (quoting *Taggart*, 139 S. Ct. at 1801).  Navient asserts that in light of this directive,

89

and by omitting a private right of action for discharge-violation claims and codifying the

bankruptcy discharge in the form of an injunction, Congress has imposed on the discharge the

same framework that applies to all injunctions – including the requirement that an injunction

may only be enforced through a contempt proceeding in the issuing court.  Opp. at 8.  And

Navient argues that this Court's authority to enforce discharge orders of Putative Class Members

– whether in the context of a certified class or a pre-certification injunction – must therefore be

limited to borrowers who received discharges in the Eastern District of New York.  Supp. Opp.

at 14.

To the same effect, Navient cites the decision of the Second Circuit in *In re Anderson*,

and notes that the Second Circuit observed that "'the discharge injunction is an order issued by

the bankruptcy court and that the bankruptcy court alone possesses the power and unique

expertise to enforce it.'"  Opp. at 8 (quoting *In re Anderson*, 884 F.3d at 391).

Navient also cites the Eleventh Circuit's decision in *Alderwoods*, and asserts that the

limitation for finding contempt is jurisdictional.  Opp. at 9 (quoting *Alderwoods*, 682 F.3d at

970).  There, Navient states that the Eleventh Circuit held that the court in which the discharge

violation claims were filed, but which had not issued the underlying discharge order, "'lacked

jurisdiction to entertain the complaint because the discharge injunction was never its to

enforce.'"  Opp. at 12 (quoting *Alderwoods*, 682 F.3d at 971).

And Navient notes that in *In re Crocker*, the Fifth Circuit reached a similar conclusion in

a putative nationwide class action.  Opp. at 10 (citing *In re Crocker*, 941 F.3d at 215).  There,

Navient states, the court concluded that the issuing court was the only venue in which a contempt

proceeding could occur, as "'the Supreme Court decision [in *Taggart*] placed the civil contempt

that results from violating a bankruptcy discharge injunction under the general principles for

contempt.'"  Opp. at 11 (quoting *In re Crocker*, 941 F.3d at 216).  And it states that "[t]he Second Circuit has reached a similar conclusion."  Opp. at 12 (citing *In re Anderson*, 884 F.3d at 390-91).

Finally, Navient states that the Plaintiffs cannot obtain a preliminary injunction preventing the collection of Putative Class Members' discharged loans, as this was already achieved by their bankruptcy discharge orders.  Opp. at 13.  According to Navient, this means that the relief sought by the Plaintiffs in the form of a preliminary injunction seeks nothing more than what the Bankruptcy Code and their bankruptcy discharges already provide to them, so that granting successive injunctive relief on the same point would be superfluous.  Opp. at 13 (citing *Alderwoods*, 682 F.3d at 968).

The Plaintiffs reply that "this Court clearly has jurisdiction to certify a nationwide class, which Defendants concede" and that "there is no reason that this Court should abstain from exercising that jurisdiction in a case such as this, where Defendants are engaging in the same conduct nationwide affecting literally tens of thousands of people and where the exact same factual and legal issues arise in all such cases."  Reply at 5-6.  The Plaintiffs also point to several decisions in the bankruptcy and district courts in which a bankruptcy court certified a nationwide class.  Supp. Reply at 7-8 (citing cases).  And the Plaintiffs note the recent decision in *In re Anderson*, where the court found that the Bankruptcy Code empowered it with jurisdiction to "'certify a nationwide class of debtors whose identical discharge orders were allegedly breached by implementation of the same, uniformly applied policy.'"  Supp. Reply at 8 (citing *In re Anderson*, 641 B.R. at 18).

As the Supreme Court has stated, "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction."  *Baker v. General Motors Corp.*,

522 U.S. 222, 236 (1998).  And as the Second Circuit has observed, "[v]iolation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred."  *Striller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963).  But as this Court observed in *In re Golden*, "this is a starting point, and does not answer the question of whether the issuing court may also entertain a request for *broader* relief, or whether *only* the issuing court may determine whether a violation has occurred."  *In re Golden*, 630 B.R. at 918 (citing *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 627 B.R. 6, 23 (Bankr. E.D.N.Y. 2021)) (emphasis in original).  And as one bankruptcy court recently observed, the Supreme Court's use of the word "generally" in *Baker* indicates that this is "not a jurisdictional limitation."  *In re Anderson*, 641 B.R. at 16-17 (quoting *Baker*, 522 U.S. at 236).

