**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**HILAL K. HOMAIDAN,**<br>f/k/a Helal K. Homaidan,<br><br>      **Debtor.** | **Chapter 7**<br><br>**Case No. 08-48275 (ESS)** |
| In re:<br><br>**REEHAM YOUSSEF aka Reeham**<br>**Navarro Youssef aka Reeham N. Youssef,**<br><br>      **Debtor.** | **Chapter 7**<br><br>**Case No. 13-46495 (ESS)** |
| **HILAL K. HOMAIDAN on behalf of**<br>**himself and all others similarly situated**<br><br>      **Plaintiff,**<br><br>v.<br><br>**SALLIE MAE, INC,**<br>**NAVIENT SOLUTIONS, LLC,**<br>**NAVIENT CREDIT FINANCE**<br>**CORPORATION**<br><br>      **Defendants.** | **Adv. Pro. No. 17-1085** |

**NAVIENT'S REPLY BRIEF IN SUPPORT**
**OF EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION**

Defendants Navient Solutions, LLC and Navient Credit Finance Corporation (collectively "Navient") file this Reply Brief in Support of the Emergency Motion to Stay Preliminary Injunction to address the points made in Plaintiffs' Memorandum of Law in Opposition to

Defendants' Motion to Stay Preliminary Injunction [Dkt. No. 420] (the "Opposition" or "Opp."). Navient respectfully states as follows:

## INTRODUCTION

The Bankruptcy Court Order at issue (the "Injunction") is not an ordinary injunction, nor should its appeal be treated as ordinary.

Typically, when a party seeks injunctive relief—as Plaintiffs did here—it does so in order to maintain the status quo for its own benefit. But when in issuing an injunction, the Court actually *disrupts* the status quo and *creates* irreparable harm to the enjoined party and absent third parties, a stay of that injunction is necessary. Navient has outlined in its motion to stay, as well as other related briefing, that the consequences of the Injunction have immediate potential to cause irreparable harm. At this juncture, Navient is merely seeking temporary relief to avoid unnecessarily and unfairly becoming subject to an injunction that should ultimately be vacated.

Plaintiffs avoid meaningfully addressing most of the substantive arguments Navient raised in the initial motion to stay. Instead, Plaintiffs' position appears to be that a stay is not warranted simply because the Bankruptcy Court has already ruled in their favor.

The vast weight of case law—including some from within the Second Circuit—indicates that the Bankruptcy Court acted beyond its jurisdiction by ostensibly enforcing discharge injunctions issued outside of the Eastern District of New York. Plaintiffs do not meaningfully address that authority. Second, Plaintiffs seek to impermissibly pass *their burden*—as the party seeking injunctive relief—to Navient to show that any portions of their loans that exceed the "cost of attendance" are non-dischargeable. In addition to advocating a legal framework that is not supported by applicable law, Plaintiffs contend that a court need not consider a borrower's individual purpose in obtaining a loan when assessing whether that loan is dischargeable.

Third, Plaintiffs completely ignore that the Injunction effectively operates as a mandatory injunction, which will have real-world, real-time consequences to Navient. Those consequences will almost certainly be unrecoverable through the normal appellate process. Fourth, despite not even seeking the Injunction for two years after initiating this action, Plaintiffs insist that they will be harmed if a stay is issued. Fifth, Plaintiffs ignore that the Injunction will cause potentially severe consequences for absent class members without a stay.

For these reasons, and the reasons stated in Navient's initial motion, the Court should stay the effective date of the Injunction until after resolution of Navient's pending appeal.

For these reasons, and the reasons stated in Navient's initial motion, the Court should stay the effective date of the Injunction until after resolution of Navient's pending appeal.

## **THE COURT SHOULD ENTER A STAY PENDING APPEAL**

### A.      **Navient Has a Strong Likelihood of Prevailing on Appeal**

The "level or degree of possibility of success" necessary to support a stay pending appeal "will vary according to the court's assessment of the other stay factors." *Mohammed v. Reno,* 309 F.3d 95, 101 (2d Cir. 2002). The level of success that a movant must show therefore lies "between possible and probable and is intended to eliminate frivolous appeals." *In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 146 (Bankr. S.D.N.Y. 2016) (quotations and citation omitted). Here, Navient has a strong likelihood of prevailing on appeal that independently justifies a stay, even apart from the remaining factors.

