UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

In re:                                                                    Chapter 7

HILAL KHALIL HOMAIDAN,                                                     Case No. 08-48275-ess
*aka* Helal K Homaidan,

                          Debtor.

-------------------------------------------------------------------------x

In re:                                                                    Chapter 7

REEHAM YOUSSEF,                                                            Case No. 13-46495-ess
*aka* Reeham Navarro Youssef,
*aka* Reeham N. Youssef,

                          Debtor.

-------------------------------------------------------------------------x

HILAL KHALIL HOMAIDAN on behalf of himself and
all others similarly situated,

and                                                                       Adv. Pro. No. 17-1085-ess

REEHAM YOUSSEF,

                       Plaintiffs,

     v.

SALLIE MAE, INC., NAVIENT SOLUTIONS, LLC,
NAVIENT CREDIT FINANCE CORPORATION,

                       Defendants.

-------------------------------------------------------------------------x

## MEMORANDUM DECISION ON NAVIENT'S <u>MOTION FOR A STAY PENDING APPEAL</u>

*Appearances*:

| | |
|---|---|
| George F. Carpinello, Esq. | Thomas M. Farrell, Esq. |
| Adam Shaw, Esq. | McGuire Woods LLP |
| Boies Schiller Flexner LLP | JPMorgan Chase Tower |
| 30 South Pearl Street (11th Floor) | 600 Travis Street (Suite 7500) |
| Albany, NY 12207 | Houston, TX 77002 |
|  *Attorneys for Plaintiffs* |  *Attorneys for Defendants* |

Jason W. Burge, Esq.
Kathryn J. Johnson, Esq.
Fishman Haygood LLP
201 Saint Charles Avenue (Suite 4600)
New Orleans, LA 70170
 *Attorneys for Plaintiffs*

Shawn R. Fox, Esq.
Joseph A. Florczak, Esq.
Dion W. Hayes, Esq.
K. Elizabeth Sieg, Esq.
McGuireWoods LLP
1345 Avenue of the Americas (7th Floor)
New York, NY 10105
 *Attorneys for Defendants*

Lynn E. Swanson, Esq.
Peter N. Freiberg, Esq.
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70130
 *Attorneys for Plaintiffs*

November 1, 2022

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion for a stay pending appeal of this Court's preliminary injunction entered on October 17, 2022 (the "Preliminary Injunction") by Navient Solutions, LLC and Navient Credit Finance Corporation (together, "Navient").  Navient seeks a stay of this Court's direction that it cease its collection efforts on "Tuition Answer Loans" that "exceed the cost of attendance" as defined by Internal Revenue Code § 221(d), and that have an outstanding loan balance subject to collection held by the Plaintiffs and the members of a putative nationwide class of borrowers who received discharges in bankruptcy.  Amended Complaint ("Am. Compl."), ECF No. 160, ¶ 73.

Navient makes several arguments in support of its motion.  As a threshold matter, Navient states that this Court lacks the jurisdiction to address violations of discharge orders entered by other bankruptcy courts.  Navient also argues that the Preliminary Injunction was not warranted here, as the Plaintiffs cannot establish a likelihood of success on the merits because, among other reasons, each member of the putative class certified on their loan documents that their loans were within the cost of attendance at a Title IV institution.  Further, Navient argues that the Plaintiffs substantially delayed in seeking a Preliminary Injunction, and therefore this Court lacked the authority to issue the injunction.  And finally, Navient argues that the public interest weighs in favor of staying the Preliminary Injunction, as injunctive relief may harm certain members of the putative class and reward unscrupulous borrowers.

For these reasons, among others, Navient argues that the Preliminary Injunction should be stayed until the resolution of its appeal.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b).

## Background

*Mr. Homaidan's Bankruptcy Case*

On December 4, 2008, Hilal Khalil Homaidan, *aka* Helal K. Homaidan, filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 08-48275.  On December 19, 2008, Mr. Homaidan filed his schedules and statements, and on March 9, 2009, he filed certain amended schedules.  ECF Nos. 11, 19.  In his Schedule F, "Creditors Holding Unsecured Nonpriority Claims," he listed "Tuition Answer" loans owed to Sallie Mae in the amounts of $7,983.19 and $8,190.11.  On January 15, 2009, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute."  Case No. 08-48275, Doc. entry dated January 15, 2009. On April 9, 2009, the Court entered an order discharging Mr. Homaidan, and on that same day, his bankruptcy case was closed.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a determination of the dischargeability of certain of his student loans, and on May 26, 2017, the Court entered an order reopening the case.

*Ms. Youssef's Bankruptcy Case*

On October 29, 2013, Reeham Youssef, aka Reeham Navarro Youssef, aka Reeham N Youssef, filed a petition for relief under Chapter 7 of the Bankruptcy Code.  *In re Reeham*

*Youssef*, Case No. 13-46495.  On October 29, 2013, Ms. Youssef filed her schedules and statements.  Case No. 13-46495, ECF No. 1.  In her Schedule F, "Creditors Holding Unsecured Nonpriority Claims," she listed "Student Loan[s]" owed to Sallie Mae in the amounts of $9,055.00, $13,413.00, $6,415.00, $35,580.00, $23,596.00, $4,095.00, $16,275.00 and $29,493.00.  *Id.*  On December 13, 2013, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute."  Case No. 13-46495, Doc. entry dated December 13, 2013.  On February 6, 2014, the Court entered an order discharging Ms. Youssef, and on that same day, her bankruptcy case was closed.  Case No. 13-46495, ECF No. 9.

On October 1, 2019, Ms. Youssef moved to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on December 4, 2019, the Court entered an order reopening the case.

<u>Selected Procedural History of this Adversary Proceeding</u>

On June 23, 2017, Mr. Homaidan commenced this adversary proceeding (the "Adversary Proceeding") as a putative class action, on behalf of himself and others similarly situated, by filing a complaint against SLM Corporation, Sallie Mae, Inc., Navient Solutions, LLC, and Navient Credit Finance Corporation.  As to himself, Mr. Homaidan seeks a determination that certain debts that he incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and costs, for the Defendants' willful violations of the bankruptcy discharge order entered in his case. And as to the class, he seeks the same the relief.  Compl., Adv. Pro. No. 17-01085, ECF No. 1.

On October 30, 2017, Navient filed a motion to compel arbitration or, in the alternative, to dismiss the Adversary Proceeding (the "Motion to Compel or Dismiss") and a Memorandum of Law in Support of the Motion to Compel or Dismiss (the "Mot. to Compel or Dismiss

Mem."). ECF Nos. 16, 17. In the Motion to Compel or Dismiss, Navient argued that Mr. Homaidan's private Tuition Answer Loans "constitute obligations to repay funds received as educational benefits, and are therefore excepted from discharge under [Section] 523(a)(8)(A)(ii) of the Bankruptcy Code." Mot. to Compel or Dismiss Mem. at 23-24. On December 1, 2017, the Court approved a stipulation of dismissal as to defendant SLM Corporation. ECF No. 23. On December 1, 2017, the Court approved a stipulation of dismissal as to defendant SLM Corporation. *See* ECF No. 23.

On January 8, 2018, Mr. Homaidan filed opposition to the Motion to Compel or Dismiss. ECF No. 27. On January 26, 2018, Navient filed a reply in support of the Motion to Compel or Dismiss. ECF No. 29.

On July 25, 2018, the Court issued a memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to compel arbitration of Mr. Homaidan's claims. *Homaidan v. SLM Corp.* (*In re Homaidan*), 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

On January 31, 2019, the Court issued a second memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to dismiss the Adversary Proceeding. *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86 (Bankr. E.D.N.Y. 2019). On February 14, 2019, Navient filed a notice of appeal to the District Court of this Court's order denying the request to dismiss the Adversary Proceeding. ECF No. 105.

Thereafter, on October 21, 2019, Mr. Homaidan filed an amended complaint to add Ms. Youssef as a named plaintiff and proposed class representative. Am. Compl., ECF No. 160. On December 18, 2019, this Court entered an Order permitting amendment of the complaint to add Ms. Youssef as a named plaintiff and a proposed class representative. ECF No. 166.

On December 19, 2019, the Plaintiffs filed a motion seeking three forms of relief:  an order certifying a nationwide class in this Adversary Proceeding (the "Class Certification Motion" or "Class Cert. Mot."), an order for partial summary judgment on liability and restitution (the "Partial Summary Judgment Motion"), and the Preliminary Injunction Motion (together, the "Pending Motions").  ECF No. 168.  That same day, the Plaintiffs filed three memoranda of law in support of each of the three forms of relief sought, including a memorandum in support of the Preliminary Injunction Motion (the "Preliminary Injunction Memorandum" or "Prelim. Inj. Mem.").  ECF No. 171.

In the Class Certification Motion, the Plaintiffs seek to certify an injunctive relief class pursuant to Federal Rule of Civil Procedure 23(b)(2), and a damages class pursuant to Federal Rule of Civil Procedure 23(b)(2), consisting of:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mot. at 15.

On December 20, 2019, the Plaintiffs filed an amended Preliminary Injunction Motion. *See* ECF No. 180.  On January 28, 2020, this Court entered an Order scheduling a hearing an oral argument on the Preliminary Injunction Motion for February 18, 2020.  *See* ECF No. 184.

On February 3, 2020, Navient filed a response in opposition to the Preliminary Injunction Motion.  *See* ECF No. 189.  On February 12, 2020, the Plaintiffs filed a reply in support of the Preliminary Injunction Memorandum.  *See* ECF No. 194.

On February 25, 2020, the District Court granted Navient's motion to certify the order denying the Motion to Compel or Dismiss to the extent it sought to dismiss the Adversary

proceeding for direct appeal to the Second Circuit.  *Homaidan v. Sallie Mae, Inc.*, 2020 WL

5668972 (Bankr. E.D.N.Y. Feb. 25, 2020).  And on July 15, 2021, the Second Circuit affirmed

this Court's order denying Navient's motion to dismiss the Adversary Proceeding.  *Homaidan v.*

*Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021).  There, the court found that private loans do not

come within Section 523(a)(8)(A)(ii) because they are not "an obligation to repay funds as an

educational benefit."  *Homaidan*, 3 F.4th at 601 (quoting 11 U.S.C. 523(a)(8)(A)(ii)).  In

reviewing the exceptions to discharge contained in Section 523(a)(8), the Second Circuit

observed:

> [Section] 523(a)(8)(A)(i) covers government and nonprofit-backed loans and
> educational benefit overpayments; [Section] 523(a)(8)(A)(ii) covers scholarships,
> stipends, and conditional education grants; and [Section] 523(a)(8)(B) covers
> private loans made to individuals attending eligible schools for certain qualified
> expenses.

*Homaidan*, 3 F.4th at 604.

As to Section 523(a)(8)(B), the Second Circuit explained that "for a loan to be 'qualified'

under [Section] 523(a)(8)(B), the student must attend an eligible educational institution and the

loan must fund only higher education expenses."  *Homaidan*, 3 F.4th at 601 n.3 (first citing 26

U.S.C. § 25A(f)(2); and then citing 26 U.S.C. § 221(d)).

On August 23, 2021, this Court entered an Order assigning the Adversary Proceeding to

mediation.  ECF No. 302.  And on September 7, 2021, this Court entered a Stipulation and

Mediation Order, where the parties jointly accepted Eric Green of Resolutions LLC to provide

mediation services.  ECF No. 304.

On March 14, 2022, the Plaintiffs filed a letter stating that it is "clear" the Adversary

Proceeding "will not settle without a ruling by the Court" on the Pending Motions.  ECF No.

310.  The letter also stated that the Plaintiffs planned to file the TRO Motion.  *Id.*  On March 22,

2022, Navient responded by filing their own letter, stating that Navient remains engaged in the mediation process and disagrees that this Adversary Proceeding will not settle without a ruling on the Pending Motions.  ECF No. 313.

On April 7, 2022, the Plaintiffs filed a motion for a temporary restraining order (the "TRO Motion").  TRO Motion, ECF No. 314.  On April 11, 2022, this Court entered an Order scheduling a conference on the TRO Motion for April 14, 2022.  ECF No. 316.  On April 14, 2022, the Court held an initial hearing on the TRO Motion and, with the consent of the parties, set a briefing schedule on the TRO Motion.

On July 8, 2022, the Court issued a memorandum decision on the TRO Motion (the "TRO Decision"), granting in part the TRO Motion to the extent that it enjoined Navient from taking any acts to collect on Tuition Answer Loans held by the Plaintiffs and putative class members, as the class is described in the Amended Complaint, that exceed the cost of attendance as defined by Internal Revenue Code § 221(d), and that have an outstanding balance subject to collection.  TRO Decision, ECF No. 341.  *See Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 640 B.R. 810 (Bankr. E.D.N.Y. 2022).  And on that same day, the Court issued the TRO, in accordance with the TRO Decision.  TRO, ECF No. 342.

On July 21, 2022, the Court held a hearing on the Preliminary Injunction Motion and set a schedule for the filing of supplemental briefs.  The Plaintiffs were directed to file supplemental briefs on the Preliminary Injunction Motion and Class Certification Motion by August 5, 2022, the Defendants were directed to file supplemental opposition briefs by August 19, 2022, and the Plaintiffs were directed to file any reply briefs to the Defendants' supplemental opposition by August 26, 2022.

On July 25, 2022, Navient filed a notice of appeal to the District Court of this Court's

order granting in part the TRO Motion, as well as a Motion to Stay Temporary Restraining

Order.  ECF No. 350, 351.  And on July 26, 2022, Navient filed a Notice of Motion to Stay

Temporary Restraining Order.  ECF No. 356.

On August 5, 2022, the Plaintiffs filed a supplemental memorandum of law in support of

the Preliminary Injunction Motion (the "Supplemental Memorandum" or "Supp. Mem."), ECF

No. 363.  On August 19, 2022, Navient filed a supplemental memorandum in opposition to the

Preliminary Injunction Motion (the "Supplemental Opposition" or "Supp. Opp."), ECF No. 368.

On August 26, 2022, the Plaintiffs filed a supplemental reply in further support of the

Preliminary Injunction Motion (the "Supplemental Reply" or "Supp. Reply").  ECF No. 372.

On September 2, 2022, the Court issued a memorandum decision (the "Stay Decision")

and an order denying Navient's request for a stay pending appeal.  See ECF Nos. 376, 377.  And

on September 6, 2022, the District Court denied Navient's request for leave to appeal, effectively

denying a stay as well, in its Memorandum and Order, and the TRO became effective on that

date.  ECF No. 380 (the "District Court TRO Decision").  *See Navient Sols., LLC v. Homaidan*,

2022 WL 4079579 (E.D.N.Y. Sept. 6, 2022).

On September 8, 2022, Navient filed a Notice of Compliance with the TRO.  Notice of

Compliance, ECF No. 379.  In that Notice, Navient stated that it has "ceased collection

activities" on "Tuition Answer loans [that] meet two criteria:  (1) at least one borrower on each

loan obtained a discharge in bankruptcy on or after January 1, 2005 (as reported in PACER

records), and (2) the amount disbursed on each loan exceeded cost-of-attendance figures reported

to IPEDS."  Notice of Compliance at 1.

The TRO was set to expire on September 20, 2022.  On September 9, 2022, the Court

entered an Order to Show Cause why the TRO should not be extended for good cause pursuant

to Federal Rule of Civil Procedure 65, to be heard on September 19, 2022. The parties were directed to file any opposition to the Order to Show Cause by September 14, 2022, and to file responses to any opposition by September 16, 2022. And on September 14, 2022, Navient filed a response to the Order to Show Cause, consenting to extend the TRO for an additional 14 days, to October 3, 2022. ECF No. 387.

The Court held a hearing on the Order to Show Cause on September 19, 2022 at which the Plaintiffs and Navient, by counsel, appeared and were heard. At that hearing, the possibility of a scheduling conflict with the Jewish high holy days was noted, and thereafter, on September 20, 2022, Navient filed a letter consenting to an extension of the TRO through October 14, 2022. ECF No. 395. And also on September 19, 2022, the Court held oral argument on the Preliminary Injunction Motion, at which the Plaintiffs and Navient, by counsel, appeared and were heard.

On October 17, 2022, this Court issued a memorandum decision (the "Preliminary Injunction Decision" or "Prelim. Inj. Decision") and order (the "Preliminary Injunction Order" or "Prelim. Inj. Order") granting, in part, the Preliminary Injunction Motion. On October 18, 2022, Navient filed a Motion for Leave to Appeal and Alternative Petition for Mandamus in this Court (the "Motion for Leave to Appeal"), ECF No. 407, and an Emergency Motion to Stay Preliminary Injunction (the "Motion to Stay"), ECF No. 408.

On October 21, 2022, this Court entered an Order scheduling a hearing on the Motion to Stay and setting briefing deadlines (the "Scheduling Order"). ECF No. 416. As stated in the Scheduling Order, the Plaintiffs were directed to file any opposition to the Motion to Stay by October 25, 2022; Navient was directed to file any reply to the Plaintiffs' opposition by October 28, 2022; and the Court scheduled oral argument on the Motion to Stay for October 31, 2022. ECF No. 416.

