UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re:                                                    Chapter 7

HILAL KHALIL HOMAIDAN,                                    Case No. 08-48275-ess
*aka* Helal K Homaidan,

                   Debtor.

------------------------------------------------------------------------x

In re:                                                    Chapter 7

REEHAM YOUSSEF,                                           Case No. 13-46495-ess
*aka* Reeham Navarro Youssef,
*aka* Reeham N. Youssef,

                   Debtor.

------------------------------------------------------------------------x

HILAL KHALIL HOMAIDAN on behalf of himself and
all others similarly situated,

and                                                       Adv. Pro. No. 17-1085-ess

REEHAM YOUSSEF,

                   Plaintiffs,

      v.

SALLIE MAE, INC., NAVIENT SOLUTIONS, LLC,
NAVIENT CREDIT FINANCE CORPORATION,

                   Defendants.

------------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Appearances*:

| | |
|---|---|
| George F. Carpinello, Esq. | Thomas M. Farrell, Esq. |
| Adam Shaw, Esq. | McGuire Woods LLP |
| Boies Schiller Flexner LLP | JPMorgan Chase Tower |
| 30 South Pearl Street (11th Floor) | 600 Travis Street (Suite 7500) |
| Albany, NY 12207 | Houston, TX 77002 |
|   *Attorneys for Plaintiffs* |   *Attorneys for Defendants* |

Jason W. Burge, Esq.
Kathryn J. Johnson, Esq.
Fishman Haygood LLP
201 Saint Charles Avenue (Suite 4600)
New Orleans, LA 70170
   *Attorneys for Plaintiffs*

Shawn R. Fox, Esq.
Joseph A. Florczak, Esq.
Dion W. Hayes, Esq.
K. Elizabeth Sieg, Esq.
McGuireWoods LLP
1345 Avenue of the Americas (7th Floor)
New York, NY 10105
   *Attorneys for Defendants*

Lynn E. Swanson, Esq.
Peter N. Freiberg, Esq.
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70130
   *Attorneys for Plaintiffs*

April 11, 2023

## **Introduction**

Before the Court is the Plaintiffs' motion seeking nationwide certification of an injunctive relief class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in this action against Defendants Navient Solutions LLC and Navient Credit Finance Corporation (collectively, "Navient").  The Plaintiffs seek a declaratory judgment, injunctive relief, and damages arising from Navient's alleged "pattern and practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2).  Am. Compl. ¶ 2.  Navient opposes class certification on grounds, among others, that this Court lacks jurisdiction to adjudicate discharge violation claims where the discharge was entered by a bankruptcy court in another jurisdiction, and, therefore, it cannot certify a national class seeking to enforce a discharge injunction violation.

For the reasons stated below, the Court will certify a Rule 23(b)(2) class for declaratory and injunctive relief and a Rule 23(b)(3) damages class.  These classes shall include all individuals who attended or intended to attend Title IV institutions and who received direct-to-consumer private loans owned or serviced by Navient which exceed the "cost of attendance" at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after October 17, 2005; who were subsequently subject to Navient's acts to collect on the loans; and who have not reaffirmed their loans.

## **Jurisdiction**

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b), and to the extent that they are not core proceedings pursuant to Judiciary Code Section 157(c) because the parties have stated their consent to this Court entering a final judgment.  May 14, 2018 Hearing Tr., 6:25-7:15, ECF No. 83.  *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 671 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding" (quoting 28 U.S.C. § 157(c)(2)).

## **Background**

This case and the related individual Chapter 7 cases of the named plaintiffs have an extensive history in this Court, the District Court, and the Court of Appeals for the Second Circuit, and familiarity with that history is assumed.  For the sake of context, this Court summarizes some of the significant aspects of those matters below.

### *Mr. Homaidan's Bankruptcy Case*

On December 4, 2008, Hilal Khalil Homaidan, *aka* Helal K. Homaidan, filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 08-48275.  On December 19, 2008, Mr. Homaidan filed his schedules and statements, and on March 9, 2009, he filed certain amended schedules.  ECF Nos. 11, 19.  In his Schedule F, "Creditors Holding Unsecured Nonpriority Claims," he listed "Tuition Answer" loans owed to Sallie Mae in the amounts of $7,983.19 and $8,190.11.  On January 15, 2009, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute."  Case No. 08-48275, Doc. entry dated January 15, 2009.  On April 9, 2009, the Court entered an order discharging Mr. Homaidan, and on that same day, his bankruptcy case was closed.  ECF No. 21.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a

determination of the dischargeability of certain of his student loans, and on May 26, 2017, the Court entered an order reopening the case.  ECF Nos. 28, 31.

<u>Ms. Youssef's Bankruptcy Case</u>

On October 29, 2013, Reeham Youssef, aka Reeham Navarro Youssef, aka Reeham N Youssef, filed a petition for relief under Chapter 7 of the Bankruptcy Code.  *In re Reeham Youssef*, Case No. 13-46495.  On October 29, 2013, Ms. Youssef filed her schedules and statements.  Case No. 13-46495, ECF No. 1.  In her Schedule F, "Creditors Holding Unsecured Nonpriority Claims," she listed "Student Loan[s]" owed to Sallie Mae in the amounts of $9,055.00, $13,413.00, $6,415.00, $35,580.00, $23,596.00, $4,095.00, $16,275.00 and $29,493.00.  *Id.*  On December 13, 2013, the Chapter 7 Trustee filed a "no-asset" report stating that "[t]he estate has no non-exempt property to distribute."  Case No. 13-46495, Doc. entry dated December 13, 2013.  On February 6, 2014, the Court entered an order discharging Ms. Youssef, and on that same day, her bankruptcy case was closed.  Case No. 13-46495, ECF No. 9.

On October 1, 2019, Ms. Youssef moved to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on December 4, 2019, the Court entered an order reopening the case.

<u>Selected Procedural History of this Adversary Proceeding</u>

On June 23, 2017, Mr. Homaidan commenced this adversary proceeding (the "Adversary Proceeding") as a putative class action, on behalf of himself and others similarly situated, by filing a complaint against SLM Corporation, Sallie Mae, Inc., Navient Solutions, LLC, and Navient Credit Finance Corporation.  As to himself, Mr. Homaidan seeks a determination that certain debts that he incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and

costs, for Navient's willful violations of the bankruptcy discharge order entered in his case.  And as to the class, he seeks the same the relief.  Compl., Adv. Pro. No. 17-01085, ECF No. 1.

On October 30, 2017, Navient filed a motion to compel arbitration or, in the alternative, to dismiss the Adversary Proceeding (the "Motion to Compel or Dismiss") and a Memorandum of Law in Support of the Motion to Compel or Dismiss (the "Mot. to Compel or Dismiss Mem.").  ECF Nos. 16, 17.  In the Motion to Compel or Dismiss, Navient argued that Mr. Homaidan's private Tuition Answer Loans "constitute obligations to repay funds received as educational benefits, and are therefore excepted from discharge under [Section] 523(a)(8)(A)(ii) of the Bankruptcy Code." Mot. to Compel or Dismiss Mem. at 23-24.  On December 1, 2017, the Court approved a stipulation of dismissal as to defendant SLM Corporation.  ECF No. 23.

On January 8, 2018, Mr. Homaidan filed opposition to the Motion to Compel or Dismiss. ECF No. 27.  On January 26, 2018, Navient filed a reply in support of the Motion to Compel or Dismiss.  ECF No. 29.

On July 25, 2018, the Court issued a memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to compel arbitration of Mr. Homaidan's claims.  *Homaidan v. SLM Corp.* (*In re Homaidan*), 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

On January 31, 2019, the Court issued a second memorandum decision on the Motion to Compel or Dismiss, and denied the motion to the extent it sought to dismiss the Adversary Proceeding.  *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86 (Bankr. E.D.N.Y. 2019). On February 14, 2019, Navient filed a notice of appeal to the District Court of this Court's order denying the request to dismiss the Adversary Proceeding.  ECF No. 105.

Thereafter, on October 21, 2019, Mr. Homaidan filed an amended complaint to add Ms. Youssef as a named plaintiff and proposed class representative.  Am. Compl., ECF No. 160.  On

December 18, 2019, this Court entered an Order permitting amendment of the complaint to add Ms. Youssef as a named plaintiff and a proposed class representative.  ECF No. 166.

On December 19, 2019, the Plaintiffs filed a motion seeking three forms of relief:  an order certifying a nationwide class in this Adversary Proceeding (the "Class Certification Motion" or "Class Cert. Mot."), an order for partial summary judgment on liability and restitution (the "Partial Summary Judgment Motion"), and a preliminary injunction (the "Preliminary Injunction Motion," and, together with the Class Certification Motion and the Partial Summary Judgment Motion, the "Pending Motions").  ECF No. 168.  That same day, the Plaintiffs filed three memoranda of law in support of each of the three forms of relief sought, including a memorandum in support of the Class Certification Motion (the "Class Certification Memorandum" or "Class Cert. Mem.").  ECF No. 169.  And the Plaintiffs filed affidavits of Lynn E. Swanson, Austin C. Smith, Jason W. Burge, Mark Kantrowitz, Mr. Homaidan, Ms. Youssef, and George F. Carpinello in support of the Class Certification Motion.  ECF Nos. 173-79.

In the Class Certification Motion, the Plaintiffs seek to certify an injunctive relief class pursuant to Federal Rule of Civil Procedure 23(b)(2), and a damages class pursuant to Federal Rule of Civil Procedure 23(b)(3), consisting of:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mot. at 15.

On March 13, 2020, Navient filed its opposition to the Class Certification Motion (the "Opposition" or "Opp.").  ECF No. 204.  And on March 18, 2020, the Plaintiffs filed a reply to

Navient's opposition (the "Reply").  ECF No. 218.  That same day, the Plaintiffs filed

declarations of George F. Carpinello and Mark Kantrowitz in support of the Reply.  ECF Nos.

219, 220.

On February 25, 2020, the District Court granted Navient's motion to certify the order

denying the Motion to Compel or Dismiss to the extent it sought to dismiss the Adversary

proceeding for direct appeal to the Second Circuit.  *Homaidan v. Sallie Mae, Inc.*, 2020 WL

5668972 (E.D.N.Y. Feb. 25, 2020).  And on July 15, 2021, the Second Circuit affirmed this

Court's order denying Navient's motion to dismiss the Adversary Proceeding.  *Homaidan v.*

*Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021).  There, the court found that private loans do not

come within Section 523(a)(8)(A)(ii) because they are not "'an obligation to repay funds

received as an educational benefit.'"  *Homaidan*, 3 F.4th at 601 (quoting 11 U.S.C. §

523(a)(8)(A)(ii)).  In reviewing the exceptions to discharge contained in Section 523(a)(8), the

Second Circuit observed:

> [Section] 523(a)(8)(A)(i) covers government and nonprofit-backed loans and
> educational benefit overpayments; [Section] 523(a)(8)(A)(ii) covers scholarships,
> stipends, and conditional education grants; and [Section] 523(a)(8)(B) covers
> private loans made to individuals attending eligible schools for certain qualified
> expenses.

*Homaidan*, 3 F.4th at 604.

As to Section 523(a)(8)(B), the Second Circuit explained that "for a loan to be 'qualified'

under [Section] 523(a)(8)(B), the student must attend an eligible educational institution and the

loan must fund only higher education expenses."  *Homaidan*, 3 F.4th at 601 n.3 (first citing 26

U.S.C. § 25A(f)(2); and then citing 26 U.S.C. § 221(d)).

On May 7, 2020, the Court heard preliminary arguments from the parties on the Class

Certification Motion.  And from time to time, the Court held continued pre-trial conferences and

hearings on the Class Certification Motion, while other matters in the case progressed.

On August 23, 2021, this Court entered an Order assigning this Adversary Proceeding to mediation.  ECF No. 302.  And on September 7, 2021, this Court entered a Stipulation and Mediation Order, where the parties jointly accepted Eric Green of Resolutions LLC to provide mediation services.  ECF No. 304.

On March 14, 2022, the Plaintiffs filed a letter stating that it is "clear" the Adversary Proceeding "will not settle without a ruling by the Court" on the Pending Motions.  ECF No. 310.  The letter also stated that the Plaintiffs planned to file a motion for a temporary restraining order.  *Id*.  On March 22, 2022, Navient responded by filing their own letter, stating that Navient remains engaged in the mediation process and disagrees that this Adversary Proceeding will not settle without a ruling on the Pending Motions.  ECF No. 313.

On April 7, 2022, the Plaintiffs filed a motion for a temporary restraining order (the "TRO Motion").  TRO Motion, ECF No. 314.  On April 11, 2022, this Court entered an Order scheduling a conference on the TRO Motion for April 14, 2022.  ECF No. 316.  On April 14, 2022, the Court held an initial hearing on the TRO Motion and, with the consent of the parties, set a briefing schedule on the TRO Motion.

On July 8, 2022, the Court issued a memorandum decision on the TRO Motion (the "TRO Decision"), granting in part the TRO Motion to the extent that it enjoined Navient from taking any acts to collect on Tuition Answer Loans held by the Plaintiffs and Putative Class Members, as the class is described in the Amended Complaint, that exceed the "cost of attendance" as defined by Internal Revenue Code § 221(d), and that have an outstanding balance subject to collection.  TRO Decision, ECF No. 341.  *See Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 640 B.R. 810 (Bankr. E.D.N.Y. 2022).  And on that same day, the Court entered a

temporary restraining order (the "TRO"), in accordance with the TRO Decision.  TRO, ECF No. 342.

On July 25, 2022, Navient filed a notice of appeal to the District Court of this Court's order granting in part the TRO Motion, as well as a Motion to Stay Temporary Restraining Order.  ECF Nos. 350, 351.  And on July 26, 2022, Navient filed a Notice of Motion to Stay Temporary Restraining Order.  ECF No. 356.

On that same day, Navient filed a Notice of Appeal of the TRO in the District Court. Notice of Appeal, *Navient Sols., LLC v. Homaidan*, 22-cv-4398 (E.D.N.Y. July 26, 2022), ECF No. 1.  On August 9, 2022, the Plaintiffs filed a memorandum in opposition to Navient's Motion for Leave to Appeal.  Memorandum in Opposition, *Navient Sols., LLC v. Homaidan*, 22-cv-4398 (E.D.N.Y. Aug. 9, 2022), ECF No. 2.  And on August 15, 2022, Navient filed a reply in support of its request for an appeal.  Reply, *Navient Sols., LLC v. Homaidan*, 22-cv-4398 (E.D.N.Y. Aug. 15, 2022), ECF No. 5.

On August 5, 2022, the Plaintiffs filed a Supplemental Memorandum of Law in Support of their Motion for Class Certification (the "Supplemental Memorandum" or "Supp. Mem.").  ECF No. 362.  On August 19, 2022, Navient filed a Supplemental Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (the "Supplemental Opposition" or "Supp. Opp.").  ECF No. 367.  And on August 26, 2022, the Plaintiffs filed a Supplemental Reply Memorandum of Law in Further Support of their Motion for Class Certification (the "Supplemental Reply" or "Supp. Reply").  ECF No. 371.

On September 2, 2022, the Court issued a memorandum decision (the "TRO Stay Decision") and an order denying Navient's request for a stay pending appeal of the TRO.  *See* ECF Nos. 376, 377.  On September 3, 2022, Navient filed an Emergency Motion to Stay the

TRO in the District Court.  Emergency Motion, *Navient Sols., LLC v. Homaidan*, 22-cv-4398 (E.D.N.Y. Sept. 8, 2022), ECF No. 8.

And on September 6, 2022, the District Court denied Navient's request for leave to appeal, effectively denying a stay as well, in its Memorandum and Order, and the TRO became effective on that date.  Memorandum & Order, *Navient Sols., LLC v. Homaidan*, 22-cv-4398 (E.D.N.Y. Sept. 6, 2022), ECF No. 9.  *See Navient Sols., LLC v. Homaidan*, 2022 WL 4079579 (E.D.N.Y. Sept. 6, 2022); ECF No. 380 (the "District Court TRO Decision").

On September 8, 2022, Navient filed a Notice of Compliance with the TRO.  Notice of Compliance, ECF No. 379.  In that Notice, Navient stated that it has:

> [C]eased collection activities on 7,368 Tuition Answer loans.  The Tuition Answer loans meet two criteria:  (1) at least one borrower on each loan obtained a discharge in bankruptcy on or after January 1, 2005 (as reported in PACER records), and (2) the amount disbursed on each loan exceeded cost-of-attendance figures reported to IPEDS.  The collection activities that Navient has ceased include the transmittal of monthly statements as well as any outgoing written or oral communications requesting payment.

Notice of Compliance at 1.

The TRO was set to expire on September 20, 2022.  On September 9, 2022, the Court entered an Order to Show Cause why the TRO should not be extended for good cause pursuant to Federal Rule of Civil Procedure 65, to be heard on September 19, 2022.  The parties were directed to file any opposition to the Order to Show Cause by September 14, 2022, and to file responses to any opposition by September 16, 2022.  And on September 14, 2022, Navient filed a response to the Order to Show Cause, consenting to extend the TRO for an additional 14 days, to October 3, 2022.  ECF No. 387.

The Court held a hearing on the Order to Show Cause on September 19, 2022 at which the Plaintiffs and Navient, by counsel, appeared and were heard.  At that hearing, the possibility

of a scheduling conflict with the Jewish high holy days was noted, and thereafter, on September 20, 2022, Navient filed a letter consenting to an extension of the TRO through October 14, 2022. ECF No. 395.  And also on September 19, 2022, the Court held oral argument on the Preliminary Injunction Motion, at which the Plaintiffs and Navient, by counsel, appeared and were heard.

On October 17, 2022, this Court issued a memorandum decision (the "Preliminary Injunction Decision" or "Prelim. Inj. Decision") and order (the "Preliminary Injunction Order" or "Prelim. Inj. Order") granting, in part, the Preliminary Injunction Motion.  ECF Nos. 403, 404. On October 18, 2022, Navient filed a Notice of Appeal, a Motion for Leave to Appeal and Alternative Petition for Mandamus in this Court (the "Motion for Leave to Appeal"), and an Emergency Motion to Stay Preliminary Injunction (the "Motion to Stay").  ECF Nos. 405, 407, 408.  And on October 19, 2022, Navient filed its Notice of Appeal with the District Court. Notice of Appeal, *Navient Sols., LLC v. Homaidan*, 22-cv-6316 (Nov. 3, 2022), ECF No. 1.

On November 1, 2022, this Court issued a memorandum decision (the "Preliminary Injunction Stay Decision" or "Prelim. Inj. Stay Decision") and an order denying Navient's request for a stay pending appeal of the Preliminary Injunction Order.  *See* ECF Nos. 425, 426.

Two days later, on November 3, 2022, Navient filed an Emergency Motion to Stay Preliminary Injunction in the District Court.  Emergency Motion, *Navient Sols., LLC v. Homaidan*, 22-cv-6316 (E.D.N.Y. Nov. 3, 2022), ECF No. 6.  And that same day, the Plaintiffs filed a memorandum in opposition to Navient's motion for leave to appeal and alternative petition for mandamus.  Memorandum in Opposition, *Navient Sols., LLC v. Homaidan*, 22-cv-6316 (E.D.N.Y. Nov. 3, 2022), ECF No. 7.  On November 10, 2022, Navient filed a reply in support of its motion for leave to appeal and alternative petition for mandamus.  Reply, *Navient Sols., LLC v. Homaidan*, 22-cv-6316 (E.D.N.Y. Nov. 10, 2022), ECF No. 8.

10

And on November 28, 2022, the District Court again dismissed Navient's appeal.  In its Memorandum and Order, the court stated that Navient was "not entitled to appeal the Preliminary Injunction Order as of right" and denied Navient's request for leave to appeal and petition for a writ of mandamus.  Memorandum & Order, *Navient Sols., LLC v. Homaidan*, 22-cv-6316 (E.D.N.Y. Nov. 18, 2022), ECF No. 14.  *See Navient Sols., LLC v. Homaidan*, 2022 WL 17252459 (E.D.N.Y. Nov. 28, 2022); ECF No. 430 at 2 (the "District Court Preliminary Injunction Decision").  The dismissal of the appeal effectively denied Navient's motion to stay as well.  As of the date of this Memorandum Decision, the Preliminary Injunction Order remains in place.

On January 18, 2023, Navient filed a Motion to Supplement the Record (the "Mot. Supp. Record") in this Court.  ECF No. 432.  On January 20, 2023, the Plaintiffs filed the Declaration of George F. Carpinello in Response to Defendants' Motion to Supplement the Record (the "Record Supplement Response" or "Record Supp. Response").  ECF No. 434.

On January 23, 2023 the Court held a continued pre-trial conference and heard oral argument on the Class Certification Motion, at which the parties appeared and were heard.  At the Court's direction, the parties also agreed to confer on a proposed form of notice of the Preliminary Injunction to the Putative Class Members.

On February 1, 2023, the parties submitted a proposed form of notice to the Putative Class Members (the "Form of Notice").  ECF No. 437.  And on February 8, 2023, the Court entered an order approving the parties' Form of Notice.  ECF No. 438.

The record is now closed.

*The Allegations of the Amended Complaint*

In view of the nature of the relief sought in this Class Certification Motion, it is helpful to

summarize the principal allegations of the Amended Complaint.  *See In re Homaidan*, 596 B.R. at 91-93 (discussing the allegations contained in the Amended Complaint).

The Plaintiffs, on behalf of themselves and all others similarly situated (the "Putative Class Members"), seek a declaratory judgment, injunctive relief, and damages arising from Sallie Mae. Inc. and Navient's alleged "pattern and practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2).  Am. Compl. ¶ 2.

