**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| **HILAL K. HOMAIDAN,**<br>**f/k/a Helal K. Homaidan,** | **Case No. 08–48275 (ESS)** |
| **Debtor.** | |
| In re: | Chapter 7 |
| **REEHAM YOUSSEF aka Reeham**<br>**Navarro Youssef aka Reeham N. Youssef,** | **Case No. 13–46495 (ESS)** |
| **Debtor.** | |
| **HILAL K. HOMAIDAN on behalf of**<br>**himself and all**<br>**others similarly situated** | |
| **Plaintiff,**<br>v. | **Adv. Pro. No. 17-1085 (ESS)** |
| **SALLIE MAE, INC,**<br>**NAVIENT SOLUTIONS, LLC,**<br>**NAVIENT CREDIT FINANCE**<br>**CORPORATION** | |
| **Defendants.** | |

**DEFENDANTS' MOTION FOR LEAVE TO APPEAL CLASS CERTIFICATION
ORDER**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

QUESTIONS PRESENTED................................................................................ 4

FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED......................... 5

THE DISTRICT COURT'S AUTHORITY TO ACCEPT DEFENDANTS' APPEAL .............. 7

REASONS WHY THE DISTRICT COURT SHOULD GRANT LEAVE TO APPEAL............ 8

I.     There Is a Compelling Need For Immediate Review Because the Bankruptcy Court Lacked Authority to Enforce Discharge Orders Issued Outside of the Eastern District of New York ......................................................... 8

    a.   The Bankruptcy Discharge Injunction Pursuant to Section 524 of the Bankruptcy Code Is An Individual, Court-Ordered Injunction .......... 8

    b.   Only the Issuing Court May Enforce Its Discharge Injunction ............... 10

    c.   The Fifth Circuit's *Crocker* Decision in 2019 Confirmed that Only the Issuing Court May Enforce the Discharge Injunction, and the Eleventh Circuit Decision in *Alderwoods* Likewise Confirms this Viewpoint .............................................................................................. 12

II.   There Is a Compelling Need For Immediate Review Because In Certifying the Classes, The Bankruptcy Court Erred By Exceeding The Class Definition in the Amended Complaint................................................................ 14

III.   There is a Compelling Need For Immediate Review Because The Bankruptcy Court Erred In Certifying An Unascertainable And Impermissible "Fail-Safe" Class........................................................................ 15

    a.   The Classes Are Not Ascertainable ........................................................ 16

    b.   The Bankruptcy Court Impermissibly Certified a Fail-Safe Class .......... 19

IV.   There Is a Compelling Need For Immediate Review Because The Bankruptcy Court Erred In Certifying The Injunctive Class .............................. 20

    a.   Plaintiffs Cannot Obtain Successive Injunctions .................................... 20

    b.   The Declaratory Relief Plaintiffs Seek is Entirely Derivative of Existing Discharge Injunctions and Cannot Separately Support Certification under Rule 23(b)(2) ........................................................... 21

    c.   Monetary Relief is Not Incidental to the Requested Injunctive Relief..................................................................................................... 22

Table of Contents (continued)

Page

d.  Individualized Circumstances Preclude Class-Wide Injunctive Relief ...................................................................................... 22

e.  Determination of a Particular Borrower's Cost of Attendance is a Highly Individualized Inquiry ................................................................. 23

V.  There Is A Compelling Need For Immediate Review Because The Bankruptcy Court's Findings of Predominance And Superiority Were Clearly Erroneous And Not Based On a Rigorous Analysis ............................. 25

VI.  There Is a Compelling Need For Immediate Review Because The Bankruptcy Court Erred in Determining That The Named Plaintiffs Met Both The Adequacy And Typicality Requirements Necessary to Represent the Classes .......................................................................................................... 27

CONCLUSION ...................................................................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alderwoods Group., Inc. v. Garcia*,
    682 F.3d 958 (11th Cir. 2012) ....................................................................... *passim*

*Anderson v. Credit One Bank, N.A.*,
    884 F.3d 382 (2d Cir. 2018), *cert denied* 139 S. Ct. 144 (Oct. 1, 2018) ....................10, 11, 13

*In re Asacol Antitrust Litigation*,
    2018 WL 4958856 (1st Cir. Oct. 15, 2018) ...........................................................18

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*,
    637 F.3d 827 (7th Cir. 2011) .............................................................................29

*Barrientos v. Wells Fargo Bank, N.A.*,
    633 F.3d 1186 (9th Cir. 2011) ..............................................................9, 11, 20, 21

*Bates v. McDermott Inc.*,
    No. Civ-87-3617, 1988 WL 35058 (E.D. La. Apr. 12, 1988) (reversed on
    other grounds) ..............................................................................................13

*Belton v. GE Capital Retail Bank*,
    961 F.3d 612 (2d Cir. 2020), *cert. denied,* 141 S. Ct. 1513 (Mar. 8, 2021) .....................10, 13

*Berlowitz v. Nob Hill Masonic Mgmt.*,
    1996 WL 724776 (N.D. Cal. Dec. 6, 1996) .........................................................15

*Bessette v. Avco Fin. Serv., Inc.*,
    230 F.3d 439 (1st Cir. 2000) ...............................................................................9

*Bradley v. Fina*,
    550 F. App'x 150 (4th Cir. 2014) .........................................................................9

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)................................................................................16

*Bruce v. Citigroup Inc.*,
    Case No. 22-134 (2d Cir. May 4, 2022) ...........................................................2, 10

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)..............................................................................26

*CE Design Ltd. v. King Architectural Metals, Inc.*
    637 F3d 721 (7th Cir. 2011) ..............................................................................29

*Charron v. Pinnacle Grp. N.Y. LLC*,
269 F.R.D. 221 (S.D.N.Y. 2010) ...................................................16

*Clarke v. Baptist Mem'l Healthcare Corp.*,
264 F.R.D. 375 (W.D. Tenn. 2009) ...............................................15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).....................................................................1, 25

*In re Conti*,
982 F.3d 445 (6th Cir. 2020) .........................................................26

*Costelo v. Chertoff*,
258 F.R.D. 600 (C.D. Cal. 2009) ..................................................15

*Cox v. Zale Del., Inc.*,
239 F.3d 910 (7th Cir. 2001) .......................................................9, 11

*In re Crocker*,
941 F.3d 206 (5th Cir. 2019) ...............................................9, 12, 13

*Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*,
2020 WL 1908557 (E.D.N.Y. Apr. 17, 2020) ...............................22

*Melton ex rel. Dutton v. Carolina Power & Light Co.*,
283 F.R.D. 280 (D.S.C. 2012) ......................................................20

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) ....................................................18, 26

*Galaz v. Katona*,
841 F.3d 316 (5th Cir. 2016) .........................................................11

*Garfield v. Ocwen Loan Servicing*,
811 F.3d 86 (2d Cir. 2016)...............................................................9

*General Tel. Co. of Southwest v. Falcon*,
457 US 147 (1982).........................................................................28

*Green Pt. Credit, LLC v. McLean*,
794 F.3d 1313 (11th Cir. 2015) .....................................................11

*Guetling v. Household Fin. Servs. Inc.*,
312 BR 699 (M.D. Fla. 2004)........................................................21

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004)...........................................................7, 8

*Jackson v. Motel 6 Multipurpose, Inc.*,
   130 F.3d 999 (11th Cir. 1997) .......................................................................27

*Jones v. CitiMortgage, Inc.*,
   666 F. App'x 766 (11th Cir. 2016) ...............................................................11

*In re Joubert v. ABN AMRO Mort. Group., Inc.*,
   411 F.3d 452 (3d Cir. 2005).............................................................................9

*Lawrence v. NYC Med. Prac., P.C.*,
   2021 WL 2026229 (S.D.N.Y. May 20, 2021) ...............................................19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)...........................................................19

*Local Loan Co. v. Hunt*,
   292 U.S. 234 (1934)........................................................................................11

*In re Mallett*,
   625 B.R. 553 (Bankr. M.D. Fla. 2021) .........................................................26

