**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>HILAL K. HOMAIDAN fka Helal K. Homaidan<br><br>Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HOMAIDAN and REEHAM YOUSSEF on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>Defendants. | Adv. Pro. No. 17-1085 (ESS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND <u>CLASS NOTICE</u>**

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    THE LITIGATION AND SETTLEMENT OVERVIEW ............................................... 4

  A.  The *Homaidan* and *Youssef* Litigation................................................................ 4

  B.  The Terms of the Proposed Settlement.................................................................. 5

  C.  The Proposed Notice............................................................................................. 8

III.   ARGUMENT ...................................................................................................... 10

  A.  The Court Should Preliminarily Approve the Proposed Settlement..................... 10

    1.  Legal Standard.............................................................................................. 11

    2.  The Rule 23(e)(2) Factors Are Satisfied ..................................................... 14

      i.    Plaintiff and Putative Class Counsel Have Adequately Represented the Class. ........ 14

      ii.   The Settlement was Negotiated at Arm's Length........................................ 16

      iii.  The Relief Provided by the Settlement Is Adequate when Weighed Against the Risks of Litigation................................................................................... 17

      iv.  The Proposed Method for Distributing Relief Is Appropriate.................... 20

      v.   Lead Counsel's Fee and Expense Request Is Fair and Reasonable............ 21

      vi.  All Class Members Are Treated Equitably Relative to One Another. ........ 23

    3.  The Proposed Settlement Meets the *Grinnell* Factors.................................... 25

      i.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement. ........................................................................ 25

      ii.   The Reaction of the Class to the Settlement. ............................................. 26

      iii.  The Stage of the Proceedings....................................................................... 26

      iv.  The Risk of Establishing Liability and Damages. ..................................... 27

      v.   The Risks of Maintaining the Class Action through Trial........................... 27

      vi.  Defendants' Ability to Withstand a Greater Judgment.............................. 28

      vii. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation...................................... 28

  B.  The Court Should Preliminarily Certify the Settlement Class........................... 30

    1.  Numerosity..................................................................................................... 31

    2.  Commonality................................................................................................... 31

    3.  Typicality ....................................................................................................... 32

    4.  Adequacy of Representation .......................................................................... 33

    5.  Predominance and Superiority....................................................................... 34

  C.  The Court Should Approve the Proposed Notice Plan. ....................................... 34

CONCLUSION.............................................................................................................. 37

## TABLE OF AUTHORITES

**Cases**                                                                 **Page(s)**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ 30

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................ 27

*Babcock v. C. Tech Collections, Inc.*,
  2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017)........................................... 16

*Baker v. Saint-Gobain Performance Plastics Corp.*,
  2022 WL 1025185 (N.D.N.Y. Feb. 4, 2022)............................................. 16

*Bodon v. Domino's Pizza, LLC*,
  2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) .............................................. 27

*Bodon v. Domino's Pizza, LLC*,
  2015 WL 588680 (E.D.N.Y. Feb. 11, 2015) .............................................. 27

*Bourlas v. Davis L. Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006)............................................................... 11

*Burns v. FalconStor Software, Inc.*,
  2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) .......................................... 27

*Calibuso v. Bank of Am. Corp.*,
  299 F.R.D. 359 (E.D.N.Y. 2014)............................................................... 23

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).....................................*passim*

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................................... 13

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................. 17

*Copley v. Bactolac Pharm., Inc.*,
  2023 WL 2470683 (E.D.N.Y. Mar. 13, 2023)............................................ 13

*Cosgrove v. Citizens Auto. Fin., Inc.*,
  2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) ............................................ 22

*Cullen v. Whitman Med. Corp.,*
 197 F.R.D. 136 (E.D. Pa. 2000) ............................................................ 22

*Cymbalista v. JPMorgan Chase Bank, N.A.,*
 2021 WL 7906584 (E.D.N.Y. May 25, 2021) ......................................... 23

*D'Amato v. Deutsche Bank,*
 236 F.3d 78 (2d Cir. 2001) ............................................................ 16, 28

*Davis v. Eastman Kodak Co.,*
 2010 WL 11558014 (W.D.N.Y. Sept. 3, 2010) ...................................... 17

*Dover v. British Airways, PLC (UK),*
 323 F. Supp. 3d 338 (E.D.N.Y. 2018) ................................................... 21

*Dupler v. Costco Wholesale Corp.,*
 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................... 23

*Fleisher v. Phoenix Life Ins. Co.,*
 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ....................................... 16

*General Tel. Co. v. Falcon,*
 457 U.S. 147 (1982) .............................................................................. 33

*Gordon v. Vanda Pharms. Inc.,*
 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ....................................... 14

*Gradie v. C.R. England, Inc.,*
 2020 WL 6827783 (D. Utah Nov. 20, 2020) .......................................... 22

*Hendricks v. StarKist Co.,*
 2015 WL 4498083 (N.D. Cal. July 23, 2015) ........................................ 25

*Hicks v. Stanley,*
 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................... 30

*Hyland v. Navient Corp.,*
 48 F.4th 110 (2d Cir. 2022) .................................................................. 29

*In re Agent Orange Prod. Liab. Litig.,*
 597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................ 29

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) .......................................... 30

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) ........................................ 23

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ..................................... 12

*In re Gilat Satellite Networks, Ltd.*,
    2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ........................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................... 13, 29

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................. 14, 26

*In re Homaidan*,
    2023 WL 2922576 (Bankr. E.D.N.Y. Apr. 11, 2023) ...................... *passim*

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ..................................... 11, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ............................ 11

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................... 15

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................. 23

*In re Nasdaq Market–Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ....................................... 14

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) .......................................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ..................................... 25, 29

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................... 11, 20

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ............................ 36

*In re Shattuck Labs Sec. Litig.*,
   2023 WL 4043940 (E.D.N.Y. June 16, 2023) ................................................ 37

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................ 12

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................ 15

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .............................................. 28

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................................. 26

*In re Woodard*,
   2023 WL 2412750 (Bankr. D. Neb. Mar. 8, 2023) ..................................... 33

*Jander v. Ret. Plans Comm. of IBM*,
   2021 WL 3115709 (S.D.N.Y. July 22, 2021) ............................................. 19

*Johnson v. Brennan*,
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ........................................... 19

*Lawrence v. First Fin. Inv. Fund V, LLC*,
   2021 WL 3809083 (D. Utah Aug. 26, 2021) ............................................. 20

*Lawrence v. First Fin. Inv. Fund V, LLC*,
   2022 WL 911357 (D. Utah Mar. 29, 2022) ............................................. 222

*Mendez v. MCSS Rest. Corp.*,
   2022 WL 3704591 (E.D.N.Y. Aug. 26, 2022) ...................................... 17, 20

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .......................................................... 17, 29

*Nichols v. Noom, Inc.*,
   2022 WL 2705354 (S.D.N.Y. July 12, 2022) ............................................. 28

*Ortega v. Uber Techs. Inc.*,
   2018 WL 4190799 (E.D.N.Y. May 4, 2018) ............................................... 11

*Rodriguez v. CPI Aerostructures, Inc.*,
   2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) ............................................. 37

*Sheppard v. Consol. Edison Co.*,
  2002 WL 2003206 (E.D.N.Y. Aug.1, 2002) ............................................................ 30

*Smith v. CRST Van Expedited, Inc.*,
  2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ............................................................ 22

*Taggart v. Lorenzen*,
  139 S. Ct. 1795 (2019)............................................................................................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................ 31, 33

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................... 11, 14, 35

*Weber v. Gov't Emps. Ins. Co.*,
  262 F.R.D. 431 (D.N.J. 2009) ................................................................................ 28

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ..................................................................................... 35

*Yim v. Carey Limousine NY, Inc.*,
  2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) ......................................................... 23

**Statutes**

11 U.S.C. § 523(a)(8)(B) .............................................................................................. 4

11 U.S.C. § 524 ............................................................................................................. 1

26 U.S.C. § 221(d) ........................................................................................................ 6

**Rules**

Fed. R. Bankr. P. 7023 ................................................................................................ 11

Fed. R. Civ. P. 23 .................................................................................................. *passim*

Fed. R. Civ. P. 23(a) ............................................................................................. *passim*

Fed. R. Civ. P. 23(b) ............................................................................................. *passim*

Fed. R. Civ. P. 23(c) ............................................................................................. *passim*

Fed. R. Civ. P. 23(e) ............................................................................................. *passim*

Fed. R. Civ. P. 23(g) ............................................................................................................. 3

**Other Authorities**

4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON
    CLASS ACTIONS § 11:53 .................................................................................................... 35

Plaintiff Reeham Youssef ("Plaintiff"), on behalf of a putative Class of similarly situated student loan debtors, respectfully submits this memorandum of law in support of her unopposed motion for: (i) preliminary approval of the proposed Settlement[1] between Plaintiff, on behalf of herself and the Class, and Defendants Navient Solutions LLC and Navient Credit Finance Corporation ("Defendants" or "Navient") (collectively, the "Parties"); (ii) appointment of Plaintiff as Class Representative and appointment of undersigned counsel ("Putative Class Counsel") as Class Counsel; and (iii) approval of the form and manner of the Notice to be provided to the Class. The Parties' agreed-upon proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23 (e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") is filed herewith.