First, in examining the statutory bankruptcy discharge injunction, this Court has observed that "it is created by Bankruptcy Code Section 524(a), which states that it 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.'"  *In re Golden*, 630 B.R. at 918 (quoting 11 U.S.C. § 524(a)(2)).  "'[T]he bankruptcy discharge order is a form, a national form, which is issued in every case when there is, in fact, a discharge.  By statute, in [Section] 524(a)(2), it operates as an injunction . . . .  It is not a handcrafted order.'"  *In re Golden*, 630 B.R. at 918 (quoting *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL 3608891, at *8 (Bankr. S.D.N.Y. July 22, 2014)).  That is the "'fundamental difference between [a] normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in [Bankruptcy Code] Section 524(a) to support the discharge under Section 727.'"  *In re Golden*, 630 B.R. at 918-19 (quoting *In re Haynes*, 2014 WL 3608891, at *8).  *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439,

445-46 (1st Cir. 2000) (holding that "when dealing, as here, with violation of a purely statutory order," such as the discharge injunction imposed by Section 524, it is not necessary to return to "the court that issued the original discharge order").

Another piece of the picture is the source of the bankruptcy court's authority to enforce its own orders and, more generally, to enforce the provisions of the Bankruptcy Code, including the statutory bankruptcy discharge injunction. One source of federal court authority is the All Writs Act. The All Writs Act states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). And some courts have looked to that Act to conclude that only the court that issued a debtor's bankruptcy discharge should have the power to enforce that injunction. *See Ajasa*, 627 B.R. at 23.

Navient points to the Eleventh Circuit's decision in *Alderwoods* and other decisions, and argues that following that reasoning, only the court that issues a discharge "'possesses the power to enforce compliance with, and punish contempt of, that order.'" Opp. at 12 (citing *Alderwoods*, 682 F.3d at 968, 969, 971). It asserts that this is a consequence of the nature of a bankruptcy court's jurisdiction over *a debtor's estate*, and from the notion that only the court that enters an injunction has the jurisdiction to enforce it. Opp. at 12 (citing *Alderwoods*, 682 F.3d at 969-70). In addition, the court in *Alderwoods* separately noted that "the discharge injunction itself is like an All Writs Act injunction issued 'in aid of' a court's jurisdiction . . . in that the discharge injunction is 'in aid of' the purpose of the Bankruptcy Code." *Alderwoods*, 682 F.3d at 972 n.24 (quoting 28 U.S.C. § 1651).

But again, as this Court concluded in *In re Golden*, the Bankruptcy Code provides an additional source of authority to bankruptcy courts, distinct from the All Writs Act – and this is

Bankruptcy Code Section 105(a).  *In re Golden*, 630 B.R. at 919.  Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  And these "provisions of this title" include the statutory bankruptcy discharge that is set forth in Bankruptcy Code Section 524(a).

Here, as this Court found in *In re Golden*, the bankruptcy court's decision in *In re Haynes* provides helpful guidance.  Considering first the All Writs Act, the court observed that "[v]ery clearly, that statute is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be enforced."  *In re Haynes*, 2014 WL 3608891, at *8.  The court went on to observe that, by contrast, Section 105(a) "is quite different":

> Although modeled on the All Writs Act, . . . [Section 105] does not refer to aiding the Court's own jurisdiction. . . .  [T]he legislative history of this section, in H.R. Rep. 95-595, states that, among other things, Section 105 is intended to 'cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute.'  (Emphasis added.)  The statutes are different, in other words.

*Id.*

> The *Haynes* court continued:

> I believe it is a mistake to rely upon the All Writs Act cases to hold that a bankruptcy court has power under the applicable statute only to enforce its own orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular.

*Id.*  "That is, the authority granted to bankruptcy courts by Section 105 is – explicitly and by design – broader than the authority granted to federal courts in the All Writs Act."  *In re Golden*, 630 B.R. at 920 (citing *Ajasa*, 627 B.R. at 24).

Other courts have similarly concluded that the "plain meaning" of Section 105(a) gives broad authority to bankruptcy courts to "'issue *any* order . . . necessary to carry out the

provisions of the bankruptcy code.'"  *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.* (*In re Terrebonne Fuel & Lube, Inc.*), 108 F.3d 609, 613 (5th Cir. 1997) (quoting *Burd v. Walters* (*In re Walters*), 868 F.2d 665, 669 (4th Cir. 1989)) (emphasis added).  *See, e.g.*, *Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 458 (Bankr. S.D. Tex. 2008) (stating that "Section 105(a) plainly states that the court can issue any 'judgment' necessary or appropriate to carry out the requirements of the bankruptcy code.  Any judgment would include any remedy available in a private cause of action.").  *See also In re Jewish Mem'l Hosp.*, 13 B.R. 417, 419 (Bankr. S.D.N.Y. 1981) (Lifland, B.J.) (citing *Young v. Higbee Co.*, 324 U.S. 204, 214 (1945)) (observing that "[i]t is well established that the Bankruptcy Court is a court of equity and that its proceedings are inherently proceedings in equity.").