#### i.      **The Question of Appealability Properly Resides with the District Court**

Plaintiffs focus a large segment of their Opposition on arguing the procedural posture of Navient's appeal of the Injunction to the district court. Particularly, they focus their argument on Navient's standing to appeal under 28 U.S.C. § 158 and 28 U.S.C. § 1292(b). *See* Opposition at

3-7.  Navient already briefed these issues to the district court, and Navient notes that these questions are for the district court to consider and decide.  It is decidedly improper for Plaintiffs to invite this Court to render an advisory opinion on procedural determinations not properly before it.  Moreover, these questions are entirely collateral to the merits of the appeal which are the subject of the instant stay motion.

Moreover, by accepting a direct appeal in *Bruce v. Citigroup Inc.*, Case No. 22-134 (2d Cir. May 4, 2022) to address head-on the specific question of whether a bankruptcy court can adjudicate nationwide class claims for contempt predicated on alleged violations of discharge injunctions issued by other courts nationwide, the Second Circuit has confirmed that there exist substantial grounds to challenge this Court's authority to address alleged discharge violations from around the country—the very same issue that Navient raises here.  *See* Motion to Stay [Dkt. 408] at 15.  This issue is, moreover, clearly a "controlling" issue of law the resolution of which may materially advance the ultimate termination of the litigation.  As explained in a leading treatise on federal practice, decisions that reject challenges to justiciability and that are subject to contrary authority are "obviously" appropriate for interlocutory review under § 1292(b) as controlling questions that will materially impact case termination.  Wright, Miller, & Cooper, Federal Practice and Procedure, 16 Fed. Prac. & Proc. Juris. § 3931 (3d ed.)

### ii.    The Court Lacked Authority to Grant Nationwide Relief

A bankruptcy discharge "operates as an injunction" against actions which a debtor might take to collect on the discharged debt.  11 U.S.C. § 524(a)(2), (3).  "[V]iolations of this court-ordered [discharge] injunction are enforceable only by the bankruptcy court and only by a contempt citation."  *In re Anderson*, 884 F.3d 382, 391 (2d Cir. 2018).  The authority to do what the Bankruptcy Court did here—enforcing a contempt order on a nationwide basis—was lacking

because the power to address contemptuous conduct in violation of an injunction *resides uniquely and solely in the court that issued the order allegedly violated. See, e.g., Gunn v. Univ. Comm. To End the War in Vietnam*, 399 U.S. 383, 389 (1970).

Instead of pointing to a particular provision of the Bankruptcy Code that permits the enforcement of discharges entered in other jurisdictions, the Bankruptcy Court assumed it had that authority, despite the consensus of Circuit-level authority stating otherwise. *See, e.g., In re Crocker*, 941 F.3d 206, 216-17 (5th Cir. 2019); *Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958, 970 (11th Cir. 2012); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 509-10 (9th Cir. 2002); *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 912-13 (7th Cir. 2001).

The Court rested its assumption upon its view (a) that it had subject matter jurisdiction over claims arising under the bankruptcy code (such as the bankruptcy discharge), (b) that attempts to collect upon discharged debts violated Section 524 of the Bankruptcy Code, and (c) that section 105 of the Bankruptcy Code gives the Court authority to issue "any judgment necessary or appropriate to carry out the requirements of the bankruptcy code." *See In re Homaidan*, No. 08-48275-ESS, 2022 WL 4073429, at *19-*24 (Bankr. E.D.N.Y. Sept. 2, 2022) (hereinafter, the "TRO Stay Decision").   Respectfully, this reasoning conflicts with the long-standing limitations of Section 105 of the Bankruptcy Code.  The Second Circuit has "long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code." *In re Kalikow*, 602 F.3d 82, 96 (2d Cir. 2010) (internal quotations and citations omitted).  "Section 105 does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id*.  In other words, "the equitable power conferred on a bankruptcy court by 11 U.S.C. § 105 is the power to exercise equity in carrying out the *provision*s

of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *Id*. at 97.  Here, the leading authority has recognized a fundamental limitation on the authority of enforcement of Section 524 of the Bankruptcy Code—that enforcement of such discharge is limited to the issuing court.  Interpreting Section 105 as providing an independent basis to avoid such restrictions is akin to the prohibited "roving commission to do equity" and bypasses entirely the jurisdictional and prudential limits on the Court's authority.  Navient respectfully submits this is an inaccurate interpretation of the law.