On October 25, 2022, the Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Stay the Preliminary Injunction (the "Opposition" or "Opp.").  On October 28, 2022, Navient filed its Reply Brief in Support of Emergency Motion to Stay Preliminary Injunction (the "Reply").  And on October 31, 2022, the Court held oral argument on the Motion to Stay, at which the Plaintiffs and Navient, by counsel, appeared and were heard, and the record is now closed.

*The Allegations of the Amended Complaint*

In view of the nature of the relief sought in this Motion to Stay, it is helpful to summarize the principal allegations of the Amended Complaint.  *See In re Homaidan*, 596 B.R. at 91-93 (discussing the allegations contained in the Amended Complaint).

The Plaintiffs, on behalf of themselves and all others similarly situated (the "Putative Class Members"), seek a declaratory judgment, injunctive relief, and damages arising from Sallie Mae. Inc. and Navient's alleged "pattern and practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2).  Am. Compl. ¶ 2.

The Plaintiffs allege that "[f]or the last ten years, [the Defendants] have . . . engaged in a massive effort to defraud student debtors and to subvert the orderly working of the bankruptcy courts."  *Id*.  They claim that the "Defendants . . . originat[ed] and service[ed] dischargeable consumer loans [while] disguising them as nondischargeable student loans."  *Id*.  The Plaintiffs advance these allegations on behalf of an alleged class of "similarly situated individuals who have declared bankruptcy since 2005 [across the United States,] with loans originated and/or serviced by Defendants."  Am. Compl. ¶ 5.  And they allege that these loans "do not meet the definition of a nondischargeable qualified education loan" as set forth in Internal Revenue Code Section 221(d) and Bankruptcy Code Section 523(a)(8)(B).  *Id*.

10

The Plaintiffs allege that the "Defendants represented to student debtors that the Bankruptcy Code prohibited discharge of *any* loan made to any person for any educational purpose."  Am. Compl. ¶ 28.  They claim that the Defendants "failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and in particular, that Class Members' nonqualified loans were, in fact, discharged in bankruptcy."  *Id*.  And the Plaintiffs state that the Defendants utilized bankruptcy laws "to defraud vulnerable and unsophisticated student borrowers."  Am. Compl. ¶ 29.  The Plaintiffs allege that the "Defendants either misrepresented or failed to disclose facts and information related to the dischargeability of private loans," and that the Defendants did not make the same misrepresentations "to more sophisticated parties." Am. Compl. ¶ 33.

The Plaintiffs request that the Court declare that the Plaintiffs and Class Members' debts were discharged upon the entry of the applicable statutory bankruptcy discharge injunctions, because they are not student loans excluded from discharge under Bankruptcy Code Section 523(a)(8).  They seek permanent injunctive relief prohibiting the Defendants from continuing to seek collection on the Plaintiffs and Class Members' discharged debts.  The Plaintiffs also request that since the Defendants were notified of the Plaintiffs and Class Members' discharge orders pursuant to Bankruptcy Rule 4004(g), and still sought to collect on these debts by use of "dunning letters, phone calls, negative reports made to credit bureaus, failure to update credit reports, and commencing or continuing legal action to recover [these] debts in violation of [Bankruptcy Code Section 524]," the Court should cite the Defendants for civil contempt for their willful violations of the Discharge Order, and order them to pay damages in an amount to be determined at trial pursuant to Bankruptcy Code Sections 524 and 105, and also to pay his

attorneys' fees and costs.  Am. Compl. ¶¶ 90-93.

As stated in the Amended Complaint, the Plaintiffs seek to maintain this action on behalf of themselves and as representatives of Putative Class Members who:

- obtained private Tuition Answer loans in amounts that exceeded the "Cost of Attendance";

- were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;

- have never reaffirmed any pre-petition Tuition Answer loan; and

- have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

Am. Compl. ¶ 73.

### *This Motion for a Stay Pending Appeal*

Navient makes several arguments in support of the Motion to Stay.  At the outset, Navient states that under Bankruptcy Rule 8007, a party may move in the bankruptcy court for "'the suspension . . . of proceedings in a case or other relief permitted by [Rule 8007(e)].'" Motion to Stay at 5 (quoting Fed. R. Bankr. P. 8007(a)(1)(D)).  And it notes that Bankruptcy Rule 8007(e) permits a bankruptcy court to suspend proceedings in the case or issue other appropriate orders during the pendency of an appeal.  Motion to Stay at 5 (citing Fed. R. Bankr. P. 8007(e)).

Navient states that courts considering a stay pending appeal balance the following four factors:

"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies."

Motion to Stay at 5 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Navient also states that the degree to which a factor is required varies with the other factors' strengths. Motion to Stay at 5 (citing *In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014)).

Navient asserts that it has a strong likelihood of prevailing on appeal. Motion to Stay at 6. It states that this consideration independently justifies a stay, even without consideration of the remaining factors. *Id.*

As to the first factor, whether it has made a strong showing that it is likely to succeed on the merits, Navient argues that this Court lacked the authority to enter the Preliminary Injunction because it grants nationwide relief, effectively enforcing discharge injunctions issued by bankruptcy judges outside of the Eastern District of New York. *Id.* It contends that it is likely to prevail on its position that, to this extent, the Preliminary Injunction exceeded the Court's authority. *Id.* And it argues that the circuit courts presented with the question of nationwide relief here – the Fifth, Seventh, Ninth, and Eleventh Circuits – have uniformly held that a bankruptcy court does not have the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits. Motion to Stay at 6 (citing *Crocker v. Navient Solutions, L.L.C.* (*In re Crocker*), 941 F.3d 206, 216-17 (5th Cir. 2019); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 919-17 (7th Cir. 2001); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509-10 (9th Cir. 2002); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012)).

Navient also contends that the Second Circuit has signaled strongly that it will align itself with its sister circuits on this point. Motion to Stay at 6-7 (citing *Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612, 617 (2d Cir. 2020); *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 390-91 (2d Cir. 2018)). And Navient states that the Second Circuit is

now poised to rule definitively on this issue in *Bruce v. Citigroup Inc.* (*In re Bruce*), Case No. 22-134 (2d Cir. May 4, 2022).  Motion to Stay at 7.  Navient asserts that this authority, and the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), show that there is a substantial likelihood that Navient will prevail on its position that the Preliminary Injunction impermissibly provides relief to borrowers who obtained discharges outside of the Eastern District of New York.  *Id.*

Navient also argues that it is likely to succeed on the merits of its appeal because this Court lacked authority to grant class-wide relief.  Motion to Stay at 8.  It points out that there is a motion for class certification pending, but no class has been certified.  *Id.*  As a result, Navient asserts that the Preliminary Injunction "restrains Navient from engaging in collection activities directed at borrowers who, at this point, are strangers to this case."  *Id.*

Navient also argues that it has a strong likelihood of prevailing on its position that this Court erred in enjoining Navient on a class-wide basis before determining whether a class could ever be certified.  *Id.*  It states that even assuming courts have discretion in some circumstances to grant class-wide injunctive relief before certifying a class, this is not a case justifying the exercise of such discretion, as Navient contends that the Plaintiffs have offered an unpersuasive argument to justify class certification, and delayed for five years before seeking a temporary restraining order.  *Id.*

Navient states that the authority that the Plaintiffs cite for injunctive relief prior to class certification is limited to situations where certification was sought under Rule 23(b)(2), which allows for class certification when "'final injunctive relief . . . is appropriate respecting the class as a whole.'"  Motion to Stay at 8 (quoting *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004)).  Here, by contrast, Navient argues that any certification order would have to

be entered, if at all, under Rule 23(b)(3), since the Plaintiffs seek individual monetary awards to potentially thousands of putative class members. Motion to Stay at 9 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011)). It asserts that in a Rule 23(b)(3) case, absent class members must receive notice and an opportunity to exclude themselves from the class. Motion to Stay at 9. And Navient contends that this distinction renders the grant of class-wide relief before class certification particularly inappropriate in this case. *Id*.

Here, Navient argues that by entering the Preliminary Injunction before certifying the class and providing notice, this Court has put absent class members at substantial risk of harm without any meaningful opportunity to protect their interests. *Id.* Navient concludes by asserting that while there might have been argument justifying that approach in a case seeking certification of a no-notice class under Rule 23(b)(2), it is completely inappropriate – and likely unconstitutional – in a Rule 23(b)(3) case such as this. *Id.*

And finally, Navient contends that this Court lacked authority to grant relief on a record devoid of supporting evidence. Motion to Stay at 10. It argues that the Preliminary Injunction materially alters the status quo that has existed since this case was filed more than five years ago. *Id.* According to Navient, because the Preliminary Injunction alters the status quo, the Plaintiffs were required to show a "clear" or "substantial" likelihood of success on the merits in order to obtain injunctive relief on a provisional basis. Motion to Stay at 10 (citing *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003)).

With this standard in mind, Navient argues that since the Plaintiffs sought class-wide relief, and since their claim depends on proof that Navient is collecting on loans that exceed the cost of attendance, the Plaintiffs should have been required to establish at least two key points related to the merits of this dispute: first, the legal proposition that it is unlawful to collect on a

loan that exceeds the cost of attendance and second, the factual proposition that Navient is likely doing so across the universe of loans covered by the Preliminary Injunction.  Motion to Stay at 10.  Navient asserts that the Plaintiffs failed to make either showing.  *Id.*

On the legal point, Navient argues that it is likely to prevail since both Mr. Homaidan and Ms. Youssef certified to Navient in the applicable loan documents that their loans were within the cost of attendance and they were borrowing the funds to pay qualified education expenses. Motion to Stay at 11.  Navient asserts that these certifications conclusively show why and for what purpose the debts were "incurred," thus satisfying the test for non-dischargeability that, through IRC Section 221(d)(1), is incorporated into the Bankruptcy Code.  *Id.*

Navient contends that it also has a strong likelihood of success on the merits because, it asserts, the Plaintiffs did not offer competent evidence to show that it is, in fact, collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance.  *Id.*  At the most, according to Navient, the Plaintiffs demonstrated that Mr. Homaidan and Ms. Youssef received Tuition Answer Loans in amounts that may have exceeded average, estimated cost-of-attendance figures for the relevant academic years reported by the "Integrated Postsecondary Education Data System" ("IPEDS").  Motion to Stay at 10-11.

And Navient contends that it is likely to succeed on the merits of its appeal because this Court lacked the authority to grant temporary injunctive relief after two years of unexplained delay by the Plaintiffs in seeking such relief.  Motion to Stay at 12.  It argues that it is likely to prevail on appeal because this delay, for which the Plaintiffs offered no meaningful explanation, precludes issuance of the extraordinary relief set forth in the Order.  Motion to Stay at 13. According to Navient, in the Second Circuit, a delay in seeking injunctive relief of only a

"couple of months" will generally foreclose issuance of a preliminary injunction or a temporary restraining order.  Motion to Stay at 13 (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *Gidatex, S.R.L. v. Campaniello Imports. Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)).  As such, Navient argues that here, there was a multi-year delay, which by itself makes it highly likely that the Preliminary Injunction will be reversed on appeal.  Motion to Stay at 13.

Navient asserts that it is likely to succeed on appeal because this Court lacked authority to grant relief through an order that does not comply with Federal Rule of Civil Procedure 65. *Id.*  It states that the Preliminary Injunction suffers from at least two defects that render it non-compliant with Rule 65 and the requirements for injunctive relief.  *Id.*

First, Navient argues that the Preliminary Injunction does not list the loans on which Navient can no longer collect, nor does it identify any specific borrowers to whom Navient is restrained from directing collection activities.  *Id.*  Instead, Navient asserts that the Preliminary Injunction "implicitly incorporates by reference tens of thousands of loan records and financial-aid records that may show whether a loan exceeded the cost of attendance, thus leaving it to Navient – under threat of contempt – to locate and review those records and to guess that it is interpreting them consistent with the Court's view."  *Id.*  In this way, Navient contends that the Preliminary Injunction plainly violates Rule 65, which requires that a restrained party be able to identify "'the act or acts restrained or required'" from the four corners of the injunction and without having to interpret external materials referenced or incorporated in the order.  Motion to Stay at 13 (quoting *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004)).

Second, Navient argues that the Preliminary Injunction precludes collection activities on loans that "exceed the cost of attendance," but provides no guidance whatsoever on how to determine whether a loan falls into that category.  Motion to Stay at 14.  Navient points out that

the Plaintiffs contend that average, estimated data published by IPEDS is a reliable indicator of cost of attendance, but Navient disputes that position.  *Id.*  Navient argues that borrower certifications constitute a sufficient basis on which to determine whether cost-of-attendance criteria under Bankruptcy Code Section 523(a)(8)(B) have been satisfied.  *Id.*  Navient then asserts that by referring only to loans exceeding the "cost of attendance," the Preliminary Injunction Decision leaves these important questions unresolved.  Motion to Stay at 14.

According to Navient, the result of this is that the Preliminary Injunction is really nothing more than a successive injunction that, like the discharge injunctions it purports to enforce, says nothing more than "obey the law."  Motion to Stay at 14.  Navient argues that it is likely to prevail on its position that such an injunction is improper.  Motion to Stay at 14-15 (citing *Alderwoods*, 682 F.3d at 968).

Finally, Navient contends that notwithstanding a clear dispute between the parties concerning what constitutes an "act to collect," the Preliminary Injunction does not delineate what Navient is required to do or what it is prohibited from doing, in order for it to be compliant. Motion to Stay at 15.  As a result, Navient asserts that without defining "acts to collect," the Preliminary Injunction Decision is vague and requires Navient to guess at its meaning.  *Id.*

As to the second factor, whether it will be irreparably injured absent a stay, in determining whether an order should be stayed pending appeal, Navient argues that it will be irreparably injured absent a stay.  Motion to Stay at 15.  That is because the Preliminary Injunction will cause irreparable injury to Navient in at least two ways.  First, compliance with the Preliminary Injunction will require Navient to incur significant costs since the Court did not require the posting of any bond, and since Mr. Homaidan and Ms. Youssef are likely judgment proof, Navient will have no meaningful remedy to recoup these costs should it later be

determined that the Order was improvidently entered.  Motion to Stay at 15-16.  These compliance costs, Navient asserts, amount to irreparable injury.  Motion to Stay at 16 (citing *Allstate Ins. Co. v. Harvey Fam. Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017); *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)).

And second, Navient argues that, as demonstrated by the Declaration of Patricia Peterson, the Preliminary Injunction is almost certain to cause many loans, and potentially thousands of loans, that are currently being repaid to slip into default.  Motion to Stay at 16 (citing Declaration of Patricia Peterson, ECF No. 323 (the "Peterson Decl."), ¶ 10).  Navient states that while this may not impact its legal ability to seek repayment, it does mean, practically speaking, that the Preliminary Injunction will likely cause Navient substantial, real-world losses that it will never recover, even if it ultimately prevails in this case.  *Id.*

As to the third factor, whether the issuance of a stay will substantially other parties interested in the proceeding, Navient argues that a stay will not substantially injure other interested parties.  Motion to Stay at 16.  It contends that staying the Preliminary Injunction pending appeal will allow the continuation of the status quo that has existed since this case was commenced more than five years ago.  *Id.*  Navient asserts that if the Plaintiffs ultimately prevail in this case, any injury suffered by borrowers who made payments on discharged loans would be remediable by an award of money damages.  Motion to Stay at 16-17.  And it states that that the fact that the Plaintiffs waited for two years to seek a preliminary injunction and waited another three years after that to seek a temporary restraining order should effectively estop them from opposing a stay pending appeal on the basis of any claim that borrowers may suffer irreparable harm.  Motion to Stay at 16 (citing *Citibank*, 756 F.2d at 276).

As to the fourth and final stay pending appeal factor, where the public interest lies, Navient argues that the public interest favors issuance of a stay.  Motion to Stay at 17.  Navient asserts that there is a strong public interest in ensuring that citizens are not prejudiced by legal processes without first being provided notice and an opportunity to be heard.  Navient contends that the Preliminary Injunction violates this public interest because it is likely to cause significant harm to potentially thousands of absent members of a putative class before a class has been certified and before they have been given notice or any other meaningful opportunity to protect their interests.  *Id*.  Navient asserts that there is also a strong public interest in protecting both lenders and borrowers from unscrupulous practices in connection with student loans and other lending transactions, and that the Preliminary Injunction runs afoul of this public interest by effectively rewarding borrowers for having submitted loan applications and other loan documents containing material misrepresentations.  *Id*.