The Plaintiffs allege that "[f]or the last ten years, [the Defendants] have . . . engaged in a massive effort to defraud student debtors and to subvert the orderly working of the bankruptcy courts."  *Id*.  They claim that the "Defendants . . . originat[ed] and service[ed] dischargeable consumer loans [while] disguising them as nondischargeable student loans."  *Id*.  The Plaintiffs advance these allegations on behalf of an alleged class of "similarly situated individuals who have declared bankruptcy since 2005 [across the United States,] with loans originated and/or serviced by Defendants."  Am. Compl. ¶ 5.  And they allege that these loans "do not meet the definition of a nondischargeable qualified education loan" as set forth in Internal Revenue Code Section 221(d) and Bankruptcy Code Section 523(a)(8)(B).  *Id.*

The Plaintiffs allege that the "Defendants represented to student debtors that the Bankruptcy Code prohibited discharge of *any* loan made to any person for any educational purpose."  Am. Compl. ¶ 28.  They claim that Navient "failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and in particular, that Class Members' nonqualified loans were, in fact, discharged in bankruptcy."  *Id*.  And the Plaintiffs state that Navient utilized bankruptcy laws "to defraud vulnerable and unsophisticated student borrowers."  Am. Compl. ¶ 29.  The Plaintiffs allege that the Navient "either misrepresented or failed to disclose facts and

information related to the dischargeability of private loans," and that it did not make the same misrepresentations "to more sophisticated parties."  Am. Compl. ¶ 33.

The Plaintiffs request that the Court declare that the Plaintiffs and Class Members' debts were discharged upon the entry of the applicable statutory bankruptcy discharge injunctions, because they are not student loans excluded from discharge under Bankruptcy Code Section 523(a)(8).  They seek permanent injunctive relief prohibiting Navient from continuing to seek collection on the Plaintiffs and Class Members' discharged debts.  The Plaintiffs also request that since Navient was notified of the Plaintiffs and Class Members' discharge orders pursuant to Bankruptcy Rule 4004(g), and still sought to collect on these debts by use of "dunning letters, phone calls, negative reports made to credit bureaus, failure to update credit reports, and commencing or continuing legal action to recover [these] debts in violation of [Bankruptcy Code Section 524]," the Court should cite Navient for civil contempt for is willful violations of the Discharge Order, and order it to pay damages in an amount to be determined at trial pursuant to Bankruptcy Code Sections 524 and 105, and also to pay the Plaintiffs' attorneys' fees and costs. Am. Compl. ¶¶ 90-93.

As stated in the Amended Complaint, the Plaintiffs seek to maintain this action on behalf of themselves and as representatives of Putative Class Members who:

- obtained private Tuition Answer loans in amounts that exceeded the "Cost of Attendance";

- were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;

- have never reaffirmed any pre-petition Tuition Answer loan; and

- have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

Am. Compl. ¶ 73.  The Plaintiffs allege that this action and the proposed class satisfy the prerequisites of numerosity, commonality, typicality, adequacy of representation, and the requirement of ascertainability necessary for class certification under Rule 23(a).  Am. Compl. ¶¶ 66-76.  *See* Fed. R. Civ. P. 23(a).

<u>*The Plaintiffs' Memorandum in Support of Class Certification*</u>

By this Class Certification Motion, the Plaintiffs request an order "[p]ursuant to Bankruptcy Rule 7023 and Federal Rule of Civil Procedure 23 . . . certifying a class in this proceeding."  Class Cert. Mot. ¶ 1.  They seek certification of both an injunctive relief class pursuant to Rule 23(b)(2), and a damages class pursuant to Rule 23(b)(3).  Class Cert. Mem. at 1. *See* Fed. R. Civ. P. 23(b)(2), (b)(3).  They argue that "[i]t is well-established that an action may be certified under more than one of Rule 23(b)'s provisions."  Class Cert. Mem. at 16 (citing *Sykes v. Mel S. Harris & Assoc., LLC*, 780 F.3d 70, 99 (2d Cir. 2015); *Merino v. Beverage Plus Am. Corp.*, 2011 WL 3739030, at \*2 (S.D.N.Y. Apr. 12, 2011)).

Notably, the Plaintiffs' proposed classes in the Class Certification Memorandum are broader than those initially described in the Amended Complaint.  In the Class Certification Motion, the Plaintiffs propose that each class would consist of all:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mem. at 15.  And they state that this proposed class satisfies the numerosity, typicality, adequacy of representation, commonality, and ascertainability requirements of Rule 23(a).  Class Cert. Mem. at 16.

The Plaintiffs argue that they have met the prerequisite of numerosity because "[t]he

numerosity requirement is met when 'the class is so numerous that joinder of all members is impracticable.'"  Class Cert. Mem. at 17 (quoting Fed. R. Civ. P. 23(a)(1)).  And they argue that they need not prove the exact size nor the identity of class members to satisfy the numerosity requirement.  Class Cert. Mem. at 17 (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Ferrer v. N.Y.C. Dep't of Ed.*, 2019 WL 2511874, at *4 (E.D.N.Y. June 12, 2019)).  Thus, according to the Plaintiffs, "numerosity is easily satisfied" because "the number of people who received direct-to-consumer loans for which Defendants did not receive certification that such loans were within the cost of attendance exceeded 31,000."  Class Cert. Mem. at 18.

The Plaintiffs argue that the prerequisite of commonality is similarly met because the Plaintiffs and other Putative Class Members' claims arise from Navient's uniform course of conduct with respect to its policies, practices, and actions.  They assert that "plaintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'"  Class Cert. Mem. at 19 (quoting 5 James Wm. Moore et al., Moore's Federal Practice, § 23.23[2] (Matthew Bender ed., 3d ed. 2002)).  Here, the Plaintiffs state, each putative class member received a loan from Navient, and Navient did not obtain certification from the relevant educational institution that the loan did not exceed the "cost of attendance."  Class Cert. Mem. at 19.  And they assert that after the entry of the Class Members' bankruptcy discharge orders, Navient made no effort to determine whether the loans were within the "cost of attendance" – and thus excluded from the class member's bankruptcy discharge – before resuming collection.  *Id*.  The Plaintiffs also argue that another common question is Navient's liability for additional damages, including punitive damages and an award of attorney's fees.  Class Cert. Mem. at 20.

The Plaintiffs argue that typicality, which focuses on claims or defenses, is satisfied here

because Navient committed the same wrongful acts in the same manner against each Putative

Class Member, and that each member would make similar legal arguments to establish Navient's

liability.  Class Cert. Mem. at 20-21.  The Plaintiffs state that the "Defendants' practice of

collecting on such debts, knowing that they did not meet the terms of § 523(a)(8)(B), uniformly

applies to every member of the class, and each member of the class has suffered exactly the same

type of harm as Plaintiffs."  Class Cert. Mem. at 21.

And the Plaintiffs argue that the class is adequately represented because their counsel is

qualified, as they have represented previous class actions and have investigated issues relating to

this type of litigation, and there are no conflicts between the class members.  Class Cert. Mem. at

22.  They argue that the Plaintiffs and the Putative Class Members "share the common interest of

obtaining a judicial resolution regarding the unlawfulness of Defendants' policies, an order

enjoining Defendants' wrongful conduct, restitution of funds paid on discharged debts and an

order setting damages based upon the common harm to class members."  *Id*.

The Plaintiffs state that ascertainability only requires them to show that the class is not

"'indeterminate in some fundamental way,'" and instead, that the class can be defined by using

"'objective criteria that establish a membership with definite boundaries,'" and "does not require

a plaintiff to prove at certification stage that it is 'administratively feasible' to determine the

class."  Class Cert. Mem. at 23 (quoting *In re Petrobras Sec. Litig.*, 862 F.3d 250, 264, 269 (2d

Cir. 2017)).  And the Plaintiffs argue that there is a mechanism for distinguishing between

injured and uninjured borrowers, by reference to Navient's own records.  This is because those

records show every loan made to every debtor, including data indicating whether the loan was

certified by an educational institution as being within the "cost of attendance."  Class Cert. Mem.

at 24.

The Plaintiffs also argue that "[e]very direct-to-consumer loan that was subject to discharge was presumptively discharged because Defendants never proved the loans were exempt from discharge." Class Cert. Mem. at 24 (citing *Renshaw v. Renshaw*, 223 F.3d 82, 86 (2d Cir. 2000)). And they point out that if Navient seeks to exclude some debtors from the class based on a showing that their loans are within the "cost of attendance," it can present evidence as to those debtors' loans – and if it is established by review of the relevant records that particular debtors do not meet the class definition, they can be excluded from the class. Class Cert. Mem. at 24. That is, borrowers who do not belong in the class can be identified and excluded by review of information available through an objective, ministerial review rather than an arduous individual inquiry. Class Cert. Mem. at 25-26. Also, they add that Navient is responsible for any uncertainty resulting from its failure to certify the "cost of attendance" with the educational institutions, and it "cannot avoid class-wide liability based upon uncertainties created by [its] own conduct." Class Cert. Mem. at 26.

The Plaintiffs argue that because each of the elements of Rule 23(a) is met, the Court should certify a class under both Rule 23(b)(2), for injunctive relief, and Rule 23(b)(3), for damages. They argue that they satisfy the requirements of Rule 23(b)(2) to certify a class for injunctive and declaratory relief because Navient engaged in exactly the same conduct with respect to each of the Putative Class Members and should be permanently enjoined from collecting on those loans and from collecting on any debt that exceeds the "cost of attendance" that is discharged in the future. Class Cert. Mem. at 28. And the Plaintiffs argue that certification of a damages class under Rule 23(b)(3) is appropriate, as there are common questions of law or fact that predominate over any questions affecting individual members. *Id*. They assert that "[p]redominance is satisfied 'if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues

subject only to individualized proof.'"  Class Cert. Mem. at 29 (quoting *Catholic Healthcare*

*West v. U.S. Foodservice Inc.* (*In re U.S. Foodservice Inc. Pricing Litig.*), 729 F.3d 108, 118 (2d

Cir. 2013)).  And they state that the focus is on common legal and factual questions regarding the

unlawfulness of Navient's uniform practice of collecting on discharged direct-to-consumer loans

that exceed the "cost of attendance."  Class Cert. Mem. at 30.  They note that to the extent that

the question of "cost of attendance" is an individualized inquiry, that should not defeat

predominance because the "cost of attendance" at a class member's particular institution can be

determined by an objective inquiry concerning the applicable figure at each school.  Class Cert.

Mem. at 31-32.

The Plaintiffs also argue that "[t]he Court should certify the Class under Rule 23(b)(3) if

it finds that a 'class action is superior to other available methods for fair and efficient

adjudication of the controversy.'"  Class Cert. Mem. at 35 (quoting Fed. R. Civ. P. 23(b)(3)).

And here, the Plaintiffs argue that "[n]ot only are common issues likely to be dispositive of this

case, but the high costs of litigation relative to each class member's damages and the economic

status of class members, who have all gone through personal bankruptcy, make it unlikely that

many class members will pursue individual legal actions."  Class Cert. Mem. at 35.  They assert

that like the defendant in *Conley v. Sears, Roebuck & Co.*, Navient should be held accountable

for its illegal conduct, which has persisted for some fourteen years.  Class Cert. Mem. at 37

(citing *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998)). And the Plaintiffs argue

that constitutionality adequate notice can be provided to Putative Class Members using the last

known contact information for each Putative Class Member according to Navient's records, and

by publication on a website to be established by the Plaintiffs' counsel. Class Cert. Mem. at 37.

Finally, the Plaintiffs argue that the Court has jurisdiction to adjudicate a national class and should exercise that jurisdiction. Class Cert. Mem. at 38. They argue that this Court has subject matter jurisdiction to consider claims asserted on behalf of a putative nationwide class. They note that the enforcement of the discharge injunction is a core bankruptcy matter that arises under Bankruptcy Code Sections 727, 524, and 105, and is indisputably within the bankruptcy court's jurisdiction. *Id.* And they argue that "subject matter jurisdiction is not lost or limited merely because the action is brought as a class action," which is specifically allowed by the Bankruptcy Rules. *Id.* They point out that this jurisdiction is consistent with "the fact that both the bankruptcy court and the district court in two of the seven nationwide class actions has already approved of nationwide settlements." Class Cert. Mem. at 38 (citing cases).

And the Plaintiffs assert that unlike jurisdiction grounded in the *in rem* nature of some aspects of a bankruptcy case, their claims, like the claims addressed in *In re Haynes*, "are concerned with the collection of *in personam* debts and have nothing to do with the debtor's estate or *in rem* jurisdiction." Class Cert. Mem. at 39 (citing *In re Haynes*, 2014 WL 3608891, at *6-7 (Bankr. S.D.N.Y. July 22, 2014)). They argue that the bankruptcy court's jurisdiction under 28 U.S.C. § 1334(e), and the administration of the property of the estate is not implicated here because this is an action to "'protect a statutory right prohibiting collection of *in personam* claims against the members of the debtor class that arose pre-bankruptcy.'" Class Cert. Mem. at 39 (quoting *In re Haynes*, 2014 WL 3608891, at *7).

The Plaintiffs urge that here, the bankruptcy court can entertain a nationwide class, for many of the same reasons that other courts, including courts within and outside this Circuit, have reached the same conclusion, and describe the question as "a matter of comity not a question of

jurisdiction." Class Cert. Mem. at 39 (citing *Gray v. Petoseed Co*., 985 F. Supp. 625, 632-34 (D.S.C. 1996)). They argue that several courts have found that statutory injunctions – like the bankruptcy discharge injunction – are "fundamentally different from other specific, judge-crafted injunctions or orders and bankruptcy courts do not lack subject matter jurisdiction to enforce them." Class Cert. Mem. at 41 (citing cases). And they point to the bankruptcy court's observation in *In re Haynes* that "'[t]here is . . . a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in § 524(a) to support the discharge.'" Class Cert. Mem. at 41 (quoting *In re Haynes*, 2014 WL 3608891, at *8).

The Plaintiffs also dispute that the Fifth Circuit's decision in *Crocker v. Navient Solutions, LLC* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019), is relevant to the matters before the Court in this Class Certification Motion, for several reasons. They first point out that *In re Crocker* does not address the question of class certification. Class Cert. Mem. at 45. They also argue that the decision misinterprets the consequence of the 1978 Bankruptcy Act in the context of Bankruptcy Rule 4004(f), which permits a party to register and enforce a discharge order in a district other than the district that entered it, and they suggest that the effect of *In re Crocker* would be to invalidate that rule. Class Cert. Mem. at 45-46. And they note that *In re Anderson*, cited by the Fifth Circuit in *In re Crocker*, addressed whether arbitration is the appropriate forum to adjudicate an alleged discharge violation, not whether a court other than the issuing court could consider such a claim. Class Cert. Mem. at 46 (quoting *In re Crocker*, 941 F.3d at 216 (quoting *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 390-91 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 144 (2018)).

*Navient's Memorandum in Opposition to Class Certification*

Navient opposes the certification of a class, on several grounds.  At the outset, it argues that the Court lacks the authority to enforce discharge orders issued outside of the Eastern District of New York.  Opp. at 5.  It argues that the bankruptcy discharge injunction pursuant to Section 524 is an individual, court-ordered injunction.  *Id*.  And it states that "[b]y omitting a private right of action for discharge-violation claims and codifying the discharge as having injunctive effect, Congress necessarily imposed on the discharge the usual rules under which all injunctions exist – including the well-established limitation that an injunction may only be enforced through a contempt proceeding before the issuing court."  Opp. at 7.

Navient also points to the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), where the Court observed that "'the statutes specifying that a discharge order "operates as an injunction," . . . bring with them the "old soil" that has long governed how courts enforce injunctions.'"  Opp. at 7 (quoting *Taggart*, 139 S. Ct. at 1801).  Navient also notes that in *In re Anderson*, 884 F.3d at 390, the Second Circuit observed that "'the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it.'"  Opp. at 7 (quoting *In re Anderson*, 884 F.3d at 391).  And it argues that "[c]ourts have described the limitation for finding contempt as jurisdictional . . . whether the plaintiff seeks contempt sanctions, declaratory relief, or both."  Opp. at 8 (citing cases).  Navient asserts that "[n]one of the Supreme Court, the Second Circuit, or other circuits has distinguished between bespoke injunctions crafted by a court and statutorily defined injunctions crafted by Congress and effected solely by entry of a court order."  Opp. at 9.  And Navient notes that the Fifth Circuit addressed this identical question in *In re Crocker* and determined that only the issuing court may enforce the discharge injunction.  Opp. at 10 (citing *In re Crocker*, 941 F.3d at 215).  Likewise, it points to the Eleventh Circuit's decision in

*Alderwoods*, which came to the same conclusion as the Fifth Circuit in *In re Crocker*.  Opp. at 11 (citing *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 971 (11th Cir. 2012)).

In addition, Navient argues that the Plaintiffs' proposed class definition renders the class uncertifiable.  Opp. at 12.  It argues that the Plaintiffs impermissibly seek certification of a class that exceeds the class definition in their Amended Complaint.  Navient urges that "[m]ultiple courts have held that such discrepancies are not permissible and have held plaintiffs to the class definition asserted in their complaint."  Opp. at 13 (citing cases).  And it argues that the class proposed in the Class Certification Motion "prejudices Defendants by the need for greater discovery after the case has been pending for years and the Complaint has already been amended once."  Opp. at 13.

Navient argues that the proposed class is not ascertainable because "the class criteria specifying that each class member receive 'private loans . . . which exceeded the cost of attendance . . . as defined in 26 U.S.C. § 221(d)' renders the class indefinite."  Opp. at 16.  It states that 26 U.S.C. § 221(d) contains a dozen factors that bear on a particular borrower's cost of attendance which vary according to the borrower's individual circumstances, as well as the various sources of potential costs that are not subject to a lending cap.  *Id.*  And it argues that, due to these various factors affecting an individual's cost of attendance analysis, a "mini-hearing" would be required to determine the cost of attendance for any particular Putative Class Member.  *Id.*  Navient also argues that administratively identifying the class members requires individualized inquiries because the "systems used to track loans are voluminous, disparate, and lack the ability to easily query and identify relevant information needed to ascertain the proposed class."  *Id.*  Navient states that such an individualized inquiry would be needed for the following criteria: borrower petition/discharge dates, district of bankruptcy, assessment of other loans held

by borrower, identification of cosigners, and contact information.  Opp. at 16-17.

Navient further argues that the proposed class is an impermissible fail-safe class.  It states that in order to ascertain who is a member of the proposed class, a determination as to liability would be required because "the proposed class incorporates only class members with 'discharged debts,' whose private loans Plaintiffs allege exceed a statutory cost of attendance at an eligible educational institution."  Opp. at 19-20.

Navient argues that the Plaintiffs' request for an injunctive class under Rule 23(b)(2) fails because such relief would be duplicative of the discharge injunction that the Plaintiffs and Putative Class Members have already received.  Opp. at 21.  As such, Navient states that granting further injunctive relief would be superfluous, as the discharge injunction prohibits creditors from attempting to collect prepetition debts that are discharged.  *Id*.  In that same vein, Navient argues that the Plaintiffs' request for a declaratory judgment is encompassed by the discharge injunctions and would not serve the essential purpose of a declaratory judgment.  Opp. at 24.  It argues that such a declaration would by necessity ignore the individualized borrower circumstances and usurp the authority of the issuing courts to determine any contempt remedy. *Id*.

Navient also argues that the Plaintiffs' claims for monetary relief cannot be certified in an injunctive class under Rule 23(b)(2) because "Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'"  Opp. at 26 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011)). It states that certification under Rule 23(b)(2) "would only work if 'plaintiffs [would] be automatically entitled to monetary remuneration once liability is established for the class," and the amount must "not [be] dependent in any significant way on the intangible, subjective

differences of each class member's circumstances.'"  Opp. at 26 (quoting *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 757 (5th Cir. 2010)).  And here, Navient argues that the monetary relief sought by the Plaintiffs is not "automatically recoverable" and "varies for each class member," including some for whom the "real relief" that is sought is necessarily – and not incidentally – monetary, as certain Putative Class Members have already paid off their loans and would not be affected by injunctive relief.  Opp. at 26.

Navient also argues that the individualized circumstances preclude class-wide injunctive relief under Rule 23(b)(2).  One such individualized circumstance, it argues, is each Putative Class Member's "cost of attendance."  According to Navient, a school's estimated "cost of attendance" does not represent a definitive cap on borrowing because each student's costs vary depending on their circumstances.  Opp. at 31.  And it argues that the Integrated Postsecondary Education Data System ("IPEDS") data is similarly unreliable because this data fails to include all elements that constitute "cost of attendance" under section 221(d)(1) of the Internal Revenue Code of 1986.  Opp. at 35.  Navient argues that "the applicable statute specifically authorizes case-by-case adjustment to an individual student's cost of attendance and expected contribution for a particular financial aid applicant."  Opp. at 36 (citing 20 U.S.C. § 1087tt(a)).

Navient argues that the Court cannot certify a damages class under Rule 23(b)(3) because "as the Supreme Court held in *Dukes*, what matters is not whether a dispute will generate common *questions*, but whether it will generate common *answers*."  Opp. at 39 (citing *Dukes*, 564 U.S. at 350).  And here, it argues, the significant individualized questions that preclude any class-wide finding of liability also preclude any finding that "common questions predominate, that any class action would be manageable or superior to individual actions, or that Plaintiffs are typical or adequate representatives of the putative class."  Opp. at 40.

Navient also argues that these individualized questions predominate over any common questions, and damages cannot be measured across the entire class. *Id*. It states that a common question is one in which the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to the genialized, class-wide proof. *Id*. It asserts that "'[c]ommon questions do not predominate if the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings.'" Opp. at 41 (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014)). In this case, it asserts that the individualized defenses cannot be defeated with class-wide proof, which further demonstrates that common questions do not predominate. Opp. at 41.