*Marcus v. BMW of North Am., LLC*,
   687 F.3d 583 (3d. Cir. 2012)..........................................................................18

*In re Mazloom*,
   No. 18-60206-06, 2022 WL 950932 (Bankr. N.D.N.Y. Mar. 29, 2022) ................................26

*Mazzei v. Money Store*,
   288 F.R.D. 45 (S.D.N.Y. 2012), *aff'd*, 829 F.3d 260 (2d Cir. 2016)....................16

*Microsoft Corp. v. Baker*,
   137 S. Ct. 1702 (2017).....................................................................................2

*Matter of Nat'l Gypsum Co.*,
   118 F.3d 1056 (5th Cir. 1997) .........................................................................9

*Navient Sols., LLC v. Homaidan*,
   2022 WL 17252459 (E.D.N.Y. Nov. 28, 2022)..............................................6

*Navient Sols., LLC v. Homaidan*,
   2022 WL 4079579 (E.D.N.Y. Sept. 6, 2022) .................................................6

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001).............................................................................7

*Nypl v. JP Morgan Chase & Co.*,
   2022 WL 819771 (S.D.N.Y. Mar. 18, 2022) ................................................19

*Pertuso v. Ford Motor Credit Co.*,
    233 F.3d 417 (6th Cir. 2000) ...............................................................9

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)...............................................................15

*Searcy v. eFunds Corp.*,
    2010 WL 1337684 (N.D. Ill. Mar. 31, 2010).......................................29

*In re Sumitomo Copper Litig.*,
    262 F.3d 134 (2d Cir. 2001)...............................................................7

*Taggart v. Lorenzen*,
    139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019) ..............................11, 12, 27

*United States v. Reed*,
    773 F.2d 477 (2d Cir. 1985)...............................................................11

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010).........................................................................28

*Wal-Mart Stores Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................................22

*Walls v. Wells Fargo Bank, N.A.*,
    276 F.3d 502 (9th Cir. 2002) ..............................................................9

*Weber v. U.S. Trustee*,
    484 F.3d 154 (2d Cir. 2007)...............................................................7

**Statutes**

11 U.S.C. § 362...................................................................................9

11 U.S.C. § 362(h)...............................................................................9

11 U.S.C. § 524(a)(2)........................................................................9, 10

20 U.S.C. § 1087*ll*..........................................................................16, 23

26 U.S.C. § 221(d) .......................................................................4, 6, 16

28 U.S.C. § 158(a)(3).............................................................................7

11 USC § 523(a)(8)(A)(ii) .....................................................................26

Bankrtupcy Code Chapter 7 ....................................................................3

Bankruptcy Code ..................................................................................9

Bankruptcy Code Chapter 13 ............................................................................3, 4, 23, 28

Bankruptcy Code § 523(a)(8) ...........................................................................................26

Bankruptcy Code § 523(a)(8)(B) ......................................................................................26

Bankruptcy Code § 524 ..........................................................................................8, 9, 23

Declaratory Judgment Act, 28 U.S.C. § 2201 ..................................................................21

**Other Authorities**

Fed. R. Bankr. P. 7023 .......................................................................................................7

Fed. R. Bankr. P. 8004 .......................................................................................................7

Fed. R. Civ. P. § 23 ..............................................................................................1, 2, 7, 24

Fed. R. Civ. P. § 23(a) ................................................................................................15, 25

Fed. R. Civ. P. § 23(b) ......................................................................................................27

Fed. R. Civ. P. § 23(b)(2) ..........................................................................................1, 21, 22

Fed. R. Civ. P. § 23(b)(2) ................................................................................................21

Fed. R. Civ. P. § 23(b)(3) ............................................................................................1, 25

Fed. R. Civ. P. § 23(f) ................................................................................................1, 2, 7, 8

U.S. Constitution, Seventh Amendment ..........................................................................18

Defendants Navient Solutions, LLC ("NSL") and Navient Credit Finance Corporation ("NCFC") (collectively, "Defendants" or "Navient"), through the undersigned counsel, hereby file this Motion for Leave to Appeal the Bankruptcy Court's Class Certification Order entered on April 11, 2023 (Case No. 1-17-01085-ess ("Adv. Pro."), Dkt. No. 444) and accompanying Memorandum Decision (Adv. Pro. Dkt. No. 443) (collectively, the "Order").   In support, Navient respectfully states as follows:

## INTRODUCTION

This case presents the quintessential Rule 23(f) appeal.  On April 11, 2023, the Bankruptcy Court issued an unprecedented class certification Order, whereby it certified two *nationwide* classes of debtors alleging that Navient violated their respective bankruptcy discharges.

Despite lacking any authority to enforce discharge orders issued outside of the borders of the Eastern District of New York, the Bankruptcy Court certified a Rule 23(b)(2) declaratory and injunctive relief class (the "Injunctive Class") and a Rule 23(b)(3) damages class (the "Damages Class") (collectively, the "Classes") both comprised of individuals who (1) attended or intended to attend a Title IV educational institution, (2) received a direct-to-consumer private loan from Navient which exceeded the "cost of attendance," (3) obtained a bankruptcy discharge order, (4) did not re-affirm their loan, and (5) alleged that that Navient continued to attempt collection on their loan.  Adv. Pro. Dkt. No. 444 at 108.  In certifying the Classes, the Bankruptcy Court not only exceeded its jurisdictional limitations, but also failed to conduct the "rigorous analysis" required by Rule 23 and failed to recognize that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-701 (1979)).

As the Supreme Court has explained, "'[p]ermission [to accept a Rule 23(f) appeal]' is most likely to be granted … when the certification decision turns on a novel or unsettled question of law, or when the decision on certification is likely dispositive of the litigation." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1710 (2017). That standard is clearly met here. As explained more fully herein, the District Court, were it to accept Navient's appeal, will be able to rectify the Bankruptcy Court's errors in this case specifically but also aid in the development of bankruptcy class actions more generally by answering important questions regarding the jurisdictional limitations faced by bankruptcy courts and the Scope of Rule 23 in the bankruptcy setting.

First, as explained more fully herein, by certifying the Classes, the Bankruptcy Court exceeded its authority to enforce discharge orders entered in other judicial districts. The Bankruptcy Court's conclusion that it did not exceed its extraterritorial limitations directly conflicts with the leading circuit court authority that has uniformly held that only the issuing court may enforce a bankruptcy discharge order. Furthering the need for the District Court to accept Defendants' appeal is that this precise issue is likely to receive even further clarification in the coming months from the Second Circuit, if not sooner. On May 4, 2022, the Second Circuit granted a petition for leave to file a direct appeal in *Bruce v. Citigroup Inc.,* Case No. 22-134 (2d Cir. May 4, 2022), to address head-on the specific question of whether a bankruptcy court "can adjudicate nationwide class claims for contempt predicated on alleged violations of discharge injunctions issued by other courts nationwide." The Second Circuit heard oral argument in *Bruce* on April 18, 2023, and because *Bruce* could confirm that the Bankruptcy Court lacked the authority it so exercised here, judicial economy would best be served if the District Court accepted Defendants' appeal now, before that decision is rendered.

Second, the Bankruptcy Court erred in certifying an Injunctive Class that is manifestly unworkable.  Apart from impermissibly seeking successive injunctive relief for parties already subject to a discharge injunction, and seeking injunctive relief for a class where each member would be entitled to an individualized determination of damages, the class is fundamentally unascertainable.  Indeed, determination of a particular borrower's cost of attendance (the central pillar of Plaintiffs' claims) requires interpretation of a statute that lists over a dozen individual factors comprising such amount.  And, to that end, no single repository of such costs exist:  not in Defendants' records, not in any aggregate database identified by Plaintiffs, and not with the relevant educational institutions.

Third, the Bankruptcy Court erred in certifying the Damages Class, which is plagued by the same realities as the Injunctive Class, in addition to a host of individual factors that overwhelm any common issues of liability and defeat any efficiencies that might render the class action mechanism superior to individual determinations in this case.  Add in conflicted, atypical, and inadequate class representatives, and denial of certification remains the only viable conclusion for the Court.