## I.    **PRELIMINARY STATEMENT**

The Parties have resolved the Litigation for over $198 million, which includes approximately $182.4 million in debt relief and $16 million in cash, as well as credit remediation, for a Settlement Class of 4,607 primary borrowers.[2] By any measure—be it the sheer volume of combined debt relief and cash or the average per-primary borrower debt relief of over $43,000— this is an extraordinary result for the Class. The Stipulation of Settlement (the "Stipulation" or "Settlement"), which Plaintiff has entered into with Defendants on behalf of herself and the Class, memorializes the Parties' agreement and concludes over six years of hard-fought litigation in which Plaintiff alleged that Navient violated the discharge injunction found in Section 524 of the Bankruptcy Code by continuing to collect on discharged student loans after the Class Members'

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement, as filed simultaneously herewith. All emphasis is added and all citations are omitted unless otherwise noted.

[2] The Settlement Class is comprised of 4,607 primary borrowers and 658 co-borrowers (total of 5,265 Class Members) on total of 8,395 Title IV Covered Loans.

bankruptcy discharges. *See* 11 U.S.C. § 524. The Settlement was negotiated at arm's length by experienced and knowledgeable counsel and with the assistance of an experienced and neutral mediator following significant discovery and motion practice in this Court and more than a dozen lengthy mediation sessions. The Settlement—which, as explained, will result in nearly $200 million in monetary relief alone—is more than fair, reasonable, and adequate and would provide substantial monetary and non-monetary benefits to the Settlement Class. This Court should therefore preliminarily approve the Settlement so that notice may be provided to the Class.

Pursuant to the Settlement, Defendants have agreed to forego collection of the entirety of the amount of all outstanding balances (whether comprised of unpaid principal, unpaid interest, and/or unpaid fees) on Title IV Covered Loans that relate to the amount by which the initial disbursement of the Title IV Covered Loan exceeded the Cost of Attendance. This Cost of Attendance Overage Debt Relief represents approximately $87 million in value to the Class. Additionally, for those Discharged Title IV Borrowers whose Title IV Covered Loan(s) are in Defaulted Status, Defendants have agreed to forego collection of *any* outstanding balances (including principal, interest, and fees) on any and all Title IV Covered Loan(s). This Defaulted Status Debt Relief represents, at minimum, an additional $95.4 million in value to the Class. Thus, under the Settlement, Navient has agreed to forego collection on approximately $182.4 million in student-loan balances, and some Class Members will see their Title IV Covered Loans *completely erased*. Further, those Class Members who made payments to Navient on Title IV Covered Loans after those loans were discharged in bankruptcy will receive cash restitution of a portion of those payments in an amount equal to their *pro rata* share of a Settlement Fund of $16 million, less Putative Class Counsel's court-approved fees and expenses, service awards, Notice and Administrative Costs, and Taxes and Tax Expenses. Navient will also take steps to either delete

all trade lines at Credit Reporting Agencies or update the trade lines to reflect that the Title IV Covered Loan was subject to a bankruptcy discharge, while taking all commercially reasonable steps not to refresh any trade lines on any Class Member's Consumer Credit Report.  The combination of this relief will have a real, tangible impact on the 4,607 primary borrowers covered by the Settlement:  It not only puts money in their pockets but, through credit remediation, starts to undo the harm that Defendants' collection efforts had on their borrowing capacity.  This credit remediation can have a profound effect on Class Members' long-term financial outlook and is just as impactful as the substantial debt relief the Class will receive.  The Settlement therefore offers substantial monetary and non-monetary relief to the Class while also accounting for the substantial risks inherent in proceeding with the Litigation.

Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, allowing Putative Class Counsel to provide the Notice to the members of the Settlement Class.  *See* Fed. R. Civ. P. 23(e).  Plaintiff also requests that the Court appoint her Class Representative for the Settlement Class and for undersigned counsel to be appointed as Class Counsel.  *See* Fed. R. Civ. P. 23(g).  Finally, Plaintiff respectfully requests that the Court approve the proposed notice plan to which the Parties agreed in the Settlement, as it meets the requirements of Due Process and is the best notice practicable under the circumstances.  *See* Fed. R. Civ. P. 23(c).

## II.    THE LITIGATION AND SETTLEMENT OVERVIEW

A.  The *Homaidan* and *Youssef* Litigation.[3]

On December 4, 2008, Hilal Khalil Homaidan ("Homaidan" and, collectively with Youssef, "Plaintiffs") filed for bankruptcy relief in the United States Bankruptcy Court for the Eastern District of New York, Case No. 08-48275. A discharge order was signed on April 9, 2009. Homaidan filed a motion to reopen his bankruptcy proceeding on April 14, 2017. An order granting the motion to reopen his bankruptcy proceeding was granted on May 26, 2017.

On October 29, 2013, Reeham Youssef filed for bankruptcy relief in the United States Bankruptcy Court for the Eastern District of New York, Case No. 13-46495. A discharge order was signed on February 6, 2014. Youssef filed a motion to reopen her bankruptcy proceeding on October 1, 2019. An order granting the motion to reopen her bankruptcy proceeding was granted on December 4, 2019.

On June 23, 2017, Homaidan filed an adversary complaint (Adv. Pro. No. 17-1085) captioned *Hilal Khalil Homaidan v. Navient Solutions, LLC et al.* in the United States Bankruptcy Court for the Eastern District of New York. *See* ECF No. 1. Homaidan sought a determination on behalf of himself and a similarly-situated class that certain debts he incurred as a student are dischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and costs, for Navient's allegedly willful violations of the bankruptcy discharge order entered in his case when it collected on those loans following their

---

[3] As the Court is aware, the Litigation has an extensive procedural history beyond this overview that need not be repeated in full for the purpose of preliminary approval. *See In re Homaidan*, 2023 WL 2922576, at *2-*6 (Bankr. E.D.N.Y. Apr. 11, 2023). As part of its forthcoming motions for final approval of the Settlement and for Attorneys' Fees and Expenses, Putative Class Counsel will submit an extensive declaration setting forth the years-long investment of substantial time, effort, and resources to advance the Class's interests in the Litigation.

discharge in bankruptcy.  On October 21, 2019, Homaidan amended his adversary complaint to add Youssef as a class representative.  *See* ECF No. 160.  On July 21, 2023, Youssef amended her adversary complaint for a final time to include certain statutory claims pursuant to the Fair Debt Collection Practices Act.[4]

The Litigation has seen extensive motion practice and discovery, including motions to dismiss, to compel arbitration, *see* ECF Nos. 16 and 17, for class certification, *see* ECF Nos. 168 and 169, for a temporary restraining order and preliminary injunction, *see* ECF No. 314, as well as discovery disputes, summary judgment motions as to particular loan programs, and appeals to the district court and Second Circuit, *see, e.g.*, ECF Nos. 78 and 170.  Significantly, this Court granted in part Plaintiffs' motion seeking a temporary restraining order enjoining Navient from collecting on certain Title IV loans.  *See* ECF Nos. 341-42.  This Court later granted in part Plaintiffs' motion seeking a preliminary injunction enjoining Navient from collecting on certain Title IV loans.  *See* ECF Nos. 403-04.  Then, on April 11, 2023, this Court granted in part the Plaintiffs' Motion for Class Certification, certifying a nationwide class of certain borrowers.  *See* ECF Nos. 443-44.  Additionally, the Parties have engaged in years of discovery, including the exchange of written discovery requests and responses, the production and review of more than 16,000 pages of documents, and eight depositions (and review and analysis of a dozen transcripts of depositions taken in related cases).