A third piece of the picture is the source of the Court's jurisdiction, including its subject matter jurisdiction.  Here, the Plaintiffs' claims arise under the Bankruptcy Code, and specifically, under Bankruptcy Code Sections 727, 524(a)(2), and 105(a).  *See In re Golden*, 630 B.R. at 920.  "As a consequence, for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's subject matter jurisdiction, because the claim is a 'civil proceeding[] arising under title 11.'"  *In re Golden*, 630 B.R. at 920 (quoting 28 U.S.C. § 1334(b)).  As this Court has stated, "'there [are] few matters as "core" to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code.'"  *In re Golden*, 630 B.R. at 920 (quoting *In re Haynes*, 2014 WL 3608891, at *7).  "[T]he question[] of . . . jurisdiction to grant relief" and the question of subject matter jurisdiction are intertwined.  *In re Golden*, 630 B.R. at 920.  "It is axiomatic that this Court has subject matter jurisdiction to consider the discharge injunction violation claims" of Mr. Homaidan and Ms. Youssef as the named plaintiffs, who filed Chapter 7 bankruptcy cases in this

District, because those are core matters. *Id.*

Notably, other courts have reached similar conclusions, and have certified class actions, including nationwide class actions, to address a range of bankruptcy claims where the class as certified extended outside of the bankruptcy court's home district. And courts have correctly observed that where jurisdiction is lacking, they are required – even *sua sponte* – to dismiss the case. *See, e.g.*, *Merchants Bank v. C.R. Davidson Co.* (*In re C.R. Davidson Co.*), 232 B.R. 549, 551 (B.A.P. 2d Cir. 1999) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (stating that "[w]hen such jurisdiction is lacking, and although no party has raised the issue, we have the duty to dismiss sua sponte."). *See also In re Jeffrey L. Miller Invs., Inc.*, 624 B.R. 913, 916-17 (Bankr. M.D. Fla. 2021) (dismissing adversary proceeding for lack of subject matter jurisdiction); *Receivables Exchange, LLC v. Hotton*, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (citations omitted) (stating that "when a complaint fails to plead subject matter jurisdiction, the Court is obligated to dismiss it *sua sponte*").

And this Court and others "have similarly recognized that the jurisdiction to enter a nationwide remedy is part of the court's jurisdiction over the putative class." *In re Golden*, 630 B.R. at 922 (first citing *Vick v. NCO Fin. Sys., Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 1328830 (E.D. Tex. Mar. 30, 2010); and then citing *Rojas v. Citi Corp. Tr. Bank FSB* (*In re Rojas*), 2009 WL 2496807, at *10 (Bankr. S.D. Tex. Aug. 12, 2009)). For example, in *Sheffield v. HomeSide Lending, Inc.* (*In re Sheffield*), 281 B.R. 24 (Bankr. S.D. Ala. 2000), the bankruptcy court certified a nationwide class with respect to claims arising from a creditor's failure to disclose post-petition, pre-confirmation attorney fees in its proofs of claim. *See also*, *e.g.*, *In re Noletto*, 281 B.R. at 46-48 (same); *Dean v. First Union Mortg. Corp.* (*In re Harris*), 280 B.R. 876 (Bankr. S.D. Ala. 2001) (same).

"Bankruptcy courts have also noted, in different contexts, that in the appropriate circumstances, the certification of a nationwide class may be permitted, particularly when the relief sought is not solely *in rem* in nature." *In re Golden*, 630 B.R. at 921. For example, in *Chiang v. Neilson* (*In re Death Row Records, Inc.*), 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012), the Ninth Circuit Bankruptcy Appellate Panel permitted certification of a nationwide class as to "turnover, declaratory and injunctive relief claims" noting that they "are not solely *in rem* claims." *In re Death Row Records, Inc.*, 2012 WL 952292, at *12.

As this Court and others have observed:

> "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy court *strictly to in rem matters involving property of the debtor or property of the estate* and not as a restriction on nationwide jurisdiction over claims for violation of provisions of the Code, other federal statutory provisions, or other remedies that might be available to debtors and trustees."

*In re Golden*, 630 B.R. at 921 (quoting *In re Krause*, 414 B.R. at 255-56).

And as this Court has previously noted, "'[Judiciary Code] Section 1334(b) grants subject matter jurisdiction over any debtor claims that fall within the court's "related to," "arising in," or "arising under" jurisdiction, regardless of where the claimant's bankruptcy petition was filed.'" *In re Golden*, 630 B.R. at 921 (quoting *Cano v. GMAC Mortg. Corp.* (*In re Cano*), 410 B.R. 506, 551 (Bankr. S.D. Tex. 2009)).