In their Opposition, Plaintiffs do not address the above-cited authorities or how they figure into the current state of the law, apart from reference to the TRO Stay Decision.[1]  Moreover, Plaintiffs ignore *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019), where the Supreme Court made clear that courts enforcing discharge injunctions must follow the "traditional standard[s] in equity practice."  That standard would likewise suggest that only the issuing court can adjudicate a claim for violating an injunction.  Moreover, *Belton v. GE Capital Retail Bank,* 961 F.3d 612, 617 (2d Cir. 2020), *cert. denied,* 141 S. Ct. 1513 (Mar. 8, 2021) and *Anderson,* 884 F.3d at 382, suggest that the Second Circuit would rule against Plaintiffs on the jurisdictional issue.  *See Belton*, 961 F.3d at 617 (2d Cir. 2020) ("[W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order"); *Anderson*, 884 F.3d at 390-91 (adopting reasoning recognized in *Belton* as "anathema to a nationwide class action" for discharge violations).  Navient also respectfully disagrees with the Court's interpretation of the import of the Second Circuit *Anderson* and *Belton* decisions.  *See* TRO Stay Decision at *22.

---

[1] Plaintiffs have cited in their Opposition the First Circuit's decision in *Bessette v. Avco Fin. Services, Inc.*, 230 F.3d 439 (1st Cir. 2000), as supporting a contrary rule.  Opp. at 7.  However, the decision in *Bessette* ultimately dealt only with a court's authority to enforce discharge injunctions within a single judicial district.  It lends no support to any argument that the circuit courts are split on this issue.

Though each case involved the question of arbitrability of a discharge violation claim, the *Belton* decision in particular squarely commented upon the issue of the Court's authority to adjudicate discharge violation claims originating from other courts:

> Permitting a bankruptcy court to adjudicate compliance with another court's order appears to be in severe tension with Anderson's reasoning. In particular, Anderson found that the Code displaced the Arbitration Act, in part, because contempt proceedings involve considerations that the issuing court is uniquely positioned to assess. . . . It seems to us that this rationale is anathema to a nationwide class action. . . . More fundamentally, we question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order. Most circuits that have considered the issue have rejected the notion.

*In re Belton v. GE Cap. Retail Bank*, 961 F.3d 612, 617 (2d Cir. 2020).

Plaintiffs focus on the fact that both bankruptcy courts and district courts within this Circuit have approved nationwide class-action settlements asserting discharge violations or in the context of a default judgement. Opp. at 7-8. In support of their position, Plaintiffs rely on cases cited by this Court in the Injunction but also conveniently leave out that the Court specifically said that the "consensus [that these cases were settled properly] cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction to enter a remedy, where it is otherwise lacking." *In re Homaidan*, 640 B.R. 810, 863 (Bankr. E.D.N.Y. 2022). While the Court appears to have initially agreed with this position, *see* TRO Stay Decision at *21–22, cases decided in the settlement context, where a Court enforces the terms of an agreed-upon settlement agreement, are fundamentally different from contested cases where no such agreement exists and the Court seeks to enforce discharge orders entered by other courts on a contested basis.

The fact that the Second Circuit has found reason to address the precise legal issue presented here in the *Bruce* case suggests either 1) that it would resolve the legal issue in a manner that would be favorable to Navient, or, at a minimum, 2) that there remains enough ambiguity that lower courts within the Circuit should refrain from "jumping the gun" without further guidance.

Either outcome reflects a current uncertainty of the law that reinforces the need for a stay of the Injunction. *See, e.g., Bd. of Trustees of the Michigan Reg'l Council of Carpenters Emp. Benefit Fund v. Blue Cross Blue Shield of Michigan*, 2013 WL 12184249, at *1 (E.D. Mich. Aug. 13, 2013) (staying decision pending outcome of Circuit Court case that "w[ould] likely influence the outcome of this case[.]").