*The Plaintiffs' Opposition to the Motion to Stay*

The Plaintiffs respond by pointing to the TRO Stay Decision and the District Court's decision in *Navient Solutions, LLC v. Homaidan*.  They argue that, for the same reasons that this Court denied a stay of the TRO and the District Court denied Navient's request for leave to appeal the TRO, this Court should deny Navient's request for a stay pending appeal of the Preliminary Injunction.  Opp. at 1.  The Plaintiffs state that Navient "fails to show how this appeal would materially advance the ultimate termination of the litigation."  *Id*.  And they quote the District Court's observation that, in seeking leave to appeal the TRO, Navient "'has not demonstrated (or even attempted to demonstrate, really) how my review would promote a speedy resolution of the case'" and state that Navient has likewise not made any argument on this point in this Motion to Stay.  Opp. at 1 (quoting District Court TRO Decision at 7).

The Plaintiffs also respond that Navient has not shown "that there is any substantial ground for a difference of opinion within the Second Circuit on the issue of jurisdiction over a national class."  Opp. at 1.  And they point again to the TRO Stay Decision and state that Navient has not presented any new arguments to compel a different outcome in seeking now to stay the Preliminary Injunction.  Opp. at 2.

As a threshold matter, the Plaintiffs argue that "it is extremely unlikely" that the District Court will grant Navient leave to appeal, as it "cannot meet the conditions of 28 U.S.C. § 158(a)."  Opp. at 3.  They state that the standards of Judiciary Code Section 158(a)(3) are the same as those applicable to motions under Judiciary Code Section 1292(b):  (1) that the underlying order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  *Id.*  And they note that such motions for leave to appeal are granted only in "'exceptional circumstances.'"  Opp. at 3 (quoting District Court TRO Decision at 6).

Specifically, the Plaintiffs assert that Navient has not shown that an appeal of the Preliminary Injunction would materially advance the termination of this litigation, and they state that the District Court has already rejected this premise in finding that an appeal of the TRO would satisfy this requirement.  Opp. at 3 (citing District Court TRO Decision at 8).  They also state that Navient has not shown that there is a "substantial ground for difference of opinion" within the Second Circuit regarding the issue of nationwide, class-based relief.  Opp. at 4. Rather, the Plaintiffs argue, "*every* court in this Circuit that has ruled on the national class issue has agreed with this Court."  *Id.*

And the Plaintiffs argue that the Preliminary Injunction is not, as Navient contends, an immediately appealable "final order." *Id.* They point out that the issue of nationwide jurisdiction has not been "finally determined" here because this Court has neither certified a class nor ruled on the underlying merits of the claims. Opp. at 5. And citing the District Court TRO Decision, they argue that courts within the Second Circuit do not allow automatic appeals of preliminary injunctions as of right. Opp. at 5-6.

As to the underlying merits of Navient's request for a stay, the Plaintiffs respond that Navient has not raised any arguments other than those that this Court rejected in the TRO Decision. Opp. at 7. The Plaintiffs state that "Navient has expressly conceded that this Court has subject matter jurisdiction, which it clearly does." *Id.* They point to the TRO Decision and state that it is "consistent with numerous court decisions . . . holding that a bankruptcy court has nationwide jurisdiction in an action to enjoin violations of § 524 and the standard discharge order." Opp. at 7 (citations omitted). The Plaintiffs also note that five decisions within the Second Circuit have approved nationwide settlements involving alleged Section 524 discharge violations and that, as this Court has previously observed, "these settlements would have been improper if the bankruptcy court lacked jurisdiction over a national class." Opp. at 8.

The Plaintiffs dispute Navient's argument that it was improper for the Court to enter a preliminary injunction prior to class certification, pointing to the Preliminary Injunction Decision and the Court's reasoning that preliminary injunctive relief is appropriate if the putative class is suffering an irreparable injury. Opp. at 9. They also dispute Navient's contention that in the Class Certification Motion, they seek to certify a class solely under Federal Rule of Civil Procedure 23(b)(3), stating that it is "clearly incorrect" because the Amended Complaint "clearly alleges a Rule 23(b)(2) class" seeking "declaratory and injunctive relief with regard to the entire

class, separate and apart from any monetary damages that might be awarded." Opp. at 9 (citing Am. Compl. ¶ 94). And the Plaintiffs question Navient's argument regarding notice to putative class members, pointing out that Navient declined to provide provisional notice of the TRO and the Preliminary Injunction. Opp. at 9-10 (citing *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 2022 WL 4073429, at *35 (Bankr. E.D.N.Y. Sept. 2, 2022)).

In addition, the Plaintiffs respond that Navient "raises no new arguments" as to irreparable injury, and point out that the Court, in denying a stay of the TRO, previously stated that the injunctive relief "'affects Navient only to the extent that it is collecting on discharged debts – and this is plainly an activity which Navient should not undertake.'" Opp. at 10 (quoting *In re Homaidan*, 2022 WL 4073429, at *34). And they note that the Court previously declined to characterize Navient's cessation of "purely monetary" collections as irreparable harm. Opp. at 10 (citing *In re Homaidan*, 2022 WL 4073429, at *34). That is, the Plaintiffs argue, as this Court has previously found, attempts to collect on discharged debts impair a debtor's "fresh start" and therefore go beyond monetary loss to cause irreparable injury. Opp. at 11 (quoting *In re Homaidan*, 2022 WL 4073429, at *35).

As to whether the public interest would be adversely affected by a stay, the Plaintiffs dispute Navient's characterization of the Plaintiffs' and putative class members' conduct as deceptive. Opp. at 11. Rather, the Plaintiffs suggest, even if the loans were used for the stated educational purposes, that "does not mean that the loan is necessarily within the cost of attendance as strictly defined by 11 U.S.C. § 523(a)(8)(B) and I.R.C. § 221(d)." Opp. at 12-13. They suggest that any potential harm to putative class members' rights is outweighed by the real harm to debtors' "fresh starts" and point to this Court's prior reasoning that "'the public interest

is not served by the collection of a discharged debt, and the public is not disserved by enjoining that activity.'"  Opp. at 12 (quoting *In re Homaidan*, 2022 WL 4073429, at *35).

<u>*Navient's Reply in Support of the Motion to Stay*</u>

Navient replies that the Preliminary Injunction is an extraordinary measure that "*disrupts* the status quo and *creates* irreparable harm to the enjoined party and absent third parties."  Reply at 2.  It contends that the Plaintiffs have not offered a meaningful rebuttal to the Motion to Stay, but rather rely on the Court's previous decisions "in their favor."  *Id*.  Navient argues again that this Court exceeded its jurisdiction, and that the Plaintiffs, as the party seeking a preliminary injunction, should bear the burden of showing that the loans at issue are dischargeable, and not the other way around.  *Id*.  It also states that the Preliminary Injunction is mandatory rather than prohibitory, and will cause it to suffer harm.  Reply at 3.  And Navient again questions the Plaintiffs' timing, and argues that the Preliminary Injunction will harm absent class members without a stay.  *Id*.

Navient points out that the Plaintiffs argue extensively about the appealability of the Preliminary Injunction, and argues that its standing to appeal is for the District Court to decide. Reply at 3-4.  It notes the Second Circuit's acceptance of a direct appeal in *In re Bruce* and suggests that this means "the Second Circuit has confirmed that there exist substantial grounds to challenge this Court's authority to address alleged discharge violations from around the country – the very same issue that Navient raises here."  Reply at 4.  And it states that this issue is "clearly a 'controlling' issue of law the resolution of which may materially advance the termination of the litigation."  Reply at 4 (citing Motion to Stay at 4).

Quoting *In re Anderson*, Navient states that violations of the bankruptcy discharge injunction "'are enforceable only by the bankruptcy court and only by a contempt citation.'"

Reply at 4 (quoting *In re Anderson*, 884 F.3d at 391).  It asserts that the Court does not have the authority to issue a nationwide contempt order because such authority resides only in the issuing court, and that the Court "assumed it had that authority, despite the consensus of Circuit-level authority stating otherwise."  Reply at 5.

And Navient argues that the Court's reasoning in the TRO Stay Decision exceeded the bounds of Bankruptcy Code Section 105, interpreting it as "akin to the prohibited 'roving commission to do equity' and bypass[ing] entirely the jurisdictional and prudential limits on the Court's authority."  Reply at 6.  It states that the Plaintiffs do not address the Supreme Court's decision in *Taggart v. Lorenzen*, which "suggest[s] that only the issuing court can adjudicate a claim for violating an injunction."  Reply at 6 (citing *Taggart*, 139 S. Ct. at 1801).  And Navient points to Second Circuit authority "suggest[ing] that the Second Circuit would rule against Plaintiffs on the jurisdictional issue."  Reply at 6 (citing *In re Belton*, 961 F.3d at 617 and *In re Anderson*, 884 F.3d at 382).

Navient also acknowledges that, while consensus "'cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction to enter a remedy, where it is otherwise lacking,'" cases that the Court has cited in the settlement context are "fundamentally different from contested cases where no such agreement exists and the Court seeks to enforce discharge orders entered by other courts on a contested basis."  Reply at 7 (quoting *In re Homaidan*, 640 B.R. at 863, and citing TRO Stay Decision at 21-22).

And Navient points to *In re Bruce* and suggests that the Second Circuit's acceptance of that direct appeal means either that the question of jurisdiction to consider a nationwide class will be resolved in Navient's favor or "that there remains enough ambiguity that lower courts within the Circuit should refrain from 'jumping the gun' without further guidance."  Reply at 7.

Navient also states that the Preliminary Injunction has "grave implications for borrowers who are, at this point, strangers to the case."  Reply at 8.  While acknowledging that courts may exercise discretion to grant class-wide relief before a class is certified, Navient argues that "this is not a case justifying the exercise of any such discretion."  Reply at 9.  And it states that "any certification order would have to be entered, if at all, under Rule 23(b)(3)," which requires giving absent class members notice and an opportunity to exclude themselves from the class.  *Id*. Navient disputes the Court's prior finding that "'[t]he Bankruptcy Code does not allow for a partial discharge of student loan debt,'" noting that "[t]he Court's cited authority arose in the undue hardship context, and numerous bankruptcy courts have held debt partially dischargeable in both undue hardship cases and in other exceptions to dischargeability."  Reply at 10 (quoting *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 2022 WL 10707498, at \*35 (Bankr. E.D.N.Y. Oct. 17, 2022)).

Navient asserts that there are "two critical errors" in the Preliminary Injunction:  first, the underlying premise "that there is a reading of 11 U.S.C. § 523(a)(8)(B) under which portions of Navient loans that exceed the 'cost of attendance' can be mathematically determined," and second, the "lack of an evidentiary foundation" establishing that Navient is in fact collecting on loans that exceed the cost of attendance.  Reply at 11.  Navient again notes that Section 523(a)(8)(B) only incorporates the term "cost of attendance" by reference to Internal Revenue Code Section 221(d) and suggests that "[t]his formulation requires that courts engage in a purpose-based analysis rather than the rigid and simplistic calculation that Plaintiffs suggest." Reply at 11.  It states that the Plaintiffs' certifications resolve the issues of purpose and cost of attendance.  In the alternative, Navient argues that even under the Plaintiffs' reading of Section 523(a)(8)(B), the record lacks evidence showing that Navient is actually collecting or intends to

collect on loans that exceed the cost of attendance.  Reply at 12.  Acknowledging that a creditor ultimately bears the burden to show nondischargeability, Navient states that, at this stage in these proceedings, the Plaintiffs bear the burden to show that they are likely to succeed on the merits of their claims.  *Id.*  And Navient argues that the Plaintiffs have not met that burden, and instead, have shown only "the possibility that Navient might have collected on such loans."  Reply at 12 (citing Supp. Mem. at 9-10).

And Navient states that the Plaintiffs have not explained their delay in seeking injunctive relief, and it "respectfully disagrees with the Court's conclusion that Navient's prosecution of its defense, [its] motion practice, [and] the pendency of mediation excuses Plaintiffs' delay."  Reply at 13 (citing TRO Stay Decision at 31).  They argue that instead, the Plaintiffs made a "strategic litigation choice," which "severely undercuts Plaintiffs' arguments regarding irreparable harm requiring an injunction" and could itself justify vacating the Preliminary Injunction on appeal.  Reply at 13.

Navient also argues that the "Plaintiffs do not address the reality that the Injunction commands Navient to do little more than 'obey the law'" yet "provides no guidance whatsoever" on how to determine whether a loan exceeds the cost of attendance and "ignores that determining the cost of attendance remains a central merits question unresolved in this case."  Reply at 14. And Navient states that the Preliminary Injunction does not define "acts to collect," leaving Navient to guess at what it is required to do or prohibited from doing.  Reply at 15.

Navient argues that it will suffer irreparable harm because it cannot be restored to the position it occupied prior to the Preliminary Injunction.  *Id.*  It argues that it will incur significant costs, which cannot be recouped from the Plaintiffs, and that the Preliminary Injunction "will almost certainly cause many loans that are currently being repaid to slip into default."  Reply at

15-16. Because the Preliminary Injunction does not adequately define upon which loans it must cease collections, Navient argues, it "is likely to end up in the position of ceasing collection on loans that a later judicial determination . . . finds that such loans are properly within the scope of the discharge exception." Reply at 17.

At the same time, Navient states that the "Plaintiffs offer little argument as to why maintaining the status quo that predates the Injunction would harm them." Reply at 18. It again points to the Plaintiffs' delay in seeking injunctive relief and argues that borrowers "will still retain all of their legal rights and remedies whether the Injunction stands or is dissolved." Reply at 17-18.

And Navient suggests that the Plaintiffs "gloss[ed] over" the public interest, offering only a brief explanation of the Bankruptcy Code's "fresh start." Reply at 18. It argues that this interest is outweighed by the "stronger competing public interests in ensuring that bankruptcy discharge orders do not 1) prejudice citizens without first providing them with notice and an opportunity to be heard, or 2) promote dishonest borrowing practices." *Id*. Navient argues that the Preliminary Injunction "has the potential to severely disadvantage members of the putative class" without giving them notice and an opportunity to exclude themselves from the class. Reply at 19 (citing Opp. to Plaintiffs' TRO Motion, ECF No. 320, at 16-18). And it argues that the Preliminary Injunction "effectively rewards borrowers for having submitted loan documents containing material misrepresentations." Reply at 19. Finally, Navient argues that a debtor's "fresh start" is not harmed by pausing the Preliminary Injunction until the contested issues in the case can be resolved, but rather, that a stay will protect these debtors from uncertainty. *Id*.

## The Applicable Legal Standards

Bankruptcy Rule 8007 provides that "a party must move first in the bankruptcy court for . . . a stay of a[n] . . . order . . . of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). The Second Circuit has applied the *Nken v. Holder* standard when deciding whether to grant a stay pending appeal:

> The factors relevant to granting a stay pending appeal are [1] the applicant's "strong showing that he is likely to succeed on the merits," [2] irreparable injury to the applicant in the absence of a stay, [3] substantial injury to the nonmoving party if a stay is issued, and [4] the public interest.

*Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken*, 556 U.S. at 434).

As the Second Circuit has observed, "[t]he first two factors are the most critical, but a stay 'is not a matter of right, even if irreparable injury might otherwise result,' it is 'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *de Blasio*, 973 F.3d at 48 (quoting *Nken*, 556 U.S. at 433-34). *See In re Taub*, 470 B.R. 273, 277 (E.D.N.Y. 2012) (quoting *In re Smith*, 2009 WL 366577, at *2 (E.D.N.Y. Feb. 12, 2009)).

In addition, the party moving for a stay of an order pending appeal "'bears the burden of proving that a stay should be granted, and stays pending an appeal are only granted in limited circumstances.'" *In re Taub*, 470 B.R. at 277 (quoting *In re Smith*, 2009 WL 366577, at *2). That is, the moving party bears the burden of proof and must show "'satisfactory' evidence on all four" factors. *Bijan-Sara Corp. v. Fed. Deposit Ins. Corp.* (*In re Bijan-Sara Corp.*), 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996) (quoting *In re Charles and Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988)).

As to the first factor, whether the movant has demonstrated a strong showing that it is likely to succeed on the merits, the Second Circuit has observed that "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). As the Second Circuit has found, a stay pending appeal may be granted where "the likelihood of success is not high but the balance of hardships favors the applicant, . . . and . . . a stay may be granted where the probability of success is 'high' and 'some injury' has been shown." *Mohammed*, 309 F.3d at 101 (quoting *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C. Cir. 1985)). "'Simply stated, more of one excuses less of the other.'" *Mohammed*, 309 F.3d at 101 (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)) (citation omitted).

In other words, "the test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012). If the movant party "shows 'serious questions' going to the merits of its appeal as well as irreparable harm, the stay may be granted if the balance of hardships 'tips decidedly' in favor of the moving party." *Sutherland*, 856 F. Supp. 2d at 640 (quoting *Citigroup v. Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-38 (2d Cir. 2010)). "The stronger the showing that the movant makes as to its likelihood of success on the merits, the less compelling need be the movant's demonstration of harm." *Sutherland*, 856 F. Supp. 2d at 641 (citing *Mohammed*, 309 F.3d at 107). Viewed another way, "the Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *ACC*

*Bondholders Grp. v. Adelphia Comms. Corp.* (*In re Adelphia*), 361 B.R. 337, 347 (S.D.N.Y. 2007).  However, where a "likelihood of success [is] totally lacking, the aggregate assessment of the factors bearing on issuance of a stay pending appeal cannot possibly support a stay."  *de Blasio*, 973 F.3d at 49 (citing *United States v. Simcho*, 326 F. App'x 791, 794 (5th Cir. 2009)).