Navient also argues that class resolution is not superior to other methods of fair and efficient adjudication and, therefore, does not meet the second prong of Rule 23(b)(3). Opp. at 42. It states that the individualized circumstances of each borrower demonstrate the need for separate actions. Opp. at 43. And it argues that "concentrating nationwide litigation in a single forum is not desirable in part because each individual judge who issued a discharge order retains the paramount interest in assessing whether a discharge violation occurred and, if so, the appropriate remedy." *Id*.

Finally, Navient argues that the Plaintiffs are not typical or adequate class representatives. It asserts that "'[c]lass representatives must generally 'possess the same interest and suffer the same injury' as the unnamed class members." Opp. at 44 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). And it states that "'[a] named representative may be inadequate if his or her testimony about the claims in dispute or the representative's role in the litigation lacks 'credibility.'" Opp. at 44 (quoting *CE Design Ltd. v. King Architectural*

*Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011)).  Navient asserts that each of the Plaintiffs is

atypical for a number of reasons, including that each executed a class-action waiver, and each

has different loan forms even among their Tuition Answer Loans.  Opp. at 45-46.  And it argues

that inherent credibility issues and the Plaintiffs' reliance on "counsel's unfettered discretion in

conducting this litigation" prevents the Plaintiffs from acting as adequate class representatives.

Opp. at 46.

*The Plaintiffs' Reply in Further Support of Class Certification*

  The Plaintiffs reply that the class is ascertainable by reference to objective criteria.  They

state that Navient has provided them with a list of private loans taken out by borrowers who filed

bankruptcy petitions and received a discharge after October 1, 2005, of which "approximately

57,000 are direct-to-consumer loans made to approximately 32,000 individuals."  Reply at 3.

They argue that each of the 57,000 loans that exceeds the "cost of attendance" is discharged as a

matter of law and that it is Navient's burden to show that each of these loans comes within the

"cost of attendance."  Reply at 3-4.  And the Plaintiffs state that Navient does not deny that it can

determine the "cost of attendance" for each student.  They assert that Navient can determine

from its own records each Putative Class Member's date of discharge, all sums received from

that Putative Class Member after the date of discharge, and whether that Putative Class

Member's loan exceeded the "cost of attendance."  Reply at 10.  The Plaintiffs also argue that

Navient possesses the relevant data with respect to each class member.  *Id.*  They dispute that

finding borrower discharge information would be too "laborious" because "Defendants'

computer system automatically sends letters to borrowers that they must resume payment on

their loans sixty (60) days after Defendants receive notice of each borrower's discharge."  Reply

at 11.  And they argue that even if Navient's record-keeping is so inadequate that it would have

to conduct individual loan level reviews, Navient would still only need to find the objective data in its files and would not need the testimony of Putative Class Members. *Id.*

The Plaintiffs also reply that this Court has jurisdiction over a national class. They rely on *In re Golden* to assert "that a debtor can raise a violation of § 524 (and of the discharge order) by way of an adversary proceeding and need not file a motion for contempt." Reply at 12 (citing *Golden v. JPMorgan Chase Bank* (*In re Golden*), 596 B.R. 239, 272-73 (Bankr. E.D.N.Y. 2019)). They argue that Rule 23 was created for situations such as this, "to ensure that similarly-situated individuals are treated the same and to prevent a defendant from being subject to inconsistent directives from different courts." Reply at 13. And they argue that "the fact that different case law precedents may be applied in different circuits is not a reason to deny class certification" because that routinely happens in national class actions and "if a court has jurisdiction it applies the precedents of its own circuit." Reply at 14.

And the Plaintiffs reply that they are entitled to a declaratory judgment, as this Court has already found. Reply at 15 (citing *In re Homaidan*, 596 B.R. at 100-01). They assert that the question as to whether the class is entitled to a declaration that all class members' loans are discharged, and class members are entitled to restitution of all funds paid on discharged debts as well as an injunction enjoining future collection, is a different question than whether Navient should be held in contempt. Reply at 15. As such, the Plaintiffs argue that the declaratory judgment is not somehow surplusage or duplicative of any other claim but rather "'will serve a useful purpose in clarifying and settling the legal relations in issue.'" Reply at 15-16 (quoting *Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971)).

The Plaintiffs further reply that the common questions in this case predominate over individual issues. They argue that the common questions, as set forth in their motion for

summary judgment, include:

> [I]s a private loan that exceeds the cost of attendance dischargeable?; can a boilerplate certification make a loan non-dischargeable even if it exceeds the cost of attendance?; does signing a promissory note with Defendants' boilerplate certification constitute a "fraud" on Defendants?; does the fact that borrowers continue to make payments after being notified by Defendants that their loan is non-dischargeable constitute a 'voluntary' payment?; and finally, is the class guilty of laches because class members have not challenged the dischargeability of their debts until now?

Reply at 16.

And they assert that Navient's characterization of the individualized issues is irrelevant. According to the Plaintiffs, "class membership is determined by three objective facts: (1) what was the cost of attendance for each individual student; (2) what was the amount of other loans, grants or scholarships; and (3) what was the amount of Defendants' direct-to-consumer loan?" Reply at 17.

The Plaintiffs reply that Navient's arguments that the Plaintiffs are not typical and adequate class representatives are simply incorrect. They argue that the class action waivers in the loan documents, which are part of arbitration clauses, do not apply because, as this Court already determined, that arbitration agreement is not enforceable here. Reply at 19. They also argue that Navient presents no evidence that the Plaintiffs' loan documentation is in any way materially different from the documentation used in connection with loans to other class members. And they argue that the standard for determining the adequacy of a class representative is not whether the named representative is familiar with the complaint or discovery requests. Reply at 20. Rather, "'[i]f the representatives have a general knowledge of the case, communicate with class counsel, and show a willingness to participate in the litigation, such as presenting declarations and appearing for depositions, as Plaintiffs have done here, that is clearly adequate.'" Reply at 20-21 (citing *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30, 57-

58 (E.D.N.Y. 2016)).

Finally, the Plaintiffs reply to Navient's argument that the class is a "fail-safe class." They argue that where classes are defined by objective criteria, as they are here, there is no fail-safe issue.  Reply at 22.  The Plaintiffs state that the objective criteria defining the class are as follows: "individuals who attended, or intended to attend, Title IV institutions; who received private loans from the Defendants that exceeded the cost of attendance; who obtained bankruptcy discharges after October 1, 2005; who were subsequently subject to Defendants' acts to collect on the loans; and who have not reaffirmed their loans."  Reply at 21.  And, according to the Plaintiffs, "[s]ince the class here is defined by ascertainable, objective facts and not legal conclusions, it is not a fail-safe class."  Reply at 23.

<u>Navient's Letter Regarding Supplemental Authority</u>

On October 1, 2021, Navient filed a letter, bringing to the Court's attention a decision of the District Court in *DiDonato v. GC Servs. Ltd. P'ship*, 2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021).  October 1, 2021 Letter, ECF No. 305.

The *DiDonato* court denied class certification for a class based on alleged Fair Debt Collection Practices Act violations, finding in part that the proposed class representative was not typical of the class because there were "serious questions as to whether Plaintiff is a member of the proposed class."  *DiDonato*, 2021 WL 4219504, at *4.  These questions included whether Mr. DiDonato's loans exceeded the "cost of attendance" and the effect of certain certifications contained in his loan applications and promissory notes.  *Id.*

In finding that individual issues predominated over common issues, the *DiDonato* court also suggested that each putative class member would require a "'mini-hearing'" to determine dischargeability, involving factual determinations as to:

> (1) the cost of attendance, (2) whether the school was a Title IV institution at the time of origination, (3) whether the loan was made under a program funded in part by a nonprofit or governmental unit, (4) whether the Plaintiff filed for bankruptcy and the subject student loans were subject to those proceedings and (5) the outcome of those proceedings, including whether they resulted in a discharge order or a dismissal.

*DiDonato*, 2021 WL 4219504, at *7. Notably, the court also suggested that the stated purpose of the loans, any borrower certifications, and the borrower's "understanding of the purpose of the loan and the loan documents he or she signed" were relevant considerations. *Id*.

<u>*The Plaintiffs' Letter in Response to Navient's Supplemental Authority*</u>

On October 5, 2021, the Plaintiffs filed a letter with the Court in response to Navient's submission of supplemental authority. In their letter, the Plaintiffs state that they "believe that this decision was wrongly decided for several reasons." October 2, 2021 Letter, ECF No. 306, at 1. The Plaintiffs point to the *DiDonato* court's reliance on Mr. DiDonato's certification and acknowledgement and suggest that "[t]he underlying premise of this reasoning is incorrect" because a layperson would not have the ability to certify as to the technical meaning of "qualified education loan," "cost of attendance," or "qualified education expenses" under the Bankruptcy Code, the Internal Revenue Code, and the Higher Education Act. October 2, 2021 Letter, at 1-2.

Next, the Plaintiffs state that "to the extent that the boilerplate asserts that the loan is a 'qualified education loan as described in § 221(d)(1) of the Internal Revenue Code of 1996, 26 U.S.C. § 221(d)(1), and that therefore this loan is not dischargeable in bankruptcy,' such language is legally irrelevant to the issue of dischargeability" because it is a "pre-bankruptcy waiver of dischargeability and is against public policy." October 2, 2021 Letter at 2 (citing *In re Golden*, 596 B.R. at 267; *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779-80 (Bankr. N.D.N.Y. 2008)). The Plaintiffs assert that dischargeability is a question of fact and that

"[t]he boilerplate language in the promissory note cannot convert a dischargeable loan into a nondischargeable one."  October 2, 2021 Letter, at 2.

The Plaintiffs also state that the *DiDonato* court's holding that it could not certify the class because class members could not opt out was "factually incorrect" and that, not only was Mr. DiDonato seeking to certify an opt-out class, but also that here, the Plaintiffs, too, seek to certify an opt out class.  *Id*.  And the Plaintiffs further dispute the *DiDonato* court's finding that the individual issues present here would "require a minitrial."  *Id*.  They assert that "[e]ach individual student's cost of attendance and whether they attended a Title IV school are all objective facts that can be determined from Navient's own records and from other sources" and that "[n]one of the individual issues involves degrees of harm or intent or any other personalized measure, like a class member's reliance."  *Id*.  The Plaintiffs suggest that the *DiDonato* court prioritized the quantity of individual issues over the quality of such issues and "ignored the substantial caselaw to the effect that individual issues should not defeat class certification where common issues predominate."  October 2, 2021 Letter, at 2-3.

Finally, the Plaintiffs note that "without any analysis at all, the *DiDonato* court concluded that the class definition proposed in that case constituted a fail-safe class" and suggest that this was in error because that case, as this one, "was defined using objective, factual criteria" and not legal conclusions.  October 2, 2021 Letter, at 3.  The Plaintiffs submit that the appropriate remedy in such a case is to redefine the class, rather than to deny certification.  *Id*.

*The Plaintiffs' Letter Regarding Supplemental Authority*

On June 10, 2022, the Plaintiffs filed a letter to bring to the Court's attention a then as-yet unpublished decision in *Anderson v. Credit One Bank* (*In re Anderson*), now published as *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 641 B.R. 1 (Bankr. S.D.N.Y. 2022).  June

10, 2022 Letter, ECF No. 331.  In that decision, the bankruptcy court certified a nationwide class in an action to enforce the bankruptcy discharge.

The Plaintiffs noted that, in *In re Anderson*, the court observed:

When the same, systematic violation, for the same systematic reason, is alleged with respect to the breach of many identical, "not detailed" discharge orders, a court's application of that objective standard would not necessarily undercut "judicial process," jurisdictionally or otherwise. It would instead fulfil Congress' desire to protect a crucial pillar "central to the statutory scheme" and the bankruptcy system.

June 10, 2022 Letter, at 1 (quoting *In re Anderson*, 641 B.R. at 19 (quoting *Taggart*, 139 S. Ct. at 1802; and citing *In re Ajasa*, 627 B.R. 6, 28-29 (Bankr. E.D.N.Y. 2021)).

*The Plaintiffs' Supplemental Memorandum in Support of Class Certification*

On August 5, 2022, the Plaintiffs filed a Supplemental Memorandum in further support of the Class Certification Motion.  They argue that the class is ascertainable despite Navient's claims about its records, that common issues predominate even considering common defenses, and that the Court has jurisdiction to certify a nationwide class.  Supp. Mem. at i.

The Plaintiffs argue that the class is ascertainable and the inadequacy of Navient's records has no bearing on this issue.  Supp. Mem. at 1.  The Plaintiffs state that Navient argues that the class is not ascertainable because reviewing individual records would be difficult.  But, they state, ascertainability is not a demanding standard.  Rather, "'it is designed only to prevent certification of classes whose membership is *actually indeterminable*.'"  Supp. Mem. at 1 (quoting *Harte v. Ocwen Fin. Corp.*, 2018 WL 1830811, at *31 (E.D.N.Y. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018)).  The Plaintiffs argue that membership of the class need only be ascertainable at some point in the case – not necessarily prior to class certification.  Ascertainability is satisfied if a class is "'"defined using objective criteria that establish membership with definite boundaries."'"  Supp. Mem. at 1

(quoting *Headly v. Liberty Homecare Options, LLC*, 2022 WL 2181410, at *17 (D. Conn. June 16, 2022) (quoting *In re Petrobras Sec. Litig.*, 862 F.3d at 259)).

The Plaintiffs state that Navient's argument that individual records review precludes ascertainability is "simply wrong" and "confuses the parties' respective burdens."  Supp. Mem. at 1.  At the certification stage, the Plaintiffs argue, their burden is to meet the low threshold of showing that a class can, at some point in the case, be determined by the application of objective criteria.  *Id*.  They argue that they have met their burden and that "membership can be determined through objective criteria contained either in Defendants' records and other records Defendants could obtain (and should have obtained) from public sources or third parties."  Supp. Mem. at 2 (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 113 (S.D.N.Y. 2012)).  The Plaintiffs also argue that the class is objective because it is composed of the thousands of borrowers with loans exceeding the "cost of attendance" who received bankruptcy discharges and were subjected to Navient's continued attempts to collect on the discharged loans.  That is, the Plaintiffs state, the objective criteria that will determine the contours of the class are: "(1) whether borrowers attended or intended to attend Title IV institutions; (2) received private loans owned or served by Defendants that exceeded the cost of attendance as defined in 26 U.S.C. § 221(d); (3) received a discharge order from a U.S. bankruptcy court after January 1, 2005; and (4) have not reaffirmed their loans."  Supp. Mem. at 2.

The Plaintiffs argue that Navient, as a creditor, bears the burden of proving by a preponderance of the evidence that any particular loan is excepted from discharge.  Supp. Mem. at 3 (citing *In re Ranciato*, 638 B.R. 275, 286 (Bankr. D. Conn. 2022), *reconsideration denied*, No. 18-31337, 2022 WL 877198 (Bankr. D. Conn. Mar. 24, 2022)).  While Navient may show that an individual borrower is excluded from the class because their loan was within the "cost of

attendance," its inability to make such showing based on its own records does not render the class unascertainable.  Supp. Mem. at 3 (citing *Harte*, 2018 WL 1830811, at *32, and citing Class Cert. Mem. at 26-28).  The Plaintiffs argue that Navient cannot hide behind its failure to establish that borrowers' loans are qualified educational loans, causing it to collect on thousands of discharged loans, to argue that the class of borrowers harmed is somehow not ascertainable. Supp. Mem. at 3-4.  And the Plaintiffs note that "exceptions to the bankruptcy discharge are narrowly construed."  Supp. Mem. at 3 (citing *Mazloom v. Navient Solutions, LLC* (*In re Mazloom*), 2022 WL 950932 (Bankr. N.D.N.Y. Mar. 29, 2022)).  They argue that, because creditors bear the burden to prove nondischargeability, the burden is on Navient to "come forward and show that an individual borrower is excluded from the class because his or her loan did not exceed the cost of attendance," and Navient's potential inability to do so based on its records does not bear on ascertainability.  Supp. Mem. at 3 (citing *Harte*, 2018 WL 1830811, at *32).

The Plaintiffs assert that common issues predominate, even considering the affirmative defenses raised by Navient, such as defenses arising from boilerplate certifications about the "cost of attendance" contained in certain promissory notes.  Supp. Mem. at 4.  They argue that "'the issue of predominance is "more qualitative than quantitative, and must account for the nature and significance of the material common and individual issues in the case.'"  Supp. Mem. at 4 (quoting *Iowa Pub. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 2022 WL 2829880, at *22 (S.D.N.Y. June 30, 2022); *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *10 (E.D.N.Y. Nov. 10, 2021)).  And they point out that courts, in considering whether common or individual issues predominate over a proposed class, "'must consider the relative complexity of those issues.'"  Supp. Mem. at 4 (quoting *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2019

WL 652841, at *5 (S.D.N.Y. Feb. 15, 2019) (citing *In re Petrobras Sec. Litig.*, 862 F.3d at 271));

and citing *Mendez v. MCSS Rest. Corp.*, 2019 WL 2504613, at *11 (E.D.N.Y. June 17, 2019)).

The Plaintiffs further point out that "[p]redominance is satisfied '"if resolution of some of

the legal or factual questions that qualify each class member's case as a genuine controversy can

be achieved through generalized proof, and if these particular issues are more substantial than the

issues subject only to individualized proof."'"  Supp. Mem. at 4-5 (quoting *In re U.S.*

*Foodservice Inc. Pricing Litig.*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*,

620 F.3d 121, 131 (2d Cir. 2010))).  Here, the Plaintiffs assert, there are at least five common

questions which "can be answered by looking to common classwide proof": (1) whether private

loans that exceed the cost of attendance are dischargeable; (2) whether a boilerplate certification

can make a loan nondischargeable if it exceeds the cost of attendance; (3) whether signing a

promissory note containing such a boilerplate certification constitutes "fraud"; (4) whether

certain payments are "voluntary"; and (5) whether the defense of laches applies.  Supp. Mem. at

5 (citing Defendants' Response to Plaintiffs' Motion to Supplement the Record, ECF No. 281 at

16-17; February 18, 2020 Hearing Transcript, ECF No. 196 at 29-35; *McRobie v. Palisades*

*Acquisition XVI, LLC*, 2022 WL 1657226, at *8 n.10 (W.D.N.Y. Mar. 4, 2022)).

They also assert that whether Navient's policies and practices violated Section 524 "is a

common question that is resolvable by looking only at *common proof*."  Supp. Mem. at 5

(emphasis in original).  The Plaintiffs argue that similarly, whether Navient's policy of not

verifying whether a loan was within the "cost of attendance" violates Section 524 is a common

question that can be answered by considering common evidence and proof.  Supp. Mem. at 5.

The Plaintiffs also argue that the defenses that Navient identifies as individualized are

actually matters that are common to the entire class.  Specifically, they state that the effect of

Navient's policy of seeking certifications from individual borrowers is subject to class-wide resolution.  Supp. Mem. at 5-6.  Additionally, the Plaintiffs state that "it is well-established that individualized issues of damages do not defeat predominance."  Supp. Mem. at 7 (citing *Pryce v. Progressive Corp.*, 2022 WL 969740, at *8 (E.D.N.Y. Mar. 31, 2022)).  While the Plaintiffs acknowledge that "some inquiry may be necessary to determine Class Members' individual damages," they assert that this does not change the fundamentally systematic nature of the dispute, which arose "out of a common course of conduct by Defendants" directed to the entire class.  Supp. Mem. at 7 (citing *Sykes*, 780 F.3d at 81-82; *Barrett v. Wesley Fin. Grp., LLC*, 2015 WL 12910740, at *7 (S.D. Cal. Mar. 30, 2015)).  And the Plaintiffs assert that, while individual damages trials would not defeat class certification, such individual damages trials are unnecessary here, where the relevant data "can all be determined from Navient's files."  Supp. Mem. at 8.

The Plaintiffs disagree that only the court that issued the discharge injunction has the ability to enforce it, arguing first that Navient's argument does not apply to the declaratory relief that they seek, and second that Navient is incorrect as to their claims for contempt.  *Id.*  They point to seven decisions within the Second Circuit, including two from this Court, that have held that bankruptcy courts have jurisdiction over national classes to address Section 524 violations.  *See Bruce v. Citigroup Inc.* (*In re Bruce*), Adv. Pro. No. 14-08224, Dkt. No. 135 (Bankr. S.D.N.Y. July 22, 2021) (Drain., J.); *In re Ajasa*, 627 B.R. 26 (Stong, J.); *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 869 (Bankr. E.D.N.Y. 2021) (Stong, J.); *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), Adv. Pro. No. 15-08214, Dkt. No. 15 (Bankr. S.D.N.Y. May 14, 2015) (Drain., J.); *Credit One Fin. v. Anderson* (*In re Anderson*), 550 B.R. 228 (S.D.N.Y. 2016) (Roman, J.) (denying appellant's request for leave to appeal order denying motion to strike

national class allegations); *Credit One Fin. v. Anderson* (*In re Anderson*), No. 7:15-cv-04227, Dkt. No. 57 (S.D.N.Y. 2016) (Roman, J.) (denying motion for leave to appeal district court's previous order denying leave to appeal); *Echevarria v. Bank of Am. Corp.* (*In re Echevarria*), Adv. Pro. No. 14-08216, Dkt. No. 83 (Bankr. S.D.N.Y. Apr. 14, 2015) (Drain, J.); *In re Haynes*, 2014 WL 3608891, at *6-9 (Drain, J.).  Supp. Mem. at 8-9.