Fourth, the Bankruptcy Court erred in its determination that Plaintiffs Hilal Homaidan and Reeham Youssef were adequate representatives of the Classes.  They both executed enforceable class-action waivers in their promissory notes, neither of them pursued undue hardship claims, and Homaidan never received Tuition Answer loan amounts that exceeded the "Cost of Attendance" under any theory.  Moreover, both Homaidan and Youssef are Chapter 7 debtors, whereas other putative members of the classes could be Chapter 13 debtors or Chapter 7 debtors with different plans than those of the named plaintiffs.

## QUESTIONS PRESENTED

1. Whether the Bankruptcy Court lacked authority to enforce discharge injunctions issued outside of the Eastern District of New York?

2. Whether the Bankruptcy Court erred by permitting the Plaintiffs to significantly expand the proposed class definitions without seeking leave to amend their complaint?

3. Whether the Bankruptcy Court erred in certifying an unascertainable impermissible "fail-safe" class, where statutory factors under 26 U.S.C. § 221(d) make it administratively difficult, if not impossible, to identify putative class members whose loans "exceeded the cost of attendance?"

4. Whether the Bankruptcy Court committed error in certifying the Classes by failing to scrutinize the Named Plaintiffs' adequacy to represent the class, given that they both executed enforceable class action waivers, failed to pursue claims potentially available to other class members (such as undue hardship), and lack basic knowledge about the litigation in this case?

5. Whether the Bankruptcy Court committed error in certifying an Injunctive Class without addressing that the declaratory relief Plaintiffs seek is entirely duplicative of their existing discharge orders, that monetary relief is not incidental to their requested injunctive relief, or that individual circumstances preclude class-wide relief?

6. Whether the Bankruptcy Court committed error in certifying the Damages Class, even though individualized factual determinations will predominate over any common questions?

7. Whether the Bankruptcy Court committed error by failing to recognize that the Named Plaintiffs received discharge orders pursuant to their own Chapter 7 bankruptcy plan but would purport to represent both Chapter 13 debtors as well as Chapter 7 debtors with potentially different and varied plans?

## FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED

In 2009, Homaidan filed a bankruptcy petition in the Eastern District of New York and identified on his bankruptcy schedules that he was indebted on several student loans.  Case No. 1-08-48275-ess, Dkt. No. 1.  Homaidan received a bankruptcy discharge on April 9, 2009.  *Id.*, Dkt. No. 21.  Homaidan's discharge order informed him that "debts for most student loans" were "not discharged."  *Id.*  Homaidan did not raise any issues concerning the dischargeability of his student loans until April 2017, *eight years after his discharge*.  *Id.*, Dkt. Nos. 28-30.

In 2013, Youssef filed a bankruptcy petition in the Eastern District of New York and, like Homaidan, disclosed on her schedules that she was indebted on several student loans.  Case No. 1-13-46495-ess, Dkt. No. 1.  Youssef received a bankruptcy discharge on February 6, 2014.  *Id.*, Dkt. No. 9.  Youssef's discharge order informed her that "debts for most student loans" were "not discharged."  *Id.*  Youssef did not raise any issues concerning the dischargeability of her student loans until October 2019, *more than five years after her discharge*.  *Id.*, Dkt. No. 11.

Homaidan filed this adversary proceeding on June 23, 2017; Youssef joined as a plaintiff on December 17, 2019.  Adv. Pro. Dkt. Nos. 1, 166.  In the complaint and its later amendment, Homaidan and Youssef allege that they obtained certain "Tuition Answer" loans in amounts that exceeded the "cost of attendance" at their respective schools.  Adv. Pro. Dkt. Nos. 1, 160.  Homaidan and Youssef contend that, because their loans exceeded the "cost of attendance," they were not "qualified education loans" and were thus dischargeable in bankruptcy, notwithstanding that "most student loans" are not dischargeable.  *Id.*  Homaidan and Youssef, for themselves and on behalf of the Classes, seek injunctive relief, damages, sanctions, and other remedies for Defendants' attempts to collect on Tuition Answer loans that were allegedly discharged in bankruptcy.  *Id.*

The putative class (referred to collectively as "Plaintiffs") outlined in the complaint and the amended complaint is limited to borrowers who received Tuition Answer loans that exceeded the cost of attendance, but is nationwide in scope, including borrowers who received discharges in all "district[s] . . . of the United States." *Id.*   Homaidan and Youssef did not file any motion for provisional relief in this case until December 19, 2019 (*more than two years after the case was filed*), when they moved for entry of a preliminary injunction and for class certification.  Adv. Pro. Dkt. Nos. 167, 169.

Those motions were still pending when Plaintiffs moved for a temporary restraining order (TRO) in April 2022.  Adv. Pro. Dkt. No. 314.  After briefing and argument, the Bankruptcy Court entered a TRO on July 8, 2022.  Adv. Pro. 342.  The TRO, which went into effect on September 6, 2022, restrained Navient "from taking any acts to collect on Tuition Answer Loans held by the Plaintiffs and the Putative Class Members, as the class is described in the Amended Complaint, that exceed the cost of attendance as defined by Internal Revenue Code § 221(d), and that have an outstanding balance subject to collection."  Adv. Pro. Dkt. No. 342 at 4-5.  Navient sought leave to appeal the TRO, which the District Court denied.  *Navient Sols., LLC v. Homaidan*, 2022 WL 4079579, at *4 (E.D.N.Y. Sept. 6, 2022).  The Bankruptcy Court extended the TRO, with Navient's consent, through October 14, 2022.  Adv. Pro. Dkt. No. 399.

On October 17, 2022, the Bankruptcy Court then granted in part Plaintiffs' motion for a preliminary injunction, which went into effect immediately and enjoined Defendants on the same terms as specified in the TRO.  Adv. Pro. Dkt. Nos. 405, 407.  On November 28, 2022, the District Court denied Navient's request to appeal the preliminary injunction, which remains in place.  *See Navient Sols., LLC v. Homaidan*, 2022 WL 17252459, at *8 (E.D.N.Y. Nov. 28, 2022).   On February 8, 2023, the Bankruptcy Court approved the parties' agreed-upon Form of Notice to

putative class members.  Then, on April 11, 2023, the Bankruptcy Court, over Navient's objection, granted in part Plaintiffs' motion for class certification, certifying the Classes (the "Order").

### THE DISTRICT COURT'S AUTHORITY TO ACCEPT DEFENDANTS' APPEAL

Under 28 U.S.C. § 158(a)(3), the District Court may review an "interlocutory order[ ]" of a "bankruptcy judge[ ]."  28 U.S.C. § 158(a)(3); *see* Fed. R. Bankr. P. 8004.  Federal Rule of Civil Procedure 23(f) governs interlocutory review of class certification decisions and is applicable to bankruptcy class action through Fed. R. Bankr. P. 7023, which states that Fed. R. Civ. P. 23 "applies in adversary proceedings."

Rule 23(f) permits an appellate court with the "opportunity to intervene early to correct lower-court errors in class certification, which, if not corrected at that stage, would result in wasteful proceedings."  *Weber v. U.S. Trustee*, 484 F.3d 154, 159 (2d Cir. 2007).  As courts recognize, an erroneous class certification order "places inordinate or hydraulic pressure on defendants to settle, avoiding the risk, however small, of potentially ruinous liability."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164 (3d Cir. 2001).  Thus, a lower court's potentially erroneous and determinative Rule 23 questions are "likely to escape . . . review after entry of final judgment."  *In re Sumitomo Copper Litig.*, 262 F.3d 134, 140 (2d Cir. 2001).