B. The Terms of the Proposed Settlement.

The Settlement Class includes all individuals who: (1) filed for bankruptcy protection in any United States Bankruptcy Court on or after October 17, 2005; (2) before their bankruptcy

---

[4] Filed concurrently herewith is Plaintiff's motion to amend the operative Complaint (ECF No. 160) and sever Homaidan from this adversary proceeding.

filing, became obligated to repay one or more Title IV Covered Loans either as a borrower or as a co-borrower; (3) obtained in their bankruptcy case an order of discharge issued by the bankruptcy court; and (4) have never reaffirmed their Title IV Covered Loans.  For purposes of the proposed Settlement, a Title IV Covered Loan is defined as a student loan owned by Navient that: (a) was not made, insured, or guaranteed by a governmental unit or non-profit institution; (b) was not made under any program funded in whole or in part by any governmental entity or non-profit institution; (c) was for attendance at schools that were accredited under Title IV of the Higher Education Act of 1965; and (d) where the loan proceeds were disbursed directly to the borrower in an amount that exceeded the borrower's maximum cost of attendance as reported in the Integrated Postsecondary Education Data System.  The Discharged Title IV Borrowers who are covered by the Settlement are listed in Exhibit 1 to the Stipulation of Settlement.[5]

The Settlement provides significant and meaningful relief to the Class.  *First*, Navient will forego collection from all Class Members of any outstanding balances (including principal, interest, and fees) on Title IV Covered Loans that relate to the amount by which the initial disbursement of the Title IV Covered Loan exceeded the Cost of Attendance.  *See* Stipulation ¶ 5.3.  *Second*, for Class Members whose Title IV Covered Loans are in Defaulted Status, Navient will forego collection of all outstanding balances (including principal, interest, and fees) on those loans, effectively granting *complete* debt relief to these Class Members for their affected educational loans.  *See* Stipulation ¶ 5.4.  Through these provisions, the Class will obtain debt

---

[5] The difference between the Settlement Class and the class the Court certified on April 11, 2023 is twofold: 1) the "cost of attendance" measure applicable to the Settlement Class is set by the maximum cost to attend a particular institution set forth in the Department of Education's Integrated Postsecondary Education Data System ("IPEDS"), not as the term "cost of attendance" is defined in 26 U.S.C. § 221(d); and 2) the Settlement Class does not include the limited number of borrowers whose loans were serviced but not owned by Navient.

relief—and, in some cases, complete debt relief—valued at approximately $182.4 million. More, this debt relief is automatic: Class Members will receive it without any need to submit a claim form or any other documentation to Navient or the Settlement Administrator. Additionally, for those Class Members who made post-discharge payments on their Navient-owned Title IV Covered Loans from their personal funds, Navient will pay damages for a portion of those payments in an amount equal to their *pro rata* share of the $16 million Title IV Settlement Fund, less Putative Class Counsel's court-approved fees and expenses, service awards, Notice and Administrative Costs, and Taxes and Tax Expenses. *See* Stipulation ¶¶ 5.5-5.6. Each Class Member who wishes to participate in distributions from the Title IV Settlement Fund must submit a Claim Form certifying the amount of post-discharge payments they made. *See* Stipulation ¶¶ 8.4, 8.8. Additionally, Navient will provide credit remediation for all Class Members—either by deleting trade lines or requesting that trade lines be updated to reflect that the Title IV Covered Loan was subject to a bankruptcy discharge—while taking all commercially reasonable steps not to refresh any trade lines on any Class Member's Consumer Credit Report. *See* Stipulation ¶ 5.7. Plaintiff and Putative Class Counsel consider this credit remediation to be an indispensable aspect of the Settlement and strongly believe that it will have a positive, long-term impact on the financial outlook of the Class. Thus, the Settlement addresses the Class's core complaints and provides approximately $182.4 million of debt relief to Class Members and millions more in additional monetary relief, as well as credit repair that will have a positive impact on Class Members' borrowing capacity. The Settlement confers substantial benefits on the Class while eliminating the risk and delay inherent in further litigation.

All Class Members will be provided with a Class Notice that outlines the relief available to them, as well as an opportunity to Opt Out of the Settlement should they wish to preserve their

claims against Navient.  *See* Stipulation ¶¶ 8.14-8.17.  If a sufficient number of Class Members

elect to Opt Out of the Settlement, Navient has the unilateral right to terminate the Settlement, at

which point the Parties would be returned to their respective positions as of April 12, 2023.  *See*

Stipulation ¶¶ 4.46, 10.3.

     C.  <u>The Proposed Notice.</u>

The Settlement provides that the Settlement Administrator will disseminate the Class

Notice, substantially in the form of Exhibit 2 to the Stipulation in accordance with the Settlement

and as ordered by this Court.  *See* Stipulation ¶¶ 7.1-7.7.

To facilitate the dissemination of the Class Notice, Navient must provide to the Settlement

Administrator no later than five business days after entry of the Preliminary Approval Order a list

in electronic format of Discharged Title IV Borrowers who have a Title IV Damages Claim that

contains the following information:

    i.    The amount received by Navient on such borrowers' Title IV Covered Loans
since the date of discharge; and

    ii.    For Discharged Title IV Borrowers not in Defaulted Status, the amount of the
Discharged Title IV Borrower's Cost of Attendance Overage Debt Relief;
or

    iii.    For Discharged Title IV Borrowers in Defaulted Status, the amount of the
Discharged Title IV Borrower's Defaulted Status Debt Relief;
and

    iv.    The Discharged Title IV Borrower's mailing and email addresses and phone
number.

The Settlement Administrator will then (i) mail the Class Notice and Title IV Claim Form to all Class Members[6] via First Class mail to the addresses Navient provides and (ii) email the Class Notice and Title IV Claim Form to all Class Members to any email address Navient provides. The Class Notice and Title IV Claim Form will identify the (i) amount of the Discharged Title IV Borrower's Title IV Damages Claim, (ii) the loans for which he or she will receive debt relief pursuant to the Settlement, and (iii) and advise the Class Member of his or her right to submit a Title IV Claim Form to claim their *pro rata* share of the Title IV Settlement Fund.  Within three business days of the mailing of the Class Notice, the Settlement Administrator will confirm to Putative Class Counsel that the Notices have been disseminated to the Class Members.  If any Class Notice is returned to the Settlement Administrator with a forwarding address for the recipient, the Settlement Administrator will re-mail the Notice to that forwarding address.  If an email is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will inform Putative Class Counsel.  Additionally, the Settlement Administrator will use commercially reasonable efforts (through skip-tracing or other methods) to obtain a valid mailing address for every Class Member whose Class Notice is returned as undeliverable and without the provision of any forwarding address.  The Settlement Administrator will then re-mail the Class Notice to Class Members at any new addresses it is able to locate through this process.  The Settlement Administrator will also establish and maintain a website containing relevant information and documents related to the Litigation, including the Stipulation and the Class Notice, and will staff a dedicated toll-free telephone line for Class Members to call to obtain further

---

[6] For the avoidance of any doubt, both primary borrowers and co-borrowers on Title IV Covered Loans will receive the Class Notice and will be given the opportunity to submit a Title IV Claim Form.

information concerning the Settlement, including the requirements for submitting a Title IV Claim Form.

### III.    ARGUMENT

The proposed Settlement confers substantial, meaningful, and immediate relief for the Class in the form of $182.4 million in debt relief and millions of dollars in direct cash payments from Navient based on Class Members' *pro rata* share of the Title IV Settlement Fund, plus credit remediation that has the potential to have a long-lasting impact on individual Class Members' financial futures.  This is an outstanding result for the Class that easily warrants preliminary approval.  To further facilitate the disbursement of the Settlement's significant benefits, Plaintiff requests that the Court appoint her Class Representative and that undersigned counsel be appointed as Class Counsel.  Finally, the Court should approve the form of the Class Notice, which is appropriate and well-calculated to reach each and every Class Member and advise them of the Settlement's benefits and their rights thereunder.