To be sure, in many of these nationwide class actions, the relief sought did not necessarily call for the court to address a discharge order entered outside of its district. Instead, these cases addressed other matters that are fundamental to the bankruptcy system, including the disclosure of fees in a proof of claim and other alleged violations of the Bankruptcy Code and other statutes. But in each circumstance, the court concluded that a nationwide class was both possible and appropriate. As stated by this Court and others, "'this conclusion advances the

goals and purpose of the class action mechanism.  Class actions promote efficiency and economy

in litigation.  Their design permits numerous parties to collectively litigate claims that might be

uneconomical to litigate individually.'"  *In re Golden*, 630 B.R. at 921-22 (quoting *Bank United*

*v. Manley*, 273 B.R. 229, 249-50 (N.D. Ala. 2001)).

Moreover, "'if bankruptcy court jurisdiction is not permitted over a class action of

debtors, Rule 7023 is virtually read out of the rules.  This would ascribe to Congress the intent to

categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a

clear indication of such intent.'"  *In re Golden*, 630 B.R. at 922 (quoting *Wilborn v. Wells Fargo*

*Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 754 (5th Cir. 2010)).  As one court observed in

denying a motion to dismiss a putative nationwide class action asserting violations of the

statutory bankruptcy discharge, "[t]he Court has the power to provide all of the relief requested."

*Vick*, 2010 WL 1330637, at *4.

And finally, nationwide settlements of class actions asserting statutory bankruptcy

discharge injunction violations have been approved by bankruptcy and district courts in several

cases within the Second Circuit.  In such circumstances, again, the court necessarily concluded

that it could enter an order that, in effect, provided for relief outside of its own district, including

with respect to an asserted violation of a discharge order entered in another district by another

court.  *See Belton v. GE Capital Retail Bank* (*In re Belton*), 21-cv-09492, at ECF No. 17

(S.D.N.Y. Feb. 10, 2022); *Ajasa v. Wells Fargo Bank, N.A.*, 21-cv-07085-ENV, at ECF No. 18

(E.D.N.Y. April 25, 2022); *Anderson v. Capital One Bank (USA), N.A.*, 19-cv-03981-NSR, at

ECF No. 20 (S.D.N.Y. Sept. 11, 2019); *Anderson v. Capital One Bank (USA), N.A.*, 15-08342-

RDD, at ECF No. 99 (Bankr. S.D.N.Y. Jan. 7, 2021); *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-

03307-VB, at ECF No. 19 (S.D.N.Y. Aug. 24, 2018); *Haynes v. Chase Bank U.S.A., N.A.*, 13-

08370-RDD, at ECF No. 133 (Bankr. S.D.N.Y. Sept. 27, 2018); *Echevarria v. Bank of America Corp.*, 17-cv-08026-VB, at ECF No. 23 (S.D.N.Y. Mar. 14, 2018); *Echevarria v. Bank of America Corp.*, 14-08216-RDD, at ECF No. 121 (Bankr. S.D.N.Y. Mar. 15, 2018). While each of these cases ultimately reached a consensual outcome, that consensus cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction to enter a remedy, where it is otherwise lacking. As the Second Circuit has observed, "[j]urisdiction cannot be created by the consent of the parties." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal citations omitted).

In each of these nationwide class actions entertained by the bankruptcy and district courts, the court exercised jurisdiction over discharge orders entered by other courts in other districts around the country. As a result, "this Court's subject matter jurisdiction to . . . enter a remedy in this case[] should not be limited by the scope of that request," including nationwide relief for the putative class. *In re Golden*, 630 B.R. at 923. That is, there is no limitation through "any shortcoming in this Court's jurisdiction to consider, and if appropriate to enter," a remedy applicable to the putative nationwide class. *Id.*

Next, the Court considers whether the Second Circuit's decisions in *Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612 (2d Cir. 2020), and *In re Anderson* compel the conclusion that any action for contempt of a bankruptcy discharge injunction must be heard by the court that issued the discharge.

In *In re Belton*, the Second Circuit was "called upon to decide a narrow issue: whether a dispute concerning the violation of a bankruptcy discharge order is arbitrable." *In re Belton*, 961 F.3d at 614-15. And the Second Circuit found that "'the alleged violation of a bankruptcy court discharge order' is not an arbitrable dispute because, as the *Anderson* court found, 'arbitration

was in "inherent conflict" with enforcement of a discharge injunction.'" *In re Golden*, 630 B.R. at 925 (quoting *In re Belton*, 961 F.3d at 615).