The overwhelming weight of authority outlined above casts considerable doubt on the authority of this Court to issue nationwide relief in this context. That authority suggests that Navient will prevail on its position that the Bankruptcy Court impermissibly granted relief to borrowers outside of the Eastern District of New York. Coupled with the soon-to-come ruling in *Bruce*, the prudent course of action here would be to pause the Injunction to allow the appellate process to play out.

### iii.    The Court Lacked Authority to Grant Class-wide Relief

The Injunction also has grave implications for borrowers who are, at this point, strangers to the case. "Over the last half century, courts and Congress have constructed a careful balance designed to protect both the absent class members (by ensuring their interests are being adequately protected)." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 373 (3d Cir. 2022). "It is these protections that allow an absent class-action plaintiff to sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Id.* at 374 (internal quotation and citation omitted). The Injunction here disrupts that balance.

When Plaintiffs first sought provisional relief (more than two years after commencing this suit), they acknowledged that, before applying that relief on a class-wide basis, the Court would have to first rule on class certification and determine that all of the Rule 23 factors justified the maintenance of this case as a class action. *See* Dkt. No. 194 at 6. But, years later, when they

moved for a temporary restraining order, they abandoned that position and asked the Court to grant class-wide relief before certifying a class.

Although there is some authority permitting courts to exercise their discretion in granting class-wide injunctive relief before certifying a class,[2] this is not a case justifying the exercise of any such discretion, especially where such "pre-certification" injunctions are generally sought under Rule 23(b)(2), which allows for class certification only when "final injunctive relief . . . is appropriate respecting the class as a whole." *See LaForest v. Former Clean Air Holding Co.,* 376 F.3d 48 (2d Cir. 2004). In that context, absent class members can be bound by a judgment with no notice and no opportunity to opt out.

In this case, by contrast, any certification order would have to be entered, if at all, under Rule 23(b)(3), since Plaintiffs seek individual monetary awards to a large number of putative class members. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360-61 (2011) (certification under (b)(2) is unavailable where monetary relief is not incidental to injunctive relief and "when each class member would be entitled to an individualized award of monetary damages"). In a (b)(3) case, absent class members must receive notice and an opportunity to exclude themselves from the class.

This distinction renders the grant of class-wide relief before class certification particularly inappropriate in this case. By entering the Injunction before certifying the class and providing notice, the Court has put absent class members at substantial risk of harm without any meaningful opportunity to protect their interests. As such, the Injunction effectively nullifies the "procedural

---

[2] *See, e.g., J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 376 (D. Md. 2019) ("[C]ourts may enter class-wide injunctive relief before certification of a class.") (citing *Rodriguez v. Providence Community Corrections*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015)).

protections" that Rule 23 was designed to create for the absent class members.  *See Dukes*, 564 U.S. at 362.

These concerns are particularly acute in view of the Court's finding that "if a private student loan exceeds the applicable cost of attendance, then the entire student loan debt is dischargeable," apparently predicated on the view that "[t]he Bankruptcy Code does not allow for a partial discharge of student loan debt."  *Homaidan v. Sallie Mae*, No. 08-48275-ESS, 2022 WL 10707498, at *35 (Bankr. E.D.N.Y. Oct. 17, 2022).  The Court's cited authority arose in the undue hardship context, and numerous bankruptcy courts have held debt partially dischargeable in both undue hardship cases and in other exceptions to dischargeability.  *See, e.g., In re Tirch*, 409 F.3d 677, 680 (6th Cir. 2005) ("Despite the fact that 11 U.S.C. § 523(a)(8) makes no mention of partial discharges, we have held that the bankruptcy court may grant a partial discharge of such a debt pursuant to the equitable powers enumerated in 11 U.S.C. § 105(a)."); *In re Saxman*, 325 F.3d 1168, 1174 (9th Cir. 2003) (similarly permitting partial discharge of student loan under 11 U.S.C. § 523(a)(8)); *see also In re Parra*, 483 B.R. 752, 756 (Bankr. D.N.M. 2012) (concluding debt dischargeable in part but nondischargeable as to portion of debt procured by debtor's "false pretenses in providing invalid substitute titles as security for the balance due on other vehicles."); *In re Hunter*, 36 B.R. 28, 31 (Bankr. D.N.D. 1983) (concluding portion of debt procured by intentional misrepresented regarding land ownership nondischargeable but remainder of debt dischargeable where creditor could not prove it was procured based on false representation), *aff'd as modified*, 771 F.2d 1126 (8th Cir. 1985); *Matter of Redford*, 7 B.R. 322, 324–25 (Bankr. M.D. Ga. 1980) (holding dischargeable portion of debt where creditor could not show reasonable reliance on false representation but holding debt otherwise nondischargeable).  Resolution of this contested question of law in particular may vastly change the scope of any relief sought by