As to the second factor, whether the movant will suffer irreparable injury absent a stay, courts agree that the harm must be "'neither remote nor speculative, but actual and imminent.'" *In re Adelphia*, 361 B.R. at 347 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

As to the third factor, whether a party will suffer substantial injury if a stay is issued, the party seeking the stay must also establish that a stay will not substantially harm the non-moving party.  *Mohammed*, 309 F.3d at 100.  "In other words, the moving party must show that the balance of harms tips in favor of granting the stay."  *In re Adelphia*, 361 B.R. at 349.

And finally, as to the fourth factor, the question of the public interest, the movant must demonstrate that the public interest will not be adversely affected if a stay pending appeal is granted.  "This factor calls for the court to weigh the public interest in the matter, and to consider and balance the goal of efficient case administration and the right to a meaningful review on appeal."  *In re Taub*, 2010 WL 3911360, at *3 (Bankr. E.D.N.Y. Oct. 1, 2010) (citing *In re Adelphia*, 361 B.R. at 349).

**Discussion**

*Whether the Court Should Consider Whether Navient Has Made a Strong Showing that It Is*
*Likely To Succeed on the Merits of its Appeal*

As an initial matter, the Court considers a threshold inquiry on this Motion to Stay –

whether Navient has shown a likelihood of success on the merits of its request for leave to appeal

the Preliminary Injunction.

Navient argues that the Preliminary Injunction is appealable as a matter of right for two

reasons:  first, that it is a final order in a bankruptcy proceeding; and second, that even if it is

interlocutory, it is appealable under Judiciary Code Section 1292(a), which is incorporated into

Judiciary Code Section 158 by reference.  Motion for Leave to Appeal at 4.  It states that, though

preliminary injunctions are not usually considered "final" orders outside of the bankruptcy

context, the more flexible standard in bankruptcy cases means that an order "is final if it disposes

of discrete disputes within the larger bankruptcy case, especially if it seriously affects substantive

rights and there is no anticipation that the decision will be reconsidered, even though final

resolution of the case will require many future proceedings and may be years away."  Motion for

Leave to Appeal at 4-5 (citing *Arochem Corp. v. Coan* (*In re Arochem Corp.*), 176 F.3d 610, 619

(2d Cir. 1999)).  And it notes that "under 28 U.S.C. § 1292(a)(1), interlocutory orders 'granting .

. . injunctions' are immediately appealable as of right" and states that congressional intent does

not seem to indicate greater limitations on orders issued by non-Article III judges.  Motion for

Leave to Appeal at 6.

To the extent that leave to appeal is required, Navient argues that "leave should, in

essence, be automatically granted, without resort to the § 1292(b) factors" and without any

further showing "since the Injunction would have been clearly appealable had it been entered by

an Article III court."  Motion for Leave to Appeal at 14.  And to the extent that the District Court

may consider the Section 1292(b) factors, it argues that they are satisfied.  Motion for Leave to

Appeal at 14.  Specifically, Navient argues that the question of the availability of relief on behalf

of a putative nationwide class is a controlling question of law as to which there is substantial

ground for difference of opinion.  Motion for Leave to Appeal at 14-15.  It points to the Second

Circuit's acceptance of a direct appeal in *Bruce v. Citigroup Inc.* (*In re Bruce*), Case No. 22-134

(2d Cir. May 4, 2022), as a further indication that the legal issues here remain unsettled.  Motion

for Leave to Appeal at 15-16.  And in the alternative, Navient states that mandamus review of

the Preliminary Injunction would be appropriate.  Motion for Leave to Appeal at 17-18.

The Plaintiffs disagree.  They assert that "it is extremely unlikely, the underlying merits

aside, that the motion for leave to appeal will be granted, inasmuch as Navient cannot meet the

conditions of 28 U.S.C. § 158(a)."  Opp. at 3.  Specifically, the Plaintiffs argue that Navient has

not shown a likelihood of success on the merits of its argument that an appeal of the Preliminary

Injunction would materially advance the termination of this litigation.  Opp. at 3 (citing District

Court TRO Decision at 8).  They state that the District Court has already rejected that premise,

pointing to the District Court's determination that "'Navient has not persuasively explained how

its appeal would satisfy this third prong, and understandably so: even if I vacated the Bankruptcy

Court's TRO, the litigation would continue, including determination of Appellees' pending

motions for class certification and summary judgment.'"  *Id.*  They also state that Navient has not

shown that there is a "'substantial ground for difference of opinion'" within the Second Circuit

on the issue of nationwide, class-based relief.  Opp. at 4 (quoting *Falberg v. Goldman Sachs*

*Grp.*, 2020 WL 7695711, at *4 (S.D.N.Y. Dec. 28, 2020)).  Rather, the Plaintiffs argue, "*every*

court in this Circuit that has ruled on the national class issue has agreed with this Court."  Opp. at

4.  And they argue that the Preliminary Injunction is not, as Navient contends, an immediately appealable "final order."  *Id.*

Here, the record shows that when this question came before the District Court, that court "conclude[d] that leave to appeal is required under 28 U.S.C. § 158(a) and . . . den[ied] such leave."  District Court TRO Decision at 4.  And for that reason, the District Court did not consider the merits of Navient's request for a stay pending appeal of the TRO.  District Court TRO Decision at 2 n.1.  In particular, the District Court found that Navient had not met the third requirement for leave to appeal:  "that an immediate decision in Navient's favor would 'materially advance the ultimate termination of the litigation.'"  District Court TRO Decision at 7 (quoting 28 U.S.C. § 1292(b)).  And the District Court observed that "even if I vacated the Bankruptcy Court's TRO, the litigation would continue, including determination of Appellees' pending motions for class certification and summary judgment."  District Court TRO Decision at 8.

This Court sees no reason in the record to reach a different conclusion here.  It is plain from the extensive proceedings in this adversary proceeding that whether or not this Court's Preliminary Injunction remains in place – and to be sure, it is well grounded in the record of this case and supported by the controlling law, in this Court's view – there remains much to be done in this case.  The question of class certification and the determination of the Plaintiffs' claims on the merits have progressed significantly in this Court, and remain to be determined.  Viewed another way, the outcome of an appeal of the Preliminary Injunction at this time does not appear likely to "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  And for that reason, Navient has not shown that it has a strong likelihood of success on the merits of its request for an interlocutory appeal.

The Court next turns to the question of whether Navient has shown that a stay pending appeal is warranted.

In considering whether to stay an interlocutory order pending appeal, courts in this circuit evaluate whether "'the stay applicant has made a strong showing that he is likely to succeed on the merits.'"  *Sutherland*, 856 F. Supp. 2d at 640 (quoting *Nken*, 556 U.S. at 434)).  As a consequence, it is appropriate also to consider the merits of the appeal.  *See Sutherland*, 856 F. Supp. 2d at 640.  And "[t]he first two questions – addressing likely success and irreparable harm to the movant – are the most salient concerns."  *Sutherland*, 856 F. Supp. 2d at 641 (citing *Nken*, 556 U.S. at 434).  The Court will "accordingly address those first."  *Sutherland* 856 F. Supp. 2d at 641.

### *Whether Navient Has Made a Strong Showing that It Is Likely To Succeed on the Merits of its Appeal*

As described above, Navient has advanced several arguments in support of its position that it is likely to succeed on the merits of its appeal.  The Court addresses these arguments below.

Whether this Court Lacked the Authority To Grant Nationwide Relief.  The Court first considers Navient's argument that it lacks the authority to grant nationwide relief.  Motion to Stay at 6.  Navient asserts that the Preliminary Injunction grants nationwide relief, effectively enforcing discharge injunctions issued by bankruptcy judges outside of the Eastern District of New York.  *Id.*  And it contends that it is likely to prevail on its position that, to this extent, the Preliminary Injunction exceeds this Court's authority.  *Id.*  Navient asserts that when presented with similar questions of nationwide relief, the Fifth, Seventh, Ninth, and Eleventh Circuits have held that a bankruptcy court does not have the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits.  Motion to

Stay at 6 (citing *In re Crocker*, 941 F.3d at 216-17; *Cox*, 239 F.3d at 919-17; *Walls*, 276 F.3d at 509-10; *Alderwoods*, 682 F.3d at 970).

Navient also contends that the Second Circuit is likely to agree with the other circuits that have addressed this issue. Motion to Stay at 6-7 (citing *In re Belton*, 961 F.3d at 617; *In re Anderson*, 884 F.3d at 390-91). And it notes that this issue is presently before the Second Circuit in *In re Bruce*. Motion to Stay at 7. It argues that this authority, and the Supreme Court's decision in *Taggart*, show that it is likely to succeed on the merits of its argument that this Court's Preliminary Injunction impermissibly provides relief to debtors who received bankruptcy discharges outside of this District. Motion to Stay at 7.

In response, the Plaintiffs note that the Court previously rejected Navient's arguments against nationwide jurisdiction when denying a stay of the TRO pending appeal. Opp. at 7 (citing *In re Homaidan*, 2022 WL 4073429). They assert that Navient "concedes that this court has subject matter to entertain a national class" and that the Court must "exercise that jurisdiction" here. Opp. at 8-9 (citing Memorandum of Law in Support of Motion for Class Certification, ECF No. 169 at 39-40).

As the Supreme Court has stated, "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction." *Baker v. General Motors Corp.*, 522 U.S. 222, 236 (1998). And as the Second Circuit has observed, "[v]iolation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred." *Striller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963). But as this Court observed in *In re Golden*, "this is a starting point, and does not answer the question of whether the issuing court may also entertain a request for broader relief, or whether only the issuing court may determine whether a violation has occurred." *Golden v. Discover Bank* (*In re Golden*), 630 B.R.

896, 918 (Bankr. E.D.N.Y. 2021) (citing *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 627 B.R. 6, 23 (Bankr. E.D.N.Y. 2021)). And as one bankruptcy court recently observed, the Supreme Court's use of the word "generally" in *Baker* indicates that this is "not a jurisdictional limitation." *In re Anderson*, 641 B.R. at 16-17 (quoting *Baker*, 522 U.S. at 236).

First, in examining the statutory bankruptcy discharge injunction, this Court has observed that "it is created by Bankruptcy Code Section 524(a), which states that it 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.'" *In re Golden*, 630 B.R. at 918 (quoting 11 U.S.C. § 524(a)(2)). "'[T]he bankruptcy discharge order is a form, a national form, which is issued in every case when there is, in fact, a discharge. By statute, in [Section] 524(a)(2), it operates as an injunction . . . . It is not a handcrafted order.'" *In re Golden*, 630 B.R. at 918 (quoting *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL 3608891, at *8 (Bankr. S.D.N.Y. July 22, 2014)). That is the "'fundamental difference between [a] normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in [Bankruptcy Code] Section 524(a) to support the discharge under Section 727.'" *In re Golden*, 630 B.R. at 918-19 (quoting *In re Haynes*, 2014 WL 3608891, at *8). *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445-46 (1st Cir. 2000) (holding that "when dealing, as here, with violation of a purely statutory order," such as the discharge injunction imposed by Section 524, it is not necessary to return to "the court that issued the original discharge order").

Navient points to the Fifth Circuit's decision in *Crocker* and the Eleventh Circuit's decision in *Alderwoods*, and other decisions, and argues that "a bankruptcy court does *not* have

the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits."  Motion to Stay at 6.

The court in *Alderwoods* noted that "the discharge injunction itself is like an All Writs Act injunction issued 'in aid of' a court's jurisdiction . . . in that the discharge injunction is 'in aid of' the purpose of the Bankruptcy Code."  *Alderwoods*, 682 F.3d at 972 n.24 (quoting 28 U.S.C. § 1651).  But, as this Court concluded in *In re Golden*, the Bankruptcy Code provides an additional source of authority to bankruptcy courts, distinct from the All Writs Act – and this is Bankruptcy Code Section 105(a).  *In re Golden*, 630 B.R. at 919.  Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  And these "provisions of this title" include the statutory bankruptcy discharge that is set forth in Bankruptcy Code Section 524(a).

Here, as this Court found in *In re Golden* and elsewhere, the bankruptcy court's decision in *In re Haynes* provides helpful guidance.  Considering first the All Writs Act, the court observed that "[v]ery clearly, that statute is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be enforced."  *In re Haynes*, 2014 WL 3608891, at *8.  The court went on to observe that, by contrast, Section 105(a) "is quite different":

> Although modeled on the All Writs Act, . . . [Section 105] does not refer to aiding the Court's own jurisdiction. . . .  [T]he legislative history of this section, in H.R. Rep. 95-595, states that, among other things, Section 105 is intended to 'cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute.'  (Emphasis added.)  The statutes are different, in other words.

*Id.*

The *Haynes* court continued:

> I believe it is a mistake to rely upon the All Writs Act cases to hold that a bankruptcy court has power under the applicable statute only to enforce its own orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular.

*Id.* "That is, the authority granted to bankruptcy courts by Section 105 is – explicitly and by design – broader than the authority granted to federal courts in the All Writs Act." *In re Golden*, 630 B.R. at 920 (citing *Ajasa*, 627 B.R. at 24).

Other courts have similarly concluded that the "plain meaning" of Section 105(a) gives broad authority to bankruptcy courts to "'issue *any* order . . . necessary to carry out the provisions of the bankruptcy code.'" *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.* (*In re Terrebonne Fuel & Lube, Inc.*), 108 F.3d 609, 613 (5th Cir. 1997) (quoting *Burd v. Walters* (*In re Walters*), 868 F.2d 665, 669 (4th Cir. 1989)) (emphasis added). *See, e.g.*, *Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 458 (Bankr. S.D. Tex. 2008) (stating that "Section 105(a) plainly states that the court can issue any 'judgment' necessary or appropriate to carry out the requirements of the bankruptcy code.  Any judgment would include any remedy available in a private cause of action."). *See also In re Jewish Mem'l Hosp.*, 13 B.R. 417, 419 (Bankr. S.D.N.Y. 1981) (Lifland, B.J.) (citing *Young v. Higbee Co.*, 324 U.S. 204, 214 (1945)) (observing that "[i]t is well established that the Bankruptcy Court is a court of equity and that its proceedings are inherently proceedings in equity.").

A third piece of the picture is the source of the Court's jurisdiction, including its subject matter jurisdiction.  Here, the Plaintiffs' claims arise under the Bankruptcy Code, and specifically, under Bankruptcy Code Sections 727, 524(a)(2), and 105(a).  *See In re Golden*, 630 B.R. at 920.  "As a consequence, for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's subject matter jurisdiction, because the claim is a 'civil proceeding[] arising under title 11.'" *In re Golden*, 630 B.R. at 920 (quoting 28 U.S.C. §

1334(b)).  As this Court has stated, "'there [are] few matters as "core" to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code.'"  *In re Golden*, 630 B.R. at 920 (quoting *In re Haynes*, 2014 WL 3608891, at *7).  "[T]he question[] of . . . jurisdiction to grant relief" and the question of subject matter jurisdiction are intertwined.  *In re Golden*, 630 B.R. at 920.  "It is axiomatic that this Court has subject matter jurisdiction to consider the discharge injunction violation claims" of Mr. Homaidan and Ms. Youssef as the named plaintiffs, who filed Chapter 7 bankruptcy cases in this District, because those are core matters.  *Id.*

Notably, other courts have reached similar conclusions, and have certified class actions, including nationwide class actions, to address a range of bankruptcy claims where the class as certified extended outside of the bankruptcy court's home district.  And courts have correctly observed that where jurisdiction is lacking, they are required – even *sua sponte* – to dismiss the case.  *See, e.g.*, *C.R. Davidson Co., Inc. v. C.R. Davidson Co., Inc.* (*In re C.R. Davidson Co.*), 232 B.R. 549, 551 (B.A.P. 2d Cir. 1999) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (observing that "[w]hen such jurisdiction is lacking, and although no party has raised the issue, we have the duty to dismiss sua sponte.").  *See also Receivables Exchange, LLC v. Hotton*, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (citations omitted) (stating that "when a complaint fails to plead subject matter jurisdiction, the Court is obligated to dismiss it *sua sponte*.").

And this Court and others "have similarly recognized that the jurisdiction to enter a nationwide remedy is part of the court's jurisdiction over the putative class."  *In re Golden*, 630 B.R. at 922 (first citing *Vick v. NCO Fin. Sys., Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 1328830 (E.D. Tex. Mar. 30, 2010); and

then citing *Rojas v. Citi Corp. Trust Bank FSB* (*In re Rojas*), 2009 WL 2496807, at *10 (Bankr.