The Plaintiffs also point out that five other nationwide class actions for declaratory relief for violations of Section 524 have already been certified and finally approved by the district court.  *See Anderson v. Capital One Bank (USA), N.A.* (*In re Anderson*), 19-cv-03981-NSR, Dkt. No. 20 (S.D.N.Y. Sept. 11, 2019); *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 18-cv-03307-VB, Dkt. No. 19 (S.D.N.Y. Aug. 24, 2018); *Echevarria v. Bank of America Corp.* (*In re Echevarria*), 17-cv-08026-VB, Dkt. No. 23 (S.D.N.Y. Mar. 14, 2018); *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 1:21-cv-07085 (E.D.N.Y. April 13, 2022); *Belton v. GE Capital Retail Bank* (*In re Belton*), 7:21-cv-09492, Dkt. No. 17 (S.D.N.Y. Feb. 10, 2022).  Supp. Mem. at 9.

And the Plaintiffs cite to various prior cases of nationwide classes seeking to enforce Section 524, including *Anderson v. Credit One Bank, N.A.* (*In re Anderson*).  In particular, the Plaintiffs note that in *In re Anderson*, the court stated that "the proposition that, '[s]anctions for violations of an injunction are . . . generally administered by the court that issued the injunction,' is – as indicated by Justice Ginsburg's use of the word "generally" in *Baker* – not a jurisdictional limitation.'"  Supp. Mem. at 9 (quoting *In re Anderson*, 641 B.R. at 16-17 (quoting *Baker v. General Motors Corp.*, 522 U.S. 222, 236 (1998))).  And the Plaintiffs argue that, based on the use of the word "generally," the certification of a nationwide damages class for violations of Section 524 is not an issue of jurisdiction, but of discretion.  Supp. Mem. at 9 (citing *In re Anderson*, 641 B.R. at 16-17 (quoting *Baker*, 522 U.S. at 236)).  They state that "'whether a

party's systemic actions violated numerous, standard discharge orders and the statutory injunction is consistent with the Constitution's requirement of uniformity in enforcement of the Bankruptcy Code, and Congress' aim to protect a right that is central to the statutory scheme and bankruptcy system.'"  Supp. Mem. at 10 (quoting U.S. Const., Art. I, § 8, cl. 4; *Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1772 (2022); *In re Ajasa*, 627 B.R. at 28-29).  And they note that "[t]he recent decisions that have dealt with the issue have treated it as one of discretion, as opposed to jurisdiction," as in *In re Crocker*, where the Fifth Circuit "rejected the Eleventh Circuit's jurisdictional based approach and found that the 'enforcement rules for injunctions' emanate from 'respect for the judicial process,' a discretionary consideration."  Supp. Mem. at 9 (quoting *In re Crocker*, 941 F.3d at 216).

Finally, the Plaintiffs observe that this Court distinguished between statutory and "individually crafted" injunctions in *Geltzer v. Brizinova* (*In re Brizinova*), 565 B.R. 488 (Bankr. E.D.N.Y. 2017), when it found that "sometimes it may not be feasible for the parties to return to the courtroom of the issuing judge."  Supp. Mem. at 9-10.  The Plaintiffs argue that the statutory injunction, "embodied in a form order that is exactly the same across the country and which Bankruptcy Courts cannot change," is enforceable through Section 105, and that it is within the purposes of the Bankruptcy Code and the Constitution to address a party's "systemic actions" through the procedural tool of a nationwide class.  Supp. Mem. at 10.

### *Navient's Supplemental Memorandum in Opposition to Class Certification*

On August 19, 2022, Navient filed its Supplemental Opposition.  In the Supplemental Opposition, Navient addresses the Plaintiffs' three arguments regarding nationwide jurisdiction, the predominance of common issues, and ascertainability of the class.  Supp. Opp. at 2.  Navient argues that "[n]o class should be certified on this record," but if the Court does certify a class, it

should limit the class to Tuition Answer Loan borrowers who received bankruptcy discharges in the Eastern District of New York.  *Id.*

Navient argues that the decisions cited by the Plaintiffs involve bankruptcy or district courts.  Navient argues the Second Circuit "itself, in four separate ways, has cast substantial doubt on whether a bankruptcy court has the nationwide authority."  Supp. Opp. at 3. Specifically, Navient states that "'violations of this court-ordered [discharge] injunction are enforceable only by the bankruptcy court and only by a contempt citation.'"  Supp. Opp. at 3 (quoting *In re Anderson*, 884 F.3d at 391).  It argues that the Second Circuit has "recognized that the reasoning from *Anderson* is 'anathema to a nationwide class action' for discharge violations." Supp. Opp. at 3 (quoting *Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612, 617 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1513 (2021)).

Navient argues that the Second Circuit in *In re Belton* "'question[ed] whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order,' noting that '[m]ost circuits that have considered the issue have rejected the notion.'" Supp. Opp. at 3 (citing *In re Belton*, 961 F.3d at 617-18).  And it points out that the direct question of whether a bankruptcy court can entertain a nationwide class action for discharge violations is pending before the Second Circuit.  Supp. Opp. at 3 (citing *Bruce v. Citigroup, Inc.*, Case No. 22-134 (2d Cir. May 4, 2022)).  It points out that cases cited by the Plaintiffs are settlement approvals, not rulings on nationwide class certification.  Supp. Opp. at 4.  And it observes that "all indications suggest that the Second Circuit is poised to join the Fifth, Seventh, Ninth, and Eleventh Circuits in soundly rejecting the notion that discharge violations can be addressed on a nationwide basis through a nationwide class action."  Supp. Opp. at 5.

Navient also argues that the proposed class does not satisfy the ascertainability

requirement.  Navient agrees that the Plaintiffs have the burden to show ascertainability, but disagrees as to the challenges associated with meeting that burden, suggesting that the Plaintiffs "significantly understate the nature" of it and "the overwhelming difficulties that will be encountered in ascertaining the identity of class members here."  *Id*.  Navient argues that "[t]here is no administratively feasible way, absent an endless series of mini-hearings, to identify the borrowers who meet these criteria, particularly given the many factors and nuances built into section 221(d)'s definition of 'cost of attendance.'"  Supp. Opp. at 6.

Navient then offers a list of 27 questions that it proposes will need to be answered about an individual borrower "before determining whether that borrower is a member of the proposed class." *Id*.  Navient states that answering each specific question for each Putative Class Member is "infeasible" and would result in "a series of mini-trials" that prevent class certification.  Supp. Opp. at 9.  In substance, Navient suggests that each borrower's "cost of attendance" is an individualized, student-specific inquiry with a unique figure representing the student's actual costs, rather than an inquiry directed to standard costs as determined and reported by the institutions. *See* Supp. Opp. at 6-8.  Navient states, "[w]hatever the averages may be, each student has his or her own precise cost of attendance" and that IPEDS data fails to capture the student's individual circumstances.  Supp. Opp. at 9.

In addition, Navient argues that the proposed class does not satisfy the predominance requirement.  It states that, even if the Putative Class Members' loans at issue are not non-dischargeable under Section 523(a)(8)(B), it would still be entitled to argue that each loan is non-dischargeable under the separate fraud-based exceptions to discharge set forth in Section 523(a)(2), as this Court acknowledged in the TRO.  Supp. Opp. at 10 (citing TRO Decision at 49).  Navient argues that "claims under section 523(a)(2) could involve highly individualized

issues concerning, among other things, the subjective knowledge of the debtor when the loan documents were signed and whether the debtor had the subjective intent to deceive the creditor." Supp. Opp. at 10-11.  And it argues that it cannot assert Section 523(a)(2) issues if this class is certified.  Supp. Opp. at 11 (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)).  Navient notes that if a class is certified here, then it could be "forced to hold back its section 523(a)(2) claims for later resolution in different fora [and] would likely face res judicata defenses in the later actions for having failed to assert the 523(a)(2) claims as compulsory counterclaims in this court."  Supp. Opp. at 12.

Navient further argues that the proposed class must be limited to Putative Class Members with Tuition Answer Loans because the Complaint and Amended Complaint refer only to these loans, and any request for class certification should conform to the complaint.  Supp. Opp. at 13 (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995)).  Navient states that discovery in this case has focused mainly on the Tuition Answer Loan program, and that other private loans "have different features and requirements than the Tuition Answer program, and some of those differing features and requirements bear directly on dischargeability issues under 11 U.S.C. § 523(a)(8)."  Supp. Opp. at 13.  It points out that "Homaidan and Youssef only have Tuition Answer loans" so that that there is no named class representative who could adequately represent the interests of borrowers with loans issued under other programs.  *Id*.  And Navient argues that the Plaintiffs have not met their evidentiary burden under Rule 23 to show that loan programs other than Tuition Answer Loans are susceptible to class treatment, because the Plaintiffs do not describe the practices and administration of other loan programs.  *Id*.  It states that the other loan programs, such as the Smart Option, Signature Student, Career Training, and College Advantage

programs, were certified by the students' schools, and therefore may be subject to additional defenses.  *Id*.

*The Plaintiffs' Supplemental Reply Memorandum in Further Support of Class Certification*

On August 26, 2022, the Plaintiffs filed a Supplemental Reply Memorandum in further support of the Class Certification Motion.  The Plaintiffs reply that this Court has jurisdiction to certify a nationwide class asserting Section 524 violations.  And they note that this Court has "consistently held" that it would have jurisdiction over such a nationwide class.  Supp. Reply at 2 (citing *In re Ajasa*, 627 B.R. at 26; *In re Golden*, 630 B.R. at 869; *In re Brizinova*, 565 B.R. at 488).

The Plaintiffs also reply that "[a]scertainability is readily met."  Supp. Reply at 3.  As they state, the proposed class is "composed of individuals who received a private loan from Navient, received a bankruptcy discharge after October 2005, have not reaffirmed their debt post discharge, and whose loan exceeds the cost of attendance."  *Id*.  The Plaintiffs argue that Navient cannot say "cost of attendance" cannot be determined "'in an administratively feasible way[]'" because Navient had a responsibility to determine whether the loan was within the cost of attendance.  Supp. Reply at 3 (quoting Supp. Opp. at 8).  The Plaintiffs argue that instead, Navient treated all of its Title IV loans as nondischargeable, without doing the proper due diligence required by Section 523(a)(8)(B) and Internal Revenue Code Section 221.  Supp. Reply at 3.

The Plaintiffs further reply that for a class to be ascertainable, it must be identifiable in a way that permits the court to know who is in the class and bound by its ruling.  Supp. Reply at 4 (citing *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 548-50 (S.D.N.Y. 2021); *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339-40 (S.D.N.Y. 2021)).  They

argue that the proposed class is defined by objective criteria, and that it is "''objectively possible''" to determine the class's boundaries, as the Second Circuit requires.  Supp. Reply at 4 (quoting *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. at 548 (quoting *In re Petrobras Sec. Litig.*, 862 F.3d at 270)).  The Plaintiffs state that "Navient has studiously avoided making a determination of whether its loans come within the cost of attendance" and cannot claim a lack of ascertainability to avoid class certification by relying on its own failure to maintain proper records.  Supp. Reply at 5.

And the Plaintiffs reply that common issues predominate.  They assert that Navient cannot point to alleged fraud claims against potential class members to keep the class from being certified.  Supp. Reply at 5-6.  They state that Navient had the opportunity to bring a Section 523 action while each Putative Class Member's bankruptcy case was pending but failed to do so.  Supp. Reply at 6.  And the Plaintiffs argue that "Navient cannot show that it reasonably relied upon that 'certification'" of nondischargeability signed by non-lawyer borrowers, and it would be against public policy to enforce those certifications.  *Id.*  Further, the Plaintiffs argue that because Navient's potential fraud claims are based on "boilerplate 'certification' language in a standard promissory note," the defense is really a class-wide issue subject to common resolution, stating that, "[i]f anything, raising that defense weighs in favor of certifying the class."  *Id.*

And finally, the Plaintiffs reply that the class should include all Putative Class Members with private loans that exceed the "cost of attendance," not just those class members with Tuition Answer Loans.  They argue "[t]here is no legitimate reason to exclude individuals whose loans exceed the cost of attendance and who have obtained a discharge merely because of the name placed on their loan. The individual attributes of each loan program are not material to the common questions that pervade the class."  Supp. Reply at 7.  And the Plaintiffs argue that many

of the school-certified loans held by Navient exceed "cost of attendance."  "Navient admits that, applying the maximum number in IPEDS for cost of attendance (and not including other scholarships, loans, and grants), 2,233 individuals (1.5% of 148,919 borrowers) have loans that, on their face, exceed the cost of attendance in just the four loan programs analyzed."  *Id*.

<u>*Navient's Motion To Supplement the Record*</u>

On January 18, 2023, Navient filed a Motion to Supplement the Record.  By that motion, Navient seeks to introduce additional evidence in opposition to the Class Certification Motion, in order to "bring the Court's attention to an email sent to Defendants' counsel on January 11, 2023 from a borrower impacted by the preliminary injunction entered by the Court in this matter."  Mot. Supp. Record at 1-2.  Navient states that this email is relevant to class certification because of "the potential harm to Navient's borrowers as a result of the Court's preliminary injunction and the presence of individualized factors that preclude class certification."  Mot. Supp. Record at 2.  Navient also states that courts in the Second Circuit generally favor allowing the consideration of new evidence, so long as there is no prejudice to the opposing party or evidence of bad faith.  *Id*.

Navient describes the email's sender as a borrower who "filed for bankruptcy in Wisconsin in 2010 and understood her student debt would not be discharged."  *Id*.  The borrower, therefore, was surprised to discover that, after entry of the preliminary injunction, Navient had reverted her account to "her elderly co-signer," an outcome for which "[s]he expressly did not wish."  *Id*.  It states that the borrower's email "highlights circumstances undoubtedly shared by additional putative class members, where borrowers impacted by the Court's preliminary injunction wish to continue making voluntary payments on their loans but have been frustrated from doing so."  *Id*.

Navient also argues that this additional evidence illustrates just one of the factors that have "potential to cause significant confusion and further hardship to borrowers" and thus furthers its argument "that a one-size-fits-all solution for the entire purported class is not feasible or appropriate." Mot. Supp. Record at 3. Navient states that it offers this new evidence in good faith, that the Plaintiffs will not be prejudiced by it because it is consistent with Navient's previous arguments "that individualized issues preclude class certification," and that the Plaintiffs have an opportunity to respond, in writing and on the record at future hearings. *Id.*

*The Plaintiffs' Response to the Motion To Supplement the Record*

On January 20, 2023, the Plaintiffs responded to Navient's Motion to Supplement the Record. Describing the new evidence, they state that "[i]n some respects, [it] shows what happens in class action lawsuits all the time," specifically that "[s]ome absent class members have questions about the course of the litigation and how it affects them." Record Supp. Response ¶ 3. The Plaintiffs also state that they "are in the process of setting up" a website to provide information to the Putative Class Members, akin to those available in other, similar cases. *Id.* And the Plaintiffs contrast this action with those cases by stating that it is "unique in one respect: almost all the confusion has been generated by Navient in an attempt to sow discontent among the class and thereby undermine both this Court's order and this proceeding." Record Supp. Response ¶ 4.

In addition, the Plaintiffs state that "[c]ounsel for Plaintiffs have also received numerous emails and phone calls" from Putative Class Members. Record Supp. Response ¶ 5. They state that these Putative Class Members describe actions taken by Navient including removing the Putative Class Members' Tuition Answer Loans from their records without notice; commencing collection efforts against co-borrowers without notice; continuing to collect on their Tuition

Answer Loans while simultaneously closing borrower accounts and transferring accounts to co-borrowers; refusing to communicate with borrowers who seek reach out for clarification; preventing Putative Class Members from reinstating their accounts to prevent co-borrower collections; refusing to provide relevant tax documentation; transferring tax statements to co-borrowers even though the Putative Class Members have made the relevant payments; and marking certain loans "in forbearance" without notice before then placing them back into collections, also without notice.  Record Supp. Response ¶¶ 5-10.

From these accounts, the Plaintiffs conclude that "[w]hile Navient may have the right to seek collection from co-borrowers," it is engaging in a "new litigation tactic" of "punish[ing] the class by aggressively pursuing every co-borrower of every member of the class."  Record Supp. Response ¶¶ 11, 12.  And again, the Plaintiffs contrast this to the path taken by Navient in other student loan cases, where the parties reached "interim agreements not to collect from former debtors" and in which Navient did not seek to collect from co-borrowers.  Record Supp. Response ¶ 11.  The Plaintiffs state that they are preparing notice to the class and request that Navient "be required to explain to borrowers that they have the right to voluntarily continue to make payment on their loan" to avoid collections attempts on co-borrowers.  Record Supp. Response ¶¶ 13, 14.

The Plaintiffs further state that determinations of loan dischargeability and co-borrower obligations "should have occurred years ago," at the time of each Putative Class Member's discharge in bankruptcy, and that the fact that some Putative Class Members have co-borrowers does not undermine the availability of class-wide relief.  Record Supp. Response ¶¶ 16, 17. They argue that the parties and the Court can avoid further confusion by promptly certifying the class, identifying the class members, providing class-wide notice, and making a final

determination as to the dischargeability of the class members' loans.  Record Supp. Response ¶ 19.  And the Plaintiffs observe that "[t]his case is a quintessential class action that has many more – and more consequential – common issues than individual ones.  . . . [T]hose common issues significantly outweigh and predominate over individual ones.  The email that Navient submitted does not change that analysis."  Record Supp. Response ¶ 20.

<u>The Plaintiffs' Letter Regarding Additional Supplemental Authority</u>

On March 10, 2023, the Plaintiffs submitted a letter directing the Court's attention to *Woodard v. Navient Sols., LLC* (*In re Woodard*), 2023 WL 2412750 (Bankr. D. Neb. Mar. 8, 2023), a decision of the bankruptcy court in the District of Nebraska.  In that case, the bankruptcy court certified a class of discharged debtors with Section 524 violation claims throughout the Eighth Circuit.  March 10, 2023 Letter, ECF No. 441.

**The Applicable Legal Standards**

*Class Certification Under Federal Rule of Civil Procedure 23*

As this Court has recently stated, "'"[c]lass actions promote efficiency and economy in litigation.  Their design permits numerous parties to collectively litigate claims that might be uneconomical to litigate individually."'"  *In re Homaidan*, 640 B.R. at 863 (quoting *In re Golden*, 630 B.R. at 921-22 (quoting *Bank United v. Manley*, 273 B.R. 229, 249-50 (N.D. Ala. 2001)).  But of course, these benefits are appropriate only when the party seeking to certify a class meets several threshold requirements.

A "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotations and citations omitted).  In order to qualify for class certification, "a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23"

of the Federal Rules of Civil Procedure. *Comcast Corp.*, 569 U.S. at 33 (internal quotations and citations omitted).

Rule 23(a), made applicable in adversary proceedings by Bankruptcy Rule 7023, provides the framework for the certification of a class. It provides:

> One or more members of a class may sue . . . as representative parties on behalf of all members only if:
>
> (1)      the class is so numerous that joinder of all members is impracticable;
>
> (2)      there are questions of law or fact common to the class;
>
> (3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). Additionally, courts in the Second Circuit imply an ascertainability requirement into Rule 23. As the Second Circuit has observed, "a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec. Litig.*, 862 F.3d at 257.

In addition to meeting each of these requirements, the party seeking class certification must show that the class satisfies at least one of three criteria under Rule 23(b) including, as relevant here, Rule 23(b)(2) and Rule 23(b)(3). That is, as Rule 23 states:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (2)      the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3)      the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2), 23(b)(3).

It is worth noting that a party seeking to demonstrate that a putative class satisfies the prerequisites of Rule 23(a) and at least one of the criteria of Rule 23(b) must meet more than "a mere pleading standard." *Comcast Corp.*, 569 U.S. at 33. Rather, the party seeking certification must "affirmatively demonstrate [its] compliance" with the requirements of Rule 23 "by a preponderance of the evidence." *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, 2014 WL 4652549, at *2-3 (S.D.N.Y. Sept. 18, 2014) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008)).

And finally, as the Supreme Court has noted, the question of whether the criteria for certification of a class may require "the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp.*, 569 U.S. at 33. At the same time, courts do not have "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

*The Certification Requirements of Rule 23(a)*

To obtain class certification, a plaintiff must satisfy each of the four prerequisites set forth in Rule 23(a) – that is, numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp.*, 569 U.S. at 33. The analysis may include consideration of evidence such as affidavits,

documents, or testimony related to each element of Rule 23. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011). But "[t]he Rule 23 requirements are threshold issues" and "the ultimate issue as to each requirement is really a mixed question of fact and law," concerning the application of a legal standard to a set of potentially disputed facts. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006). Though determinations related to the Rule 23 requirements may overlap with underlying merits issues, a court must limit the resolution of any factual issues to the purposes of class certification. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41.

The first prerequisite of Rule 23(a), numerosity, requires that the proposed class be so large "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement furthers the interests of judicial economy by authorizing class actions where "individual adjudications . . . would be unnecessarily expensive and time-consuming, and enormously burdensome on the courts." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). But this does not require that there be thousands, or even hundreds of members in the class. As the Second Circuit has found, a proposed class of at least 40 members presumptively satisfies numerosity. *Consol. Rail Corp.*, 47 F.3d at 483 (citing 1 Newberg on Class Actions 2d § 3.05 (1985 ed.)) (observing that "numerosity is presumed at a level of 40 members"). *See Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021) (observing that, though "there is no magic number of class members needed to satisfy numerosity," a class of sixteen members would need to prove that joinder was impracticable).