Under Rule 23(f), interlocutory review is warranted when "(1) ... the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) [when] the certification order implicates a legal question about which there is a compelling need for immediate resolution."  *Id.* at 139.  However, the Second Circuit has cautioned that there is no rigid test for an appellate court to exercise its discretion to accept interlocutory review.  Rather, "the Rule 23(f) standard is a flexible one that should not be reduced to any bright-line rules."  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 76 n.4 (2d Cir. 2004) (citing *Sumitomo*, 262 F.3d at 140).  To that end, "[i]n applying Rule 23(f), courts of

appeal enjoy 'unfettered discretion' to grant or deny permission to appeal based on 'any consideration that the court of appeals finds persuasive.'" *Id.* at 76 (quoting Fed. R. Civ. P. 23(f) advisory committee's note). This case fully satisfies the criteria for Rule 23(f) review.

### REASONS WHY THE DISTRICT COURT SHOULD GRANT LEAVE TO APPEAL

**I.     THERE IS A COMPELLING NEED FOR IMMEDIATE REVIEW BECAUSE THE BANKRUPTCY COURT LACKED AUTHORITY TO ENFORCE DISCHARGE ORDERS ISSUED OUTSIDE OF THE EASTERN DISTRICT OF NEW YORK**

Despite there being no statutory authority permitting a bankruptcy court to enforce discharge orders entered in other judicial districts, the Bankruptcy Court concluded that it had the authority to certify a nationwide class. Adv. Pro. Dkt. No. 443 at 64-77. Without relying on any explicit authority supporting its ability to do so, the Bankruptcy Court accepted Plaintiffs' argument that bankruptcy discharge orders are "fundamentally different from other specific, judge-crafted injunctions or orders and [that] bankruptcy courts do not lack subject matter jurisdiction to enforce them." Adv. Pro. Dkt. No. 443 at 20. (quoting Adv. Pro. Dkt. No. 169 at 141). The Bankruptcy Court's determination in this regard is inconsistent with the well-accepted understanding that a bankruptcy court discharge is an individualized, court-ordered injunction that can be addressed only by the court that issues it. As outlined below, overwhelming Circuit-level authority supports this viewpoint, reinforcing the need for the District Court to accept this appeal and reverse the Bankruptcy Court.

**a.     The Bankruptcy Discharge Injunction Pursuant to Section 524 of the Bankruptcy Code Is An Individual, Court-Ordered Injunction**

When a bankruptcy court enters an order discharging a debtor from his or her liability on eligible, properly scheduled prepetition debts, it effects an injunction against collection on discharged debts. In two important ways, Congress set boundaries on a debtor's enforcement of his or her discharge. First, it made the deliberate choice to codify the discharge as acting as an

"injunction." 11 U.S.C. § 524(a)(2). And second, it made the deliberate choice to omit from the Bankruptcy Code a private right of action for discharge-violation claims. Congress amended the Bankruptcy Code in 1984 to "provide an express right of action under the automatic stay provision of 11 U.S.C. § 362(h)." *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 422 (6th Cir. 2000). "It did so because reliance on the contempt power to remedy violations of § 362 had been widely criticized." *Id.* In contrast, Congress did *not* create an "express right of action" for the companion statute to § 362: the § 524 discharge injunction. *Id.* Congress's instruction is thus clear: no private right of action exists by which a debtor can assert claims that a creditor has violated his or her discharge.

To that end, every court to have considered the issue has either expressly held or strongly indicated that no private right of action exists by which a debtor can assert claims that a creditor has violated his or her discharge. *See, e.g., In re Crocker*, 941 F.3d 206, 215-17 (5th Cir. 2019); *Garfield v. Ocwen Loan Servicing*, 811 F.3d 86, 91–92 (2d Cir. 2016); *Bradley v. Fina*, 550 F. App'x 150, 154 (4th Cir. 2014); *Alderwoods Group., Inc. v. Garcia*, 682 F.3d 958, 966, 970 (11th Cir. 2012); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188–89 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421–23 (6th Cir. 2000); *Bessette v. Avco Fin. Serv., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000); *see also In re Joubert v. ABN AMRO Mort. Group., Inc.*, 411 F.3d 452, 456 (3d Cir. 2005).

The consistent theme underpinning these courts' decisions is that "the creditor who attempts to collect a discharged debt is violating . . . an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge." *Cox*, 239 F.3d at 915; *see also Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997). As the Second Circuit noted, the analysis

does not change because a statute defines the scope of the discharge injunction: "Neither the statutory basis of the [discharge] order nor its similarity—even uniformity—across bankruptcy cases alters the simple fact that the discharge injunction is an order issued by the bankruptcy court[.]" *Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 390–91 (2d Cir. 2018), *cert denied* 139 S. Ct. 144 (Oct. 1, 2018).

Starting with *Anderson*, the Second Circuit itself, in four separate ways, has cast considerable doubt on whether a bankruptcy court has the nationwide authority required to maintain the Classes. In *Anderson*, the court recognized that "violations of this court-ordered [discharge] injunction are enforceable only by the bankruptcy court and only by a contempt citation." *Anderson v. Credit One Bank, N.A.,* 884 F.3d 382, 391 (2d Cir. 2018). In 2020, the Second Circuit recognized that the reasoning from *Anderson* is "anathema to a nationwide class action" for discharge violations. *Belton v. GE Capital Retail Bank*, 961 F.3d 612, 617 (2d Cir. 2020), *cert. denied,* 141 S. Ct. 1513 (Mar. 8, 2021). Third, in *Belton*, the Second Circuit "question[ed] whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order," noting that "[m]ost circuits that have considered the issue have rejected the notion." 961 F.3d at 617-178. And fourth, and as discussed above, the Second Circuit granted and has now heard a direct appeal in *Bruce* to squarely confront this issue.

### b.    Only the Issuing Court May Enforce Its Discharge Injunction

By omitting a private right of action for discharge-violation claims and codifying the discharge as having injunctive effect, Congress necessarily imposed on the discharge the usual rules under which all injunctions exist—including the well-established limitation that an injunction may only be enforced through a contempt proceeding before the issuing court. The Supreme Court has recognized as much: "The statutes specifying that a discharge order 'operates as an injunction,' § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate'

to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801, 204 L. Ed. 2d 129 (2019).

"The essential act of contempt is the disrespect shown to the order of the court and the disobedience thereof." *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985). Consistent with that rationale, the Second Circuit observed that "the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it." *In re Anderson*, 884 F.3d 382, 391 (2d Cir. 2018).  Numerous other circuits have expressly acknowledged this mandate. *Anderson*, 884 F.3d at 390–91; *Galaz v. Katona*, 841 F.3d 316, 322 (5th Cir. 2016) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)); *Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 774–75 (11th Cir. 2016); *Green Pt. Credit, LLC v. McLean*, 794 F.3d 1313, 1319–20 (11th Cir. 2015); *Alderwoods*, 682 F.3d at 970–71; *Barrientos*, 633 F.3d at 1188–91; *Cox*, 239 F.3d at 916.

The discharge injunction may be a creature of statute, but it comes into existence only through issuance of an order by a court in a particular bankruptcy case.  And, as the Second Circuit reasoned in *Anderson*, "[t]hough the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated."  884 F.3d at 390–91.  By ignoring this core tenet of the discharge injunction, the Bankruptcy Court impermissibly created for itself a "special rule" that would enable it to interpret and enforce discharge orders entered by courts in foreign judicial districts, despite the being nothing "in the nature of the bankruptcy court or in the terms of the Bankruptcy [Code]" authorizing it to do so.  *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934).

c.    **The Fifth Circuit's *Crocker* Decision in 2019 Confirmed that Only the Issuing Court May Enforce the Discharge Injunction, and the Eleventh Circuit Decision in *Alderwoods* Likewise Confirms this Viewpoint**

In 2019, the Fifth Circuit was presented with this identical question in near identical circumstances. *See In re Crocker*, 941 F.3d 206 (5th Cir. 2019). In *Crocker*, the bankruptcy court determined it had jurisdiction to interpret and enforce discharge orders entered in other districts. *See id.* at 215. The Fifth Circuit focused its analysis on a narrow question: "[O]ur question is limited: may a different bankruptcy court than the one that issued the discharge that caused the injunction to arise, enforce that injunction regardless of whether the impediment is jurisdiction, venue, prudential considerations, or something else?" *Id.*

In ruling that the issuing court was the sole place where the contempt proceeding could occur, the Fifth Circuit found that "the Supreme Court decision [in *Taggart*] placed the civil contempt that results from violating a bankruptcy discharge injunction under the general principles for contempt" and that it was agreeing with "[t]he Second Circuit [that] has limited enforcement of discharge injunctions through contempt proceedings to the originating court." *Id.* at 216 (citing *Taggart*, 139 S. Ct. at 1801; *Anderson*, 884 F.3d at 390–91). In fact, the Fifth Circuit "point[ed] out that because of the limitation on enforcement we have just identified, and indeed because we are aware of no prior certification of a class that includes debtors whose discharges were entered by bankruptcy courts in other districts, ***certifying such a class would be highly dubious***." *Id.* at 217 (emphasis added).