A.    The Court Should Preliminarily Approve the Proposed Settlement.

Plaintiff and Putative Class Counsel have worked diligently over the past six years to reach a fair, reasonable, and adequate resolution to the Litigation.  The Settlement—which provides approximately $182.4 million in debt relief to a Class of 4,607 primary borrowers, plus millions of dollars in additional monetary payments and much-needed credit remediation—is the result of that process.  While Plaintiff and Putative Class Counsel believe the claims advanced in the Litigation are meritorious and that Navient's defenses would not prevail at trial, they recognize the significant risk, expense, and delay associated with continuing to prosecute the Litigation through trial and any further appeals.  In negotiating and evaluating the Settlement, Plaintiff and Putative Class Counsel have accounted for these costs and uncertainties, including the possibility that Navient's defenses may have reduced or eliminated the Class's potential damages, as well as the

delays inherent in complex class action litigation.  In light of the foregoing considerations, Putative Class Counsel believes the Settlement is an exceptional outcome for the Class.

### 1.  Legal Standard

In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure—made applicable here through Federal Rule of Bankruptcy Procedure 7023—requires judicial approval of a class action settlement.  Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").  The approval process typically takes place in two stages.  *Ortega v. Uber Techs. Inc.*, 2018 WL 4190799, at *2 (E.D.N.Y. May 4, 2018).  In the first stage, a court provides preliminary approval of the settlement and authorizes notice of the settlement be given to the class.  *See id.* ("Preliminary approval of a proposed settlement is the first in a two-step process required by Federal Rule of Civil Procedure 23(e) before a class action may be settled." (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016))).  That is what Plaintiff seeks via this motion.  In the second stage, which will come only if the Court grants this motion, the District Court holds a fairness hearing and "makes a final determination as to whether the proposed settlement is fair reasonable, and adequate." *Bourlas v. Davis L. Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (quoting *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007)).

Pursuant to Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

a) the class representatives and class counsel have adequately represented the class;

b) the proposal was negotiated at arm's length;

c) the relief provided for the class is adequate, taking into account:

   (i)  the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3);[7] and

d) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

---

[7] Here, the Parties have agreed that Defendants shall have the unilateral right to terminate the Settlement if the number Class Members who timely and validly request exclusion from the Settlement exceeds the number set forth in a confidential supplemental agreement executed between the Parties through their counsel (the "Supplemental Agreement").  *See* Stipulation ¶¶ 4.46, 10.3.  This type of agreement is common in class action settlements in this Circuit "and has no negative impact on the fairness of the Settlement."  *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (granting final approval to settlement with similar exclusion threshold); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 377 (S.D.N.Y. 2013) (same).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors which the Second Circuit has counseled district courts to consider in determining whether to grant final approval to a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

The Rule 23(e) factors are not intended to "displace" any previously adopted factors but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. Likewise, "[i]n finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Copley v. Bactolac Pharm., Inc.*, 2023 WL 2470683, at *10 (E.D.N.Y. Mar. 13, 2023) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

Here, Plaintiff is requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. As stated above, the proposed Settlement provides for approximately $182.4 million in debt relief plus millions of dollars in additional cash payments to Class Members who made payments toward their Title IV Covered Loans after those loans were discharged in bankruptcy, in addition to credit repair—a substantial recovery that is unquestionably beneficial to the Class and plainly "within the range of possible approval." *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007).

Where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 87 (quoting *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

### 2.  The Rule 23(e)(2) Factors Are Satisfied

i.  <u>Plaintiff and Putative Class Counsel Have Adequately Represented the Class.</u>

As the Court found in granting class certification, *see In re Homaidan*, 2023 WL 2922576, Plaintiff's interests in this case are directly aligned with those of the other Class Members.  *Id.*, at *43-45; *see also Wal-Mart*, 396 F.3d at 113 ("[A]dequate representation of a particular claim is determined by the alignment of interests of class members.").  At the outset, Plaintiff is an adequate Class Representative because she "asserts the same general injury as the rest of the class"— economic harm caused by Navient's collection efforts on student loans that were discharged in bankruptcy.  *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *3 (E.D.N.Y. Sept. 15, 2022).  Accordingly, "plaintiff therefore has an 'interest in vigorously pursuing the claims of the class.'" *Id.* (quoting *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019))).  Further, Plaintiff has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through, among other things, sitting for a deposition and producing documents.  *In re Homaidan*, 2023 WL 2922576 at *45.  Plaintiff and Putative Class Counsel zealously advocated for the interests of the Discharged Title IV Borrowers and have obtained an excellent result:  $182.4 million in debt relief and a $16 million cash settlement fund, plus credit remediation that will have a long-term positive impact on Class Members' borrowing capacity and overall financial outlook.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle.  Plaintiff agreed to settle only after extensive briefing and motion practice, including motions: to compel arbitration and to dismiss, for class certification, for a temporary restraining order and preliminary injunction, for summary judgment, and other discovery disputes, as well as litigating appeals to the district court and the Second Circuit.  The parties also engaged in substantial discovery that included review of over 16,000 documents and eight depositions (and productions of 12 deposition transcripts from other matters).  Plaintiff and Putative Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendants' defenses when they agreed to the Settlement.  *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (granting final approval of settlement and concluding that "[t]he advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of [settlement] approval" because "[t]he parties' counsel were clearly in a position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed [s]ettlement"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281–82 (S.D.N.Y. 1999) (granting preliminary approval of settlement where, as here, plaintiffs "were well informed of the strengths and weaknesses of their claims" after a large number of "documents had been inspected, depositions and private sworn interviews had occurred, plaintiffs had briefed numerous motions, and plaintiffs had consulted extensively with numerous experts").  These circumstances confirm the fairness of the proposed Settlement.

Plaintiff and Putative Class Counsel's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive briefing on motions to dismiss and for class certification, and participation in extensive settlement negotiations, which included multiple mediation sessions and follow-up discussions.  The Settlement is demonstrably the product of well-

informed negotiations and vigorous advocacy on behalf of thousands of student loan borrowers. Accordingly, this factor weighs in favor of approval.

ii.    The Settlement was Negotiated at Arm's Length.

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See Babcock v. C. Tech Collections, Inc.*, 2017 WL 1155767, at *5 (E.D.N.Y. Mar. 27, 2017) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's length negotiations conducted by capable counsel, well experienced in class action litigation."). This is particularly true when, as here, a mediator assisted the Parties in reaching a settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Here, the Settlement was reached only after extensive, arm's-length negotiations before Eric Green, Esq., a nationally recognized mediator experienced in class actions. The Parties participated in more than a dozen mediation sessions and calls and provided Mr. Green with detailed mediation statements and supporting evidence. Notably, several courts in this Circuit have approved settlements mediated by Mr. Green. *See, e.g.*, *Baker v. Saint-Gobain Performance Plastics Corp.*, 2022 WL 1025185, at *3 (N.D.N.Y. Feb. 4, 2022) (granting final approval of settlement which was "negotiated at arm's length, in good faith, and was overseen by an experienced mediator, Professor Eric Green, which demonstrates that the negotiated resolution was procedurally fair"); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *1 (S.D.N.Y. Sept. 9, 2015) (granting final settlement approval where, similar to here, "[t]he arm's-length settlement negotiations were [] extensive," with "the parties along with counsel attended three in-person mediation sessions with Professor Eric Green, a highly experienced and very well-regarded

mediator"); *Davis v. Eastman Kodak Co.*, 2010 WL 11558014, at *11 and n.10 (W.D.N.Y. Sept.

3, 2010) (granting final approval of settlement negotiated by Mr. Green and noting that he "has

experience in mediating complex class action lawsuits").

iii.    The Relief Provided by the Settlement Is Adequate when Weighed Against the Risks of Litigation.

Courts consider both the best possible recovery and litigation risks in deciding "not whether

the settlement represents the best possible recovery, but how the settlement relates to the strengths

and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9

(S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A

court thus need only determine whether the settlement falls within a range of reasonableness that

"recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion." *Mendez v. MCSS Rest. Corp.*,

2022 WL 3704591, at *8 (E.D.N.Y. Aug. 26, 2022) (quoting *Newman v. Stein*, 464 F.2d 689, 693

(2d Cir. 1972)).