In addition to addressing the question of the arbitrability of a discharge injunction violation, the Second Circuit observed:

> [W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order. Most circuits that have considered the issue have rejected the notion. *See Crocker*, 941 F.3d at 216-17 ("We adopt the language of [*Anderson*] that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'"); *Alderwoods Grp.*, 682 F.3d at 970 ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Walls*, 276 F.3d at 509-10 (same); *Cox*, 239 F.3d at 916-17 (same); *but see Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) (holding that a debtor is not required to "bring her claims in the court that issued the original discharge order"). And those cases are buttressed by the Supreme Court's recent decision in *Taggart*, which made clear that the contempt powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions." 139 S. Ct. at 1802.

*In re Belton*, 961 F.3d at 617-18.

That is, in *In re Belton*, the Second Circuit addressed the question of whether an asserted violation of the statutory bankruptcy discharge injunction was within the scope of a pre-dispute arbitration agreement. The court affirmed the district and bankruptcy court's conclusion that "the alleged violation of a bankruptcy court discharge order" is not an arbitrable dispute because, as it held in *Anderson*, "arbitration was in 'inherent conflict' with enforcement of a discharge injunction." *In re Belton*, 961 F.3d at 615 (quoting *In re Anderson*, 884 F.3d at 390).

And in *In re Belton*, the issue before the court was not the scope of a bankruptcy court's subject matter jurisdiction over a nationwide class, or the question of nationwide relief. The court recognized this, and stated that "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *Anderson* should be read as a tacit endorsement of such." *In re*

*Belton*, 961 F.3d at 617.  Rather, and again as this Court found in *In re Golden*, *In re Belton* found that "'the alleged violation of a bankruptcy court discharge order' is not an arbitrable dispute because, as the *Anderson* court found, 'arbitration was in "inherent conflict" with enforcement of a discharge injunction.'"  *In re Golden*, 630 B.R. at 925 (quoting *In re Belton*, 961 F.3d at 615).

Next, the Court considers the Second Circuit's observation in *In re Anderson* that "the discharge injunction is an order issued by the bankruptcy court and . . . the bankruptcy court alone possesses the power and the unique expertise to enforce it."  *In re Anderson*, 884 F.3d at 391.  As this Court recognized in *In re Golden*, *In re Anderson* addressed the question of the arbitrability of a discharge order violation in "the context of bankruptcy courts and the bankruptcy system, not solely a single bankruptcy court or district.  The court did not address, and did not need to address, whether the issuing judge, or district, or circuit set the boundary for the bankruptcy court's jurisdiction in the matter before it."  *In re Golden*, 630 B.R. at 925.

Further, here, "these claims 'arise under' the Bankruptcy Code, are separate and distinct from any *in rem* basis for the bankruptcy court's jurisdiction, and go to the heart of one of the fundamental protections of the bankruptcy system – that is, the debtor's discharge and opportunity for a fresh start."  *In re Golden*, 630 B.R. at 926.  As the court in *Haynes* explained:

> While it is true that a substantial portion of bankruptcy jurisdiction is *in rem*, that is, jurisdiction over the debtor's estate wherever located, it is not the only basis for bankruptcy jurisdiction, which, under 28 U.S.C. Section 1334(b), extends to "all civil proceedings arising under title 11," including under 11 U.S.C. Sections 524 and 727.  In fact, . . . these fundamental, if not the fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or *in rem* jurisdiction.  They have everything to do with prohibiting the collection of *in personam* debts that, before the bankruptcy discharge, were owed by the debtor.

*In re Haynes*, 2014 WL 3608891, at *6.

Mr. Homaidan and Ms. Youssef seek, for themselves and for all Putative Class Members,

neither more nor less than the full benefit of their statutory bankruptcy discharges. "And under Bankruptcy Code Section 524(a), the discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*.'" *In re Golden*, 630 B.R. at 927 (quoting 11 U.S.C. § 524(a)(2)). Their claims do not concern "'property of the estate, as of the commencement of the case,' or 'property of the estate,' as addressed by Judicial Code Section 1334(e)(1)." *In re Golden*, 630 B.R. at 927.

And a violation of the Plaintiffs' and Putative Class Members statutory bankruptcy discharges is, of course, the violation of a statute. As the Seventh Circuit recognized, "Section 524(a)(2) . . . enjoins . . . collection[,] . . . so the creditor who attempts to collect a discharged debt is violating . . . a statute." *Cox*, 239 F.3d at 915. As this Court has noted, "Bankruptcy Code Section 105 grants the bankruptcy court power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *In re Golden*, 630 B.R. at 914 (quoting 11 U.S.C. § 105). As the court in *In re Haynes* recognized, Section 105 permits a bankruptcy court to enforce "the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular." *In re Haynes*, 2014 WL 3608891, at *8. A bankruptcy court "is well within its authority if it exercises its equitable powers to enforce a specific code provision." *Vick*, 2010 WL 1330637, at *3 (citing *In re Rodriguez*, 396 B.R. at 455-60).