Plaintiffs in this case, and raises the definite possibility that an overly-broad collection cease will ultimately prejudice borrowers who are subject to the Injunction who have not had notice or opportunity to opt-out.

### iv.    The Court Lacked Authority to Grant Relief on A Record Devoid of Supporting Evidence

A stay pending appeal is justified because of two critical errors in the Injunction—(1) the erroneous assumption that there is a reading of 11 U.S.C. § 523(a)(8)(B) under which portions of Navient loans that exceed the "cost of attendance" can be mathematically determined, and (2) the lack of an evidentiary foundation supporting a finding that Navient is collecting or plans to collect on any loan amount disbursed to the borrower that exceeded the borrower's actual cost of attendance.

Plaintiffs contend—and the Bankruptcy Court appears to agree at this early stage—that the only analysis required to determine the portion of a loan that is dischargeable is to subtract the cost of attendance from the total amount disbursed on the loan.  Navient is likely to succeed on its position that this is not the proper construction to halt collections.

Section 523(a)(8)(B) does not mention "cost of attendance." "Cost of attendance" only factors into the discharge analysis because Section 523(a)(8)(B) incorporates by reference § 221(d)(1) of the Internal Revenue Code.  Section 221(d)(1), in turn, explains that a "qualified education loan" is exempt from discharge if it is "incurred by the [borrower] solely to pay qualified higher education expenses."  Section 221(d)(2) then defines "qualified higher education expenses" as the "cost of attendance."  This formulation requires that courts engage in a purpose-based analysis rather than the rigid and simplistic calculation that Plaintiffs suggest.  Indeed, recent decisions in other courts confirm this view. *See, e.g., In re Conti*, 982 F.3d 445, 449 (6th Cir. 2020) (endorsing analysis where "the court should look to the initial purpose of the [borrower's]

loans, rather than their actual uses, to determine whether they fall within the scope of 8(B).”); *In re Mallet*, 625 B.R. 553, 557 (Bankr. M.D. Fla. 2021) (adopting reasoning in *Conti* and noting that “focusing on the initial purpose—rather than the use—of the loan avoids the absurd scenario where borrowers would be rewarded for misusing their student loans.”).   Under this formulation of § 523(a)(8)(B), Navient is likely to prevail since both Homaidan and Youssef certified to Navient in the applicable loan documents that their respective loans were within the cost of attendance and that they were borrowing the funds to pay qualified education expenses.[3]

Alternatively, even under Plaintiffs’ construction of § 523(a)(8)(B), Plaintiffs’ claims will still likely fail based on the current record, considering that Plaintiffs have offered no evidence that Navient is actually collecting or will collect on any loan amount where the amount disbursed to the borrower exceeds the actual cost of attendance.   While a creditor may have the ultimate burden to prove dischargeability of a debt under Section 523 on the merits, Plaintiffs—as the party seeking injunctive relief—bear the burden to show that they are likely to succeed on the merits of their claims.   Yet, without citing to any authority, Plaintiffs have contended in other briefing that Navient, at this stage of the proceedings, bears the burden to prove that a loan is non-dischargeable. *See, e.g.,* Dkt. No. 364 at 4.   To that end, Plaintiffs cite to a few minor pieces of evidence that only suggest the possibility that Navient might have collected on such loans.   *Id.* at 9-10.   But the evidence Plaintiffs cite at best suggests that Navient has not yet affirmatively disproven such collection allegations.   That is simply not the correct framework for analyzing the viability of Plaintiffs’ requests for injunctive relief.   In this context, Plaintiffs bear the burden of proving the likelihood of success of their claims.   They have not done so.