S.D. Tex. Aug. 12, 2009)).  For example, in *Sheffield v. HomeSide Lending, Inc.* (*In re Sheffield*),

281 B.R. 24 (Bankr. S.D. Ala. 2000), the bankruptcy court certified a nationwide class with

respect to claims arising from a creditor's failure to disclose post-petition, pre-confirmation

attorney fees in its proofs of claim.  *See Noletto v. NationsBanc Mortg. Corp.* (*In re Noletto*), 281

B.R. 36, 46-48 (Bankr. S.D. Ala. 2000) (same); *Dean v. First Union Mortg. Corp.* (*In re Harris*),

280 B.R. 876 (Bankr. S.D. Ala. 2001) (same).

"Bankruptcy courts have also noted, in different contexts, that in the appropriate

circumstances, the certification of a nationwide class may be permitted, particularly when the

relief sought is not solely *in rem* in nature."  *In re Golden*, 630 B.R. at 921.  For example, in

*Chiang v. Neilson* (*In re Death Row Records, Inc.*), 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21,

2012), the Ninth Circuit Bankruptcy Appellate Panel permitted certification of a nationwide class

as to "turnover, declaratory and injunctive relief claims" noting that they "are not solely *in rem*

claims."  *In re Death Row Records, Inc.*, 2012 WL 952292, at *12.

As this Court and others have observed:

> "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive
> jurisdiction of bankruptcy court *strictly to in rem matters involving property of the
> debtor or property of the estate* and not as a restriction on nationwide jurisdiction
> over claims for violation of provisions of the Code, other federal statutory
> provisions, or other remedies that might be available to debtors and trustees."

*In re Golden*, 630 B.R. at 921 (quoting *Krause v. Wells Fargo Bank, N.A.* (*In re Krause*), 414

B.R. 243, 255-56 (Bankr. S.D. Ohio 2009)).  And as this Court has previously noted, "'[Judiciary

Code] Section 1334(b) grants subject matter jurisdiction over any debtor claims that fall within

the court's "related to," "arising in," or "arising under" jurisdiction, regardless of where the

claimant's bankruptcy petition was filed.'" *In re Golden*, 630 B.R. at 921 (quoting *Cano v. GMAC Mortg. Corp.* (*In re Cano*), 410 B.R. 506, 551 (Bankr. S.D. Tex. 2009)).

To be sure, in many of these nationwide class actions, the relief sought did not necessarily call for the court to address a discharge order entered outside of its district. Instead, these cases addressed other matters that are fundamental to the bankruptcy system, including the disclosure of fees in a proof of claim and other alleged violations of the Bankruptcy Code and other statutes. But in each circumstance, the court concluded that a nationwide class was both possible and appropriate. As stated by this Court and others, "'this conclusion advances the goals and purpose of the class action mechanism. Class actions promote efficiency and economy in litigation. Their design permits numerous parties to collectively litigate claims that might be uneconomical to litigate individually.'" *In re Golden*, 630 B.R. at 921-22 (quoting *Bank United v. Manley*, 273 B.R. 229, 249-50 (N.D. Ala. 2001)).

Moreover, "'if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules. This would ascribe to Congress the intent to categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a clear indication of such intent.'" *In re Golden*, 630 B.R. at 922 (quoting *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 754 (5th Cir. 2010)). As one court observed in denying a motion to dismiss a putative nationwide class action asserting violations of the statutory bankruptcy discharge, "[t]he Court has the power to provide all of the relief requested." *Vick*, 2010 WL 1330637, at *4.

And finally, nationwide settlements of class actions asserting statutory bankruptcy discharge injunction violations have been approved by bankruptcy and district courts in several cases within the Second Circuit. In such circumstances, again, the court necessarily concluded

that it could enter an order that, in effect, provided for relief outside of its own district, including with respect to an asserted violation of a discharge order entered in another district by another court. *See Belton v. GE Capital Retail Bank* (*In re Belton*), 21-cv-09492, at ECF No. 17 (S.D.N.Y. Feb. 10, 2022); *Ajasa v. Wells Fargo Bank, N.A.*, 21-cv-07085-ENV, at ECF No. 18 (E.D.N.Y. April 25, 2022); *Anderson v. Capital One Bank (USA), N.A.*, 19-cv-03981-NSR, at ECF No. 20 (S.D.N.Y. Sept. 11, 2019); *Anderson v. Capital One Bank (USA), N.A.*, 15-08342-RDD, at ECF No. 99 (Bankr. S.D.N.Y. Jan. 7, 2021); *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-03307-VB, at ECF No. 19 (S.D.N.Y. Aug. 24, 2018); *Haynes v. Chase Bank U.S.A., N.A.*, 13-08370-RDD, at ECF No. 133 (Bankr. S.D.N.Y. Sept. 27, 2018); *Echevarria v. Bank of America Corp.*, 17-cv-08026-VB, at ECF No. 23 (S.D.N.Y. Mar. 14, 2018); *Echevarria v. Bank of America Corp.*, 14-08216-RDD, at ECF No. 121 (Bankr. S.D.N.Y. Mar. 15, 2018).  While each of these cases ultimately reached a consensual outcome, that consensus cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction to enter a remedy, where it is otherwise lacking.  As the Second Circuit has observed, "[j]urisdiction cannot be created by the consent of the parties."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal citations omitted).

In each of these nationwide class actions entertained by the bankruptcy and district courts, the court exercised jurisdiction over discharge orders entered by other courts in other districts around the country.  As a result, "this Court's subject matter jurisdiction to . . . enter a remedy in this case[] should not be limited by the scope of that request," including nationwide relief for the putative class.  *In re Golden*, 630 B.R. at 923.  That is, there is no limitation through "any shortcoming in this Court's jurisdiction to consider, and if appropriate to enter," a remedy applicable to the putative nationwide class.  *Id.*

Next, the Court considers whether – as Navient argues – the Second Circuit's observation in *In re Belton* compels the conclusion that any action for contempt of a bankruptcy discharge injunction must be heard by the court that issued the discharge.  Motion to Stay at 6-7.

In *In re Belton*, the Second Circuit wrote:

> [W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order.  Most circuits that have considered the issue have rejected the notion.  *See Crocker*, 941 F.3d at 216-17 ("We adopt the language of [*Anderson*] that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'"); *Alderwoods Grp.*, 682 F.3d at 970 ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Walls*, 276 F.3d at 509-10 (same); *Cox*, 239 F.3d at 916-17 (same); *but see Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) (holding that a debtor is not required to "bring her claims in the court that issued the original discharge order").  And those cases are buttressed by the Supreme Court's recent decision in *Taggart*, which made clear that the contempt powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions."  139 S. Ct. at 1802.

*In re Belton*, 961 F.3d at 617-18.

In *In re Belton*, the Second Circuit addressed the question of whether an asserted violation of the statutory bankruptcy discharge injunction was within the scope of a pre-dispute arbitration agreement.  The court affirmed the district and bankruptcy court's conclusion that "the alleged violation of a bankruptcy court discharge order" is not an arbitrable dispute because, as it held in *Anderson*, "arbitration was in 'inherent conflict' with enforcement of a discharge injunction."  *In re Belton*, 961 F.3d at 615 (quoting *In re Anderson*, 884 F.3d at 390).  But there, as in *Anderson*, the issue before the court was not the scope of a bankruptcy court's subject matter jurisdiction over a nationwide class, or the question of nationwide relief.  And recognizing this, the *Belton* court stated that "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither

44

our decision today nor *Anderson* should be read as a tacit endorsement of such." *In re Belton*, 961 F.3d at 617.

As this Court recognized in *In re Golden*, *Anderson* addressed the question of the arbitrability of a discharge order violation in "the context of bankruptcy courts and the bankruptcy system, not solely a single bankruptcy court or district. The court did not address, and did not need to address, whether the issuing judge, or district, or circuit set the boundary for the bankruptcy court's jurisdiction in the matter before it." *In re Golden*, 630 B.R. at 925. Similarly, and again as this Court found in *In re Golden*, *In re Belton* addressed the same issue, and found that "'the alleged violation of a bankruptcy court discharge order' is not an arbitrable dispute because, as the *Anderson* court found, 'arbitration was in "inherent conflict" with enforcement of a discharge injunction.'" *In re Golden*, 630 B.R. at 925 (quoting *In re Belton*, 961 F.3d at 615).

Further, here, "these claims 'arise under' the Bankruptcy Code, are separate and distinct from any in rem basis for the bankruptcy court's jurisdiction, and go to the heart of one of the fundamental protections of the bankruptcy system – that is, the debtor's discharge and opportunity for a fresh start." *In re Golden*, 630 B.R. at 926. As the court in *In re Haynes* explained:

> While it is true that a substantial portion of bankruptcy jurisdiction is in rem, that is, jurisdiction over the debtor's estate wherever located, it is not the only basis for bankruptcy jurisdiction, which, under 28 U.S.C. Section 1334(b), extends to "all civil proceedings arising under title 11," including under 11 U.S.C. Sections 524 and 727. In fact, . . . these fundamental, if not the fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or in rem jurisdiction. They have everything to do with prohibiting the collection of in personam debts that, before the bankruptcy discharge, were owed by the debtor.

*In re Haynes*, 2014 WL 3608891, at *6.

Mr. Homaidan and Ms. Youssef seek, for themselves and for all Putative Class Members, neither more nor less than the full benefit of their statutory bankruptcy discharges.  "And under Bankruptcy Code Section 524(a), the discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*.'"  *In re Golden*, 630 B.R. at 927 (quoting 11 U.S.C. § 524(a)(2)).  Their claims do not concern "'property of the estate, as of the commencement of the case,' or 'property of the estate,' as addressed by Judicial Code Section 1334(e)(1)."  *In re Golden*, 630 B.R. at 927.

And a violation of the Plaintiffs' and Putative Class Members' statutory bankruptcy discharges is, of course, the violation of a statute.  As the Seventh Circuit recognized, "Section 524(a)(2) . . . enjoins . . . collection[,] . . . so the creditor who attempts to collect a discharged debt is violating . . . a statute."  *Cox*, 239 F.3d at 915.  As this Court has noted, "Bankruptcy Code Section 105 grants the bankruptcy court power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"  *In re Golden*, 630 B.R. at 914 (quoting 11 U.S.C. § 105).  As the court in *In re Haynes* recognized, Section 105 permits a bankruptcy court to enforce "the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular."  *In re Haynes*, 2014 WL 3608891, at *8.  A bankruptcy court "is well within its authority if it exercises its equitable powers to enforce a specific code provision."  *Vick*, 2010 WL 1330637, at *3 (citing *In re Rodriguez*, 396 B.R. at 455-60).

Finally, the Court considers the Supreme Court's ruling in *Taggart*.  In *Taggart*, the Supreme Court observed that "the statutes specifying that a discharge order 'operates as an injunction,' and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, bring with them the 'old soil' that has

long governed how courts enforce injunctions." *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C. § 524(a)(2) and § 105(a)).  And it found that "as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Taggart*, 139 S. Ct. at 1801. As the Supreme Court explained, this "old soil" is the source of "traditional standards" as to when a finding of civil contempt may lie, and leads to the conclusion that a court may hold a creditor in civil contempt for violating a debtor's discharge if there is "no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

That is, *Taggart* addressed the nature of the creditor's conduct and the scope of the debtor's discharge, and held that a finding of civil contempt may issue only where the question of the creditor's violation is decisively answered in the affirmative – where there is "no fair ground of doubt" as to the existence of the violation.  And the "old soil" informs the question of intent, not the question of whether a bankruptcy court has jurisdiction to grant injunctive relief applicable to a putative nationwide class.  While *Taggart* surely has a role to play in determining a creditor's liability, it simply does not address whether this question may be considered by a court solely in an individual debtor's case, or in a district-wide class, or, as here, in a putative nationwide class.  *In re Golden*, 630 B.R. at 927.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that this Court lacked the authority to grant nationwide relief.

<u>Whether the Court Lacked the Authority To Enter Class-Wide Relief.</u>  The Court next considers Navient's argument that it is likely to succeed on the merits of its appeal because the Court lacked the authority to enter class-wide relief.  Motion to Stay at 8.

Navient notes that while a motion for class certification is pending, no class has been certified.  *Id.*  As a consequence, it asserts, the Preliminary Injunction prevents it from collection activities directed at borrowers who are "strangers to this case."  *Id.*  Navient argues that it is likely to succeed on the merits of this argument, because this Court erred in enjoining it on a class-wide basis before determining whether a class could ever be certified.  Motion to Stay at 8.  And it states that to the extent that courts have discretion in some circumstances to grant class-wide injunctive relief before a class is certified, that discretion should not be exercised here, both because the Plaintiffs have not shown that a class should be certified, and because the Plaintiffs waited far too long to seek injunctive relief.  *Id.*

Navient also asserts that the authority cited by the Plaintiffs in support of their request for injunctive relief arises in the context of class actions where certification was sought under Rule 23(b)(2), which allows for class certification when final injunctive relief is appropriate for the entire class.  Motion to Stay at 8-9.  And here, by contrast, Navient states that any class would need to be certified under Rule 23(b)(3), because the Plaintiffs seek individual monetary awards for potentially thousands of putative class members.  Motion to Stay at 9 (citing *Dukes*, 564 U.S. at 360-61).  It asserts that in a Rule 23(b)(3) case, absent class members are entitled to notice and an opportunity to exclude themselves from the class.  Motion to Stay at 9.  It contends that this renders class-wide relief before a class is certified particularly inappropriate here.  Motion to Stay at 9.

And Navient argues that by entering the Preliminary Injunction before certifying the class and providing notice, this Court has put absent class members at substantial risk of harm without any meaningful opportunity to protect their interests.  *Id.*  Finally, Navient states that it is

certainly inappropriate, and likely unconstitutional, to enter class-wide relief in a Rule 23(b)(3) case such as this.  *Id.*

The Plaintiffs respond that the Court "clearly and adequately answered" Navient's argument that the Court lacked authority to grant class-wide relief prior to class certification in the Preliminary Injunction Decision, and similarly also rejected Navient's arguments in the TRO Stay Decision.  Opp. at 9.  They also state that it is simply incorrect for Navient to state that the Plaintiffs are not seeking class-wide relief under Rule 23(b)(2), because they are.  *Id.*  And they question the good faith of Navient's argument as to notice, stating that, "as this Court noted in its decision denying a motion for stay on the TRO, 'when the possibility of notice to the Putative Class Members was raised by the Court with the parties, Navient declined to pursue this path, stating it does not believe giving any kind of provisional notice at this time is appropriate.'" Opp. at 10 (quoting *In re Homaidan*, 2022 WL 4073429, at *35).

Here, this Court is satisfied that an adequate basis was established to consider the question of preliminary injunctive relief on behalf of the Putative Class members.  As the district court found in *Ligon v. City of New York*, the facts and circumstances of a particular case may warrant the entry of a preliminary injunction on behalf of a putative class before a class is formally certified.  In *Ligon*, the putative class was "'comprised of individuals who have been or are at risk of being subjected to the New York City Police Department's practice of stopping individuals outside of buildings enrolled in Operation Clean Halls in the Bronx on suspicion of trespassing inside those buildings.'"  *Ligon v. City of New York*, 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013).  The court concluded that class certification was not a prerequisite to granting injunctive relief to the putative class, and stated that "'[i]t is well established that "[c]ertain circumstances give rise to the need for prompt injunctive relief for a named plaintiff or on behalf

of a class" and that the "court may . . . award a broad preliminary injunction, without a formal class ruling, under its general equity powers.'" *Ligon*, 925 F. Supp. 2d at 539 (quoting *Strouchler v. Shah*, 891 F. Supp. 2d 504, 516-17 (S.D.N.Y. 2012)).

Here, as in *Ligon*, the record shows that circumstances are present that warrant "prompt injunctive relief for a named plaintiff . . . on behalf of a class." *Ligon*, 925 F. Supp. 2d at 539. The Plaintiffs have demonstrated a "likely irreparable harm on behalf of the putative class." *Ligon*, 925 F. Supp. 2d at 539 (citing *Strouchler*, 891 F. Supp. 2d at 515). In particular, the Plaintiffs have shown that Ms. Youssef and each of the Putative Class Members that holds a private Tuition Answer Loan that exceeds the cost of attendance and has an outstanding balance is likely to be subjected to continued collection activities by Navient in violation of their bankruptcy discharges. And there is nothing in the record to show, or even suggest, that Navient will stop, or even pause, those collection activities in the absence of a direction from this Court.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that this Court lacked the authority to enter class-wide relief.

<u>Whether the Court Lacked the Authority To Grant Relief Based on Deficiencies in the Evidence.</u> The Court next considers Navient's argument that it is likely to succeed on the merits of its appeal because the Court lacked authority to grant relief on a record that was, it asserts, "devoid of supporting evidence." Motion to Stay at 10.

Navient argues that because the Preliminary Injunction materially alters the status quo that has existed since this case was filed more than five years ago, the Plaintiffs must show a "clear" or "substantial" likelihood of success on the merits in order to obtain temporary injunctive relief. Motion to Stay at 10 (citing *Bronx Household of Faith*, 331 F.3d at 349).