But "the numerosity inquiry is not strictly mathematical," and a court must consider whether class treatment is superior to joinder in the context of the case, weighing factors such as "(i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members,

(iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Rule 23(a)'s second prerequisite, commonality, requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a plaintiff seeking the certification of a class must state claims that depend upon a "common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

But commonality does not require *every* aspect of *every* class member's claim to be identical. Rather, as the Supreme Court has stated, for the purposes of commonality under Rule 23(a)(2), "even a single common question" will suffice. *Dukes*, 564 U.S. at 359. "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding commonality and typicality easily satisfied where all class members were subject to the same employment policies).

That is, the commonality requirement is met if a plaintiff's grievances share a common question of law or fact with the class as a whole. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); 3B James Wm. Moore et al., Moore's Federal Practice & Procedure ¶ 23.06-1 (1996)). And this is a separate inquiry from

Rule 23(b)(3)'s requirement of predominance – individualized circumstances among class members do not necessarily defeat commonality when the class members' "injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377. As the Second Circuit has observed, "'[w]hat matters to class certification is not the raising of common questions . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022) (quoting *Dukes*, 564 U.S. at 350). "To demonstrate such a capacity, 'Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members.'" *Barrows*, 24 F.4th at 131 (quoting *Nextel Commc'ns Inc.*, 780 F.3d at 137).

Rule 23(a)'s third prerequisite, typicality, calls for the court to view the putative class as compared to the named class representatives. It requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Though this is a discrete requirement with its own, separate analysis, the Second Circuit has observed that "[t]he commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A.*, 126 F.3d at 376). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol A.*, 126 F.3d at 376 (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 157 n.13). Viewed another way, "'[t]ypicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought.'" *In re WRT Energy Sec. Litig.*, 2006 WL 2020947, at *3 (S.D.N.Y. Jul. 13, 2006)

(quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)).

As one district court has found, "[c]ourts in this circuit have held that 'the typicality requirement is not demanding.'" *N.J. Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 163 (S.D.N.Y. 2011), *aff'd sub nom. N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809 (2d Cir. 2012) (quoting *In re Prestige Brands Holdings, Inc.*, 2007 WL 2585088, at *3 (S.D.N.Y. Sept. 4, 2007)). Typicality "does not require 'that the factual background of each named plaintiff's claim be identical to that of all class members; rather it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 272-73 (S.D.N.Y. 2007) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)).

Notably, courts have also recognized that Rule 23's requirement of typicality is not the same as a requirement "'that the class representative claims be identical to those of the class,'" and "'differences in damages will not destroy typicality.'" *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (quoting 5 James Wm. Moore et al., Moore's Federal Practice § 23.24[5] (Matthew Bender ed., 3d ed. 2002)). But "'[t]ypicality will not be present if the class representative's claim is subject to one or more unique defenses that likely will be central to the litigation.'" *Bolanos*, 212 F.R.D. at 156 (quoting 5 James Wm. Moore et al., Moore's Federal Practice § 23.24[6] (Matthew Bender ed., 3d ed. 2002)). As the Second Circuit has observed, "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). That is, "[a]s long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Bolanos*, 212 F.R.D. at

154-55.

As another example, in *In re Woodard*, the bankruptcy court certified a circuit-wide class, and disagreed that the named plaintiff was not typical of the class because there were "differences among the various types of loan programs represented among the class of borrowers, and the distinction between Chapter 7 and Chapter 13 treatments of such loans." *In re Woodard*, 2023 WL 2412750, at *5. The court concluded that "the primary issue in the case is whether the loans involved in this proposed class action were discharged in bankruptcy, so the focus should be on the dischargeable or non-dischargeable nature of the loan rather than what the loan is named." *Id.*

Rule 23(a)'s fourth prerequisite is that the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this Circuit agree that "[c]ourts rarely deny class certification on the basis of the inadequacy of class representatives," and will do so "'only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 51 (S.D.N.Y. 2012) (quoting *Koss v. Wackenhut Corp.*, 2009 WL 928087, at *7 (S.D.N.Y. Mar. 30, 2009)). And proposed class counsel must be "qualified, experienced, and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

In addition to the requirements set forth in Rule 23(a), the Second Circuit has long "'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *In re Petrobras Sec. Litig.*, 862 F.3d at 260 (quoting

*Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).  In assessing ascertainability, courts should "consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec. Litig.*, 862 F.3d at 269.

Specifically, an ascertainable class is (1) "'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member'"; and (2) "'defined by objective criteria' so that it will not be necessary to hold 'a mini-hearing on the merits of each case.'"  *In re Petrobras Sec. Litig.*, 862 F.3d at 266-67 (quoting *Brecher*, 806 F.3d at 24).  In considering the ascertainability of a class in the bankruptcy context, one bankruptcy court in this Circuit has observed that "[a]scertainability is 'a modest threshold requirement' precluding certification 'only . . . if a proposed class definition is indeterminate in some fundamental way.'"  *In re Anderson*, 641 B.R. at 60 (quoting *In re Petrobras Sec. Litig.*, 862 F.3d at 269).  That is, an ascertainable class is one that has boundaries defined by objective criteria, so that it is possible for the court, the parties, and the members of the putative class to know who is within the scope of the class – and who is not.

### The Requirements of Rule 23(b)

In addition to satisfying the four prerequisites in Rule 23(a), a plaintiff seeking certification of a class must also demonstrate that the putative class complies with at least one of the requirements of Rule 23(b), which relate to the relief sought on behalf of the class.  *Amgen Inc.*, 568 U.S. at 466.  Two subsections of Rule 23(b) are relevant here:  Rule 23(b)(2), which permits a court to certify a class seeking declaratory or injunctive relief; and Rule 23(b)(3), which permits a court to certify a class for damages.

### The requirements of a Rule 23(b)(2) injunctive relief class.  A court may certify a class under Rule 23(b)(2) where the class seeks injunctive or declaratory relief, and "'a single

injunction would provide relief to each member of the class.'" *Sykes*, 780 F.3d at 97 (quoting *Dukes*, 564 U.S. at 360-61).

A party seeking certification for an injunctive class under Rule 23(b)(2) must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  And declaratory relief is proper only "where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," or "when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Md. Cas. Co.*, 445 F.2d at 1014 (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).  *See Allstate Ins. Co. v. Abramov*, 2020 WL 1172697, at *16 (E.D.N.Y. 2020) (denying declaratory judgment absent actual, justiciable controversy where the defendants ceased communications with the plaintiff).

As the Supreme Court has stated, "[t]he key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

And while the remedy that is sought, in the form of an injunction or declaratory judgment, is "indivisible" in its nature, that does not mean that each class member's relief is necessarily the same.  As one court noted, "[t]he relief to each class member need not be 'identical,' only 'beneficial.'" *Ciaramella v. Zucker*, 2019 WL 4805553, at *14 (S.D.N.Y. Sept. 30, 2019) (quoting *Sykes*, 780 F.3d at 97).

At the same time, Rule 23(b)(2) "does not authorize class certification when each class

member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61. As the Supreme Court observed, "claims for individualized relief . . . do not satisfy the Rule," and these types of claims must be addressed along a different path. *Dukes*, 564 U.S. at 360. "Further, where injunctive and declaratory relief is sought in addition to substantial monetary damages, 'due process concerns militate strongly against maintaining a mandatory [Rule 23](b)(2) class action without the procedural safeguards of notice and the opportunity to opt-out that are provided to members of a [Rule 23](b)(3) damages class.'" *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 288-89 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 237 (S.D.N.Y. 2010)).

But that does not mean that class certification is not available, in the appropriate circumstances. As the district court in *Sykes* explained:

> In such circumstances, the court may proceed in at least one of three ways: (1) certify the class under Rule 23(b)(3) for all proceedings; (2) certify separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively; or (3) certify the class under Rule 23(b)(2) for both equitable and monetary relief but provide all class members with notice and opportunity and opt-out pursuant to the court's authority under Rule 23(c)(2)(A) and (d)(1)(B)."

*Sykes*, 285 F.R.D. at 289 (citing *Charron*, 269 F.R.D. at 237-38).

The requirements of a Rule 23(b)(3) damages class. A court may certify a class under Rule 23(b)(3) where the class seeks an award of damages, and a court may certify a class under Rule 23(b)(3) only if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under this rule calls for the plaintiff to show that a class action is superior to other methods of resolving the dispute, and that individual questions do not

predominate over common ones.  Rule 23(b)(3) requires consideration of four factors in

assessing whether a class is superior to other means of proceeding:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2)(A)-(D).

The predominance requirement, as a general matter, "tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation."  *In re Nassau Cty. Strip Search

Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (internal quotation marks and citation omitted).  Even

where Rule 23(a)'s commonality requirement is satisfied, the predominance requirement under

Rule 23(b)(3) requires a separate, and additional, inquiry.  *Comcast Corp.*, 569 U.S. at 33.

Indeed, the Supreme Court has observed that Rule 23(b)(3), by its plain terms, imposes a "far

more demanding" inquiry into the common issues which serve as the basis for class certification

than Rule 23(a)'s commonality requirement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

623-24 (1997).

At the same time, the Supreme Court has also instructed that Rule 23(b)(3) "does not

require a plaintiff seeking class certification to prove that each element of her claim is

susceptible to classwide proof.  What the rule does require is that common questions

'predominate over any questions affecting only individual [class] members.'"  *Amgen Inc.*, 568

U.S. at 469 (internal quotation marks omitted).  "Determining whether a question is common or

individual depends on the kind of proof that will be needed to resolve that question at trial."  *In

re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 204 (S.D.N.Y. 2018).

Specifically:

> An individual question is one for which "members of a proposed class will need to present evidence that varies from member to member," while a common question is one for which "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."

*In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 204 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

To the same effect, in *In re Woodard*, the court acknowledged "that any matters of restitution and monetary damages will likely need to be addressed on a case-by-case basis once liability has been established." *In re Woodard*, 2023 WL 2412750, at *6. And yet, it concluded that "the necessity for such individualized findings in the future should not derail the efficiencies of ascertaining liability through a class action." *Id.* It noted that answers to many of the asserted individualized questions of fact could be found in or "can be answered from Navient's own records." *Id.* And it stated that class certification was preferable when the class included more than 1,000 borrowers, many with outstanding principal balances of less than $2,500, so that each class member had little incentive to pursue an individual claim, and judicial economy favored consolidated treatment of such claims. *In re Woodard*, 2023 WL 2412750, at *7.

### *The Question of an Impermissible Fail-Safe Class*

Finally, a class cannot be certified if it is a "fail-safe class." As one court has stated, "[a] fail-safe class is one whose definition 'shields the putative class members from receiving an adverse judgment.'" *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). As another court observed:

> In a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment. A proposed "fail-safe"

> class should not be certified because it is unfair to defendants, it prevents an
> adverse judgment being entered against plaintiffs, and it is unmanageable because
> the members of the class could only be known after a determination of liability.

*Mazzei*, 288 F.R.D. at 55.

At the same time, a finding that a plaintiff's proposed class may meet the definition of a

fail-safe class is not necessarily a bar to certification of the class. "Despite a fail-safe class

definition, courts have the discretion 'to construe the complaint or redefine the class to bring it

within the scope of Rule 23.'" *Mazzei*, 288 F.R.D. at 55 (quoting *Cokely v. N.Y. Convention Ctr.*

*Operating Corp.*, 2004 WL 1152531, at *2 n.3 (S.D.N.Y. May 21, 2004)).

### *Jurisdiction Under Judiciary Code Section 1334*

Judiciary Code Section 1334 sets forth the grounds for federal jurisdiction over

bankruptcy matters. Section 1334(a) provides that "[e]xcept as provided in [Section 1334(b),]

the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28

U.S.C. § 1334(a). Section 1334(b) confers original but not exclusive jurisdiction upon district

courts in all civil proceedings "arising under title 11, or arising in or related to cases under title

11." 28 U.S.C. § 1334(b). Significantly, Section 1334(b) provides the bankruptcy courts with

the ability to reach beyond the assets of a particular bankruptcy estate – as one court noted in

considering a motion to dismiss a putative nationwide class, "[a] court no longer is restricted to

dealing only with assets under its control; it also has the ability to deal with other matters

affecting debtors." *Noletto v. Nationsbanc Mortg. Corp. (In re Noletto)*, 244 B.R. 845, 849

(Bankr. S.D. Ala. 2000).

And Section 1334(e) confers exclusive jurisdiction upon the district and bankruptcy

courts over the debtor's property, that is, the property of the estate. 28 U.S.C. § 1334(e)(1). As

the court observed in *In re Noletto*, Section 1334(e) "vests the 'home court' with the exclusive

power to control and distribute property of the estate." *In re Noletto*, 244 B.R. at 854. But equally, "[Section] 1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code." *Id. See Harker v. Wells Fargo Bank, NA (In re Krause)*, 414 B.R. 243, 255-56 (Bankr. S.D. Ohio 2009) (finding that "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violations of provisions of the [Bankruptcy] Code, other federal statutory provisions, or other remedies").

"Many decisions by the Supreme Court over the last 30 years tell us that 'jurisdiction' means adjudicatory competence." *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 484 (7th Cir. 2015) (citing cases). The Supreme Court has stated that the term "'jurisdictional' properly applies only to 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating that authority." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). The Supreme Court has also noted that "subject-matter jurisdiction" refers to "the courts' statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998). And it has observed that "[o]ur recent cases evince a marked desire to curtail such 'drive-by jurisdictional rulings,' . . . which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action." *Reed Elsevier, Inc.*, 559 U.S. at 161 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. at 89; *Kontrick*, 540 U.S. at 456).

Subject matter jurisdiction is present when a debtor's claim falls under "'related to,'" "'arising in,'" or "'arising under'" jurisdiction. This occurs regardless of where the bankruptcy

petition was filed.  *In re Golden*, 630 B.R. at 921 (quoting *Cano v. GMAC Mortg. Corp.* (*In re Cano*), 410 B.R. 506, 551 (Bankr. S.D. Tex. 2009)).  As this Court recently found, "'for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's subject matter jurisdiction, because the claim is a 'civil proceeding arising under title 11.''"  *In re Homaidan*, 640 B.R. at 861 (quoting *In re Golden*, 630 B.R. at 920 (quoting 28 U.S.C. § 1334(b))).  And as this Court has previously observed, this matter is "core" because it concerns the scope and enforcement of the bankruptcy discharge, and "'the question of . . . jurisdiction to grant relief' and the question of subject matter jurisdiction are intertwined."  *In re Homaidan*, 640 B.R. at 862 (quoting *In re Golden*, 630 B.R. at 920).

*The Elements of a Discharge Injunction Violation Claim and the Power to Enforce It*

Bankruptcy Code Section 524 describes the effect of a discharge.  It states that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524.  In order adequately to allege a claim for violations of a discharge injunction, a plaintiff-debtor must allege that the debtor received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge.  *Motichko v. Premium Asset Recovery Corp.* (*In re Motichko*), 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008).

Of course, for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt.  *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018) (stating that "[t]he discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt *that is discharged*" (emphasis added)); *In re Azevedo*, 506 B.R. 277, 283 (Bankr. E.D. Cal. 2014) (observing that "[s]howing a violation of a discharge

order by definition requires showing specifically that the order applies to the debt on which the violation is premised") (citing 11 U.S.C. § 524(a)(1)-(2)); *Otten v. Majesty Used Cars, Inc.* (*In re Otten*), 2013 WL 1881736, at *6-8 (Bankr. E.D.N.Y. May 3, 2013) (analyzing the scope of a discharge injunction issued in the plaintiff's bankruptcy case in the context of determining whether the defendants' actions violated the discharge injunction).

Notably, "[f]rom the Bankruptcy Code's inception, breach of the discharge has been recognized as an injury" and that, "to violate the injunction, pressure is enough . . . because freedom from such pressure is the tradeoff for going through a bankruptcy case." *In re Anderson*, 641 B.R. at 55 (citing *Taggart*, 139 S. Ct. at 1801). A debtor may move for sanctions for a violation in the court that issued the injunction, but is not necessarily bound to do so in that court by jurisdictional limitations. *See In re Anderson*, 641 B.R. at 16-17 (quoting *Baker*, 522 U.S. at 236) (discussing "the well-recognized proposition that '[s]anctions for violations of an injunction are . . . generally administered by the court that issued the injunction,' is – as indicated by Justice Ginsburg's use of the word 'generally' in *Baker* – not a *jurisdictional* limitation"). This is so because, as the Supreme Court noted in *Taggart*, the Judicial Code confers upon bankruptcy courts enforcement power in a "dual nature" by finding "the source of power to enforce the discharge in sections 105(a) and 524(a)(2) of the Bankruptcy Code, not just the contempt power." *In re Anderson*, 641 B.R. at 18 (citing *Taggart*, 139 S. Ct. at 1801).

Further:

[w]hen the alleged misconduct is . . . a systematic policy undertaken against former debtors who, absent a class action, would be unlikely to incur the cost of litigation, the exercise of that jurisdiction in the collective context of a nationwide class action is superior to individualized lawsuits. Under the circumstances, imposing a district-wide, or even an issuing-judge-only limitation on the class when each is protected by the same statutory injunction and form of discharge order would be an artificial construct antithetical to the purpose of Rule 23, as incorporated by Fed. R. Bankr. P. 7023.

*In re Anderson*, 641 B.R. at 62 (citing *In re Biery*, 543 B.R. 267, 301 (Bankr. E.D. Ky. 2015); *In re Brannan*, 485 B.R. 443, 459-60 (Bankr. S.D. Ala. 2013)).

And recently, a bankruptcy court considered similar arguments and concluded that it could exercise jurisdiction over claims of discharge injunction violations for discharges issued by other courts.  In *In re Woodard*, the plaintiff requested certification seeking both an injunction and damages on behalf of "a class of litigants composed of consumer education loan borrowers who filed for bankruptcy protection within the Eighth Circuit, received discharge orders, and were subject to post-discharge collection efforts by the defendants."  *In re Woodard*, 2023 WL 2412750, at *1.  The court first addressed the question of its "jurisdiction and authority over a circuit-wide class action."  *Id*.  There, as here, Navient argued that a bankruptcy court's ability to enforce a debtor's discharge injunction under Section 524(a) actions was limited to its own district.  *Id*.  The court disagreed, for at least three reasons.  Pointing to the standard form of the bankruptcy injunction, Section 105(a)'s broad grant of authority to enforce the provisions of the Bankruptcy Code, and the objective standard for finding Section 524(a) violations caused by systemic conduct, the court concluded that it possessed "authority to enforce discharge injunctions entered by other judges and other courts."  *In re Woodard*, 2023 WL 2412750, at *2.

## Discussion

The Plaintiffs' Class Certification Motion calls for this Court to address two questions, and each is important.  First, as a threshold matter, the Court must determine whether it has the jurisdiction to certify a nationwide class action for violations of discharge injunctions, or if its jurisdiction is limited, as a matter of law, to a class of members who received their discharges in the Eastern District of New York.  Next, the Court must determine whether the Plaintiffs have shown that each of the four Rule 23(a) prerequisites is satisfied and, if so, whether the Plaintiffs

have demonstrated that the requirements of Rule 23(b)(2) and 23(b)(3) have been met, all by a preponderance of the evidence.

<u>Whether this Court Has Jurisdiction To Certify a Nationwide Class</u>

In order to certify a nationwide class, this Court must be able to exercise jurisdiction over a class that includes members outside of the Eastern District of New York, and even outside of the Second Circuit.  Navient argues that such jurisdiction is unavailable because the Court lacks the authority to enforce discharge orders issued outside of this District.  Opp. at 5.  It notes that the relevant authority does not "suggest that the bankruptcy court lacks statutory subject-matter jurisdiction to interpret and enforce discharge orders entered by other courts," but that this Court's "ability to entertain Plaintiffs' claims" on a class-wide basis is nevertheless limited. Opp. at 8 n.5.  Navient states that, "[w]hether the question is 'characterize[d] . . . as one of jurisdiction or one of authority . . . the result is the same either way.'"  Opp. at 8 n.5 (quoting *United States v. Fowler*, 749 F.3d 1010, 1015 n.4 (11th Cir. 2014)).

Specifically, Navient argues that the bankruptcy discharge injunction pursuant to Section 524 is an individual, court-ordered injunction.  Opp. at 5.  It states that "[b]y omitting a private right of action for discharge-violation claims and codifying the discharge as having injunctive effect, Congress necessarily imposed on the discharge the usual rules under which all injunctions exist – including the well-established limitation that an injunction may only be enforced through a contempt proceeding before the issuing court."  Opp. at 7.  And it points to the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), where the Court observed that "'the statutes specifying that a discharge order "operates as an injunction," . . . bring with them the "old soil" that has long governed how courts enforce injunctions.'"  Opp. at 7 (quoting *Taggart*, 139 S. Ct. at 1801).  Navient also points to Second Circuit's decision in *In re Anderson*,

where that court observed that "'the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it.'"  Opp. at 7 (quoting *In re Anderson*, 884 F.3d at 391).  And it argues that "[c]ourts have described the limitation for finding contempt as jurisdictional . . . whether the plaintiff seeks contempt sanctions, declaratory relief, or both."  Opp. at 8 (citing cases).  Navient further argues that the Fifth Circuit addressed this identical question in *In re Crocker*, and the Eleventh Circuit also did so in *Alderwoods*.

As the Supreme Court has stated, "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction."  *Baker*, 522 U.S. at 236.  And as the Second Circuit has observed, "[v]iolation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred."  *Striller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963).  But as this Court observed in *In re Golden*, "this is a starting point, and does not answer the question of whether the issuing court may also entertain a request for broader relief, or whether only the issuing court may determine whether a violation has occurred."  *In re Golden*, 630 B.R. at 918 (citing *In re Ajasa*, 627 B.R. at 23).  And as one bankruptcy court recently observed, the Supreme Court's use of the word "generally" in *Baker* indicates that this is "not a jurisdictional limitation."  *In re Anderson*, 641 B.R. at 17 (quoting *Baker*, 522 U.S. at 236).