Likewise, the Eleventh Circuit faced this very issue in *Alderwoods*. There, it considered whether "a bankruptcy court in one federal district has jurisdiction to determine whether a debt was discharged in a bankruptcy case litigated in another federal district." 682 F.3d at 961. After finding that "the ultimate question . . . is which court has the power to enforce the discharge injunction," the Eleventh Circuit concluded that "the court that issued the injunctive order alone

possesses the power to enforce compliance with, and punish contempt of, that order." *Id.* at 968, 969, 971.

As a result, the Eleventh Circuit held that the court in which the discharge-violation claims were filed, but which had not issued the underlying discharge order, "lacked jurisdiction to entertain the complaint because the discharge injunction was never its to enforce." *Id.* at 971. This result followed from the nature of a bankruptcy court's jurisdiction over a debtor's estate, *id.* at 969, and from the general proposition that a court that enters an injunction retains jurisdiction to enforce it. *Id.* at 970. The Eleventh Circuit also cited pragmatic concerns: "it would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." *Id.*

The Bankruptcy Court chose to ignore these authorities, despite language from *Anderson* and *Belton* suggesting that the Second Circuit is likely to align with the other Circuit courts that have squarely rejected the notion that discharge violations can be addressed on a nationwide basis through a nationwide class action. When coupled with the fact that the Second Circuit is poised to issue a definitive ruling on the issue in a matter of months, the Bankruptcy Court's deviation from the near-consensus viewpoint warrants immediate appellate review of the Order.[1]

---

[1] Defendants also note that the same concerns that prohibit a bankruptcy judge in one district from enforcing discharge injunctions entered in other districts apply with equal force to the enforcement of discharge injunctions entered by other judges within the same district. While the Second Circuit has not spoken directly to this issue, the courts that have been confronted with the issue have suggested that the judge who issued the discharge order in the case before him or her should be the one to determine its enforcement wherever possible. *See, e.g., Bates v. McDermott Inc.*, No. Civ-87-3617, 1988 WL 35058, at *3 (E.D. La. Apr. 12, 1988) (reversed on other grounds) ("Judge Mentz' memorandum opinion . . . which purports to "overrule" a decision entered in a different section of the same court not properly before him for review is contrary to established law. His authority is no greater than that of Judge Collins or any other Judge in this district."); *see also Crocker*, 941 F.3d 206, 217 ("We leave for the court on remand the separate issue, if it becomes relevant, of whether that court has authority to enforce the injunctions arising from discharges entered by any bankruptcy court in the same judicial district.")

II.    **THERE IS A COMPELLING NEED FOR IMMEDIATE REVIEW BECAUSE IN CERTIFYING THE CLASSES, THE BANKRUPTCY COURT ERRED BY EXCEEDING THE CLASS DEFINITION IN THE AMENDED COMPLAINT**

Plaintiffs' Proposed Class as alleged in the Amended Complaint consists of members who:

a) Obtained Tuition Answer loans in amounts that exceeded the "Cost of Attendance";

b) Were never issued or designated to be issued 1098-E tax forms to deduct the interest payments from their federal tax returns;

c) Have never reaffirmed any pre-petition Tuition Answer loan; and

d) have nonetheless been subjected to Defendants' attempts to induce payment of discharged debts and have or have not repaid these loans since bankruptcy.

Dkt. No. 156-3 at 15.  Yet in their Class Certification Motion, Plaintiffs sought certification of a class of:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26. U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Although the Bankruptcy Court "decline[d] the invitation to expand the scope of the class to encompass all private student loans[,]" the Bankruptcy Court still permitted Plaintiffs' expanded Class definition to proceed, in part, concluding that "borrowers who received discharges in bankruptcy and have not reaffirmed those loans may well have been subject to the same course of conduct alleged in the Amended Complaint."  Adv. Pro. Dkt. No. 443 at 82.  To that end, the Bankruptcy Court held that "to the extent that Navient's portfolio includes other private student loan programs where loans made on a direct-to-consumer basis exceed the applicable 'cost of attendance,' borrowers under such programs belong in the class to the same degree as borrowers under the Tuition Answer Loan program."  *Id.*

Allowing Plaintiffs to proceed on an expanded class definition prejudices Defendants by the need for greater discovery after the case has been pending for years and the Complaint has already been amended once.  In addition, Plaintiffs could not meet the threshold Rule 23(a) requirements with respect to loan programs other than the Tuition Answer loan program. Recognizing the inherent unfairness to defendants in allowing cases to proceed on an understood class definition for a significant period of time only to then have the class definition changed, courts have held that such amendments are not permissible and have held plaintiffs to the class definition asserted in their complaint.  *Clarke v. Baptist Mem'l Healthcare Corp.,* 264 F.R.D. 375, 381 (W.D. Tenn. 2009) ("To accommodate a new proposed class definition, plaintiffs will need to amend the complaint."); *Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it."); *Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL 724776 at *2 (N.D. Cal. Dec. 6, 1996) ("[T]he court will not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it.").

Plaintiffs' modifications to the definitions of the Classes were substantial, fundamentally reshaped the scope of the claims, and will now require significantly more discovery across a nationwide class of debtors.  Under those circumstances, the Bankruptcy Court should have concluded that the only proper course of action for Plaintiffs to proceed on an expanded class definition was through an amended complaint.

III.    **THERE IS A COMPELLING NEED FOR IMMEDIATE REVIEW BECAUSE THE BANKRUPTCY COURT ERRED IN CERTIFYING AN UNASCERTAINABLE AND IMPERMISSIBLE "FAIL-SAFE" CLASS**

Within the Second Circuit, the ascertainability doctrine requires that "a class be defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).  "A class is ascertainable when defined by objective criteria

that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24–25 (2d Cir. 2015); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (same). Similarly, and inextricably bound with ascertainability, a court may not certify a class that consists of a "fail-safe" class.  A fail-safe class is one whose definition "shields the putative class members from receiving an adverse judgment[.]" *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012), *aff'd*, 829 F.3d 260 (2d Cir. 2016).

### a.       The Classes Are Not Ascertainable

In the present case, the purported class members are not feasibly ascertainable.  Even though the Bankruptcy Court did not extend the scope of the Classes to include all private student loans, the class criteria it did certify remains indefinite.  Under the Class definition as certified, the members of the putative class are individuals who received "direct-to-consumer private loans owned or serviced by Navient which exceeded the cost of attendance . . . as defined in 26 U.S.C. § 221(d)."  Adv. Pro. Dkt. No. 443 at 108.

Although the definition might appear at first blush to be tightly worded, the depth of analysis required to determine who fits within this Class definition renders it uncertifiable.  As incorporated by 26 U.S.C. § 221(d), the operative version of 20 U.S.C. § 1087*ll* for this determination contains no less than a dozen factors that may bear on a particular borrower's cost of attendance, and these factors themselves vary according to a borrower's individual circumstances.  Despite the clear barriers that these factors would pose in identifying putative class members, the Bankruptcy Court concluded that "cost of attendance" is a "standard, benchmark figure, not an individualized calculation."  Dkt. No. 443 at 94.  To that end, the Bankruptcy Court concluded that "a lender or servicer of private student loans could reasonably be expected to maintain this information in its records, in order to determine whether a loan on its books is within

the scope of a borrower's bankruptcy discharge." *Id.* at 96.