If approved, the Settlement will provide Class Members with approximately $182.4 million

in debt relief plus $16 million in cash, less Putative Class Counsel's court-approved fees and

expenses, service awards, Notice and Administrative Costs, and Taxes and Tax Expenses.  Each

of the 4,607 primary borrowers will receive, on average, just over $43,000 in debt relief.  Further,

the total amount of post-discharge payments is approximately $73.4 million, so the $16 million

Title IV Settlement Fund represents nearly 22% of total damages.  Based on estimated claims rates,

even after fees, expenses, and costs, it is estimated that Class Members can likely expect to receive

at least 20% of their payments and potentially as much as 100%.  As a part of the Agreement,

Navient also has agreed to take steps to either delete all trade lines at Credit Reporting Agencies

or update the trade lines to reflect that the Title IV Covered Loan was subject to a bankruptcy

17

discharge, while taking all commercially reasonable steps not to refresh any trade lines on any Class Member's Consumer Credit Report.  The value of this credit remediation cannot be immediately quantified but could conceivably result in lower borrowing costs for Class Members on mortgages, car loans, and other financed purchases.  This is substantial monetary and nonmonetary relief, most of which Class Members will receive automatically and without any need for action on their part.

This multi-pronged relief compares favorably to recent, similar student loan-related settlements.  In January 2022, Navient agreed to settle claims brought by 39 state attorneys general for a combination of $1.7 billion in debt relief and $95 million in cash.  *See* Navient AG Multi-State Settlement (Jan. 13, 2022), *available at* https://www.navientagsettlement.com/Home/portalid/0?portalid=0.  That settlement, however, covered a larger swathe of student loan borrowers, with the average per-borrower debt relief coming to approximately $25,757.58 and the approximate cash restitution totaling approximately $260 per borrower.  *Id.*  The Settlement here provides substantially higher average debt relief and cash payments on a per-borrower basis.  State attorneys general also settled claims against for-profit college operator Career Education Corporation in 2019 for $493.7 million debt relief, which was spread across 179,529 student borrowers who took out loans from the company.  *See* Melissa Korn, *Career Education Corp. Forgives $493.7 Million in Student Debt*, WALL STREET JOURNAL (Jan. 3, 2019), *available at* https://www.wsj.com/articles/career-education-corp-forgives-493-7-million-in-student-debt-11546551668.  The average per-borrower debt relief there was approximately $2,750—well below 10% of the per-borrower relief provided by the Settlement.  And in another recent settlement, the Department of Education agreed to disburse approximately $6 billion in debt relief to a class of 200,000 student loan borrowers and another $1.5 billion to a separate class of 64,000 borrowers.

*See Sweet v. Cardona*, 2022 WL 16966513, at *3 (N.D. Cal. Nov. 16, 2022) (granting final approval to class action settlement brought by student loan debtors). The average per-borrower debt relief in *Sweet*—approximately $30,000 for the first class and $23,475.50 for the second class—is also lower than the average per-borrower debt relief contemplated in the Settlement.

The Settlement proposed here, viewed both on its own and in comparison to other recent settlements involving debt relief to student loan borrowers, is particularly strong.

\*      \*      \*

Contrast this strong recovery with the potential risks of continuing the Litigation. Although Plaintiff and Putative Lead Counsel believe their case against Defendants is strong, they acknowledge the substantial hurdles to obtaining a final verdict that could withstand appeal. Such issues include whether the Litigation can be maintained as a class action and the availability of damages for discharge violations following the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). If either of those issues were decided in Navient's favor, the Class risked recovering substantially less damages and debt relief than is conferred by the Settlement (and perhaps no damages at all). Plaintiff and Putative Class Counsel also considered the significant risks that are presented by the uncertainty that arises in any jury trial, and that even a favorable verdict could be reduced or reversed in its entirety upon consideration of inevitable post-trial motions or on appeal. More, even if ultimately successful, the trial and appellate process would likely consume a minimum of two years, if not longer, thereby delaying further the recovery by Class Members of damages they suffered beginning more than 15 years ago. Courts recognize that such risks weigh in favor of settlement, which provides a certain recovery for class members. In *Jander v. Ret. Plans Comm. of IBM*, 2021 WL 3115709 (S.D.N.Y. July 22, 2021), for example, the court approved a settlement where, similar to here, defendants had "numerous arguments to that could

prevent [p]laintiffs from achieving any recovery," whereas the settlement "provides a significant and expeditious route to recovery for the Class." *Id.* at *2, *4 (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. at 210); *see also Mendez*, 2022 WL 3704591, at *8 ("Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." (quoting *Johnson v. Brennan*, 2011 WL 4357376, at *12, (S.D.N.Y. Sept. 16, 2011))).

The proposed Settlement balances the risks, costs, and delays inherent in complex bankruptcy class action cases such as this one. When situated in the context of these risks and the uncertainty of any future recovery from Defendants, the Settlement—and its combination of substantial monetary and non-monetary relief—is exceedingly beneficial to the Class.

iv.    The Proposed Method for Distributing Relief Is Appropriate.

The Settlement's contemplated "method of distributing relief to the class" and "the method of processing class-member claims" is also reasonable and appropriate. Fed. R. Civ. P. 23(e)(2)(C)(ii). Class Members will automatically receive debt relief and credit remediation so long as they do not exclude themselves from the Settlement—they need not do anything, such as submit any claim form or other documentation or contact the Settlement Administrator, to receive their portion of the approximately $182.4 million in loan discharges and the credit repair efforts that Navient has agreed to make. Courts have found that such "automatic" distribution of relief is "sufficiently effective." *Lawrence v. First Fin. Inv. Fund V, LLC*, 2021 WL 3809083, at *6 (D. Utah Aug. 26, 2021) (finding that the settlement's method of distributing relief to the class was appropriate where, similar to here, relief was "essentially automatic upon cessation of [the defendant's debt] collection efforts"). And although Class Members must submit a claim form to

receive funds (if eligible) from the Title IV Settlement Fund, that process, too, is fair, efficient, and effective.  The Stipulation of Settlement provides that the Net Settlement Fund (*i.e.*, the $16 million Title IV Settlement Fund, less Putative Class Counsel's court-approved fees and expenses, service awards, Notice and Administrative Costs, and Taxes and Tax Expenses) will be distributed to Authorized Claimants who timely submit valid Claim Forms that are approved for payment in amounts calculated pursuant to the Settlement.  *See* Stipulation ¶¶ 8.4 – 8.13.  Specifically, JND Legal Administration, the Settlement Administrator selected by Putative Class Counsel (subject to the Court's approval), will process claims under the guidance of the Parties, provide claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of its claims, and will distribute the Title IV Settlement Fund pursuant to the Stipulation.[8]  Per the Stipulation, JND will "mail a check to or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund."  *Christine Asia*, 2019 WL 5257534, at *14.  "This type of claims processing and method for distributing settlement proceeds is standard in . . . class actions and is effective."  *Id.*  This factor therefore supports preliminary approval.

v.    <u>Lead Counsel's Fee and Expense Request Is Fair and Reasonable.</u>

Although the District Court will ultimately assess the reasonableness of the requested fee, the expected amount of the requested fee is appropriate for consideration at this stage.  *See* Fed. R. Civ. P. 23(e)(2)(c)(iii).  Putative Class Counsel will apply for an award of attorneys' fees of $8 million from the Title IV Settlement Fund, plus litigation costs and expenses incurred in connection with the prosecution and resolution of this Litigation in an amount not to exceed $750,000.  Putative Class Counsel respectfully submits that this request, which will be further briefed in their

---

[8] Other courts in this District have appointed JND as settlement administrator.  *See Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 351 (E.D.N.Y. 2018).