Finally, the Court considers the Supreme Court's ruling in *Taggart*. In *Taggart*, the Supreme Court observed that "the statutes specifying that a discharge order 'operates as an injunction,' and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, bring with them the 'old soil' that has long governed how courts enforce injunctions." *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C.

§ 524(a)(2) and § 105(a)).  And it found that "as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Taggart*, 139 S. Ct. at 1801. As the Supreme Court explained, this "old soil" is the source of "traditional standards" as to when a finding of civil contempt may lie, and leads to the conclusion that a court may hold a creditor in civil contempt for violating a debtor's discharge if there is "no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

That is, *Taggart* addressed the nature of the creditor's conduct and the scope of the debtor's discharge, and held that a finding of civil contempt may issue only where the question of the creditor's violation is decisively answered in the affirmative – where there is "no fair ground of doubt" as to the existence of the violation.  And the "old soil" informs the question of intent, not the question of whether a bankruptcy court has jurisdiction to grant injunctive relief applicable to a putative nationwide class.  While *Taggart* surely has a role to play in determining a creditor's liability, it simply does not address whether this question may be considered by a court solely in an individual debtor's case, or in a district-wide class, or, as here, in a putative nationwide class.  *In re Golden*, 630 B.R. at 927.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs, on behalf of themselves and the Putative Class Members, have shown that this Court may enter a preliminary injunction on behalf of the Putative Class Members, whether or not their bankruptcy discharge was entered in this District.

*<u>Whether the Plaintiffs Have Shown that Relief Is Appropriate Not Only on Behalf of Putative Class Members with Tuition Answer Loans that Exceed the Cost of Attendance, But Also on Behalf of Putative Class Members with Other Private Loans that Exceed the Cost of Attendance</u>*

Next, the Court considers whether it is appropriate at this time to enter preliminary

injunctive relief on behalf of the Plaintiffs and the Putative Class Members with outstanding loan balances as identified in the Amended Complaint – holders of private Tuition Answer Loans, who attended Title IV institutions, who received a bankruptcy discharge, and whose loans exceed the cost of attendance – or, alternatively, as identified in the Class Certification Motion, holders of any private student loan, who attended Title VI institutions, who received a bankruptcy discharge, and whose loans exceed the cost of attendance. *See* Am. Compl. ¶ 73, Class Cert. Mot. at 15.

In the Preliminary Injunction Motion, the Plaintiffs ask for preliminary injunctive relief to stop Navient's collection activities "on any direct-to-consumer loan that they cannot establish [does] not exceed the cost of attendance." Prelim. Inj. Mem. at 1. And they state that the class as defined in the Class Certification Motion is not limited to individuals who received private Tuition Answer Loans, but includes "all individuals who attended Title IV institutions and received private loans owned or serviced by Defendants which exceed the cost of attendance and who obtained bankruptcy discharge but are still subject to Defendants' attempt to collect." Reply at 6. According to the Plaintiffs, the fact that the Amended Complaint makes reference only to private Tuition Answer Loans does not limit the Plaintiffs from seeking relief on behalf of a broader class, as justified by the facts. *Id*.

Navient responds that the Plaintiffs seek preliminary injunctive relief that is overbroad and is notably broader than the relief sought on behalf of the proposed class in the Class Certification Motion. Opp. at 13-14. It states that the Amended Complaint addresses only those loans issued under the Tuition Answer program, which is just one of several "direct-to-consumer" loan programs serviced by Navient; the Preliminary Injunction Motion proposes to expand the case to cover all "direct-to-consumer" loans, a category that includes, but is far

broader than, private Tuition Answer Loans; and the pending Class Certification Motion and this Preliminary Injunction Motion would expand the scope of this action to an even greater extent, seeking relief as to all "private" student loans, whether issued under "direct-to-consumer" programs or under "school certified" programs.  It states that if the putative class is expanded in this way, relief would potentially cover over 320,000 loans issued under more than 80 different loan programs.  Supp. Opp. at 15.  And Navient points out that the Plaintiffs seek this dramatic expansion of the scope of the alleged class without seeking to amend the Amended Complaint. *Id*.  For these reasons, Navient urges, any preliminary injunctive relief should be limited to collection efforts on private Tuition Answer Loans.  Supp. Opp. at 16.

As a starting point, courts recognize that the parameters of an asserted class may develop over time.  As the Second Circuit has noted, "[a] court is not bound by the class definition proposed in the complaint." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).  And as another court has observed, "a court . . . 'has broad discretion to modify the class definition as appropriate.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 463-64 (S.D.N.Y. 2018) (quoting 5 Moore's Federal Practice § 23.21[6] (3d ed. 2017)).