---

[3] Navient has already outlined this in its Opposition to Plaintiffs’ Motion for Partial Summary Judgment, which Navient incorporates herein by reference. *See* Dkt. No. 188 at 5-7.

### v.  The Court Lacked Authority to Grant Relief after Years of Unexplained Delay

Plaintiffs offer no explanation for why injunctive relief was not necessary at the outset of this litigation but has now somehow become necessary years after the fact.  Offering no justification for their extreme delay, Plaintiffs argue that this Court's ruling in their favor is alone dispositive of the issue.  Opp. at 10.

Navient also respectfully disagrees with the Court's conclusion that Navient's prosecution of its defense, it motion practice, or the pendency of mediation excuses Plaintiffs' delay.  TRO Stay Decision at *31.  No Court order or other impediment existed for the Plaintiffs to request preliminary relief.  That Plaintiffs chose to wait was a strategic litigation choice.  This does not offset the effect of the extreme delay in this case or the plain fact that such delay severely undercuts Plaintiffs' arguments regarding irreparable harm requiring an injunction.

Navient is likely to prevail on appeal on its position that this delay was far too long to warrant any kind of injunctive relief, much less the sweeping and immediate relief granted to Plaintiffs in the Injunction.  *See Weight Watchers, Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction.").  It is highly likely that the Injunction will be vacated on appeal for this reason alone, especially considering that Plaintiffs have no justifiable explanation for their delay.

### vi.  The Court Lacked Authority to Grant Relief Through a Non-Compliant Order

Rule 65 quite clearly requires that a restrained party be able to identify "the act or acts restrained or required" from the four corners of the injunction.  Plaintiffs appear to argue that the Injunction complies with Rule 65 because Navient could *theoretically* determine which loans are

subject to the Injunction by drawing inferences from the Injunction and evaluating voluminous records. But that is the precise "guesswork" that the four-corners requirement is designed to avoid so that an enjoined party can properly structure its compliance with the order. *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 415 (7th Cir. 2008); *see also Buckingham Corp. v. Karp*, 762 F.2d 257, 260 (2d Cir. 1985) ("[T]he terms of the injunction ordered by the district court are not entirely clear. It does not appear that there was a separate document that set forth the terms of the Injunction, and *we are left to draw inferences from statements in other documents*.") (emphasis added).

Moreover, Plaintiffs do not address the reality that the Injunction commands Navient to do little more than "obey the law." The Injunction precludes collection activities on loans that "exceed the cost of attendance," but (a) provides no guidance whatsoever on how to determine whether a loan falls into that category and (b) ignores that determining the cost of attendance remains a central merits question unresolved in this case. In effect, the Injunction simply restates that Navient cannot collect on the putative class members' loans that have already been discharged in their respective jurisdictions. Because the putative class members' individual discharge orders already have the force of law, the Injunction "do[es] not require [Navient] to do anything more than that already imposed by law[.]" *Dublino v. McCarthy*, 2019 WL 2053829, at *20 (N.D.N.Y. May 9, 2019). And, "as the Second Circuit instructs, 'an injunction must be more specific than a simple command that the defendant obey the law.'" *In re Bishop*, 578 B.R. 158, 167 (W.D.N.Y. 2017) (quoting *Peregrine Myanmar v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)); *see also Alderwoods*, 682 F.3d at 968 ("The party seeking to enforce an injunction cannot, however, obtain a successive injunction—i.e., an injunction ordering compliance with an existing injunction.").

Finally, without defining "acts to collect," the Injunction does not delineate what Navient is required to do, or what it is prohibited from doing, to comply with its terms. *See, e.g., Patriot Homes*, 512 F.3d at 415 (explaining that injunction was deficient because it "use[d] a collection of verbs to prohibit [the defendant] from engaging in certain conduct, but ultimately it fail[ed] to detail what the conduct [was]"). Without defining "acts to collect," the Injunction is hopelessly vague and again requires Navient to guess at its meaning.