With this standard in mind, Navient argues that since the Plaintiffs sought class-wide relief, and since their claim depends on proof that Navient is collecting on loans that exceed the cost of attendance, they should have been required to establish first, the legal proposition that it is unlawful to collect on a loan that exceeds the cost of attendance; and second, the factual proposition that Navient is engaged in such unlawful collection activity on the loans that are encompassed by the Preliminary Injunction.  Motion to Stay at 10.  And Navient asserts that the Plaintiffs did not make either showing.  Motion to Stay at 10.

In addition, Navient states:

> The statute does *not* set up any such objective, mathematical formula for determining whether § 523(a)(8)(b) applies.  In fact, there is no express mention of "cost of attendance," or the relationship between "cost of attendance" and loan amounts, anywhere in § 523(a)(8)(b).  Rather, the concept of "cost of attendance" is only relevant to the inquiry because of § 523(a)(8)(b)'s incorporation by reference of Section 221(d)(1) of the Internal Revenue Code.

Motion to Stay at 10-11.

As to the legal proposition, Navient argues that it is likely to prevail on the merits of its appeal because both Mr. Homaidan and Ms. Youssef certified to Navient in their loan documents that the loans were within the cost of attendance and would be used to pay qualified education expenses.  Motion to Stay at 11.  It states that these certifications show why and for what purpose the debts were "incurred," and therefore satisfy the test for nondischargeability established by IRC Section 221(d)(1) and the Bankruptcy Code.  *Id.*

As to the factual proposition, Navient contends that it is likely to prevail as well, because the Plaintiffs offered no competent evidence to show that Navient is in fact collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance.  *Id.*  At most, it argues, the Plaintiffs demonstrated that Mr. Homaidan and Ms. Youssef received Tuition Answer Loans in amounts that may have exceeded

average, estimated cost-of-attendance figures for the relevant academic years reported by IPEDS. Motion to Stay at 11-12.

And Navient asserts that Section 523(a)(8) requires the court to "engage in a purpose-based analysis rather than the rigid and simplistic calculation that Plaintiffs suggest" to determine whether the loan comes within the scope of Section 523(a)(8)(B).  Reply at 11 (citing *Conti v. Arrowood Indemnity Co.* (*In re Conti*), 982 F.3d 445, 449 (6th Cir. 2020)).

The starting point for considering whether the record upon which the Court entered the Preliminary Injunction was "devoid of evidence" may well begin with a review of the elements of the Plaintiffs' claim.  In order adequately to state a claim for violation of the statutory bankruptcy discharge injunction, the Plaintiffs must allege that they received a discharge, the Defendants received notice of the discharge, and the Defendants intended the acts that violated the discharge.  *See Motichko v. Premium Asset Recovery Corp.* (*In re Motichko*), 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008).  For a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt.  *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018).

Much of the record relating to these matters appears to be undisputed.  As to Mr. Homaidan, as Navient pointed out and the Plaintiffs did not dispute, any order enjoining collection activities would simply not be applicable to him – or to any other Putative Class Member whose loan balance has been satisfied in full.  *See* Plaintiffs' Reply Mem. of Law in Further Support of TRO Motion, ECF No. 321, at 6 (stating that "[w]ith regard to Plaintiff Homaidan, it is true that he does not need injunctive relief").  And as to Ms. Youssef and similarly situated Putative Class Members, the parties appear not to dispute that these individuals took out private Tuition Answer Loans or other private loans owned or serviced by the

Defendants, that they received a discharge in their Chapter 7 bankruptcy cases, that the

Defendants received notice of those discharges, and that the Defendants sought to collect on their

loans.

What is disputed, however, is whether the private loans at issue are within the scope of

the Plaintiffs' and the Putative Class Members' dischargeable debt.  See In re Eppolito, 583 B.R.

at 826.  The Plaintiffs argue that the plain language of Section 523(a)(8)(B) excepts from

discharge "any other educational loan that is a qualified education loan, as defined in section

221(d)(1) of the Internal Revenue Code[.]"  11 U.S.C. § 523(a)(8)(B).  Section 221(d)(1) defines

"qualified education loan" as "any indebtedness incurred by the taxpayer solely to pay qualified

higher education expenses" which is defined in Section 221(d)(2) as "the cost of attendance" at

an eligible educational institution, minus scholarships, allowances, or other payments.

In *Homaidan*, the Second Circuit concluded that private student loans do not qualify for

an exclusion from discharge under Section 523(a)(8)(A)(ii), because these loans are not an

"educational benefit" under that Section.  As the court explained, Section 523(a)(8)(A)(ii)

"covers scholarships, stipends, and conditional education grants; and § 523(a)(8)(B) covers

private loans made to individuals attending eligible schools for certain qualified expenses."

*Homaidan*, 3 F.4th at 604.  And as the court observed:

> Navient's broad reading – under which any loan is nondischargeable under
> [Section] 523(a)(8)(A)(ii) if it was used to further one's education – would draw
> virtually all student loans within the scope of [Section] 523(a)(8)(A)(ii).  That
> construction provides too much.  If it were adopted, the other subsections of
> [Section] 523(a)(8) – both of which delineate specific categories of
> nondischargeable educational debt – would be swallowed up. . . . The evolution of
> [Section] 523(a)(8) confirms that it is not a catch-all for educational loans.

*Homaidan*, 3 F.4th at 602-03.

That is, and as the Second Circuit has explained, Section 523(a)(8)(A)(ii) does not have a role to play in the analysis of the dischargeability of the Putative Class Members' private Tuition Answer Loans or other private loans, because "by constructing a statute with three distinct subsections, 'Congress intended each [one] to have a distinct function and to target different kinds of debt[].'" *Homaidan*, 3 F.4th at 603 (quoting *Inst. of Imaginal Stud. v. Christoff* (*In re Christoff*), 527 B.R. 624, 634 (9th Cir. B.A.P. 2015)).

Furthermore, Section 523(a)(8)(B) plainly excludes certain private student loans – described as "qualified education loan[s], as defined in [Internal Revenue Code] section 221(d)(1)," from the scope of a debtor's bankruptcy discharge – but only where specified criteria are met. These criteria include that the student borrower attended or intended to attend a Title IV institution and received a private loan that is within the cost of attendance at that institution as defined by Internal Revenue Code Section 221(d).

In addition, "cost of attendance" is not a description of an individual student's personal cost of completing a year of education. Rather, as the court explained in *In re Conti*, "20 U.S.C. § 1087*ll* lists a series of expenses that comprise the 'cost of attendance,' including sums for tuition & fees, room & board, books, materials, supplies, transportation, and 'miscellaneous personal expenses' for enrolled students, *in amounts determined by the university*." *In re Conti*, 982 F.3d at 448 (emphasis added).

This result is not affected by what Navient has characterized as the "purpose test" for assessing whether a private student loan is within or outside a debtor's discharge. As the court in *In re Conti* noted, it is the "initial purpose" of the loans at issue, "rather than their actual uses, [that determines] whether they fall within the scope of [Section 523(a)](8)(B)." *In re Conti*, 982 F.3d at 449. And as Chief Judge (and former Bankruptcy Judge) Cole observed, "allowing

debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the student loan system." *Id.*

But this does not mean that the threshold requirement that a private student loan come within the "cost of attendance" is somehow read out of Section 523(a)(8)(B). And indeed, as the *In re Conti* court noted, "none of the loan amounts exceeded the cost of attendance . . . for the relevant enrollment period minus the maximum sum of [the applicable financial aid]." *In re Conti*, 982 F.3d at 447. *See In re Conti*, 982 F.3d at 449, 450 (stating that "the loan amounts did not exceed the cost of attendance at Michigan minus Conti's only applicable scholarships and financial aid" and "the loan amounts fall within the total cost of attendance, minus any other applicable financial aid"). *See Fernandez-Lopez v. Nat'l Collegiate Student Loan Tr. 2006-2 (In re Fernandez-Lopez)*, 2021 WL 5312990, at *9 (Bankr W.D. Mich. Feb. 10, 2021) (finding that unlike the situation in *In re Conti*, the court could not conclude that the debtor's student loan was exempted from discharge because, among other factors, "the loan exceeded the cost of attendance by about three times").

So plainly, when the applicable criteria are met, a private student loan may well be excluded from a debtor's bankruptcy discharge. And the nondischargeability of the loan will not change, even if the student borrower puts the funds to a different "purpose" by "misus[ing] the funds for non-educational expenses." *In re Conti*, 982 F.3d at 449. But just as plainly, and as a matter of logic, if those criteria are *not* met, then the exclusion from discharge does *not* apply.

As a consequence, the Plaintiffs have shown that to the extent their private student loans, including private Tuition Answer Loans, do not meet the criteria of Section 523(a)(8)(B), they are within the scope of their bankruptcy discharges. And they have shown this with respect to

their private Tuition Answer Loans and those of similarly situated Putative Class Members – students who attended or intended to attend Title IV institutions and received private loans owned or serviced by the Defendants that exceeded the cost of attendance at such institutions as defined by Internal Revenue Code Section 221(d), who obtained bankruptcy discharges after January 1, 2005, who have not reaffirmed their loans, and who have been, and may continue to be, subjected to the Defendants' actions to collect on their loans – because by the very terms of the Plaintiffs' claims and class definition, these private student loans that exceed the cost of attendance are outside the scope of Section 523(a)(8)(B)'s exclusion from discharge. *See* Class Cert. Mot. at 15. *See also Homaidan*, 3 F.4th at 605.

As to the question of whether certifications by the Plaintiffs and the Putative Class Members in their loan documentation that their loans were within the cost of attendance and would be used only for qualified educational expenses establish that these loans are nondischargeable, Navient's argument is not persuasive, for several reasons.

At the outset, Navient argues that the "Plaintiffs offered literally no competent evidence that Navient is in fact collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance." Motion to Stay at 11. And it points again to the certifications signed by each borrower as evidence in support of its view. *Id*. It also states that because the "Plaintiffs failed to offer any evidence of the actual cost of attendance for Homaidan, Youssef, or any putative class member, they failed, even assuming the validity of their flawed legal theory, to show a likelihood of success." Motion to Stay at 12.

At the outset, Navient's argument that IPEDS data somehow cannot play a role in the determination of whether a debtor's private student loan is within the scope of their bankruptcy discharge because it does not reflect that debtor's individualized, personal circumstances

misconstrues the meaning and application of "cost of attendance" in the context of Section 523(a)(8)(B).

As this and other courts have found, a borrower's "cost of attendance" is not determined by the individual student borrower's individualized choices. It is not a question of whether a student is thrifty, or moderate, or extravagant. Rather, as the Sixth Circuit found, "the 'cost of attendance'" includes "sums for tuition & fees, room & board, books, materials, supplies, transportation, and 'miscellaneous personal expenses' for enrolled students, *in amounts determined by the university*." *In re Conti*, 982 F.3d at 448 (emphasis added).

While the costs incurred by individual students – and individual debtors – may vary widely based on their individual circumstances and choices, the "amounts determined by the university" based on specified criteria including tuition and fees, room and board, "books, materials, supplies, transportation, and 'miscellaneous personal expenses'" are "determined by the university" and reported on the IPEDS data system. *In re Conti*, 982 F.3d at 448. *See* Reply Declaration of Mark Kantrowitz, ECF No. 220, at 2, ¶ 4. In *In re Conti*, the court looked to the cost of attendance "as determined by the university" and as certified by the school's financial aid office, rather than the plaintiff's individualized costs, to determine that their loans did not exceed the cost of attendance. *In re Conti*, 982 F.3d at 447.

And separately, this Court has previously considered whether and to what extent IPEDS data may be considered as part of the record on the question of whether a private student loan exceeds the cost of attendance. In *Golden v. National Collegiate Student Loan Trust 2005-3* (*In re Golden*), 2022 WL 362913 (Bankr. E.D.N.Y. Feb. 4, 2022), this Court assessed whether to strike portions of an expert's report on grounds that it stated legal opinions, rather than expert opinions. There, the Court concluded that the report would be stricken in part, to the extent that

it stated, "legal opinions, interpretations, or conclusions . . . or alternatively, states a legal opinion on the ultimate issues to be decided." *In re Golden*, 2022 WL 362913, at *14. At the same time, the Court concluded that the expert's report would not be stricken to the extent that it stated, "expert opinion, based on [the expert's] education, experience, and expertise." *In re Golden*, 2022 WL 362913, at *15.

The Court also found that IPEDS data stated or quoted in the expert's report concerning cost of attendance would not be stricken:

> [T]o the extent that an expert's testimony . . . simply states or quotes from . . . survey responses and data reported to IPEDS, that is not a statement of legal opinion, or for that matter expert opinion at all . . . And to this extent, the Motion to Strike is denied.
>
> . . .
>
> The Motion to Strike . . . is denied to the extent that the [Expert] Report states or quotes from . . . survey responses and data reported to IPEDS.

*In re Golden*, 2022 WL 362913, at *14-15.

As a consequence, the Plaintiffs have shown that to the extent that their private student loans, including private Tuition Answer Loans, do not meet the criteria of Section 523(a)(8)(B), they are within the scope of their bankruptcy discharges. And they have shown this with respect to their private Tuition Answer Loans and those of similarly situated Putative Class Members – students who attended or intended to attend Title IV institutions and received private loans owned or serviced by the Defendants that exceeded the cost of attendance at such institutions as defined by Internal Revenue Code Section 221(d), who obtained bankruptcy discharges after January 1, 2005, who have not reaffirmed their loans, and who have been, and may continue to be, subjected to the Defendants' actions to collect on their loans – because, by the very terms of the Plaintiffs' claims and class definition, these private student loans that exceed the cost of

attendance are outside the scope of Section 523(a)(8)(B)'s exclusion from discharge. *See* Class Cert. Mot. at 15. *See also Homaidan*, 3 F.4th at 605.

Finally, Navient's argument that certifications by the Plaintiffs and the Putative Class Members in their loan documentation that their loans were within the cost of attendance and would be used only for qualified educational expenses establish that these loans are nondischargeable is not persuasive, for several reasons.

At the outset, courts agree that such standardized "boilerplate" certifications or statements by borrowers are not enforceable in bankruptcy for this purpose. *See, e.g.*, *Tamasco v. Nicholls* (*In re Nicholls*), 2010 WL 5128627, at *2 (Bankr. E.D.N.Y. Dec. 10, 2010) (agreeing that "prepetition waivers of dischargeability are unenforceable as against public policy"); *Hayhoe v. Cole* (*In re Cole*), 226 B.R. 647, 651 (B.A.P. 9th Cir. 1998) (holding that a stipulated judgment in which a chapter 7 debtor agreed that a debt would be nondischargeable under Section 523(a)(2) was an impermissible waiver of the bankruptcy discharge); *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779-80 (Bankr. N.D.N.Y. 2008) (stating that "pre-petition waivers of discharge are fundamentally void and offend the public policy of promoting a fresh start for individuals").

As the Bankruptcy Appellate Panel explained in *In re Cole*, this is because "there is no recognized exception to discharge for prepetition waivers of discharge or dischargeability." *In re Cole*, 226 B.R. at 653. Nor should there be, because "Section 727(b) states that all debts are dischargeable in bankruptcy unless specifically excepted under § 523." *In re Cole*, 226 B.R. at 653 (citing 11 U.S.C. § 727(b)). That is, as the court observed, "[i]f bankruptcy courts enforced prepetition waivers of discharge, they would effectively be creating an exception to discharge that Congress had not enumerated." *In re Cole*, 226 B.R. at 653. And of course, it is for

Congress, not the courts, to expand or contract the scope of the Bankruptcy Code's statutory exceptions to discharge.

In addition, Navient argues, in substance, that at most, the Plaintiffs have shown that Mr. Homaidan and Ms. Youssef received Tuition Answer Loans in amounts that may have exceeded average, estimated cost-of-attendance figures for the relevant academic years as reported by IPEDS.  At the same time, Navient has acknowledged that that there "is a potential that there are some loans out there where the amount of the loan exceeded the cost of attendance."  *In re Homaidan*, 640 B.R. at 837 (quoting hearing transcript).  And as the Plaintiffs note, Navient's corporate representative has testified that Navient does not take steps to determine whether any of the loans at issue were within the cost of attendance.  *See* Plaintiffs' Mem. of Law in Support of Mot. for Partial Summ. J., ECF No. 170, at 7-9.

That is, it seems that in opposing the Preliminary Injunction and now in seeking this stay pending appeal, Navient attempts to turn on the head the very purpose of the bankruptcy discharge – which is, as this and other courts recognize in many contexts, to grant the debtor a "fresh start."  And as to a discharged debt, that "fresh start" requires no further action from a debtor.  It is the creditor, not the debtor, that bears the burden of establishing that a loan is in fact, nondischargeable.

Separately, it is worth noting that the question of dischargeability of a private student loan under Section 523(a)(8)(B) turns on objective, not subjective, matters including the facts and circumstances of the loan and the applicable cost of attendance.  If the facts show that a private student loan *exceeds* the applicable cost of attendance, then it does not change those facts that borrower made a statement – boilerplate or otherwise – that a loan does not exceed the cost of attendance.