First, in examining the statutory bankruptcy discharge injunction, this Court has observed that "it is created by Bankruptcy Code Section 524(a), which states that it 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.'"  *In re Golden*, 630 B.R. at 918 (quoting 11 U.S.C. § 524(a)(2)).  "'[T]he bankruptcy discharge order is

a form, a national form, which is issued in every case when there is, in fact, a discharge.  By statute, in [Section] 524(a)(2), it operates as an injunction . . . .  It is not a handcrafted order.'"  *In re Golden*, 630 B.R. at 918 (quoting *In re Haynes*, 2014 WL 3608891, at *8).  That is the "'fundamental difference between [a] normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in [Bankruptcy Code] Section 524(a) to support the discharge under Section 727.'"  *In re Golden*, 630 B.R. at 918-19 (quoting *In re Haynes*, 2014 WL 3608891, at *8).  *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445-46 (1st Cir. 2000) (holding that "when dealing, as here, with violation of a purely statutory order," such as the discharge injunction imposed by Section 524, it is not necessary to return to "the court that issued the original discharge order").

Second, a comparison between the All Writs Act and the broad grant of authority contained in Bankruptcy Code Section 105(a) clarifies the court's ability to address injunctions.  Navient points to the Fifth Circuit's decision in *Crocker* and the Eleventh Circuit's decision in *Alderwoods*, and other decisions, and argues that "a bankruptcy court does *not* have the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits."  Motion to Stay at 6.

In *Alderwoods*, the court noted that "the discharge injunction itself is like an All Writs Act injunction issued 'in aid of' a court's jurisdiction . . . in that the discharge injunction is 'in aid of' the purpose of the Bankruptcy Code."  *Alderwoods*, 682 F.3d at 972 n.24 (quoting 28 U.S.C. § 1651).  But, as this Court concluded in *In re Golden*, the Bankruptcy Code provides an additional source of authority to bankruptcy courts, distinct from the All Writs Act – and this is Bankruptcy Code Section 105(a).  *In re Golden*, 630 B.R. at 919.  Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title."  11 U.S.C. § 105(a).  And these "provisions of this title" include the statutory bankruptcy discharge that is set forth in Bankruptcy Code Section 524(a).

Here, as this Court found in *In re Golden* and elsewhere, the bankruptcy court's decision in *In re Haynes* provides helpful guidance.  Considering first the All Writs Act, the court observed that "[v]ery clearly, that statute is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be enforced."  *In re Haynes*, 2014 WL 3608891, at *8.  The court went on to observe that, by contrast, Section 105(a) "is quite different":

> Although modeled on the All Writs Act, . . . [Section 105] does not refer to aiding the Court's own jurisdiction. . . .  [T]he legislative history of this section, in H.R. Rep. 95-595, states that, among other things, Section 105 is intended to "cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute."  (Emphasis added.)  The statutes are different, in other words.

*Id.*

The *Haynes* court continued:

> I believe it is a mistake to rely upon the All Writs Act cases to hold that a bankruptcy court has power under the applicable statute only to enforce its own orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular.

*Id.*  As this Court found, "[t]hat is, the authority granted to bankruptcy courts by Section 105 is – explicitly and by design – broader than the authority granted to federal courts in the All Writs Act."  *In re Golden*, 630 B.R. at 920 (citing *In re Ajasa*, 627 B.R. at 24).

Other courts have similarly concluded that the "plain meaning" of Section 105(a) gives broad authority to bankruptcy courts to "'issue *any* order . . . necessary or appropriate to carry out the provisions of the bankruptcy code.'"  *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.* (*In re Terrebonne Fuel & Lube, Inc.*), 108 F.3d 609, 613 (5th Cir. 1997) (quoting *Burd v. Walters*

(*In re Walters*), 868 F.2d 665, 669 (4th Cir. 1989)) (emphasis added).  *See, e.g.*, *Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 458 (Bankr. S.D. Tex. 2008) (stating that "Section 105(a) plainly states that the court can issue any 'judgment' necessary or appropriate to carry out the requirements of the bankruptcy code.  Any judgment would include any remedy available in a private cause of action."); *In re Jewish Mem'l Hosp.*, 13 B.R. 417, 419 (Bankr. S.D.N.Y. 1981) (Lifland, B.J.) (citing *Young v. Higbee Co.*, 324 U.S. 204, 214 (1945)) (observing that "[i]t is well established that the Bankruptcy Court is a court of equity and that its proceedings are inherently proceedings in equity.").

A third piece of the picture is the source of the Court's jurisdiction, including its subject matter jurisdiction.  Here, the Plaintiffs' claims arise under the Bankruptcy Code, and specifically, under Bankruptcy Code Sections 727, 524(a)(2), and 105(a).  *See In re Golden*, 630 B.R. at 920.  "As a consequence, for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's subject matter jurisdiction, because the claim is a 'civil proceeding[] arising under title 11.'"  *In re Golden*, 630 B.R. at 920 (quoting 28 U.S.C. § 1334(b)).  As this Court has stated, "'there [are] few matters as "core" to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code.'"  *In re Golden*, 630 B.R. at 920 (quoting *In re Haynes*, 2014 WL 3608891, at *7).  "[T]he question[] of . . . jurisdiction to grant relief" and the question of subject matter jurisdiction are intertwined.  *In re Golden*, 630 B.R. at 920.  "It is axiomatic that this Court has subject matter jurisdiction to consider the discharge injunction violation claims" of Mr. Homaidan and Ms. Youssef as the named plaintiffs, who filed Chapter 7 bankruptcy cases in this District, because those are core matters.  *Id.*

Notably, other courts have reached similar conclusions, and have certified class actions,

including nationwide class actions, to address a range of bankruptcy claims where the class as certified extended outside of the bankruptcy court's home district.  And courts have correctly observed that where jurisdiction is lacking, they are required – even *sua sponte* – to dismiss the case.  *See, e.g.*, *Merchants Bank v. C.R. Davidson Co.* (*In re C.R. Davidson Co.*), 232 B.R. 549, 551 (B.A.P. 2d Cir. 1999) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (observing that "[w]hen such jurisdiction is lacking, and although no party has raised the issue, we have the duty to dismiss sua sponte"); *Receivables Exch., LLC v. Hotton*, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (citations omitted) (stating that "when a complaint fails to plead subject matter jurisdiction, the Court is obligated to dismiss it *sua sponte*").

And this Court and others "have similarly recognized that the jurisdiction to enter a nationwide remedy is part of the court's jurisdiction over the putative class."  *In re Golden*, 630 B.R. at 922 (first citing *Vick v. NCO Fin. Sys., Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 1328830 (E.D. Tex. Mar. 30, 2010); and then citing *Rojas v. Citi Corp. Trust Bank FSB* (*In re Rojas*), 2009 WL 2496807, at *10 (Bankr. S.D. Tex. Aug. 12, 2009)).  For example, in *Sheffield v. HomeSide Lending, Inc.* (*In re Sheffield*), 281 B.R. 24 (Bankr. S.D. Ala. 2000), the bankruptcy court certified a nationwide class with respect to claims arising from a creditor's failure to disclose post-petition, pre-confirmation attorney fees in its proofs of claim.  Other courts have reached similar conclusions in similar circumstances.  *See Noletto v. NationsBanc Mortg. Corp.* (*In re Noletto*), 281 B.R. 36, 46-48 (Bankr. S.D. Ala. 2000) (certifying a nationwide class of debtors who shared common grounds for relief with respect to the defendant's general pattern of conduct); *Dean v. First Union Mortg. Corp.* (*In re Harris*), 280 B.R. 876 (Bankr. S.D. Ala. 2001) (same).

"Bankruptcy courts have also noted, in different contexts, that in the appropriate

circumstances, the certification of a nationwide class may be permitted, particularly when the relief sought is not solely *in rem* in nature." *In re Golden*, 630 B.R. at 921. For example, in *Chiang v. Neilson* (*In re Death Row Records, Inc.*), 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012), the Ninth Circuit Bankruptcy Appellate Panel permitted certification of a nationwide class as to "turnover, declaratory and injunctive relief claims" noting that they "are not solely *in rem* claims." *In re Death Row Records, Inc.*, 2012 WL 952292, at *12.

> As this Court and others have observed:
>
> "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy court *strictly to in rem matters involving property of the debtor or property of the estate* and not as a restriction on nationwide jurisdiction over claims for violation of provisions of the Code, other federal statutory provisions, or other remedies that might be available to debtors and trustees."

*In re Golden*, 630 B.R. at 921 (quoting *In re Krause*, 414 B.R. at 255-56). And as this Court has previously noted, "'[Judiciary Code] Section 1334(b) grants subject matter jurisdiction over any debtor claims that fall within the court's "related to," "arising in," or "arising under" jurisdiction, regardless of where the claimant's bankruptcy petition was filed.'" *In re Golden*, 630 B.R. at 921 (quoting *In re Cano*, 410 B.R. at 551).

To be sure, in many of these nationwide class actions, the relief sought did not necessarily call for the court to address a discharge order entered outside of its district. Instead, these cases addressed other matters that are fundamental to the bankruptcy system, including the disclosure of fees in a proof of claim and other alleged violations of the Bankruptcy Code and other statutes. And in each circumstance, the court concluded that a nationwide class was both possible and appropriate. As stated by this Court and others, "'this conclusion advances the goals and purpose of the class action mechanism. Class actions promote efficiency and economy in litigation. Their design permits numerous parties to collectively litigate claims that might be

71

uneconomical to litigate individually.'"  *In re Golden*, 630 B.R. at 921-22 (quoting *Bank United*, 273 B.R. at 249-50).

Moreover, "'if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules.  This would ascribe to Congress the intent to categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a clear indication of such intent.'"  *In re Golden*, 630 B.R. at 922 (quoting *In re Wilborn*, 609 F.3d at 754).  As one court observed in denying a motion to dismiss a putative nationwide class action asserting violations of the statutory bankruptcy discharge, "[t]he Court has the power to provide all of the relief requested."  *Vick*, 2010 WL 1330637, at *4.

And finally, nationwide settlements of class actions asserting statutory bankruptcy discharge injunction violations have been approved by bankruptcy and district courts in several cases within the Second Circuit.  In such circumstances, again, each court necessarily concluded that it could enter an order that, in effect, provided for relief outside of its own district, including with respect to an asserted violation of a discharge order entered in another district by another court.  *See Belton v. GE Capital Retail Bank* (*In re Belton*), 21-cv-09492, at ECF No. 17 (S.D.N.Y. Feb. 10, 2022) (approving class treatment of discharge violation claims brought on behalf of borrowers both inside and outside the named plaintiff's district); *Ajasa v. Wells Fargo Bank, N.A.*, 21-cv-07085-ENV, at ECF No. 18 (E.D.N.Y. Apr. 25, 2022) (same); *Anderson v. Capital One Bank (USA), N.A.*, 19-cv-03981-NSR, at ECF No. 20 (S.D.N.Y. Sept. 11, 2019) (same); *Anderson v. Capital One Bank (USA), N.A.*, 15-08342-RDD, at ECF No. 99 (Bankr. S.D.N.Y. Jan. 7, 2021) (same); *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-03307-VB, at ECF No. 19 (S.D.N.Y. Aug. 24, 2018) (same); *Haynes v. Chase Bank U.S.A., N.A.*, 13-08370-RDD, at ECF No. 133 (Bankr. S.D.N.Y. Sept. 27, 2018) (same); *Echevarria v. Bank of Am. Corp.*, 17-cv-

08026-VB, at ECF No. 23 (S.D.N.Y. Mar. 14, 2018) (same); *Echevarria v. Bank of Am. Corp.*, 14-08216-RDD, at ECF No. 121 (Bankr. S.D.N.Y. Mar. 15, 2018) (same).

While each of these cases ultimately reached a consensual outcome, that consensus cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction or authority to enter a remedy, where it is otherwise lacking.  As the Second Circuit has observed, "[j]urisdiction cannot be created by the consent of the parties."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal citations omitted).

In each of these nationwide class actions entertained by the bankruptcy and district courts, the court exercised jurisdiction over discharge orders entered by other courts in other districts around the country.  As a result, "this Court's subject matter jurisdiction to . . . enter a remedy in this case[] should not be limited by the scope of that request," including nationwide relief for the putative class.  *In re Golden*, 630 B.R. at 923.  That is, there is no limitation through "any shortcoming in this Court's jurisdiction to consider, and if appropriate to enter," a remedy applicable to the putative nationwide class.  *Id.*

Next, the Court considers whether – as Navient argues – the Second Circuit's observation in *In re Belton* compels the conclusion that any action for contempt of a bankruptcy discharge injunction must be heard by the court that issued the discharge.  Motion to Stay at 6-7.

In *In re Belton*, the Second Circuit wrote:

[W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order.  Most circuits that have considered the issue have rejected the notion.  *See Crocker*, 941 F.3d at 216-17 ("We adopt the language of [*Anderson*] that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'"); *Alderwoods Grp.*, 682 F.3d at 970 ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Walls*, 276 F.3d at 509-10 (same); *Cox*, 239 F.3d at 916-17 (same); *but see Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) (holding that a debtor is not required to "bring her claims in the court

that issued the original discharge order"). And those cases are buttressed by the Supreme Court's recent decision in *Taggart*, which made clear that the contempt powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions." 139 S. Ct. at 1802.

*In re Belton*, 961 F.3d at 617-18.

In *In re Belton*, the Second Circuit addressed the question of whether an asserted violation of the statutory bankruptcy discharge injunction was within the scope of a pre-dispute arbitration agreement. The court affirmed the district and bankruptcy court's conclusion that "the alleged violation of a bankruptcy court discharge order" is not an arbitrable dispute because, as it held in *In re Anderson*, "arbitration was in 'inherent conflict' with enforcement of a discharge injunction." *In re Belton*, 961 F.3d at 615 (quoting *In re Anderson*, 884 F.3d at 390). But there, as in *In re Anderson*, the issue before the court was not the scope of a bankruptcy court's subject matter jurisdiction over a nationwide class, or the question of nationwide relief. And recognizing this, the *Belton* court stated that "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *In re Anderson* should be read as a tacit endorsement of such." *In re Belton*, 961 F.3d at 617.

As this Court recognized in *In re Golden*, *In re Anderson* addressed the question of the arbitrability of a discharge order violation in "the context of bankruptcy courts and the bankruptcy system, not solely a single bankruptcy court or district. The court did not address, and did not need to address, whether the issuing judge, or district, or circuit set the boundary for the bankruptcy court's jurisdiction in the matter before it." *In re Golden*, 630 B.R. at 925. Similarly, and again as this Court found in *In re Golden*, *In re Belton* addressed the same issue, and found that "'the alleged violation of a bankruptcy court discharge order' is not an arbitrable dispute because, as the *In re Anderson* court found, 'arbitration was in "inherent conflict" with

enforcement of a discharge injunction.'" *In re Golden*, 630 B.R. at 925 (quoting *In re Belton*, 961 F.3d at 615).

Further, here, "these claims 'arise under' the Bankruptcy Code, are separate and distinct from any in rem basis for the bankruptcy court's jurisdiction, and go to the heart of one of the fundamental protections of the bankruptcy system – that is, the debtor's discharge and opportunity for a fresh start." *In re Golden*, 630 B.R. at 926.  As the court in *In re Haynes* explained:

> While it is true that a substantial portion of bankruptcy jurisdiction is in rem, that is, jurisdiction over the debtor's estate wherever located, it is not the only basis for bankruptcy jurisdiction, which, under 28 U.S.C. Section 1334(b), extends to "all civil proceedings arising under title 11," including under 11 U.S.C. Sections 524 and 727.  In fact, . . . these fundamental, if not the fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or in rem jurisdiction.  They have everything to do with prohibiting the collection of in personam debts that, before the bankruptcy discharge, were owed by the debtor.

*In re Haynes*, 2014 WL 3608891, at *6.

Mr. Homaidan and Ms. Youssef seek, for themselves and for all Putative Class Members, neither more nor less than the full benefit of their statutory bankruptcy discharges.  "And under Bankruptcy Code Section 524(a), the discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*.'" *In re Golden*, 630 B.R. at 927 (quoting 11 U.S.C. § 524(a)(2)).  Their claims do not concern "'property of the estate, as of the commencement of the case,' or 'property of the estate,' as addressed by Judicial Code Section 1334(e)(1)." *In re Golden*, 630 B.R. at 927.

And a violation of the Plaintiffs' and Putative Class Members' statutory bankruptcy discharges is, of course, the violation of a statute.  As the Seventh Circuit recognized, "Section 524(a)(2) . . . enjoins . . . collection[,] . . . so the creditor who attempts to collect a discharged

debt is violating . . . a statute." *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001). As this Court has noted, "Bankruptcy Code Section 105 grants the bankruptcy court power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *In re Golden*, 630 B.R. at 914 (quoting 11 U.S.C. § 105). As the court in *In re Haynes* recognized, Section 105 permits a bankruptcy court to enforce "the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular." *In re Haynes*, 2014 WL 3608891, at *8. A bankruptcy court "is well within its authority if it exercises its equitable powers to enforce a specific code provision." *Vick*, 2010 WL 1330637, at *3 (citing *In re Rodriguez*, 396 B.R. at 455-60).

Finally, the Court considers the Supreme Court's ruling in *Taggart*. In *Taggart*, the Supreme Court observed that "the statutes specifying that a discharge order 'operates as an injunction,' and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, bring with them the 'old soil' that has long governed how courts enforce injunctions." *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C. § 524(a)(2) and § 105(a)). And it found that "as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Taggart*, 139 S. Ct. at 1801. As the Supreme Court explained, this "old soil" is the source of "traditional standards" as to when a finding of civil contempt may lie, and leads to the conclusion that a court may hold a creditor in civil contempt for violating a debtor's discharge if there is "no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

That is, *Taggart* addressed the nature of the creditor's conduct and the scope of the debtor's discharge, and held that a finding of civil contempt may issue only where the question

of the creditor's violation is decisively answered in the affirmative – where there is "no fair ground of doubt" as to the existence of the violation.  And the "old soil" informs the question of intent, not the question of whether a bankruptcy court has jurisdiction to grant injunctive relief applicable to a putative nationwide class.  While *Taggart* surely has a significant role to play in determining a creditor's liability, it simply does not address whether this question may be considered by a court solely in an individual debtor's case, or in a district-wide class, or, as here, in a putative nationwide class.  *In re Golden*, 630 B.R. at 927.

And separately, here the record does not show, or even suggest, that Navient followed different policies or practices with respect to its determinations whether to treat a borrower's private student loan as within or outside the scope of that borrower's bankruptcy discharge. Navient has not contested that the Putative Class Members may have filed bankruptcy cases in districts and circuits across the country, and it has not identified any way in which it treated a borrower differently based on that venue.  The Plaintiffs allege that Navient followed consistent policies and practices as to these loans, and Navient has not argued that evidence as to its policies and practices – rather than as to particular loans or borrowers – would somehow be different or individualized based on the venue of the borrower's bankruptcy case.  "[E]fficiency and economy in litigation" favor hearing this matter in a uniform way and for the Court to exercise the jurisdiction available to it.  *In re Homaidan*, 640 B.R. at 863.

For all of these reasons, and based on the entire record, the Court concludes that it has the authority to certify a nationwide class, if all of the requirements for certification are met.  The Court next turns to the consideration of those requirements under Federal Rules of Civil Procedure 23(a) and 23(b).

<u>Whether the Rule 23(a) Prerequisites Are Met</u>

To obtain class certification, a plaintiff must demonstrate, by a preponderance of the evidence, that each of the four prerequisites set forth in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequate representation – is met.  Fed. R. Civ. P. 23(a).

In the Class Certification Motion, the Plaintiffs seek to certify two classes, one for the purposes of injunctive relief and another for damages, each to consist of:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mem. at 15.

Navient opposes this class definition and argues that the Plaintiffs impermissibly seek certification of a class that exceeds the class defined in the Amended Complaint.  Opp. at 12. The Amended Complaint seeks to certify a class to consist of:

> Citizens of the various states who filed for bankruptcy in any of district courts of the United States and were issued Discharge Orders since [October 17, 2005] (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who: a) Obtained Tuition Answer loans in amounts that exceeded the "Cost of Attendance"; b) Were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns; c) have never reaffirmed any pre-petition Tuition Answer loan; d) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

Am. Compl. ¶ 73.  That is, in the Amended Complaint, the Plaintiffs seek relief only on behalf of borrowers who obtained Tuition Answer Loans and who were not issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns, and in the Class Certification Motion they seek to expand the proposed class to include borrowers under any of Navient's private loan programs, not just Tuition Answer Loans, whose loans exceeded the "cost of attendance" at a Title IV institution, without regard to whether the borrower received

a 1098-E tax form.

Courts have discretion in setting the class definition at the time of certification.  As one court in this District has noted, "courts have the discretion, at the certification stage, to redefine classes." *Carrillo v. Wells Fargo Bank, N.A.*, 2019 WL 3714801, at *13 n.8 (E.D.N.Y. May 10, 2019).  And as the Second Circuit has observed, the certifying court "is not bound by the class definition proposed in the complaint." *Robidoux*, 987 F.2d at 937.

To be sure, courts may cite this principle as support for the ability to narrow, as well as to expand, a proposed class.  *See, e.g.*, *Robidoux*, 987 F.2d at 937 (certifying a class composed of beneficiaries of two of the three programs the plaintiff sought to include on grounds that one of the programs lacked typicality with the other two); *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993) (citing 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1790, at 269-71 (1986)) (finding that courts are not restricted to considering a plaintiff's overbroad class definition and are "empowered under Rule 23(c)(4) to carve out an appropriate class"); *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 153 (S.D.N.Y. 2017) (finding that "'[s]hould it become necessary to modify the class definition going forward, the Court has discretion to do so'"); *Flores*, 284 F.R.D. at 125 (stating that "[a] district court is not bound by the class definition proposed in the complaint") (internal quotation omitted).