First, there is no "benchmark figure" that would show the actual cost of attendance for individual borrowers.  There is data that reflects the *estimated* cost of attendance at a given institution, but that is all it is: an estimate.  As discussed in more detail below, determining the *actual* cost of attendance for class members requires a borrower-by-borrower inquiry, including factors such as tuition, housing, and the amount of other educational expenses.

Second, the Bankruptcy Court's decision ignores the real challenges Navient faces in gathering this data.  The systems used to originate and service student loans are voluminous, disparate, and lack the ability to easily query and identify relevant information needed to ascertain the Classes as defined in the Order.  Setting aside the significant difficulty in assessing a borrower's actual cost of attendance, there are a number of additional items that Navient cannot systematically assess or determine based on available data, including the determination of bankruptcy petition filing dates and discharge dates, the determination of the district in which a borrower obtained a bankruptcy discharge, the assessment of (i) additional loans held in Navient's portfolio related to the putative class members, and (ii) communications and/or correspondence to determine if they are related to the class members and loans potentially at issue; identification of cosigners; verification of contact information for borrower and/or cosigner; and tracing of payment amounts and the source of payments.

Plaintiffs have not demonstrated that the information available in Navient's data systems would provide the information needed to identify the individuals that meet Plaintiffs' class criteria. Instead, the only way to (potentially) identify the putative class members in this case would be to spend thousands of hours performing an individual loan-level review and to (try to) obtain documents and/or testimony regarding bankruptcy case information, as well as loan, payment, and

other details described above, from each individual putative class member or records in the possession of third-parties or other sources.

Even under its oversimplified construction of "cost of attendance," the Bankruptcy Court still acknowledged that "each Putative Class Member's direct-to-consumer private student loan, each Putative Class Member's 'cost of attendance,' and each Putative Class Member's other loans, grants, or scholarships […] may require *some inquiry*[.]"  Dkt. No. 443 at 96 (emphasis added). But there simply is no practical method to identify class members without the need for individualized fact-finding in thousands upon thousands of mini-trials involving discovery from untold numbers of putative class members and third parties.   This is precisely the type of individualized review that renders a class unascertainable.  *See, e.g., EQT Prod. Co. v. Adair,* 764 F.3d 347, 358 (4th Cir. 2014) (rejecting ascertainability where identification of class members would have required a "complicated and individualized process" of reviewing records).

Moreover, identifying class members based on their "say so" would not be constitutionally sound.  *Marcus v. BMW of North Am., LLC*, 687 F.3d 583, 594 (3d. Cir. 2012) ("Forcing [defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."); *see also In re Asacol Antitrust Litigation*, 2018 WL 4958856 (1st Cir. Oct. 15, 2018) ("A [claim administration-type] review of contested forms completed by consumers concerning an element of their claims would fail to be "protective of defendants' Seventh Amendment and due process rights.").

Plaintiffs have posited a legal theory that depends on a to-the-penny calculation of cost of attendance, which makes all the more important that there be an administratively feasible way to arrive at precise figures.  In this context, estimates and averages are not good enough.  Since

there is no way to arrive at precise figures without thousands of individualized inquiries and a series of mini-trials, Plaintiffs have not me their ascertainability burden, and immediate review of the Bankruptcy Court's Order is warranted to rectify this error.

### b.    The Bankruptcy Court Impermissibly Certified a Fail-Safe Class

"A fail-safe class requires a court to decide the merits of individual class members' claims to determine class membership." *Nypl v. JP Morgan Chase & Co.,* 2022 WL 819771, at *9 (S.D.N.Y. Mar. 18, 2022).  Fail-safe classes are "defined in terms of a legal injury." *Lawrence v. NYC Med. Prac., P.C.,* 2021 WL 2026229, at *6 (S.D.N.Y. May 20, 2021).  "A class defined in this fashion begs the very legal question at issue in [the] case and is unworkable because the class definition depends upon a legal determination that has not yet been made[,] and it is hard to understand how anyone, let alone these particular proposed class members, can know whether they fall within this class." *Id.* (internal quotations and citations omitted).

The Bankruptcy Court rejected Defendants' contention that Plaintiffs' proposed class definition promoted a fail-safe class, finding that "the requirements and boundaries of the proposed class do not presuppose or predetermine whether Navient is liable, and nothing in the class definition imputes a liability determination to Navient."  Adv. Pro. Dkt. No. 443 at 107.

In reaching this determination, however, the Bankruptcy Court ignored that the class definition incorporates only class members with "discharged debts," whose loans Plaintiffs allege exceed the cost of attendance at an eligible educational institution.  Plaintiffs cannot deny that there are tens of thousands of private loan borrowers whose loans are squarely within the cost of attendance (however defined), and thus, to define a member of the class is to also make a threshold determination of liability—the very definition of a fail-safe class.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 530 (S.D.N.Y. 2018) (declining to certify class in part because of "fail-safe" concerns, noting "individual inquiry will be necessary to determine

who is even a class member."); *Melton ex rel. Dutton v. Carolina Power & Light Co.,* 283 F.R.D.

280, 288 (D.S.C. 2012) (explaining that fail-safe classes "require[] a court to rule on the merits

of the claim at the class certification stage in order to tell who was included in the class" and that

"[s]uch a class definition is improper because a class member either wins or, by virtue of losing,

is defined out of the class and is therefore not bound by the judgment.").

  This is yet another reason why reason why interlocutory review is warranted

## IV.    THERE IS A COMPELLING NEED FOR IMMEDIATE REVIEW BECAUSE THE BANKRUPTCY COURT ERRED IN CERTIFYING THE INJUNCTIVE CLASS

By certifying the Injunctive Class, the Bankruptcy Court overlooked key features of a

bankruptcy discharge order that would render injunctive relief unnecessary and duplicative.

Instead of examining the unique facets of a bankruptcy discharge order in this context, the

Bankruptcy Court treated Plaintiffs' request for injunctive relief as it would in any other case,

stating simply that "declaratory and injunctive relief will clarify and settle the significant legal and

factual issues with general application to the class and to Navient." Adv. Pro. Dkt. No. 443 at 98.

The Bankruptcy Court went on to say that a declaratory judgment and injunction for putative class

members "will also afford relief from the uncertainty of whether the loans at issue are discharged

in bankruptcy and therefore not collectible." *Id.*  But, part in parcel with the Bankruptcy Court's

errors in regards to the jurisdictional issue explained above, the Bankruptcy Court expressed a

fundamental misunderstanding of the bankruptcy discharge injunction.

### a.    Plaintiffs Cannot Obtain Successive Injunctions

Here, the Injunctive Class must fail because it would be duplicative of the discharge

injunction Plaintiffs have already received.  As set forth above, a discharge order is an injunction.

Thus, granting further injunctive relief on the same point would be superfluous.  *See Alderwoods*,

682 F.3d at 968 and *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011).

A party seeking to enforce an existing injunction may not seek such relief. *Id.*; *see also Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011) ("Plaintiff in reality seeks a contempt order for the violation of an injunction that already exists . . . He cannot seek a second-order injunction, as it were. An injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief.") (citing *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 93–94 (2d Cir. 2010)).

In addition, it is plain that the gravamen of Plaintiffs' Complaint is one of monetary relief– they request restitution, damages and attorney's fees. In similar circumstances, at least one court has found that "tacking on" equitable relief to such a complaint is inappropriate under Rule 23(b)(2). *See Guetling v. Household Fin. Servs. Inc.*, 312 BR 699, 704-05 (M.D. Fla. 2004) (denying request to certify Rule 23(b)(2) class relating to alleged discharge violation claims because plaintiffs' request for monetary relief [i.e., damages, restitution, and attorneys' fees] predominates and "[p]laintiffs' attempts to tack on equitable relief [i.e., declaratory and injunctive relief] are therefore not cognizable under Rule 23(b)(2)").