forthcoming motion for attorneys' fees and expenses, is fair and reasonable.  A fee award of $8 million from the Title IV Settlement Fund, which represents a mere 4.3% of the Settlement's total value of at least $198.4 million—$182.4 million in debt relief plus $16 million in cash plus the unquantified value of credit repair—is *lower* than the fees awarded in other settlements featuring a combination of cash payments and debt relief.  *See, e.g.*, *Lawrence v. First Fin. Inv. Fund V, LLC*, 2022 WL 911357, at *4 (D. Utah Mar. 29, 2022) (awarding fees representing 6.4% of the total value of the settlement which provided $1.8 million in debt relief and $230,000 in cash); *Gradie v. C.R. England, Inc.*, 2020 WL 6827783, at *12 (D. Utah Nov. 20, 2020) (awarding fees representing 7.74% "of the gross value" of the settlement which provided $15 million in debt relief and $3.6 million in cash); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) (awarding fees representing 7.5% "of the total . . . financial value of the settlement," which provided $9 million in debt relief and $2.625 million in cash); *Cosgrove v. Citizens Auto. Fin., Inc.*, 2011 WL 3740809, at *8 (E.D. Pa. Aug. 25, 2011) (awarding fees representing 11.7% of the total value of the settlement, which provided $7.75 million debt relief and $2.9 million in cash); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 143, 146-151 (E.D. Pa. 2000) (awarding fees representing 33.33% of the total value of the settlement, which provided $1.3 million in debt relief and $5.97 million in cash).  It is "appropriate to include the debt relief portion of the [s]ettlement in the gross value because the debt relief provides real and tangible benefit" to the Class and "is comparable to a monetary payment."  *Gradie*, 2020 WL 6827783, at *11-*12 (noting that "courts routinely include debt relief as part of the total settlement fund").  Nor should the Court overlook the value of the credit repair aspect of the Settlement.  Although not immediately quantifiable, credit repair could boost Class Members' borrowing capacity, leading to lower borrowing costs well into the future.

### vi.  All Class Members Are Treated Equitably Relative to One Another.

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  "Equitably" does not mean "equal," and courts should assess "whether the apportionment of relief among class members takes appropriate account of differences among their claims."  2018 Advisory Committee notes to Rule 23(e)(2), ¶¶ C & D.  To be clear, "a class need not provide the exact same settlement to every class member in order for a court to approve the settlement," and "courts in the Second Circuit have consistently approved class settlements in which the subclasses have recovered different amounts under the settlement." *Yim v. Carey Limousine NY, Inc.*, 2016 WL 1389598, at *5 (E.D.N.Y. Apr. 7, 2016); *see also Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 376 (E.D.N.Y. 2014) (granting approval to settlement class that included subclasses treated differently under the settlement); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 237-42 (E.D.N.Y. 2010) (granting approval to settlement class in which different groups within the class received varying amounts of relief).  So, "unless the court reviewing settlement finds . . . stark conflicts of interest . . . , a settlement which contains class members who may recover different amounts is acceptable."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 351 (E.D.N.Y. 2010) (quoting *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 252 (D.N.J. 2000)).

As explained, the proposed Settlement has three elements:  (i) $182.4 million in debt relief, (ii) $16 million in cash (less Putative Class Counsel's court-approved fees and expenses, service awards, Notice and Administrative Costs, and Taxes and Tax Expenses), and (iii) credit remediation.  The cash will be distributed on a *pro rata* basis depending on the amount of payments (if any) a Class Member made on their Title IV Covered Loans following their discharge in bankruptcy.  *See* Stipulation ¶ 8.9.  Courts have long approved *pro rata* distribution plans such as the one contemplated here.  *See, e.g., Cymbalista v. JPMorgan Chase Bank, N.A.*, 2021 WL

7906584, at *9 (E.D.N.Y. May 25, 2021) ("Pro rata distribution schemes are sufficiently equitable and satisfy the requirements of Rule 23(e)(2)(D)," and collecting cases.).  Here, the higher the amount of payments a Class Member made to Navient on their discharged loans, the more cash they will receive from the Title IV Settlement Fund.  "[T]his is an equitable distribution scheme because it distributes relief on the basis of each individual class member's claim." *Id.*

The $182.4 million in debt relief will be distributed in two channels:  the Cost of Attendance Overage Debt Relief and the Defaulted Status Debt Relief.  Every Class Member will receive Cost of Attendance Overage Debt Relief, which is valued at approximately $87 million. While each Class Member will receive a different amount of Cost of Attendance Overage Debt Relief based on the value of their loan, the Settlement treats Class Members equitably because the amount of debt relief is directly apportioned based on their level of harm (*i.e.*, the difference between the value of their loan and the cost of attendance).  Further, Class Members will receive credit remediation in levels depending on whether they received debt relief on some or all of their Title IV Covered Loans.  Like the Cost of Attendance Overage Debt Relief, the credit repair is apportioned based on a Class Member's level of harm.  Accordingly, this portion of debt relief and the credit remediation clearly meet the Rule 23(e)(2)(D) standard.

Further, while only Class Members whose Title IV Covered Loans were in Defaulted Status will receive the Defaulted Status Debt Relief (worth approximately $95.4 million), the differential treatment reflects the reality that this subset of Class Members likely suffered greater harms, likely have stronger legal claims, and were likely more financially vulnerable than other Class Members.  *First*, Class Members whose Title IV Covered Loans were in Defaulted Status likely were the subject of more frequent collection efforts from Navient, which likely resulted in greater impact to those Class Members' credit ratings and additional dignitary harm of being

subject to debt collection efforts.  *Second*, the fact that Navient likely initiated more collection efforts—such as repeated letters and phone calls—against Class Members whose Title IV Covered Loans were in Defaulted Status indicates that these Class Members suffered a greater number of legal violations under Plaintiff's theory of the case.  Plaintiff alleges that each time Navient attempted to collect on a Title IV Covered Loan, it violated the Bankruptcy Code:  more collection efforts equate to more violations of the law.  *Finally*, Class Members whose Title IV Covered Loans were in Defaulted Status were likely the most financially vulnerable members of the Class, as Navient's post-discharge collection efforts on those Class Members likely sought amounts above and beyond what those Class Members could pay.  Accordingly, Plaintiff and Putative Class Counsel believe this set of Class Members is entitled to receive additional debt relief.  This distribution of debt relief is consistent with the basic precept that "class members who suffered greater harm" should claim "a larger share of the distributable settlement amount."  *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015).  In any event, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019).  Under the circumstances present here, there is ample basis to distribute additional debt relief to those Class Members whose Title IV Covered Loans were in Defaulted Status.

### 3.  The Proposed Settlement Meets the *Grinnell* Factors

In addition to satisfying the Rule 23(e)(2) factors, the proposed Settlement is also appropriate when assessed under the *Grinnell* factors.

#### i.  The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement.

The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the

costs, risks, and delay of trial and appeal" addressed above. *See* § III.A.2.iii., *supra*. This case is reflective of the complexity of litigating a class action on behalf of a nationwide class with a cause of action arising under the bankruptcy law. The Parties advanced numerous complex legal and factual issues under the bankruptcy laws, especially with respect to the issues of class certification and damages.

## ii.    The Reaction of the Class to the Settlement.

Plaintiff supports the Settlement based on her direct participation in the prosecution of the Litigation and in the decision to enter into the Settlement. At this stage, prior to distribution of notice to Class Members, this factor is not further addressed. *See GSE Bonds*, 414 F. Supp. 3d at 699 n.1 (explaining that consideration of the second *Grinnell* factor "is generally premature at the preliminary approval stage"); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Consideration of [the class reaction] factor is premature" when, as here, "no notice has been sent.").

## iii.    The Stage of the Proceedings.

The extent and substance of Plaintiff's and Putative Class Counsel's knowledge of the merits and potential weaknesses of the claims are more than adequate to support the Settlement. *See* § III.A.2.i., *supra*. Extensive discovery and motion practice permitted Plaintiff and Putative Class Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations. As explained, Putative Class Counsel has litigated this case for over six years and has reviewed and assessed over 16,000 pages of documents, deposed numerous witnesses (and analyzed a dozen deposition transcripts from other matters), filed hundreds of pages of briefing on a wide array of issues ranging from discovery disputes to arbitrability and from the availability of damages to class certification and summary judgment. Additionally, Professor Green challenged Plaintiff and Putative Class Counsel to recognize not only the strengths, but also the potential

shortcomings of the Class's claims.  The relatively advanced stage of the Litigation permitted Plaintiff and Putative Class Counsel to fairly and dispassionately judge the strengths of the Class's claims against the risks of continued Litigation when determining whether to enter into the Settlement.  As other courts in this District have found, this supports the reasonableness of the proposed settlement.  *See, e.g.*, *Bodon v. Domino's Pizza, LLC*, 2015 WL 588656, at *5–6 (E.D.N.Y. Jan. 16, 2015) (approving settlement because "there was sufficient information at the time of settlement for both the Court and the parties to evaluate the merits of the relevant claims and defenses" where, similar to here, "the parties completed fact discovery (including numerous depositions), as well as briefed and argued multiple dispositive motions and plaintiffs' motion for class certification"), *report and recommendation adopted*, 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); *Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *5 (E.D.N.Y. Apr. 11, 2014) (finding that counsel was positioned to understand and appreciate the benefits and drawbacks of settlement where counsel "thoroughly investigated the strengths and weaknesses of the case, consulted with experts to assist plaintiffs in evaluating the facts, and conducted extensive legal research in responding to the motion to dismiss" and engaged in mediation).