Courts also recognize that a class action plaintiff may redefine the class in their motion for class certification, and that definition may become the one that is controlling.  As one court observed, "courts have the discretion, at the certification stage, to redefine classes." *Carrillo v. Wells Fargo Bank, N.A.*, 2019 WL 3714801, at *13 n.8 (E.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019).  Other courts are in accord. *See, e.g.*, *Kopaleishvili v. Uzbek Logistics, Inc.*, 2019 WL 6609212, at *3 (S.D. Ohio Dec. 5, 2019) (citing *Cowan v. Nationwide Mut. Ins. Co.*, 2019 WL 4667497, at *7 (S.D. Ohio Sept. 25, 2019)) (finding plaintiff's class definition in their motion for class certification to be

controlling over the class definition in the complaint).

At the same time, the court's discretion to modify the definition of a putative class as set forth in the complaint should be exercised with restraint. And restraint is particularly likely to be warranted where, as here, the matter to be decided by the Court is not whether to certify a class, but whether to enter preliminary injunctive relief, and where the proposed modification of the class as alleged would expand, not contract, the scope of an alleged class. Until a motion for class certification is decided, it is likely to be the complaint, and not the motion for class certification, that establishes the parameters and expectations of the putative class members, the defendants, and other interested parties.

This is consistent with the decisions that have addressed this and similar issues. At least two courts in this Circuit have found it appropriate to expand the scope of a class beyond the parameters alleged in the complaint at the time of class certification. In *Menking ex rel. Menking v. Daines*, the court considered a situation where the "plaintiff initially sought certification of a citywide class in the Complaint . . . [and] [b]ased on evidence obtained in discovery, . . . concluded that a new and expanded statewide definition for the proposed class would be proper." *Menking ex rel. Menking v. Daines*, 287 F.R.D. 174, 181 (S.D.N.Y. 2012). The defendants did not object, and the court determined that "a statewide class definition would be appropriate." *Id.* And in *McCarthy v. Paine Webber Group, Inc.*, the court observed that "[t]he class as certified is the class that was requested in plaintiffs' Motion for Class Certification that was the subject of several memoranda of law by both plaintiffs and defendants. Contrary to defendants' assertions, the Court is not bound by the class definition proposed in the complaint." *McCarthy v. Paine Webber Grp., Inc.*, 164 F.R.D. 309, 311 (D. Conn. 1995) (citing *Robidoux*, 987 F.3d at 937).

A similar conclusion was reached by the court in *In re Namenda Direct Purchaser*

*Antitrust Litigation*.  In *Namenda*, the court reviewed *Menking* and *McCarthy*, and observed that

"a plaintiff's expansion of the class definition beyond that which was proposed in the complaint

is not categorically improper."  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d

152, 211 (S.D.N.Y. 2018).  The court also found that the plaintiffs "are not attempting to add any

new defendants, . . . [n]or are they attempting to broaden the class definition 'in the midst of'

class certification briefing – they included the expanded definition at the outset, in their initial

motion for certification."  *Namenda*, 331 F. Supp. 3d at 211.  And the court concluded that

"[u]ltimately, consistent with the certifying court's broad discretion over class definition and

obligation to reassess class rulings as the case develops," there is "no reason to disregard the

class definition" that the plaintiffs proposed "simply because it expands upon the definition

found" in the Amended Complaint.  *Namenda*, 331 F. Supp. 3d at 212 (citing *Boucher v.

Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)).

Here, it is clear that the Court has the discretion to consider and, if warranted by the

record, to certify an appropriate class, even if the parameters of that class differ from the class

definition set forth in the allegations of the Amended Complaint.  It is similarly clear that the

Court's discretion to do so should be exercised in the right context, based on the appropriate

record, and with adequate notice and an opportunity for both the proponents and the opponents

of certification to be heard.  Courts that have followed this path and certified a class that is larger

than the class defined in the complaint have generally done so in the context of a motion for class

certification.  And while this Court has the discretion to expand the definition of the class at this

stage as well – in considering a motion for a preliminary injunction – it also has the discretion to

decline to do so, and to defer that question until further consideration of the Plaintiffs' request

for preliminary injunctive relief, a request to amend the Amended Complaint, or alternatively,

for certification of the class.

*          *          *

The Court declines the invitation to expand preliminary injunctive relief – at this time – to the larger group of those Putative Class Members encompassing student borrowers who entered into other private loans that exceed the cost of attendance, as the class is described in the Class Certification Motion.