### B.    Navient will be Irreparably Injured Absent a Stay

The Injunction not only fails to serve the purpose of a preliminary injunction, (to preserve the status quo), but it also *creates* irreparable harm upon Navient—harm that would not exist without the Injunction and harm that Navient may now only avoid through obtaining a stay.

 "Irreparable harm exists where . . . there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Allstate Ins. Co. v. Harvey Fam. Chiropractic,* 677 F. App'x 716, 718 (2d Cir. 2017); *see also Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (same). Here, Navient has shown that it will suffer injury which "cannot be remedied" absent a stay. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted).

The Injunction will injure Navient in at least two ways. First, compliance with the Injunction will require Navient to incur significant costs. *See* Motion to Stay at 15-16. Because the Injunction did not require the posting of any bond as is typically done under Fed. R. Civ. P. 65(c), and since Homaidan and Youseff are likely judgment proof, Navient will have no practical remedy to later recoup these costs even if the Injunction is vacated.[4]

---

[4] Though Bankruptcy Rule 7065 may not expressly require such a bond, in most other civil litigation contexts "the instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Scanvec Amiable Ltd. v. Chang*, 80 F. App'x 171, 175 (3d Cir. 2003) (quotation

Here, the Injunction will almost certainly cause many loans that are currently being repaid to slip into default.  *See* Declaration of Patrick Theurer, Dkt. No. 408-1 at 2.  Eventually, Navient expects to prevail on Plaintiffs' pending motions for class certification, for preliminary injunctive relief, and for summary judgment.  Though in such a circumstance Navient would still be able to seek repayment from putative class members as a matter of law, as a practical matter Navient will likely suffer substantial, real-world losses during the duration of the Injunction that it cannot recoup.  Denying Navient's request for a stay could very well "defeat the very purpose of permitting an appeal and leave a defendant who prevails on appeal holding an empty bag." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79 (1st Cir. 2021).

Federal courts will stay orders issuing injunctive relief when the enjoined party—such as Navient here—will suffer losses that cannot be undone by complying with the order.  *See, e.g., Northeast Ohio Coalition for Homeless v. Blackwell*, 467 F.3d 999, 1011 (6th Cir. 2006) (granting a stay of a temporary restraining order, noting that if the state (the enjoined party) "prevail[ed] after a full adjudication of the merits, it [would] be difficult, if not impossible, for the voter identification requirements to be applied retroactively to those absentee ballots cast during the TRO" and that "the State would be irreparably injured in its ability to execute valid laws") (citation and quotation omitted); *see also Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (determining, in the context of assessing appealability, that the effect of the district court's TRO on the enjoined party "could not be undone, thus rendering the consequences irreparable").

---

and citation omitted); *see also Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011) (explaining that a bond assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the *possible insolvency* of the plaintiff) (emphasis added).

Although the precise dollar figure Navient will lose is unknown at this point, the harm Navient will clearly suffer in the absence of a stay is neither "remote" nor "speculative;" rather, it is concrete and imminent, and, therefore, sufficient to demonstrate irreparable harm. *Grand River*, 481 F.3d at 66 (citation omitted).

Moreover, the Court's finding that the requested injunction affects Navient "only to the extent that it is collecting on discharged debts" ignores the reality that no judicial determination has been made as to which of the debts at issue in this case fall within 11 U.S.C. § 523(a)(8)(B) and which do not. TRO Stay Decision at *34. Absent these guideposts, Navient is likely to end up in the position of ceasing collection on loans that a later judicial determination, either in this case or on appeal, finds that such loans are properly within the scope of the discharge exception. The damage to Navient, however, at that point will be manifest and without meaningful redress.

### C.    A Stay Will Not Substantially Injure Other Interested Parties

As set forth above, Plaintiffs' conduct in this case belies any supposed urgency to implement the Injunction. After waiting for a half-decade to seek a temporary restraining order against Navient, Plaintiffs effectively argue that any pause in the Injunction would result in injury to them. *Id.*

To the extent Plaintiffs truly believed that Navient's collection activities were causing irreparable injury for which money damages would be an inadequate remedy, they would have filed their motion for a temporary restraining order immediately upon filing this lawsuit. Instead, they waited for *two years* to seek a preliminary injunction and waited another *three years* after that to seek a temporary restraining order. These years-long delays in seeking injunctive relief undercut any argument that Plaintiffs *now* face injury if a stay were granted. *See CitiBank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the

17

theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.") (citations omitted); *see also Gidatex, S.r.L. v. Campianello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.").