And finally, this does not mean that this action, or the Plaintiffs' claims for relief, are somehow a shield against deception or fraud by a debtor.  The Bankruptcy Code provides a well-traveled path for a creditor to show that a debtor procured a loan by fraudulent or dishonest means.  Nothing in the relief that the Plaintiffs seek, either in the context of this Preliminary Injunction Motion or in this adversary proceeding, would compromise or limit Navient's right to assert such a claim.  If Navient seeks to establish that in a particular situation, the borrower obtained their loan "by . . . false pretenses, a false representation, or actual fraud," then it may do so, by bringing a dischargeability action under Bankruptcy Code Section 523(a)(2)(A).  In such an action, Navient would bear the burden to show:

> first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made; third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation.

*First Am. Title Ins. Co. v. Moses* (*In re Moses*)*, 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing *Fleet Credit Card Servs. L.P. v. Macias* (*In re Macias*)*, 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citation omitted)).

But it is also worth noting that Section 523(a)(2)(A) actions arise in the context of a discharged debt, and if the necessary showing is made, that debt will be excluded from the scope of a debtor's discharge.  Section 523(a)(2)(A) does not provide a self-executing or preemptive means for a creditor to avoid the consequences of a discharge violation.

Next, Navient argues that even using the Plaintiffs' logic that a student loan that exceeds the cost of attendance is not a "qualified education loan," rendering the loan dischargeable in bankruptcy, only the portion of a loan that exceeds the cost of attendance should be dischargeable pursuant to Section 523(a)(8)(B).  Supp. Opp. at 9-10.

While this argument may have some logic, it does not find a basis in the law.  The

Bankruptcy Code does not allow for a partial discharge of student loan debt.  As one court

explained:

> Section 523(a)(8)'s language refers to a debt in its totality, and does not envision
> only a portion being discharged.  This conclusion is strengthened by the
> observation that Congress knows how to allow a partial discharge when it so
> desires, and has done so in statutory subsections coexisting with § 523(a)(8).  It is
> a fundamental tenet of statutory interpretation that "where Congress has failed to
> include language in statutes, it is presumed to be intentional when the phrase is
> used elsewhere in the Code."

*Pincus v. Graduate Loan Ctr.* (*In re Pincus*), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002) (quoting

*United Student Aid Funds Inc. v. Taylor* (*In re Taylor*), 223 B.R. 747, 753 (B.A.P. 9th Cir.

1998)).[1]

As another bankruptcy court observed in a similar context, in declining to permit a partial

discharge of tax debt:

> With regret – as it is possible that Congress might on balance conclude, if it
> thought about it, that a legislative scheme that resulted in nondischargeability only
> "to the extent" the debtor willfully attempted to evade or defeat her taxes by
> reason of excessive discretionary payments elsewhere would be more just – the
> Court does not believe that it has the license to apply the statutory language and
> caselaw in that fashion.  The Court reluctantly concludes that it is required to find
> that the entirety of [the debtor's] federal tax debt is nondischargeable.

*Lynch v. United States* (*In re Lynch*), 299 B.R. 62, 88 (Bankr. S.D.N.Y. 2003) (Gerber, B.J.).

---

[1]  At oral argument, Navient pointed out that *In re Pincus* relies upon *In re Taylor*, a decision of
the Ninth Circuit Bankruptcy Appellate Panel, and in turn, that *In re Taylor* was overruled by the
Ninth Circuit Court of Appeals in *Saxman v. Educational Credit Management Corp.* (*In re
Saxman*), 325 F.3d 1168, 1173-74 (9th Cir. 2003).  *See* October 31 Hearing Transcript, ECF No.
423, at 13:1-16:3.  While this is accurate, it does not take away from the persuasive value of the
reasoning in *In re Pincus* that "the broad grant of power given to a court under [Bankruptcy]
Code § 105(a) does not permit it to use its equitable powers to achieve a result not contemplated
by the Code, particularly where a specific section of the Code squarely addresses the issue before
the court."  280 B.R. at 312 (citing *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir.
1993)).

Here again, it is for Congress, not the courts, to expand or contract the scope of the Bankruptcy Code's statutory exceptions to discharge.  Accordingly, if a private student loan exceeds the applicable cost of attendance, then the entire student loan debt is dischargeable, and collections efforts against the entire debt must be enjoined if the applicable standards are met. *Id.*

As a consequence, as this Court found in the Preliminary Injunction Decision, the Tuition Answer Loans at issue that exceed the cost of attendance are not excepted from discharge.  These loans do not meet the nondischargeability requirements of Bankruptcy Code Section 523(a)(8)(B), and are therefore within the scope of their bankruptcy discharges.  Navient received notice of these bankruptcy discharges, and intended the acts that violated the discharge to collect on these discharged debts.  That is, that Navient has violated the statutory bankruptcy discharge injunction as to the Plaintiffs and the Putative Class Members.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that this Court lacked the authority to grant relief based on deficiencies in the evidence.

<u>Whether the Court Lacked Authority To Grant Temporary Injunctive Relief Because this Case Has Been Pending for Five Years.</u>  The Court next considers Navient's argument that it is likely to succeed on the merits of its appeal because this case has been pending for some five years.  Motion to Stay at 12.

Navient argues that the Plaintiffs waited too long to seek preliminary injunctive relief for themselves and the Putative Class Members, pointing to the fact that the Plaintiffs waited two years to seek a preliminary injunction and some five years to seek a temporary restraining order after this case was filed.  *Id.*  According to Navient, in the Second Circuit, a delay in seeking

injunctive relief of only a "couple of months" will generally foreclose issuance of a preliminary injunction or a temporary restraining order.  Motion to Stay at 13 (citing *Citibank*, 756 F.2d at 276; *Gidatex, S.R.L.*, 13 F. Supp. 2d at 419*).*  As such, Navient argues that here, there was a delay of several years, which by itself makes it highly likely that the Preliminary Injunction will be reversed on appeal.  Motion to Stay at 13.

Navient correctly notes that much time has passed since this Adversary Proceeding was commenced in 2017.  And in some circumstances, courts have found that the passage of time, without more, weighs against the granting of temporary or preliminary injunctive relief.  As one court observed, "'[w]hile delay does not always undermine an alleged need for preliminary relief, months-long delays in seeking [injunctive relief] have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompany a motion for preliminary relief.'"  *Silent Gliss Inc. v. Silent Gliss Int'l Ltd.*, 2022 WL 1525484, at *8 (E.D.N.Y. May 13, 2022) (quoting *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013)).  And as another court found, "[b]ecause preliminary injunctions are predicated upon 'urgent need for speedy action,' delay in seeking the remedy suggests that the remedy is not really needed, or that the harm is not really irreparable."  *Minzer v. Keegan*, 1997 WL 34842191, at *6 (E.D.N.Y. Sept. 22, 1997) (citation omitted) (quoting *Citibank*, 756 F.2d at 276).

At the same time, however, "[c]ourts may excuse delays '[i]f the movant can provide a credible explanation for its inactivity.'"  *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (quoting *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)).  As one example, "[c]ourts have excused delays where the parties diligently pursue settlement negotiations."

*Hodnett*, 2021 WL 535485, at *6 (citing *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011)).

Similarly, a delay caused by a plaintiff's good faith investigation of their claims does not weigh against a finding of irreparable harm. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (citing *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992)). "The existence of prejudice to the non-movant caused by the movant's delay is also a relevant factor." *Gidatex, S.r.L.*, 13 F. Supp. 2d at 419 n.1 (citing *Tom Doherty*, 60 F.3d at 39). And "delay alone" does not require denial of temporary or preliminary injunctive relief. *Marks Org.*, 784 F. Supp. 2d at 333 (citing *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998)).

The Court "thus begins its analysis by recognizing the Second Circuit's instruction that '[a] . . . court should *generally* consider delay in assessing irreparable harm,' even if it is not dispositive of the issue." *Marks Org.*, 784 F. Supp. 2d at 333 (quoting *Tom Doherty*, 60 F.3d at 39). And the starting point for this analysis is the timeline of this Adversary Proceeding, including the time spent in dispositive motion practice before this Court, on appeal in the District Court and the Second Circuit, and finally, in court-annexed mediation.

On June 23, 2017, Mr. Homaidan commenced this Adversary Proceeding by filing the complaint. Within a few months, on October 30, 2017, Navient filed a Motion to Compel or Dismiss, asserting that as a matter of law, this action should be dismissed because Mr. Homaidan's claims should be heard in an arbitration, not in court, and separately that this Adversary Proceeding should be dismissed because the Putative Class Members student loans were excluded from their bankruptcy discharges pursuant to Bankruptcy Code Section 523(a)(8)(A)(ii).

The Court first considered Navient's Motion to Compel or Dismiss to the extent that it sought to compel arbitration of Mr. Homaidan's claims, and after a period of time to permit the parties to brief and argue that issue, on July 25, 2018, the Court entered a decision denying that portion of Navient's requested relief.  *See In re Homaidan*, 587 B.R. at 443.  Navient appealed that decision on August 10, 2018, and pursuant to the parties' stipulation, the appeal was dismissed on November 5, 2018.

Next, the Court considered Navient's Motion to Compel or Dismiss to the extent that it sought to dismiss Mr. Homaidan's claims on grounds that the private Tuition Answer Loans that exceed the cost of attendance were excluded from discharge under Bankruptcy Code Section 523(a)(8)(A)(ii).  Again, after a period of time to permit the parties to brief and argue that issue, on January 31, 2019, the Court entered a decision denying that portion of Navient's requested relief.  *See In re Homaidan*, 596 B.R. at 106-07, 110.  And on February 14, 2019, Navient filed an interlocutory appeal of this Court's decision denying the motion to dismiss in the District Court.  ECF No. 105.  At the same time, Navient also sought leave to pursue a direct appeal to the Second Circuit.  ECF No. 107.

While the appeal was pending in the District Court, on December 17, 2019, this Court issued an order amending the complaint to add Ms. Youssef as an additional named plaintiff and proposed class representative.  ECF No. 166.  And on December 19, 2019, the Plaintiffs filed a motion for class certification, a motion for partial summary judgment, and the Preliminary Injunction Motion.  ECF No. 168.

More than a year later, on February 25, 2020, the District Court granted Navient's motion to certify this Court's order denying the Motion to Compel or Dismiss to the extent that it sought to dismiss the Adversary Proceeding.  That appeal proceeded in the Second Circuit, and some

sixteen months later, on July 15, 2021, the Second Circuit affirmed this Court's decision denying Navient's request to dismiss the Adversary Proceeding on grounds, in substance, that reading Section 523(a)(8)(A)(ii) to exclude private student loans from a debtor's bankruptcy discharge is "unsupported by plain meaning." *Homaidan*, 3 F.4th at 601.

Less than two weeks after the appellate process was concluded, on July 28, 2021, this Court held a continued pre-trial conference in this Adversary Proceeding. At this point, Navient's legal defenses of arbitrability and an alternative basis for the nondischargeability of the Plaintiffs' and the Putative Class Members' private Tuition Answer Loans that exceed the cost of attendance had been resolved against it, by this Court and by the Second Circuit. With the consent of the parties, on August 20, 2021, the Court entered an order assigning this matter to mediation. ECF No. 302.

The parties diligently pursued that path for some months, but ultimately, the mediation process was not fruitful. On March 14, 2022, the Plaintiffs filed a letter stating that mediation was not successful, and that "it is now clear that this matter will not settle without a ruling by the Court on the pending motions for preliminary injunction, summary judgment and class certification." ECF No. 310. On March 22, 2022, Navient filed a letter stating its "disagree[ment] with the characterization in the [Plaintiffs'] letter regarding the parties' mediation efforts. Navient remains engaged in the process and believes that it is premature to conclude that this matter will not settle without a ruling on the pending motions." ECF No. 313.

And just over two weeks later, on April 7, 2022, the Plaintiffs filed the motion seeking a temporary restraining order. On July 8, 2022, after extensive briefing and argument by the parties, the Court issued the TRO and the TRO Decision. And then, on July 25, 2022, Navient

filed a notice of appeal of the TRO to the District Court, as well as a Motion to Stay Temporary Restraining Order.

At the same time, supplemental briefing on the Preliminary Injunction Motion proceeded in this Court, and in accordance with the schedule set at the July 21, 2022 hearing, the Plaintiffs filed the Supplemental Memorandum on August 5, 2022.  On August 19, 2022, Navient filed the Supplemental Opposition.  And on August 26, 2022, the Plaintiffs filed the Supplemental Reply.

On September 2, 2022, the Court issued the TRO Stay Decision and an order denying Navient's request for a stay pending appeal.  And on September 6, 2022, the District Court issued the District Court TRO Decision, and TRO became effective on that date.

On September 8, 2022, Navient filed its Notice of Compliance with the TRO.  After notice and a hearing, and with Navient's consent, the Court extended the TRO through October 14, 2022.  And on September 19, 2022, the Court held oral argument on the Preliminary Injunction Motion, at which the Plaintiffs and Navient, by counsel, appeared and were heard.  On October 17, 2022, the Court issued the Preliminary Injunction Decision and the Preliminary Injunction Order.  And then on October 18, 2022, Navient filed its Motion for Leave to Appeal and this Motion to Stay.

At each step of this long procedural path, Navient and the Plaintiffs each – quite appropriately – made motions, sought appellate review, and pursued a mediation pathway to a consensual resolution, and each of these steps took time.  Some took considerable time.  But at this stage in these proceedings, and based on this record, it is simply not accurate to suggest that the Plaintiffs somehow delayed, waited too long, or made a "strategic" litigation choice to wait to bring the Preliminary Injunction Motion and seek temporary or preliminary injunctive relief.

It was Navient, not the Plaintiffs, that brought a motion to compel arbitration, and to dismiss this Adversary Proceeding.

From October 2017 to July 2021, Navient's motions and appeal were pending and vigorously disputed in the District Court and Second Circuit. And in those requests for relief, Navient sought final and dispositive relief, on legal grounds. Had Navient been successful, this case would be over. Thereafter, the parties – with the encouragement of this Court – attempted to reach a consensual resolution, through court-annexed mediation. This matter was referred to mediation within some six weeks of the Second Circuit's decision, and that process continued from August 2021 to at least March 2022. Some two weeks later, the Plaintiffs brought the TRO Motion. In July and August 2022, the parties engaged in supplemental briefing on the Preliminary Injunction Motion, and that motion was argued in September 2022. Viewed another way, much time has passed, but it belies the facts and circumstances of this record to suggest that somehow, the Plaintiffs have engaged in delay.

Notably, Navient does not assert that it has been prejudiced by this passage of time. Nor does the record suggest that the Plaintiffs brought the Preliminary Injunction Motion, or for that matter, the TRO Motion, as a litigation tactic against Navient. Indeed, in the more than five years that this Adversary Proceeding has been pending, as many as sixty additional monthly payments have come due on the Plaintiffs' and the Putative Class Members' debt that may well have been discharged in bankruptcy.

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits of its appeal on grounds that the Court lacked authority to issue the Preliminary Injunction because this case has been pending for some five years, or any perceived delay by the Plaintiffs in seeking preliminary injunctive relief.

<u>Whether the Court Lacked Authority To Grant Relief Because the Preliminary Injunction</u>
<u>Does Not Comply with Federal Rule of Civil Procedure 65.</u>  The Court next considers Navient's argument that it is likely to succeed on the merits of its appeal because it lacked authority to grant relief in the form of an order that does not comply with Federal Rule of Civil Procedure 65. Motion to Stay at 13.  According to Navient, the Preliminary Injunction suffers from at least two defects that render it non-compliant with Rule 65 and the requirements for the entry of injunctive relief.  *Id.*

First, Navient argues that the Preliminary Injunction does not list the loans on which it can no longer collect, nor does it identify any specific borrowers as to whom Navient is restrained from directing collection activities.  *Id.*  Instead, Navient asserts that the Preliminary Injunction implicitly incorporates by reference tens of thousands of loan records and financial-aid records that may show whether a loan exceeded the cost of attendance, thus leaving it to Navient – under threat of contempt – to locate and review those records and to guess whether it is interpreting them consistent with the Court's direction.  *Id.*  It contends that in this way, the Preliminary Injunction plainly violates Rule 65, which requires that a restrained party be able to identify "the act or acts restrained or required" from the four corners of the injunction and without having to interpret external materials referenced or incorporated in the order.  Motion to Stay at 13-14 (citing *Corning*, 365 F.3d at 158).