At the same time, courts in this Circuit have held that "expansion of the class definition beyond that which was proposed in the complaint is not categorically improper." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 211.  *See, e.g.*, *Menking ex rel. Menking v. Daines*, 287 F.R.D. 174, 181 (S.D.N.Y. 2012) (certifying the statewide class that the plaintiff sought on motion rather than the citywide class alleged in the complaint, after the plaintiff

discovered evidence supporting a statewide definition); *McCarthy v. Paine Webber Grp., Inc.*, 164 F.R.D. 309, 311 (D. Conn. 1995) (certifying the broader class proposed in the motion for certification, noting that it was "not bound by the class definition proposed in the complaint"); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013) (finding that the "court has many tools at its disposal to address concerns regarding the appropriate contours of the putative class, including redefining the class during the certification process or creating subclasses"). And class definitions can expand when "[b]ased on evidence obtained in discovery." *Menking*, 287 F.R.D. at 181.

The path followed by the court in *In re Namenda Direct Purchaser Antitrust Litigation* is instructive. There, the plaintiffs moved to certify a class that was broader than the proposed class as defined in the complaint. The court certified the broader class as proposed in the class certification motion, on grounds, among others, that the plaintiffs did not seek to add new defendants or to broaden the scope of the class during the pendency of the class certification motion – instead, the broader class was the subject of the initial motion for class certification. In particular, the court found that the defendants had been properly joined, had notice of the proposed class, and were actively engaged in litigating the motion, so that certification of the broader class would not implicate any issues of notice or discovery. *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 211. And the court also observed that it could certify the expanded class because it had "broad discretion over class definition" and an "obligation to reassess class rulings as the case develops." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 211-12. In so doing, the court rejected the defendants' argument that "Plaintiffs 'were obligated to seek leave to amend the Complaint.'" *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 210.

Here, the record shows that the Plaintiffs' proposed expansion of the class, from borrowers with Tuition Answer Loans that exceeded the applicable "cost of attendance" to borrowers with any type of private student loan, no matter its label or name, that exceeded the "cost of attendance," has been part of the record and the subject of this Class Certification Motion for a considerable period, since the time the Class Certification Motion was made in December 2019.  And here, as in *In re Namenda Direct Purchaser Antitrust Litigation*, the Plaintiffs seek certification of a class that is broader than the class as defined in the Amended Complaint.  Like the plaintiffs in *In re Namenda Direct Purchaser Antitrust Litigation*, the Plaintiffs do not seek to add additional defendants.  Rather, in response to the discovery and the developments in this case, they propose to broaden the scope of the class to include, in substance, all borrowers with private student loans that meet the dischargeability criteria, regardless of the name of the loan instrument.

Navient posits that the discovery in this case has "mainly" focused on Tuition Answer Loans, so that if the class definition is expanded to include all "private loans" that exceed the "cost of attendance," the class would encompass "over 80 different loan programs and over 300,000 potential class members."  Supp. Opp. at 13.  Navient states that these other loan programs "have different features and requirements than the Tuition Answer program, and some of those differing features and requirements bear directly on dischargeability issues under 11 U.S.C. § 523(a)(8)."  *Id.*

Navient is correct that some of the other loan programs in its portfolio have different features than the Tuition Answer Loans that have been at issue since the inception of this case. In particular, Navient has shown that some of the categories of private student loans were disbursed directly to the relevant institution, rather than to the borrower.  Those loans would not

necessarily implicate the same course of conduct that the Plaintiffs allege led to the collection of discharged debts in the case of the Tuition Answer Loan program. As the Plaintiffs note, Navient, when communicating to investors, distinguished the "'additional risk'" of direct-to-consumer loans based on borrower certifications and warranties from those loans with "'school certification as an additional control.'" Class Cert. Mem. at 14 (citing Declaration of George F. Carpinello in Support of Plaintiffs' Motions for Summary Judgment, Class Certification and a Preliminary Injunction (the "Carpinello Decl."), ECF No. 179, Exh. R). And Navient's asserted policies, practices, and lack of "additional controls" to monitor when these direct-to-consumer loans exceeded the "cost of attendance," as well as its collection activities on those loans following a bankruptcy discharge, is the type of conduct of which the Plaintiffs complain.

Viewed another way, if loans in another program in Navient's portfolio have all the same relevant features, save for the name, as the Tuition Answer Loans identified in the Amended Complaint – that is, that they are direct-to-consumer, private student loans that exceed the "cost of attendance" at a Title IV institution – then borrowers who received discharges in bankruptcy and have not reaffirmed those loans may well have been subject to the same course of conduct alleged in the Amended Complaint. And it is appropriate to include those borrowers within the scope of the class.

The Court declines the invitation to expand the scope of the class to encompass all private student loans, as the Plaintiffs request. At the same time, to the extent that Navient's portfolio includes other private student loan programs where loans made on a direct-to-consumer basis exceed the applicable "cost of attendance," borrowers under such programs belong in the class to the same degree as borrowers under the Tuition Answer Loan program. As the court found in *In re Woodard*, "the primary issue in the case is whether the loans involved in this

proposed class action were discharged in bankruptcy, so the focus should be on the dischargeable or non-dischargeable nature of the loan rather than what the loan is named." *In re Woodard*, 2023 WL 2412750, at *5.

For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that it is appropriate to consider the question of the certification of a class under Rule 23(a) and 23(b) in the framework of the class as proposed in the Class Certification Motion – that is, individuals who attended or intended to attend Title IV institutions and who received private loans that are owned or serviced by Navient which exceeded the "cost of attendance" at those institutions as defined in 26 U.S.C. § 221(d), who received bankruptcy discharges after October 17, 2005, who have been the subject of collection activities by Navient, and who have not reaffirmed their loans.

The Court next considers the four prerequisites to class certification set forth in Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation.

Numerosity

The first prerequisite of Rule 23(a) that the Plaintiffs must meet is that of numerosity, or a showing "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). And in the Second Circuit, a proposed class of at least 40 members presumptively satisfies numerosity. *See Consol. Rail Corp.*, 47 F.3d at 483.

The Plaintiffs have presented evidence that more than 31,000 people received direct-to-consumer loans for which Navient did not receive certifications that the loans were within the "cost of attendance." Class Cert. Mem. at 18 (citing Carpinello Decl., ¶ 25). In its certification that it is in compliance with this Court's TRO, Navient states that it ceased collection activities on 7,368 Tuition Answer Loans where at least one borrower received a discharge in bankruptcy

on or after January 1, 2005, and the amount disbursed on each loan exceeded the IPEDS cost of attendance figures for the relevant institution. Notice of Compliance at 1-2. Navient does not specifically contest numerosity, and even Navient's more conservative estimate of the number of potential class members well exceeds the presumptive threshold of 40 members. And further, even if this Court were to limit the class to borrowers who received their discharges in the Eastern District of New York, the number of class members plainly meets the requirements of Rule 23(a)(1).

It is also worth noting that the class, by definition, is composed of individuals that have sought relief in the bankruptcy court and may lack the financial resources or ability to bring individual actions, and this is relevant as well. *See Penn. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 120 (listing class members' financial resources and ability to bring separate actions among factors bearing on numerosity). As a consequence, the interests of judicial economy also confirm that joinder of all Putative Class Members would be impracticable.

For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that the first prerequisite of Rule 23(a), that "the class is so numerous that joiner of all members is impracticable," is satisfied.

<u>Commonality</u>

Next, the Plaintiffs must demonstrate commonality, or that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, the Plaintiffs argue that the prerequisite of "commonality is easily satisfied" because the Plaintiffs' and the Putative Class Members' claims all arise from the same uniform course of conduct by Navient. Class Cert. Mem. at 19. This alleged course of conduct includes that the Plaintiffs and the Putative Class Members entered into private student loans, that Navient did not determine "cost of attendance"

when the loans were made, and that Navient resumed its collection activities after the Plaintiffs

and the Putative Class Members received their bankruptcy discharges without determining

whether their loans exceeded the "cost of attendance."  Class Cert. Mem. at 19.

The Plaintiffs also assert that the following questions are common to the proposed class:

> [I]s a private loan that exceeds the cost of attendance dischargeable?; can a boilerplate certification make a loan non-dischargeable even if it exceeds the cost of attendance?; does signing a promissory note with Defendants' boilerplate certification constitute a "fraud" on Defendants?; does the fact that borrowers continue to make payments after being notified by Defendants that their loan is non-dischargeable constitute a "voluntary" payment?; and finally, is the class guilty of laches because class members have not challenged the dischargeability of their debts until now?

Reply at 16.

As the Second Circuit has held, even a single common question of law or fact is

sufficient to satisfy the commonality requirement, and the Plaintiffs make that showing here.  *See*

*Consol. Rail Corp.*, 47 F.3d at 483.  Specifically, the determination of whether private, direct-to-

consumer student loans that exceed the "cost of attendance" are dischargeable in bankruptcy

"'will affect all or a significant number of the putative class members.'"  *Barrows*, 24 F.4th at

131 (quoting *Nextel Commc'ns Inc.*, 780 F.3d at 137).

In response, Navient argues that individual questions predominate over common

questions, and that these individual questions preclude a finding that the class is ascertainable.

But the existence of individual questions as to the facts and circumstances of a particular loan

does not defeat a finding of commonality where "injuries derive from a unitary course of conduct

by a single system."  *Marisol A.*, 126 F.3d at 377.  And a common question exists where "if each

Class members were to pursue this theory individually, 'each would have to prove the same

course of conduct, using the same documents and witnesses.'"  *In re Namenda Direct Purchaser*

*Antitrust Litig.*, 331 F. Supp. at 215.

Here, the Plaintiffs have identified several questions of both law and fact that are common to the Putative Class Members, as described in the Class Certification Motion. These include the nature and terms of the borrowers' private student loans, their circumstances as debtors who received bankruptcy discharges, Navient's resumption of collection activities, and Navient's policies and practices with respect to determining whether their loans exceeded the "cost of attendance" for purposes of Section 523(a)(8), among others. These also include the questions of the effect of the borrowers' certifications in the loan documents as to dischargeability, and finally, whether these direct-to-consumer private student loans are excluded from their bankruptcy discharges.

For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that the second prerequisite of Rule 23(a), that "there are questions of law or face common to the class," is satisfied.

<u>Typicality</u>

The third prerequisite of Rule 23(a) that the Plaintiffs must satisfy is that their claims or defenses, as the representatives of the class, "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, as with their arguments in support of commonality, the Plaintiffs state that Navient committed the same wrongful acts, in the same manner, pursuant to the same policies and practices, against the Plaintiffs and against each Putative Class Member, so that each member of the class would make the same legal arguments to in support of their claims, and Navient would assert the same defenses in response to those claims. Class Cert. Mem. at 20-21.

Navient disagrees that the Plaintiffs' claims are typical of those of the Putative Class Members, for several reasons. First, they argue that the Plaintiffs have different loan forms, even among their Tuition Answer Loans, and therefore cannot show that their loans are "typical" in

type and documentation even among themselves, much less that they are "typical" of the loans of the other members of the proposed class.  Opp. at 46.  The Plaintiffs reply that Navient has not supported these assertions with evidence that their loans are different in any material respect from the loans that were made to other Putative Class Members.  Reply at 19.

Navient also argues that neither Mr. Homaidan nor Ms. Youssef can represent the interests of Putative Class Members with Chapter 13 bankruptcy discharges, as opposed to Chapter 7 discharges.  Opp. at 46.  But they do not persuasively explain why this would alter either the facts or the legal analysis as to whether their collection activities violated a class member's bankruptcy discharge.  As the Plaintiffs argue, the chapter of the underlying bankruptcy case is not material, because if the loans "do not come within the terms of § 523(a)(8), they are dischargeable whether the petitioner sought Chapter 7 or Chapter 13 relief." Reply at 20.

Navient further asserts that neither of the Plaintiffs "can represent the interests of class members whose loans are owned by entities other than Navient, as many of the putative class members' loans are merely serviced by Navient."  Opp. at 46.  But here again, Navient does not offer persuasive grounds as to why this distinction would make a difference.  As the Plaintiffs state, the distinction between owning and servicing a class member's loan is legally irrelevant to the question of a discharge injunction violation, because "collecting on discharged debts as either owner or servicer, . . . violat[es] the discharge injunction."  Reply at 20.  And the protection of the bankruptcy discharge would be feeble indeed if it could be overcome by delegating the prohibited collection activities to a servicer of a loan.

At the outset, it is worth noting that the prerequisite of typicality is not a requirement that the particular underlying facts of each class member's claim be identical to the facts that give

rise to the claims of the named plaintiff.  If that were the case, then it is hard to see how any class that addresses claims arising from multiple individual transactions could ever be certified.  And here, the fact that the forms or titles of the loans are not identical does not defeat typicality.  It is the nature of the Plaintiffs' claims, and not the specific facts from which they arise, that must be typical of the class.

Navient is correct that there are certain to be factual distinctions between the Plaintiffs' particular loans and those of many Putative Class Members.  They undoubtedly attended different Title IV institutions, entered into their private direct-to-consumer loans on different dates, in different amounts, and for some, in different loan programs.  And each Putative Class Member may have repaid some, all, or none of their loan since receiving their discharge in bankruptcy.

But those differences in the details do not mean that the Plaintiffs' claims, and Navient's defenses to those claims, are somehow not "typical" of the claims and defenses pertinent to the class.  The Plaintiffs' claims address asserted efforts by Navient to collect on a nationwide, class-wide basis, private direct-to-consumer student loans that exceed the "cost of attendance," and the uniform policies and practices that informed those efforts.  And the differences between each Putative Class Member – the chapter in bankruptcy, the name of the loan program, the loan forms, the status of the loan as owned or serviced by Navient – do not diminish the "typicality" of the Plaintiffs' claims and defenses here.  It is expected that every individual will have some minor difference in circumstances.

That is, the question to be determined is, in substance, the dischargeability of private, direct-to-consumer student loan debts that exceed the "cost of attendance," and this question applies with "'essentially the same degree of centrality'" regardless of the particular title and

terms of the loan, whether a borrower filed for bankruptcy under Chapter 7 or Chapter 13, or whether Navient owns or services that borrower's loan debt.  *See In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. at 272-73 (quoting *Caridad*, 191 F.3d at 293).  As the court observed in *In re Woodard*, "the primary issue in the case is whether the loans involved in this proposed class action were discharged in bankruptcy, so the focus should be on the dischargeable or non-dischargeable nature of the loan rather than what the loan is named."  *In re Woodard*, 2023 WL 2412750, at *5.

And so here.  For these reasons and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that the third prerequisite of Rule 23, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," is satisfied.

Adequacy of Representation

The final prerequisite of Rule 23(a) that the Plaintiffs must show, under Rule 23(a)(4), is that they and their counsel are capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Plaintiffs argue that they are adequate representatives of the class because, among other reasons, they "have a general knowledge of the case, communicate with class counsel, and show a willingness to participate in the litigation, such as presenting declarations and appearing for depositions, as [they] have done here."  Reply at 20-21 (citing *Mendez*, 314 F.R.D. at 57-58).

Navient responds that Mr. Homaidan and Ms. Youssef are not adequate class representatives because of their "false certifications in their promissory notes" and their reliance "on counsel's unfettered discretion in conducting this litigation."  Opp. at 46.  Navient also argues that the Plaintiffs' testimony demonstrates that "they are not meaningfully exercising any

independent judgment in litigating this case and lack basic knowledge about the fundamental details of the litigation being conducted in their own names."  Opp. at 46-47.  Specifically, Navient states that as to Mr. Homaidan, he testified at his deposition that he did not review the Complaint before it was filed, did not know the differences between the Complaint and the Amended Complaint, and had not seen Navient's discovery request documents; and that as to Ms. Youssef, she testified at her deposition that she was not familiar with the form of the Complaint or Navient's discovery requests.  Opp. at 47.

Here, the record shows that the Plaintiffs have demonstrated their general knowledge of the case and willingness to participate in this action – that is, fairly and adequately to represent the class.  A detailed knowledge of every document, discovery request, and procedural and substantive twist and turn is not required to meet this standard.  And Mr. Homaidan and Ms. Youssef each sat for a deposition, and testified to producing documents at the request of counsel. The fact that they may not have personally reviewed the language of the Amended Complaint or that of Navient's discovery requests and instead relied on communications with counsel does not undermine the adequacy of their participation, and does not rise to the same level as the "'flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'"  *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. at 51 (quoting *Koss*, 2009 WL 928087, at *7).  Further, there is no indication that Mr. Homaidan or Ms. Youssef has antagonistic or conflicting interests with other class members.

In addition, the record shows that the Plaintiffs' counsel is "qualified, experienced, and generally able to conduct the litigation."  *Marisol A.*, 126 F.3d at 378.  It is apparent that counsel has the knowledge, skills, resources, and commitment to pursue this case vigorously.  They have

brought other bankruptcy cases addressing the dischargeability of student loans, and other putative class actions, and have been involved in substantial motion practice and discovery in this case.

For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that the fourth prerequisite of Rule 23(a), that they will "fairly and adequately protect the interests of the class," is satisfied.

<u>Ascertainability</u>

Finally, in addition to the prerequisites of Rule 23(a), the Plaintiffs must show that the proposed class is ascertainable. The Second Circuit has "'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *In re Petrobras Sec. Litig.*, 862 F.3d at 260 (quoting *Brecher*, 806 F.3d at 24). This is a "modest threshold" and does not require the Plaintiffs "to offer *proof of membership* under a given class definition," but rather, to demonstrate that the class is "defined using objective criteria that establish a membership with definite boundaries" and is not "indeterminate in some fundamental way." *In re Petrobras Sec. Litig.*, 862 F.3d at 269. That is, it must be objectively feasible to determine who is in, and who is out, of the proposed class.

The Plaintiffs argue that "[a]scertainability is readily met in this case, as the presumptive Class can be ascertained through objective criteria in the form of Defendants' own records." Class Cert. Mem. at 24 (citing *Flores*, 284 F.R.D. at 123; *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 WL 5813382 (S.D.N.Y. Sept. 28, 2015)). And they state that Navient possesses the relevant information about each borrower's direct-to-consumer loan that may be subject to that borrower's discharge and that "[t]he cost of attendance at each institution and the certified loans

and financial aid each borrower received can be ascertained from the relevant schools."  Class Cert. Mem. at 24.

The Plaintiffs also note that Navient "sent subpoenas to Plaintiffs' colleges seeking information about the cost of attendance at each of their colleges," further indicating that colleges can verify the "cost of attendance."  *Id*.  And the Plaintiffs state that "the cost of attendance for each student who has applied for federally-guaranteed financial aid is in a database maintained by the federal government known as the Federal Student Financial Application File," and "the cost of attendance for each school, for every year" is available on IPEDS.  Class Cert. Mem. at 24-25.

As a result, the Plaintiffs argue, determination of the class is possible through a "'ministerial review'" of this objective data, and "[c]ase-by-case review of the borrowers' records to determine which loans are within or in excess of the cost of attendance will not defeat certification."  Class Cert. Mem. at 25 (citing *Audet v. Fraser*, 332 F.R.D. 53, 72-73 (D. Conn. 2019)).  And to the extent that there is any uncertainty as to whether a loan exceeds the "cost of attendance," the Plaintiffs argue that the cause lies with Navient, which should not be permitted to avoid liability based on its own inadequate records, and which, as the creditor, would ordinarily bear the burden of proving the nondischargeability of a debt in bankruptcy.  Class Cert. Mem. at 26-27.  That is, in substance, the Plaintiffs state that Navient cannot rely on the same alleged problematic conduct that gave rise to these claims in order now to assert that it cannot discern whether a Putative Class Member's loan exceeds the applicable "cost of attendance."

Navient responds that the proposed class is not ascertainable because "the class criteria specifying that each class member receive 'private loans . . . which exceeded the cost of

attendance . . . as defined in 26 U.S.C. § 221(d)' renders the class indefinite." Opp. at 16. It

states that 26 U.S.C. § 221(d) contains a dozen factors that bear on a particular borrower's "cost

of attendance," which varies according to the borrower's individual circumstances, and may

include other potential costs related to the pursuit of an education that are not subject to

institutional lending caps, "such as certain room and board costs and the costs of dependent

childcare." *Id*. And Navient argues that these factors would require extensive individualized

inquiries for criteria including borrower petition and discharge dates, district of bankruptcy,

assessment of other loans held by borrower, identification of cosigners, and contact information.

Opp. at 16-17. Navient also argues that the IPEDS data offered by the Plaintiffs does not address

these factors in a way that is sufficient to identify the individual borrower's actual cost of

attendance. Supp. Opp. at 9. As a result, Navient states, "determining class membership here

will inevitably devolve into a series of mini-trials that, in the Second Circuit's words, are

anathema to class certification." *Id*.

The Plaintiffs reply that Navient's characterization of the individualized issues is simply

irrelevant. According to the Plaintiffs, "class membership is determined by three objective facts:

(1) what was the cost of attendance for each individual student; (2) what was the amount of other

loans, grants or scholarships; and (3) what was the amount of Defendants' direct-to-consumer

loan?" Reply at 17. The Plaintiffs add that "cost of attendance" can be ascertained through the

IPEDS database. *Id*.

It is clear from the record that the Plaintiffs and Navient advance different views of the

meaning of "cost of attendance," and as a consequence, of the ascertainability of the proposed

class. The Plaintiffs bear the burden to show that this is an objective figure that can be used to

determine the boundaries of the class. If Navient is correct that "cost of attendance" depends on

an extensive, subjective, individualized inquiry, then the class may not be ascertainable.