> **b.      The Declaratory Relief Plaintiffs Seek is Entirely Derivative of Existing Discharge Injunctions and Cannot Separately Support Certification under Rule 23(b)(2)**

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in relevant part that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Although courts retain discretion as to when a declaratory judgment might be appropriate, they typically grant such relief only "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the

proceedings." *Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*, 2020 WL 1908557, at *76 (E.D.N.Y. Apr. 17, 2020) (quoting *Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971)).

In the present case these criteria are not met. With respect to Plaintiff Homaidan, no rights beyond a remedy for the purported discharge order violations remain to adjudicate—his loans have been paid in full and no future controversy exists that will not be resolved in connection with his contempt claim. Likewise, Plaintiff Youssef received a discharge order from this Court following her Chapter 7 bankruptcy proceedings—a discharge injunction already is in place. A separate declaratory judgment for either the Plaintiffs or the class is pure surplusage, and it would be inappropriate given the twin aims of legal certainty and conflict resolution and would also usurp the authority of the issuing courts to determine any contempt remedies.

### c.    Monetary Relief is Not Incidental to the Requested Injunctive Relief

The Supreme Court held in *Wal-Mart* that claims for monetary relief cannot be certified in an injunctive class under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Here, for those putative class members who have already paid off their loans, it is obvious that monetary claims are not incidental because there is nothing to enjoin after collections cease; the real relief such class members seek is monetary. *Cf., e.g.*, *Wal-Mart*, 564 U.S. at 348 n. 4. And for all class members, regardless of their loan balances, it is equally obvious that the monetary relief potentially available (1) is not automatically recoverable, and (2) varies for each class member. Although the Bankruptcy Court attempted to sidestep the requirements of Rule 23(b)(2) by separating out the Injunctive Class from the Damages Class, in reality, it is plain that the gravamen of the Amended Complaint as to *both Classes* is one for monetary relief.

### d.    Individualized Circumstances Preclude Class-Wide Injunctive Relief

A number of additional individualized factual determinations regarding the claims and

Navient's defenses preclude certification, including but not limited to whether each borrower: was truthful about his or her enrollment status, executed a class action waiver precluding his or her participation in this action, re-affirmed his or her student loan debt under Section 524, properly scheduled his or her student loan on in their bankruptcy petition, made payments during their plan period (for Chapter 13 debtors), properly notified Navient of their bankruptcy discharge, or made voluntary payments post-discharge.  As discussed above, additional individualized considerations include the "cost of attendance" for the putative class member for each loan period, which cannot be determined by looking at published statistics of average or projected costs of attendance but requires looking at the putative class member's individual circumstances.  Finally, there are individualized issues concerning Navient's activities with respect to each debtor, such as whether Navient issued a 1098-E tax form for the putative class member's Tuition Answer loan, whether Navient sent any post-discharge communications to the putative class member, and how much of any alleged post-discharge collection activity came from Navient instead of a third-party collection agency.

   e.    **Determination of a Particular Borrower's Cost of Attendance is a Highly Individualized Inquiry**

Among all of the individualized issues listed above, the determination of a borrower's statutory cost of attendance deserves particular emphasis.  A school's estimated "cost of attendance" does not represent a definitive cap on borrowing because each student's costs vary depending on their circumstances.  In describing "cost of attendance" as a "benchmark figure," the Bankruptcy Court brushed off the host of considerations that comprise the statutorily defined term "cost of attendance[,]" 20 U.S.C. § 1087*ll*, instead stating that "this and other courts have found [that] a borrower's 'cost of attendance' is not determined by the individual student borrower's choices."  Adv. Pro. Dkt. No. 443 at 94.

Undoubtedly, the Order is vague as to this conclusion.  As a practical matter, there simply is no way to address "cost of attendance" issues on a class-wide basis consistent with the requirements of Rule 23.  For at least three reasons, determining "cost of attendance" for putative class members would involve thousands of highly individualized, borrower-specific inquiries.  First, cost of attendance varies from school to school; here, even if one only considers Tuition Answer loans, the attendance costs at no fewer than 3,000 schools would have to be identified.  *See* Declaration of Thomas M. Farrell in support of Response in Opposition to Plaintiffs' Motion for a Temporary Restraining Order, Adv. Pro. Dkt. No. 320-1 at ¶ 12.  Second, although Title IV schools are required to determine cost of attendance, that determination can and often does vary from student to student at each school, based on individualized circumstances.  As a result, school-published data on average or estimated costs is not sufficient for purposes of addressing Plaintiffs' legal theory.  *See* Adv. Pro. Dkt. Nos. 188, 189, 191, & 200.  Rather, determining an accurate cost-of-attendance figure would require review of the records *and circumstances* of thousands of individual students.

The Order dodges these fundamental problems by adopting an amorphous description of the loans to which its prohibitions apply that leaves critical questions unanswered.  The Order applies to Tuition Answer loans that "exceed the cost of attendance," but provides no guidance whatsoever on how to determine whether a loan falls into that category.  Navient disagrees with the Bankruptcy Court's implicit endorsement that average, estimated data published in the Integrated Postsecondary Education Data System ("IPEDS") maintained by the National Center for Educations Statistics is a reliable indicator of cost of attendance.  By referring only to loans exceeding the "cost of attendance," the Order leaves these important questions unresolved, again

leaving Navient to guess at which loans and borrowers fall within the Order's scope.    That uncertainty, in itself, provides a compelling need for appellate review.

## V.    THERE IS A COMPELLING NEED FOR IMMEDIATE REVIEW BECAUSE THE BANKRUPTCY COURT'S FINDINGS OF PREDOMINANCE AND SUPERIORITY WERE CLEARLY ERRONEOUS AND NOT BASED ON A RIGOROUS ANALYSIS

Fed. R. Civ. P. 23(b)(3) requires "questions of law or fact common to class members [to] predominate over any questions affecting only individual members."    The Supreme Court has observed that "Rule 23(b)(3), as an adventuresome innovation, is designed for situations in which class-action treatment is not as clearly called for."    *Comcast*, 569 U.S. at 34 (internal quotations and citations omitted).    To that end, the Court has noted that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."    *Id.*    Before granting class certification, a court has a "duty to take a 'close look' at whether common questions predominate over individual ones." *Id.*    (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, at 615 (1997)).    In certifying the Damages Class, the Bankruptcy Court ignored the host of individualized issues that must be recognized by the District Court on appeal.

In addition to all of the individualized issues bound up in the ascertainability and liability determinations described above, the class cannot be certified for the additional reason that damages do not flow directly from a determination of liability and cannot be measured across the entire class.    As outlined above and throughout briefing in the Bankruptcy Court, the individualized defenses and issues Navient has presented in this case, which Plaintiffs cannot defeat with class-wide proof, demonstrate that common questions do not predominate. Virtually the only common thread relating to liability among the purported class members is receipt of a bankruptcy discharge. But to determine damages in the manner that Plaintiffs seek, a plethora of individualized factors must be resolved for each member of the class.    These individualized factual determinations regarding the claims overwhelm the common questions of liability and make class treatment for

such claims infeasible, much less superior.   Such individual inquiries include, among others, whether certain class members may have misrepresented their enrollment status, whether they executed a valid class waiver, how they scheduled their loan debt, what grounds does each member have for non-dischargeability apart from 11 USC § 523(a)(8)(A)(ii), to what extent did they make any payments post-discharge, and whether other equitable factors or circumstances are applicable to the putative class member that would impact any contempt remedy.[2]

The presence of these varied factors bearing on the identification of putative class members and quantifying any injury to each raises doubts that the Damages Class is ascertainable and administratively feasible.  *See, e.g., EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.") (quotations omitted); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("[A] trial court should ensure that class members can be identified "without extensive and individualized fact-finding or mini-trials, a determination which