### iv.    The Risk of Establishing Liability and Damages.

The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  As explained above, Plaintiff has satisfied the fourth *Grinnell* factor.  *See* § III.A.2.iii., *supra*.

### v.    The Risks of Maintaining the Class Action through Trial.

Although the Class was certified in April 2023, the Court could have revisited certification at any time and Defendants could have appealed the ruling—the specter of decertification, either in whole or in part, would have hung over the Litigation through its completion.  *See* § III.A.2.iii., *supra*; *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 482 n.11 (2013) ("[A]

class-certification order 'may be altered or amended before final judgment.'" (quoting Fed. R. Civ. P. 23(c)(1)(C))); *Christine Asia Co.*, 2019 WL 5257534, at *13 (noting that this risk weighed in favor of settlement approval because "a class certification order may be altered or amended any time before a decision on the merits"). Accordingly, this factor further weighs in favor of preliminarily approving the Settlement.

### vi.    Defendants' Ability to Withstand a Greater Judgment.

While not generally a determining factor, a court may consider a defendant's ability to withstand a judgment greater than that secured by the proposed settlement. *See D'Amato*, 236 F.3d at 86 (upholding district court's conclusion that the while "defendants' ability to withstand a higher judgment weighed against the settlement," it did not alone "suggest that the settlement is unfair"). While Navient—a large, publicly-traded corporation with a market capitalization of $2.43 billion— likely could have provided further debt relief and paid a judgment greater than $198.4 million ($182.4 million in forgone collection of student loan balances and $16 million in cash), courts generally do not find this factor to be an impediment to settlement when the other *Grinnell* and Rule 23 factors favor settlement. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." (quoting *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009))). This factor is therefore neutral. *See Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022).

### vii.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.

The adequacy of the amount achieved in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693. Here, the Settlement appropriately balances achieving a certain and substantial recovery for Class Members while also recognizing that Defendants still have in their quiver reasonable arguments contesting both liability and damages, either of which could doom the Class's claims. *See* § III.A.2.ii-iii., *supra*. The Settlement also ends the years of delayed relief for Class Members and eliminates the risk that this or another court would revisit the class certification issue. In light of these risks and challenges, the combination of $182.4 million in debt relief and $16 million in cash restitution, plus credit remediation that has the potential to have a long-term impact on the financial outlook of the Class, is an excellent recovery for the Class. This factor supports granting preliminary approval. *See Payment Card*, 330 F.R.D. at 49 ("The certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery." (quoting *Global Crossing*, 225 F.R.D. at 461)).

In sum, the Rule 23 and *Grinnell* factors weigh in favor of preliminary approval of the Settlement, except possibly one neutral factor. Preliminary approval in these circumstances is appropriate and warranted.

*    *    *

Additionally, Putative Class Counsel intends move the Court for service awards to Youssef and Homaidan of no more than $20,000 each. Such awards, which are permissible under Rule 23, *see Hyland v. Navient Corp.*, 48 F.4th 110, 124 (2d Cir. 2022), are routinely awarded in class actions "both to reimburse the named plaintiffs for expenses incurred through their involvement

with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place," *Christine Asia*, 2019 WL 5257534, at \*20 (quoting *Hicks v. Stanley*, 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005)); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2015 WL 5918273, at \*4 (E.D.N.Y. Oct. 9, 2015) (noting that "[s]uch awards are not uncommon and can serve an important function in promoting class action settlements" (quoting *Sheppard v. Consol. Edison Co.*, 2002 WL 2003206, at \*5 (E.D.N.Y. Aug.1, 2002))).   Service awards for Youssef and Homaidan are appropriate because both prepared for and sat for a deposition, reviewed pleadings and briefs, assisted with discovery, and evaluated and approved the Settlement.  *See Christine Asia*, 2019 WL 5257534, at \*20; *Air Cargo Shipping Servs.*, 2015 WL 5918273, at \*4–6 (awarding $90,000 to lead plaintiffs who also "fulfilled substantial discovery obligations" and "assisted in litigating [the] action" for many years).

### B. The Court Should Preliminarily Certify the Settlement Class.

The Bankruptcy Court should preliminarily certify the Settlement Class contemplated by the Settlement.  Classes certified solely for purposes of settlement are "a stock device" in litigation, the utility of which is recognized in all Federal Circuits.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 618 (1997); *Sheppard*, 2002 WL 2003206, at \*2 ("The Supreme Court has expressly approved the use of" the "settlement only" class.).  Rule 23 provides that a court must certify an action as a class action where the class satisfies the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a), and one of the three criteria set forth in Rule 23(b).  Here, and largely for the reasons previously explained in the Court's Order on the Motion for Class Certification ("Certification Order"), *see In re Homaidan*, 2023 WL 2922576 (ECF No. 403), the proposed Settlement Class satisfies the relevant requirements of Rule 23(a) and Rule 23(b)(3).

### 1.  Numerosity

Rule 23(a)(1) requires Plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  The Class encompassed by the proposed Settlement includes 5,265 borrowers—4,607 primary borrowers and 658 co-borrowers—members which, as the Court noted in the Certification Order, "well exceeds the presumptive threshold of 40 members."  *In re Homaidan*, 2023 WL 2922576, at *42.  Further, the Settlement Class, "by definition, is composed of individuals that have sought relief in the bankruptcy court and may lack the financial resources or ability to bring individual actions, and this is relevant as well" in determining whether the numerosity factor is satisfied.  *Id.*  Accordingly, the Settlement Class meets Rule 23(a)'s numerosity standard.

### 2.  Commonality

Commonality is satisfied when "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2).  The claims of the individual class members "must depend upon a common contention . . . That common contention [] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  As the Court noted in the Certification Order, "even a single common question of law or fact is sufficient to satisfy the commonality requirement."  *In re Homaidan*, 2023 WL 2922576, at *43.  Here, as there, Plaintiff "make[s] that showing" because the common issue of law amongst the Class proposed in the Settlement is "whether private, direct-to-consumer

student loans that exceed the 'cost of attendance' are dischargeable in bankruptcy." *Id*. Thus, the commonality prong is also satisfied.

### 3. Typicality

The typicality requirement of Rule 23(a) requires that Plaintiff's claims and defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Court explained in the Certification Order, "[i]t is the nature of the Plaintiffs' claims, and not the specific facts from which they arise, that must be typical of the class." *In re Homaidan*, 2023 WL 2922576, at *44.

Plaintiff and the proposed Settlement Class share the same core claim: whether private, direct-to-consumer student loan debts that exceed the "cost of attendance" are dischargeable in bankruptcy. As was the case with the class the Court certified

> factual distinctions between the Plaintiffs' particular loans and those of many Putative Class Members. They undoubtedly attended different Title IV institutions, entered into their private direct-to-consumer loans on different dates, in different amounts, and for some, in different loan programs. And each Putative Class Member may have repaid some, all, or none of their loan since receiving their discharge in bankruptcy.

*Id*. Yet as the Court concluded in the Certification Order, "those differences in the details do not mean that the Plaintiffs' claims, and Navient's defenses to those claims, are somehow not 'typical' of the claims and defenses pertinent to the class." *Id*. Here, Plaintiff and the remainder of the Class are connected by the same bedrock claim regarding the dischargeability of student loan debts, and that claim is uniform irrespective of, for example, "whether a borrower filed for bankruptcy under Chapter 7 or Chapter 13." *Id.*, at *45. Further, and as the Court is aware, another bankruptcy court has concluded on similar facts that the typicality requirement is met because "the primary issue in the case is whether the loans were discharged in bankruptcy, so the focus should be on the dischargeable or nondischargeable nature of the loan rather than what the loan is named."