### *Whether the Plaintiffs Have Shown that a Bond Should Not Be Required*

The Plaintiffs argue that this Court should not require them to post a bond upon the issuance of a preliminary injunction. Prelim. Inj. Mem. at 5. They note that Bankruptcy Rule 7065 specifically provides that a court may enter a preliminary injunction "on the application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." Fed. R. Bankr. P. 7065. And they note that this was "obviously enacted in recognition of the limited means of the debtor and the fact that injunctions are often needed to protect the bankruptcy court's jurisdiction over the estate of the debtor." Prelim. Inj. Mem. at 5. The Plaintiffs state that, in light of the limited financial resources of the Plaintiffs and the Putative Class Members, and the substantially greater financial resources of the Defendants, no bond should be required here. Prelim. Inj. Mem. at 5 (citing *Rivera*, 2012 WL 19337667).

Navient responds that any preliminary injunction entered by the Court here must be accompanied by the requirement a bond be posted, as the costs and damages that the Defendants would incur in complying with a preliminary injunction would be both "indeterminate and, potentially, massive." Opp. at 23-24. It asserts that the amount of the bond required from the Plaintiffs is not determinable until the Court rules on the potential scope of the Plaintiffs' class. Opp. at 24. Accordingly, Navient contends that the Court should refrain from ruling on the Plaintiffs' Preliminary Injunction Motion until after it resolves the Plaintiffs' Class Certification

108

Motion, and in any case, the Court should not relieve the Plaintiffs of their duty to post a bond. *Id*.

The Plaintiffs reply that the Defendants do not offer any evidence, by affidavit or otherwise, of any substantial administrative costs that they will suffer if a preliminary injunction is granted to support the requirement of posting of a bond.  Reply at 7.  To the same effect, they add that the Defendants demand a bond without "delineating or supporting any claim of injury." Reply at 9.

Federal Rule of Civil Procedure 65(c) provides that a court may "issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The bond requirement "'assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff.'"  *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 202 (E.D.N.Y. 2013) (quoting *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011)).

The Second Circuit has observed that a federal court "'is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm.'"  *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)).  To the same effect, "[d]istrict courts in this circuit have declined to require any bond where there was no showing of a likelihood of harm to the enjoined party."  *Eastman Kodak Co. v. Collins Ink Corp.*, 821 F. Supp. 2d 582, 590 (W.D.N.Y. 2011) (citing *City of New York v. Venkataram*, 2011 WL 2899092, at *6 n.9 (S.D.N.Y. July 13, 2011)).

Here, the Court finds that the Plaintiffs are not required to post a bond, as a preliminary injunction enjoining Navient from collection activities on Putative Class Members' private Tuition Answer Loans that were in excess of the cost of attendance does not harm any legitimate legal interest of Navient.  As stated above, there is no legal interest in continuing to collect on a discharged debt, and Navient has no legal interest that would be harmed by injunctive relief preventing the collection of such discharged debts.  *See Rex Medical L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 627 (S.D.N.Y. 2010) (finding that no bond was required for a preliminary injunction to enjoin party from terminating contract because compliance with a legal obligation "is simply not the sort of 'damage' that is compensable at law").

In addition, and separately, Navient has not provided persuasive evidence sufficient to support its assertion that it may be required to incur "costs and damages" that could be "massive."  Opp. Mem. at 23-24.

And indeed, Navient has asserted that a preliminary injunction here would do no more than require it to comply with the law, and to respect the bankruptcy discharges that the Plaintiffs and the Putative Class Members have received in their bankruptcy cases.  It states that the Plaintiffs' requested preliminary injunction demands no more relief than what the Bankruptcy Code already provides to them, and it states that this successive injunctive relief would be superfluous.  Opp. at 13 (citing *Alderwoods*, 682 F.3d at 968; and *Barrientos*, 633 F.3d at 1190). Based on Navient's own characterization of the Plaintiffs' requested injunctive relief, the costs of compliance should be no greater than the costs of complying with the requirements of the Bankruptcy Code.  And the costs of complying with the law are not "damages."

## Conclusion

For the reasons stated herein, and based on the entire record, the Plaintiffs' Motion for a Preliminary Injunction is granted in part.  Navient is restrained and enjoined from taking any acts

to collect on Tuition Answer Loans held by the Plaintiffs and the Putative Class Members, as the class is described in the Amended Complaint, that exceed the cost of attendance as defined by Internal Revenue Code § 221(d), and that have an outstanding balance subject to collection.

In view of the pendency of this Court's Temporary Restraining Order, which was entered on July 6, 2022, and has been in effect since September 6, 2022, Navient has had reasonable and sufficient time to implement compliance measures, and this Memorandum Decision and the accompanying order shall be effective immediately.

An order in accordance with this Memorandum Decision will be entered simultaneously herewith.

Dated: Brooklyn, New York
October 17, 2022



Elizabeth S. Stong
United States Bankruptcy Judge