Plaintiffs offer little argument as to why maintaining the status quo that predates the Injunction would harm them. They offer no credible risk of irreparable harm to borrowers on account of a stay of the Injunction, who will still retain all of their legal rights and remedies whether the Injunction stands or is dissolved. Navient respectfully submits the Court erred in reaching this determination in the TRO Stay Decision. *See* TRO Stay Decision at *35.

### D.  The Public Interest Favors Issuance of a Stay

Plaintiffs gloss over this factor, arguing in a brief paragraph that the public interest does not weigh in favor of a stay because it would conflict with the Bankruptcy Code's underlying policy of facilitating a "fresh start" for debtors who seek discharges and that not every valid educational debt taken on by a debtor must be a qualified education loan. Opp. at 11-12.

Whatever the public interest might be in seeing this particular putative class of debtors getting a "fresh start," there are stronger competing public interests in ensuring that bankruptcy discharge orders do not 1) prejudice citizens without first providing them with notice and an opportunity to be heard, or 2) promote dishonest borrowing practices. The Injunction here plainly violates both of these interests.

First, as one district court explained, "[c]lass-wide litigation for monetary relief poses risks to absent class members because each class member might have a different amount at stake." *Pund v. City of Bedford, Ohio*, 339 F. Supp. 3d 701, 718 (N.D. Ohio 2018). "When individualized

monetary relief is at stake (as opposed to indivisible injunctive relief), a putative class member may wish to opt out of class representation and pursue her case alone." *Id.* Here, Navient demonstrated, with uncontroverted evidence, that the Injunction has the potential to severely disadvantage members of the putative class. *See* Dkt. No. 320 at 16-18. Had the Court deferred entry of the Injunction until after certification of any class, the class members, under Rule 23(b)(3), would have been entitled to notice and an opportunity to exclude themselves from the class, thereby receiving the opportunity to protect themselves from the potential harm the Injunction may engender. Simply put, the Injunction deprives absent class members of basic due process rights, and the public interest favors giving meaning to Rule 23's "procedural protections" for absent class members. *Dukes*, 564 U.S. at 362.

Second, the public interest is not served by the Injunction, which, at least under the facts of this case, effectively rewards borrowers for having submitted loan documents containing material misrepresentations. Both Homaidan and Youseff represented on their Tuition Answer loans that they would use the loan proceeds solely to pay education costs within the cost of attendance at their respective schools. However, they now admit that they did *not* use the loan proceeds for that purpose. The Injunction effectively rewards them for this practice, and, in effect, condones unscrupulous student loan borrowers who breach their contractual representations to their lenders.

Finally, any public interest in seeing that this putative class of debtors get a "fresh start" is not harmed by pausing the Injunction until these issues can be resolved on appeal. Granting a stay does not prevent the debtors from getting a fresh start, but rather ensures that debtors will not be subject to the confusion and uncertainty of the Injunction without notice and with the ultimate merits in this case undetermined.

## **CONCLUSION**

Based on the foregoing and on the arguments set forth in Navient's opening motion, the

Court should stay the effective date of the Injunction until after the resolution of Navient's appeal.

Respectfully submitted,

/s/ *Shawn R. Fox*
Shawn R. Fox
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone: 212.548.2100
Email: sfox@mcguirewoods.com

- and -

Thomas M. Farrell (pro hac vice)
McGuireWoods LLP
845 Texas Avenue, Suite 2400
Houston, Texas 77002
Telephone: 713.571.9191
Email: tfarrell@mcguirewoods.com

- and -

Dion W. Hayes (pro hac vice)
K. Elizabeth Sieg (pro hac vice)
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Email: dhayes@mcguirewoods.com
Email: bsieg@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that on the 28th day of October, 2022, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Shawn R. Fox*
Shawn R. Fox