And second, Navient argues that the Preliminary Injunction precludes collection activities on loans that "exceed the cost of attendance," but provides no guidance on how to determine whether a loan comes within that category.  Motion to Stay at 14.  It notes that the Plaintiffs contend that average, estimated data published by IPEDS is a reliable indicator of cost of attendance, but Navient disputes that view.  *Id.*  And it argues that borrower certifications

constitute a sufficient basis on which to determine whether cost-of-attendance criteria under

Bankruptcy Code Section 523(a)(8)(B) have been satisfied.  *Id.*  Navient then asserts that by

referring only to loans exceeding the "cost of attendance," the Preliminary Injunction leaves

these important questions unresolved.  *Id.*

According to Navient, the result of this is that the Preliminary Injunction is really nothing

more than a successive injunction that, like the discharge injunctions it purports to enforce, says

nothing more than: "obey the law."  *Id.*  And it argues that it is likely to prevail on its position

that such an injunction is improper.  Motion to Stay at 14 (citing *Alderwoods*, 682 F.3d at 968).

Finally, on this point, Navient contends that notwithstanding a clear dispute between the

parties concerning what constitutes an "act to collect," the Preliminary Injunction does not

delineate what Navient can and cannot do in order to comply with the Preliminary Injunction.

Motion to Stay at 15.  As a result, Navient asserts that without defining "acts to collect," the

Preliminary Injunction is vague and requires Navient to guess at its meaning.  *Id.*

At the outset, the Preliminary Injunction describes the loans that Navient is prohibited

from attempting to collect.  As the Preliminary Injunction Order directs:

> [It is] ORDERED, that Navient is restrained and enjoined from taking any acts to
> collect on Tuition Answer Loans held by the Plaintiffs and the Putative Class
> Members, as the class is described in the Amended Complaint, that exceed the
> cost of attendance as defined by Internal Revenue Code § 221(d), and that have an
> outstanding balance subject to collection.

Prelim. Inj. Order at 7.

Here, the Court finds that Navient's arguments that it somehow cannot discern which

loans come within the scope of the Preliminary Injunction are not persuasive.  There can be no

doubt that as a significant participant in the student loan marketplace, Navient is familiar with its

portfolio of student loans, including the loans that have been the subject of this adversary

proceeding for more than five years.  The concept of "cost of attendance" is not one that the

Plaintiffs created, nor one that the Court invented for purposes of the Preliminary Injunction.  It

is, instead, set forth in the Internal Revenue Code and incorporated by reference in the

Bankruptcy Code.  It has been a subject of this action for more than five years.  And it is a

significant piece of the picture in determining whether a private student loan is within or outside

of a debtor's discharge.

The Court similarly finds that Navient's arguments that it would have to guess at the

meaning of "acts to collect" in order to comply with the Preliminary Injunction not to be

persuasive.  As Navient stated in a declaration filed in opposition to the TRO:

> [Navient] engages in many activities that it considers to be normal "servicing"
> activities, such as:  sending out monthly statements; allowing borrowers to enroll
> in a "Auto Pay" system where bank accounts are automatically debited each
> month; accepting and crediting payments from borrowers, whether through Auto
> Pay or otherwise; providing balance and pay-off information to borrowers,
> sending tax and other account information to borrowers; answering borrower
> questions; calculating and accruing interest based on payment status; and making
> reports to credit agencies based on loan and payment status.

Peterson Decl. ¶ 4.

And Navient has acknowledged that "[o]nce a loan goes into monetary default or

becomes delinquent, [it] engages in other activities that [it] considers to be 'collection' activities

that may include periodic written or telephonic communications to the borrowers or referral of

accounts to collection agencies."  *Id*.  Further, in its Notice of Compliance, Navient states that it

has "ceased . . . the transmittal of monthly statements as well as any outgoing written or oral

communications requesting payment."  Notice of Compliance at 2.

That is, it is reasonable to assume that Navient is aware of what it does to collect on a

loan, and it is hard to imagine that Navient would need to look to the Plaintiffs or the Court for

information or direction in that arena.  Lenders routinely must pause their collection efforts when

a borrower files a bankruptcy case and triggers the protection of the Bankruptcy Code's automatic stay.  Routine collection efforts should be straightforward to identify, and in compliance with the Preliminary Injunction, to place on pause, for the duration of this Court's injunctive relief.

Notably, courts have not been persuaded by similar arguments in other settings.  For example, in *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal. 2020), Immigration and Customs Enforcement ("ICE") detainees filed a proposed habeas class action challenging the conditions of their confinement, contending that they were at "serious risk of becoming infected with Covid-19 because ICE has refused to alter conditions at the facilities so as to enable people to keep their distance from one another."  *Zepeda Rivas*, 445 F. Supp. 3d at 38.  There, the plaintiffs filed a "motion for a temporary restraining order requiring ICE to take measures that will enable social distancing."  *Id*.  In finding that the requirements for a temporary restraining order were met, the court rejected ICE's argument that "it will take a significant amount of time for the agency to prepare a list of detainees with health vulnerabilities because it is 'burdensome.'"  *Zepeda Rivas*, 445 F. Supp. 3d at 40.  Instead, the court observed that "[t]he fact that ICE does not have such a list at the ready, six weeks after Governor Newsom shut down the entire state and one week after this lawsuit was filed, speaks volumes about where the safety of the people at these facilities falls on ICE's list of priorities."  *Id.*

Based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits as to its argument that the Preliminary Injunction does not comply with Federal Rule of Civil Procedure 65.

*          *          *

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not made a strong showing that it is likely to succeed on the merits of its appeal.

### _Whether Navient Has Shown that in the Absence of a Stay, It Will Suffer Irreparable Injury_

The second factor that the Court must consider is whether, in the absence of a stay, Navient will suffer irreparable injury. This type of injury must be a harm that is "neither remote nor speculative, but actual and imminent." _In re Adelphia_, 361 B.R. at 347 (citing _Tucker Anthony_, 888 F.2d at 975). The party moving for a stay must demonstrate that this injury cannot be remedied without a stay, and that monetary relief will not be adequate. _Dexter 345 Inc. v. Cuomo_, 663 F.3d 59, 63 (2d Cir. 2011).

Here, Navient argues that it will suffer two injuries if the Preliminary Injunction is not stayed: first, that compliance with the Preliminary Injunction will require it to incur significant costs; and second, that the Preliminary Injunction will cause loans that are currently being paid to slip into default, leading to losses that as a practical matter, cannot likely be recovered. Reply at 15-16. In this context, Navient asserts, it will incur compliance costs and suffer "substantial, real-world losses" that constitute an irreparable injury. Motion to Stay at 16.

The Plaintiffs respond that, as in the case of the TRO, Navient will not be irreparably injured absent a stay. Opp. at 10. They argue that Navient has made no new argument to support that assertion. _Id_. And they point to this Court's prior findings that Navient does not have the right to collect on discharged debt, and that a purely monetary harm could not be irreparable. Opp. at 10 (citing _In re Homaidan_, 2022 WL 4073429, at *34).

The Court finds Navient's arguments not to be persuasive. At the outset, it is worth noting that the Preliminary Injunction affects Navient only to the extent that it is collecting on discharged debts – and this is plainly an activity which Navient should not undertake. Further,

the Court has already found that absent the Preliminary Injunction, the Plaintiffs and the putative class will be irreparably injured by this unlawful collection activity.  And in all events, the types of economic damage that Navient has identified – the costs of compliance and the prospect of missed collections during the pendency of the Preliminary Injunction – are simply not the same as irreparable injury.

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not shown that it will suffer irreparable injury in the absence of a stay.

### *Whether Navient Has Shown that a Stay of the Preliminary Injunction Will Not Cause Substantial Injury to the Plaintiffs*

The third factor that the Court must consider is whether imposing a stay will cause substantial injury to the Plaintiffs.  To prevail on this factor, the party seeking the stay must show that a stay will not substantially harm the non-moving party.  *See Mohammed*, 309 F.3d at 100.  "In other words, the moving party must show that the balance of harms tips in favor of granting the stay."  *In re Adelphia*, 361 B.R. at 349.

Navient argues that a stay will not substantially injure other interested parties.  Motion to Stay at 16.  It contends that staying the Preliminary Injunction pending appeal will allow the continuation of the status quo that has existed since this case was commenced more than five years ago.  *Id*.  Navient points out that if the Plaintiffs ultimately prevail in this case, any injury suffered by borrowers who made payments on discharged loans could be remedied by an award of money damages.  Motion to Stay at 16-17.  And it asserts that the fact that the Plaintiffs waited for two years to seek a preliminary injunction and waited another three years after that to seek a temporary restraining order should effectively estop them from opposing a stay pending appeal on the basis of any claim that borrowers may suffer irreparable harm.  Motion to Stay at 17 (citing *Citibank*, 756 F.2d at 276).

The Plaintiffs respond that staying the Preliminary Injunction will cause substantial injure to the Plaintiffs and the Putative Class Members.  Opp. at 11.  They again point to this Court's prior decisions holding that "'an attempt to collect on a discharged debt is not just about money – it is about the hardships, and burdens that impair a debtor's efforts to achieve the "fresh start" that is the centerpiece of the bankruptcy system.'"  Opp. at 11 (quoting *In re Homaidan*, 2022 WL 4073429, at *35).  As a result, the Plaintiffs argue, the Plaintiffs and Putative Class Members will suffer substantial injury if the Preliminary Injunction is stayed.  Opp. at 11.

Here again, the Court finds Navient's arguments not to be persuasive.  Navient appears to accord insufficient weight to the fact that, as this Court and others have concluded, "[a]n attempt to collect on a discharged debt is not just about money – it is about the hardships and burdens that impair a debtor's efforts to achieve the 'fresh start' that is a centerpiece of the bankruptcy system."  *In re Homaidan*, 640 B.R. at 851.  That is, Ms. Youssef and the Putative Class Members will suffer substantial and irreparable harm from Navient's continuing efforts to collect on their discharged debt.  And they will be denied the "fresh start" that is so integral to a bankruptcy discharge.  This harm is actual and imminent, and reaches beyond the ability of monetary compensation to remedy.  While it is true that this harm has been part of the picture since this case was filed, now that Navient has not prevailed in its legal defense in the Second Circuit and the parties' efforts to settle through mediation are over, this harm has come to the fore, and it is time for it to be addressed.

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not shown that the Plaintiffs will not suffer substantial injury if a stay of the Preliminary Injunction is issued.

*Whether Navient Has Shown that the Public Interest Will Not Be Adversely Affected if a Stay Pending Appeal Is Granted*

The fourth factor that the Court must consider is the public interest.  As this Court and others have observed, this factor calls for the court to weigh the public interest, and to consider and balance several goals and objectives, including efficient case administration and the right to a meaningful review on appeal.  *In re Taub*, 2010 WL 3911360, at *3 (citing *In re Adelphia*, 361 B.R. at 349).

Navient argues that the public interest favors issuance of a stay.  Motion to Stay at 17.  It asserts that there is a strong public interest in ensuring that citizens are not prejudiced by legal processes without first being provided notice and an opportunity to be heard.  Navient contends that the Preliminary Injunction violates this public interest because it is likely to cause significant harm to potentially thousands of absent members of a putative class before a class has been certified and before they have been given notice or any other meaningful opportunity to protect their interests.  *Id*.  And it asserts that there is also a strong public interest in protecting both lenders and borrowers from unscrupulous practices in connection with student loans and other lending transactions, and that the Preliminary Injunction runs afoul of this public interest by effectively rewarding borrowers that submitted loan applications and other loan documents containing material misrepresentations.  *Id*.

In response, the Plaintiffs dispute Navient's characterization of the Plaintiffs' and putative class members' conduct as deceptive.  Opp. at 11.  Rather, the Plaintiffs suggest, even if a Putative Class Member used the proceeds of their loan for the stated educational purposes, that "does not mean that the loan is necessarily within the cost of attendance as strictly defined by 11 U.S.C. § 523(a)(8)(B) and I.R.C. § 221(d)," or change the requirements for nondischargeability under the Bankruptcy Code.  Opp. at 11-12.  And they state that any conceivable harm to the rights of Putative Class Members rights is outweighed by the real harm to these debtors' "fresh

starts," and point to this Court's prior reasoning that "'the public interest is not served by the collection of a discharged debt, and the public is not disserved by enjoining that activity.'"  Opp. at 12 (quoting *In re Homaidan*, 2022 WL 4073429, at *35).

Finally, Navient argues that any public interest that may be associated with the Putative Class Members receiving a "fresh start" is outweighed by the "stronger competing public interests in ensuring that bankruptcy discharge orders do not 1) prejudice citizens without first providing them with notice and an opportunity to be heard, or 2) promote dishonest borrowing practices."  Reply at 18.  It states that granting a stay pending appeal here would not prevent the Putative Class Members from receiving their "fresh start," and deferring the Court's preliminary injunctive relief until the question of class certification is decided will allow those debtors "the opportunity to protect themselves from the potential harm the Injunction may engender."  Reply at 19.  And Navient argues that the Preliminary Injunction "effectively rewards" borrowers who "submitted loan documents containing material misrepresentations."  *Id.*

Here, the Court agrees with Navient that respect for fundamental notions of due process and notice is in the public interest.  But the Court is not persuaded that these foundational concepts are threatened, or even put at risk, by the Preliminary Injunction or by the denial of a stay of the Preliminary Injunction pending appeal.  The Preliminary Injunction does not limit the rights of potential class members under Rule 23 in any respect, nor does it prevent any kind of notice to the putative class.  Indeed, when the possibility of providing notice of the TRO to the Putative Class Members was raised by the Court with the parties, Navient declined to pursue this path, stating it does not believe "giving any kind of provisional notice at this point is appropriate."  May 25, 2022 Hearing Transcript, ECF No. 324, at 58:14-22.

Other courts facing similar questions have reached similar conclusions.  As one bankruptcy court observed, in finding that the public interest weighed against issuing a stay to halt an adversary proceeding in favor of arbitration, "there is . . . a strong policy in protecting a debtor's fresh start after their bankruptcy proceedings are resolved."  *In re Anderson*, 560 B.R. at 93.  As this Court has found, "'[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start."'"  *In re Golden*, 630 B.R. at 911 (quoting *Mckenzie-Gilyard v. HSBC Bank Nev., N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007)).  The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy."  *In re McKenzie-Gilyard*, 388 B.R. at 480.

And where the public interest in this "fresh start" is threatened, "[b]ased on the . . . importance of protecting the 'fresh start' which Chapter 7 offers the honest but unfortunate debtor, a preliminary injunction is not only warranted but necessary to preserve the integrity of the bankruptcy process."  *Archambault v. Hershman* (*In re Archambault*), 174 B.R. 923, 936 (Bankr. W.D. Mich. 1994).  The public interest in "protecting a debtor's fresh start after their bankruptcy proceedings are resolved" would be disserved by the entry of a stay pending appeal of the Preliminary Injunction.  *In re Anderson*, 560 B.R. at 93.  In other words, the public interest is not served by the collection of a discharged debt, and the public interest is not disserved by enjoining that activity.

Accordingly, for these reasons, and based on the entire record, the Court concludes that Navient has not shown that the public interest weighs in favor of a stay pending appeal.

*            *            *

On this Motion for a Stay, Navient has presented many arguments that are familiar to the Court and the parties, and several additional arguments as well.  Motions such as this provide the Court with an opportunity to revisit the arguments and issues in the case, thoughtfully to consider and reconsider those arguments and the Court's prior analysis and conclusions, and where appropriate, to modify or amend its prior assessments of the record.  And this Court has done so here.

In addition, this Motion for a Stay permits the Court carefully to consider whether the temporary and interim relief provided first in the TRO and then in the Preliminary Injunction is warranted by the record, and warranted immediately – or alternatively, whether it should be stayed so that Navient can pursue an appeal.

And based on the entire record, and after careful and thorough consideration of all of the arguments and authorities that have been presented, the Court concludes that the Preliminary Injunction should not be stayed.  As set forth herein, Navient has not made a strong showing that it is likely to succeed on its request for leave to appeal, or on the merits of its appeal.  Nor has it shown that it will suffer irreparable injury in the absence of a stay, or that the Plaintiffs will not suffer substantial injury if a stay of the Preliminary Injunction is issued.  And finally, Navient has not shown that the public interest weighs in favor of a stay pending appeal.

Finally, it is worth noting that, at the time the TRO was entered, on July 8, 2022, this Court delayed the effective date of the relief for sixty days, until September 6, 2022, in accordance with Navient's representations that it would take sixty days to comply with a direction to cease its collection activities on the loans that are at issue here – private student Tuition Answer Loans that exceed the cost of attendance and therefore are outside the scope of Section 523(a)(8)(B)'s exclusion from discharge.  That is, as of the date of this Memorandum

Decision, Navient has been enjoined from collecting on these debts for some eight weeks.  And as stated in Navient's Notice of Compliance, it has "ceased collection activities," including "the transmittal of monthly statements as well as any outgoing written or oral communications requesting payment."  Notice of Compliance at 1, 2.  Here, the record here does not show, or even suggest, that the perils and adverse consequences that Navient predicts have come to pass.

<u>**Conclusion**</u>

For the reasons stated herein, and based on the entire record, Navient's Motion to Stay Preliminary Injunction is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
November 1, 2022

Elizabeth S. Stong
**Elizabeth S. Stong**
**United States Bankruptcy Judge**

81