But Navient's argument misses the mark.  As this and other courts have found, a borrower's "cost of attendance" is not determined by the individual student borrower's individualized choices.  It is not a question of whether a student is thrifty, or moderate, or extravagant.  Rather, as the Sixth Circuit stated, "the 'cost of attendance'" includes "sums for tuition & fees, room & board, books, materials, supplies, transportation, and 'miscellaneous personal expenses' for enrolled students, *in amounts determined by the university*."  *Conti v. Arrowood Indem. Co.* (*In re Conti*), 982 F.3d 445, 448 (6th Cir. 2020) (emphasis added).  It is a standard, benchmark figure, not an individualized calculation.

As the Plaintiffs state, Navient "may show that an individual borrower is excluded from the class because their loan was within the cost of attendance," and its "inability to make such showing based on their own records does not render the class unascertainable."  Supp. Mem. at 3 (citing *Harte*, 2018 WL 1830811, at *31).  And as a practical matter, Navient has already demonstrated that it is able to identify loans that meet certain applicable criteria, as stated in its Notice of Compliance.

This is confirmed by a review of the relevant statutory language, not in the Bankruptcy Code, but in the federal statute addressing higher education resources and student assistance.  There, "cost of attendance" is defined to include, among other items, "tuition and fees *normally assessed a student carrying the same academic workload as determined by the institution*," "*an allowance (as determined by the institution)* for room and board costs incurred by the student," and "for a student with one or more dependents, an allowance *based on the estimated actual expenses incurred* for such dependent care."  20 U.S.C. § 1087ll(1)-(3), (8) (emphasis added).  In other words, the purpose of determining "cost of attendance" is to provide a prospective and

standard benchmark estimate of costs, rather than to calculate an individualized, subjective, retrospective sum.

And consistent with this statutory framework, while the actual costs incurred by individual students – and individual debtors – may vary widely based on their individual circumstances and choices, the "amounts determined by the university" based on specified criteria including tuition and fees, room and board, "books, materials, supplies, transportation, and 'miscellaneous personal expenses'" are "determined by the university" and reported on the IPEDS data system. *In re Conti*, 982 F.3d at 448. *See* Reply Declaration of Mark Kantrowitz, ECF No. 220, at 2, ¶ 4. As the Sixth Circuit observed, "cost of attendance" is "determined by the university" and certified by the school's financial aid office, rather than somehow based on the plaintiff's individualized costs and expenses, and it is this objective figure that should be used to determine whether a loan exceeds the "cost of attendance." *In re Conti*, 982 F.3d at 447.

Notably, this is consistent with this Court's previous determination that IPEDS data may be considered as part of the record on the question of whether a private student loan exceeds the "cost of attendance." In *Golden v. National Collegiate Student Loan Trust 2005-3* (*In re Golden*), 2022 WL 362913 (Bankr. E.D.N.Y. Feb. 4, 2022), this Court considered whether to strike portions of an expert's report on grounds that it stated legal opinions, rather than expert opinions. There, the Court concluded that the report would be stricken in part, to the extent that it stated, "legal opinions, interpretations, or conclusions . . . or alternatively, states a legal opinion on the ultimate issues to be decided." *In re Golden*, 2022 WL 362913, at *14. At the same time, the Court concluded that the expert's report would not be stricken to the extent that it stated, "expert opinion, based on [the expert's] education, experience, and expertise." *In re Golden*, 2022 WL 362913, at *15.

The Court also found that IPEDS data stated or quoted in the expert's report concerning "cost of attendance" would not be stricken:

> [T]o the extent that an expert's testimony . . . simply states or quotes from . . . survey responses and data reported to IPEDS, that is not a statement of legal opinion, or for that matter expert opinion at all . . . And to this extent, the Motion to Strike is denied.
>
> . . .
>
> The Motion to Strike . . . is denied to the extent that the [Expert] Report states or quotes from . . . survey responses and data reported to IPEDS.

*In re Golden*, 2022 WL 362913, at *14-15.

In sum, the Plaintiffs have shown that the proposed class is ascertainable because class membership is based on discernable, objective criteria:  each Putative Class Member's direct-to-consumer private student loan, each Putative Class Member's "cost of attendance," and each Putative Class Member's other loans, grants, or scholarships.  While these criteria may require some inquiry, that is not the same as class criteria that are grounded in subjective, not objective, criteria, or that require individualized "mini-trials."  And indeed, a lender or servicer of private student loans could reasonably be expected to maintain this information in its records, in order to determine whether a loan on its books is within the scope of a borrower's bankruptcy discharge.

For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that the requirement of ascertainability of the class, as established by the Second Circuit in *In re Petrobras Securities Litigation*, 862 F.3d at 269, is satisfied.

### *Whether a Rule 23(b)(2) Injunctive Relief Class Should Be Certified*

The next step in considering the Plaintiffs' Class Certification Motion is the question of whether the Plaintiffs have met their burden to show that the proposed class also conforms to at

least one of the subsections of Rule 23(b).  *Dukes*, 564 U.S. at 345.  And here, the Plaintiffs seek certification of a Rule 23(b)(2) class for injunctive relief, and a Rule 23(b)(3) class for damages.

Certification of a class for injunctive and declaratory relief pursuant to Rule 23(b)(2) may be proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as whole."  Fed. R. Civ. P. 23(b)(2).  That is, certification under Rule 23(b)(2) is appropriate when "a single injunction would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360-61.

The Plaintiffs seek certification of a class under Rule 23(b)(2) because they assert that Navient has "engaged in exactly the same conduct with regard to every class member."  Class Cert. Mem. at 28.  Because of this, they argue that Navient should be "permanently enjoined" from collecting the class members' private student loans that exceeded the "cost of attendance" and were discharged in bankruptcy, and from attempting to collect on any such loans that may be discharged in future bankruptcy proceedings.  *Id.*

Navient opposes this certification of a Rule 23(b)(2) class and argues that the relief sought is duplicative of the proposed class members' discharge injunctions.  Opp. at 21.  Instead, it states that contempt of the injunction is the appropriate remedy for a violation of the discharge injunction.  Opp. at 21 (citing *Taggart*, 139 S. Ct. at 1801).  And Navient asserts that here, the monetary relief is not incidental to the injunctive or declaratory relief.  Opp. at 25.

The Plaintiffs reply that this Court has already held that the Plaintiffs may seek a declaratory judgment in this case.  Reply at 15 (citing *In re Homaidan*, 596 B.R. at 100-01).  There, this Court stated that "that the threshold requirements for a declaratory judgment claim are met" because Mr. Homaidan, in the original Complaint, "alleged a 'substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance' of relief." *In re Homaidan*, 596 B.R. at 101 (quoting *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n* (*In re Prudential Lines Inc.*), 158 F.3d 65, 70 (2d Cir. 1998)).  And the Plaintiffs argue that the question of contempt is different from whether the Plaintiffs are entitled to a declaratory judgment that their loans are discharged and, based on that declaration, whether they are entitled to restitution of all funds paid on discharged debts as well as an injunction enjoining future collection.

Here, the record shows that Navient "has acted or refused to act on grounds that apply generally to the class," with respect to the Plaintiffs' and the Putative Class Members' private student loans, in several ways.  Fed. R. Civ. P. 23(b)(2).  These include Navient's reliance on the Putative Class Members' representations with respect to the dischargeability of their loans in their loan documents, Navient's policies and practices not to consider whether an individual's loans exceeded the applicable "cost of attendance," and Navient's resumption of collection activities on those loans following the entry of the borrowers' bankruptcy discharges, among other actions.  As a consequence, if the Plaintiffs succeed in proving their claims, "final injunctive relief or corresponding declaratory relief" addressed to Navient and concerning "the class as a whole" may be appropriate.  *Id.*

Viewed another way, declaratory and injunctive relief will clarify and settle the significant legal and factual issues with general application to the class and to Navient.  It will also afford relief from the uncertainty of whether the loans at issue are discharged in bankruptcy and therefore not collectible.

For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that certification of a class for

declaratory and injunctive relief under Rule 23(b)(2) is warranted.

_Whether a Rule 23(b)(3) Damages Class Should Be Certified_

The Plaintiffs also seek certification of a damages class under Rule 23(b)(3). Certification of a damages class under Rule 23(b)(3) is allowed where common questions predominate over individual questions, and the class action vehicle is superior to other possible methods of "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers these requirements in turn.

Predominance

The first subject for the Court's consideration in determining whether a Rule 23(b)(3) damages class should be certified is whether "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). That is, the Plaintiffs must show that questions common to the class predominate over individual ones, and must do so by a preponderance of the evidence.

This requires an inquiry beyond the assessment of commonality under Rule 23(a). As the Supreme Court has observed, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." _Comcast Corp._, 569 U.S. at 34 (citing _Amchem Prods., Inc._, 521 U.S. at 623-24). In making this determination, a court considers not only whether a question is subject to a common answer but also whether the "kind of proof that will be needed to resolve that question at trial" may apply to the class as a whole, rather than significantly varying member by member. _In re Namenda Direct Purchaser Antitrust Litig._, 331 F. Supp. 3d at 204.

At the same time, this does not require that each class member must be entitled to an identical recovery. Rather, even where class members suffer individualized damages, common questions may still predominate when a defendant is subject to a class-wide determination of

liability. *In re Woodard*, 2023 WL 2412750, at *6. As the bankruptcy court found in *In re Woodard*, "the necessity for such individualized findings in the future should not derail the efficiencies of ascertaining liability through a class action." *Id*.

The Plaintiffs argue that Navient's "persistent course of conduct" raises common questions that predominate over any individual inquiries, and that can lead to a class-wide determination of liability. Class Cert. Mem. at 30-31 (citing *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). And they state that Navient's likely defense of reliance on "standard boilerplate" language in the Putative Class Members' loan applications is similarly common to the class. Class Cert. Mem. at 31. The Plaintiffs also argue that determining each Putative Class Member's potential damages "is a mechanical process based on Defendants' own records." Class Cert. Mem. at 32. And the Plaintiffs seek punitive damages, which they argue "can easily be determined on a class-wide basis." Class Cert. Mem. at 34-35.

Navient responds that "[t]he voluntariness, fraud-based, and other individualized defenses and issues [it has] presented in this case, which Plaintiffs cannot defeat with class-wide proof, demonstrate that common questions do not predominate." Opp. at 41. Navient also argues that the Court cannot "discriminate among Navient's defenses" by allowing Navient to bring "some defenses" against the class, while at the same time forcing Navient to bring other defenses, including any Section 523(a)(2) nondischargeability claims, "separately, in individual cases, and presumably in other courts." Supp. Opp. at 11.

The Plaintiffs reply that here, there are many common questions of law or fact that predominate over any individualized questions:

> [I]s a private loan that exceeds the cost of attendance dischargeable?; can a boilerplate certification make a loan non-dischargeable even if it exceeds the cost of attendance?; does signing a promissory note with Defendants' boilerplate certification constitute a "fraud" on Defendants?; does the fact that borrowers

> continue to make payments after being notified by Defendants that their loan is
> non-dischargeable constitute a "voluntary" payment?; and finally, is the class
> guilty of laches because class members have not challenged the dischargeability
> of their debts until now?

Reply at 16.  The Plaintiffs also note that certain of Navient's defenses are in the nature of

common questions, including its assertions that it was entitled to rely on the "boilerplate

certifications" in each Putative Class Member's loan documentation, and its claim that the

Putative Class Members' private student loans may be nondischargeable on the grounds of fraud,

again based on the "boilerplate certifications."  Supp. Reply at 6.

Here, the record shows that at least one thing is clear.  Nearly six years after this

adversary proceeding was commenced, and after the parties and the Court have addressed issues

from the question of arbitrability of the Plaintiffs' claims, to whether the Plaintiffs' private

student loans are nondischargeable because they are debts arising from an "obligation to repay

funds received as an educational benefit" under Bankruptcy Code Section 523(a)(8)(A)(ii), to the

appropriate boundaries for expert testimony, as well as both temporary and preliminary

injunctive relief, and more, this case principally concerns a common set of "questions of law and

fact" that predominate over "questions affecting only individual members" of the putative class.

This is, in substance, whether the Putative Class Members' direct-to-consumer private student

loans that exceed the "cost of attendance" are within or outside their bankruptcy discharges.  To

be sure, this overarching question encompasses other questions, including how to interpret "cost

of attendance" and the consequence of the borrower's certification as to nondischargeability at

the time of entering into the loan, among others.  But these questions, too, are common to the

class.

In addition, while the individual facts and circumstances of an individual's private

student loan may differ, including the name of the loan program, the amount and terms of the

loan, the current balance, and the applicable "cost of attendance" for that borrower, these details do not undermine the significant and substantial predominance of common questions of law and fact over the details of an individual borrower's particular situation.

As this Court has previously observed, nothing in the relief that the Plaintiffs seek, either in the context of this Class Certification Motion or in this adversary proceeding, would compromise or limit Navient's ability to assert a claim that a debtor procured a loan by fraudulent or dishonest means. If Navient seeks to establish that in a particular situation, the borrower obtained their loan "by . . . false pretenses, a false representation, or actual fraud," then it may do so, by bringing a nondischargeability action under Bankruptcy Code Section 523(a)(2)(A), subject to whatever defenses may exist. In such an action, Navient would bear the burden to show:

> first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made; third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation.

*First Am. Title Ins. Co. v. Moses* (*In re Moses*), 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing *Fleet Credit Card Servs. L.P. v. Macias* (*In re Macias*), 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citation omitted)). *See* Prelim. Inj. Stay Decision at 61.

And as this Court has previously stated, "Section 523(a)(2)(A) actions arise in the context of a discharged debt, and if the necessary showing is made, that debt will be excluded from the scope of a debtor's discharge. Section 523(a)(2)(A) does not provide a self-executing or preemptive means for a creditor to avoid the consequences of a discharge violation." *In re Homaidan*, 640 B.R. at 849.

For these reasons, and based on the entire record, the Court finds and concludes that the

Plaintiffs have shown, by a preponderance of the evidence, that the first requirement of Rule 23(b)(3), that questions common to the class predominate over any questions affecting only individual members, is satisfied.

<u>Superiority</u>

The second subject for the Court's consideration in determining whether a Rule 23(b)(3) damages class should be certified is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) identifies four matters for courts to consider in assessing the superiority of class treatment:

(A)      the class members' interests in individually controlling the prosecution or defense of separate actions;
(B)      the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

The Plaintiffs argue that a class action is plainly superior to other methods to adjudicate the issues here because, among other reasons, "[n]ot only are common issues likely to be dispositive of this case, but the high costs of litigation relative to each class member's damages and the economic status of class members, who have all gone through personal bankruptcy, make it unlikely that many class members will pursue individual legal actions."  Reply at 35.  They argue that the common question of dischargeability of the Putative Class Members' direct-to-consumer private student loans makes the class manageable.  *Id*.  And they state that their counsel has the resources to provide constitutionally sound notice to the Putative Class Members. Reply at 37.

Navient responds that class resolution is not superior because "[e]ach of the class members have a strong interest in controlling prosecution of separate actions – as demonstrated by each filing an individual bankruptcy petition."  Opp. at 43.  And they point to the unique, individualized circumstances of each Putative Class Member, as well as the "hundreds of cases involving the discharge status of private student loans" to which Navient has been a party since 2005.  *Id.*

The Plaintiffs reply that Navient's position suggests that individual actions in the form of borrowers reopening their individual bankruptcies "before hundreds of different bankruptcy judges, all to decide the exact same issue" would somehow be superior to a single proceeding. Reply at 18.  They suggest that this is an impractical and unrealistic result that would mean "that each former debtor must return, like the Holy Family traveling to Bethlehem for the census, to the court in which they received their discharge, even if it is thousands of miles away."  *Id.*  And they point out that Navient still would have to determine the "cost of attendance" for each individual borrower, regardless of the individual or class form of the action.  *Id.*  The Plaintiffs argue that as a practical matter, Navient is aware "that the vast majority of class members will be either unaware of their rights or lack the resources to enforce those rights," allowing Navient to continue collecting on their private student loans in the absence of class treatment.  *Id.*

Here, the record shows that a single class action is plainly a more efficient way to address the claims of hundreds, and perhaps thousands, of borrowers than individual actions by each of those borrowers, for several reasons.  This case presents significant and substantial common questions of law and fact affecting the Putative Class Members and Navient, including the nature and terms of the borrowers' private direct-to-consumer student loans, their circumstances as debtors who received bankruptcy discharges, Navient's resumption of collection activities, and

Navient's policies and practices with respect to determining whether their loans exceeded the "cost of attendance" for purposes of Section 523(a)(8), among others.  These also include the questions of the effect of the borrowers' certifications in the loan documents as to dischargeability, and finally, whether these direct-to-consumer private student loans are excluded from their bankruptcy discharges.  And equally plainly, here, the record shows that joinder of the Putative Class Members as individual parties to this action would be impracticable.

And the record also shows that the "matters pertinent" noted in Rule 23 are consistent with the conclusion that a class action is superior to other methods fairly and efficiently to adjudicate these claims.  The record does not show, or even suggest, that Putative Class Members have an interest in "individually controlling the prosecution" of this action.  Fed. R. Civ. P. 23(b)(3)(A).  Nor is there other litigation pending by Putative Class Members "concerning the controversy."  Fed. R. Civ. P. 23(b)(3)(B).  Similarly, the record does not show, or even suggest, that it is somehow undesirable to "concentrate[] the litigation of the claims in [this] forum."  Fed. R. Civ. P. 23(b)(3)(C).  And finally, there do not appear to be any "likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  Indeed, the parties have already established a website to provide information to Putative Class Members in connection with this Court's Preliminary Injunction, enjoining Navient from collecting on Tuition Answer Loans that exceed the "cost of attendance," and that injunction remains in place.

In similar circumstances, considering a proposed class of student loan borrowers, the court in *In re Woodard* observed:

> The economies of going forward as a class also favor the plaintiff.  Navient's records indicate there are more than 1,000 borrowers, and many of them have a relatively low average outstanding principal balance of less than $2,500.  Given present litigation costs, it is unlikely that individual borrowers would be willing to pursue their claims against Navient, so becoming part of a class action would be in their best interests.  Likewise, judicial economy favors a class action in one

court instead of hundreds of individual lawsuits filed in multiple courts.

*In re Woodard*, 2023 WL 2412750, at *7.

Again, and so here. For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have shown, by a preponderance of the evidence, that the second requirement of Rule 23(b)(3), that a class action is superior to other methods for fairly and efficiently adjudicating the controversy, is satisfied.

<u>*Whether the Proposed Class Is an Impermissible Fail-Safe Class*</u>

One issue identified by Navient remains to be addressed. Even if the Rule 23 factors have all been met, certification of the proposed class may still fail if it is an impermissible fail-safe class. "A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability." *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 369 (5th Cir. 2012).

Navient states that, in order to make a determination as to who is a member of the proposed class, a determination as to liability would be required because "the proposed class incorporates only class members with 'discharged debts,' whose private loans Plaintiffs allege exceed a statutory cost of attendance at an eligible educational institution." Opp. at 19-20. In other words, Navient argues that it is impossible to ascertain class members without burdensome mini-trials involving a determination on ultimate liability. Opp. at 20.

The Plaintiffs respond that the proposed class is defined by objective facts and not legal conclusions, and that these facts define the class without predetermining the ultimate legal questions to be addressed. Reply at 21. These facts include whether the Putative Class Members attended or intended to attend Title VI institutions, whether they received private direct-to-

consumer student loans from Navient that exceeded the "cost of attendance," whether they obtained bankruptcy discharges after October 1, 2005, whether they were subsequently subject to Navient's collection activities, and whether they have reaffirmed their loans. *Id.*

The starting point to determine whether the Plaintiffs have proposed a "fail-safe class" is the description of the proposed class. In the Class Certification Motion, the Plaintiffs seek to certify a class of:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Class Cert. Mem. at 15.

These criteria are in the nature of objective facts, not legal conclusions. There are no key words such as "harmed by" or "damaged by," as cited by some courts. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 528-30 (S.D.N.Y. 2018) (finding that a class definition that described members as "harmed" or "damaged" could be a fail-safe class). Nor does the description of the class include language that describes the Putative Class Members' loans as, in substance, "discharged debts."

Viewed another way, the requirements and boundaries of the proposed class do not presuppose or predetermine whether Navient is liable, and nothing in the class definition imputes a liability determination to Navient. Rather, the criteria are objective and ascertainable, and they permit a determination on the merits of the Plaintiffs' claims and Navient's defenses, but they do not fix that result. That task remains for the parties to address, and ultimately, for this Court to decide.

For these reasons, and based on the entire record, the Court finds and concludes that the

Plaintiffs have shown, by a preponderance of the evidence, that the proposed class is not a "fail-safe" class.

## Conclusion

Based on the entire record and for the reasons stated herein, the Plaintiffs' Motion for Class Certification is granted in part.

This Court certifies a class under Federal Rule of Civil Procedure 23(b)(2) for declaratory and injunctive relief, and a class under Federal Rule of Civil Procedure Rule 23(b)(3) for damages.

The members of each class shall be all individuals who attended or intended to attend Title IV institutions and who received direct-to-consumer private loans owned or serviced by Navient which exceeded the "cost of attendance" at those institutions, as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after October 17, 2005; who were subsequently subjected to Navient's acts to collect on those loans; and who have not reaffirmed their loans.

An order in accordance with the Memorandum Decision will be entered simultaneously herewith.

Dated: Brooklyn, New York
April 11, 2023

Elizabeth S. Stong
United States Bankruptcy Judge