---

[2] The Bankruptcy Court rejected Defendants' argument that borrower certifications concerning "cost of attendance" in their promissory notes present individualized defenses for Defendant to pursue against Plaintiffs. Adv. Pro. Dkt. No. 443 at 36.  In doing so, the Bankruptcy Court failed to afford appropriate weight to related decisions finding that the stated intent of a loan can be the controlling factor for the Section 523(a)(8) dischargeability analysis.  *See, e.g., In re Mazloom*, No. 18-60206-06, 2022 WL 950932, at *4 (Bankr. N.D.N.Y. Mar. 29, 2022) (explaining that the loan at issue "was made for the purpose of financing Plaintiff's attendance at medical school."). Other courts have too suggested a more purpose-based analysis rather than the rigid and simplistic calculation that Plaintiffs have suggested as the proper way to calculate "cost of attendance."  *See, e.g., In re Conti*, 982 F.3d 445, 449 (6th Cir. 2020) (endorsing analysis where "the court should look to the initial purpose of the [borrower's] loans, rather than their actual uses, to determine whether they fall within the scope of 8(B)."); *In re Mallett*, 625 B.R. 553, 557 (Bankr. M.D. Fla. 2021) (adopting reasoning in *Conti* and noting that "focusing on the initial purpose—rather than the use—of the loan avoids the absurd scenario where borrowers would be rewarded for misusing their student loans.").  Under this formulation of § 523(a)(8)(B), the Bankruptcy Court failed to consider that both Homaidan and Youssef (and presumably many other class members) certified to Navient in the applicable loan documents that their respective loans were within the cost of attendance and that they were borrowing the funds to pay qualified education expenses

must be made at the class certification stage.") (quotations omitted).

The Bankruptcy Court's Rule 23(b) analysis also failed to take into account how factors unique to the bankruptcy setting should preclude class certification.  Concentrating nationwide or circuit-wide litigation in a single forum is not desirable, in part because each individual judge who issued a discharge order retains the paramount interest in assessing whether a discharge violation occurred and, if so, the appropriate remedy.  This is especially so in view of *Taggart*, which requires each issuing Court to determine whether any "fair ground of doubt" regarding Defendants' collection actions exists.  139 S. Ct. at 1804.  The personal circumstances of each such borrower are unique and individualized—particularly where coborrowers are involved.  Moreover, there is an extensive history of individual class members initiating individual actions to address these issues, as Navient has been a defendant in hundreds of cases involving the discharge status of private student loans since 2005, many even involving the same counsel to Plaintiffs and the putative class members in this very case.  Thus, as a practical matter, resolution of Plaintiffs' individual remedial claims simply "break[] down into an unmanageable variety of individual legal and factual issues."  *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir. 1997).  Under the varying circumstances for each debtor, "class treatment would be either singularly inefficient, as one court attempts to resolve diverse claims from [multiple debtors] ... or unjust[,]" *see id.* at 1006 n. 12.

**VI.    THERE IS A COMPELLING NEED FOR IMMEDIATE REVIEW BECAUSE THE BANKRUPTCY COURT ERRED IN DETERMINING THAT THE NAMED PLAINTIFFS MET BOTH THE ADEQUACY AND TYPICALITY REQUIREMENTS NECESSARY TO REPRESENT THE CLASSES**

Here, Named Plaintiff' claims are not typical.  The Bankruptcy Court focused only on the fact that the Named Plaintiffs and the putative class members suffered the same alleged injury and that Navient allegedly violated their bankruptcy discharge order (Adv. Pro. Dkt. No. 443 at 86-

95).  This narrow understanding of "typicality" ignores that any legal theories under which the Named Plaintiffs may recover differ substantially from those of the putative class members. Dismissing these important and legally significant differences, the Bankruptcy Court stated that "[i]t is expected that every individual will have some minor difference in circumstances."  Adv. Pro. Dkt. No. 443 at 88.  But these are no minor differences when viewed through the lens of the bankruptcy setting.  Class representatives must generally "possess the same interest and suffer the same injury" as the unnamed class members, else they are atypical.  *General Tel. Co. of Southwest v. Falcon*, 457 US 147, 156 (1982).

Both Named Plaintiffs received a discharge order pursuant to a Chapter 7 plan but would purport to represent the interests of both (a) Chapter 13 debtors with potentially different and varied plans, as well as (b) the interests of Chapter 7 debtors with uniform discharge orders.  As the Court is aware, Chapter 13 plans may specify varying treatments for classes of creditors pursuant to a plan.  Further, the Supreme Court has held that the terms of confirmed Chapter 13 plans constitute final judgments with *res judicata* effect, even in circumstances when the terms of the confirmed plan may be contrary to statutory requirements.  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010).  Thus, each Chapter 13 debtor has potentially unique defenses or circumstances that may not apply to the Named Plaintiffs.

There are other reasons why the Named Plaintiffs' claims are not typical of the putative class, over and above the deficiencies described above in regard to lack of commonality and predominance.  For example, both Named Plaintiffs executed enforceable class-action waivers (Adv. Pro. Dkt. Nos. 200-22, 200-23), and Plaintiff Homaidan never received Tuition Answer loan amounts that exceeded the "Cost of Attendance" under any theory.  Moreover, some class members may have viable undue hardship claims which conflict with the interests of the named

class representatives and class counsel.  Named Plaintiffs' failure to pursue undue hardship claims creates a manifest conflict with members of the Classes who may wish to pursue such claims. *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.,* 637 F.3d 827, 830 (7th Cir. 2011) ("A representative can't throw away what could be a major component of the class's recovery.").

The Bankruptcy Court found both Named Plaintiffs to be adequate class representatives because they "have demonstrated general awareness of the case and willingness to participate in this action."  Adv. Pro. Dkt. No. 443 at 90.  In finding adequacy, the Bankruptcy Court failed to consider that a named representative may be inadequate if his or her testimony about the claims in dispute or the representative's role in the litigation lacks "credibility."  *CE Design Ltd. v. King Architectural Metals, Inc.* 637 F3d 721, 728 (7th Cir. 2011).  "The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry "'because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'"  *Searcy v. eFunds Corp.*, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010) (quoting *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 168 (S.D. Ind. 2009)).  On top of the inherent credibility issues involved in their evidently false certifications in the promissory notes (*see* Adv. Pro. Dkt. No. 188 at 31), Named Plaintiffs are inadequate class representatives because they are relying exclusively on counsel's unfettered discretion in conducting this litigation.  Indeed, both Named Plaintiffs testified that they are not meaningfully exercising any independent judgment in litigating this case and lack basic knowledge about fundamental details of the litigation being conducted in their own names.  *See* Adv. Pro. Dkt. No. 200-24, Homaidan Dep. Tr. 114:7-115:4; 117:20-118:19; Adv. Pro. Dkt. No. 200-25, Youssef Dep. Tr. 103:15-25; 105:5-19.

## CONCLUSION

Beset by jurisdictional limitations and the inescapable reality that Defendants' true liability to any purported class member can be determined only through a series of arduous mini-trials, the

District Court must accept Defendants' appeal so that it can reverse the Bankruptcy Court's clear error in certifying the Classes.  For all of the reasons set forth above, this Court should grant Defendants' Motion for Leave to Appeal the Bankruptcy Court's Class Certification Order.

[*Signature follows on next page.*]

Dated:  May 15, 2023
        New York, New York

Respectfully submitted,


/s/ *Shawn R. Fox*
Shawn R. Fox
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone:    212.548.2100
Email: sfox@mcguirewoods.com

—and—

Thomas M. Farrell (*pro hac vice*)
McGuireWoods LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
Telephone:    713.571.9191
E-mail: tfarrell@mcguirewoods.com

—and—

Dion W. Hayes (*pro hac vice*)
K. Elizabeth Sieg (*pro hac vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219
Telephone:    804.775.1000
Email: dhayes@mcguirewoods.com
bsieg@mcguirewoods.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

       I certify that on this 15th day of May 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

<i>/s/ Shawn R. Fox_____</i>