*In re Woodard*, 2023 WL 2412750, at *5 (Bankr. D. Neb. Mar. 8, 2023). Thus, Rule 23(a)'s typicality requirement is also satisfied.

### 4. Adequacy of Representation

Adequacy of representation tends to merge with the commonality inquiry, though it "also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 349 n.5 (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Plaintiff and Putative Class Counsel are more than adequate representatives of the Class.

As the Court found in the Certification Order, Plaintiff and Putative Class Counsel can effectively represent the Class's interests. Youssef has "demonstrated [her] general knowledge of the case and willingness to participate in this action," including by sitting for a deposition and "producing documents at the request of counsel." *In re Homaidan*, 2023 WL 2922576, at *45. That is sufficient to "fairly and adequately [] represent the class." *Id.* Further, and as the Court has already concluded, Putative Class Counsel "has the knowledge, skills, resources, and commitment to pursue this case vigorously." *Id.*, at *46. The *Woodard* court thought the same of undersigned counsel. *See In re Woodard*, 2023 WL 2412750, at *5 (noting that the debtor, represented by undersigned counsel, "is relying on highly capable counsel to guide him"). Indeed, Putative Class Counsel is well qualified and experienced in class action lawsuits, complex commercial litigation, bankruptcy law and procedure, and student loan litigation. As noted herein, Putative Class Counsel have vigorously and thoroughly litigated the Settlement Class's claims and have participated in days of lengthy mediation to reach the proposed Settlement. In fact, Plaintiff and Putative Class Counsel have already obtained significant relief for the Class through the filing of a successful Motion for Preliminary Injunction to half Navient's collection activity against Class Members during the pendency of this suit. *See* ECF No. 404. Finally, Putative Class Counsel

have no interests that are adverse to those of Plaintiff or the Settlement Class.  For these reasons, Rule 23(a)'s adequacy requirement is met.[9]

### 5.   Predominance and Superiority

In addition to satisfying the four requirements of Rule 23(a), the proposed Settlement Class also satisfies the requirements of Rule 23(b)(3) that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  As to predominance, the overarching legal issue prevalent across the proposed Settlement Class is "whether the Putative Class Members' direct-to-consumer private student loans that exceed the 'cost of attendance' are within or outside their bankruptcy discharges."  *In re Homaidan*, 2023 WL 2922576, at *51.  The Court has already found that this issue "predominate[s] over 'questions affecting only individual members' of the putative class." *Id*.  As to superiority, the proposed Class—which is comprised of 5,265 total members—is the most efficient vehicle for adjudicating the common set of claims against Navient because the "joinder of the Putative Class Members as individual parties to this action would be impracticable." *Id*. at *42.  With the predominance and superiority factors met, the proposed Class clears the Rule 23(b) standard for certification.

### C.   The Court Should Approve the Proposed Notice Plan.

The manner and form of the Notice contemplated in the Stipulation conforms with the

---

[9] The proposed Settlement Class is also ascertainable for the reasons set forth in the Certification Order.  *See In re Homaidan*, 2023 WL 2922576, at *46-48.  Specifically, the "cost of attendance" metric used to determine whether student loan borrowers are Members of the Class is the maximum figure for a particular institution listed in IPEDS, which is a "standard, benchmark figure, not an individualized calculation."  *Id.*, at *47.  Thus, because inclusion in the Class is based on "discernable, objective criteria," the Settlement Class is ascertainable and the Court should certify it settlement purposes.  *Id.*, at *48.

requirements of Rule 23 and the dictates of Due Process. The Court should approve it so that Class Members can be advised of the substantial benefits the Settlement confers.

Rule 23(e)(1) requires the Bankruptcy Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Bankruptcy Court has broad discretion to approve the proposed manner of giving notice, so long as the procedures are reasonable and comport with Due Process. *See Wal-Mart*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). Notice is "adequate if it may be understood by the average class member." *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions § 11:53, at 167). Rule 23(c)(2)(B) also provides that, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That Rule further provides that the notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Here, the proposed notice plan is reasonable and meets the requirements of the Federal Rules of Civil Procedure and Due Process. As described above, the Notice will be distributed to the Class within 20 business days of the entry of the Preliminary Approval Order. *See* Stipulation of Settlement ¶¶ 4.29, 7.3; Stipulation of Settlement, Exhibit 2. Here, Navient's records and publicly available bankruptcy court records permit identification of all Class Members, allowing Notice to be sent directly to them. *See* Stipulation of Settlement ¶ 7.2. The Settlement Administrator will mail the Notice directly to Class Members via First Class mail at each Class Member's last known address and email a Class Notice to any email address Navient has on file. *Id.* ¶ 7.3. If any Notices are returned, the Settlement Administrator will re-mail the Notice to any forwarding address provided by the United States Postal Service. *Id.* ¶ 7.6. Additionally, the Settlement Administrator will use commercially available efforts to obtain a valid mailing address for every Class Member where a Class Notice is returned without a forwarding address, including skip-tracing. *Id.* ¶ 7.7. Class Members will have 90 days to complete and return the Claim Form that will be included with each Notice. *Id.* ¶ 8.4. More, the Notice will be posted on a website dedicated to the Settlement and maintained by the Settlement Administrator. In sum, the Notice will be distributed to all Class Members and will provide them sufficient information and time to decide whether to participate in the Settlement, object, or opt out. This proposed notice plan more than satisfies the reasonableness standard, and other courts in this District have approved similar notice plans. In *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020), for example, the court found that the notice given to the class was "the best notice practicable under the circumstances" where, as will occur here, the notice was "mailed to each of the class members via first-class mail and was also sent by email to class members" and "was posted on the settlement website." *Id.* at *2; *see also In re Shattuck Labs Sec.*

*Litig.*, 2023 WL 4043940, at \*4-\*5 (E.D.N.Y. June 16, 2023) (approving notice that was both mailed and emailed to class members); *Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at \*9 (E.D.N.Y. Feb. 16, 2023) (approving method of notice that, as here, featured direct mailings to class members and posting of the notice to a website dedicated to the settlement).

In addition, the proposed Notice contains the information Rule 23(c)(3) requires.  The Notice describes the nature of the Litigation, defines the Settlement Class, explains the Released Claims, as well as the monetary and other terms of the Settlement, and fully details Settlement Class Members' rights.  *See* Stipulation of Settlement, Exhibit 2.  The Notice will also indicate the time and place of the Final Approval Hearing and explain the processes for opting out of and/or objecting to the Settlement.  *Id*.  It further details Putative Class Counsel's forthcoming request for Attorneys' Fees and Expenses and request for service awards, and also provides contact information for the Settlement Administrator and Putative Class Counsel.  *Id*.

For these reasons, the proposed notice plan is not only reasonable but also the best notice practicable under the circumstances.  The Court should approve it so that the members of the putative Class can be apprised of the substantial benefits available to them under the Settlement.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Bankruptcy Court: (1) preliminarily approve the Settlement; (2) certify the Settlement Class, and appoint Reeham Youssef as Class Representative and Boies Schiller Flexner LLP, Fishman Haygood LLP, Jones Swanson Huddell LLC, and the Law Offices of Joshua Kons LLC as Class Counsel; and (3) approve the form and manner of the Class Notice.

Dated:  July 21, 2023

Respectfully submitted,

By:     */s/ Adam R. Shaw*  _____
Adam R. Shaw
George F. Carpinello
Jenna C. Smith
**BOIES SCHILLER FLEXNER LLP**
30 South Pearl Street
Albany, NY 12207
(518) 434-0600
ashaw@bsfllp.com
gcarpinello@bsfllp.com
jsmith@bsfllp.com

Cameron C. Miller
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
cmiller@bsfllp.com

Jason W. Burge
**FISHMAN HAYGOOD LLP**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252
jburge@fishmanhaygood.com

Lynn E. Swanson
**JONES SWANSON HUDDELL, LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500
lswanson@jonesswanson.com

Joshua Kons
**THE LAW OFFICES OF JOSHUA KONS LLC**
92 Hopmeadow Street, Suite LL1
Weatogue, CT 06089
(860) 920-5181
joshuakons@konslaw.com

*Counsel for Reeham Youssef and the Putative Class*